**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| STUDENT FINANCE | : | |
| CORPORATION, | : | |
| | : | |
| Debtor. | : | |
| ———————————— | : | |
| | : | |
| CHARLES A. STANZIALE, JR., | : | |
| CHAPTER 7 TRUSTEE OF STUDENT | : | Civil Action No.: 04-1551 (JJF) |
| FINANCE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PEPPER HAMILTON LLP, et al., | : | |
| | : | |
| Defendants. | : | |

---

BRIEF IN OPPOSITION TO MOTION OF PEPPER HAMILTON LLP AND
W. RODERICK GAGNÉ TO DISMISS MALPRACTICE COUNT AND LIMIT
DAMAGES FOR BREACH OF FIDUCIARY DUTY

---

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney
& Carpenter LLC
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711
(973) 622-5313 (facsimile)

Daniel K. Astin, Esquire (No. 4068)
Ashley B. Stitzer, Esquire (No. 3891)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 198999
(302) 655-5000
(302) 658-6395 (facsimile)

*Attorney for Plaintiff, Charles A.*
*Stanziale, Jr., Chapter 7 Trustee for*
*Student Finance Corporation*

Dated:  July 25, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................1

SUMMARY OF THE ARGUMENT ..........................................................................2

ARGUMENT ..........................................................................................................4

POINT I

SEITZ DOES NOT PRECLUDE THE TRUSTEE
FROM SEEKING TRADITIONAL PROFESSIONAL
MALPRACTICE DAMAGES AS ALLEGED
IN THE AMENDED COMPLAINT ....................................................................4

    A.      Standard Of Review For Judgment On The Pleadings ...............................4

    B.      Because the Amended Complaint Seeks Damages
               Other than Those Arising from Deepening
               Insolvency, Pepper's Motion to Dismiss the
               Malpractice Claim Should be Denied ..........................................................5

POINT II

BECAUSE SEITZ DOES NOT PRECLUDE THE TRUSTEE
FROM SEEKING DAMAGES TRADITIONALLY FOUND
FOR BREACH OF FIDUCIARY DUTY, THERE IS NO
BASIS TO LIMIT DAMAGES AT THIS EARLY STAGE
OF THE PROCEEDINGS ..................................................................................14

    A.      Standard Of Review For Motion To Limit Damages ...................................14

    B.      Pepper has Articulated No Basis to Limit the Trustee's
               Damages at this Early Stage ......................................................................15

CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

Albright v. Burns,
    206 N.J. Super. 625 (App.Div. 1986) ..................................................................7

Anoka Orthopaedic Associates, P.A. v. Mutschler,
    773 F. Supp. 158 (D. Minn. 1991) ...................................................................7

Capital Care Corp. v. Hunt,
    847 A.2d 75 (Pa. Super. Ct. 2004) ...................................................................7

Federal Deposit Insurance Corp. v. Nathan,
    804 F.Supp. 888 (S.D. Tex. 1992) ...............................................................8,9

Federal Deposit Insurance Corp. v. O'Melveny & Meyers,
    969 F.2d 744 (9th Cir. 1992), *rev'd and remanded by*
    512 U.S. 79, 114 S.Ct. 2048 (1994) *and reinstated by*
    61 F.3d 17 (9th Cir. 1995) ...........................................................................8,9

Gaines v. Krawczyk,
    354 F.Supp.2d 573 (W.D.Pa. 2004) ...............................................................4

Hoppe v. Ranzizi,
    158 N.J. Super. 158 (App.Div. 1978) ...............................................................7

Liberty Bank v. Ruder,
    402 Pa. Super. 561 (Pa. Super. Ct. 1991) ...........................................................7

Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz,
    529 Pa. 241 (1992) .........................................................................................15

Neitzke v. Williams,
    490 U.S. 319 (1989) .......................................................................................4

Official Comm. of Unsecured Creditors v.
    Credit Suisse First Boston (In re Exide Techs., Inc.),
    299 B.R. 732 (Bankr. D. Del. 2003) ...............................................................4

Port Auth. v. Arcadian Corp.,
    189 F.3d 305 (3d Cir. 1999) ...........................................................................4

Romy v. Burke,
    2004 Phila. Ct. Com. Pl. LEXIS 15 Ct.Com.Pl. Dec. 28, 2004) .......................15

Sanchez v. U.S. Airways,
    202 F.R.D. 131 (E.D.Pa. 2001) .....................................................................14

Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.),
    448 F.3d 672 (3d Cir. 2006)...........................................................1,2,3,5,6,9,10,11,12,13

Thompson v. Glenmede Trust Co.,
    1994 U.S. Dist. LEXIS 16839 (E.D. Pa. Nov. 22, 1994) ..................................................15

VTech Holdings Ltd. v. Pricewaterhouse Coopers, LLP,
    348 F.Supp. 2d 255 (S.D.N.Y. 2004) ...............................................................................14

Williams v. State Farm Mutual Auto. Ins. Co.,
    763 F. Supp. 121 (E.D. Pa. 1991) .....................................................................................4

Young v. West Coast Industrial Relations Ass'n.,
    763 F. Supp. 64 (D. Del. 1991) .........................................................................................4

## STATUTES AND OTHER AUTHORITIES

Rule 12(b) of the Federal Rules of Civil Procedure ..........................................................4

Sabin Willett, *The Shallows of Deepening Insolvency*,
    60 Bus. Law. 549 (2005) ...................................................................................................6

## NATURE AND STAGE OF PROCEEDINGS[1]

Charles A. Stanziale, as Chapter 7 Trustee in Bankruptcy (the "Trustee") for Student Finance Corporation ("SFC"), brought the present action against, inter alia, Pepper Hamilton LLP ("Pepper"), on or about November 1, 2004.  Pepper moved to dismiss a number of the Counts of the Complaint, including Count I, which alleges breach of fiduciary duty, and Count IV, which alleges malpractice in the rendering of legal services to SFC.  By Order and Opinion dated December 22, 2005 (D.I. 69, 70), this Court denied that motion with regard to the allegations of malpractice and breach of fiduciary duty, and those counts were allowed to stand.  On January 23, 2006, the Trustee filed an Amended Complaint (D.I. 76), supplementing certain of the allegations regarding breach of fiduciary duty, and Pepper answered on or about February 6, 2006.

The Third Circuit issued its opinion in Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.), 448 F.3d 672 (3d Cir. 2006) ("Seitz"), addressing the tort of deepening insolvency and related damages, on May 26, 2006.  This Court permitted the Pepper defendants (as well as the defendants in the cases consolidated for discovery with this one) to submit a motion based on the holding in Seitz, and on July 6, 2006, Pepper filed a motion to dismiss (D.I. 109) the Trustee's malpractice count and limit damages on the breach of fiduciary duty count.

The parties in the consolidated cases are completing documentary discovery and depositions are scheduled to begin on August 20, 2006.

---

[1] The facts in this case were fully set forth in the Trustee's prior briefs submitted in opposition to Pepper's motions to dismiss (D.I. 15, 44), and are not set out separately in this brief.

## SUMMARY OF THE ARGUMENT

Pepper brought this motion under two erroneous premises: first, that the Third Circuit decision in <u>Seitz</u> eviscerates the tort of malpractice by doing away with any claim that alleges or has an impact on insolvency, regardless of whether damages traditionally awarded in malpractice claims are available, and second, that the Trustee has not sought any damages other than those arising from the deepening of SFC's insolvency. Because both of these premises are wrong, as is clear from the plain language of the <u>Seitz</u> opinion and the Amended Complaint, the motion should be denied.

The <u>Seitz</u> decision, while clear in its refusal to accept deepening insolvency as an independent theory of damages, is equally clear in its refusal to abrogate those damages traditionally available to a plaintiff, in the form of increased liabilities, reduced asset value, or lost profits. Indeed, the Third Circuit went so far as to discount any "incidental" impact on deepening insolvency when these other traditional damages are present. Pepper asks this Court to do exactly what the Third Circuit in <u>Seitz</u> indicates it should not do: evaluate a claim for damages based on the potential effect on the company's solvency, ignoring the fact that these are traditional damages which can be recovered regardless of their effect on solvency.

Pepper similarly misreads the damages claims in the Amended Complaint by too narrowly reading the allegations of the Amended Complaint. While the Amended Complaint does refer to the harm caused by deepening insolvency, it specifically seeks whatever damages flow from Pepper's actions, including the increased liabilities and

diminished assets available to SFC.  Pepper has articulated no basis for denying the Trustee the right to pursue those damages.

Similarly, Pepper's effort to limit at this early stage the damages the Trustee may seek for Pepper's breach of its fiduciary duty to its client, SFC is misplaced.  Before discovery is complete, and before any expert disclosures, Pepper is asking the Court to impose trial restrictions, akin to a ruling on  motion in limine.  The request is premature and without basis.  Other than its erroneous interpretation of both Seitz and the damages claimed in the Amended Complaint, Pepper has given no basis for this extraordinary relief.

Because the Seitz opinion does not support either a dismissal of the malpractice claim or a limitation of the damages the Trustee may seek for breach of fiduciary duty, the motion should be denied in its entirety.

3

## ARGUMENT

## POINT I

## SEITZ DOES NOT PRECLUDE THE TRUSTEE FROM SEEKING TRADITIONAL PROFESSIONAL MALPRACTICE DAMAGES AS ALLEGED IN THE AMENDED COMPLAINT

**A.    Standard Of Review For Judgment On The Pleadings**

In deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Gaines v. Krawczyk, 354 F.Supp.2d 573, 576 (W.D.Pa. 2004); Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The court must determine if plaintiff may be entitled to relief under any reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Port Auth. v. Arcadian Corp., 189 F.3d 305, 310 (3d Cir. 1999); see also Williams v. State Farm Mutual Auto. Ins. Co., 763 F. Supp. 121, 123 (E.D. Pa. 1991) ("[T]he complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved.").

The party seeking dismissal bears the burden of establishing that the plaintiff has failed to state a claim. Young v. West Coast Industrial Relations Ass'n., 763 F. Supp. 64, 67 (D. Del. 1991). Accordingly, "a plaintiff is not required to plead in the complaint all requirements for a claim as well as contemplate and plead in anticipation of all affirmative defenses that may lie against such claim." Official Comm. of Unsecured

4

Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.), 299 B.R. 732, 752 (Bankr. D. Del. 2003).

Thus, Pepper must prove, on the face of the Amended Complaint, that under any set of facts that could be proven consistent with the allegations of the Amended Complaint, the Trustee does not seek and could not recover damages to SFC other than those incidental damages amounting to deepening insolvency. In support of their motion, Pepper relies exclusively on Seitz and claims its holding has so changed the state of the law of the Third Circuit that it requires this Court to reverse its prior ruling and dismiss the Trustee's claim of malpractice. Although the Court in Seitz refused to extend damages for malpractice to those arising exclusively under the tort of deepening insolvency, it expressly declined to disrupt the traditional damages allowed in a claim for malpractice or breach of fiduciary duty. These damages are pled here, and the Trustee should be entitled to pursue them.

**B.      Because the Amended Complaint Seeks Damages Other than Those Arising from Deepening Insolvency, Pepper's Motion to Dismiss the Malpractice Claim Should be Denied**

The Third Circuit's opinion in Seitz does not provide a basis for dismissing the Trustee's malpractice claim against Pepper. While Seitz clearly rejects damages based solely on deepening insolvency for a negligence claim, the Third Circuit made clear that it did not intend to affect the traditional measures of damages available in a malpractice case. Accordingly, Pepper's motion to dismiss should be denied.

In Seitz, an action brought by a bankruptcy trustee against the debtor's accounting firm, the Court considered the tort of deepening insolvency. In discussing damages based solely on deepening insolvency, the Court declined to recognize such damages on a

standalone basis, but then went further in recognizing that its holding did not impact

those traditional theories of damages typically alleged in tort actions:

> [T]he deepening of a firm's insolvency is not an
> independent form of corporate damage. Where an
> independent cause of action gives a firm a remedy for **the
> increase in its liabilities, the decrease in fair asset value,
> or its lost profits**, then the firm may recover, without
> reference to the incidental impact upon the solvency
> calculation.

Id. at *13 quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law.

549, 575 (2005) (emphasis added). As explained in the article relied upon by the Third

Circuit in the context of deepening insolvency injury:

> . . . injury to solvency is an incident to the harm, not the
> harm itself. If the debtor lost asset value through
> defendant's conversion of property, the law measures
> damage; if through breach of contract, commission of tort,
> breach of fiduciary duty, or fraudulent transfer, the law
> already measures damage. The damages may include the
> insult to asset values . . . or the accumulation of a liability
> (breach of fiduciary duty of care). Depending on the
> underlying law, the damage may or may not also include
> lost profits (a measure of damage that captures the
> economic injury to an operating business because of its
> reduced liquidity). Solvency analysis will be incidental to
> all of these damage analyses. It may so happen that the
> diminished asset value, new liability, or lost profits that
> measures the damage also measures precisely the
> deepening of the firm's insolvency. The point is that
> insolvency analysis adds nothing to the measure of
> damages the law already allows.

Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law at 572.

The Seitz Court was cognizant of the traditional theories of damages arising in

malpractice actions and was careful not to disturb them. Accordingly, a party raising a

malpractice claim may seek damages for "the increase in liabilities, the decrease in fair

asset value, or its lost profits." Id. Whether those damages have any "incidental impact"

upon the solvency or insolvency of the party is irrelevant. Id. Consequently, the Seitz

decision has no impact on a claim for traditional damages resulting from legal

malpractice. The fact that negligent conduct could have an incidental effect on a

company's eventual insolvency does not swallow up all damages. The Third Circuit

plainly did not intend such a drastic result.

In malpractice actions, the measure of damages is typically the amount of

damages actually caused by the defendant's negligence. See, e.g., Anoka Orthopaedic

Associates, P.A. v. Mutschler, 773 F. Supp. 158, 171 (D. Minn. 1991) (lost profits and

lost investment income are proper measures of damage); Hoppe v. Ranzizi, 158 N.J.

Super. 158, 164 (App.Div. 1978) ("The attorney is responsible for the loss proximately

caused the client by his negligence. … If the attorney is retained to give legal advice, is

negligent in that respect and the client pays money to others as a result thereof, he is

responsible to the client for the full amount paid, . . ..").  The value of an asset sold or

distributed for less than market value may also be used to measure damages. Capital

Care Corp. v. Hunt, 847 A.2d 75, 85 (Pa. Super. Ct. 2004)(where stock was sold for less

than actual value due to attorney's malpractice, plaintiff should have the opportunity to

prove fair value); see also Albright v. Burns, 206 N.J. Super. 625 (App.Div. 1986)

(reinstating compensatory damages claim because of lawyers' conduct in aiding in

divestiture of the estate's most important asset).

Similarly, a plaintiff stated a cause of action when he alleged damages based on

bad advice in entering into a loan agreement: "but for Fox's negligence Liberty would not

have entered into a contract to loan $1,000,000.00 to the debtor who later defaulted."

Liberty Bank v. Ruder, 402 Pa. Super. 561, 568 (Pa. Super. Ct. 1991). The court in

Liberty further noted that it "is unnecessary for Liberty to prove a specific damage amount at this preliminary stage of the proceedings," but allowed the claim to stand.  Id.

Thus, in Federal Deposit Insurance Corp. v. Nathan, 804 F.Supp. 888 (S.D. Tex. 1992), the court held that the proper measure of damages was the actual loss to the client resulting from the attorneys' malpractice with regard to loan transactions.  There, the FDIC, as the receiver for Continental Savings Association, filed a complaint against Continental's general counsel alleging breach of fiduciary duty and legal malpractice. The complaint alleged that the attorneys "provided legal representation, documentation, etc. in completing and executing specified unsound and illegal loan transactions," despite their knowledge that Continental was reporting profits to mask the company's weakened financial condition.  Id. at 891.  Continental's lending scheme entailed "making new loans to fund delinquent interest payments on previous [loans] or creating a new loan in exchange for inadequate collateral."  Id. at 891.

The defendants in Nathan filed a motion to dismiss, claiming, among other things, that the complaint failed to identify any damages proximately caused by the alleged legal malpractice and breach of fiduciary duty.  Id. at 896.  Noting that "damages for improper loans are determined by the loss borne by the institution because of the loan," the court held that the transactions were "allegedly so improper that it was foreseeable that the loans would not be repaid."  Id.  Thus, the court found that FDIC's complaint contained "sufficient allegations of injury" and denied the motion to dismiss.  Id.

The same result held in Federal Deposit Insurance Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd and remanded by* 512 U.S. 79, 114 S.Ct. 2048 (1994) *and reinstated by* 61 F.3d 17 (9th Cir. 1995), in which the Court found that the

plaintiff could recover its actual expenditures and losses resulting from the malfeasance. There, the FDIC, as receiver for American Diversified Savings Bank ("ADSB"), brought an action against O'Melveny & Myers for professional negligence, negligent misrepresentation and breach of fiduciary duty after ADSB investors complained that they had been misled by private placement memoranda prepared in large part by O'Melveny. In preparing the PPMs, O'Melveny failed to confer with ADSB's former auditors, its federal or state regulators, or its primary directors and officers. Id. Instead, O'Melveny included in the PPMs an audited financial statement which was six months out of date. Id.

The court held that O'Melveny had a duty to both ADSB and its investors to contact the former auditors prior to signing and releasing the PPMs. Id. at 749. In addressing the issue of damages, the court found that, if successful on its claims, the FDIC could recover "the out of pocket costs to the client properly attributable to the fraudulent transaction" including fees, brokers' commissions and "losses on property purchased as a result of the offerings having closed." Id. at 752. Based on Seitz, the damages recognized as available to the plaintiffs in Nathan and O'Melveney are equally available to the Trustee in this case under a fair reading of the Amended Complaint.

Pepper errs in contending that the Trustee's sole theory of damage on the malpractice count is deepening insolvency. The damages claim in Count IV, which alleges Professional Malpractice against Pepper and Gagne, provides that

> As a direct, proximate and foreseeable result of the foregoing acts and omissions, SFC and its creditors were injured in the collapse of Debtor's business and **loss of property and assets** that would otherwise have been available to SFC and its creditors.

Amended Complaint, ¶247 (emphasis added).  The damages alleged, including "the loss of property and assets," are the very same traditional malpractice damages alluded to by the <u>Seitz</u> court as remaining available following its ruling.

The Trustee has alleged cognizable damages on the malpractice claim, and the bases for those damages are not limited, as Pepper suggests, to those arising from deepening the insolvency of SFC.  As alleged in the Amended Complaint, Pepper failed to meet the duty of care incumbent upon attorneys providing general representation to a corporate client:

> 233.    As its counsel, Pepper owed SFC a duty of care that required Pepper to exercise the necessary, proper and ordinary skill and knowledge of members of the legal profession required in connection with such representation.
>
> 234.    On information and belief, on an ongoing and continuous basis, Pepper breached its contractual obligation to SFC and the standard of care that a reasonable attorney would have exercised under the circumstances, in failing to, *inter alia*:
>
> > a.    advise SFC regarding its obligations in approaching and eventual insolvency;
> >
> > b.    advise SFC regarding the requirement that proper disclosures be made in the PPMs;
> >
> > c.    avoid conflicts of interest discussed herein;
> >
> > d.    advise SFC that it was required to consider distributions to and compensation arrangements with Yao, including with regard to their impact on SFC and the interests of creditors, customers and students; and
> >
> > e.    perform adequate due diligence in connection with the PPMs.

10

235.    Acting as its general counsel and intimately representing SFC in a broad range of substantive matters, Pepper owed both an implied and actual contractual duty to SFC.

236.    Pepper further breached its duty of care to SFC by failing to adequately advise SFC regarding conflicts of interest and by continuing to represent SFC in the face of multiple obvious and unwaivable conflicts of interests.

237.    As described, Pepper's clouded judgment caused its legal advice to SFC to fall below the standard of care, resulting, *inter alia*, in SFC's incurring damage.

Thus, the Amended Complaint specifically alleges that Pepper acted negligently in several regards.  The Amended Complaint further alleges that Pepper's actions caused SFC to incur debt, or, in other words, to increase its liabilities, while at the same time allowing distributions and compensation that diminished SFC's assets.  Although these actions could, and did, deepen SFC's insolvency, as indeed would almost every kind of economic injury, that impact does not alter the nature of the damages suffered, and <u>Seitz</u> expressly refuses to interfere with this recovery.

While reading <u>Seitz</u> so broadly that it risks obliterating malpractice as a cause of action, Pepper asks this Court to read the damages allegations of the Amended Complaint narrowly in contending that the damages alleged are limited to those arising from deepening insolvency.  This narrow reading of the Amended Complaint, however, ignores the express language of the damages claims, as well as the general malpractice damages asserted throughout and the legal standard to be applied on a motion for judgment on the pleadings.

11

Reading the malpractice claim as a whole, and incorporating the allegations in the preceding paragraphs, see ¶232 (incorporating paragraphs 1-231), the damages alleged by the Trustee are far ranging and include, but are not limited to:

- distributions to Andrew Yao of $9.6 million (¶¶27, 173)

- legal fees charged by Pepper of $3.2 million (¶¶29, 136)

- forbearance payments made by SFC of more than $45 million in 2001 alone (¶¶55, 213)

- principal, interest and fees paid to the Family Defendants of approximately $4 million in the year preceding the bankruptcy (¶73)

- loans from the Family Defendants in 2000 of approximately $6 million (¶¶77, 173)

- loans from Royal in the period preceding the bankruptcy (¶173)

As set forth above, under its express language, the <u>Seitz</u> decision does not provide the support Pepper seeks in trying to dismiss the malpractice count. While determining that traditional forms of malpractice damages, namely loss of assets and increase of liabilities, could be recovered without regard to their effect on solvency, the <u>Seitz</u> court found that those damages had not been established by the plaintiff in the particular circumstances of that case. The application was before the Court on summary judgment, not on the pleadings, as is the case here, and the parties had had the opportunity to conduct discovery and submit affidavits. Significantly, the court gave great consideration to the fact that the only purported evidence of damage submitted by the plaintiff was what it found to be a "sham" affidavit; accordingly, the plaintiff had not met its burden of showing it had suffered traditional damages.

Conversely, in the case before the Court, the Trustee is entitled to establish that malpractice damages do in fact exist. This is particularly true at this early stage of the proceedings, where the parties have yet to commence deposition discovery. The Trustee is not restricted by <u>Seitz</u> in his ability to demonstrate malpractice damages arising from the loss of assets or increase in liabilities to SFC based on the extensive allegations of the Amended Complaint, including those discussed herein. Pepper's claim that the Trustee has only pleaded deepening insolvency damages is incorrect and its motion should be denied.

**POINT II**

**BECAUSE <u>SEITZ</u> DOES NOT PRECLUDE THE TRUSTEE FROM
SEEKING DAMAGES TRADITIONALLY FOUND FOR
BREACH OF FIDUCIARY DUTY, THERE IS NO BASIS TO LIMIT
<u>DAMAGES AT THIS EARLY STAGE OF THE PROCEEDINGS</u>**

**A.    <u>Standard Of Review For Motion To Limit Damages</u>**

Here again, on this motion the pleadings are entitled to all the deference as forth

on the cases discussed supra at 4 of this brief.  While Pepper does not seek to dismiss this

Count, they seek to limit at this stage the damages a jury may award after completion of

discovery and the introduction of proofs, including expert testimony, at trial.

The amount of damages in particular is a question of fact, which should be left to

the jury to determine.  Because it would be highly unusual to limit the damages that a

party could seek at this early stage of the litigation, before discovery has been completed

and before expert disclosures, the Court should deny Pepper's motion to limit damages

on the breach of fiduciary duty count to disgorgement of fees paid.

A party should be allowed to develop its proofs though discovery and the use of

expert testimony, before those proofs are put to the test.  For instance, the Southern

District of New York opined that, while a company's claims of lost profits and

consequential damages were somewhat speculative at that stage of the litigation, it was

entitled to produce evidence to support its damages claim and dismissal was unwarranted.

<u>VTech Holdings Ltd. v. Pricewaterhouse Coopers, LLP</u>, 348 F.Supp. 2d 255 (S.D.N.Y.

2004).

"The particular value of the harm is best left to the fact-finder, after a careful

review of the facts.  The only way to adequately review the facts is to bring to light

relevant information."  <u>Sanchez v. U.S. Airways</u>, 202 F.R.D. 131 (E.D.Pa. 2001).

14

**B.**    **Pepper has Articulated No Basis to Limit the Trustee's Damages at this Early Stage**

Pepper seeks to limit the Trustee's breach of fiduciary duty claim to disgorgement of the legal fees paid to the firm. The sole basis for this argument is that under <u>Seitz</u>, the Trustee cannot recover deepening insolvency damages. Pepper further relies on the incorrect assumption that aside from the return of legal fees, the only theory of damages asserted by the Trustee is deepening insolvency. This is not so. As discussed at length in Point I, the Amended Complaint seeks all damages that SFC suffered as a result of Pepper's actions, including those arising from the company's increased liabilities and reduced assets. The same holds true of Count I, which alleges that Pepper breached its fiduciary duty to SFC and caused it to incur damages as a result.

Courts have long held that the relationship between attorney and client gives rise to a fiduciary duty on the part of the attorney. "To sustain a claim of breach of fiduciary duty, the plaintiffs must show that the defendants owed them a duty of care. An attorney-client relationship gives rise to such a duty." <u>Thompson v. Glenmede Trust Co.</u>, 1994 U.S. Dist. LEXIS 16839, *15 (E.D. Pa. Nov. 22, 1994). "At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." <u>Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz</u>, 529 Pa. 241, 253 (1992); <u>Romy v. Burke</u>, 2004 Phila. Ct. Com. Pl. LEXIS 15, *4 (Ct.Com.Pl. Dec. 28, 2004).

In this case, the damages claimed by the Trustee stemming from Pepper's breach of fiduciary duty extend far beyond any incidental deepening of insolvency damages. <u>See</u> discussion in Point I regarding <u>Seitz</u> Court's treatment of traditional damages' incidental impact on insolvency. Increasing debt is a damage measured by the amount of

15

the debt, regardless of its effect on the solvency of the company. Expending monies and depleting assets is a damage measured by the amount expended, regardless of its effect on the solvency of the company. The impact of each of these forms of damages on solvency is merely incidental. The Trustee is entitled to develop his proofs through discovery and expert testimony, and submit evidence to prove these damages, regardless of any effect they made have had on the solvency of SFC.

The Amended Complaint outlines Pepper's widespread breaches of fiduciary duty. See generally, ¶¶175-204. Pepper's representation fostered many conflicts of interest and divided loyalties, which resulted in harm to SFC. Id. Pepper permitted the interests of Gagne and his family to be elevated above those interests of other creditors, to the detriment of SFC. Between 1996 and 2002, members of Gagne's family and trusts for which Gagne served as trustee and/or beneficiary made sizeable loans to SFC, at interest rates far above the market rate. The family also loaned $6 million to SFC, for which they were repaid not only principal plus interest, but also a 7% "payoff premium." ¶ 77. These favorable terms to insiders resulted in decreased assets to SFC, a harm proximately caused by Pepper's breach of fiduciary duty. Pepper's wrongful actions regarding the transfer of funds to Yao also resulted in direct loss to SFC itself, and not merely to SFC's future potential bankruptcy creditors.

Not only did Pepper engage in conflicts with the family members, but it also represented Royal, including at a time when Royal's interests were directly adverse to those of SFC. Amended Complaint ¶¶181-184. Indeed, when it finally considered whether to withdraw from representation, Pepper acknowledged the inevitable conflict: in an April 18, 2002 memorandum written by Gagne, Pepper recognized that "Royal

16

Indemnity Company, another client of Pepper, could be significantly damaged by the losses which have been estimated at between $150 Million and $200 Million Dollars." Id. ¶183.

In addition, Pepper breached its fiduciary duty by virtue of its simultaneous representation of SFC along with SMS and SLS, companies that were either completely or primarily owned by Yao. Amended Complaint ¶¶185-195. These companies were purportedly separate and distinct, but shared common ownership and some common officers and directors. Accordingly, the generous compensation arrangements that were entered into between SFC and these entities were not arms-length transactions and resulted in losses for SFC. Pepper looked the other way while SFC's assets were unfairly depleted by these closely related companies.

The Amended Complaint sums up the allegations made by the Trustee, that Pepper, as a law firm, and through the actions of its partner, Gagne, failed to meet the most elementary fiduciary obligations imposed upon counsel:

> 177. Pepper and Gagné unreasonably, negligently, recklessly and/or intentionally failed to act in a manner consistent with their fiduciary duty owed to and solely for the benefit of SFC, and took action in breach of that duty, including:
>
>> a. Pepper and its partners with managerial responsibility breached their duty to SFC by failing to adequately monitor, supervise and/or prevent the action of Gagné described in this pleading;
>>
>> b. Pepper and Gagné breached their duty to SFC by effectuating, facilitating and/or failing to prevent action adverse to SFC, such as the fraudulent conveyances and preferences described in this pleading;

        c.      Pepper and Gagné breached their duty to SFC by effectuating, facilitating and/or failing to prevent the false, fraudulent, incomplete and misleading information used and contained in documents such as the PPM; and

        d.      Pepper and Gagné breached their duty to SFC by assuming and pursuing conflicting and divided loyalties during their representation of SFC as described in this pleading.

Consequently, Pepper misreads the Amended Complaint in arguing that the only damages to SFC resulting from its breaches of fiduciary duty are the $3.2 million in legal fees. The payments to Yao, the family, and the related companies, the money paid to Royal, and the improper forbearance payments are all losses to SFC arising out of Pepper's conflicts of interest, its improper representations, its lack of due diligence on behalf of SFC, and its failure to uphold its duty to SFC to prevent harm to the company. All of these claims of injury discussed here and in Point I above are expressly incorporated into the Breach of Fiduciary Duty claim by ¶175 of Count I. The Trustee should be given the opportunity to develop its proofs on each of the elements of damages, through discovery and the use of expert testimony. Pepper should not be granted the highly unusual relief of limiting damages, particularly at this early stage of the proceedings.

## CONCLUSION

For the reasons set forth above, plaintiff Charles A. Stanziale, Jr., as Trustee in

Bankruptcy for Student Finance Corporation, respectfully requests that this Court deny

the  motion of Defendants Pepper Hamilton, LLP and W. Roderick Gagne in its entirety.

Dated: July 25, 2006

Respectfully submitted,

THE BAYARD FIRM

Daniel K. Astin (No. 4068)
Ashley B. Stitzer, Esquire (No. 3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 198999
(302) 655-5000
(302) 658-6395 (facsimile)


and

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney
& Carpenter LLC
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711
(973) 622-5313 (facsimile)

Attorney for Plaintiff, Charles A.
Stanziale, Jr., Chapter 7 Trustee for
Student Finance Corporation