**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>       Debtor,<br><br>CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>       Plaintiff,<br><br>       v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>       Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    Civil Action No. 04-1551 (JJF)<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**REPLY BRIEF IN SUPPORT OF
THE PEPPER DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS ON COUNT IV (PROFESSIONAL MALPRACTICE) OF THE
TRUSTEE'S FIRST AMENDED COMPLAINT AND MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS ON COUNT I (BREACH OF
<u>FIDUCIARY DUTY) OF THE TRUSTEE'S FIRST AMENDED COMPLAINT</u>**

| | |
|---|---|
| William H. Sudell, Jr., Esq. (No. 0463) | Elizabeth K. Ainslie, Esq. |
| Donna L. Culver, Esq. (No. 2983) | Nicholas J. LePore, III, Esq. |
| Daniel B. Butz, Esq. (No. 4227) | Bruce P. Merenstein, Esq. |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | Stephen J. Shapiro, Esq. |
| 1201 North Market Street | SCHNADER HARRISON SEGAL & LEWIS LLP |
| P.O. Box 1347 | 1600 Market Street, Suite 3600 |
| Wilmington, Delaware 19899-1347 | Philadelphia, Pennsylvania 19103 |
| (302) 658-9200 | (215) 751-2000 |
| (302) 658-3989 (facsimile) | (215) 751-2205 (facsimile) |

*Counsel for Defendants Pepper Hamilton LLP and W. Roderick Gagné*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    A.    The loans caused no harm to SFC........................................................................ 1

    B.    The Trustee's own pleadings reveal that no duty existed on the part of the Pepper Defendants to offer advice on the distributions to Yao, and that any harm inflicted upon SFC as a result of the distributions was not caused by the Pepper Defendants ....................................... 3

    C.    The Trustee fails to allege essential elements of his claims for alleged damages arising from SFC's forbearance payments ............................... 5

CONCLUSION..................................................................................................................... 9

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Columbia Medical Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184
    (Pa. Super. Ct. 2003) ........................................................................................................ 3, 6

*Official Committee of Unsecured Creditors v. R. F. Lafferty & Co., Inc.*,
    267 F.3d 340 (3d Cir. 2001) .................................................................................................. 7

*Rizzo v. Haines*, 555 A.2d 58 (Pa. 1989) ....................................................................................... 4

*Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.)*,
    448 F.3d 672 (3d Cir. 2006) ............................................................................................. 1, 7

### **OTHER AUTHORITIES**

Pennsylvania Rules of Professional Conduct 2.1, Advisor (2005) .................................................. 3

**INTRODUCTION**

Now that the Third Circuit Court of Appeals has made it clear that the Trustee is not entitled to recover "deepening insolvency" damages on his claims for professional malpractice or breach of fiduciary duty against the Pepper Defendants, the Trustee has re-labeled the damages to which he contends he is entitled on his two tort claims. The Trustee had been content to characterize his alleged harm as deepening insolvency damages before the Third Circuit Court of Appeals found such damages unrecoverable in *Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.)*, 448 F.3d 672 (3d Cir. 2006) ("Seitz"). For the reasons discussed below, however, the Trustee's current theory of damages (which, in part, is nothing more that a re-labeling of the Trustee's old deepening insolvency damage theory) is, with one exception, entirely deficient.

**ARGUMENT**

The Trustee now identifies four categories of damages that he argues are recoverable on his claims for malpractice and breach of fiduciary duty against the Pepper Defendants: (1) loans from the Family Defendants and Royal; (2) distributions to Andrew Yao; (3) payments made to SFC-related companies; and (4) forbearance payments made by SFC. D.I. 113 at 12, 18. With one exception, however, these supposed "damages" do not arise from any legal advice given by the Pepper Defendants, did not actually harm SFC, were not caused by the Pepper Defendants, or are deepening insolvency damages by the Trustee's own definition.

    A.    **THE LOANS CAUSED NO HARM TO SFC.**

The Trustee claims that SFC was harmed as a result of the Pepper Defendants' alleged malpractice and breach of fiduciary duty because SFC incurred debt when it took on loans from the Family Defendants and Royal in the combined amount of approximately $22 million. *See id*. However, SFC suffered no injury when it incurred these loans because, with each loan, it

received a corresponding increase in assets. For instance, when Royal loaned SFC $12 million in 2002, SFC's liabilities increased by $12 million but it received an offsetting asset – $12 million in cash. The Trustee refers to the increase in debt that SFC incurred, but ignores entirely the accompanying dollar-for-dollar increase in assets.[1] The loans from the Family Defendants and Royal did not harm SFC because the liabilities incurred were balanced out by the assets received.

The Trustee now identifies as damages on his remaining tort claims the supposed above market loan terms to the Family Defendants, allegedly arising from the Pepper Defendants' supposed conflicts of interests or professional malpractice. D.I. 76 at ¶¶ 73 & 77; D.I. 113 at 12. The Pepper Defendants will prove that any conflict in connection with these loans was properly waived, and that these loans were made at market rates. However, because the instant motion is one for judgment on the pleadings, the Pepper Defendants acknowledge that the Trustee's Complaint can be read to state a claim for alleged damages attributable to supposedly uncompetitive loan terms. To that extent, the Pepper Defendants' motion for judgment on the pleadings on the entirety of Count IV (Professional Malpractice) was premature and is hereby converted to a motion for partial judgment on the pleadings.[2]

The Trustee's damages on Count IV should be limited to the recovery of any supposed payments made by SFC to the Family Defendants on above market terms. Similarly, the Pepper Defendants amend their request as to Count I (Breach of Fiduciary Duty) to limit the Trustee's damages claim on that Count to the disgorgement of legal fees and the recovery of any payments determined to be in excess of market rates. A new proposed order is attached to this reply brief as Exhibit A.

---

[1] There is no allegation in the Amended Complaint or anywhere else that SFC did not receive cash for the loans it assumed.

[2] The Pepper Defendants are confident that discovery will establish that any conflict was appropriately waived and that the loan terms were reached as a result of arms-length transactions.

2

**B.    THE TRUSTEE'S OWN PLEADINGS REVEAL THAT NO DUTY EXISTED ON THE PART OF THE PEPPER DEFENDANTS TO OFFER ADVICE ON THE DISTRIBUTIONS TO YAO, AND THAT ANY HARM INFLICTED UPON SFC AS A RESULT OF THE DISTRIBUTIONS WAS NOT CAUSED BY THE PEPPER DEFENDANTS.**

The Trustee alleges that the Pepper Defendants committed malpractice by failing to advise SFC that "it was required to consider distributions to and compensation arrangements with Yao, including with regard to their impact on SFC and the interest of creditors, customers and students." *See* D.I. 76 at ¶ 234; D.I. 113 at 10. But any harm supposedly resulting from SFC's distributions to its sole shareholder cannot support the Trustee's claims, because the Trustee has not alleged a duty on the part of the Pepper Defendants to offer any advice on that subject, nor has he alleged that SFC ever sought or would have heeded any such advice.

The Pepper Defendants obviously cannot be liable either for professional malpractice or breach of fiduciary duty for their failure to give advice on a course of conduct about which they were not consulted. Unless a lawyer knows that a client proposes a course of conduct *and* that such conduct is likely to result in *substantial adverse legal consequences*, a lawyer "is not expected to give advice until asked by the client." Pennsylvania Rules of Professional Conduct 2.1, Advisor, comment 5 (2005); *see also Columbia Med. Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1192 (Pa. Super. Ct. 2003) (quoting *Gorski v. Smith*, 812 A.2d 683, 703-704 (Pa. Super. Ct. 2002) (client who withholds information from attorney is responsible for his own protection). The Trustee does not allege, because he cannot truthfully do so, either that Yao or SFC asked for advice on these distributions, or that the Pepper Defendants gave any advice to SFC regarding these distributions, or that the Pepper Defendants were aware of the amount and timing of these distributions, or that Yao or SFC followed any advice given by Pepper, to their detriment and damage.

Instead, the Trustee makes only the conclusory allegations (D.I. 76 ¶¶ 27 & 173(c)) that Yao took $9.6 million in distributions "at a time when Pepper and Gagné knew or *should have known* that SFC was insolvent . . . and had a duty to advise SFC directors and officers concerning the consideration and impact of making such distributions to insiders . . . ." (emphasis added). Notably, the Trustee does not even allege that the Pepper Defendants had knowledge of the distributions, only that they "knew or should have known" of SFC's insolvency.[3]

Second, in order to state a viable malpractice claim, the Trustee must allege, among other things, that but for the alleged malpractice, the outcome would have been different and the alleged loss would not have been incurred. *See, e.g., Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989) (applying but-for causation in professional malpractice scenario). Even if the Pepper Defendants had a duty spontaneously to advise SFC on its distributions to Yao, which they did not, in order to prevail on its malpractice claim the Trustee must allege (and prove) that if the Pepper Defendants had advised SFC to reflect upon its distributions to Yao, SFC would not have made the approximately $9.6 million in distributions it did make to Yao. The Trustee's own allegations regarding SFC's business structure establish the causal flaw in the Trustee's strained logic. In his Complaint, the Trustee alleges that Yao was the sole shareholder, Chief Executive Officer, and Treasurer of SFC. *See* D.I. 76 at ¶ 23. The Trustee also alleges that SFC was knowingly operating a fraudulent Ponzi scheme and that it's Board, led by Yao, was breaching its fiduciary duties to the corporation. *See id*. at ¶ 49-60, 251. Although the Trustee is entitled to all reasonable inferences that can be drawn from his allegations, it is simply not reasonable to assume that Yao, the alleged architect of the scheme and its primary beneficiary, would have

---

[3]   Moreover, as the Rules of Professional Responsibility illustrate, and as we develop below, the Pepper Defendants had no duty to offer advice to SFC's officers and directors when such advice was not sought and the underlying facts regarding the amounts and timing of the distributions were not even communicated to the Pepper Defendants.

4

heeded whatever advice the Trustee believes the Pepper Defendants should have offered and ceased making distributions to himself.[4]

### C. THE TRUSTEE FAILS TO ALLEGE ESSENTIAL ELEMENTS OF HIS CLAIMS FOR ALLEGED DAMAGES ARISING FROM SFC'S FORBEARANCE PAYMENTS.

In his response to the instant motion, the Trustee asserts that the damages incurred by SFC as a result of the alleged malpractice and breach of fiduciary duty include the monies paid by SFC as forbearance payments (approximately $45 million). *See* D.I. 113 at 12. However, the only advice regarding payments by SFC on behalf of students that the Trustee points to is an email in which Gagné discusses a proposal by Yao to use "School Reserves" to make monthly payments on student loans. D.I. 76 at ¶ 69. In that March 2, 2000 email to Yao, quoted in its entirety in the Trustee's Complaint, Gagné wrote:

> Andrew,
>
> As you can tell, I think the use of the School Reserves to make monthly payments on the Student Loans will take a considerable amount of thought and work to wind through the bankruptcy issues, the consumer finance laws, the School Agreements, the Royal Policy and the Term Securitizations. The confluence of parties and disciplines and the need to track the payments from another source may make the problem not feasible but we will take a crack at it.
>
> In addition, we will have to see how the Capital Markets will react. I alluded to the fact that the market already is leery of how complicated the deals are for there [sic] size. Adding this factor will considerably compound the complexity. I know you said that they should not rely on it. However, if they should not then it looks like SFC is manipulating the pool performance. It seems to have some arbitrary elements. In short, this is something that we will need to bring on after discussing it with several parties, including Rusty Sailor [of PNC Capital Markets, one of SFC's underwriters] and John [Loofbourrow, another of SFC's underwriters].
>
> The final element is the Royal who will be directly affected and is if the plan is being used now. The discussion with the Royal will be difficult. They are a little

---

[4] Similarly, the Trustee does not allege: (1) that SFC asked for advice regarding payments to SFC-related entities, (2) that the Pepper Defendants gave any advice on the topic, or (3) that SFC would have heeded any such hypothetical advice.

5

> skittish right now because you are having difficulty going to market and laying a major restructuring on them may be untimely. In addition, if the payments have been made in this pool it would impact them and they will be concerned that it affects the experience account. I will also have to look at the Bankruptcy implication before the 3/22 meeting, which I have been asked to attend by Royal, if it is okay with you.
>
> To implement the new program is not impossible, but it will not be easy.
>
> Rod

D.I. 76 at ¶70. In the Trustee's entire Complaint, this email is the only legal advice that the Trustee alleges the Pepper Defendants gave SFC that relates to his claim for recovery of the alleged $45 million in forbearance payments.

Nowhere does the Trustee aver that the alleged advice communicated in this email was wrong, or misguided, or that SFC was harmed by any advice communicated in the email. In fact, the email evidences great skepticism on the part of Gagné, and states that Yao's proposal will need to be discussed with outside parties, ***including Royal***, and representatives of the capital markets, the underwriters. Moreover, the Trustee's own allegations establish that the advice actually given was purposefully not followed by SFC. Despite Gagné's response to Yao that his proposed restructuring may not be "feasible," that others should be consulted, and that the plan should be discussed with Royal and the underwriters, according to the Trustee's Complaint Yao and SFC did not pursue any of these avenues. Instead, the Trustee alleges that SFC continued to secretly make forbearance payments to mask defaults. D.I. 76 at ¶ 55 ("During the year leading up to the filing of the involuntary petition, SFC made Forbearance Payments of in excess of $45 million."); D.I. 113 at 12. Assuming that the March 2000 email conveyed legal advice to SFC, the Pepper Defendants, as a matter of law, cannot be held liable for offering advice that SFC failed to heed. *See Columbia Med. Group,* 829 A.2d at 1192 (under Pennsylvania law "a client who withholds information from his attorney, misrepresents to the attorney crucial facts regarding circumstances integral to the representation, or fails to follow the

6

specific instructions of the attorney has failed to exercise the reasonable care necessary for his or her own protection.").

These defects in the Trustee's damages claim for malpractice and breach of fiduciary duty shed light on why the Trustee (until now) relied on the deepening insolvency doctrine as the basis for his damages. Indeed, it is clear from the allegations in the Trustee's Amended Complaint that the forbearance payments and compensation payments to SFC-related entities are deepening insolvency damages:

> The Forbearance Payments delayed the filing of a bankruptcy petition, depriving unsecured creditors of an earlier opportunity to examine SFC's financial information and of sources of repayment for their claims.
>
> Pepper's [alleged conduct] enabled SFC to continue operating and to incur additional expenses and debt, including . . . $45 million in Forbearance Payments."

D.I. 76 at ¶¶ 212, 213. Similarly, the Trustee alleges that the "compensation arrangements among SFC, SLS and SMS, and within SMS and SLS, depleted SFC of assets which would have been available to SFC and its creditors." *Id.* at ¶ 192. These are deepening insolvency damages. *See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 347 (3d Cir. 2001) (defining deepening insolvency as "an injury to [a debtor's] corporate property from the fraudulent expansion of corporate debt and the prolongation of corporate life"); *see also Seitz*, 448 F.3d at 677.[5]

---

[5] The Trustee also alleges that the distributions to Yao were deepening insolvency damages. *See* D.I. 76 at ¶ 173(c) (alleging that distributions to Yao were improper because they were made "at a time when . . . SFC was insolvent or operating in the zone of insolvency [and could] impact . . . the viability of SFC and obligations to creditors").

7

*   *   *

The Trustee attempts to elude this motion by re-labeling his deepening insolvency damages as "traditional" tort damages. However, the Trustee's current damage theory does not align with his allegations because, as the Trustee repeatedly has acknowledged until now, his supposed damages really are deepening insolvency damages. Because the Trustee has not pleaded viable, non-deepening insolvency damages on his malpractice and breach of fiduciary duty claims, and because there are obvious defects with the Trustee's Amended Complaint as to the causal relationship between the supposed malpractice and the new supposed damages, partial judgment should be entered in favor of the Pepper Defendants on the malpractice and breach of fiduciary duty claims. The Trustee should be limited to pursuing damages arising from any alleged above-market loan terms and disgorgement of legal fees paid during any allegedly impermissible conflict of interest.

**CONCLUSION**

For the foregoing reasons, the Pepper Defendants respectfully request that the Court grant the Pepper Defendants' motion for partial judgment on the pleadings on Count I and on Count IV, as modified above.

Dated:  August 8, 2006
        Wilmington, Delaware        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                                */s/ William H. Sudell, Jr.*
William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
Daniel B. Butz, Esq. (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

- and -

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for Defendants Pepper Hamilton LLP and W. Roderick Gagné*

531976