**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| STUDENT FINANCE CORPORATION, | : | |
| Debtor, | : | |
| _____ | : | |
| | : | |
| CHARLES A. STANZIALE, JR., | : | |
| CHAPTER 7 TRUSTEE OF STUDENT | : | |
| FINANCE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 04-1551(JJF) |
| v. | : | |
| | : | |
| PEPPER HAMILTON LLP, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**APPENDIX OF UNREPORTED CASES CITED IN**
**BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF**
**COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL AND**
**DOCUMENTS RELATING TO COMPENSATION RECEIVED BY THE TRUSTEE**

---

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
Daniel B. Butz (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

TABLE OF CONTENTS

EXHIBIT

*American Health Sys, Inc.. v. Liberty Health Sys.*, No. 90-3112,
    1991 U.S. Dist. LEXIS 14400 (E.D. Pa. July 22, 1991)..............................................A

*In re Diet Drugs Prods. Liab. Litig.*, MDL Docket No. 1203,
    2001 U.S. Dist. LEXIS 5494 (E.D. Pa. Apr. 19, 2001) ..............................................B

*In re Nat'l Med. Imaging, L.L.C.*, Bankr. No. 05-12714,
    2005 Bankr. LEXIS 2374 (Bankr. E.D. Pa. Oct. 31, 2005) ........................................C

*Johnson Mach. Co. v. Kaiser Aluminum & Chem. Corp.*, No. 85-3200,
    1985 U.S. Dist. LEXIS 13479 (E.D. Pa. Nov. 26, 1985).............................................D

*Mixing Equip. Co. v. Innova-Tech, Inc.*, No. 85-0535,
    1986 U.S. Dist. LEXIS 21134 (E.D. Pa. Aug. 27, 1986)............................................ E

*Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, No. 88-9752,
    1991 U.S. Dist. LEXIS 14708 (E.D. Pa. Oct. 15, 1991).............................................. F

*Storch v. IPCO Safety Prods.*, No. 96-7592,
    1997 U.S. Dist. LEXIS 10118 (E.D. Pa. July 15, 1997)..............................................G

# EXHIBIT A

FOCUS - 8 of 14 DOCUMENTS

**AMERICAN HEALTH SYSTEMS, INC. v. LIBERTY HEALTH SYSTEM, et al.**

**Civil Action No. 90-3112**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1991 U.S. Dist. LEXIS 14400*

**July 22, 1991, Decided**

COUNSEL: [*1]

DAVID FREEMAN, DAVID FREEMAN, PHILADELPHIA, PENNSYLVANIA, ALLAN STEINBERG, PHILADELPHIA, PENNSYLVANIA, HENRY F. SIEDZIKOWSKI, ELLIOTT, BRAY & RILEY, PHILADELPHIA, PENNSYLVANIA, FOR PLAINTIFF.

S. GORDON ELKINS, STRADLEY, RONON, STEVENS & YOUNG, PHILADELPHIA, PENNSYLVANIA, WILLIAM G. SCARBOROUGH, STRADLEY, RONON, STEVENS & YOUNG, PHILADELPHIA, PENNSYLVANIA, MARY E. KOHART, DRINKER, BIDDLE & REATH, PHILADELPHIA, PENNSYLVANIA, EDWARD W. MULLINIX, SCHNADER, HARRISON, SEGAL & LEWIS, PHILADELPHIA, PENNSYLVANIA, BRIAN M. PETERS, POST & SCHELL, P.C., PHILADELPHIA, PENNSYLVANIA, ALAN M. LIEBERMAN, SCHNADER, HARRISON, SEGAL & LEWIS, PHILADELPHIA, PENNSYLVANIA, EDWARD C. MENGEL, JR., WHITE AND WILLIAMS, PHILADELPHIA, PENNSYLVANIA, GORDON W. GERBER, JEFFREY G. WEIL, JAN P. LEVINE, DECHERT, PRICE & RHOADS, PHILADELPHIA, PENNSYLVANIA, CHRISTOPHER W. MATTSON, LANCASTER, PENNSYLVANIA, SCOTT A. BURR, PHILADELPHIA, PENNSYLVANIA, THOMAS J. LOVELASS, BARLEY, SNYDER, COOPER & BARBER, LANCASTER, PENNSYLVANIA, FOR DEFENDANTS.

JOEL S. ROBBINS, PROSPECT PARK, PENNSYLVANIA, FOR MOVANT.

JUDGES:

Edwin E. Naythons, United States Magistrate.

OPINION BY:

NAYTHONS

OPINION:

MEMORANDUM AND ORDER

This is an antitrust action filed by plaintiff [*2] American Health Systems, Inc. ("AHS") against six hospitals in Delaware County, n1 Liberty Health System, and Delaware County Home Care Association.

> n1 The six original hospital defendants are Crozer-Chester Medical Center, Delaware County Memorial Hospital, Mercy Catholic Medical Center, Riddle Memorial Hospital, Sacred Heart Hospital and Taylor Hospital ("Hospital Defendants"). In April 1991, Riddle Memorial Hospital was dropped from the lawsuit by agreement of the parties. See Plaintiff's Brief at 1.

1991 U.S. Dist. LEXIS 14400, *2

Plaintiff has filed a Motion to Compel Answers to Deposition Questions from Richard Thomas, President of Defendant Delaware County Memorial Hospital. For reasons explained more fully below, plaintiff's motion is Granted.

BACKGROUND

On January 9, 1991, nonparty Richard Thomas, and the Hospital Defendants filed a Motion for Protective Order requesting that plaintiff be prohibited from requiring Richard Thomas to produce his personal income tax returns for the taxable years 1986 to present. On March 19, 1991, a [*3] hearing was held before this Court for the purpose of oral argument on plaintiff's then-pending Motion to Compel Production of Documents and the counter-motion for a protective order. See American Health Systems, Inc. v. Liberty Health System, No. 90-3112, Order (E.D. Pa. March 6, 1991). At the hearing, after plaintiff's counsel described the specific subject-matter and purpose of the discovery he was seeking, defendant's counsel had no objection, and it appeared to the Court that the parties had resolved the then-pending issue involving the production of Mr. Thomas' income tax returns without further need of the Court's intervention. On April 15, 1991, counsel for defendant represented to the Court by telephone conversation that the parties had in fact resolved the issue asserted in the Motion for Protective Order. See American Health Systems, Inc. v. Liberty Health System, No. 90-3112, Order (E.D. Pa. April 29, 1991) (a copy of which is attached to Plaintiff's Brief as "Exhibit D"). Thus, on April 29, 1991, the Motion for Protective Order was dismissed as moot. Id.

On June 6, 1991, plaintiff's counsel deposed Mr. Thomas. At Mr. Thomas' deposition, plaintiff's counsel [*4] inquired as to the amount of income recieved by Mr. Thomas from certain sources, and counsel for defendant objected on the ground that the Court "has already ruled . . . that that is not an issue to be discovered." See N.T. 6/6/91, at 17-19 (a copy of which is attached to Defendant's Brief as "Exhibit B").

On June 24, 1991, plaintiff filed the present Motion to Compel Answers to Deposition Questions. Specifically, plaintiff requests that this Court order that Richard Thomas and Defendant Delaware County Memorial Hospital (1) respond to plaintiff's deposition questions regarding the amount of income Mr. Thomas receives from any defendant or their affiliates; and, (2)

abide by the terms of the Agreement between the parties made at oral argument before the Court on March 19, 1991. Plaintiff also requests reasonable expenses, including attorneys' fees and costs incurred in preparing, researching, and presenting the present motion.

In response to plaintiff's motion, Defendant Delaware County Memorial Hospital argues that (1) the Hospital Defendants and Mr. Thomas never agreed to provide information concerning the specific amounts of compensation; and, (2) the amount of income Mr. [*5] Thomas received from the various defendants is not relevant. Respondent also argues that plaintiff should be sanctioned for filing a frivolous and harassing motion.

I. THE AGREEMENT AT THE MARCH 19, 1991 HEARING

One of the issues at the hearing held on March 19, 1991 was whether the Court should compel the production of the personal income tax returns of Richard Thomas. n2 However, at the hearing plaintiff's counsel explained to the Court that he did not seek to compel the entire tax returns of Mr. Thomas. Plaintiff's counsel stated that he was specifically only "looking for income from the entities that are involved in this suit." N.T. 3/19/91, at 44-45 (a copy of which is attached to Plaintiff's Brief as "Exhibit B").

> n2 Richard Thomas is the President of Defendant Delaware County Memorial Hospital and a member of the Board of Crozer-Keystone Health Systems. See Defendant's Response at para. 2. Mr. Thomas is also the Chairman of the Board of defendant Liberty Health System. Id. at para. 2.

With respect [*6] to the agreement at the March 19, 1991 hearing, respondent argues that the Hospital Defendants and Mr. Thomas never agreed to provide information concerning the specific amounts of compensation. See Defendant's Brief at 4. Specifically, defendant states:

The transcript of the Oral Argument on this Motion shows only that plaintiff's counsel sought the income from any of the nonparty employees and/or officers received from any of the entities involved in the lawsuit,

1991 U.S. Dist. LEXIS 14400, *6

business expense deductions involving any of the entities involved in the lawsuit and charitable contributions involving either United Way of Delaware County or health care institutions. Defendant's counsel, whether clear from the record or not, only agreed to provide information from the nonparty officers and/or employees tax returns that showed (1) charitable contributions involving either United Way of Delaware County or Liberty Health System or (2) evidence that said nonparties received any income from United Way of Delaware County or Liberty Health System.

Defendant's Response at para. 5 (emphasis in original). Defendant further argues that "plaintiff has always been seeking the sources of these nonparties' [*7] income and now is also seeking the amount of the income." See Defendant's Response at para. 6.

At the March 19th hearing, the following exchange occurred:

THE COURT: Well why do you need the personal income tax returns?

MR. SIEDZIKOWSKI [Plaintiff's Counsel]: Your Honor, I think we're looking for, and I again have offered with other counsel, to limit this to -- what I'm concerned about is any income . . .

THE COURT: From?

MR. SIEDZIKOWSKI: . . . from these -- the entities that are defendants in this. And part of limiting that is [sic] it appears now as we're getting into discovery, Liberty Health System is actually the related group of three or four corporations.

MR. SIEDZIKOWSKI: There's three -- there's three items that I wanted from the tax returns. Not the entire tax returns. I don't care about these people's financial affairs.

THE COURT: Right.

MR. SIEDzIKOWSKI: I was looking for income from the entities that are involved in this suit. I was looking for business expense deductions . . .

THE COURT: Right.

MR. SIEDZIKOWSKI: . . . from -- involving any of the entities involved in this suit. And I was looking for charitable contributions involving [*8] either United Way in Delaware County or health care institutions. Because there is a key issue that is referenced in the complaint that these people are really using United Way and charitable contributions to in fact fund the deficit created by providing below costs services to the hospital. Those are the three items from the returns. I don't need to see the returns in total. If there's a redacted version of the returns or 1099's or W-2's that could give me that information, I would take that as an alternative. I would take an in camera inspection by the Court to determine if there is any of that information. You know, I'm looking for certain limited pieces of information to establish my conspiracy trail in depositions, documentary evidence of it. I'm not trying a fishing expedition into these individual's personal lives.

THE COURT: Any objections to those items only?

MR. PETERS [Defendant's Counsel]: No. If plaintiff's attorney would like me to review that and redact it, I'll be happy to.

MR. SIEDZIKOWSKI: I would accept that, Your Honor.

N.T. 3/19/91, at 44-45 (emphasis added) (a copy of which is attached to plaintiff's Brief as "Exhibit A").

The Court views the agreement [*9] at the March 19th hearing to be clear and unambiguous. At the hearing, plaintiff's counsel made clear that he was requesting the "income from the entities that are involved in this suit." See id. at 44-45 (emphasis added). There is no evidence in the transcript of the hearing that indicates that plaintiff's counsel was requesting or was willing to agree to accept merely the sources of income by the entities involved in this lawsuit. Specifically, counsel for plaintiff stated that he "was looking for charitable contributions involving either United Way in Delaware County or health care institutions." Id. at 45. As counsel explained, this discovery is relevant "because there is a key issue that is referenced in the complaint that these people are really using United Way and charitable contributions to in fact fund the deficit created by providing below costs [sic] services to the hospital." Id. at 45 (emphasis added). Counsel further stated: "I don't need to see the returns in total. If there's a redacted version of the returns or 1099's or W-2's that would give

me that information, I would take that as an alternative." Id. at 45. Thus, counsel was clearly requesting [*10] specific information on the income from these institutions. When defendant's counsel was asked if he had any objections to the specific items requested by plaintiff's counsel, defendant's counsel replied negatively. Id. at 45.

Defendant's counsel agrees that plaintiff's attorney "sought the income from any of the nonparty employees and/or officers received from any of the entities involved in the lawsuit, business expense deductions involving any of the entities involved in the lawsuit and charitable contributions involving either United Way of Delaware County or health care institutions." Defendant's Response at para. 5. However, shockingly, despite the fact that defendant's counsel was aware of what plaintiff's counsel was seeking at the hearing, defendants counsel now argues that, "whether clear from the record or not, [defendant's counsel] only agreed to provide information from the nonparty officers and/or employees tax returns that showed (1) charitable contributions involving either United Way of Delaware County or Liberty Health System or (2) evidence that said nonparties received any income from United Way of Delaware County or Liberty Health System." Defendant's [*11] Response at para. 5.

Defendant's counsel has completely mischaracterized the agreement of the parties made before this Court at the March 19, 1991 hearing, and there is absolutely no evidence in the record of the hearing indicating that the agreement between the parties was in fact as defendant's counsel describes it. plaintiff's counsel agreed to accept and defendant's counsel had no objection at the hearing to producing "a redacted version of the [tax] returns . . . that would give [him the] information" he was requesting, which was "the income from the entities that are involved in this suit." This was especially made clear when plaintiff's counsel explained the purpose of the discovery he sought. n3 Moreover, defendant's counsel admits that plaintiff's counsel was indeed seeking the income and not merely the source of the income or merely "evidence that said nonparties received any income" from the sources in question. See Defendant's Response at 5 (emphasis added).

n3 Plaintiff sought the discovery in question for the purpose of showing that "United Way and charitable contributions [were being used] to in fact fund the

deficit created by providing below costs services to the hospital." See N.T. 3/19/91, at 45. Obviously, providing merely sources of income and not the amounts of income would not significantly further plaintiff's counsel's stated purpose.

[*12]
## II. THE ISSUE OF RELEVANCY

With respect to the relevancy of the information sought by plaintiff, the Court finds that pursuant to *Rule 26 of the Federal Rules of Civil Procedure*, the requested information is relevant.

Although public policy disfavors the disclosure of income tax returns, see *DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982)*, in appropriate circumstances courts have held tax returns discoverable. See id.; Kravitz v. Jewelry Basics, Inc., No. 89-2657, slip op. (E.D. Pa. April 12, 1990) (tax returns relevant to computation of alleged damages and thus discoverable); *Poulos v. NAAS Foods, Inc., 132 F.R.D. 513, 521-22 (E.D. Wis. 1990)*.

In First Fidelity Bank, N.A. v. Nissenbaum, No. 89-2248, slip op. (E.D. Pa., filed March 28, 1991), the Honorable Franklin S. Van Antwerpen, United States District Court Judge, was faced with a similar issue as in the present case. In First Fidelity Bank, plaintiff requested documents and deposition answers relating to defendants' tax returns, and Judge Van Antwerpen granted plaintiff's Motion to Compel Answers to Discovery and Production of Documents. Id. at 2, 5.

The [*13] Court in First Fidelity Bank adopted the two-part approach to balancing the factors outlined in *United States v. Bonanno Organized Crime Family, 119 F.R.D. 625, 627 (E.D. N.Y. 1988)*. Initially, the tax returns must first be found relevant. First Fidelity Bank, supra at 4. Then the need for the returns must be compelled because the information therein is not otherwise readily available. Id. at 4 (citing *Bonanno, supra*) The party seeking discovery of the tax returns bears the burden of establishing relevance; the party resisting disclosure bears the burden of furnishing alternative information sources. First Fidelity Bank, supra at 4; Kravitz, supra at 2 (citing *Bonanno, supra at 627*).

Rule 26(b)(1) provides that discovery need not be

confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978).* [*14] Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction. *Buffington v. Gillette Co., 101 F.R.D. 400 (W.D. Okla. 1980);* see also *Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, at 124 (M.D. N.C. 1989).* Since the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, see *Mallinckrodt Chem. Works v. Goldman, Sachs & Co., 58 F.R.D. 348 (S.D. N.Y. 1973),* the determination of relevance is within the district court's discretion. *O'Neal v. Riceland Foods, 684 F.2d 577 (8th Cir. 1982); Stewart v. Winter, 669 F.2d 328 (5th Cir. 1982); Bowman v. General Motors Corp., 64 F.R.D. 62 (E.D. Pa. 1974).*

Defendant's counsel relies on a letter written to plaintiff's counsel on May 3, 1991 allegedly confirming the Agreement reached before me on March 19, 1991. See Letter from Brian M. Peters, Esquire, defendant's counsel, to Henry F. Siedzikowski, [*15] Esquire, plaintiff's counsel (dated May 3, 1991) (a copy of which is attached to Defendant's Brief as "Exhibit D"). In that letter counsel attempted to materially alter the Agreement reached in open court by omitting from the letter "the income from the entities that are involved in this suit," as well as "business expense deductions" spelled out by plaintiff's counsel. See N.T. 3/19/91, at 44-45. Plaintiff's counsel in that letter stated:

We further agreed that we would review these income tax documents and determine whether there was any evidence in the same that the deponents had made any contribution to Liberty Health System or the United Way or had received any income from these entities.

Letter from Brian M. Peters, Esquire to Henry F. Siedzikowski, Esquire (dated May 3, 1991).

Counsel's attempt to limit the Agreement to any contributions to Liberty Health System or United Way violates the Court Agreement because all of the defendants in the suit are part of Liberty Health System,

the Agreement applied to all defendants, and the letter could not change the Agreement.

Moreover, plaintiff has never sought Mr. Thomas' compensation or income from anywhere except [*16] the defendant entities and is willing to comply with any Protective Order to keep such information confidential except for use in this litigation.

In the present case, plaintiff has met its burden of establishing the relevance of the requested information. The Court finds that the amount of compensation Mr. Thomas receives from the various defendants in this lawsuit is relevant to (1) determine Mr. Thomas' potential bias, and (2) to examine the methods the defendant hospitals used to derive income from Liberty Health System. The requested discovery is relevant to plaintiff's allegations that the Defendant Hospitals conspired with each other to form defendant Liberty Health System, and further, that the goal of this conspiracy was to generate income for the hospitals. See *TWA v. Hughes, 332 F.2d 602, 615 (2d Cir. 1964)* (antitrust action where court found income tax information unquestionably relevant); *DeMasi, 669 F. 2d at 116* (civil antitrust action where district court ordered production of gross incomes of 97 nonparty physicians and 10 individual defendant physicians).

Since the plaintiff has met its burden of establishing the relevance of [*17] the requested information, the respondents have the burden of furnishing alternative information sources. Kravitz, supra at 2 (citing *Bonanno, supra at 627);* see First Fidelity Bank, supra at 4. In the present case, however, the defendant has not suggested an alternative source for the requested information. Thus, after applying the two-part approach used in Bonanno, the Court finds that the information sought by plaintiff regarding Mr. Thomas' income is discoverable. Furthermore, plaintiff's counsel shall submit to the Court a proposed protective order that will adequately protect the witnesses' legitimate privacy interests in this information.

III. THE ISSUE OF SANCTIONS

The final issue before this Court is whether defendant, Delaware County Memorial Hospital, and its counsel, Brian M. Peters, Esquire, should be required to pay the expenses incurred by plaintiff in connection with the preparation of this motion. In general, Rule 37(a)(4) requires a deponent whose conduct necessitates a motion

to compel to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees. Such costs may also be imposed against [*18] an attorney who advises the deponent to engage in such conduct. However, no costs shall be imposed if the Court finds that the opposition to this motion to compel was substantially justified or that other circumstances make an award of expenses unjust.

In the instant case, this Court finds that the defendant and its counsel, Mr. Peters, acted without substantial justification. This Court believes defendant and its counsel abused the discovery process by forcing a discovery dispute to court when no genuine dispute exists. Such abuse is a great waste of judicial time, energy and expense. Such conduct must be deterred and sanctioned. However, the overriding rationale for this Court's imposition of expenses is to reimburse the moving party, consequently, this Court orders defendant and its counsel to pay plaintiff's reasonable expenses incurred in obtaining this order, including attorney fees. A party may be sanctioned for disregarding the obligations imposed upon the discovery rules without a direct violation of a court order. *Guidry v. Continental Oil Company, 640 F.2d 523, 533* (5th Cir.), cert. denied, *454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981).* [*19] If necessary, this Court will conduct a hearing to determine the amount of the award at a later date.

It cannot go unmentioned that this is not the first occasion that this Court has been obliged, very reluctantly, to impose sanctions upon Attorney Peters. In a Memorandum and Order of January 15, 1991, which was affirmed by Judge James McGirr Kelly, on March 3, 1991, I found and held that Attorney Peters together with his client Taylor Hospital, never "intended in good faith to attend" the scheduled deposition. "Notwithstanding counsel's statements that he had earlier agreed that the deposition of his client as well as all of the other hospital depositions had been canceled for the 14th, these words are clearly belied by his own conduct". American Health Systems v. Liberty Health System, No. 90-3112, slip op. at 5 (E.D. Pa. Jan. 15, 1991) (emphasis added).

Once again, counsel has resorted to similar measures in mischaracterizing an agreement that he made in open court attempting to construct language clearly beneficial to himself and to his client while completely ignoring n4 a stipulation made in the presence of this United States Magistrate Judge. Counsel for Delaware County [*20]

Memorial Hospital apparently does not understand that if a party is forced to make a motion under Rule 37(a)(4) for an order compelling discovery, and I find that opposition to the motion was not substantially justified, I will award costs. Put another way, if the party opposing discovery acts unreasonably, as attorney Peters has acted, he will pay for it.

> n4    In the January 15, 1991 Memorandum this Court stated that counsel for defendant "violated Rule 37 in refusing to appear with his client, and at the same time filing a motion for a protective order without informing plaintiff's counsel that this was his ultimate objective." American Health Systems v. Liberty Health System, No. 90-3112, slip op. at 6 (E.D. Pa. Jan. 15, 1991).

In addition to the Rule 37(a)(4) sanctions, I shall also conduct a hearing for Attorney Peters to show cause why the Court should not assess additional attorney fees under *Federal Rule of Civil Procedure 11* and the Court's "inherent power" to sanction an attorney who acts "in bad faith, [*21] vexatiously, wantonly, or for oppressive reasons." *Hamer v. Lake County, 819 F.2d 1362, 1370 (7th Cir. 1987)* (quoting *F.D. Rich Co. v. United States, 417 U.S. 116, 129 (1974)* (other citations omitted)); see also *Textor v. Bd. of Regents of N. Ill. Univ., 711 F.2d 1387 (7th Cir. 1983)* ("[The] power to punish counsel who willfully abused judicial processes [was] recently recognized as inherent in a court's power to protect the orderly administration of justice") (citing *Roadway Express Inc. v. Piper, 447 U.S. 752, at 766 (1980)).* It is well-established that courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process. See *Chambers v. NASCO Inc., 111 S.Ct. 2123 (1991)* (where the United States Supreme Court held that the district court properly invoked its inherent power in assessing as a sanction for Chambers' bad faith conduct, the attorney fees and related expenses paid by NASCO).

The Court in Roadway as well as Chambers held that apart from *28 U.S.C. § 1927,* federal courts [*22] have the inherent power to award attorney fees against counsel personally when the court has found that the attorney

1991 U.S. Dist. LEXIS 14400, *22

acted in bad faith. "Bad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Hackman v. Valley Fair, 932 F.2d 239 (3d Cir. 1991)* (addressing the issue of Section 1927 sanctions).

The Court in Roadway Express did not uphold the trial court's award of attorney fees because the trial court did not make a specific finding that counsel's conduct "constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." *Roadway, 447 U.S. at 767.* Since this United States Magistrate Judge has not made a finding as to whether Attorney Peters acted in bad faith, I will conduct an evidentiary hearing and order Mr. Peters to show cause why additional attorney fees should not be imposed as a sanction for any of the above-discussed reasons.

An appropriate Order is hereby entered.

ORDER

AND NOW, this 22nd day of [*23] July, 1991, it is hereby ORDERED that:

(1) The plaintiff's Motion to Compel Answers to Deposition Questions from Richard Thomas, President of defendant Delaware County Memorial Hospital, is GRANTED.

(2) Richard Thomas and Defendant Delaware County Memorial Hospital shall abide by the terms of the Agreement between the parties made at oral argument before this U.S.M. Judge on March 19, 1991 regarding the income from the entities involved in this suit, business expense deducts and charitable contributions involving either United Way in Delaware County or health care institutions.

(3) plaintiff's counsel shall submit to the Court within ten (10) days a proposed Protective Order that will adequately protect the witnesses' legitimate privacy interests in the information ordered.

(4) An award in favor of plaintiff of the expenses in bringing the Motion to Compel including attorney fees is ORDERED. In addition, joint and several liability for such expenses is hereby imposed on defendant and its counsel. Plaintiff shall provide a verified and itemized statement of such expenses within seven (7) days and a notice to defendant and its counsel.

(5) Delaware County Memorial Hospital and its [*24] counsel are to bear the expense of reconvening Richard Thomas' deposition.

(6) Attorney Peters is hereby ORDERED to show cause why additional attorney fees should not be entered under the Court's inherent powers and for this purpose a hearing is hereby set for AUGUST 12, 1991, at 10:30 A.M., in Courtroom 2, Fourth N; Floor, U. S. Courthouse, 601 Market Street, Philadelphia, PA. 19106.

# EXHIBIT B

LEXSEE 2001 US DIST LEXIS 5494

**IN RE: DIET DRUGS
(PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS
LIABILITY LITIGATION**

**MDL DOCKET NO. 1203**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

*2001 U.S. Dist. LEXIS 5494*

**April 19, 2001, Decided
April 19, 2001, Filed**

**DISPOSITION:** [*1] Special Discovery Master Decision and Recommendation No. 22 AFFIRMED.

**COUNSEL:** For GREGORY P. MILLER, SPECIAL MASTER: GREGORY P. MILLER, MILLER, ALFANO & RASPANTI, P.C., PHILA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: NINA M. GUSSACK, EDWARD W. MADEIRA, JR., PEPPER, HAMILTON & SCHEETZ, PHILA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: MICHAEL T. SCOTT, REED, SMITH, SHAW & MCCLAY, PHILA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: ROBERT N. SPINELLI, KELLEY, JASONS, MC GUIRE & SPINELLI, PHILADELPHIA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: ARNOLD LEVIN, LEVIN, FISHBEIN, SEDRAN & BERMAN, PHILADELPHIA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: MEREDITH MANNING, U.S. ATTORNEY'S OFFICE, WASHINGTON, DC USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: GERALD COOPER KELL, U.S. DEPARTMENT OF JUSTICE, [*2] WASHINGTON, DC USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: JOHN FITZPATRICK, LECLAIR & RYAN, RICHMOND, VA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: ANDREW A. CHIRLS, WOLF, BLOCK, SCHORR AND SOLISCOHEN LLP, PHILADELPHIA, PA USA.

For IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION: ANDREW CLAUSEN, CARR, ALFORD, CLAUSEN & MC DONALD, MOBILE, AL USA.

**JUDGES:** LOUIS C. BECHTLE, J.

**OPINION BY:** LOUIS C. BECHTLE

**OPINION:**

MEMORANDUM AND PRETRIAL ORDER NO. 1910

BECHTLE, J.

April 19, 2001

Presently before the Court is American Home Products Corporation's ("AHP") limited appeal of Special Discovery Master Decision and Recommendation No. 22 ("D&R 22"). Specifically, AHP appeals the decision and recommendation that the attorney-client privilege was waived as to documents shared among AHP, Interneuron Pharmaceuticals, Inc. ("Interneuron") and/or Les Laboratories Servier ("Servier") based upon a finding that the common interest doctrine does not apply to their common effort to convince federal regulatory agencies to remove fenfluramine [*3] and dexfenfluramine from lists of controlled substances under the Controlled Substances Act ("descheduling"). n1 For the reasons set forth below, the Court will affirm Special Discovery Master Decision and Recommendation No. 22.

---

n1 AHP also appealed the decision and recommendation that confidential attorney-client communications relating to the attorney's "lobbying services" with government officials in support of AHP's legal interests were not protected by the attorney-client privilege. (AHP Appeal at 1-2.) Because this issue has been resolved, it will not be addressed.

---

**I. BACKGROUND**

**A. Procedural History**

In this Multidistrict Litigation No. 1203 ("MDL 1203"), AHP withheld from production approximately 9,500 documents on the basis of privilege. As required under *Federal Rule of Civil Procedure 26(b)(5)*, AHP prepared a privilege log identifying the withheld documents. The Plaintiffs' Management Committee ("PMC") disputes the adequacy of AHP's privilege log and the validity of the privileges [*4] asserted.

Specifically, the PMC argues that the documents are not privileged, or that any privilege was waived because the documents were exchanged between AHP, Interneuron and Servier.

AHP argues that certain communications exchanged between Interneuron, Servier and AHP are protected from waiver under the common interest doctrine. Specifically, AHP argues that Interneuron, Servier and AHP had a collective common interest in descheduling these drugs. As a result, AHP asserts that it can properly withhold documents exchanged between or shared with Interneuron and/or Servier concerning descheduling efforts related to the diet drugs. The PMC contends that the common interest doctrine is inapplicable to these documents.

AHP provided copies of the Interneuron and Servier documents and an Affidavit of Robert A. Dougan, Senior Vice President of Commercial Development for AHP, to the Special Discovery Master. See D&R 22 Ex. A (reflecting Dougan's characterization of relationship between three entities as having "common interests"). The Special Discovery Master announced a preliminary decision during a status conference on May 5, 1999. AHP requested reconsideration of that decision and [*5] submitted the affidavit of Frank J. Sasinowski, Esquire, of Hyman, Phelps & McNamara, P.C. ("Hyman Phelps"), describing the firm's representation of AHP, Interneuron and Servier. (D&R 22 Ex. B.) The PMC submitted a response on May 18, 1999.

On June 9, 1999, the Special Discovery Master filed D&R 22, finding that: 1) some of the withheld documents are not privileged and must be produced; 2) some of the documents are privileged; 3) a portion of AHP's otherwise privileged documents that were shared with Servier and/or Interneuron are protected by the common interest doctrine. On June 18, 1999, AHP appealed D&R 22. On July 2, 1999, the PMC filed a response and the parties filed additional papers. On January 6, 2000, the court asked AHP to submit a supplemental brief addressing the law on the common interest doctrine in the states that treat the doctrine most favorably. AHP submitted that brief, the PMC responded and AHP filed a reply.

**B. Factual History**

Servier held the international patent rights to both fenfluramine and dexfenfluramine. In 1963, Science

Union & Company, a Servier affiliate, entered into a licensing agreement with A.H. Robins Company, Inc. ("Robins"). That [*6] licensing agreement granted Robins the right to market fenfluramine in the United States. AHP acquired Robins in 1989. As a result, AHP succeeded to Robins' rights regarding the marketing of fenfluramine. The licensing agreement with Science Union/Servier required AHP to seek FDA approval of fenfluramine. In the event that approval was obtained, it also required AHP to pay royalties to Servier until 1988. In 1973, SmithKline Corporation instituted a patent infringement action against AHP, Servier and Science Union Company regarding fenfluramine.

In February 1990, Servier entered into a licensing agreement with Interneuron, granting Interneuron an exclusive license to market another diet drug, dexfenfluramine, in the United States. This licensing agreement required Interneuron to file a New Drug Application ("NDA"), seeking FDA approval to market dexfenfluramine in the United States. It also required Interneuron to report to Servier on the progress of the NDA. Similar to the Servier-AHP licensing agreement for fenfluramine, if the FDA approved dexfenfluramine for marketing in the United States, Interneuron was required to pay royalties to Servier.

In November 1992, Interneuron and [*7] American Cyanamid, AHP's predecessor in interest, entered into a sublicensing agreement for the patent of dexfenfluramine for use in the United States. Pursuant to the sublicensing agreement, AHP had the right to comment on drafts of the dexfenfluramine NDA prior to filing, and Interneuron was responsible for attempting to have dexfenfluramine descheduled, i.e., relieved of the scheduling requirements under the Controlled Substances Act.

In April 1996, the FDA approved dexfenfluramine. Shortly thereafter, in June 1996, Interneuron and AHP entered into another agreement which "allocated responsibility for the reporting of adverse drug events, provided for the parties' cooperation in the defense of any product liability claims and provided for cross-indemnification arrangements relating to certain types of legal claims." (D&R 22 Ex. A P 10.) In September 1997, both fenfluramine and dexfenfluramine were withdrawn from the United States market.

## II. LEGAL STANDARD

*Rule 53 of the Federal Rules of Civil Procedure*

provides for appointment of a Special Discovery Master. The Special Discovery Master's decision is the functional equivalent of a magistrate judge's adjudication [*8] of a non-dispositive motion. *Katz v. AT&T Corp., 191 F.R.D. 433, 435 (E.D. Pa. 2000)*. Like the decision of a magistrate judge, a Special Discovery Master's decision is entitled to great deference, and will be affirmed unless it is clearly erroneous or contrary to the law. Local R. Civ. P. 72.1; *Katz, 191 F.R.D. at 436*. A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Katz, 191 F.R.D. at 435* (citations omitted).

## III. DISCUSSION

The court will briefly review the privileges at issue, and then address the specific issue of whether the common interest doctrine, under the most favorable reading, applies to this dispute.

### A. The Attorney-Client Privilege

At the time that D&R 22 was filed, the Federal Rules of Civil Procedure permitted discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Fed. R. Civ. P. 26(b)(1)* (amended 2000). n2 The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and [*9] their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*. However, the privilege "obstructs the truth-finding process," and must be construed narrowly. *Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3d Cir. 1991); In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir. 1979)*. The party asserting the privilege bears the burden of proof. *In re Sealed Case, 237 U.S. App. D.C. 312, 737 F.2d 94, 99 (D.C. Cir. 1984)*. Indeed, "failure of proof as to any element causes the claim of privilege to fail." *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 515 (M.D.N.C. 1986)*.

Communication is so privileged only when:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was

2001 U.S. Dist. LEXIS 5494, *9

made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication [*10] relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994)*. The privilege does not protect business and technical advice. See *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993)* (stating that privilege is inapplicable where legal advice is incidental to business advice); *Hardy v. New York News, Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987)* (stating that "the attorney-client privilege is triggered only by a client's request for legal, as contrasted [sic] with business advice . . .").

N2 Effective December 1, 2000, the scope of discovery is now limited to "any matter, not privileged, that is relevant to the claim or defense of any party." *Fed. R. Civ. P. 26(b)(1)*.

[*11]

### B. Work Product Privilege

The work product doctrine, codified in *Federal Rule of Civil Procedure 26(b)(3)*, is a qualified privilege that protects materials prepared by an attorney, or an attorney's agent, in anticipation of or for litigation. *In re Ford Motor Co. v. Kelly, 110 F.3d 954, 967 (3d Cir. 1997); United States v. Ernstoff, 183 F.R.D. 148, 153 (D.N.J. 1998)* (citing *Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947)*). *Federal Rule of Civil Procedure 26(b)(3)* provides that:

a party may obtain discovery of documents and tangible things otherwise

discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*Fed. R. Civ. P. 26(b)(3)* (emphasis provided). An attorney's mental impressions, conclusions, opinions or [*12] legal theories are also protected from discovery. *In re Ford Motor Co. v. Kelly, 110 F.3d 954, 967 (3d Cir. 1997)*. This privilege is also limited in that materials prepared in the regular course of business, even if prepared by an attorney, are not protected. The party asserting the privilege, again, bears the burden of proof. *Allendale Mut., 152 F.R.D. at 137; Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 504-05 (E.D.N.Y. 1986)*.

The court must inquire "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Ernstoff, 183 F.R.D. at 155; see In re Grand Jury Investigation, 599 F.2d at 1229* (discussing requisite nexus between preparation of material and prospect of litigation). Litigation must be more than a remote possibility and "the anticipation of future litigation must have been the primary motivation which led to the creation of the documents." *Allendale Mut., 152 F.R.D. at 136* (citing *National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)*); [*13] see *Coastal States Gas Corp. v. Dep't of Energy, 199 U.S. App. D.C. 272, 617 F.2d 854, 865 (D.C. Cir. 1980)* (noting that, at very least, some articulable claim, likely to lead to litigation, must have prompted preparation of materials); *Ernstoff, 183 F.R.D. at 155* (stating that "[a] party should demonstrate that there existed 'an identifiable specific claim or impending litigation when the materials were prepared'").

### C. Waiver of Privilege/The Common Interest Privilege Doctrine

The court must determine whether the privileges

2001 U.S. Dist. LEXIS 5494, *13

were waived, or as AHP contends, the "common interest privilege doctrine" protects the documents from waiver.

The common interest doctrine does not apply unless the conditions of privilege are otherwise satisfied. *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 634 (M.D. Pa. 1997)*. It is well-settled that a client's voluntary disclosure of attorney-client privileged communications to a third party waives the privilege. *Westinghouse, 951 F.2d at 1423, 1424*. Work product immunity may be waived if disclosure "substantially increases the opportunity for potential adversaries [*14] to obtain the information." *Griffith v. Davis, 161 F.R.D. 687 at 699*. Again, the party asserting this narrowly applied doctrine has the burden of establishing its elements. *United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)*.

Generally, the common interest doctrine preserves privilege where two or more persons or companies that share a common interest in a legal issue exchange privileged communications with one another. At its core, it applies when one attorney represents multiple individuals on the same matter. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995)*. In that instance, it protects confidential communications shared between the clients and their attorney to establish a defense strategy. Id.; *In re Regents of Univ. of Cal., 101 F.3d 1386, 1389 (Fed. Cir. 1996)*. Communications between the clients and their attorney "are not privileged in disputes between the joint clients, but are protected from disclosure to others." *Griffith v. Davis, 161 F.R.D. 687, 693 (C.D. Cal. 1995)*.

In certain circumstances, the common interest doctrine extends to protect information [*15] shared between parties with a "community of interest," that is, an "identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Duplan Corp. v. Deering Milliken Inc., 397 F. Supp. 1146, 1174 (D.S.C. 1974)*. However, the subject matter must be of a legal nature -- something more than mere concurrent legal interests or concerns -- and there may not exist any divergence in the interests. *Cheeves v. Southern Clays, Inc., 128 F.R.D. 128, 131 (M.D. Ga. 1989); Research Inst. Med. & Chemistry v. Wisconsin Alumni Research Foundation, 114 F.R.D. 672, 678 (W.D. Wis. 1987); Duplan Corp. 397 F. Supp. at 1172; see Bank Brussels, 160 F.R.D. at 447* (stating that doctrine does not include joint business strategy that happens to include concern about litigation).

### D. The Special Discovery Master Decision

AHP disputes the Special Discovery Master's finding that the shared communications between AHP, Servier and Interneuron concerning descheduling was a business interest, and contends that the shared interest with respect to descheduling [*16] was legal in nature. (AHP Appeal at 9.)

#### 1. Non-Privileged Documents

The Special Discovery Master determined that certain documents are not privileged. He categorized the documents as follows: Lobbying Services (this category was resolved prior to this opinion and will not be addressed herein); Summaries of Non-Confidential Communications; Business Dealings; Activities of Attorneys; Information about Meetings; and Concurrent Review By Both Legal and Non-Legal Personnel. After review, the court finds that the decision of the Special Discovery Master is not erroneous. Accordingly, AHP may not withhold documents that fit the above descriptions because they are not privileged.

#### 2. Privileged Documents and The Common Interest Exception

AHP maintains that some documents do not fall into the above categories. Accordingly, it must be determined whether the documents are protected by the common interest exception. The Court finds that the decision of the Special Discovery Master is not erroneous and indeed concurs with the Special Discovery Master's findings on this issue. Those findings are summarized below.

##### a. Protected Communications

(i). FDA Approval

For the reasons [*17] set forth in D&R 22, AHP has met its burden of showing that the documents shared with Interneuron and/or Servier which pertain to obtaining and maintaining FDA approval for fenfluramine and dexfenfluramine are protected.

(ii). Patent Infringement

In the patent infringement action filed by SmithKline Corporation, AHP and Servier were codefendants attempting to establish a common defense. Accordingly,

Case 1:04-cv-01551-JJF     Document 137     Filed 10/04/2006     Page 17 of 52

Page 6
2001 U.S. Dist. LEXIS 5494, *17

those communications are protected.

(iii). Withdrawal of the Diet Drugs from the Market

When the diet drugs were withdrawn from the market in 1997, all three entities were facing potential product liability litigation relating to the marketing of the drugs. AHP has met its burden of showing that these communications are protected.

(iv). Exclusivity and Redux Patent Term Extension

AHP has met its burden of showing that communications relating to the patent process are protected.

### b. Communications Not Protected - Descheduling

AHP has failed to show that the communications relating to descheduling are protected.

(i). Legal Representation

First, AHP has not shown that the representation was joint. The evidence shows that Hyman Phelps represented all three entities for different [*18] periods of time, and that for a period of time, the representation overlapped. (D&R 22 Ex. B.) Concurrent representation is not necessarily joint representation. The court notes that Interneuron and Servier both retained Hyman Phelps in 1990. In 1991, Interneuron petitioned the DEA and FDA to deschedule fenfluramine. (AHP Appeal at 7.) AHP had not retained Hyman Phelps when Interneuron first petitioned the DEA and FDA. Yet, AHP maintains that the representation was joint on this specific issue. The record shows that AHP did not retain Hyman Phelps with respect to descheduling until April 1996, a full five years later. (AHP Reply at 14 n.6.) Although this lapse alone is not determinative, it is indicative of the lack of a joint representation.

(ii). Legal Interests

AHP has not shown that the interest was legal in nature, and even if the court were to find that it was legal, it was not the requisite identical legal interest. For example, the dexfenfluramine sublicensing agreement between AHP and Interneuron required Interneuron to seek descheduling. It also provided that Interneuron would receive payments if its efforts were successful. (D&R 22 Ex. A P 3.) Indeed, in 1991, Interneuron [*19] petitioned the DEA and FDA to deschedule fenfluramine.

(AHP Appeal at 7.) Interneuron alone had that duty. Neither AHP nor Servier shared it. Thus, even if descheduling is considered legal in nature, the parties' interests were not identical. Rather, the only common interest was commercial - if the drug was descheduled, sales would increase. Legal advice on the matter does not bring the communication within the protection of the common interest doctrine. The court finds that the Special Discovery Master did not err in finding that AHP's effort was a business or marketing effort, rather than a legal interest.

### E. Analysis of Most Favorable Law

Pursuant to the court's request, the parties briefed the state law AHP found most supportive of its assertion of the common interest doctrine. n3 AHP submitted an analysis of the laws of New Jersey, Pennsylvania, California, New York, Texas and Massachusetts. n4 (AHP Supp. Mem. at 5-24.) AHP has not met its burden under the law of any of these states.

> n3 AHP urges that the court look to the choice of law provisions in the state in which the court sits, which will then guide the court to the substantive law that it should apply to this dispute. It urges that under Pennsylvania choice of law analysis, New Jersey law applies. (AHP Supp. Mem. at 24.) Because the court finds that under the law of any of the states cited by AHP, it has not met its burden, the court will not address this argument.

[*20]

> n4 Although AHP addresses the law of Massachusetts and Texas, it does not provide precedent and the court will therefore not address the law of these states.

First, AHP relies upon *In re State Commission of Investigation Subpoena No. 5441, 226 N.J. Super. 461, 544 A.2d 893, 896 (N.J. Super. Ct. App. Div. 1988).* In that case, Special Counsel was retained by the New Jersey School Board Association ("NJSBA") to investigate, render advice and make recommendations

regarding alleged improprieties in the investment program of the New Jersey School Board Association Insurance Group (the "Group"). A subpoena duces tecum sought production of a report prepared by Special Counsel that had been shared with the Group. The trial court found that the entities were separate, without a community of interest and that the disclosure to the Group waived the privilege. *544 A.2d at 895.* The appellate court found that NJSBA and the Group were formally interrelated in a manner similar to "sister or parent-subsidiary corporations" because, inter alia, the Group was physically located within the [*21] NJSBA, and was formed, pursuant to statute, by the boards of education, and governed by members of the NJSBA. Based on these facts, it found a common identical and legal interest. Id. at 896.

Even under the law of New Jersey, in order to benefit from the common interest doctrine, the interests of the two entities sharing the information must be identical and legal, rather than commercial. Id at 896. A more relaxed standard applies where the entities are formally related corporations, as in the above case. However, that case is distinguishable. AHP, Interneuron and Servier are not formally related - they are three separate entities with a common commercial interest that has not been shown to be identical or legal.

AHP also looks to the law of Pennsylvania, citing *Thompson v. Glenmede Trust Co, 1995 U.S. Dist. LEXIS 18780, Civ. No. 92-5233, 1995 WL 752443* (E.D. Pa. Dec. 19, 1995). In that case, the court found that although disclosure of privileged materials to a third party generally results in waiver of the attorney-client privilege, the disclosure of materials to family members to determine whether they wanted to join a pending law suit did not waive the privilege. Again, the [*22] court relied upon a close relationship and identical legal interests.

AHP also looks to California law, citing *D.L. Chadbourne, Inc. v. Superior Court, 60 Cal. 2d 723, 388 P.2d 700, 708, 36 Cal. Rptr. 468 (Cal. 1964), Benge v. Superior Court, 131 Cal. App. 3d 336, 182 Cal. Rptr. 275, 281-82 (Cal. Ct. App. 1982),* and *Insurance Co. of North America v. Superior Court, 108 Cal. App. 3d 758, 166 Cal. Rptr. 880, 884-85 (Cal. Ct. App. 1980).* These courts rely on the same principles set forth above, and do not support AHP for the reasons already stated.

Additionally, AHP cites a criminal action, *People v.*

*Osorio, 75 N.Y.2d 80, 549 N.E.2d 1183, 550 N.Y.S.2d 612 (N.Y. 1989),* to support its assertion that in New York, the outcome would be similar to the outcome in New Jersey. The court finds *North River Ins. Co. v. Columbia Cas. Co., 1995 U.S. Dist. LEXIS 53, Civ. No. 90-2518, 1995 WL 5792,* at *3 (S.D.N.Y. Jan. 5, 1995), a civil action, more instructive on the relevant law. In North River, the court found that "what is important is not whether the parties theoretically share similar interests but rather whether they demonstrate [*23] actual cooperation toward a common legal goal." Id. at *4 (citation omitted). The court found that the fact that persons would jointly benefit from a particular judgment was not the equivalent of an identical legal interest.

In finding a lack of a common interest, the North River court recognized the lack of: any agreement establishing a joint prosecution; evidence of a coordinated legal strategy; exercised control over the conduct of the action; and shared legal expenses. Id. at *5. Those same factors are lacking in the case before this court.

In addition, the New York courts have held that the common interest doctrine does not extend to communications about joint business strategy that also happen to include concern about litigation. New York law, like the law cited above, requires a showing of a common legal, as opposed to commercial interest, and cooperation in a common legal strategy. *Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996).* Those elements are simply not present in the instant dispute. Thus, AHP has not shown that it is entitled to relief under the common interest doctrine.

## IV. CONCLUSION

For the reasons [*24] set forth above, D&R 22 is affirmed in its entirety. AHP is required to review the documents submitted, and in accordance with D&R 22 and this opinion: 1) produce the documents that are non-privileged; 2) revise its Privilege Log to reflect the changes; and 3) reevaluate the remaining entries on the privilege log and make any other necessary changes in light of the above guidelines.

An appropriate Pretrial Order follows.

## PRETRIAL ORDER NO. 1910

AND NOW, TO WIT, this 19th day of April 2001,

2001 U.S. Dist. LEXIS 5494, *24

upon consideration of American Home Products Corporation's limited appeal of Special Discovery Master Decision and Recommendation No. 22, IT IS ORDERED that Special Discovery Master Decision and Recommendation No. 22 is AFFIRMED.

LOUIS C. BECHTLE, J.

EXHIBIT C

FOCUS - 13 of 14 DOCUMENTS

In re NATIONAL MEDICAL IMAGING, L.L.C., NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC, Debtor.

Chapter 11, Bankruptcy No. 05-12714DWS

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2005 Bankr. LEXIS 2374*

**October 31, 2005, Decided**

**COUNSEL:** [*1] For National Medical Imaging, L.L.C., National Medical Imaging Holding Company, LLC, Debtors: ARIS J. KARALIS, MAUREEN P. STEADY, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA.

For General Electric Capital Corporation, Petitioning Creditor: JOSHUA THOMAS KLEIN, MICHAEL G. MENKOWITZ, Fox Rothschild LLP, Philadelphia, PA.

For Universal Shielding Corporation, Petitioning Creditor: BRIAN GRADY, GRADY & FALCONE LLP, PHILADELPHIA, PA.

For DVI Receivables XIX, LLC, DVI Receivables XVIII, LLC, DVI Receivables XVII, LLC, Petitioning Creditors: JAY GOTTLIEB, JOSEPH E. FIELD, BROWN RAYSMAN MILSTEIN FELDER & STEINER, NEW YORK, NY; JOSHUA THOMAS KLEIN, Fox Rothschild LLP, Philadelphia, PA.

**JUDGES:** DIANE WEISS SIGMUND, Chief United States Bankruptcy Judge.

**OPINION BY:** DIANE WEISS SIGMUND

**OPINION:**

MEMORANDUM OPINION

Before the Court is (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel"). For the reasons which follow, the motions shall be [*2] granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 3, 2005, GECC, *inter alios*, filed involuntary Chapter 11 petitions (the "Involuntary Petitions") against related entities National Medical Imaging, LLC and National Medical Imaging Holding Co., LLC ("NMI" and "NMIHC," respectively, and collectively "Putative Debtors") pursuant to *11 U.S.C. § 303*. n1 The parties have been engaged in contentious discovery on the issue of whether the substantive requirements of *§ 303(b)* and *(h)* are met with respect to the Involuntary Petitions, i.e., whether Debtors were paying their debts as they came due prior to the filing of the Involuntary Petitions and whether GECC is a proper petitioning creditor. Indeed, the motions before me are but the latest in what has become a nuclear war of discovery. At the Court's suggestion, the parties have voluntarily narrowed the scope of their respective discovery requests and objections thereto, leaving certain disputed issues which I now address.

n1 The two cases are being jointly administered.

[*3]

**DISCUSSION**

2005 Bankr. LEXIS 2374, *3

The scope of discovery is governed by *Fed.R.Civ.P. 26*, n2 which states in relevant part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Fed.R.Civ.P. 26(b)(1)*. Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978).*

n2 Made applicable here by *Fed. R. Bankr. P. 1018.*

The Protection Motion

Putative Debtors have filed the Protection Motion in response to subpoenas that GECC issued to Fairmount Partners ("Fairmount" and the "Fairmount Subpoenas") n3 upon its belief that Fairmount is an investment banking firm to whom Putative Debtors provided financial information. [*4] The Fairmount Subpoenas seek production of two types of documents: (1) those provided to Fairmount by Putative Debtors and (2) those generated by Fairmount itself. See Put. Debtors' Reply Mem. at 3. Putative Debtors do not allege that the current scope of the Fairmount Subpoenas exceeds the broad definition of relevancy, n4 but rather they seek to limit the scope of the Fairmount Subpoenas to only those documents prepared by Debtors and provided to Fairmount. They ask me to disallow the production of Fairmount-generated documents.

n3 It appears that the subpoenas GECC issued to Keystone Bank are no longer at issue. See Putative Debtors' Reply to [GECC]'s Further Response in Opposition to [Protection Motion] ("Put. Debtors' Reply Mem.") at 2 n.1 (discussing withdrawal of Putative Debtors' subsequent motion to quash as to other banking institutions).

n4 The categories of information sought by the Fairmount Subpoenas are:

1) Schedule or other documentation provided to

or generated by Fairmount Partners reflecting capital lease obligations by creditor, last payment made and status of each loan.

2) Statement or other documentation of cash flow provided to or generated by Fairmount Partners indicating payment of capital lease obligations to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup for the period January 1, 2002 to July 5, 2005.

3) The disclosure provided to or prepared by Fairmount Partners to be provided to investors as to the outstanding obligations owed to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup.

4) Financial statements provided to/prepared by or used by Fairmount Partners as of December 31, 2002, 2003 and 2004 and the most current date in 2005.

5) Schedule prepared by or given to Fairmount Partners, indicating use of proceeds of equity or sale proceeds.

6) Accounts payable records and or schedule of vendors owed funds provided to or used by Fairmount Partners and the status of NMI et al's obligations as of the most recent date.

7) Any prospectus or financial package prepared by Fairmount Partners to give to potential investors or buyers.

[GECC]'s Further Response in Opposition to Putative Debtors' Motion to Quash at 3 (Doc. No. 164) ("GECC's Further Response").

[*5]

"A party seeking a protective order over discovery materials must demonstrate that good cause' exists for the protection of that material." *Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)*. Good cause is shown "by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)*. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, will not satisfy the *Rule 26(c)* test. Id. While "good cause" may be satisfied by a showing that the material sought is irrelevant, the burden of showing irrelevancy is on the party resisting discovery. E.g. *McCurdy v. Wedgewood Capital Mgt., 1998 U.S. Dist. LEXIS 20628, 1998 WL 961897, at *3 (E.D. Pa. Dec. 31, 1998)*.

While Putative Debtors make the unsubstantiated allegation that Fairmount-generated documents would be duplicative of documents already provided by Putative Debtors, n5 they fail to provide any specific examples as to how they would be harmed by production of Fairmount-generated documents. I note that the main concerns identified in the initial Protection Motion were the confidential nature of the documents and [*6] the very broad scope of the initial Fairmount Subpoenas at that time. These concerns, however, have been obviated by the parties' agreement to treat the documents pursuant to confidentiality/protection agreement already in place as well as GECC's significant narrowing of the subject matter of the subpoenas. Putative Debtors fail to identify any harm stemming from the production of documents subject to the current Fairmount Subpoenas, save for a premature concern that GECC believes statements made by Fairmount are binding upon Putative Debtors. Put. Debtors' Reply Mem. at 6-7. Needless to say, allowing GECC access to Fairmount-generated documents is not a finding by the Court as to the admissibility or probative value of the documents. As Putative Debtors fail to meet their burden of showing an identifiable harm through the production of Fairmount-generated documents, the Protection Motion is denied in this respect.

n5 Putative Debtors attach an index which they allege "reveals that GECC is in possession of each document requested in the Fairmount Subpoena which was created by the Putative Debtors." Put. Debtor's Reply Mem. at 4 (emphasis added). The documents at issue, however, are Fairmount-generated documents. Putative Debtors have not explained how those documents, presumably containing some kind of analysis by Fairmount, would be duplicative.

[*7]

Putative Debtors also object to the temporal scope of the Fairmount Subpoenas, which seeks financial statements and documentation of cash flow from January 1, 2002 to July 5, 2005. Putative Debtors correctly note that the relevant date of inquiry as to whether a putative debtor is "generally not paying" debts as they become due is to be applied as of date of filing of involuntary petition, e.g. *Bartmann v. Maverick Tube Corp., 853 F.2d 1540, (10th Cir. 1988)*. GECC has failed to present any contrary argument, so I must agree that the temporal scope of the Fairmount Subpoenas is excessive and unlikely to lead to information bearing on whether Putative Debtors are generally paying their debts as of the Petition Date. I find that good cause exists for limiting Fairmount's production of documents to those produced to it by Putative Debtors or generated by Fairmount between January 1, 2004 to the Petition Date, March 3, 2005;

Motion to Compel

The Motion to Compel seeks certain documents which Putative Debtors allege pertain to GECC's subjective motives in filing the Involuntary Petitions. Putative Debtors take the position that, even assuming GECC can show that the [*8] substantive requirements of *§ 303(b)* and *(h)* are met, improper motivations or other "bad faith" on GECC's part would provide an independent basis for dismissal of the Involuntary Petitions. There appears to be some divergent opinion on

2005 Bankr. LEXIS 2374, *8

this issue. Compare *In re WLB-RSK Venture, 296 B.R. 509 (Bankr. C.D. Cal. 2003)* (finding that bad faith could provide basis for dismissal independent of substantive requirements of *§ 303*); In re Alexander, 2000 WL 33951465 (Bankr. D. Vermont Aug. 29, 2000) (same) n6 with *Kaplan v. Breslow (In re WLB-RSK Venture), 320 B.R. 221, 2004 WL 3119789 at *6 n. 13 (BAP 9th Cir. 2004)* (unpublished table opinion affirming *296 B.R. 509* on another basis while rejecting bad faith as independent basis for dismissal); *In re Knoth, 168 B.R. 311, 315 (Bankr. D.S.C. 1994)* (motivations of petitioning creditors are irrelevant where the substantive requirements of *§ 303* are otherwise met unless the issue is whether to allow joinder of additional petitioning creditors to cure a defective petition). Neither party has attempted to reconcile the divergent opinions, n7 and I conclude that [*9] there may be circumstances where the subjective motivations of a petitioning creditor would warrant the dismissal of an involuntary case. I need not, however, identify the parameters at this discovery stage before any evidence that might be relevant to dismissal on these grounds can be elicited. n8 I will therefore find that GECC's subjective motivations is a relevant subject of discovery and address the remaining objections raised by GECC.

n6 Alexander relies upon *United States Optical, Inc. v. Corning Inc. (In re U.S. Optical, Inc.), 991 F.2d 792, 1993 WL 93931 (4th Cir. 1993)* (unpublished decision), which noted that the court was duty bound to conduct an inquiry, if requested, to determine whether an involuntary petition has been filed in good faith. U.S. Optical relies upon *In re Winn, 49 B.R. 237 (Bankr. M.D. Fla. 1985)*. *991 F. 2d 792, Id. at *3*. Winn involved an involuntary petition that was in fact conceived by the debtor with three creditors who acted as straw men creditors for the debtor by signing the petition. I agree that it is proper for a bankruptcy court "to inquire to what extent the debtor is involved in the institution of an involuntary case," and not to wear blinders to such clear abuses of the bankruptcy process by a debtor who cannot otherwise file its own voluntary case. *49 B.R. at 239*. This collusive situation is clearly not

[*10]

before me and I question the reliance upon Winn by the Alexander and U.S. Optical courts.

n7 GECC, offered the opportunity to respond to the Motion to Compel, simply argues that the absence of a requirement of good faith in *§ 303(b)* and *(h)* dictates that the defense of bad faith is not available. To conclude otherwise, it contends is to rewrite the statute. Moreover, the availability of relief under *§ 303(i)* for damages for a bad faith filing requires that there first be a dismissal order. As for case law authority, it correctly observes that there is no binding case law authority in the Third Circuit so I am free to ignore the cases supporting Putative Debtors' position. GECC fails to note that the dismissal of cases for bad faith is not expressly found anywhere in the statute but as the Third Circuit cases it cites evidence, dismissal for that reason has been sanctioned notwithstanding the statute's failure to identify bad faith as grounds. I agree that the availability of damages requires first that there be a dismissal order. However, that does not answer the question of whether bad faith can be a defense to an involuntary petition that otherwise meets the statutory requirements of *§ 303*.

n8 The Court is mindful of *Fed. R. Bankr. P. 1013(a)* which requires the court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Accord *In re G.T.L. Corp., 211 B.R. 241, 247 (Bankr. N.D. Ohio 1997)* (bankruptcy court has a duty to promptly adjudicate involuntary petitions); *In re Kidwell, 158 B.R. 203, 212 (Bankr. E.D. Cal.1993)* (noting that "time is of the essence" in determining whether there is a meritorious involuntary bankruptcy). A

side trip into this issue at the request of the Putative Debtors of necessity protracts adjudication of the contested petition. Presumably they have weighed that fact and concluded that being subject to the control of the bankruptcy court does not outweigh their need to pursue this defense and not rely on GECC being unable to satisfy the statutory criteria.

[*11]

Putative Debtors have reduced the scope of the Motion to Compel to nineteen documents that have been submitted by GECC to the Court for *in camera* review (the "In Camera Submission") as Exhibits A-S (the "Disputed Documents"). GECC asserts that the Disputed Documents are protected from disclosure by the attorney-client privilege, and/or the work product doctrine. See Privilege Log attached as Exhibit A to Supplement to [Motion to Compel] ("Debtors' Supp. to Compel").

It is well-established that the attorney-client privilege constricts the truth-finding process and is therefore to be construed narrowly, e.g. *Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3d Cir. 1991)*. The party asserting the privilege bears the burden of showing (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose [*12] of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. E.g., *Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994)*, (*citing In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979))*. See also *Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC, 202 F.R.D. 418 (E.D. Pa. 2001)*. As noted above, part of this burden is proving that the privilege has not been waived.

The work product doctrine is governed by *Fed.R.Civ.P. 26(b)(3)*, n9 and protects documents and tangible things prepared "in anticipation of litigation or for trial" unless the party seeking production demonstrates "substantial need of the materials in the preparation of the party's case," and that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." E.g. *United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988)*. [*13]

n9 *Rule 26(b)(3)*, made applicable here by *Fed.R.Bankr.P. 1018*, states in relevant part:

. . . a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

In determining whether [*14] a document was prepared "in anticipation of litigation," the appropriate inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993)*. There must be a "reasonable anticipation" of litigation, i.e., not merely a remote prospect or inchoate possibility. "Rather, a party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared.'" *In re Gabapentin Patent Litigation, 214 F.R.D. 178, 183 (D. N.J. 2003)*; accord *In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979)*; *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., 2001 U.S. Dist. LEXIS 7145, 2001 WL 605199, at *4 (E.D. Pa. 2001)*. Moreover, the document must have been prepared for the prospect of litigation and no other purpose. *214 F.R.D. at 184*.

If the party invoking the work product protection establishes these elements, the burden shifts to the party seeking production [*15] to show substantial need for the protected material and an inability to get the equivalent information from another source. E.g. *E.E.O.C. v. Guess?, Inc., 176 F.Supp. 2d 416, 423 (E.D. Pa. 2001)*. Unlike the attorney-client privilege, the party invoking the work product doctrine does not bear the burden of proving non-waiver. *Greene, Tweed of Delaware, Inc., 202 F.R.D. at 423*.

Finally, even where the party seeking production of documents and things prepared in anticipation of litigation meets its burden, the Court is nevertheless mandated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," *Fed.R.Civ.P. 26(b)(3)*.

Putative Debtors correctly note that voluntary disclosure to one's adversary of documents protected by the attorney-client privilege or work-product doctrine will operate as a waiver of that protection with respect to documents relating to the same subject matter as the disclosed items. See *Thorn Emi North America, Inc. v. Micron Technology, Inc., 837 F. Supp. 616 [*16] (D. Del. 1993)*; *Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 1993 U.S. Dist. LEXIS 5234, 1993 WL 106429, at *3 (E.D. Pa. 1993)*. This rule is one of fairness. "In order to

protect against self-serving disclosure, a party who discloses protected documents waives the right to assert work product or attorney-client productions for all documents dealing with the same subject matter." *1993 U.S. Dist. LEXIS 5234, 1993 WL. 106429, at *3*. n10

n10 However, I reject Putative Debtors' position that GECC has waived the attorney-client privilege and/or work product doctrine defense merely by virtue of filing the Involuntary Petition and therefore placing its good faith "at issue." Putative Debtors cite to *Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 484 (S.D.N.Y. 1993)*, which simply holds that if the privilege holder puts attorney-client communication at issue by virtue of his claim or defense, that subject matter should be waived. GECC has not raised advice of counsel as a defense or a claim here. Moreover, every litigant in federal court places their good faith at issue with every document filed with the Court. See *Fed.R.Civ.P. 11*. The rule espoused by Putative Debtors would effectively eviscerate well-established protections.

[*17]

Putative Debtors assert that GECC has voluntary disclosed privileged documents relating to GECC's subjective motives in filing the Involuntary Petitions and has therefore waived any claim of attorney-client privilege or work product protection for the Disputed Documents on this subject matter. Exhibits 1 and 5-9 to Debtors' Supp. to Compel (the "Waiver Documents"). n11 I agree.

n11 Exhibits 2-4 to Putative Debtors' Supp. were the subject of a protective motion filed by GECC. By Order dated August 16, 2005, I ordered that these inadvertently produced documents be returned to GECC. I therefore do not include them in determining whether GECC has waived the attorney-client privilege or the work product doctrine.

2005 Bankr. LEXIS 2374, *17

The Waiver Documents are internal GECC memos/reports which were clearly prepared in anticipation of litigation, i.e., GECC's subsequent filing of the Involuntary Petitions. The Waiver Documents also disclose at least some of GECC's subjective motivations in filing the Involuntary Petitions: (1) using involuntary [*18] bankruptcy as a method of collecting Putative Debtors outstanding obligations to GECC; (2) a way of dealing with what GECC perceived as Putative Debtors skill at conventional litigation; (3) possible fraud by Putative Debtors which might warrant imposition of a bankruptcy trustee. Having disclosed some if its motives, GECC has waived protection under the work product doctrine as to any Disputed Documents that deal with the same subject matter.

In addition to being work product, Exhibit 1 of the Waiver Documents also appears to convey legal advice from outside counsel that is relevant to GECC's motives. Exhibit 1 at 2 (under the heading "Current Status"). Part of GECC's burden in proving the attorney-client privilege with respect to the Disputed Documents is demonstrating that it has not waived the privilege. GECC fails to address this document at all and therefore fails to meet its burden. Having produced Exhibit 1, GECC has also waived the attorney-client privilege with respect to Disputed Documents relating to its subjective motivations.

Relevant to GECC's waiver is the "joint defense" or "common interest" privilege (hereinafter the "common interest privilege"), which GECC has [*19] raised as to some of the Disputed Documents. The common interest privilege is not a separate protection, but rather enables litigants facing a common opponent to exchange otherwise privileged materials in order to adequately prepare a defense or prosecution without waiving the underlying privilege. *Haines v. Liggett Group Inc., 975 F.2d 81 (3d Cir. 1992)*. GECC asserts that many of the Disputed Documents were created under a joint prosecution strategy with co-petitioning creditor Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("U.S. Bank") as memorialized in a written Joint Prosecution Agreement. Exhibits L and N (duplicate copies) to the In Camera Submission. Thus, documents created by U.S. Bank and its counsel, if otherwise privileged as attorney-client communication or work product, would not lose that protection by their production to GECC and vice versa. Moreover, documents subject to common interest privilege are also

protected from GECC's waiver of the underlying attorney-client or work product protection through its disclosure of the Waiver Documents. See *John Morrell & Co. v. Local Union 304A, United Food and Commercial Workers, 913 F.2d 544, 556 (8th Cir. 1990)* [*20] (protection "cannot be waived without the consent of all parties to the defense"); *In re In-Store Advertising Securities Litigation, 163 F.R.D. 452, (S.D.N.Y. 1995)* (same).

Unfortunately for GECC, not one of Disputed Documents comply with the explicit requirement of the Joint Prosecution Agreement: documents exchanged under that agreement must be marked with (1) the providing party's name and (2) the words "Joint Prosecution Privilege." Exhibits L and N to In Camera Submission at 2. Despite GECC's assertion that certain documents were created or exchanged with U.S. Bank pursuant to this agreement, none of the Disputed Documents bear these required markings. n12 Nor does GECC provide any facts from which I might determine that any Disputed Document was created or exchanged under the Joint Prosecution Agreement. n13

> n12 As discussed below, there is one document (Exhibit K) that bears a hand-written notation "subject to Joint Prosecution Agreement." I address it below.

> n13 GECC has followed what is unfortunately a common practice of invoking privileges without providing the necessary information for a privilege determination. Rarely does the document itself provide all the information necessary for a court to make a privilege determination. Indeed, *Fed.R.Civ.P. 26(b)(5)* specifically requires parties claiming privilege or work product protection to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." The skeletal descriptions found in GECC's privilege log (i.e., "e-mail correspondence re: litigation strategy," "memorandum

regarding National Medical Imaging") do not comply with the rule. See In re Lomas Financial Corp., 1999 WL 33495524, at *5 (Bankr. D. Del. 1999) (privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document).

Aside from the privilege log and documents themselves, the only source of explanation is found in GECC's Further Response To the Motion to Compel. Statements in briefs generally do not constitute evidence unless admitted by the opposing party. *Braden v. University of Pittsburgh, 477 F.2d 1, 6 (3d Cir. 1973)*. Absent any objection by Putative Debtors as to the admissibility of GECC's assertions or evidence to the contrary, I will treat the document descriptions in the brief as a certification of counsel. That said, even certifications much be factually sufficient and uncontroverted by other evidence to support the claimed privilege. My findings below are based upon the record GECC has made in support of its burden of proving the applicability of the privileges it invoked.

[*21]

That said, I will not ignore the obvious fact that GECC and U.S. Bank had a common interest as petitioning creditors. Nor does the common interest privilege require a written joint strategy. Some of the Disputed Documents (albeit fewer than GECC would like) on their face evidence a joint strategy between GECC and U.S. Bank, regardless of the Joint Prosecution Agreement. I will accord any such document the protections of any underlying privilege notwithstanding GECC's own waiver.

After reviewing the Disputed Documents *in camera* along with GECC's descriptions and applying the above legal principles to the privileges claimed by GECC, I make the following findings of fact and conclusions of law.

Exhibit A is an attorney billing record. Billing records are subject to the attorney-client privilege to the extent that they reveal the nature of the services rendered. *Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999)*. Thus, the descriptions of the services in this document are privileged. The remaining information (identity of attorney and hours spent) is irrelevant to the issue of GECC's subjective motivation. It need not be produced.

Exhibit B [*22] is a cover letter between Michael G. Menkowitz ("Menkowitz") and GECC employee Joanne M. Harmon ("Harmon") that evidences nothing more than the existence of an attorney-client relationship between GECC and Fox Rothchild LLP. It is therefore not a privileged communication. See *Diversified Indus., Inc. V. Meredith, 572 F.2d 596, 603 (8th Cir. 1978)*; *Cohen v. Uniroyal, Inc., 80 F.R.D. 480, 483 (E.D. Pa. 1978)*. However, neither does it contain any information relevant to GECC's subjective motivations in filing the Involuntary Petitions. It need not be produced.

Exhibit D, n14 is an e-mail from Menkowitz to GECC that merely forwards a link to the website of Fairmount Partners. It does not disclose any confidential information for the purpose of seeking legal advice so as to support the attorney-client privilege asserted by GECC. Nor is there any indication that it was created in anticipation of litigation. The relevancy of this document seems tenuous, but I cannot say it is unlikely to lead to information regarding GECC's subjective motivations. It shall be produced.

n14 GECC has provided Exhibit C to Putative Debtors, so this exhibit is no longer at issue. GECC's Further Response at 3.

[*23]

Exhibits E and P are duplicate copies of a series of GECC internal e-mails pertaining to the recommendation of Harmon to pursue litigation against Putative Debtors. They are relevant to GECC's subjective motivations and

the work product doctrine asserted by GECC has been waived by its disclosure of the Waiver Documents. Nor is there any indicia that these e-mails were shared with U.S. Bank pursuant to a joint strategy. This document shall be produced.

Exhibit F is a chart listing various suits against NMI in the Pennsylvania courts. n15 GECC concedes that it was prepared by counsel for U.S. Bank and not by GECC or its representative. GECC's Further Resp. To Compel at 3-4. As such, GECC cannot independently invoke attorney-client privilege or work product doctrine. GECC's assertion that this chart was produced to it pursuant to the Joint Prosecution Agreement, is belied by the document's failure to bear the required designation. Nor does GECC provide any facts for the Court to determine that it was prepared or given to GECC pursuant to a joint strategy with U.S. Bank. It shall be produced.

> n15 Thus, it is relevant to one of the motivations enunciated in the Waiver Documents, i.e., NMI being a skilled litigant. See Exhibit 1 to Putative Debtors' Supp. to Compel.

[*24]

Exhibits G and I are duplicate copies of an agenda for a meeting between GECC and U.S. Bank with respect to the filing of the Involuntary Petitions. It is clear from the face of the document that it was prepared in anticipation of filing the Involuntary Petitions and pursuant to a joint strategy between GECC and U.S. Bank, whether or not such strategy is memorialized in the Joint Prosecution Agreement. Thus, it is protected work product, and subject to the common interest doctrine is unaffected by GECC's disclosure of the Waiver Documents. It need not be produced.

Exhibits H and J are duplicate copies of a chart prepared by GECC that lists various obligations of Putative Debtors. n16 The document does not contain any information which infers that it was created in anticipation of litigation or that it is an attorney client communication. n17 This document shall be produced.

> n16 The amounts Putative Debtors owed to GECC is relevant to GECC's

subjective motivation. See Exhibit 1 to Putative Debtors' Supp. to Compel (memo discussing involuntary bankruptcy as a method of collecting outstanding debt).

[*25]

> n17 Again, GECC's self-serving assertion that it prepared this document for distribution to U.S. Bank pursuant to the Joint Prosecution Agreement, is belied by the lack of the required party identification and designation "Joint Prosecution Materials." While GECC also asserts that it prepared the document for distribution to its attorney, that alone is an insufficient factual basis for invocation of the attorney-client privilege.

Exhibit K is a memorandum which GECC concedes was prepared by U.S. Bank's counsel for U.S. Bank. n18 GECC cannot invoke attorney-client privilege or work product absent applicability of the common interest doctrine. While this document bears the handwritten notation "subject to Joint Prosecution Agreement," I find the notation suspect because: (1) it is hand-written; (2) it does not comply with the exact designation required by the parties to the agreement; and (3) it is the only document that bears any marking referring to the Joint Prosecution Agreement, despite GECC's invocation to that agreement to several Disputed Documents. Nor can I ascertain from the document [*26] itself that it was prepared pursuant to a joint litigation strategy between GECC and U.S. Bank. As GECC has failed to provide any factual averments to support a claim of privilege, it shall be produced.

> n18 The subject of the memo is an investigation by U.S. Bank's counsel of possible fraud by a principal of NMI and therefore relevant to GECC's subjective motivations. See Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible fraud as a basis for appointing a trustee in an involuntary bankruptcy case).

2005 Bankr. LEXIS 2374, *26

Exhibits L and N are duplicate copies of the Joint Prosecution Agreement entered into by GECC and U.S. Bank. This document was clearly created in anticipation of litigation and pursuant to a joint strategy and is therefore protected work product unaffected by GECC's waiver under the common interest doctrine.

Exhibits M and O are duplicate copies of a document that GECC asserts was produced to it by its counsel. It evidences an implicit request for legal advice and contains legal [*27] analysis and advice by counsel. I find that it falls within the attorney-client privilege and does not fall within the scope of GECC's waiver, i.e., GECC's subjective motivations.

Exhibit Q is an e-mail from U.S. Bank to GECC scheduling a conference call or meeting. Nothing in the e-mail reflects that it was sent in anticipation of litigation, nor does it contain confidential communication between attorney and client. It shall be produced.

Exhibit R is an exchange of internal GECC e-mail communication, namely Harmon's request for documents in compliance with Putative Debtors document request and the response of several employees. It is not relevant to GECC's subjective motivation in filing the Involuntary Petition and need not be produced.

Exhibit S consists of two-emails from Mark Tambussi (Vice President, Regional Sales) to Harmon. Neither of these individuals has been identified as counsel for GECC so as to trigger the attorney-client privilege, nor is it trial preparation material. It is arguably relevant to GECC's subjective motivations, n19 and shall be produced.

n19 The e-mail notes that GECC has received inquiries from outside imaging companies regarding NMI filing for bankruptcy and inquiring about available assets. See Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible sale of assets through bankruptcy).

[*28]

Additional Relief Requested

After a hearing on the Motion to Compel, the Court requested the In Camera Submission and supplemental briefing in order to identify and address all the disputed documents at issue in the Motion to Compel. Notwithstanding this directive, Putative Debtors' Additional Supplement to Motion of Putative Debtors for Order Compelling [GECC] to Produce Documents ("Putative Debtors Add. Supp. to Compel") raises for the first time a request as to documents which GECC produced in redacted form. Putative Debtors' Add. Supp. to Compel at 3. These documents were not mentioned in the original Motion to Compel or as part of the In Camera Submission. The purpose of supplemental briefing was to address the documents at issue in the Motion to Compel, not to submit additional items not framed by the parties to the Court as in dispute. Moreover, Putative Debtors have failed to certify that the parties, after reasonable effort, are unable to resolve the dispute as to the redacted documents. See *Local Bankruptcy Rule 7026-1(a)*. I will deny this request without prejudice to Putative Debtors to bring an appropriate motion.

Putative Debtors also ask the Court to [*29] find that the attached Exhibit 10 to their supplement, produced to them by GECC, constitutes a waiver of the attorney-client and work product protections on the subject matter of whether there are any debts subject to a bona fide dispute. Id. at 2. Again, this request goes beyond the scope of the Motion to Compel, i.e., documents pertaining to GECC's subjective motivations. In any case, none of the Disputed Documents that I have held are protected pertain to this subject matter.

An Order consistent with this Memorandum Opinion shall issue.

DIANE WEISS SIGMUND

Chief U.S. Bankruptcy Judge

Dated: October 31, 2005

**ORDER**

**AND NOW**, this 31st day of October 2005, upon consideration of (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel"), after notice and hearing, and for the reasons

2005 Bankr. LEXIS 2374, *29

stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. The Protection Motion is **GRANTED** [*30] **IN PART.** The Fairmount Subpoenas are restricted to documents which relate to the time period January 1, 2004 to March 3, 2005. In all other respects, the Protection Motion is **DENIED.**

2. The Motion to Compel is **GRANTED IN PART** as follows:

   (a) GECC shall produce to Putative Debtors copies of the documents submitted *in camera* as Exhibits D-F, H, J, K, P, Q, and S;

   (b) To the extent that Putative Debtors have requested additional relief in their supplemental memorandum as to certain redacted documents, this request is **DENIED** without prejudice;

   (c) In all other respects, the Motion to Compel is **DENIED.**

DIANE WEISS SIGMUND

Chief U.S. Bankruptcy Judge

EXHIBIT D

LEXSEE 1985 U.S. DIST. LEXIS 13479

## JOHNSON MACHINERY CO., INC., VS., KAISER ALUMINUM & CHEMICAL CORP. AND KAISER ALUMINUM & CHEMICAL SALES INC.

### No. 85-3200

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### 1985 U.S. Dist. LEXIS 13479

### November 26, 1985

**COUNSEL:** [*1]

HAROLD E. KOHN, ESQ., 2400 ONE READING CENTER, 1101 MARKET STREET, PHILADELPHIA PA 19103, FOR PLAINTIFF.

HAROLD CRAMER, ESQ., ANTHONY E. CREATO, ESQ., 15th FLOOR, THE FIDELITY BLDG., PHILADELPHIA PA 19109, FOR DEFENDANTS.

**OPINION BY:**

NAYTHONS

**OPINION:**

EDWIN E. NAYTHONS, UNITED STATES MAGISTRATE.

This case involves a controversy between plaintiff, Johnson Machinery Co., Inc. ("Johnson") and defendants Kaiser Aluminum and Chemical Corp. and Kaiser Aluminum and Chemical Sales Inc. ("Kaiser") with respect to the sale of industrial property located in Plymouth Township, Pennsylvania ("the property"). Johnson has brought suit demanding specific performance of an alleged agreement by Kaiser to sell it "the property" for a consideration of $2.8 million dollars. "Kaiser", in its answer, avers that no such agreement exists and raises the statute of frauds as an affirmative defense.

Presently before the Court is a motion filed by Johnson to compel Kaiser to produce certain documents, essentially relating to the possible sale of "the property" to third parties, and Kaiser's answer objecting to the production request on the grounds that it is both irrelevant to the issue and beyond the scope of discovery. [*2]

For convenience, both objections to Johnson's request for production may be joined under the general rubric of relevance. It is clear that discovery is designed to permit parties to explore, in depth, a broad range of issues raised by the pleadings. Indeed the precise characterization inherent in pleadings may not, in themselves, limit or define the relevancy of a request; rather it is the subject matter and legal issues of the controversy that define its boundaries. North Fleet Corp. v. Consolidated Rail Corp., C.A. No. 83- 2992 (E.D. Pa. April 27, 1984) (Pollak, J.); Roeberg v. Johns- Manville Corp., 85 F.R.D. 292 (E.D. Pa. 1980).

Kaiser urges upon the Court the view that materials requested by Johnson fall outside the relevancy standards required by the Federal Rules of Civil Procedure concerning discovery in that dealings with third parties do not impact upon the pending action and are therefore overbroad. Mid-American Facilities Inc. v. Argonaut Insurance Co., F.R.D. 497, 498-99 (E.D. Wis. 1978). However, the facts of Mid-American are inapposite the instant case and cut against Kaiser's position. Plaintiff in Mid-American, in contrast to plaintiff [*3] Johnson, conceded that the documents requested were in no way relevant to the action and therefore fell outside

the limits of the relevancy requirement of F.R.C.P. 26(b). No such admission is present in the instant controversy; indeed, Johnson argues that the very character of the delineated nature of its requests support its contention that it believes in the relevant nature of the documents requested.

Kaiser additionally argues that the documents sought by Johnson are impermissible under the federal rules because confidential material may not be disclosed. Everco Industries, Inc. v. O.P.M. Products Company, 362 F.Supp. 204 (N.D. Ill. 1973).

1985 U.S. Dist. LEXIS 13479, *

Although there is provision for the protection of such material, the Court need not reach the issue since Everco is easily distinguishable from the instant case. In Everco, an action based upon theories of copyright infringement and unfair practices, the parties were direct business competitors and a very real possibility of divulging confidential information was present, compelling the court to narrow the scope in that action. No such issues are present in this situation where both parties limit the dispute to the alleged contract [*4] for sale of the property and confine their disagreement to the failure of that single business transaction.

Any material relating to the subject matter of the lawsuit may be discoverable as long as relevancy is demonstrable. No restrictions, per se, exist to limit the discovery of

documents relating to third parties where such material is not privileged. Robco Distributors Inc. v. General Glass International Corp., 101 F.R.D. 547, 548 (W.D. Pa. 1984); Goldinger v. Barons Oil Co., 60 F.R.D. 562, 564 (W.D. Pa. 1973). Documents which a party possesses, even if belonging to a third person may be discoverable. A party need not "own" the requested documents, merely possess them. Societe Internationale v. Rogers, 357 U.S. 197, 200, 204 (1958); United States v. National Broadcasting Company, 65 F.R.D. 415, 419 (C.D. Cal. 1974), appeal dismissed, 421 U.S. 940 (1975). Where documents relate to the extent of damages they are clearly discoverable due to their relation to the claim of either party under Fed.R.Civ.P. 26. Coyne v. Monohahela Connecting RR Co., 24 F.R.D. 357 (W.D. Pa. 1959); General Industrial Corporation v. General Diode Corporation, 1 F.R.D. 1, 3 (D. [*5] Mass. 1966).

In the instant controversy a material issue relates to the alleged failure of Kaiser to honor the disputed con-

tract to sell the subject property and the role, if any, that a third party may have played in such a decision. Should Johnson prevail in this action, any damages that would flow must be proven and thus documents, such as those requested by Johnson, would be both material and relevant to the determination of the extent of such damages and therefore fall within the intended scope of the discovery rules.

Of primary significance to both parties are the reasons underlying the dispute concerning the proposed sale of the subject property. It is not for either side in this dispute to arbitrarily draw the lines of what is or is not discoverable; to unilaterally decide what may be fair or foul. Any factor that relates to the failure of any party to consummate the disputed transaction, whether by plaintiff or defendant, is and must be discoverable to permit adequate development of all issues in the interests of fairness and justice.

An appropriate Order follows.

ORDER

NOW, this 25th day of November, 1985, upon consideration of the motion of Plaintiff Johnson Machinery [*6] Co., Inc., to compel production of documents together with the answer of Defendants, Kaiser Aluminum and Chemical Corp. and Kaiser Aluminum and Chemical Sales Inc., it is hereby ORDERED that:

1. Plaintiff's motion to compel production of documents is Granted.

2. Defendants shall submit the requested documents to plaintiff, within twenty (20) days of the date of this Order.

3. The parties shall bear their own costs in this matter.

EXHIBIT E

LEXSEE 1986 U.S. DIST. LEXIS 21134

**MIXING EQUIPMENT CO., INC. PLAINTIFF v. INNOVA-TECH, INC., DEFENDANT**

**Civil Action No. 85-0535**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**1986 U.S. Dist. LEXIS 21134**

**August 27, 1986, Decided; August 29, 1986, Filed**

COUNSEL: [*1]

Joseph W. Swain, Jr., Esq., Phila., PA

INNOVA-TECH, INC. by: Frank J. Benasutti, Esq., Phila., PA

**OPINION BY:**

NAYTHONS, Magistrate

**OPINION:**

MEMORANDUM AND ORDER

EDWIN E. NAYTHONS, UNITED STATES MAGISTRATE

Presently before the Court is defendant's motion under Fed.R.Civ.P. 37 to compel answers to interrogatories and the production of documents and things, plaintiff's memorandum in opposition to defendant's motion, defendant's reply to plaintiff's memorandum, and plaintiff's reply memorandum thereto. n1

---

n1 This discovery motion relates to defendant, "Innova-Tech, Inc.'s Second Set of Interrogatories 5-29, and Innova-Tech, Inc.'s Second Request for the production of Documents."

This case involves a controversy between plaintiff Mixing Equipment Co., Inc. (Mixco) and defendant, Innova Tech, Inc. (Innova), with respect to an action for a declaratory judgment invalidating United States Patent No. 4, 460, 471 and upholding the claims of unfair competition.

In yet another discovery battle between the parties, this Court is required to rule on several discovery requests that have failed to be amicably resolved between the parties themselves.

Defendant seeks an Order to compel plaintiff [*2] to answer interrogatories in three categories, allegedly, (1) where no answers have been supplied; (2) where the answers are evasive and incomplete; and (3) where the answers are false. Defendant also moves for the production of documents and a videotape with respect to these and other answers where the documents, purportedly, have not been supplied nor identified and the videotape has been withheld. Defendant requests this Court to grant its attorney's fees for the preparation of this motion and its accompanying documentation.

On July 16, 1986, this Court conducted a telephone conference with Jules P. Kirsch, counsel for plaintiff and Frank Benasutti, counsel for defendant in an effort to resolve a multitude of discovery motions pending before this Court. Defendant's motion under Fed.R.Civ.P. 37 was unable to be resolved during the telephone conference and will therefore now be ruled upon. n2

---

n2 Interrogatory Nos. 5 and 6 containing identical questions relating to two different promotional brochures distributed by plaintiff were originally part of defendant's Rule 37 motion to compel. Pursuant to plaintiff's response to defendant's Rule 37 motion, plaintiff has stated that all answers and documents in response to these interrogatories have been supplied to defendant in its supplemental answers served to defendant on June 27, 1986 and July 15, 1986. It is noted that defendant's reply to plaintiff's memorandum makes no argument or reference to Interrogatory Nos. 5 and 6 not being fully answered or such documents produced and therefore, this Court

1986 U.S. Dist. LEXIS 21134, *

will not rule on the merits of these interrogatories as the Court finds plaintiff has answered such interrogatories.

[*3]

Interrogatory Nos. 7, 21 and 29 requests information with respect to projects listed by the plaintiff by customer and order number on defendant's exhibit 585. Defendant seeks information about 29 projects for which plaintiff supplied mechanical equipment. Plaintiff responded to these requests stating that three (3) of the 29 projects are located outside of the United States and therefore are beyond the reach of the patent laws of the United States under 35 U.S.C. § 271(a). Of the remaining 26 projects listed on Exhibit 585, plaintiff alleges that sales of mechanical equipment were completed for 22 of these projects before issuance of the patent in suit on July 17, 1984 and argues that under the "subject matter" test of relevance under Fed.R.Civ.P. 26(b)(1), only four (4) projects, which plaintiff alleged were sold after the issuance of the patent are discoverable and the plaintiff has fully responded to Interrogatory Nos. 7, 21 and 29 regarding these four projects.

Defendant argues that plaintiff's sale of mechanical equipment prior to the issuance of the patent in suit on July 17, 1984 are relevant to the issues of commercial success, profits, damages, infringment, vanity [*4] and unfair competition. Defendant argues that plaintiff's objections for not producing the complete answers and documents were previously addressed by this Court pursuant to my May 12, 1986 Memorandum and May 14, 1986 Order. Defendant had previously brought a motion to compel complete answers and documents to interrogatory requests and this Court ruled that both parties must produce all information with respect to all of such systems, including all sales and profits information. The basis of my ruling was that the information requested pertained to the issues of damages, profits, commercial success, infringement and validity. An added issue of unfair competition in this case raised in the defendant's counterclaim relating to the acquisition and use of confidential information and technology of defendant's licensor, John Reid, the inventor of the patent in suit, also relates to the information requested by these interrogatories. Defendant argues that for plaintiff to assign the patent issue date, July 17, 1984, as the cut-off date on permissible discovery and to only supply information with respect to four (4) projects which it concludes might be the subject of infringement, is not [*5] valid given the issues in this lawsuit of commercial success, patent infringement, validity, damages and unfair competition. I agree with defendant that discovery of pre-issuance acts could lead to the discovery of relevant evidence concerning infringement in the instant case. Defendant alleges that since plaintiff was intimately familiar with the in-

ventor's invention, plaintiff was also familiar with the claims made by the inventor in the applications which led to the issuance of the patent in suit. Defendant argues that consequently plaintiff knew about the inventor's invention as well as the scope of the claims which were to ultimately issue in the patent in suit. Defendant also alleges that from as early as 1977, seven years before the patent issued, Mixco had obtained copies of the pending patent application which led to the patent in suit, and argues evidence of commercial success by the plaintiff concerning activities before the patent issued with relation to jobs which Mr. Reid worked on and for which plaintiff was able to sell equipment for. Additionally, defendant notes that plaintiff's use of information supplied by Mr. Reid relevant to the technology of applications prior [*6] to the patent being issued, relates directly to the unfair competition counts and that plaintiff cannot in good faith contend that information relevant to those projects is irrelevant to the lawsuit.

Case law holds that pre-issuance acts can constitute infringement in some circumstances. See Procter and Gamble Company v. Nabisco Brands, Inc., et al, 604 F.Supp. 1485 (D.Del. 1985) (an attempt to evade an action for direct infringement by rushing shipments to retailers prior to issuance of patent constituted contributory infringement); Jones v. Radio Corporation of America, et al, 131 F.Supp. 82 (S.D.N.Y. 1955) (alleged acts by defendant, even though performed prior to issue of patent to plaintiff, if performed with intent to infringe the patent when issued or knowing that infringing conduct would continue after patent was issued would constitute infringement); Weyerhaeuser Timber Company v. Bostitch, Inc., 178 F.Supp. 757 (D.R.I. 1959) (infringer's pre-issuance acts constitute infringing conduct if performed with the intent that infringing conduct would continue after reissue was granted); Koehring Company v. National Automatic Tool Co., 257 F.Supp. 282 (S.D. Ind. 1966) [*7] (patent was infringed by defendant prior to its issuance where patentee's idea was known to defendant's employees prior to issuance, and they deliberately incorporated the idea into defendant's machines). Plaintiff shall supply to defendant such information and documents as requested in Interrogatory Nos. 7, 21 and 29 concerning defendant's Exhibit 585 prior to the issuance of the patent in suit and any subsequent projects or sales of equipment made by the plaintiff, including the Atmore, Alabama project, after the issue date. This Court finds that the requested information could lead to the discovery of relevant evidence concerning the issues involved in this case; damages, commercial success, validity, infringement and unfair competition.

Plaintiff shall also be required to provide the requested information with respect to the projects which are located outside of the United States. Plaintiff argues

1986 U.S. Dist. LEXIS 21134, *

that they "are beyond the reach of the patent laws of the United States under 35 U.S.C. § 271(a)." The issue involved here is whether or not the information pertaining to foreign activities which relate to the invention of the patent in suit are relevant to the subject matter [*8] involved in the action, and are therefore discoverable under Fed.R.Civ.P. 26(b) (1). In Lindemann Maschinenfabrik v. AM. Hoist and Derrick, 730 F.2d 1452 (Fed Cir. 1984) the court held that "[a] showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness. The district court improperly discounted the weight due the evidence of commercial success because that success occurred abroad. Citing Weather Engineering Corp. v. United States, 614 F.2d 281 (U.S. Ct. Cl. 1980). Discovery is proper with respect to all of plaintiff's projects relating to the invention of the patent in suit, both located within and outside of the United States. Plaintiff shall supply to defendant all answers and documents requested pursuant to Interrogatory Nos. 7, 21 and 29 within twenty (20) days of the date of this Memorandum and Order.

Interrogatory No. 8 requests information and documents identified as Defendant's Exhibit 592. Plaintiff responded to this request by stating that it had no documents relating to the preparation of the document, an analysis of the claims of the patent in suit against the structure and operation [*9] of particular oxidation ditch systems which plaintiff purportedly made. Plaintiff also responded that it had no knowledge or information identifying "all" persons to whom it had been disclosed, or the dates of the disclosure, or the persons present during disclosure, or the means of disclosure, or the meetings at which it was discussed. Plaintiff stated that Jeffrey S. Mednick, an attorney employed by plaintiff's parent, General Signal Corporation prepared the document. Defendant argues that a Mr. Kukera testified that he was aware of the disclosures under which Mr. Mednick's opinions such as defendant's Exhibit 592 were distributed. Yet, defendant argues, he is nowhere identified as one of the parties to whom this opinion was communicated.

Plaintiff states that defendant's motion to compel answers to Interrogatories 8(c) and 8(d) has been complied with pursuant to its submission to defendant on June 27, 1986 which identified persons to whom defendant's Exhibit 592 was disclosed, communications relating to the disclosure, the date of disclosure, the persons present during disclosure, the means of disclosure, any meeting at which the exhibit or any portion of it was discussed, persons [*10] present during the discussion and anyone commenting upon any portion of the document at any time at any meeting.

Pursuant to this Court's telephone conference of July 16, 1985 with the parties, it was disclosed that Interrogatory No. 8(c) has not been substantially complied with. Plaintiff shall be required to identify all persons to whom document (Defendant's Exhibit 592) has been disclosed, identify all communications relating to the disclosure, and give the dates of disclosure and the persons present during disclosure if any, and the means of disclosure. Plaintiff shall be further required to provide any additional information with respect to all information requested in Interrogatory No. 8 and continue to provide such supplemental information as it becomes known.

Interrogatory No. 9(g) requests the identification of all documents relating to the rendering, distribution or disclosure of any opinion by any counsel regarding the validity or infringement of the patent in suit. While this request was not made part of defendant's motion to compel under Rule 37 it was stated during the telephone conference between this Court and the parties by Mr. Benasutti that this request has not [*11] been complied with. While plaintiff has stated that notes comprise two pages and bear a legend on top right portion thereof "Mixco 4-81-0241 10/10/84-PMK" defendant submits that this information is not conclusive. Plaintiff shall be required to supply all such information and identify all documents relating to the rendering, distribution or disclosure of any opinion by any counsel regarding the validity or infringement of the patent in suit within twenty (20) days of the date of this memorandum and Order.

Interrogatory No. 14(b) also objected to in the July 16, 1986 telephone conference requests the identity of all documents relating to any study any attorney has ever conducted in reference to the patent in suit. Plaintiff objects to this Interrogatory on the ground that it seeks information protected from disclosure by the attorney-client and work product privilege. When an objection on a ground of privilege, including as here, the work-product doctrine, is made to a document request, the objecting party must set forth certain identifying and descriptive information concerning responsive documents unless such information itself would reveal allegedly privileged information. The reason [*12] for the request is obvious sufficient preliminary information is generally necessary for opposing counsel and the court to be able to determine whether a privilege objection is well-founded. Such information as the existence of a privileged document, its date, its recipients and the nature of the general subject matter is generally not privileged in itself. In rare circumstances such identifying information may itself constitute privileged matter, but this Court has no means at this time to make that determination. The Court cannot speculate as to the multitude of possible circumstances surrounding the preparation and dissemination of documents upon which the validity of the claim

1986 U.S. Dist. LEXIS 21134, *

of privilege could depend without plaintiff supplying the preliminary information mentioned. Plaintiff shall be required to provide the following information in detail with regard to the documents they assert as being privileged: (1) the nature of the privilege; (2) the type of document; (3) the general subject matter of the document; (4) the date of the document; (5) the author of the document; (6) the addressee of the document, and where not apparent, the relationship of the author and addressee to each [*13] other. Plaintiff shall provide such information to defendant within twenty (20) days of the date of this Memorandum and Order.

Interrogatory No. 19 seeks a videotape made of a conversation between one of plaintiff's trial counsel, Peter A. Luccarelli, Jr. and defendant's lead trial counsel, Frank J. Benasutti on the premises of plaintiff in Rochester, New York, at a time when access was being sought to documents. Defendant alleges that plaintiff's employees were in the room and had been requested to identify and classify documents in order to make discovery possible. Defendant states that at the direction of Mr. Luccarelli plaintiff's employees were not permitted to aid in that process. Defendant argues that the evidence of that conduct is contained on the videotape and it greatly hindered defendant's discovery efforts. Plaintiff objected to this interrogatory and all subparts on the grounds that the information sought is not relevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff alleges that on January 6, 1986, defendant's lead counsel had been informed by plaintiff's lead counsel that [*14] the videotape "was not done at my authorization and has been erased. There is no videotape existent." plaintiff further argues that when defendant served Interrogatory No. 19 on April 30, 1986, defendant had known for four (4) months that the videotape had been made without authorization and was erased and not in existence. Plaintiff contends that defendant's purpose in making this matter the subject of the Rule 37 motion is to attempt to embarrass a young lawyer without any benefits to the merits of the litigation. Defendant responds by arguing that one of the elements of a damage award which can lead to not only the amount of the assessment of a damage, award but also to its increase up to three times the amount found (35 U.S.C. § 284), as well as an award of attorney's fees in an "exceptional" case (35 U.S.C. § 285) is the conduct of counsel and the parties in conducting the litigation. This Court finds that plaintiff's objection that the information sought is not relevant to the subject matter and is not reasonably calculated to lead to the discovery of admissible evidence is misplaced. This Court finds the requested information relevant to the element of damages which can be [*15] awarded and will therefore order plaintiff to supply such information as requested by Interrogatory No. 19 and its

subparts. See Pacific Furniture Manufacturing Company v. Preview Furniture Corp. 626 F.Supp 667 (M.D.N.C. 1986); Scott paper Co. v. Moore Business Forms, Inc., 594 F.Supp. 1051 (D.Del. 1984); Molinaro v. Burnbaum, et al., 201 U.S.P.G. 150 (D.Mass. 1978).

Plaintiff in its reply memorandum argues that the videotape in question does not constitute "evidence". I cannot agree with plaintiff's characterization of the videotape and similarly do not find a need to conduct an evidentiary hearing at this time to gather evidence on this issue as plaintiff suggests citing Eash v. Riggins Trucking, Inc., 757 F.2d 557 (3rd Cir. 1985) (imposition of monetary sanction by district court on attorney for misconduct without affording the attorney prior notice and opportunity to be heard violates due process).

Interrogatory No. 20 seeks discovery regarding communications between persons noticed by defendant for depositions in this action, and plaintiff, its officers, agents and attorneys. Plaintiff argues that communication that occurred were pursuant to pre-existing indemnification [*16] agreements by which plaintiff was and is obligated to defend its customers against patent infringement. Plaintiff objected to this interrogatory request as lacking relevance as well as on the ground of attorney client and work product immunity. Defendant alleges that plaintiff's attempts to dissuade third party witnesses (via Motions to Quash) from cooperating in the discovery process is in total disregard for the discovery process and that plaintiff should be compelled to answer the interrogatory.

Plaintiff will be required to provide such information with regard to its attorney-client and work-product privilege as this Court previously required in answering Interrogatory No. 14(b), namely, (1) the nature of the privilege, (2) the type of document, (3) the general subject matter of the document, (4) the date of the document, (5) the author of the document, (6) the address of the document, and the relationship of the author and addresses to each other, if not apparent. Plaintiff shall provide such information to defendants within twenty (20) days of the date of this Memorandum and Order.

Interrogatory No. 28 requested the definition of the term "point source aeration," and plaintiff [*17] objected to this interrogatory as not relevant as the term is not used anywhere in the patent in suit and therefore there is no reason to believe that this term will be a "problem" at trial. Defendant argues that as testified by defendant's witness in a deposition taken by plaintiff pursuant to Rule 30(b) (6), Fed.R.Civ.P., this term defines an area of technical information which was provided by the inventor to the plaintiff which forms, in part, the basis for defendant's unfair competition, Count II of the Complaint. Defendant alleges that, plaintiff questioned defendant's

1986 U.S. Dist. LEXIS 21134, *

witness and that this was one of the items which was inquired into extensively by plaintiff's counsel. This Court will order plaintiff to answer Interrogatory No. 28 as to its knowledge of the meaning of this term.

Defendant, in their reply memorandum additionally argues that plaintiff has withheld the identification of documents and the documents themselves relating to pending patent applications of Mr. John Reid, the inventor of the patent in suit, relating to the patent itself, opinions regarding the patent and relating to prior art. Specifically, defendant argues that Mr. Mednick, in-house counsel for General [*18] Signal Corporation, the parent corporation of Mixco, testified at a recent deposition that there were files available. In his Connecticut office which relate to the above matters. Defendant argues that there has been no identification of those files, no identification of the contents and that the files have not been produced. Defendant alleges that the prior art available to Mr. Mednick and counsel for Mixco has not been identified. Defendant states that although there has been a lengthy identification of prior art in general, there has not been identification of the prior art which has been available at various times to the attorneys or Mixco. Indeed, correspondence from Peter Luccarelli, Jr. to Frank Benasutti, counsel for the respective parties, dated July 18, 1986 (See Defendant's Reply to plaintiff's Memorandum In Opposition To Defendant's Motion Under Rule 37, Exhibit N) verifies that plaintiff is still gathering the remaining documents requested and will forward them as copies are made available. Plaintiff, if it has not already provided such as of this date, shall be ordered to provide defendant with the requested documents within twenty (20) days of the date of this Order. [*19]

Turning to Mr. Mednick, plaintiff argues that defendant at all times knew that Mr. Mednick was an employee of General Signal Corporation but argues that at no time did defendant ever seek discovery from General Signal. Now, by way of its reply brief, defendant is attempting to gain access to General Signal's files by arguing that the discovery requested from plaintiff should now be interpreted to include discovery from General Signal. Plaintiff additionally states that defendant cannot now be seen to argue that it did not know that plaintiff was a separate entity from its parent, General Signal. Plaintiff argues that defendant's answer and counterclaim is replete with references to General Signal, yet defendant has at no time subpoenaed or otherwise sought discovery from General Signal. At this juncture, I am not willing to rule that Mr. Mednick's (General Signal's) files

be turned over to the defendant, absent a formal motion and briefing by the parties as to this issue.

Defendant's Document Request No. 6 seeks all documents identified in response to Interrogatories Nos. 5 through 29 and the videotape referred to. Plaintiff shall produce the documents identified in answering the [*20] requested interrogatories within twenty (20) days of the date of this Memorandum and Order during normal business hours at the office of plaintiff's Philadelphia trial counsel. Plaintiff shall supply to defendant complete and responsive answers with respect to Interrogatory No. 19, concerning the videotape since such videotape has been erased and there is no videotape existent.

Defendant's request that this Court grant its attorney's fees for the preparation of this motion and its accompanying documentation will be denied as this Court finds that the opposition was substantially justified. See Fed.R.Civ.P. 37(a)(4).

An appropriate Order follows.

ORDER

NOW, this 28th day of August, 1986, upon consideration of the defendant's Motion Under Rule 37 to Compel Answers to Interrogatories and the Production of Documents and Things and plaintiff's response thereto and defendant's and plaintiff's reply thereto, it is hereby ORDERED that:

1. Defendant's Motion is Granted in part and Denied in part.

2. Plaintiff 'shall supply to defendants all information and necessary documents in compliance with Interrogatory Nos. 7, 8, 9(g), 14(b), 19, 20, 21, 28 and 29 within twenty (20) days of [*21] the date of this Order.

3. Plaintiff shall identify all documents claimed as being privileged in accordance with the accompanying memorandum to defendant within twenty (20) days of the date of this Order.

4. Plaintiff shall supply to defendant the identification and documents relating to prior art in the possession of plaintiff in accordance with the accompanying memorandum within twenty (20) days of the date of this Order. Defendant shall be precluded from obtaining discovery from Mr. Mednick, pursuant to the accompanying memorandum at this tame.

5. The parties shall bear their own costs in this matter.

EXHIBIT F

FOCUS - 7 of 14 DOCUMENTS

**RHONE-POULENC RORER INC., and ARMOUR PHARMACEUTICAL CO. v. THE HOME INDEMNITY COMPANY v. AETNA CASUALTY & SURETY CO., et al. v. CITY INSURANCE COMPANY, et al.**

**Civil Action No. 88-9752**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1991 U.S. Dist. LEXIS 14708*

**October 15, 1991**
**October 15, 1991, Filed**

**COUNSEL:** [*1]

Jill A. Douthett, Esq., Philadelphia, Pennsylvania.

JOHN BARRINGTON HUME & INSCO, Ltd.: by: Louis E. Bricklin, Esq., Illene G. Greenberg, Esq., BENNETT BRICKLIN & SALTZBURG, Philadelphia, Pennsylvania.

THE HOME INDEMNITY COMPANY: BY: Jeffrey B. Albert, Esq., Wendy Fleishman, Esq., Stephanie Resnick, Esq., Timothy D. Mara, Esq., Philadelphia, Pennsylvania, BY: James W. Christie, Esq., (co-counsel), CLARK, LADNER, FORTENBAUGH & YOUNG, Philadelphia, Pennsylvania.

REVLON, INC., and PANTRY PRIDE, INC.: BY: Stephen A. Cozen, Esq., Susan M. Danielski, Esq., Richard C. Bennett, Esq., COZEN AND O'CONNOR, Philadelphia, Pennsylvania.

BIRMINGHAM FIRE INSURANCE COMPANY, AIU INSURANCE COMPANY, NEW HAMPSHIRE INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, NATIONAL UNION INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA: BY: Mark A. Dombroff, Esq., John K. Henderson, Jr, Esq., KATTEN MUCHIN, ZAVIS & DOMBROFF, Washington, D.C.,

MARGOLIS, EDELSTEIN, SCHERLIS, SAROWITZ AND KRAEMER, B. Alan Dash, Esq.

AMERICAN CENTENIAL INSURANCE COMPANY: BY: Joseph M. Oberlies, Esq., CONNOR AND WEBER, P.C., Philadelphia, Pennsylvania.

HARTFORD INSURANCE COMPANY, TWIN [*2] CITY INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY and NEW ENGLAND REINSURANCE COMPANY: BY: James A. Young, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

AETNA CASUALTY & SURETY INSURANCE: BY: Edward M. Dunham, Jr, Esq., Philadelphia, Pennsylvania, MILLER, DUNHAM, DOERING & MUNSON.

INTERNATIONAL INSURANCE COMPANY: BY: Michael D. Gallagher, Esq., Thomas M. Going, Esq., GERMAN, GALLAGHER & MURTAGH, Philadelphia, Pennsylvania.

LIBERTY MUTUAL INSURANCE COMPANY: BY: WILLIAM C. FOSTER, ESQ., GERARD F. LIPSKI, ESQ., Philadelphia, Pennsylvania, Walter A. Stewart, Esq. MANTA & WELGE, Philadelphia, Pennsylvania.

AIU INSURANCE COMPANY: BIRMINGHAM

FIRE INSURANCE COMPANY: GRANITE STATE INSURANCE COMPANY: LEXINGTON INSURANCE COMPANY: NATIONAL UNION INSURANCE COMPANY: NEW HAMPSHIRE INSURANCE COMPANY: ILLINOIS NATIONAL INSURANCE COMPANY: BY: B. Alan Dash, Esq., H. Marc Tepper, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania, Mary J. Davis, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania.

NORTH STAR REINSURANCE CORPORATION: BY: DENNIS R. SUPLEE, ESQ., RONALD P. SCHILLER, ESQ., SCHNADER, HARRISON, SEGAL [*3] & LEWIS, Philadelphia, Pennsylvania.

FIREMAN'S FUND INSURANCE COMPANY: BY: Wayne Partenheimer, Esq., Philadelphia, Pennsylvania.

COLUMBIA CASUALTY COMPANY: BY: Douglas J. Kent, Esq., LABRUM & DOAK, Philadelphia, Pennsylvania.

FIDELITY AND CASUALTY COMPANY OF NEW YORK: BY: DOUGLAS J. KENT, ESQ., LABRUM AND DOAK, PHILADELPHIA, PENNSYLVANIA.

REPUBLIC INSURANCE COMPANY: BY: Wilson M. Brown, III, Esq., David F. Abernethy, Esq., Philadelphia, Pennsylvania, BY: DONALD I. STRAUBER, ESQ., PETER N. HILLMAN, ESQ., CHADBOURNE & PARKE, NEW YORK, NEW YORK.

ATLANTA INTERNATIONAL INSURANCE COMPANY: BY: Louis J. Isaachshon, Esq., WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, Philadelphia, Pennsylvania.

NEW ENGLAND INSURANCE, CO.: BY: TIMOTHY J. CAMPBELL, ESQ., JAMES A. YOUNG, ESQ., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

ZURICH INTERNATIONAL INSURANCE COMPANY: BY: Thomas C. DeLorenzo, Esq., MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Philadelphia, Pennsylvania.

PROMETHEAN INSURANCE COMPANY, LTD.: BY: MARK L. ALDERMAN, ESQ., KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, PHILADELPHIA, PENNSYLVANIA.

REVLON, INC.: BY: Nancy E. Stuart, Esq., HOYLE, MORRIS & KERR, Philadelphia, Pennsylvania. [*4]

PACIFIC EMPLOYER'S INSURANCE COMPANY: BY: Richard J. Bortnick, Esquire, Philadelphia, Pennsylvania.

INSCO, LTD.; JOHN BARRINGTON HUME, WALBROOK INSURANCE COMPANY, LTD.: EL PASO INSURANCE COMPANY, LTD.: DART & KRAFT INSURANCE COMPANY, LTD., LOUISIANA INSURANCE COMPANY, LTD., LUDGATE INSURANCE COMPANY, LTD., BERMUDA FIRE & MARINE INSURANCE COMPANY, WINTERTHUR SWISS INSURANCE COMPANY, MUTUAL REINSURANCE COMPANY, TD., COMPAGNIE EUROPEANNE D'ASSURANCE INDUSTRIELLES, S.A., FOLKSAM INTERNATIONAL INSURANCE COMPANY (U.K.), LTD., BRITISH NATIONAL INSURANCE COMPANY, PINETOP INSURANCE COMPANY, LTD., YASUDA U.K., WORLD MARINE INSURANCE COMPANY. MUTUAL REINSURANCE COMPANY, LTD., DART INSURANCE COMPANY, LTD., BRYANSTON INSURANCE COMPANY, LTD., ST. CATHERINE INSURANCE COMPANY, LTD., LOUISVILLE INSURANCE COMPANY, LTD., C.A.M.A.T., CNA RE : NORTH ATLANTIC INSURANCE COMPANY, LTD., TUREGUM INSURANCE CO.: LEXINGTON INSURANCE COMPANY: BRITTANY INSURANCE COMPANY: ZURICH (BERMUDA) INSURANCE COMPANY: ISRAEL RE: COMPAGNIE D'ASSURANCE MARITIMES AERIENNES ET TERRESTRES: ASSICURAZIONI GENERALI SPA, NORTH ATLANTIC INSURANCE COMPANY, LTD., STRONGHOLD INSURANCE COMPANY, TRAVELERS CORP. (U.K.): BY: LOUIS E. BRICKLIN, [*5] ESQ., ILLENE G. GREENBERG, ESQ., BENNETT, BRICKLIN & SALTZBURG, Philadelphia, Pennsylvania.

CENTURY INDEMNITY COMPANY INSURANCE COMPANY OF NORTH AMERICA: BY: RICHARD M. SHUSTERMAN, ESQ., WHITE & WILLIAMS, PHILADELPHIA, PENNSYLVANIA, E.

1991 U.S. Dist. LEXIS 14708, *5

Douglas Sederholm.

EMPLOYERS' MUTUAL CASUALTY COMPANY: BY: David P. Thompson, Esq., PALMER, BIEZUP & HENDERSON, Philadelphia, Pennsylvania.

OLD REPUBLIC INSURANCE COMPANY PURITAN INSURANCE COMPANY: BY: GEORGE D. SHEEHAN, JR, ESQ., SWEENEY, SHEEHAN & SPENCER, PHILADELPHIA, PENNSYLVANIA.

CENTRAL NAT'L INSURANCE CO. OF OMAHA MOTOR VEHICLE CASUAL COMPANY: BY: Douglas Evan Ress, Esq., KAUFMAN, COREN & RESS, Philadelphia, Pennsylvania.

ILLINOIS NATIONAL INSURANCE COMPANY: BY: B. Alan Dash, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania.

MANHATTAN FIRE AND MARINE INSURANCE COMPANY: BY: George D. Sheehan, Jr, Esq., SWEENEY, SHEEHAN & SPENCER, Philadelphia, Pennsylvania.

GIBRALTAR CASUALTY COMPANY, PRUDENTIAL REINSURANCE COMPANY: BY: THOMAS C. DeLORENZO, ESQ., MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, PHILADELPHIA, PENNSYLVANIA.

CONTINENTAL CASUALTY COMPANY: BY: Stuart C. Levine, FORD MARRIN ESPOSITO & WITMEYER, New [*6] York, New York, By: William G. Scarborough, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

ROYAL INSURANCE COMPANY OF AMERICA HARTFORD INSURANCE COMPANY, TWIN CITY INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY and NEW ENGLAND REINSURANCE COMPANY: BY: James A. Young, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

NATIONAL CASUALTY INSURANCE COMPANY: BY: Bonnie Brigance Leadbetter, Esq., FINEMAN & BACH, P.C., Philadelphia, Pennsylvania.

**JUDGES:**

Edwin E. Naythons, United States Magistrate.

**OPINION BY:**

NAYTHONS

**OPINION:**

MEMORANDUM AND ORDER

Presently before this United States Magistrate Judge is the motion of defendant Home Indemnity Co. ("Home"), to compel answers to interrogatories and production of documents from plaintiffs Rhone Poulenc Rorer, Inc. ("RPR") and Armour Pharmaceutical Co. ("Armour"), and fourth-party plaintiff Revlon, Inc.. n1 Also before this Court is the response and memorandum of plaintiffs RPR and Armour in opposition to the motion.

> n1 This Court was informed by letter dated September 11, 1991, from Susan M. Danielski of the law firm of Cozen and O'Connor that this motion has been withdrawn as to fourth party plaintiff Revlon, Inc.

[*7]

Defendant divides the matter it seeks to compel into four subject areas consisting of:

A. Plasma Executive Committee minutes; Management letters of Lorne Schnell, Michael Rodell, Max Graber, and Fred Feldman; marketing newsletters; marketing and sales brochures circulated to hemophilia treaters; marketing plans; minutes of meetings attended by Schnell and Rodell or Graber; and documents provided by Graber to the Firm of Sidley & Austin relating to the Canadian HPB inspection of December 2nd-3rd. Defendant asks this Court to order plaintiff to either produce these documents, or to file an affidavit that they do not exist, or are not in the possession or control of plaintiffs. Plaintiffs have submitted an affidavit as to some of these items in their response, and further allege that all responsive documents they have in their possession have been produced.

B. Defendant also seeks to compel the Termination Agreement of Stuart Samuels, to which plaintiffs object on the grounds that it is irrelevant and vexatious. In

1991 U.S. Dist. LEXIS 14708, *7

addition, defendant seeks the statements of attorneys who interviewed plaintiffs' employees regarding previous litigation at the Kankakee, Illinois facility. Plaintiffs claim [*8] that this information is protected by the Attorney-Client privilege, and/or the work product doctrine.

C. Defendant seeks to compel answers to interrogatories it served to former counsel for plaintiffs William Ragolia, Jr. Defendant alleges that no responses have been forthcoming from either Ragolia or plaintiffs. Plaintiffs allege that they have no responsibility to answer these interrogatories, as Ragolia is not a party to the action, nor does he have any current relationship with plaintiffs.

D. Finally, defendant seeks to compel answers to its "Due Diligence" interrogatories, which were served on plaintiff's August 1, 1991, 23 days prior to the filing of this motion. Plaintiffs claim that the request is premature. n2

> n2 The firm of Cozen and O'Connor also informed this Court by their Sept. 11, 1991 correspondence that Home and Revlon had resolved all the due diligence issues presented in the instant motion. Thus, this Court need not examine this issue, nor Home's related attempt to compel answers to document requests made to the law firm of Skadden, Arps, Slate, Meagher & Flom.

[*9]

The Documents Requested in Section A of Defendant's Brief

The Home has requested this Court to either compel production of the seven sets of documents listed here, or to compel plaintiffs to submit an affidavit "of the president or other responsible corporate officer of plaintiffs" that such documents never existed or are no longer in their possession, custody, or control. In addition to their response to the motion, plaintiffs have submitted the affidavit of Richard Collier, Vice President and Assistant Secretary of Rhone-Poulenc Rorer Inc. The affidavit states that he has been authorized to make the statement on behalf of RPR and Armour, thus binding the plaintiffs. Mr. Collier states that plaintiffs, despite their

efforts to do so, have been unable to locate documents, other than those already produced, in five of the seven categories described in Section A of defendant's memorandum. Those categories are: (1) Plasma Executive Committee minutes; (2) Marketing newsletters; (3) marketing and sales brochures circulated to hemophilia treaters; (4) marketing plans; and (5) minutes of meetings attended by Dr. Michael B. Rodell and Dr. Lorne Schnell or Mr. Max Graber.

Although this [*10] affidavit does not comply precisely with the language that defendant requests (it does not affirmatively state that the documents never existed or are not in control of plaintiffs, merely that they are lost) this Court obviously cannot force plaintiffs to produce documents they can not find. However, plaintiffs have produced some of the documents in certain of these classes, and have not brought allegations of irrelevancy or over-burdensomeness to this Court's attention. Thus, plaintiffs are directed to continue to search for the requested documents, and produce any such documents that they do find.

The Canadian Documents

One of the two classes of documents not included in the affadivit, but described in section A of defendant's memorandum in support of their motion, is "documents provided to Sidley & Austin by Graber after December, 1987 which pertain, refer or relate to the 2-3 December 2 Canadian HPB inspection." Defendant's memorandum at 8. Plaintiffs contend that the matter was earlier resolved at the deposition of Max Graber, when defendant initially claimed that plaintiffs had produced only one document in response to defendant's request. Throughout the course of the deposition, [*11] however, it became clear that many more had been produced, as defendant used at least 12 such documents at the deposition. See Exhibit B attached to plaintiffs memorandum in opposition.

Defendant's current argument however, seems to be somewhat different. Defendant claims that Graber stated that he produced more documents than were shown to him at deposition (although this is not entirely clear from the fragments of deposition provided to this Court). Since plaintiffs did not include this class of documents in their affidavit, they are apparently available.

Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to

lead to the discovery of admissible evidence." Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978).* Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded [*12] broad and liberal construction. *Buffington v. Gillette Co., 101 F.R.D. 400 (W.D.Okla. 1980).* See also *Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, at 124 (M.D.N.C. 1989).* Because no claims of irrelevancy have been raised as to these documents, and several documents from this class have already been produced, plaintiff will be ordered to produce any remaining documents responsive to request no. 7 in section A of defendant's memorandum which have not already been produced.

The Management Letters

This issue is difficult to resolve for two reasons. First, defendant claims that these letters were requested in their sixth request for production of documents, and that this request is attached as Exhibit E to their memorandum in support of the motion. While the document attached as exhibit is titled "The Home's Sixth Request for Production of Documents to Plaintiffs", the management letters which defendant by this motion seeks to compel, are not mentioned in that request. Further, the request is dated August 1, 1991. Plaintiffs' responses to that request were not even due at the time this motion was filed. This United States Magistrate [*13] Judge will decide this issue on the assumption that the management letters were, prior to filing of this motion, properly requested by defendants. My disposition of this issue rests on that assumption, and any showing that the documents were not, in fact, properly requested may void my ruling as to the management letters.

Although the motion to compel these letters was premature, plaintiffs' response to this motion (which was filed the day plaintiffs' responses to the document request were due), makes no mention of these documents. Plaintiff neither confirms nor denies defendant's claims as to the management letters. The letters appear to be relevant, and plaintiff makes no allegations to the contrary. Therefore, in the interests of judicial economy and to prevent the need to file further motions on this point, I will order plaintiff to produce any letters

responsive to those described in section A, part 2 of motion, (Defendant's Motion to Compel at 4-5) which have not already been produced. This is not, however, a finding that plaintiffs have not met with their discovery obligations as to these documents, it is merely an order for them to comply in the event that they have not [*14] done so. However, because this United States Magistrate Judge can find no record of a formal request for these documents, defendant will be ordered to deliver a copy of such formal request. If such request is not delivered, or was filed after this motion was filed, the Court may void its order that plaintiffs produce these documents.

The Samuels Termination Agreement

Plaintiffs make no allegation that this information is privileged. Their sole ground for refusing to produce the document is that defendant does not seek the termination agreements of other deposed individuals. This is hardly a proper ground on which to object to discovery. If the information sought is relevant and not privileged, the reasons for which a party seeks such information are of no import. Evidence of witness bias is always admissible at trial, and is thus relevant. Further, defendant does not make far-ranging, speculative requests for information based on bias, but asks for a single agreement which this Court agrees is reasonably calculated to lead to evidence of bias as to this specific witness, and thus to admissible evidence. There is no reason for the court to inspect the agreement in camera, as [*15] suggested by plaintiffs, for the information it contains is likely to lead to the discovery of admissible evidence, and no privilege has been claimed. The termination agreement between what was then Rorer Group Inc. and Stuart Samuels will be ordered produced.

The Ragolia Interrogatories

I note the outset that a Mr. Ragolia has a duty under *Fed. R. Civ. P. 26(a)* and (b) to respond to properly served interrogatories, especially after resolving the issue of any potential conflict with plaintiffs' attorney-client privileges. That being said, Mr. Ragolia is not a plaintiff in this action and is not named in the title of this motion, does not appear to have been served with this motion, and does not have any relationship to any of the plaintiffs which would justify their being responsible for his behavior. Thus, while defendants concern over Mr. Ragolia's apparent refusal to answer interrogatories is well founded, the present motion is not a valid method of compelling such answers. Direct action against Mr.

Ragolia should have been taken. Thus, this motion must be denied insofar as they seek to compel plaintiffs to answer the Ragolia interrogatories. Plaintiffs actions in attempting [*16] to convince Mr. Ragolia to answer the interrogatories are proper, and should continue until such time as the issue is resolved.

The Work Product Documents

Defendant also seeks what it admits is work product from the attorneys of both Rorer and Armour. Plaintiff objects to these requests, claiming attorney-client privilege, and the attorney work-product doctrine. The information sought is so clearly protected by the attorney-client privilege that this Court need not even decide the issue of whether it is protected by the work product doctrine. Defendant requests: "Any and all statements and/or work product or memoranda by any attorneys who worked for Armour who interviewed employees of Armour at the Kankakee facility." Defendant also seeks to compel: "Any and all statements and/or work product or memoranda by any attorneys who worked for Rorer who interviewed employees of Armour at the Kankakee facility." Clearly this information is protected by the attorney client privilege; in fact, the phrasing of the requests alone contain many of the elements necessary for a claim of attorney-client privilege. The elements of that privilege have been set out in re *Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979).* [*17] That case stated that:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) The person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Id, at 1233,* citing *United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass. 1950).*

The information which defendant seeks to compel meets all the strict elements adopted by this circuit. Plaintiffs correctly cite the seminal case of *Upjohn Co. v.*

*United States, 449 U.S 383 (1981)* for the proposition that, when an attorney's client is a corporation, statements of employees to the attorney concerning the [*18] matter for which the attorney was retained are statements of "the client" for purposes of analyzing attorney-client privilege. Defendant specifically asks for statements only from those attorneys who interviewed employees of the plaintiffs, and were employed by the plaintiffs. This satisfies element (1) and both parts of element (2). There is no reason to believe that strangers were present at these interviews, indeed the term "interview" strongly suggests that no strangers were present, and the purpose of these interviews was clearly to assist the client in a legal proceeding. This satisfies element (3) in its entirety. Since plaintiffs here claim the privilege, and did so in their responses to the request for production, element (4) is satisfied. Having determined that these documents are clearly protected by the attorney client privilege, this Court need not decide whether they are also protected by the work product doctrine.

Defendant alleges that substantial need for the documents, and inability to get the information anywhere else overrides any privileges. Defendant claims: "Such statements may contain the very information which plaintiffs' witnesses claim they no longer recall [*19] or were unaware of at the tome [sic] of the issuance of the policy." This argument is futile in circumventing the attorney-client privilege, however. While a showing of substantial need and unavailability of the information from any non-privileged source can negate the protections of the work product doctrine, no such unavailability exception can be extended to the attorney-client privilege. See *Reeves v. Teuscher, 881 F.2d 1486 (9th Cir. 1989).* In Reeves, the Court of Appeals contrasted the differing purposes between the two doctrines. The court noted that:

The conditional protections of the work-product rule prevent exploitation of a party's efforts in preparing for litigation. . . . The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest similar effort in discovery. Accordingly, when a party makes a substantial showing that he is unable through his efforts to obtain needed information, the balance of equities shifts in favor of disclosure of trial preparation materials. *Id. at 1494.*

The court went to state that [*20] the attorney

1991 U.S. Dist. LEXIS 14708, *20

client-privilege protects communications between the attorney and the client to encourage the client to be forthcoming with his attorney so that accurate legal advice can be offered. To extend the unavailability exception to the attorney client privilege would, in the words of the Ninth Circuit Court of Appeals: "either . . . destroy the privilege or render it so tenuous and uncertain that it would be little better than no privilege at all" Were this Court to allow plaintiff access to documents protected by the attorney-client privilege, it would undercut the purpose of the privilege to encourage clients to be honest with their attorney, because the communications will never be made known to others. Enabling other parties access to the information on a substantial need basis would encourage clients to be less than honest with their counsel, knowing that their words might become part of discovery at any time. The documents relating to employee statements are privileged, and need not be produced.

The Due Diligence Interrogatories

It has been communicated to this Court that the motion has been withdrawn as to Revlon, Inc., as the Due Diligence issue has been resolved [*21] by the parties. Thus, no judgement is needed or appropriate as to this issue.

Sanctions

Under *Fed. R. Civ. P. 37(4)*, if a motion is granted in part and denied in part, "the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner. I find justice would best be served by requiring each party to pay their own costs in relation to this motion. The motion for sanctions will be denied.

ORDER

AND NOW, this 15th day of October, 1991, after careful consideration of defendant's Motion to Compel answers to interrogatories and production of documents, and plaintiffs RPR and Armour's response thereto, it is hereby ORDERED that the plaintiffs' motion is GRANTED IN PART and DENIED IN PART and that plaintiffs are ORDERED to produce to defendant:

1. Any documents responsive to request no. 3 of defendant Home's fourth set of requests for production of documents which have not already been produced.

2. All documents responsive to Section A, part 2 of defendant's memorandum in support of the motion which have not already been produced, and subject to the condition that they have been properly requested by the Home prior to the [*22] filing of the instant motion.

3. The termination agreement between Stuart Samuels and Rhone-Poulenc Rorer, Inc.

4. Any documents listed in the affidavit of Richard T. Collier which plaintiffs possess, or which come into plaintiffs' possession, and which have not already been produced.

IT IS FURTHER ORDERED that Defendant Home indemnity Company hand-deliver to this United States Magistrate Judge, within three days of the filing of this Order, a copy of the Request for Production of Documents which contains a request for the management letters specified in their Memorandum in Support of the Motion to Compel at 4-5. Failure to deliver this document, which must have been filed prior to the filing of this Motion, may result in the voiding of one or more parts of this Order.

EXHIBIT G

LEXSEE 1997 U.S. DIST. LEXIS 10118

**MARIA STORCH v. IPCO SAFETY PRODUCTS COMPANY OF PENNSYLVANIA, INC. and AIRGAS SAFETY, INC.**

**CIVIL ACTION NO. 96-7592**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**1997 U.S. Dist. LEXIS 10118; 134 Lab. Cas. (CCH) P33,560**

**July 15, 1997, Decided**
**July 16, 1997, Filed**

**DISPOSITION:** [*1] Sales Data from 1990-1994 related to the Plaintiff's Accounts GRANTED; Sales Data from 1990-1994 related to other employees' accounts DENIED; and Sales Data from 1990-1996 related to the Plaintiff's Accounts on computer disk GRANTED.

**COUNSEL:** For MARIA STORCH, PLAINTIFF: ANDREW S. ABRAMSON, BLUE BELL, PA USA.

For IPCO SAFETY PRODUCTS COMPANY OF PENNSYLVANIA, INC., AIRGAS SAFETY, INC., DEFENDANTS: JANEEN OLSEN DOUGHERTY, MC CAUSLAND, KEEN AND BUCKMAN, RADNOR, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINION BY:** HERBERT J. HUTTON

**OPINION: MEMORANDUM AND ORDER**

HUTTON, J.

July 15, 1997

Presently before this Court is the Plaintiff's Motion to Compel Defendant Airgas Safety, Inc. to Provide Full and Complete Answers to Interrogatories and Document Requests Concerning Sales Data, and the Defendant Airgas Safety, Inc.'s Response thereto.

**I. BACKGROUND**

This action arises under the Family Medical Leave Act, 29 U.S.C. § 2601. The plaintiff alleges that after her election of Family Medical Leave, and upon her return, she was told by the defendant that she could not return to her original position as a sales account manager, a position she held from February, 1990 through [*2] February, 1996. Now she requests certain discovery to determine the extent of her damages. Specifically, the plaintiff states that in order to ascertain the income which she would have derived from her former accounts, information must be derived by developing a computer analysis of data based upon Storch's past sales to her former clients, as well as historical and future sales of other individuals employed by Airgas in a similar position. As such, the plaintiff states that on February 19, 1997, she served interrogatories and request for production of documents upon counsel for defendant Airgas, requesting such information.

The plaintiff contends that defendant Airgas has refused to produce sales information for the period 1990-1994. Instead, the plaintiff states that Airgas has only produced sales data for the period 1995 and 1996 relating only to salespeople who assumed responsibility for Storch's accounts, by producing hundreds of pages of paper, ignoring the discovery which requests the production of information on a computer disk. The defendant Airgas argues that it has produced all information relevant to the determination of damages under the Family Medical Leave Act. Additionally, [*3] defendant Airgas states that it is still investigating its ability to provide the computer information for those non-objectionable portions of the requests in a computerized form.

**II. DISCUSSION**

**A. Scope of Discovery**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . " Fed. R.

1997 U.S. Dist. LEXIS 10118, *; 134 Lab. Cas. (CCH) P33,560

Civ. P. 26(b)(1). "Relevancy, and to a lesser extent bur-densomeness, constitute the principal inquiry in ruling upon objections to interrogatories. McClain v. Mack Trucks, Inc., 85 F.R.D. 53, 57 (E.D. Pa. 1979). The scope of discovery, however, is not without its limits, and is "committed to the sound discretion of the trial court." Id. "The party seeking discovery has the burden of showing clearly that the information sought is relevant to the subject matter of the action and would lead to ad-missible evidence. Id.

**B. Data from 1990-1994 Related to Plaintiff's Ac-counts**

The plaintiff contends that evidence of sales data of plaintiff's accounts are needed from 1990-1994 in order to predict [*4] the sales which she could have generated after she returned from her Family Medical Leave. The defendant states that such data is not needed for the de-termination of plaintiff's damages.

Because discovery should be granted liberally, this Court finds that such data is relevant for purposes of de-termining the damages of the plaintiff. The plaintiff's own history of sales and success with different accounts may shed light on the amount of sales she may have been able to generate in subsequent years. Therefore, this Court grants the plaintiff's Motion to Compel discovery for sales information related to the plaintiff's accounts from 1990-1994.

**C. Data from 1990-1994 Related to Other Employees Accounts**

The plaintiff next argues that the defendant should also produce sales data related to other employees accounts. The plaintiff contends that because these individuals were employed in the same position as the plaintiff, the data is relevant. The defendant contends that the sales, income or profit derived by other Airgas employees who did not service the plaintiff's accounts bears no possible correlation to the relevant issues in this action. This Court agrees with the [*5] defendant. The sales data of other employees constitutes information outside the scope of discovery in this matter. The plaintiff fails to show how such information is relevant to an analysis of the potential sales of the plaintiff. The plaintiff cites to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) for support. This Court, however, finds that the McDonnell case involved a Title VII matter alleging discrimination. The Court noted that "especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness to the "stall-in" were nevertheless retained or rehired." Id. The plain-tiff's comparison of this matter with McDonnell is faulty.

McDonnell is distinguishable from this matter because in a Title VII matter, comparison between different kinds of individuals based on sex, race, etc., is the essential fac-tual issue involved. Such is not the case in this matter. Accordingly, the plaintiff's motion to compel discovery of sales data of other employees is denied.

**D. Feasibility of Producing Information on Computer Disk**

The plaintiff contends that the information she has [*6] requested should be provided in computer disk format. She states that data in disk format is needed in order to run an analysis of the information. Otherwise, the plain-tiff may incur between $ 10,000 to $ 20,000 in data en-coding fees to properly format the information. The de-fendant has stated that it is "still investigating its ability to provide the computer information for those non-objectional portions in a computerized form."

This Court finds that in this age of high-technology where much of our information is transmitted by com-puter and computer disks, it is not unreasonable for the defendant to produce the information on computer disk for the plaintiff. See National Union Electric v. Matsu-shita Electric, 494 F. Supp. 1257, 1262 (E.D. Pa. 1980)(stating that to "secure the just, speedy, and inex-pensive determination in every action", court may grant a party's motion to receive data on computer disk). The defendant has not given sufficient reasons why it can not provide the information on disk. As such, this Court grants the plaintiff's motion to compel the production of the relevant information on computer disks.

An appropriate Order follows.

**ORDER**

[*7] AND NOW, this 15th day of July, 1997, upon con-sideration of the Plaintiff's Motion to Compel Defendant Airgas Safety, Inc. to Provide Full and Complete An-swers to Interrogatories and Document Requests Con-cerning Sales Data, and Defendant Airgas Safety, Inc.'s Response thereto, IT IS HEREBY ORDERED that the Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that the Plaintiff's Mo-tion for production of:

(1) Sales Data from 1990-1994 related to the Plain-tiff's Accounts is **GRANTED**;

(2) Sales Data from 1990-1994 related to other em-ployees' accounts is **DENIED**; and

(3) Sales Data from 1990-1996 related to the Plain-tiff's Accounts on computer disk is **GRANTED**.

1997 U.S. Dist. LEXIS 10118, *; 134 Lab. Cas. (CCH) P33,560

BY THE COURT:                                    HERBERT J. HUTTON, J.