UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    :
STUDENT FINANCE CORPORATION               :
                                          :
            Debtor.                       :
                                          :
                                          :
_____        :
                                          :
CHARLES A. STANZIALE, JR.,                :
CHAPTER 7 TRUSTEE OF STUDENT              :
FINANCE CORPORATION,                      :
                                          :
            Plaintiff,                    :
                                          :    Civil Action No. 04-1551 (JJF)
                                          :
      v.                                  :
                                          :
PEPPER HAMILTON, LLP, et al.,             :
                                          :
            Defendants.                   :
_____        :

BRIEF IN OPPOSITION TO PEPPER HAMILTON'S MOTION TO COMPEL
AND IN SUPPORT OF TRUSTEE'S MOTION FOR A
PROTECTIVE ORDER AND TO COMPEL DISCOVERY

Michael S. Waters, Esq.                   Daniel K. Astin, Esq. (No. 4068)
Lois H. Goodman, Esq.                     Mary E. Augustine, Esq. (No. 4477)
Candice E. Chesson, Esq.                  THE BAYARD FIRM
MCELROY, DEUTSCH, MULVANEY                222 Delaware Avenue
& CARPENTER, LLP                          Suite 900
Gateway Three – 100 Mulberry Street       Wilmington, Delaware 19899
Newark, New Jersey  07102

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY .................. 5

ARGUMENT ........................................................................................................ 9

    POINT I ........................................................................................................ 9

    PEPPER IS NOT ENTITLED TO DISCOVERY WITH REGARD TO THE
    TRUSTEE'S COMPENSATION OR COMMUNICATIONS WITH ROYAL ......... 9

        A.    THE TRUSTEE'S FEE ARRANGEMENTS WITH HIS LAW FIRM IS
               NOT DISCOVERABLE ................................................................... 9

        B.    COMMUNICATIONS BETWEEN COUNSEL FOR THE
               TRUSTEE AND ROYAL ARE NOT DISCOVERABLE ......................... 15

    POINT II ...................................................................................................... 22

    THE COURT SHOULD ENTER AN ORDER PRECLUDING DISCOVERY
    OF COMMUNICATIONS BETWEEN ROYAL AND
    THE TRUSTEE OR THE COMPENSATION OF THE TRUSTEE .......................... 22

    POINT III ..................................................................................................... 24

    THE COURT SHOULD REQUIRE IN CAMERA EXAMINATION OF THE
    DOCUMENTS DESIGNATED AS PRIVILEGED BY PEPPER HAMILTON ......... 24

    POINT IV ..................................................................................................... 33

    THE COURT SHOULD ORDER PEPPER TO RESPOND IN FULL TO
    REQUEST TWO OF THE SECOND SET OF DOCUMENT REQUESTS SERVED
    ON PEPPER BY THE TRUSTEE ....................................................................... 33

CONCLUSION .................................................................................................... 36

## TABLE OF AUTHORITIES

Cases

Glenmede Trust Co. v. Thompson,
  56 F.3d 476, 483 (3d Cir. 1995 .................................................................... 22

Hall v. Harleysville Ins. Co.,
  164 F.R.D. 172, 173 (E.D.Pa. 1995 ............................................................. 23

In re Mavrode,
  205 B.R. 716, 721 (Bankr. D.N.J. 1997 ...................................................... 11

In re Southeast Banking Corp.,
  314 B.R. 250, 273 (Bankr. S.D. Fla. 2004 ................................................... 11

In re World Health Alternatives,
  344 B.R. 291 (Bankr. D. Del. 2006 ....................................................... 12, 13

M. Berenson Co., Inc. v. Faneuil Hall Marketplace, In
  103 F.R.D. 635 (D. Mass. 1984 ...................................................................... 9

Matter of Mark Dalen, 259 B.R. 586, 611 (Bankr. W.D. Mich. 2001 ......... 11, 12

McClain v. Mack Trucks, Inc.,
  85 F.R.D. 53, 57 (E.D. Pa. 1979 .................................................................... 9

Nestle Foods Corp. v. Aetna Casualty & Surety Co.,
  135 F.R.D. 101, 104 (D.N.J. 1990 ................................................................ 33

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
  262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003 ............................................... 14

Pansy v. Borough of Stroudsburg,
  23 F.2d 772, 787 (1994 ................................................................................. 23

Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.),
  448 F.3d 672 (3d Cir. 2006 ........................................................................... 21

U.S. v. Massachusetts Institute of Technology,
  129 F.3d 681, 686 (1st Cir. 1997 .................................................................. 18

Westinghouse v. The Republic of the Philippines,
  951 F.2d 1414, 1428 (3d Cir. 1991 .............................................................. 18

## PRELIMINARY STATEMENT

By the present motion, Pepper Hamilton, LLP ("Pepper") asks the Court to order the Trustee to turn over information that is protected under the most basic doctrines of privilege and of confidentiality. Pepper cannot articulate a legitimate basis for the discovery, and Pepper's motion should be denied. At the same time, Pepper has refused to produce documents that it claims are privileged or do not exist, but as to which it has failed to demonstrate the existence of a privilege. The Court should grant the Trustee's cross motion to require Pepper to produce certain records and submit others for in camera review.

Pepper styles its motion as seeking two separate areas of discovery, one for communications between counsel for the Trustee and counsel for Royal, and the other for the compensation the Trustee receives from the law firm at which he is of counsel. Both areas relate to the same thing, however: Pepper's attempt to deflect attention from its own malfeasance by concocting a claim against the Trustee which does not exist. Discovery should not be abused in such a way.

The alleged rationale for the requests is that the Trustee may have acted improperly and for personal gain, not for the benefit of the estate, in settling with Royal. These allegations are outrageous. There is not a scintilla of evidence to support the claims, not a hint of wrongdoing or personal interest, not a single fact that backs up this newly-fabricated claim. Instead, there is evidence that the settlement between Royal and the Trustee was on notice, was the subject of an opportunity for objections, that there was a hearing at which the court heard argument and testimony with regard to the benefits to the estate of the settlement, and that the court found that the Trustee was acting

1

reasonably in exercising his business judgment by entering into the settlement. Pepper's motion is no more than a belated effort to re-open that court-approved settlement and to cast a negative light on the Trustee to deflect attention from Pepper's own failures to comply with the discovery rules.

The information sought is not relevant to the issues in the case. The Trustee has brought an action against the Pepper Hamilton law firm and its partner, W. Roderick Gagné ("Gagné"), for malpractice and breach of fiduciary duty. As set out in a 327 paragraph amended complaint, the Trustee alleges, inter alia, that Pepper and Gagné ignored multiple conflicts of interest, by engaging in representation of parties with divergent interests, including but not limited to Gagné's own family with regard to the personal investments they made in SFC. These allegations place the ability of the Pepper attorneys, and particularly partner Gagné, to exercise judgment independently at the forefront. No such allegations are alleged with regard to the Trustee, and Pepper's effort to belatedly imply them is unavailing.

What's more, at the hearing before the Bankruptcy Court, the Trustee testified with regard to the benefits that the settlement would bring for the estate, including that it would end an expensive litigation and would give the Trustee resources to pursue other claims. The Trustee specifically testified that another incentive for entering into the settlement was that the estate would then gain the vast resources Royal had available in seeking to bring assets back to the estate. The Court was advised that Royal and the Trustee would enter into a cooperation agreement – indeed, the cooperation between the Trustee and Royal was an express clause of the settlement term sheet. Now, after the Trustee and Royal have shared strategies and information for almost two years in reliance

2

on the court-approved agreement, Pepper seeks to undo that agreement and uncover the communications. Allowing such discovery would undermine the interests of the estate and ensnare this Court in what would essentially be a reconsideration of the bankruptcy court's approval of the settlement.

A review of the time line of the discovery and the mirror wording of Pepper's request makes it clear that Pepper's latest requests are no more than a response to the Trustee's own request to Pepper that it produce documents setting forth Gagné's compensation. That information is relevant to the claims levied against Pepper and Gagné, and should be produced. The Trustee accordingly moves to compel production of that information. However, the fact that discovery is relevant to a claim by the Trustee against Pepper does not create a basis for discovery against the Trustee unrelated to any claim. The facts make clear that there is no basis for this scenario, and Pepper is not entitled to the discovery sought. The Court should deny Pepper's motion in its entirety, and, since Pepper has now asked to conduct the deposition of Mr. Stanziale, enter a protective order, precluding questions relating to these areas in either written discovery or at deposition.

Pepper uses its requests and motion to mask the fact that it has failed to produce a number of documents, in addition to those already discussed. Despite the fact that SFC was Pepper's client, and that SFC has waived its privilege with regard to Pepper's representation, Pepper has provided a privilege list of 153 documents, and has refused to produce the documents on the log in discovery. When challenged on individual documents, however, it has acknowledged that certain documents were not in fact privileged and others contained relevant information that was erroneously redacted.

3

Depositions are now well underway, and the parties should have the benefit of all relevant non-privileged documents in order to fully examine the witnesses. In light of Pepper's conduct to date, as described infra, the Trustee asks that the Court require that all of the documents on Pepper's list be produced for review in camera or by a Special Master.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Student Finance Corporation ("SFC") was in the business of originating and acquiring student loans, primarily from truck driving schools. See Amended Complaint ¶ 22. On June 5, 2002, certain of the schools with which SFC had been doing business filed an involuntary petition in bankruptcy against SFC. Id. ¶ 17. On September 29, 2003, Charles A. Stanziale, Jr. (the "Trustee") was appointed as Chapter 11 trustee for SFC; soon after the bankruptcy was converted to a Chapter 7, he was appointed as the Chapter 7 trustee. Id. ¶ 19-21.

Royal Indemnity Company ("Royal"), which had provided insurance for securitizations issued by SFC well as certain financing, was one of the creditors of the estate. Prior to the appointment of the Trustee, the estate brought suit against Royal. After his appointment, the Trustee filed an amended complaint, adding additional allegations.

By application dated October 14, 2004, the Trustee and Royal sought approval of a settlement of the disputes between them. See Trustee's Motion for Approval of Settlement with Royal Indemnity, A-1.[1]   On October 27, 2004, the bankruptcy court conducted a hearing with regard to the proposed settlement. That hearing was on the record, and a copy of the transcript of the October 27, 2004 hearing (the "Transcript") is submitted as B-1. Counsel for a number of creditors appeared, and several presented argument with regard to their objections to the settlement. Id. The Trustee was cross-examined on the merits of the settlement. Id.

---

[1] Documents submitted as part of Pepper's Appendix in support of its motion will be referred to as "A-__"; documents in the Trustee's Appendix in opposition to Pepper's motion and in support of the Trustee's Cross Motion will be referred to as "B-__."

During the Bankruptcy Court hearing, a number of issues were explored, including the value of the settlement to the estate. Counsel argued with regard to the amount Royal would be paying the estate, and the value that would be provided, both in terms of avoiding the costs of litigating against Royal and providing the estate with the financial wherewithal to pursue claims against third parties.

In addition, the term sheet to the settlement between Royal and the Trustee (the "Term Sheet") containing the terms of the settlement specifically provided for the Trustee and Royal to cooperate in litigation and to share materials, including privileged communications. See Term Sheet, B-180. At the hearing, the cooperation clause was specifically addressed. The Trustee advised the court that the cooperation clause had significant value to the estate, in that it gave the estate access to the considerable resources Royal had at its disposal. At the time, Royal had already amassed a wealth of information about SFC and it was willing to make that information available to the Trustee and his counsel, and to also assist in pursuing claims of the estate. See Transcript at 58-59.

By Order dated October 29, 2004, the court approved the settlement between the Trustee and Royal, and authorized the Trustee and Royal to proceed with the actions outlined in the Term Sheet. See Order Approving Settlement, B-183. There was no appeal filed, and the parties entered into an agreement memorializing the cooperation agreement ("the Joint Litigation Agreement"). Since that time, the Trustee and Royal have shared strategies and information, as well as other resources. See Affidavit of Charles A. Stanziale, Jr. ("Stanziale Aff.") ¶ 12.

On or about November 1, 2004, the Trustee filed suit against Pepper Hamilton LLP ("Pepper"), the law firm for SFC, and a number of related individuals, including Pepper partner W. Roderick Gagné ("Gagné"). This Court dismissed Counts Two, Three, Five, Six and Eight by order dated December 22, 2005, and the Trustee filed an Amended Complaint on January 23, 2006. Among the claims that remain in the case are the malpractice and breach of fiduciary duty counts against Pepper and Gagné.

On May 8, 2006, the Trustee served a document request on Pepper, asking, inter alia, for: "[d]ocuments sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné by Pepper Hamilton." See Trustee's Second Request for Production of Documents Directed to Pepper Hamilton, LLP, A-94. Pepper refused to produce the requested documents, answering that such documents did not exist. See Pepper Hamilton, LLP's Responses and Objections to the Trustee's Second Request for Production of Documents, B-186.

Instead of producing the responsive documents, Pepper then served a request on the Trustee, seeking the same documents relating to the Trustee's compensation from his law firm. The Trustee objected. Since that time, there has been correspondence with regard to both sets of requests. On or about October 4, 2006, Pepper filed the present motion, seeking to compel the Trustee to produce communications between his counsel and counsel for Royal, as well as documents detailing the compensation the Trustee receives from his law firm.

During the same time frame, all of the parties to the consolidated cases have been in the process of producing documents.[2] In order to facilitate discovery, the Trustee

---

[2] The Trustee's suit against Pepper is one of four cases consolidated for discovery. The other three are Wells Fargo Bank N.A. v. Royal, Case No. 02-1294-JJF; Charles A. Stanziale, Jr., Chapter 7 Trustee of

waived any privilege belonging to SFC with regard to its representation by Pepper. Pepper, however, has produced a privilege log listing 153 documents, which it contends are protected by either the attorney-client privilege or the work product doctrine. While Pepper has refused to produce the documents or to elaborate the privilege asserted, at every deposition of a Pepper attorney it has been disclosed that a document withheld on the basis of privilege should have been produced and thus was produced belatedly. Based on this track record and the failure of Pepper's efforts to communicate with clients who would allegedly assert the privilege, the Trustee moves for an in camera review by the Court or a Special Master of the remaining documents withheld by Pepper as privileged.

---

Student Finance Corp. v. McGladrey & Pullen LLP. et al., Case No. 05-72-JJF; and Royal v. Pepper Hamilton. et al., Case No 05-165-JJF

## ARGUMENT

### POINT I

### PEPPER IS NOT ENTITLED TO DISCOVERY WITH REGARD TO THE TRUSTEE'S COMPENSATION OR COMMUNICATIONS WITH ROYAL

#### A.    The Trustee's Fee Arrangements with his Law Firm is not Discoverable

Nowhere in the case is there an allegation that the Trustee has acted in anything but the best interests of the estate. Because there is no basis in the record or in the pleadings for the discovery sought, the motion to compel must be denied.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The scope of discovery is not without its limits, however, and is "committed to the sound discretion of the trial court." McClain v. Mack Trucks, Inc., 85 F.R.D. 53, 57 (E.D. Pa. 1979). Discovery is not permitted where the information sought is irrelevant to the claims at issue, where the requests were tendered in bad faith, or where the requests are unduly burdensome. Young v. Lukens Steel Co., 1994 U.S. Dist. LEXIS 1462 (E.D. Pa. Feb 10, 1994) citing M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc., 103 F.R.D. 635 (D. Mass. 1984).

With regard to the demand for the Trustee's personal compensation, Pepper Hamilton has failed to demonstrate how the information sought is relevant to this action. Pepper argues that the Trustee might have been motivated by personal economic interests in settling the Royal dispute. One would search in vain for any reference to this allegation in the pleadings filed by Pepper.

Rather, in order to understand why Pepper is suddenly interested in the Trustee's compensation package, one would have to look at the document requests served by the

9

Trustee on Pepper. See A-94.  The requests were appropriate, given the allegations in the Amended Complaint that Pepper partner Gagné failed to act independently in his representation of SFC and that he, and through him, Pepper, acted under the cloud of a series of conflicts of interest.  The Trustee, standing in the shoes of SFC, Pepper's client, has the right to examine the extent to which Gagné's compensation was impacted by the work he did for SFC, Andrew Yao, and Gagné's own family, together with his financial dealings with SFC, since all of that can impact his conduct and judgment in the representation, as alleged in the Amended Complaint.  Pepper produced nothing in response to the requests and instead, served a mirror request on the Trustee.

The same rationale does not hold true, however, for the requests made by Pepper: there is simply no basis for seeking documents regarding the Trustee's compensation arrangement, since there is no claim of malpractice or breach of fiduciary duty against the Trustee.  Indeed, the only claim is that the settlement reached with Royal, which was approved by the Bankruptcy Court on notice and after a full hearing, should be re-opened for further objections and discovery by Pepper with regard to reasonableness.  Pepper Hamilton's unfounded argument that the Trustee was improperly motivated by financial gain is too remote to establish that these documents are relevant or could lead to relevant information.

In fact, the Trustee's settlement with Royal was appropriate and consistent with the role of a trustee in a bankruptcy proceeding.  Settlements are favored in bankruptcy proceedings and once approved by the court, may be set aside only if there is an abuse of discretion.  In re Three River Woods, Inc., 2001 Bankr. LEXIS 737, *13 (Bankr. E.D.Va. Mar. 20, 2001).  In the bankruptcy context, courts are to review a trustee's decision

10

regarding settlement to determine whether it is in the best interests of the estate. In re World Health Alternatives, 344 B.R. 291 (Bankr. D. Del. 2006); In re Mavrode, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). "[T]he court can give weight to the Trustee's informed judgment that a compromise is fair and equitable." In re Southeast Banking Corp., 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004). "The notion that a bankruptcy court upon review of a challenge to a settlement does not attempt to substitute its judgment for that of the trustee reflects the general roles of the court and trustee under the Code. Thus, the judgment of the trustee must be given some discretion." In re Foundation for New Era Philanthropy, 1996 Bankr. LEXIS 1891, *20 (Bankr. E.D.Pa. July 22, 1996).

A settlement is required to be "approved by the court to ensure against illegality or collusion, that the settlement then be noticed to persons who might be affected by the settlement, and that those persons then have a right to voice their objections to the proposed settlement subject, however, to the presumption that the settlement is reasonable if the court has given its preliminary approval to the same." In the Matter of Mark Dalen, 259 B.R. 586, 611 (Bankr. W.D. Mich. 2001) (citations omitted). The ultimate question the court resolves in approving a settlement is "whether the trustee, in reaching that settlement, has complied with her fiduciary duties to the bankruptcy estate, its creditors, and other parties in interest." Id.

In the present matter, Pepper is seeking to compel documents relating to the Trustee's compensation to show that the Trustee settled with Royal to reap substantial personal compensation. To provide legitimacy for its unwarranted argument, Pepper attempts to rely on Rhone-Poulenc, Inc. v. Home Indemnity Co., 1991 U.S. Dist. LEXIS 14708 (E.D. Pa. Oct. 15, 1991) and American Health Systems, Inc. v. Liberty Health

11

System, 1991 U.S. Dist. LEXIS 14400 (E.D. Pa. July, 22 1991). In both cases, the court

dealt with the discovery of potential bias of a *witness*. Specifically, in <u>American Health</u>

<u>Systems</u>, the court held that compensation of a witness received from various defendants

in that case is discoverable to expose the witness' potential bias. Any analogy is

misplaced in the current matter because the potential bias or motivation that Pepper is

raising has previously been discredited by the court when it approved the settlement. In

fact, the issue of collusion or illegality in the context of the duties owed by a trustee is

one of the issues that the court expressly contemplates and determines in approving a

settlement. <u>In the Matter of Mark Dalen</u>, <u>supra</u>, 259 B.R. at 611. Thus, when the

Bankruptcy Court approved the Trustee and Royal's settlement, it was cloaked with "the

presumption that the settlement which the Trustee has proposed is reasonable." <u>Id.</u> at

615. Accordingly, Pepper's unsupported inference of bias has no merit.

Pepper's claim that it was inappropriate to settle with Royal in order to provide

funds for the estate is also without merit. Contrary to Pepper's assertion, the benefit of

the settlement to the creditors is a paramount concern in deciding whether a settlement is

valid. For instance, in <u>In re World Health Alternatives</u>, 344 B.R. 291, 302 (D. Del.

2006), the court discussed the importance of providing funds to pursue other causes of

action on behalf of the creditors:

> Counsel for the Committee observed that this company has
> been the subject of pre-petition fraud and we do believe
> there are good causes of action against perhaps Debtor's
> directors and officers, prior auditors, and prior attorneys for
> the company ... The Letter Agreement potentially provides
> funds to finance the pursuit of such causes of action.
> Equally important, the estate will have $1,347,000
> available to finance such causes of action by the chapter 7
> trustee. Thus, the Court finds it is reasonable, when faced
> with limited funds, to forego expensive litigation against

12

> the pre-petition secured lender in favor of what appears to
> be more fruitful litigation against the Debtors' officer and
> directors and the professionals engaged by the Debtors.

Id. This case is no different: the settlement with Royal provided several significant and tangible benefits to the estate. As in World Health Alternatives, the settlement allowed the Trustee to forego costly litigation, while providing the means to fund the Trustee's efforts to recover from other parties. The settlement provided another valuable benefit to the estate: by settling with Royal, the Trustee was able reap the value of the wealth of knowledge Royal had accumulated and to use that knowledge in his pursuit of assets on behalf of the estate. This benefit was expressly raised at the hearing for approval of the settlement.

In Mitchell-Tracey v. United General Title Insurance Co., 2006 U.S. Dist. LEXIS 1308 (D. Md. Jan. 9, 2006), the defendants sought to compel the production of documents regarding the plaintiffs' fee arrangements with class counsel. The defendants in that case argued that the discovery was relevant because it may have referenced an incentive payment, conferred settlement authority, and indicated when counsel became involved in the case and whether other counsel were involved, all in an apparent effort to explore potential ethical violations based on fee sharing. Id. at *5-*6. The court held that those arguments were insufficient and that the defendants had not demonstrated relevance. Id. at *6. As with Pepper Hamilton, "[d]efendants' arguments are bereft of any supporting authority (and any basis in fact) and do suggest a fishing expedition that this court will not endorse." Id. at *7. The court explained that while "relevancy is defined broadly, the definition is not without limit. The weight of the case law holds that fee arrangements are irrelevant at this stage of the proceeding, except in certain instances

– none of which are at issue in this case. Instead, the appropriate time for inquiry into fee arrangements is after judgment under Rule 69 of the Federal Rules of Civil Procedure." Id. at *7-*8.

Where a discovery request amounts to nothing more than a fishing expedition or an "idle hope" of finding something, there is no legitimate showing of relevance and the discovery will not be permitted. Calamari v. U.S., 2003 U.S. Dist. LEXIS 2010, *17 (E.D. Mich. Jan. 23, 2003) (finding that the government's request for billing records should not be allowed because the documents were not relevant to the investigation); The Bradbury Co., Inc. v. Andre Teissier-duCros, 2005 U.S. Dist. LEXIS 26735, *9 (D. Kan. Nov. 3, 2005) (holding that billing statements were not relevant because they were too attenuated and could not be used to show bad faith as defined in the Kansas Uniform Trade Secrets Act). Likewise, Pepper Hamilton cannot demonstrate any rational basis for seeking the fee arrangement discovery other than to engage in a fishing expedition.

Moreover, the scope of discovery must be tailored to preclude harassment and oppressive requests. Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc., 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003). In Ocean Atlantic, the court found that the discovery request for records dating five years before a party's claim could have arisen was overbroad, burdensome, and could not lead to any admissible evidence. Id. at 927. The court denied the request because it found that it was unreasonable and was designed merely to harass the defendants. Id.

Documents revealing the Trustee's compensation arrangements will not lead to any evidence suggesting that the Trustee was motivated by financial considerations to enter into the settlement with Royal. Pepper Hamilton's argument that the fee structure

14

may demonstrate bias is too far-fetched and unsupported by any facts to be likely to lead to any relevant evidence. There is no reason to believe that the Trustee's compensation is any different from that of any other bankruptcy trustee. Absent any legitimate relevance of the documents, Pepper Hamilton's discovery request is not proper and amounts to nothing more than an idle hope of finding something that it can mold and attempt to use against the estate. This is not a sufficient basis for compelling the production of discovery and Pepper Hamilton's motion should be denied in its entirety.

**B.    Communications between Counsel for the Trustee and Royal are not Discoverable**

The communications between counsel for Royal and the Trustee are not subject to discovery by Pepper for a number of reasons. First, they are protected by a court-ordered settlement in place between the parties. The cooperation clause was a disclosed term of the settlement of the litigation between the Trustee and Royal, and was approved by the court. In addition, they are not relevant to the claims in the case. Contrary to the vague assertions made by Pepper, they do not relate to the damages claimed by the Trustee and are not discoverable.

The Trustee and Royal reached agreement to resolve their dispute. The Term Sheet, setting forth the terms of the proposed settlement, was submitted to the Bankruptcy Court. After a lengthy hearing, at which the cooperation agreement at issue was specifically addressed, the Court approved the settlement.

The settlement between Royal and the Trustee expressly provides that:

> 7. The Trustee and Royal agree to cooperate with each other (and allow each other to participate) in the management of litigation of estate claims against (and objections to claims of) third parties such as trucking schools, SFC's accountants, Pepper Hamilton, the Gagné

15

> Family, Andrew Yao, his wife, his children and affiliates.
> ... The Trustee and Royal will enter into an agreement in
> connection with litigation on behalf of the estate
> acknowledging their joint interests and allowing each other
> access to privileged information relating to such estate
> claims and objections to claims (other than
> communications (i) between the Trustee and his counsel
> and (ii) between Royal and its counsel)....

See Term Sheet ¶7, B-180.

At the hearing, counsel specifically addressed the provision calling for

cooperation between the Trustee and Royal. Counsel for the Trustee expounded on some

of the benefits to the estate from the cooperation agreement, noting that

> The cooperation clause is there for a number of
> important reasons. It recognizes that Royal, who has been
> involved in matters related to Student Finance far longer
> than the Trustee has, with its resources accumulated a
> massive amount of information. It has done a lot of
> analysis.
> And it is generally in possession of information that
> is very useful for the Trustee and will save us a lot of work
> if we have access to it. And what we said to Royal, and
> what Royal has said to use is if we settle, we both have a
> mutual interest in pursuing the other claims that need to be
> pursued.

Transcript at pages 22-23, B-1.

The Trustee later echoed that sentiment at the hearing. He testified that his

"definition of cooperation suggests that Royal can provide assistance to the estate or to

me, as the estate, in pursuing certain important litigation that will benefit all creditors of

this estate." Id. at 58. Key to the cooperation agreement was the ability to maintain

communications between Royal and the Trustee as confidential, and to maintain the

privilege with regard to shared information that would otherwise be protected. Stanziale

Aff. ¶ 7.

16

By Order dated October 29, 2004, the Bankruptcy Judge approved the settlement between the Trustee and Royal, as embodied in the Term Sheet. The court specifically authorized the Trustee and Royal to "enter into all assignments and other agreements necessary to fulfill the terms of the Term Sheet, and to take any and all other actions necessary to consummate the terms of the Term Sheet in accordance with this Order." Order Approving Settlement, B-183. The Trustee and Royal then entered into the Joint Litigation Agreement, as provided in paragraph 7 of the Term Sheet. See Joint Litigation Agreement, filed under seal as B-199. From that time forward, counsel for the Trustee and Royal have worked together on a regular basis, sharing strategies and access to information, in reliance upon the cooperation agreement approved by the Court. Stanziale Aff. ¶ 12.

At the time of the settlement, Pepper was well aware that the Trustee was considering suit against it as counsel for the Trustee and Pepper had exchanged correspondence regarding the Trustee's claims. Consequently, Pepper Hamilton is not permitted, nearly two years later, to question the legitimacy of the settlement. See discussion at page 11, supra, regarding court's deference to trustee in settling a claim.

Pepper Hamilton also incorrectly claims that the Trustee has waived his work product protection with regard to the communications between Royal and the Trustee because the documents were disclosed to an adversary, Royal. Pepper Hamilton's argument is completely without merit. "[T]he work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that

17

their work product will be used against them." Westinghouse v. The Republic of the Philippines, 951 F. 2d 1414, 1428 (3d Cir. 1991). While disclosure to an adversarial third party waives the privilege, courts allow exceptions to the waiver doctrine and permit disclosure to agents or to co-litigants without waiving the privilege. Id. at 1424.

It is well established that information may be shared among those who have a common interest in the litigation. In re National Medical Imaging, LLC, 2005 Bankr. LEXIS 2374, *19 (E.D. Pa. Oct. 31, 2005) (refusing to compel production of documents clearly created pursuant to a joint litigation strategy). Those "who are working together in prosecuting or defending a lawsuit or in certain other legal transactions – can exchange information among themselves without loss of the privilege." U.S. v. Massachusetts Institute of Technology, 129 F. 3d 681, 686 (1st Cir. 1997) (finding that because the disclosures did not take place in the context of a joint litigation or with a common legal interest, the protection was waived).

That the Trustee and Royal were once adversarial is of no moment. The fact is that any dispute between them was settled, and that settlement was approved by the court. There is no dispute here that the Trustee and Royal have a common interest in the litigation, memorialized in the joint litigation agreement, pursuant to which the privilege is maintained with regard to their communications. See ¶7 of Term Sheet, B-180 ("The Trustee and Royal will enter into an agreement in connection with litigation on behalf of the estate acknowledging their joint interests and allowing each other access to privileged information . . .").

"Where parties with shared interest in actual or potential litigation against a common adversary share privileged information pursuant to this shared goal, the common

18

interest doctrine preserves the attorney-client privilege with respect to that information."
Miron v. BDO Seidman, LLP, 2004 U.S. Dist. LEXIS 22101, *6-*7 (E.D.Pa. Oct. 19,
2004); Constar International, Inc. v. Continental Pet Technologies, Inc., 2003 U.S. Dist.
LEXIS 21132, *4-*5 (D. Del. Nov. 19, 2003); Giovan v. St. Thomas Diving Club, Inc.,
1997 U.S. Dist. LEXIS 8816, *13 (V.I. June 13, 1997).

The Trustee and Royal have a common interest in this litigation. This is
especially compelling here, where the cooperation has the approval of the Bankruptcy
Court, acknowledging that the arrangement was in benefit of the interests of the estate.
Accordingly, the discovery sought by Pepper Hamilton pertaining to confidential
settlement negotiations and communications regarding litigation strategy remains
protected by the work-product doctrine and should not be produced.

Furthermore, the discovery sought is not relevant to the action. As discussed,
there is no basis for the speculation that the settlement was made in anything but good
faith, and Pepper should not be given access to privileged communications under the
guise of searching for evidence of a recently invented plot.

Pepper contends that the communications at issue may shed light on the damages
sought in the action brought by the Trustee against Pepper and Gagné. In so arguing,
they misconstrue the allegations of the Amended Complaint. Paragraph 173 sets forth the
categories of damages suffered by SFC and its creditors as a result of Pepper's
malpractice and breach of fiduciary duty:

> 173. More specifically, SFC and its creditors
> were damaged by Pepper, Gagné and the Family in
> amounts relating to, *inter alia*:
>
> a. the incurring of additional debt while SFC
> was insolvent, made possible by Pepper's actions,

19

omissions and assistance to conceal the true state of SFC's financial condition, including:

    (i)    the $12,302,150.88 loan from Royal to SFC (made in March and April 2002), secured by interest only certificates, for the purpose of making additional Forbearance Payments, which loan was documented by Pepper;

    (ii)    $29 million in additional debt owed to Royal under the promissory notes supporting the Experience Account;

    (iii)    approximately $27 million of debt that accumulated in February and March 2002, due to SFC's having purchased loans from trucking schools in February 2002, which was not paid; and

    (iv)    $3.3 million in debt relating to the loan extended to SFC by the Family in March 2002;

    b.    Other payments made or expenses incurred by SFC during the period of insolvency, about which Pepper was aware or should have been aware, including:

    (i)    $20,760,867.60 paid to Royal under the promissory notes supporting the Experience Account within one year of the Filing Date;

    (ii)    Approximately $45 million paid to make Forbearance Payments;

    (iii)    Premiums paid on the Royal policies in an amount of at least $30 million;

    c.    $9.6 million in distributions credited to Yao himself, at a time when Pepper and Gagné knew or should have known that SFC was insolvent or operating in the zone of insolvency and had a duty to advise SFC directors and officers concerning the consideration and impact of making such distributions to insiders upon the viability of SFC and obligations to creditors;

> d.    in excess of $500 million, representing
> Proofs of Claim filed by those asserting positions as
> creditors of SFC, to the extent to which the estate is
> determined to be liable.

When called upon in Interrogatories (served in the context of Pepper's motion to

dismiss based upon Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.),

448 F.3d 672 (3d Cir. 2006)), to set forth the bases for damages alleged against Pepper in

the Counts of the Amended Complaint alleging breach of fiduciary duty (Count I) and

malpractice (Count IV), the Trustee objected and then responded:

> The damages are those arising from the conduct of Pepper
> described in the Amended Complaint and include legal fees
> paid to Pepper Hamilton; dividends and other funds paid to
> Andrew Yao or expended on his behalf; forbearance
> payments made by SFC; monies paid to the Family
> Defendants and loans obtained from the Family
> Defendants; monies paid to Royal and loans obtained from
> Royal; and additional debt incurred by SFC in purchasing
> loans from trucking schools, all of which are recoverable
> damages without regard to the impact on SFC's solvency.
> The nature and extent of damages sought will be further
> addressed in expert reports and in the Trustee's response to
> the pending motion to dismiss.

B-207.

The Trustee does not allege that Pepper's liability to the Trustee is measured by

the proof of claim allowed for Royal. Rather, the proof of claim filed by Royal, along

with those filed by all other creditors of SFC, forms the outer limit of injury to "SFC and

its creditors" and is the basis for distribution of the Trustee's recovery, not the

measurement of damages. Pepper cannot use this to bootstrap a theory that the Trustee

improperly allowed the claim asserted by Royal as part of the estate, when the claim itself

is not alleged as the basis for calculating damages asserted against Pepper.

**POINT II**

**THE COURT SHOULD ENTER AN ORDER
PRECLUDING DISCOVERY BASED ON
COMMUNICATIONS BETWEEN ROYAL AND THE TRUSTEE
OR THE COMPENSATION OF THE TRUSTEE**

As set forth at length in Point I of this Brief, there is no basis for discovery on the issues presented, communications between counsel for Royal and the Trustee, or the compensation agreement in place between the Trustee and his law firm. Because discovery is continuing, and because counsel for Pepper has requested that the Trustee submit to a deposition during the next round of depositions, this Court should enter a protective order precluding the parties from seeking discovery on this issue, either by way of written request or at deposition.

Rule 26(c) of the Federal Rules of Civil Procedure provides that a person from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "This rule authorizes the court to order that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters." McCurdy v. Wedgewood Capital Management Co., Inc., 1998 U.S. Dist. LEXIS 20628, *5 (E.D. Pa. Dec. 31, 1998).

The party requesting the protective order has the burden of showing good cause for its issuance. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). "Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Id. In determining whether good cause exists for the issuance of a protective order, courts apply a balancing of interests standard whereby "the

22

requesting party's need for information [is balanced] against the injury that might result if uncontrolled disclosure is compelled. Pansy v. Borough of Stroudsburg, 23 F.2d 772, 787 (1994). "Irrelevancy satisfies the good cause requirement." McCurdy, 1998 U.S. Dist. LEXIS 20628 at *6; see also Hall v. Harleysville Ins. Co., 164 F.R.D. 172, 173 (E.D.Pa. 1995).

The Trustee has established good cause by demonstrating that Pepper's discovery requests are irrelevant and harassing, and the information sought is privileged. In addition, the Trustee has established why the disclosure of such information will cause a clearly defined and serious injury. As such, the Court should issue a protective order pursuant to Fed. R. Civ. P. 26(c), to preclude Pepper from seeking discovery, either by way of written request or at deposition, regarding the communications between counsel for Royal and the Trustee, or the Trustee's personal compensation.

## POINT III

### THE COURT SHOULD REQUIRE
### IN CAMERA EXAMINATION OF THE DOCUMENTS
### DESIGNATED AS PRIVILEGED BY PEPPER HAMILTON

Earlier in this litigation, the Trustee, on behalf of SFC, waived the attorney-client privilege with regard to SFC's relationship with Pepper, to allow for the production of Pepper's records to all parties in this litigation. Pepper, through its counsel, produced a privilege log of 153 documents, designated as subject to either the work-product or the attorney-client privilege. A number of those documents, determined at depositions to have been improperly withheld or redacted, have now been produced. In light of those disclosures to date, this Court should require production of the remaining documents for in camera review by the Court or by a Special Master.

The attorney-client privilege asserted by Pepper purportedly arises out of the firm's representation of other clients related to this dispute, including Andrew Yao Lore Yao, W. Roderick Gagné (in his role as trustee of various family trusts), Pamela Gagné, Robert Bast, Student Marketing Services, Student Loan Servicing and others. Other documents involving Pepper's communication with its insurance carriers and its internal communications with its of counsel, Alfred Wilcox, in his role as general counsel to the firm, were also withheld as privileged.

Counsel for the Trustee learned during depositions that certain of the documents withheld from production or redacted on the grounds of privilege were either improperly withheld or were over-redacted, sometimes regarding significant issues in this litigation. This can create delays and difficulties in completing depositions.

24

For example, at the recent deposition of Alfred Wilcox, the witness was presented with a document which Mr. Wilcox had forwarded to an insurance carrier, reflecting Mr. Gagné's response to an inquiry regarding the possibility of a claim against Pepper. A copy of the document that was produced to the Trustee's counsel is included in the Trustee's Appendix as B-212. On Pepper's privilege log, B-214, that document is described as having been redacted for legal advice related to attorney-client privilege and common defense. The Trustee discovered from reviewing a pleading in another matter that the same portion of the document was not redacted when it was sent to the insurance carrier. Some portion of the document was redacted in the original and the redaction was expanded in the production made to the Trustee. After the redaction was challenged at Mr. Wilcox's deposition, counsel for Pepper Hamilton undertook to revisit the redaction, and later made the document available as it was produced to the insurer, see B-230, but only after the deposition of Mr. Wilcox had been completed. Further, in that letter counsel advised that Mr. Gagne's May 15, 2002 memorandum to Mr. Wilcox providing an "Overview of representation of SFC" continues to be withheld on the grounds that it contains information provided to Mr. Wilcox to assist him in advising his client, Pepper, as distinct from the overview of representation of SFC that Mr. Gagne provided Mr. Wilcox on April 18, 2002, which was produced. See B-231. Neither document is claimed to have been prepared in anticipation of litigation. The parties should not be forced to go from deposition to deposition trying to discover from other sources which of the redacted documents should have been produced.

Another instance in which a heavy hand was used in redacting documents was discovered during the deposition of Pepper partner Duncan Grant. Mr. Grant was the

25

Pepper partner in charge of representing SFC in <u>Nielsen Electronics Institute v. Student Finance Corporation and Andrew Yao</u>, Civil Action No. 99-285, which was pending in the United States District Court in Delaware. After Pepper determined to resign from representing SFC in that litigation and to transfer the matter to another law firm, Mr. Grant was involved in a series of e-mails with Mr. Gagné and Mr. Wilcox. One portion of his e-mail to Mr. Wilcox was redacted purportedly on the basis that he was asking Mr. Wilcox, as Pepper Hamilton's general counsel, for legal advice. Because an unredacted version of that document was inadvertently produced, it was available at the deposition. Prior to making use of it to examine the witness, there was a colloquy among counsel and a stipulation arrived at that the use of that document would not be a waiver of the privilege as to other documents. Accordingly, the redacted document is B-232 in the Trustee's Appendix and the unredacted document is B-233.

The sentence, which could not possibly be claimed to be attorney-client privilege but was nevertheless redacted out, is Mr. Grant's statement about how Perry Turnbull of SFC was always pleased with his handling of the <u>Nielsen</u> case and frequently said so. Although not facially significant, it does go to an important issue in this case. At that period of time when Mr. Grant was basking in Mr. Turnbull's compliments, Grant was also receiving documents in which Nielsen's Chief Financial Office, Konrad Smith, charged Mr. Turnbull with having admitted that Mr. Yao made payments on student loans out of his own money "so that the 'portfolio auditors' for his lenders would see that they were 'current' on their payments for a minimum of twelve months. A step needed for Mr. Yao to continue doing business with them." <u>See</u> B-234. This document was part of an Exhibit marked by Mr. Grant at the deposition of Mr. Smith in the <u>Nielsen</u> matter.

Although this document was in the hands of Pepper Hamilton in the fall of 1999, and charges conduct almost identical to the fraud Gagné said Pepper Hamilton did not know of until much later, Mr. Grant failed to follow up because he did not consider it relevant to the issues in <u>Nielsen</u>. Later, Gagné charged SFC a $5,000 premium over Pepper Hamilton's normal fees after Mr. Grant obtained a permanent injunction to prevent the disclosure by Nielsen of confidential information obtained from SFC. <u>See</u> B-236.

At the deposition of Sheilah Gibson, a former Pepper associate who did work for SFC, an issue was raised with regard to a research memorandum prepared by Ms. Gibson and listed on the Pepper privilege log. The log showed that the document was withheld as giving advice to a related entity, SMS, rather than to SFC. After the assertion of privilege was challenged, the document was produced. It reflects research done for SFC, with no mention of SMS. It was mistakenly withheld as privileged. <u>See</u> B-214.

At this point, at each deposition of a current or former Pepper attorney, counsel conducting the questioning are receiving or having to ask for documents that have been improperly withheld. The only way to put an end to this as depositions go forward is to have an independent examination of all the remaining documents on the privilege log.

Pepper's assertion of privilege also extends to the redaction of portions of documents which apparently memorialize communications regarding multiple clients represented by Pepper. For example, in an e-mail dated November 29, 2000, Andrew Yao communicated with Gagné and copied Diane Messick, an employee of SFC. B-245. In that e-mail, Mr. Yao apparently shared three numbered observations with Gagné; the first two numbered paragraphs have been redacted, even though they were communicated to Ms. Messick. The third numbered paragraph, which was included, is a discussion

27

about the possibility of cleaning up inter-company receivables with CEC, DHP and LSP. Mr. Gagné's reply that same day also contains two redacted sections. As described on Pepper's privilege log, the redactions relate to legal advice to Yao, SMS and ECM. (No. 14 on B-216).

The portion of the document that is not redacted addresses an important issue in this case, Gagné's role as an insider of SFC, by demonstrating his ability to use his position to influence or direct payments being made by SFC to take into account the needs of Gagne, his wife Pamela, and his uncle Bob Bast, all investors in SFC at the time, to receive cash flow distributions to pay taxes. He also requests a high priority for the payment of inter-company accounts with CEC, among others, offering to defer portions of cash due his trusts. CEC, which later became Premier Education Group, was owned by Andrew Yao, Robert Bast and Gagné, as trustee. Yao's interest, recognized as valuable, (B-249), was later pledged to Bast and Gagné and later taken by them in exchange for the debt from SFC. B-247-8. These efforts by Gagne to manipulate payments by SFC to benefit companies in which Gagné and his family members had an ownership interest are areas that will be explored in depositions. Mr. Yao, Ms. Messick and Mr. Gagné however, have seen the entire memos while the Trustee and the other parties asking questions are in the dark as to what has been redacted and how it relates to the rest of the memoranda. This is another instance in which the selective redaction by Pepper Hamilton will adversely affect plaintiffs' ability to deal with many of these issues completely in depositions.

The treatment of documents such as this, where portions of the document have been redacted purportedly because Student Marketing Services has a privilege also raises

the issue of whether Pepper's counsel has complied with this Court's direction in dealing with potential claims of privilege by the various other parties represented by Pepper.

Many of the documents listed on Pepper Hamilton's Privilege Log relate to communications with Yao and others that purportedly give rise to a privilege of Student Loan Services, Student Marketing Services and other entities affiliated with SFC or Yao. At the hearing before this Court on December 28, 2005, (see relevant portions of transcript, B-305-319), counsel for Pepper advised that the firm had represented these separate entities, as well as Andrew Yao personally, and anticipated that attorney-client privilege issues would arise. The Court gave counsel guidance as to how to handle those issues:

> THE COURT: Wouldn't – since it's not your privilege to assert, wouldn't you be in a better procedure if you logged documents you thought might be privileged or believe to be privileged on a by client, by subject matter log, then advise the client that there is a document production request, not yet a court order, and what their position is on asserting.
>
> You tell them you believe it's attorney-client privilege and what their position is with regard to asserting privilege. Maybe they don't care that the documents go over, or maybe they care deeply, and would want to retain counsel to address the production request or any subsequent Court order.
>
> But that seems like to me in these kind of disputes, particularly when you're already entangled with law firms and business dealings, just a better way to handle it.
> (B-314).

The court further instructed Pepper Hamilton's counsel to have a conversation with the client about the assertion of privilege:

> THE COURT: But keep in mind, you don't assert the privilege because you don't have it.

MR. SHAPIRO:    Right. And what we'll do then as if we – of the documents that we pulled, if they are – we believe that they relate solely to SFC, we'll simply produce them. If they relate to anything else, we'll log them.

THE COURT: And have a conversation with your client –

MR. SHAPIRO:    Yeah.

THE COURT: – which documents they are?

MR. SHAPIRO:    We have attempted, Your Honor to already contact counsel for Andrew Yeow, and now learned it's former counsel for Andrew Yeow. So we're actually having a little bit of difficulty, one, contacting some former clients, and two, figuring out who exactly controls or currently represents some of these entities, such as SLS and SMS. We will do our best.

THE COURT: Then what you do if you haven't – can't have a conversation with the client, and you don't want to have to contact your carrier down the road, you'll throw those into the Court as responsive, but unknown whether a privilege is asserted, because you can't make contact.

You just wouldn't give them over then, would you?

MR. SHAPIRO:    I would not –

THE COURT: Right.

MR. SHAPIRO:    – give them over unless –

THE COURT: So then you made your effort. You document your effort.

I just want this to go very cleanly for everybody. And then if necessary, we'll arrange some procedure to take an in camera review and actually because then there's all sorts of issues that come up, not the least of which could be against the assertion of privilege that is going to go over any way given the factual contact.

So your work is really combing through and getting the documents, and making sure that you don't lose anything.

30

And that – like you remember you were talking about like there's some that apply to other clients –

MR. SHAPIRO:     Right.

THE COURT: – on Student Finance.

MR. SHAPIRO:     Right.

(B-315-317).

After receiving a prior version of the privilege log, in which it appeared that documents were being withheld because of privilege relating to these other entities, counsel for the Trustee wrote to Mr. Shapiro requesting an identification of the client as to each document and the result of his inquiry as to the assertion of the privilege. B-320. Mr. Shapiro declined to further identify the client or clients for each entry and indicated that his efforts to communicate with someone who would be in a position to either assert or to waive the privilege were not fruitful. B-322.

As can be seen from the documents disclosed to date, there are many instances in which it is highly questionable whether a privilege exists. There are questions as to the identity of the client who could assert the privilege, as well as the sharing of communications with third parties, such as Ms. Messick, which would destroy any privilege held by any entity or individual other than SFC. The documents on the list indicating a privilege with regard to SLS or SMS raise questions as to who Pepper was representing, who Pepper was charging for Gagné's time, and the role Gagné had with regard to the creation of those entities. The final position taken by Pepper's counsel in correspondence that "absent such waivers we are obviously unable to produce these materials and will continue to withhold them" (B-323) is not the resolution of this issue that the Court envisioned.

31

A mechanism needs to be found to determine if a privilege will be claimed and then to test the assertion of privilege. As can be seen from the discussion above, some of these redactions cut the middle out of important documents. The Trustee asks that the Court order Pepper to produce the documents still on the privilege log for in camera review. The Trustee will serve a subpoena on Pepper requesting the production of the documents on the privilege log. Pepper can then provide the subpoena to its former clients as best it can and they will then be in a position to come before the Court and argue regarding the production. This is the Trustee's suggested procedure for providing a vehicle to resolve this issue but the Trustee will proceed in any other fashion that the Court may direct.

## POINT IV

### THE COURT SHOULD ORDER PEPPER TO RESPOND IN FULL TO REQUEST TWO OF THE SECOND SET OF DOCUMENT REQUESTS SERVED ON PEPPER BY THE TRUSTEE

The Trustee properly requested documents relating to Gagné's compensation from the Pepper firm. That information is relevant and discoverable. Nonetheless, Pepper has refused to make it available. The Trustee's motion should therefore be granted.

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any matter not privileged, that is relevant to the claim or defense of any party ..." Fed R. Civ. P. 26(b)(1). The parties must be allowed to examine all relevant evidence so that each will have a fair opportunity to present an effective case at trial. Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D.N.J. 1990). As the Federal Rules of Civil Procedure make clear, discovery is appropriate of "any matter" that involves the "claim or defense" of any party.

On May 8, 2006, the Trustee properly served its Second Request for Production of Documents on Pepper Hamilton. These requests and Pepper's response included, *inter alia*:

> 2.     Documents sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné by Pepper Hamilton.
>
> RESPONSE:
>        No responsive documents exist.
> (B-191).

At the deposition of Pepper Partner Duncan Grant, it became clear that in its annual review, Pepper's compensation committee is provided the data regarding

originating partner, billing partner, working timekeeper, etc that is common in law firms. This data, together with the bills to SFC and the Family Defendants, will permit the computation requested.

In our document request, instead of asking for each and every document in any way relating or referring to Gagne's performance and compensation etc., we tried to narrow the request to those documents that could be used to show the effect of his representation of SFC and the Family Defendants. Wearing the same blinders that allowed Mr. Grant to ignore accurate claims of fraud from a credible witness in the Neilsen case, Pepper is comfortable in claiming these documents do not exist. We ask that they be produced.

The allegations of the Amended Complaint against Pepper and Gagné concern breaches of fiduciary duty and professional malpractice. As the Trustee has alleged in his pleadings that Pepper, through Gagné, was conflicted and failed to act independently in its representation of SFC, documents regarding Gagné's compensation are directly relevant to the Trustee's claims. Gagne's pursuit of financial gain from SFC is writ large all over this case. During this representation, Gagne as trustee, his wife and his Uncle Bob were borrowing millions of dollars at rates at or below prime and lending this money to SFC at rates which, when added to fees and annualized, sometimes exceeded 50% per annum. (B-253-287, B324-325).

Discovery pertaining to Gagne's compensation and potential conflicts of interest is absolutely relevant to the core allegations of the action against the Pepper defendants. Consequently, the Trustee respectfully requests that the Pepper defendants be compelled to produce the subject documents.

34

## CONCLUSION

For the foregoing reasons, Charles A. Stanziale, Jr., as Chapter 7 Trustee for Debtor Student Financing Corporation, respectfully submits that the motion to compel discovery should be denied in its entirety. The Trustee further submits that his motion for a protective order and to require Pepper to produce discovery should be granted.


Daniel K. Astin, Esq. (No. 4068)
Mary E. Augustine, Esq. (No. 4477)
THE BAYARD FIRM
222 Delaware Avenue
Suite 900
Wilmington, Delaware 19899


Michael S. Waters, Esq.
Lois H. Goodman, Esq.
Candice E. Chesson, Esq.
MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Gateway Three – 100 Mulberry Street
Newark, New Jersey 07102