## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re:<br>STUDENT FINANCE<br>CORPORATION, | : | Civil Action No.:  04-1551(JJF) |
| Debtor. | : | |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION, | : | **AFFIDAVIT OF CHARLES A.<br>STANZIALE, JR.** |
| Plaintiff, | : | |
| v. | : | |
| PEPPER HAMILTON LLP, et al. | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| STATE OF NEW JERSEY | : | |
| | : | SS: |
| COUNTY OF ESSEX | : | |

CHARLES A. STANZIALE, JR., of full age, being sworn upon his oath, hereby

deposes and says:

1. I am an attorney at law of the State of New Jersey and of counsel to the law firm

of McElroy, Deutsch, Mulvaney & Carpenter, LLP. Prior to joining McElroy, Deutsch in

the summer of 2005, I was a member of the firm Schwartz, Tobia & Stanziale.

2. Over the years, the majority of my practice has been in the bankruptcy court. I

have represented debtors, trustees, creditors' committees, banks, and other secured

parties. I have also been appointed to serve as the Chapter 7 and Chapter 11 bankruptcy

trustee by numerous courts, including those in Delaware and New Jersey. Over the years,

in my role as trustee, I have settled hundreds of litigated cases on behalf of bankruptcy estates.

3. I was originally appointed as the Chapter 11 Bankruptcy Trustee for Student Finance Corporation ("SFC") on September 29, 2003. Then, after the bankruptcy was converted to a Chapter 7, on or about November 20, 2003, I was appointed as the Chapter 7 Bankruptcy Trustee for SFC.

4. Prior to my appointment, an action had been commenced by SFC as a debtor-in-possession against Royal Indemnity Company ("Royal"). That action was pending when I was appointed, although I later caused it to be amended to add additional claims.

5. Royal and I reached a resolution of that dispute. We agreed to a term sheet that set out the terms of the settlement, which included, inter alia, a payment by Royal into the estate to settle the Trustee's claims, a loan to fund litigation, the allowance of Royal's proof of claim against the estate to the extent Royal was forced to pay on its guaranties, and cooperation between Royal and my attorneys in litigation of claims relating to the estate.

6. The value of the settlement was clear. It brought funds into the estate, by which we could pursue other claims. It also ended a very hotly contested litigation, which if continued, would have imposed a severe financial burden on the estate, one which we did not then have the resources to absorb -- and, upon examination by me, the claim asserted by Royal appeared to be valid.

7. Another valuable result of the settlement was the agreement that Royal and I (through my counsel) would cooperate in separately litigated claims in which both Royal and SFC had an interest. Royal had already committed substantial resources to

2

investigating the facts and history of SFC operations, as well as the relevant law, and was willing to share those resources. Key to the estate's ability to take advantage of the resources available from Royal pursuant to the cooperation clause was our mutual understanding that communications would remain privileged and there would be no waivers as a result.

8. In my judgment as the trustee for SFC, I believed that the settlement with Royal was in the best interests of the estate.

9. By Notice dated October 14, 2004, we advised the Bankruptcy Court that an agreement had been reached to settle the dispute between Royal and the estate. We submitted the term sheet to the court, as well as a memorandum setting forth the reasons why the settlement was beneficial to the estate.

10. On October 27, 2004, the court conducted a hearing on the motion to approve all aspects of the settlement with Royal. A number of parties appeared and raised various objections to the settlement. The court heard argument on the objections, as well as testimony. I testified at length at the hearing with regard to the bases for my view that the settlement was in the best interest of the estate. I was also cross-examined by certain of the attorneys at the hearing.

11. By Order dated October 29, 2004, the court approved the settlement with Royal. The Order specifically instructed us to move forward with taking the actions necessary to implement the settlement. There was no appeal filed with regard to that Order.

12. Based on the court's approval of the settlement, and in particular the cooperation clause contained in the term sheet setting forth the terms of the settlement, we subsequently executed a document (entitled Joint Litigation Agreement) to memorialize

3

the terms of our cooperation agreement and to protect our communications and shared information. We have relied upon those protections in sharing information and access to witnesses on a regular basis.

13. I understand that Pepper Hamilton is now seeking to require the disclosure of communications my counsel and I have had with Royal and its counsel. Such disclosure would be highly detrimental to the estate since it may contain strategic trial information and other sensitive material relevant to the cases before the Court, and given the high level of cooperation we have engaged in over the past two years, in reliance on the bankruptcy court's ruling and the agreement.

14. I also understand that Pepper Hamilton is seeking to require me to disclose the terms of the bases of my compensation from McElroy, Deutsch, Mulvaney & Carpenter, LLP. As a bankruptcy trustee, my invoices with regard to work done for SFC are public record and Pepper has had and continues to have full access. Indeed, both Pepper and McGladrey Pullen (a defendant in a case consolidated with this one for discovery) have utilized those fee applications to their advantage. Pepper is now seeking my personal financial arrangement with my firm, and I view that as an effort to harass and intimidate me.

15. In 40 years of practice in the bankruptcy field, I have never been asked to disclose the bases of my personal compensation, nor am I aware of any other trustee having been so required. Clearly, such requests would chill the willingness of anyone to take on the role of trustee or fiduciary in any circumstance.

16. I also fail to see any relevance to the compensation issue. My own compensation is not at issue in the case, nor is my judgment as an attorney or a trustee. The judgment

4

exercised by Pepper Hamilton, and its partner, W. Roderick Gagne, is the gravamen of the case. Whether they exercised that judgment independently and in accordance with their ethical and fiduciary obligations to SFC is the issue that the Court will ultimately have to decide.

17. Finally, the suggestion that the law suit against the Pepper law firm was motivated by my desire to generate fees is just plain ludicrous.

Charles A. Stanziale, Jr.

Dated:

Sworn and subscribed to before me this _30th_ day of October, 2006.

OCTAVIA L. FRIAS
Notary Public of New Jersey
My Commission Expires April 17, 2007

5