UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          :
STUDENT FINANCE CORPORATION                     :
                                                :
        Debtor.                                 :
                                                :
                                                :
_____         :
                                                :
CHARLES A. STANZIALE, JR.,                       :
CHAPTER 7 TRUSTEE OF STUDENT                     :
FINANCE CORPORATION,                            :
                                                :
        Plaintiff,                              :
                                                :       Civil Action No. 04-1551 (JJF)
                                                :
        v.                                      :
                                                :
PEPPER HAMILTON, LLP, et al.,                    :
                                                :
        Defendants.                             :
_____         :

APPENDIX OF UNPUBLISHED CASES TO BRIEF IN OPPOSITION TO
PEPPER HAMILTON'S MOTION TO COMPEL AND IN SUPPORT OF
TRUSTEE'S MOTION FOR PROTECTIVE
ORDER AND TO COMPEL DISCOVERY

Michael S. Waters, Esq.              Daniel K. Astin, Esq. (No. 4068)
Lois H. Goodman, Esq.               Mary E. Augustine, Esq. (No. 4477)
Candice E. Chesson, Esq.            THE BAYARD FIRM
MCELROY, DEUTSCH, MULVANEY          222 Delaware Avenue
& CARPENTER, LLP                     Suite 900
Gateway Three – 100 Mulberry Street  Wilmington, Delaware 19899
Newark, New Jersey  07102

## TABLE OF CONTENTS

Young v. Lukens Steel Company, 1994 U.S. Dist. LEXIS 1462 (E.D. Pa. Feb. 10, 1994) ........B-1

In re Three Rivers Woods, Inc., 2001 Bankr. LEXIS 737 (Bankr. E.D. Va. Mar. 20, 2001)....B-10

In re Foundation for New Era Philanthropy, 1996 Bankr. LEXIS 1891 (Bankr. E.D. Pa. July 22, 1996)..........................................................................................................................B-21

Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co., 1991 U.S. Dist. LEXIS 14708 (E.D. Pa. Oct. 15, 1991) ...........................................................................................................B-40

American Health Systems, Inc. v. Liberty Health System, 1991 U.S. Dist. LEXIS 14400 (E.D. Pa. July 22, 1991) ...........................................................................................................B-50

Mitchell-Tracey v. United General Title Insurance Co., 2006 U.S. Dist. LEXIS 1308 (D. Md. Jan. 9, 2006) ....................................................................................................................B-61

Calamari v. U.S., 2003 U.S. Dist. LEXIS 2010 (E.D. Mich. Jan. 23, 2003)..........................B-66

The Bradbury Co., Inc. v. Teissier-duCros, 2005 U.S. Dist. LEXIS 26735 (D. Kan. Nov. 3, 2005) ...................................................................................................................................B-77

In re National Medical Imaging, LLC, 2005 Bankr. LEXIS 2374 (Bankr. E.D. Pa. Oct. 31, 2005) ...................................................................................................................................B-84

Miron v. BDO Seidman, LLP, 2004 U.S. Dist. LEXIS 22101 (E.D. Pa. Oct. 22, 2004) ........B-100

Constar International, Inc. v. Continental Pet Technologies, Inc., 2003 U.S. Dist. LEXIS 21132 (D. Del. Nov. 19, 2003)..............................................................................................B-107

Giovan v. St. Thomas Diving Club, Inc., 1997 U.S. Dist. LEXIS 8816 (D.V.I. June 13, 1997)........................................................................................................................................B-113

McCurdy v. Wedgewood Capital Management, Co., Inc., 1998 U.S. Dist. LEXIS 20628 (E.D. Pa. Dec. 31, 1998) ........................................................................................................B-122

Service: **Get by LEXSEE®**
Citation: **1994 us dist lexis 1462**

*1994 U.S. Dist. LEXIS 1462, \*; 65 Empl. Prac. Dec. (CCH) P43,192*

DONALD H. YOUNG v. LUKENS STEEL COMPANY, et al.

CIVIL ACTION NO. 92-6490

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1994 U.S. Dist. LEXIS 1462; 65 Empl. Prac. Dec. (CCH) P43,192

February 9, 1994, Decided
February 10, 1994, Filed

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee brought an action against defendant employers alleging that he was discharged because of his age, in violation of, inter alia, the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq. The employee, dissatisfied with responses to his discovery requests, filed a motion to compel pursuant to Fed. R. Civ. P. 37(a).

**OVERVIEW:** The employee was hired in 1976. In 1991 he was discharged, allegedly for disloyalty and breach of trust in disclosing the employers' confidential strike contingency plan to a union that represented certain hourly workers. The court held that while the scope of discovery was broad, it was not unlimited. Discovery was not permitted where it was irrelevant to the claims at issue in the case, where the requests were tendered in bad faith, or where the requests were unduly burdensome. The employer, as the party resisting production, had the burden of establishing lack of relevancy or undue burden. It had to demonstrate that the requested documents did not come within the broad scope of relevance defined by Fed. R. Civ. P. 26(b)(1) or were of such marginal relevance that the potential harm occasioned by discovery outweighed the ordinary presumption in favor of broad disclosure. Much of the discovery was directed at developing statistical evidence to circumstantially show discrimination. As to each disputed request, the court assessed the relevancy against the burden and either granted, denied, or limited the request for disclosure.

**OUTCOME:** The motion to compel was granted in part and denied in part. As to each disputed discovery request, the court either ordered a response, denied the motion to compel a response, or modified the request and then ordered disclosure.

**CORE TERMS:** discovery, interrogatory, discoverable, termination, burdensome, relevance, disparate treatment, terminated, discharged, unduly, overbroad, discovery of admissible evidence, production of documents, discipline, salary, reasonably calculated to lead, circumstantial evidence, statistics, Federal Rules of Civil Procedure, individualized, temporally, demotion, n-a, promotion, reduction in force, job description, reorganization, objectionable, substantively, pertaining

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Discovery > General Overview ↰ᴬᴸᴸ

*HN1* ✲ See Fed. R. Civ. P. 26(b)(1).

Civil Procedure > Discovery > Methods > Interrogatories > General Overview 🖝

Civil Procedure > Discovery > Methods > Requests for Production & Inspection 🖝

*HN2* ✲ Discovery by way of interrogatories and requests for production of documents is expressly provided for under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26 (a). More Like This Headnote

Civil Procedure > Discovery > Motions to Compel 🖝

*HN3* ✲ When a party fails to adequately respond to a proper discovery request, the court is empowered to compel a response. Fed. R. Civ. P. 37(a)(2). More Like This Headnote

Civil Procedure > Discovery > Protective Orders 🖝

Civil Procedure > Discovery > Relevance 🖝

Civil Procedure > Discovery > Undue Burdens 🖝

Evidence > Procedural Considerations > Burdens of Proof > Allocation 🖝

*HN4* ✲ The modern discovery rules mandate a liberality in the scope of discoverable material. Both parties should be provided with information essential to proper litigation on all of the relevant facts. Although the scope of discovery is broad, it is not unlimited. Discovery is not permitted where the discovery sought is irrelevant to the claims at issue in the case, where the requests were tendered in bad faith, or where the requests are unduly burdensome. The party resisting production bears the burden of establishing lack of relevancy or undue burden. The party must demonstrate to the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. More Like This Headnote

Civil Procedure > Discovery > General Overview 🖝

*HN5* ✲ Under the Federal Rules of Civil Procedure, Courts must not deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case. Fed. R. Civ. P. 26 (Advisory Committee Notes to the 1983 Amendments). More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Circumstantial Evidence 🖝

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Circumstantial & Direct Evidence 🖝

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Statistical Evidence 🖝

*HN6* ✲ Although not dispositive in a disparate treatment case, statistics are relevant to a plaintiff's Age Discrimination in Employment Act claim, as are other forms of circumstantial evidence of discrimination. More Like This Headnote

Civil Procedure > Discovery > Relevance 🖝

Civil Procedure > Discovery > Undue Burdens

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Circumstantial Evidence

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Circumstantial & Direct Evidence

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Statistical Evidence

*HN7* Notwithstanding the breadth of discovery contemplated by the federal rules and the relevance of statistics and other circumstantial evidence to a plaintiff's Age Discrimination in Employment Act claim, courts have recognized that it is appropriate to place parameters on the discovery of statistical and other information. Courts have imposed restrictions as to time period, the employing facility or work unit of the plaintiff, the job category to which the plaintiff belongs, the type of action by which plaintiff was aggrieved such as hiring, promotion, discharge, and the type of discrimination alleged, such as race, age, or sex . Thus, resolution of a discovery dispute involves balancing the relevance of the discovery sought against the burden on the employer. More Like This Headnote

Civil Procedure > Discovery > Relevance

Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > General Overview

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Statistical Evidence

*HN8* Documents related to employee transfers are not discoverable in a disparate treatment Age Discrimination in Employment Act action. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > Discharges & Failures to Hire

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Circumstantial Evidence

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Circumstantial & Direct Evidence

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Statistical Evidence

*HN9* Statistical evidence of discrimination in hiring, if established, would be admissible as circumstantial evidence in a plaintiff's Age Discrimination in Employment Act claim. More Like This Headnote

**COUNSEL:** [*1] For DONALD H. YOUNG, PLAINTIFF: GEORGE P. WOOD, STEWART WOOD & BRANCA, NORRISTOWN, PA.

For LUKENS STEEL COMPANY, LUKENS, INC., DEFENDANTS: RAYMOND A. KRESGE, PEPPER, HAMILTON & SCHEETZ, PHILA, PA.

**JUDGES:** HUTTON, J.

**OPINION BY:** BY THE COURT; HERBERT J. HUTTON

**OPINION: MEMORANDUM AND ORDER**

HUTTON, J.

Presently before the Court is the plaintiff Donald H. Young's Motion to Compel Discovery and the defendants Lukens Steel Company and Lukens, Inc.'s (collectively "Lukens") response.

## I. BACKGROUND

The plaintiff worked for Lukens in various capacities continuously since 1976. In 1991, he served as Superintendent of Trades and Crafts, in Lukens' "Maintenance Department." On October 4, 1991, the plaintiff's employment was terminated. Lukens contends that the plaintiff was discharged because of disloyalty and breach of trust. More specifically, Lukens asserts that in 1991, the plaintiff disclosed Lukens' confidential strike contingency plan to a union that represented certain hourly workers at Lukens' facility in Coatesville, Pennsylvania. In contrast, the plaintiff alleges that he was discharged because of his age, in violation, inter alia, of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 **[\*2]** et seq.

After this action was filed, the plaintiff propounded a voluminous set of interrogatories and requests for production of documents to Lukens. In response, Lukens produced over 540 documents to the plaintiff. Dissatisfied with Lukens' responses and objections, the plaintiff filed his motion to compel discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Discovery Under the Federal Rules of Civil Procedure

Discovery is provided for in the Federal Rules in Rule 26(b)(1), which provides in relevant part:

> *HN1* ⚡Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead **[\*3]** to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). *HN2* ⚡Discovery by way of interrogatories and requests for production of documents is expressly provided for under the Federal Rules of Civil Procedure Fed. R. Civ. P. 26(a). *HN3* ⚡When a party fails to adequately respond to a proper discovery request, the Court is empowered to compel a response. Fed. R. Civ. P. 37(a)(2).

The purpose of the modern discovery rules is to allow the parties to obtain the fullest possible knowledge of the issues and facts before trial. Grinnell Corp. v. Hackett, 70 F.R.D. 326 (D.R.I. 1976). *HN4* ⚡The modern discovery rules mandate a liberality in the scope of discoverable material. Both parties should be provided with information essential to proper litigation on all of the relevant facts. Mallinckrodt Chemical Works v. Goldman, Sachs & Co., 58 F.R.D. 348 (S.D.N.Y. 1973).

Although the scope of discovery is broad, it is not unlimited. Discovery is not permitted

where the discovery sought is irrelevant to the claims at issue in the case, where the requests were tendered in bad faith, or where the requests are unduly burdensome. M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc., 103 F.R.D. 635 (D.Mass. 1984). **[*4]** The party resisting production bears the burden of establishing lack of relevancy or undue burden. Flora v. Hamilton, 81 F.R.D. 576, 3 Fed. R. Evid. Serv. 1425 (M.D.N.C. 1978). The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed.R.Civ.P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. . . ." Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

## B. The Plaintiff's Motion to Compel

The plaintiff seeks an Order compelling Lukens to respond fully to interrogatories 5, 6, 10, 12, 12(a), 13, 14, 29, 39, 40, 41, 45, 46, 46(a), 46(b), 49, and 57 through 63, and document requests 1(a), 1(c), 1(f), 1(g), 1(h), 1(k), 1(m), 1(n), 1(n-a), 1(o), 1(s), 1(t), 1(w), 1(z), 1(bb), 1(jj), 1(kk), 1(ll), 1(mm). In response to the plaintiff's motion to compel, Lukens asserts that it has fully responded to many of these discovery requests. Specifically, Lukens contends that through its initial **[*5]** responses and its supplemental responses, it has fully responded to interrogatories 5, 6, 10, 29, 39, 45, 26, 46(a), 46(b), 49, 57 through 63 as well as document requests 1(a), 1(c), 1(g), 1(z), 1(bb), 1(cc) and 1(kk). After reviewing these discovery requests and Lukens' responses, the Court agrees with Lukens' position. Accordingly, Lukens need not provide further responses to these discovery requests.

Lukens objects to the remaining discovery requests primarily on the grounds that they are irrelevant and unduly burdensome. In evaluating the plaintiff's discovery requests, the Court must be guided by the fact that the plaintiff's claim is grounded in a claim of disparate treatment, not disparate impact or "pattern and practice" n1 discrimination. The scope of discoverable material must be tailored accordingly.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although the plaintiff avers in his Complaint that Lukens engaged in a "pattern and practice" of discrimination, he does not allege a cause of action based upon such a "pattern and practice. Rather, his is an individualized claim of disparate treatment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

The plaintiff claims that the discovery sought is relevant in order to generate statistics through which he could establish that Lukens' proffered reason for discharging the plaintiff is pretextual. *HN5*Under the Federal Rules of Civil Procedure, Courts must not "deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Fed. R. Civ. P. 26 (Advisory Committee Notes to the 1983 Amendments); Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49, 55 (D.N.J. 1985). *HN6*Although not dispositive in a disparate treatment case, Furnco Construction Corp. v. Waters, 438 U.S. 567, 580 (1978), statistics are relevant to the plaintiff's ADEA claim, Healy v. New York Life Ins. Co., 860 F.2d 1209, 1218 (3d Cir. 1988), as are other forms of circumstantial evidence of discrimination. Williams v. General Motors Corp., 656 F.2d 120 (5th Cir. 1981); Norris v. Fotomat Corp., Inc., 1987 W.L. 5202, at * 1 (E.D. Pa. Jan. 5, 1987).

*HN7*Notwithstanding the breadth of discovery contemplated by the federal rules and the relevance of statistics **[*7]** and other circumstantial evidence to the plaintiff's claim, courts

have recognized that it is appropriate to place parameters on the discovery of statistical and other information. Robbins, 105 F.R.D. at 56. As numerous courts within this circuit have recognized,

> courts have imposed restrictions as to time period, Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618-19 (D.D.C. 1983), the employing facility or work unit of the plaintiff, EEOC v. Packard Elec. Div., 569 F.2d 315 (5th Cir. 1978), McClain v. Mack Trucks, 85 F.R.D. 53 (E.D. Pa. 1979), the job category to which the plaintiff belongs, Hardrick, supra, at 619, the type of action by which plaintiff was aggrieved such as hiring, promotion, discharge, McClain, supra, at 62, and the type of discrimination alleged, such as race, age, or sex . . . .

Syed v. Director, F.B.I., 1990 W.L. 259734, at * 3 (E.D. Pa. Jan. 30, 1991); see also Lewis v. Home Ins. Co., 1988 W.L. 124612, at * 1 (E.D. Pa. Nov. 17, 1988); Hylton v. United Jersey Bank, 1985 W.L. 5973, at * 1 (D.N.J. Apr. [*8] 25, 1985). Thus, resolution of this discovery dispute involves balancing the relevance of the discovery sought against the burden on the employer.

The Court now proceeds to evaluate the contested interrogatories and requests for production of documents. The plaintiff has moved to compel full and complete responses to interrogatories 12, 12(a), 13, 14, 40 and 41, and requests for production of documents 1(f), 1(h), 1(k), 1(m), 1(n), 1(n-a), 1(o), 1(s), 1(t), 1(w), 1(jj), 1(ll) and 1(mm). Interrogatory number 12, which requests, inter alia, the name, date of hire, date of birth, date of termination, position and job responsibilities of "all persons" working for Lukens from 1985 to the present, is clearly overbroad and unduly burdensome, both in terms of its temporal and substantive components. Accordingly, the defendant need not respond to this interrogatory.

Interrogatory 12(a) asks the defendant whether it maintains job descriptions for all positions or job titles. The defendant agreed to produce a copy of the plaintiff's job description, but it refused to produce other job descriptions, contending that the interrogatory is irrelevant, overbroad and unduly burdensome to the [*9] extent that it seeks such additional information. The Court agrees with Lukens that it need only produce the requested information with respect to the plaintiff's job description. If the plaintiff's claim was that he was discriminated against with respect to a promotion or demotion, then perhaps other job descriptions would be relevant. However, where as here, a plaintiff claims that he was discharged from a particular job because of his age, job descriptions pertaining to jobs which the plaintiff did not perform are irrelevant. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Likewise, document request 1(k), which seeks documents evidencing job descriptions, exceeds the scope of discovery.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Interrogatory 13, which asks for information pertaining to all employee terminations over the past seven years, is certainly relevant to the plaintiff's claim. However, the interrogatory is overbroad temporally. The Court finds that the information sought is discoverable, but only

as to employees terminated within the past five years. Thus, the defendant shall answer the **[*10]** interrogatory with respect to all employees terminated on or after January 1, 1989. n3 Interrogatory 14, on the other hand, which inquires into all incidents of employee discipline since 1987 is overbroad both temporally and substantively. Thus, this interrogatory is disallowed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 If the information requested by the plaintiff in interrogatory 13 is within Lukens' computer files, then the company shall provide the information sought on an IBM-compatible computer disc. See Fed. R. Civ. P. 34 (a) & Advisory Committee Notes to 1970 Amendments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Interrogatories 40 and 41, respectively, seek information as to each and every employee to reach the age of seventy and sixty-five before retirement. Given that the plaintiff was fifty-five years of age when his employment was terminated, any inference of discrimination that may arise from the defendant's response would necessarily be weak. Nevertheless, given the broad scope of discovery contemplated by Rule 26, the Court will order the defendant to respond to these interrogatories. **[*11]**

Several of the plaintiff's document requests appear to be "form" discovery requests that bear little, if any, relevance in the context of an individualized disparate treatment claim, such as the present case. For example, Lukens correctly recognizes that document request 1(h), which requests documents concerning demotions of employees and reorganization of the company, is not reasonably calculated to lead the discovery of admissible evidence because this case is not a reduction in force case and because it involves a termination, not a demotion. Document requests 1(m), 1(n) and 1(o), which request information about reorganization and staffing projections, also appear to be "pattern" requests, which might be appropriate in a reduction in force case, but are inappropriate in a case of individualized disparate treatment.

Lukens contends that the same is true of document requests 1(s) and 1(w). The Court agrees in part. Document request 1(s) seeks: "any and all documents which set forth the identity, the reasons, number of employees and/or the positions affected by transfers or terminations." As to terminations, such documents are relevant to the plaintiff's claim that he was terminated **[*12]** because of his age. However, $^{HN8}$ documents related to employee transfers are not discoverable in this disparate treatment action. See McClain, 85 F.R.D. at 62.

Document request 1(w), which seeks "any and all documents setting forth the identity of any person hired, their dates of hire, their dates of birth, their ages and positions from January, 1987 to the present," is objectionable both temporally and substantively. This action involves a plaintiff's claim that he was discharged in violation of the ADEA in 1991. Although $^{HN9}$ statistical evidence of discrimination in hiring, if established, would be admissible as circumstantial evidence, the burden imposed upon Lukens in responding to this request, which employs thousands of individuals, would be unreasonable given the limited relevance of the information sought to be obtained.

The plaintiff offers no explanation of how document request 1(n-a), which requests "documents containing employee salary, pension and benefit cash analysis" is reasonably calculated to lead to the discovery of admissible evidence, nor can the Court derive any such explanation. Accordingly, Lukens need not respond to this document request. **[*13]**

Document request 1(f) requests the plaintiff's personnel file and salary history as well as the files, salary history and job descriptions of all employees who were subjected to discipline up to and including termination. Lukens has agreed to produce the plaintiff's files. As discussed, supra, the plaintiff is not entitled to job descriptions for positions other than that formerly held by the plaintiff. Further, to the extent that this interrogatory requests information concerning discipline other than termination, it is unreasonably burdensome.

Document request 1(t) requests any list or document containing the names and ages of all employees from 1987 to the date of trial. To the extent that the defendant maintains such lists, it shall provide them to the plaintiff. However, the temporal scope of the request shall be limited to the period from January 1, 1989 to the present.

Document request 1(jj), which seeks communications among the defendant's agents, is objectionable to the extent that it seeks communications concerning incidents of "discipline." For reasons discussed, supra, such discovery is overbroad and unduly burdensome.

Document request 1(ll) seeks "the Defendant **[*14]** Company's strike plans and documents related to the strike plans intended to be implemented at anytime during 1986 through 1991 at Lukens Steel Company." The plaintiff was discharged, Lukens claims, for disclosing the company's 1991 strike plan. The 1991 strike plan is therefore clearly discoverable and shall be produced. The strike plans for the remaining years may reasonably lead to the discovery of admissible evidence and are therefore, likewise, discoverable.

Finally, document request 1(mm) seeks "statistical analysis and documents containing any of the following (i) cost of employees (salaries, pension, health insurance); (ii) their ages; (iii) length of service; and (iv) method of reducing cost of employees. Subsections (i) through (iii) seek documents which this Court has already found to be beyond the scope of discovery. Subsection (iv), however, is within the scope of Rule 26 and any documents responsive to this request shall be produced.

An appropriate Order follows.
**ORDER**

AND NOW, this 8th day of February, 1994, upon consideration of the Plaintiff Donald H. Young's Motion to Compel Discovery and the Defendants Lukens Steel Company and Lukens, Inc.'s response, IT **[*15]** IS HEREBY ORDERED that the Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART** in accordance with the foregoing Memorandum.

IT IS FURTHER ORDERED that the Defendant **SHALL** provide its responses within twenty (20) days of the date of this Order.

BY THE COURT:

HERBERT J. HUTTON, J.

Service: **Get by LEXSEE®**
Citation: **1994 us dist lexis 1462**
View: Full
Date/Time: Monday, October 30, 2006 - 10:39 AM EST

* Signal Legend:
🚫 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
  - Caution: Possible negative treatment
◈ - Positive treatment is indicated

**A** - Citing Refs. With Analysis Available

**O** - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2001 bankr lexis 737**

*2001 Bankr. LEXIS 737, \**

IN RE: THREE RIVERS WOODS, INC., Debtor. HARRY SHAIA, JR., TRUSTEE, Plaintiff, v. THREE RIVERS WOOD, INC., G.L. FOREST PRODUCTS, T. CHRISTOPHER LYDDAN, LYDDAN ENTERPRISES, INC., FOREST NEWS, INC., Defendants.

Case No. 98-38685-T, Chapter 7, Adv. Proc. No. 99-3020-T

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

2001 Bankr. LEXIS 737

March 20, 2001, Decided

**DISPOSITION:** **[\*1]** Motion of the chapter 7 trustee, Harry Shaia, for approval of a compromise and settlement of the adversary proceeding styled above pursuant to terms of a release and settlement agreement dated October 25, 2000 granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Chapter 7 trustee filed a motion for approval of settlement of his adversary proceeding against defendants that sought recovery of payment for back rent, compensation, surrender charge, retirement and pension monies, and voluntary and fraudulent conveyances. Trustee had also alleged self-dealing, and breach of fiduciary duty, and sought damages of $ 65,000. One creditor objected, arguing he could achieve a more favorable recovery.

**OVERVIEW:** Under the settlement, defendants were paying $ 22,500 and they would be released from all claims arising out of the complaint. The court found the trustee's investigation had been extensive, which was acknowledged by creditor. Also, litigation of the complex issues with numerous entities involved would be lengthy and costly. Creditor presented little to no evidence at hearing to substantiate arguments that the settlement amount was too low and that additional accounts receivable existed to fund a higher settlement amount. Even if the court accepted his rationale, there would be less assets available in the estate for distribution to all other creditors after the expenses involved in litigating a full trial, as opposed to adopting the settlement. It was uncertain if creditor himself would fully recover after a full trial. Creditor was seeking a private benefit. The court found the settlement was in the best interests of the estate, reasonable, fair, and equitable.

**OUTCOME:** The trustee's motion was granted.

**CORE TERMS:** settlement, compromise and settlement, approve, proposed settlement, enforcement action, proffered, reasonableness, notice, accounts receivable, automatic stay, objected, court approval, adversary proceeding, settlement amount, proof of claim, memorandum, terminating, four-part, removal, procedural history, sound discretion, burden of proof, denied sub nom, full trial, probability, prepetition, affiliated, equitable, proponent, recommend

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview

*HN1* A bankruptcy court must make its findings of fact sufficiently detailed so that the reviewing court, if called upon, has an adequate record to establish that the proper factors were considered in evaluating a proffered compromise and that an informed judgment was made. More Like This Headnote

Bankruptcy Law > Case Administration > Notice

Bankruptcy Law > Practice & Proceedings > Contested Matters

Civil Procedure > Pleading & Practice > Pleadings > General Overview

*HN2* Settlement and compromise matters are brought to the bankruptcy court by motion, followed by notice and hearing. Fed. R. Bankr. P. 9019(a), 2002(a)(3). Specifically, Fed. R. Bankr. P. 9019(a) provides that notice is to be sent to all creditors, the U.S. Trustee, debtor, any indenture trustee, and other entities as directed. Fed. R. Bankr. P. 2002(a)(3) provides for 20 days notice by mail of the hearing on approval of a compromise or settlement unless the court directs otherwise. Notice is to state that if any party objects to the motion for approval of compromise or settlement, a written objection must be filed and served and a contested matter is initiated under Fed. R. Bankr. P. 9014. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

Civil Procedure > Judicial Officers > General Overview

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HH3* The decision of the bankruptcy judge as to the approval of a proffered compromise rests within the judge's own sound discretion. More Like This Headnote

Bankruptcy Law > Case Administration > Notice

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HN4* Compromises are favored in bankruptcy courts. Under Fed. R. Bankr. P. 9019, after notice and hearing, the court may approve a compromise and settlement motion of the parties or trustee. Because of the permissive language in Rule 9019 (that is, the court "may" approve), the decision to approve a proposed settlement remains entirely within the realm of the court's sound discretion. Thus, once approved by the court, the compromise is conclusive on the parties in interest and creditors of the estate and may be set aside only in instances of abuse of discretion. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

Civil Procedure > Settlements > Settlement Agreements > General Overview

In considering whether to approve a proffered compromise, bankruptcy courts are to

HN5 ⚡ apprise themselves of all facts necessary to make an intelligent and objective opinion of the probability of ultimate success in the event of litigation. Bankruptcy judges are to form educated estimates of the (1) complexity; (2) expense; (3) likely duration of litigation; (4) possible difficulties in collecting on any judgment that might be obtained; and (5) all other factors relevant to a full and fair assessment of the compromise proposed. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview ⬉ᴬᴸᴸ

Civil Procedure > Settlements > Settlement Agreements > General Overview ⬉ᴬᴸᴸ

HN6 ⚡ The basic criteria for consideration of a motion to approve a compromise and settlement in a bankruptcy case are: (1) the probability of the trustee's success in any ensuing litigation; (2) any collection difficulties; (3) the complexity, time and expense of the litigation; and (4) the interests of creditors with proper deference to their reasonable views. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview ⬉ᴬᴸᴸ

Civil Procedure > Settlements > Settlement Agreements > General Overview ⬉ᴬᴸᴸ

HN7 ⚡ The purpose of a hearing on a proposed settlement for which bankruptcy court approval is sought is not to decide issues of law or fact raised by objecting parties, but rather to identify and clarify litigation issues, so the court can make an informed decision on the reasonableness of the proposed settlement. The court's fundamental determination is whether the settlement falls below the lowest point in the range of reasonableness. In essence, a compromise or settlement will mostly likely gain approval if it is both fair and equitable, as well as representative of the best interests of the estate as a whole. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview ⬉ᴬᴸᴸ

Civil Procedure > Settlements > Settlement Agreements > General Overview ⬉ᴬᴸᴸ

HN8 ⚡ By no means is a bankruptcy judge required to conduct a full evidentiary hearing or mini-trial on a compromise motion before court approval can be reached. Rather, the proponents or movants of settlement and compromise proposals bear the burden of proof and have the burden of persuasion to establish that the settlement is both reasonable and in the best interests of the estate. In addition, bankruptcy courts may give weight to the opinions of the trustee in determining the relative reasonableness of a proposed settlement and compromise. However, the test is not whether the trustee would have prevailed at trial. More Like This Headnote | *Shepardize*: Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview ⬉ᴬᴸᴸ

Civil Procedure > Settlements > Settlement Agreements > General Overview ⬉ᴬᴸᴸ

Estate, Gift & Trust Law > Trusts > Trustees > Duties & Powers > General Overview ⬉ᴬᴸᴸ

HN9 ⚡ In considering whether to approve a proffered compromise, the paramount interest of the bankruptcy court is the protection of all of the estate's creditors. A single objecting creditor should not be allowed to pursue an objection and private benefit at the expense of the general creditor body. The trustee owes a primary duty to the

unsecured creditors.  More Like This Headnote

**COUNSEL:** William C. Herbert, III, Esq., Ashland, VA, for Lacy Smith, Creditor.

Leslie D. Campbell, Jr., Esq., Campbell & Campbell, P.C., Ashland, VA, Former Counsel for Lacy Smith, Creditor.

Jim J. Burns, Esq., Williams, Mullen, Clark & Dobbins, P.C., Richmond, VA, for Harry Shaia, Jr., Chapter 7 Trustee.

Bruce H. Matson, Esq., Paula Beran, Esq., LeClair Ryan, P.C., Richmond, VA, for Defendants.

B. Amon James, Esq., Assistant U.S. Trustee, Office of the U.S. Trustee, Richmond, VA.

**JUDGES:** DOUGLAS O. TICE, JR., CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT.

**OPINION BY:** DOUGLAS O. TICE, JR.

**OPINION: MEMORANDUM OPINION**

Hearing was held December 6, 2000, on the motion of the chapter 7 trustee, Harry Shaia, for approval of a compromise and settlement of the adversary proceeding styled above pursuant to terms of a release and settlement agreement dated October 25, 2000. At the conclusion of the hearing, the court took the matter under advisement to review the objection **[*2]** filed by Mr. Lacy Smith. For the reasons set forth in this memorandum opinion, the court will grant the trustee's motion.

**Position of the Parties.**

**I. Plaintiff: Chapter 7 Trustee.**

The trustee seeks court approval of the compromise and settlement he proposes under the legal authority afforded under Federal Rule of Bankruptcy Procedure 9019(a). The trustee recommends that the compromise and settlement as proposed is in the best interests of the estate. Further, counsel for the trustee asserted that the cost of litigation for this complex case is not warranted based on the amounts the estate has on deposit to utilize in funding the settlement.

At hearing, counsel for the trustee explained that the five counts in the amended complaint relating to recovering payment for back rent, compensation, surrender charge, retirement and pension monies, voluntary and fraudulent conveyances, self-dealing, and breach of fiduciary duty amounted to a total claim of approximately $ 65,000.00. At present, counsel for the trustee retains the monies recovered in his trust account and pending court approval of the trustee's motion for compromise and settlement, intends to disburse those **[*3]** funds in accordance with the parties' agreement.

In response to Smith's objection, counsel for the trustee opined that Smith's proof of claim n1 would not be entitled to payment of interest unless the trustee were able to pay out 100% of the claims of all other creditors. The trustee further proposed that it was highly unlikely that a 100% payout could be achieved. Finally, counsel for the trustee requested that if the court were not inclined to approve the settlement as proposed, that Smith as the objecting party be required to post a litigation bond to ensure recovery to the estate in the event that Smith did not prevail at trial, as well as to commit to minimizing future expenses associated with litigation for the benefit of the estate.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 By previous counsel Leslie D. Campell, Jr., Esq., Smith filed a proof of claim in the amount of $ 25,000.00 plus interest and costs (totaling $ 31,199.49 at the time of filing) on May 24, 1999. Counsel for Smith designated the October 3, 1996 judgment of the Hanover County Circuit Court in his favor in the amount of $ 25,000.00, as the basis for his proof of claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*4]

## II. Defendant: T. Christopher Lyddan.

Counsel for defendant T. Christopher Lyddan appeared at the hearing to communicate Lyddan's support of the compromise and settlement as proposed, and to explain that Lyddan's interest in the proceedings was his claim for salary/compensation against Three Rivers Woods (TRW). Counsel proffered that the basis of Lyddan's support of the trustee's motion was what he considered to be the reasonableness of the settlement amount. Therefore, counsel for Lyddan and the other defendants endorsed the trustee's proposed order approving the compromise.

## III. Creditor: Mr. Lacy Smith.

After proper notice of the trustee's motion, only one creditor of TRW, Smith, objected to the compromise and settlement as proposed and filed a response to the trustee's motion and a memorandum in opposition to the compromise on December 1, 2000. Counsel for Smith also appeared at the hearing to speak to the nature and extent of Smith's objection.

In essence, according to counsel for Smith, he objects to the trustee's settlement for mainly quantitative reasons, as Smith believes he could achieve a more favorable recovery if the matter proceeded to [*5] trial and he prevailed. In response to the court's request for evidence to support the proposition that a more favorable recovery could be achieved by proceeding to trial, counsel for Smith explained that there are other accounts receivable that could be utilized to fund repayment to Smith beyond the compensation set forth in the proposed settlement terms.

As was explained at hearing, Smith posits that Lyddan shut down the corporation to avoid paying compensation and claims to him. Smith maintains that Lyddan was a fiduciary of the corporation and while in that role, misdirected accounts receivable as well as other funds and assets of the corporation for Lyddan's personal gain. Additionally, in support of his assertion of misappropriation of funds, Lyddan points to the disappearance of assets, funds, and receivables in the operating statements prepared for the last four months of the corporation's existence.

Counsel proffered that Smith was originally owed $ 25,000.00 by the corporation, but that amount is now more than $ 30,000.00 because of accrued interest. Counsel for Smith also responded to the request by the trustee for posting a bond of $ 22,500.00 in the event of litigation [*6] by explaining that his client was unwilling to accommodate the request.

## Findings of Fact.

[HN1] The bankruptcy court must make its findings of fact sufficiently detailed so that the reviewing court, if called upon has an adequate record to establish that the proper factors were considered in evaluating the proffered compromise and that an informed judgment was

made. See La Salle Nat'l Bank v. Holland (In re American Reserve Corp.), 841 F.2d 159 (7th Cir. 1987). In accordance with this directive, set forth below is a detailed recitation of the factual and procedural history of this case.

## I. Procedural History.

On December 19, 1997, plaintiff/creditor Smith filed a petition with the Circuit Court of Hanover County, Virginia, to set aside transfers or conveyances under Code of Virginia § 55-80 and for personal judgment. Smith named debtor TRW, G.L. Forest Products, T. Christopher Lyddan, Lyddan Enterprises, Inc., and Forest News, Inc. as defendants in the state court suit. Defendant Lyddan has an ownership interest in TRW, Forest Products, Lyddan Enterprises, and Forest News. Smith brought the suit to avoid one or more prepetition asset transfers **[*7]** of TRW that he claimed to be fraudulent transfers under Code of Virginia § 55-80, to recover compensatory damages for alleged intentional torts and fiduciary duty breaches by Lyddan and one of more of his affiliated companies and punitive damages for the alleged tortious conduct by one or more of the named defendants in the state enforcement suit. Lyddan filed an answer in the state court suit on January 8, 1998.

On November 20, 1998, TRW filed a petition for relief under chapter 7. Harry Shaia, Jr. was appointed interim chapter 7 trustee on November 24, 1998. Subsequently, on December 31, 1998, TRW's chapter 7 case was dismissed by an order entered on the same date. The dismissal order was ultimately vacated by an order of this court entered on February 5, 1999.

On February 19, 1999, defendants Forest Products, Lyddan, Lyddan Enterprise and Forest News filed petitions to remove the pending state court enforcement action to bankruptcy court once TRW had filed its chapter 7 petition. On March 4, 1999, the defendants' removal petitions were granted.

Smith filed a motion for order dismissing the petition or terminating the automatic stay on March 1, 1999. Smith's motion objected to **[*8]** the removal of the state court enforcement suit to this court based on the prepetition corporation dissolution of TRW and the claim that TRW's bankruptcy case was allegedly a subterfuge to avoid addressing the proper resolution of the financial relationship between Smith, Lyddan and the other named defendants. On April 13, 1999, the trustee filed a response in opposition to Smith's motion to dismiss and alternatively to terminate the automatic stay, seeking to have Smith's motion denied or deferred until the trustee had an opportunity to complete his evaluation of the material provided by various parties in interest at the § 341 meeting of creditors, as well as to make a determination of what course of action to recommend be taken to collect on any claims of the estate. Hearing was held on May 12, 1999, on Smith's motion for an order dismissing the petition or terminating the automatic stay. At hearing on the motion for an order dismissing the petition or terminating the automatic stay, Smith's counsel announced his agreement with counsel for the trustee to withdraw the motion. Subsequently, on June 2, 1999, the court entered an order that disposed of Smith's motion to dismiss the **[*9]** petition, by acknowledging the withdrawal of the motion by counsel without prejudice.

On October 7, 1999, the trustee moved (1) for substitution as a party defendant in the removed state enforcement action in the place of TRW; (2) for realignment in the removed state enforcement action as a party plaintiff; (3) for leave to file an amended complaint in the removed state enforcement action; (4) for approval of the removal of the state enforcement action; and (5) for treatment of the removed state enforcement action as an adversary proceeding. Hearing was held on October 27, 1999, at which, counsel announced that the matter was settled by granting the trustee's motion. The trustee's motion was granted by order of this court entered on October 27, 1999. Subsequently, an amended complaint was filed on November 24, 1999, seeking to recover monies from defendants. Then, on December 17, 1999, defendants filed an answer and the case was set for trial on August 3, 2000.

**II. Facts Surrounding Trustee's Motion for Compromise and Settlement.**

On or before July 11, 2000, the parties agreed to reach a settlement. On November 9, 2000, counsel for the trustee filed a motion for compromise **[*10]** and settlement of the adversary proceeding under Rule 9019 along with a memorandum in support of motion with an exhibit setting forth the terms and provisions of settlement.

Under the proposed release and settlement agreement dated October 25, 2000, defendants Mr. Lyddan, LEI, and Forest News, as required by the terms of settlement, tendered funds in the total amount of $ 22,500.00 to the trustee or trustee's counsel contemporaneously with the execution of the agreement; this payment represents full settlement of all claims. Under the agreement, the funds are to be held in escrow by the trustee or his counsel pending disposition of the court on the motion to approve the compromise and settlement. As a result, the trustee agreed to dismiss the amended complaint with prejudice, as well as to release, acquit, and discharge the defendants, their affiliated companies, subsidiaries, successors, assigns, and respective past, present and future officers, directors, employees, and agents from any and all claims, demands, causes of action, and liability arising out of the claims in the amended complaint.

In response to the trustee's motion to compromise, Smith filed by counsel an untimely n2 **[*11]** response to the trustee's motion for approval of compromise and settlement along with a memorandum in support on December 1, 2000. In his response, Smith moved for the court to deny the trustee's motion. Smith objected specifically to the trustee's motion because it allegedly ". . . failed to include missing accounts receivable of [TRW] . . ."; the "assets unaccounted for significantly exceed the debt owed Smith;" "settlement as proposed will compensate Smith for only one third of the debt owed Smith after deducting for the excellent work performed by the Trustee and his counsel . . ."; and "trial of this matter would pay Smith's debt in full as well as compensate Trustee and his counsel." Additionally, Smith objected generally to the trustee's motion on the basis that it was purportedly ". . . not in the best interests of Smith."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 At the hearing on December 6, 2000, counsel for the trustee highlighted that Smith's objection was filed slightly out of time but that counsel for the trustee would not oppose the objection on that ground alone.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*12]**

**Discussion and Conclusions of Law.**

**I. Procedural Requirements.**

*HN2* Settlement and compromise matters are brought to the court by motion, followed by notice and hearing. See FED. R. BANKR. P. 9019(a) and 2002(a)(3). Specifically, Rule 9019 (a) provides that notice is to be sent to all creditors, the U.S. Trustee, debtor, any indenture trustee, and other entities as directed. Rule 2002(a)(3) provides for twenty days notice by mail of the hearing on approval of a compromise or settlement unless the court directs otherwise. Notice is to state that if any party objects to the motion for approval of compromise or settlement, a written objection must be filed and served and a contested matter is initiated under Rule 9014.

In accordance with Rules 9019(a) and 2002(a)(3), counsel for the trustee properly noticed

the motion by setting forth the November 29, 2000, deadline for filing objections. Here, Smith objects to the trustee's motion.

## II. Standard of Review: Abuse of Discretion.

[HN3] The decision of the bankruptcy judge as to the approval of a proffered compromise rests within the judge's own sound discretion. See In re Sapphire S.S. Lines, Inc., 339 F. Supp 119 (S.D.N.Y. 1972); **[*13]** In re Ira Haupt & Co., 252 F. Supp. 339 (S.D.N.Y. 1966).

Not surprisingly, [HN4] compromises are favored in bankruptcy courts. n3 As discussed above, under Rule 9019, after notice and hearing, the court may approve a compromise and settlement motion of the parties or trustee. See In re Frye, 216 B.R. 166, 170 (Bankr. E.D. Va. 1997). Because of the permissive language in Rule 9019 (i.e., the court "may" approve), the decision to approve a proposed settlement remains entirely within the realm of the court's sound discretion. See In re Frye, 216 B.R. at 174; see also St. Paul Fire & Marine Ins. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Bates, 211 B.R. 338, 343 (Bankr. D.Minn. 1997). Thus, once approved by the court, the compromise is conclusive on the parties in interest and creditors of the estate and may be set aside only in instances of abuse of discretion. See Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185 (2d Cir. 1985).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 See Marandas v. Bishop (In re Sassalos), 160 B.R. 646, 653 (D. Or. 1993).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*14]**

## III. Four-Part Analysis for Determining Whether to Approve a Compromise.

There are numerous opinions that highlight the standards for courts to apply in determining whether to approve a proffered settlement or compromise motion. See 10 Collier on Bankruptcy P 9019.02 (Lawrence P. King ed., 15th ed. rev. 2000); see, e.g., Committee of Unsecured Creditors of Interstate Cigar Co. v. Interstate Cigar Distrib. (In re Interstate Cigar Co.), 240 B.R. 816 (Bankr. E.D.N.Y. 1999); In re Telesphere Communications, Inc., 179 B.R. 544 (Bankr. N.D. Ill. 1994); In re Best Products Co., 168 B.R. 35 (Bankr. S.D.N.Y. 1994); In re Egolf, 102 B.R. 706 (Bankr. N.D. Ind. 1989); Iannacone v. Foothill Capital Corp. (In re Hancock-Nelson Mercantile Co.), 95 B.R. 982 (Bankr. D. Minn. 1989); In re Bell & Beckwith, 93 B.R. 569 (Bankr. N.D. Ohio 1988).

For instance, in the landmark United States Supreme Court case, Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, the Court offered guidance to bankruptcy courts [HN5] considering whether to approve a proffered **[*15]** compromise by directing courts to apprise themselves of all facts necessary to make an intelligent and objective opinion of the probability of ultimate success in the event of litigation. See TMT, 390 U.S. 414, 20 L. Ed. 2d 1, 88 S. Ct. 1157 (1968). Further, in TMT, the Court instructed bankruptcy judges to form educated estimates of the (1) complexity; (2) expense; (3) likely duration of litigation; (4) possible difficulties in collecting on any judgment that might be obtained; and (5) all other factors relevant to a full and fair assessment of the compromise proposed. See id. at 424.

As a result of the TMT case, most circuits n4 have adopted a uniform standard under which

bankruptcy courts should be governed in conducting hearings to consider motions proposing compromise or settlement. See, e.g., American Can Co. v. Herpel (In re Jackson Brewing Co.), 624 F.2d 605, 607 (5th Cir. 1980); Drexel Burnham Lambert Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.), 730 F.2d 1128 (8th Cir. 1984), cert. denied sub nom. Reavis & McGrath v. Antinore, 469 U.S. 1207, 84 L. Ed. 2d 320, 105 S. Ct. 1169 (1985); **[*16]** Martin v. Kane (In re A & C Properties), 784 F.2d 1377 (9th Cir. 1986), cert. denied sub nom. Martin v. Robinson, 479 U.S. 854, 93 L. Ed. 2d 122, 107 S. Ct. 189 (1986). Most courts adopt some variation of the following four-part analysis:

> (1) consideration of the probability of success in litigation;
>
> (2) consideration of the difficulties, if any, to be encountered in collection;
>
> (3) consideration of the complexity of the litigation involved, and the expense, inconvenience and delay necessarily associated with that litigation; and
>
> (4) consideration of the paramount interest of the creditors and a proper deference to their reasonable views.

See In re Jackson Brewing Co., 624 F.2d at 607.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Unfortunately, the Fourth Circuit has not followed suit with the other federal circuits in publishing a body of case law relating to the analysis required for approval of compromise and settlement motions.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Specific to Eastern District of Virginia **[*17]** and Richmond Division, <sup>HN6</sup>✦the basic criteria for consideration of a motion to approve a compromise and settlement was outlined in the 1995 decision of this court, In re Austin. See 186 B.R. 397 (Bankr. E.D. Va. 1995). In Austin, the following four-part test was slightly modified from the factors outlined by the Fifth Circuit in the Jackson Brewing Co. case: "[1] the probability of the trustee's success in any ensuing litigation; [2] any collection difficulties; [3] the complexity, time and expense of the litigation; and [4] the interests of creditors with proper deference to their reasonable views." See In re Austin, 186 B.R. at 400.

## IV. Considerations of the Compromise Proposed: Reasonableness, Fairness, Equity and Best Interests of the Estate.

<sup>HN7</sup>✦The purpose of a hearing on a proposed settlement for which court approval is sought is not to decide issues of law or fact raised by objecting parties but rather to identify and clarify litigation issues, so the court can make an informed decision on the reasonableness of the proposed settlement. See In re Bell & Beckwith, 93 B.R. at 574-75. The court's fundamental **[*18]** determination is ". . . whether the settlement falls 'below the lowest point in the range of reasonableness.'" In re Austin, 186 B.R. at 400 (citations omitted). In essence, a compromise or settlement will mostly likely gain approval if it is both "fair and

equitable," n5 as well as representative of the best interests of the estate as a whole. Connecticut General Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995); see also In re St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn), 779 F.2d at 1010; In re McNallen, 197 B.R. 215, 221 (Bankr. E.D. Va. 1995); In re Austin, 186 B.R. at 400.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 TMT, 390 U.S. at 424.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

However, [HN8] by no means is a bankruptcy judge required to conduct a full evidentiary hearing or mini-trial on the compromise motion before court approval can be reached. See DePoister v. Mary M. Holloway Found., 36 F.3d 582 (7th Cir. 1994); [*19] see also In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991). Rather, the proponents or movants of settlement and compromise proposals bear the burden of proof and have the burden of persuasion to establish that the settlement is both reasonable and in the best interests of the estate. n6 See In re Frye, 216 B.R. at 174. However, the test is not whether the trustee would have prevailed at trial. See In re Austin, 186 B.R. at 400.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 In addition, bankruptcy courts may give weight to the opinions of the trustee in determining the relative reasonableness of a proposed settlement and compromise. See In re Bell & Beckwith, 93 B.R. at 574.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## V. Conclusion.

The trustee has adequately met his burden of proof and persuasion as proponent of the motion for court approval of compromise and settlement. See In re Austin, 186 B.R. at 400-01. The trustee's investigation has been extensive, which is even acknowledged by Smith's [*20] counsel. In addition, litigation of these complex issues with numerous entities involved would be lengthy and costly. See id.

The court is unpersuaded by Smith's objection. His counsel presented little to no evidence at hearing to substantiate arguments that the settlement amount was too low and that additional accounts receivable existed to fund a higher settlement amount. Even if the court accepts Smith's rationale, there would be less assets available in the estate for distribution to all other creditors after the expenses involved in litigating a full trial, as opposed to adopting the present settlement. It is uncertain if Smith himself would fully recover after a full trial. What Smith seeks by urging the court to allow the matter to proceed to trial is a private benefit. However, [HN9] the paramount interest of the court is the protection of all of the estate's creditors. A single objecting creditor should not be allowed to pursue an objection and private benefit at the expense of the general creditor body. The trustee owes a primary duty to the unsecured creditors, who favor and will benefit from the proposed settlement. See In re Krizmanich, 139 B.R. 456, 459 (Bankr. N.D. Ind. 1992). [*21]

Because the court finds that the settlement and compromise as proposed is in the best interests of the estate, reasonable, fair, equitable, and in compliance with the statutory and case law requirements, the court concurs with the recommendation of the trustee and will grant his motion.

A separate order will be entered.

Signed this 20th day of March, 2001.

DOUGLAS O. TICE, JR.

CHIEF JUDGE

UNITED STATES BANKRUPTCY COURT

Service: **Get by LEXSEE®**
Citation: **2001 bankr lexis 737**
View: Full
Date/Time: Monday, October 30. 2006 - 10:40 AM EST

* Signal Legend:
 - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
 - Caution: Possible negative treatment
 - Positive treatment is indicated
 - Citing Refs. With Analysis Available
 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.


LexisNexis    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1996 bankr lexis 1891**

*1996 Bankr. LEXIS 1891, \**

In re FOUNDATION FOR NEW ERA PHILANTHROPY, Debtor

Chapter 11, Bankruptcy No. 95-13729F

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1996 Bankr. LEXIS 1891

July 22, 1996, Decided
July 22, 1996, Entered

**DISPOSITION:** [\*1]  Trustee's motions to enter into settlement agreements with Princeton University, Harvard University and the University of Pennsylvania, along with Laurence S. Rockefeller, Frank E. Richardson, III, The Richardson Foundation, William Thatcher Longstreth, John H.T. Wilson, James J. O'Neill, Henry F. Harris, Vivian Piasecki, The Ross Family Fund, the Benfamil Charitable Trust, George Bennett, Frank Richardson and the Whitehead Foundation approved.

**CORE TERMS:** settlement, objectors, donor, settle, entity, proposed settlement, donation, notice, deposit, investor, obligors, similarly situated, approve, fraudulent conveyance, beneficiaries, rebate, prejudgment interest, bankruptcy case, scheduled, donated, reasonableness, promised, charitable, memorandum, favorable, settling, offset, repay, denied sub nom, fair value

**COUNSEL:** For Foundation for New Era Philanthropy, Debtor: JAMES M. MATOUR, Middleman & Matour, Philadelphia, PA.

Arlin M. Adams, Trustee, SCHNADER, HARRISON, SEGAL and LEWIS, Philadelphia, PA.

**JUDGES:** BRUCE FOX, United States Bankruptcy Judge.

**OPINION BY:** BRUCE FOX

**OPINION:** MEMORANDUM

By BRUCE FOX, Bankruptcy Judge:

The permanent chapter 7 trustee, Arlin M. Adams, has filed three motions seeking court approval to settle certain claims which the bankruptcy estate may assert or has asserted against Princeton University, Harvard University and the University of Pennsylvania. In connection therewith, the trustee also seeks to settle, in part, certain objections which he has raised as to claims which have been asserted against the estate by Laurence S. Rockefeller,
 [\*2]  Frank E. Richardson, III, The Richardson Foundation, William Thatcher Longstreth, John H.T. Wilson, James J. O'Neill, Henry F. Harris, Vivian Piasecki, The Ross Family Fund, the Benfamil Charitable Trust, George Bennett, Frank Richardson and the Whitehead Foundation. Notice of these three settlement motions was sent to all creditors and parties in interest in this bankruptcy case and a hearing was scheduled.

As of the time of the hearing, only one objection to these three settlements remained outstanding. n1 That objection was jointly filed by Rescue Mission Alliance of Syracuse,

Wesley Skinner and Sacred Works, Inc. The objection in all three instances asserted that the objectors had insufficient information to determine whether the settlements were fair and requested a hearing on the motions. n2 That hearing was held and the following evidence presented.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On June 5, 1996, Prudential Securities, Inc. filed a "statement … with respect to motions to approve settlements." This statement notes that it is not an objection to the pending settlements. Insofar as the statement "suggested" that the settlement motions be deferred until consideration of the trustee's "omnibus" motion, that suggestion was not followed for reasons stated in open court at the hearings held on June 27, 1996. **[*3]**

n2 The objections were filed on behalf of these creditors by the local law firm of Shaiman, Rovin and Schwartz, P.C. However, at the hearing held, these objectors were also represented by John Carroll, Esq., who practices law in Syracuse, New York, and who was admitted to this court pro hac vice.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I.

A.

Both the trustee and his accountant, Mr. Coffey, testified.

Mr. Coffey, upon a review of the debtor's books and records, believes that the debtor, prior to its bankruptcy filing in May 1995, was engaged in a pyramid, or "Ponzi" scheme. n3 The debtor allegedly sought to act as an intermediary for charitable donations, by promising donors that the funds donated would be sent to the charity of their choice and matched within a period of time by "anonymous" donors; the donated funds would be invested by the debtor, with the debtor obtaining for its own use the interest earned on the investment. Mr. Coffey stated that he could find no record of any anonymous donors; yet certain "matching" distributions had been made. Thus, he concluded that the debtor paid beneficiaries from the donations of **[*4]** later donors.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 One court has recently defined a Ponzi scheme as:

> an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors.

In re M & L Business Machine Co., Inc., 84 F.3d 1330, 1332 n.1 (10th Cir. 1996).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

It also is apparent from the evidentiary record that some charitable entities invested their own funds with the debtor in return for the debtor's promise to repay those investments with a match from "anonymous" donors within a six month period. Loosely, the trustee has characterized these funds as "deposits" from "depositors" as opposed to donations from donors. Thus, the debtor received deposits and donations and paid funds back to the depositors and to "beneficiaries." n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 There were also, in the trustee's nomenclature, "intermediaries" who received "thank offerings." It is unnecessary to discuss this aspect of the debtor's activities.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*5]**

One common occurrence in Ponzi schemes is that some early "investors" do receive that which they were promised, or at least more than their original investment. On or about March 19, 1996, Mr. Coffey prepared a document styled "Schedule B - Net Positive Obligations, Total Match Minus Deposits Never Returned as of March 19, 1996." Ex. T-1. This document lists in alphabetical order entities who received from the debtor more funds than were deposited or donated on their behalf. This is termed as the "net positive obligation" of that entity, for the trustee has assumed that an obligation is owing to the estate to the extent of this "profit." n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 This schedule omits those beneficiaries who, as of March 19th, had voluntarily repaid their "net positive obligation in full."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Ex. T-1 lists a net positive obligation of Harvard University in the amount of $ 502,500.00 and that of Princeton University of $ 2,308,038.00; the University of Pennsylvania is listed as having received $ 4,032,118.00 in matching funds from the **[*6]** debtor and as having on deposit with the debtor at the time of its bankruptcy filing the amount of $ 1,550,000.00. This schedule then subtracts the outstanding deposit from the matching funds received by this entity to yield a net positive obligation to the debtor of $ 2,482,118.00.

Before turning to the most significant terms of the particular proposed settlements at issue here, it is worth noting that in February 1996, the trustee began to file motions seeking court approval to settle claims which he had against some "net positive" entities. More specifically, on February 20, 1996, he filed a motion seeking, inter alia, authority to designate a class of claims and to settle those claims within certain limitations without the need for further notice to creditors or further court approval. (Docket entry # 1,000.)

After notice to all creditors and parties in interest, a hearing on the trustee's February 20th motion took place on March 21, 1996. No objections were filed to this motion. n6 Accordingly, by order dated March 26, 1996, the trustee, inter alia, was "authorized . . to enter into settlement agreements ... to obtain funds for the estate in the amount equal to the

Schedule **[*7]** B Net Positive Obligations ...." Ex. T-2, P 3 (Order of March 26, 1996). In other words, the trustee was permitted to settle claims he had against entities with net positive obligations, without further notice or hearing, so long as he obtained repayment of 100% of the amount of the net positive obligation. (The Schedule B referred to in this order was identical to Ex. T-1 in the instant contested matter and was offered in evidence at that time as Ex. T-4.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 I note that another hearing arising in this bankruptcy case was scheduled on March 21st at the same time as the hearing on the February 20th motion. This other hearing had to do with the trustee's motion to settle claims against, inter alia, Mr. John G. Bennett, the principal of the debtor. Those in attendance for the Bennett settlement hearing were numerous, and they included Mr. Schwartz, counsel for the present objectors. (See entry of appearance for Rescue Mission for hearing # 2 on March 26, 1996.) Thus, counsel for the instant objectors either was present in court for the March 21st hearing on the trustee's motion for authority to settle as to a class of claims or elected not be present. However, the trustee certified that notice of the motion and hearing were sent to these objectors. (Docket entries # # 1005, 1019.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*8]**

Conversely, if the trustee proposed to settle for less than 100% of the listed net positive obligation, he was still obligated to comply with the notice and hearing requirements of Fed.R.Bankr.P. 9019(a). Here, he seeks approval to settle with these three universities for less than 100% of their net positive obligations.

As to Harvard University, the proposed settlement calls for Harvard to pay $ 502,500.00, unless the settlements with Princeton University and the University of Pennsylvania are approved - in which case Harvard is to pay $ 467,325.00 (or 93% of its scheduled net positive obligation). Ex. T-3. The settlement with Princeton University proposes for that institution to pay the trustee $ 2,106,972.95 (or 91.3% of the scheduled net positive obligation). Ex. T-5. Finally, the proposed settlement with the University of Pennsylvania calls for that entity to repay the trustee $ 2,418,867.50 - "$ 2,618,867.50 Schedule B Net Positive Obligation n7 less $ 200,000.00" (or 92.4% of the scheduled net positive obligation). Ex. T-4.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 As I noted earlier, the schedule B net positive obligation listed on Ex. T-1 for the University of Pennsylvania is $ 2,482,118.00. However, the settlement includes certain sums distributed to affiliates of this university listed separately on schedule B, which causes the higher figure to be utilized in the proposed agreement.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*9]**

The reference in the Harvard proposed agreement to the Princeton and Pennsylvania settlements merely highlights a more general provision in all three agreements which were referred to by the trustee as a "most favored nation" provision.

All three proposals, if accepted, would require the trustee to rebate a portion of the settlement payments made by these "net positive" universities were the trustee to settle on

more favorable terms with other "similarly situated parties," who are identified in an exhibit attached to each settlement document. Those similarly situated parties - of which there are eleven - include the Dartmouth College Alumni Fund, Cornell University, and the University of Virginia. The trustee explained that all three universities insisted upon this provision so as not to be penalized for being among the first to reach an accord with the trustee. N.T. at 88.

These settlements with these three universities contained a number of other provisions, only one of which is germane to the present objections.

To the extent that the debtor transferred funds to these three universities, and to the extent that such transfers were not the return of "deposits" previously made **[*10]** by the universities, these transfers were made in accordance with the terms of donations made to the debtor by the non-university individuals and entities mentioned in the first paragraph: e.g., Mr. Laurence S. Rockefeller; the Richardson Foundation; George Bennett. As part of the settlement agreement with the universities, the trustee has objected to, and the various individuals and entities consent to the disallowance of, any claims they may have against the debtor arising from donations made to the debtor which were designated for distribution to the three settling universities.

In other words, the concept of a "net positive obligation" is defined in these circumstances as the amount paid to the universities less the amount donated to the debtor on their behalf and less funds deposited by them and still held by the debtor. While the settlement implicitly permits these three universities to retain the amount paid to them to the extent of donations made on their behalf, the settlement also requires that those who made the donations withdraw their claims against the estate.

B.

The trustee testified as to his rationale for agreeing to settle with these three entities for less **[*11]** than the full amounts of their net positive obligations.

First, he was not absolutely certain he would prevail against them if litigation were required. While he was confident of his entitlement to a recovery of the net positive obligation from all three, he stated (unspecifically) that the three entities had raised potential defenses and offsets in their negotiations. n8 N.T. at 89, 95.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 In his posthearing memorandum in support of his motion, trustee's counsel refers to potential RICO claims.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Second, the trustee was concerned about the costs of litigation, which he estimated (based upon his general experience as a lawyer) could be 10% of any recovery. N.T. at 88-90, 96.

Third, the trustee took into consideration the timing of payment. If he settled presently, he would receive payment almost immediately; if he litigated, he feared he might not recover for a year or more, especially if an appeal were taken. Moreover, he was uncertain as to his entitlement to prejudgment interest. N.T. at 97, 102.

Finally, **[*12]** perhaps the most important consideration to the trustee was his view that these three settlements would be a "springboard" to further settlements from other net positive entities. The trustee explained that other non-profit institutions were awaiting the

trustee's negotiations with these three universities - who had relatively large net positive obligations and who were financially able to repay them - before concluding their negotiations with him. n9 N.T. at 90-91. As a result of these proposed settlements, the trustee believes he has been able to reach approximately 200 more agreements on no less favorable terms. N.T. at 105. And to the trustee, given the nature of creditors in this case - charitable donors and nonprofit institutions - he viewed it a matter of important public policy to reach a consensual resolution with those who owe money to the estate without the time, expense or disruption of numerous litigation. N.T. at 106-07.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 In addition, as further explanation for the "discount" proposed for the University of Pennsylvania, the trustee stated that counsel for the university had been active in attempting to persuade other net positive obligors to settle with the trustee. N.T. at 91.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*13]

In other words, the trustee testified that these three proposed agreements would enable him to reach similar accord with most if not all of the net positive obligors and thereby be in a position to distribute funds sooner to the creditors in this case, many of whom are charitable entities. n10

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 In fact, the trustee had filed, just prior to the hearing held on the instant three motions, a motion seeking approval to resolve many of the claims asserted against the estate by donors and depositors and the claims made by the trustee against the net positive obligors. The motion is complex and cannot easily be summarized here. However, two aspects are worth noting now.

First, this broad settlement required a certain percentage of acceptances from claimants and obligors which would be more likely achieved if the settlements with the three universities were approved. Second, the broader proposed settlement agreement would treat the identified similarly situated obligors to the three universities no more favorably. Therefore, he did not expect to rebate any funds to these three institutions under their "most favored nation" clauses. N.T. at 134-36.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*14]

II.

When a bankruptcy trustee seeks to compromise a dispute, he must seek court approval on notice and hearing. The law surrounding whether a compromise and settlement of litigation should be approved is well established.

The necessity for the chapter 7 trustee to obtain bankruptcy court approval for a compromise of litigation stems from Fed.R.Bankr.P. 9019(a), which states:

> (a) Compromise. On motion by the trustee and after a hearing on notice to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement.

The source of this rule is the original section 27 of the Bankruptcy Act of 1898, former 11 U.S.C. § 50. See generally L. King, 2A Collier on Bankruptcy, PP 27.01 et seq. (14th ed. 1978). That statutory directive continued from 1898 until 1979. When the original nationwide bankruptcy rules of procedure were enacted, effective October 1, 1973, then Bankr.R. 919 duplicated section 27 and contained language almost identical to the current rule. After the current Bankruptcy Code took effect and repealed the 1898 Act, **[*15]** the earlier statutory directive was replaced entirely by a procedural rule - Rule 9019 - thus ending the duplication.

While the need for court approval of compromises in bankruptcy cases has remained constant, the purpose behind the requirement has changed slightly. Originally, trustees in bankruptcy were viewed as court officers, empowered to act on behalf of the court to collect and dispose of property of the estate for which the bankruptcy court was the custodian. E.g., Lincoln Nat. Life Ins. Co. v. Scales, 62 F.2d 582, 585 (5th Cir. 1933). Any attempt to compromise a claim represented a compromise of duty for which court approval was required. Id.

The current Bankruptcy Code reduces the administrative power of the bankruptcy court and emphasizes its judicial function. See, e.g., In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 373 (5th Cir. 1987) (en banc), aff'd sub nom. United Sav. Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988). The trustee is presently viewed as a fiduciary of the bankruptcy estate, i.e., its creditors. The trustee is appointed on an interim basis by the United State trustee, and then may be elected, as here, on a **[*16]** permanent basis by these creditors to act as their representative (and not as an agent of the court). Nonetheless, when parties in interest object to a proposed compromise, it remains the bankruptcy court's duty to review that objection to ensure that this fiduciary duty to creditors has been discharged fairly. A trustee is permitted to act without review in the ordinary course of the debtor's business, but needs court review for actions taken outside the ordinary course. 11 U.S.C. § 363(b). See generally L. King, 2 Collier on Bankruptcy, PP 363.03, 363.04 (15th ed. 1996). To the extent the trustee acts outside the ordinary course, the usual articulated standard for review is the business judgment standard. See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 318 U.S. 523, 87 L. Ed. 959, 63 S. Ct. 727 (1943); In re Titusville Country Club, 128 B.R. 396 (Bankr. W.D.Pa 1991). As will be discussed below, this business judgment standard has been defined, in the context of settlement disputes, to require the trustee to settle only upon "reasonable" terms.

Under the former Bankruptcy Act, the duty of the court upon review of a proposed **[*17]** settlement of litigation was to "compare the terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders v. Anderson, 390 U.S. 414, 424-25, 20 L. Ed. 2d 1, 88 S. Ct. 1157 (1968). In order to make that comparison, the Court instructed that a bankruptcy judge should "apprise[] himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Id., at 424.

Under the current Bankruptcy Code, the District Court for the Eastern District of Pennsylvania has framed the review inquiry thusly:

> Rule 9019(a) of the Rules of Bankruptcy Procedure provides that "on motion by the trustee and after hearing on notice to the creditors,... the court may approve a compromise of settlement." Approval of the settlement lies within the sound

discretion of the Bankruptcy **[*18]** Court. . In deciding whether to approve a settlement, the court must determine whether the proposed settlement is in the best interest of the estate.

...

In exercising its discretion regarding whether to approve a trustee's application to settle a controversy, relevant criteria which the Bankruptcy Court may consider include: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors... In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. [In re Carla Leather, Inc., 44 B.R. 457, 465 (S.D.N.Y. 1984).] "Nor is the court 'to decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness.'" Id., quoting [In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)]. In addition, "because the bankruptcy judge is uniquely situated to consider **[*19]** the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." [In re Patel, 43 B.R. 500, 505 (N.D.Ill. 1984)] (citations omitted).

In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 803 (E.D.Pa. 1986) (citations omitted). Accord, e.g., In re American Reserve Corp., 841 F.2d 159 (7th Cir. 1987). n11 Courts have also added the ingredient that "the law favors compromise." In re Lakeland Development Corp., 48 B.R. 85, 90 (Bankr. D.Minn. (and cases cited), aff'd without op., 782 F.2d 1048 (8th Cir. 1985), cert. denied, 476 U.S. 1130 (1986); In re Kaiser Steel Corp., 105 B.R. 971, 978 (D. Colo. 1989). n12

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n11 All parties apparently agree that I need not consider whether this trustee would encounter any difficulties in collecting, were there to be no settlement in these instances. That factor is not relevant here because the trustee has assumed that any judgment or order entered against the three universities would be recoverable in full.

n12 The trustee, both in open court and in his supporting memorandum, refers to the recent Third Circuit decision In re Martin, 91 F.3d 389 (3d Cir.) (1996) (Aldisert, J) for its analysis of settlements in bankruptcy cases. However, this decision was unpublished and thus has no precedential value in any other case. Third Circuit Internal Operating Procedures, # # 5.2, 5.3 (West 1996); see In re School Asbestos Litigation, 977 F.2d 764, 788 n.32 (3d Cir. 1992).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

The notion that a bankruptcy court upon review of a challenge to a settlement does not attempt to substitute its judgment for that of the trustee reflects the general roles of the court and trustee under the Code. Thus, the judgment of the trustee must be given some

discretion. See In re Del Grosso, 106 B.R. 165, 168 (Bankr. N.D.Ill. 1989). See also In re Culmtech, Ltd., 118 B.R. 237 (Bankr. M.D.Pa. 1990) (an informed recommendation of the trustee and his counsel are entitled to weight). Nevertheless, a court cannot simply approve a settlement because the trustee so wishes. In re American Reserve Corp. The trustee must demonstrate sound judgment in advocating a settlement.

III.

A.

Before applying the appropriate standard to the record presented in this contested matter, one additional element required for the approval of trustee settlements should be noted.

It is intuitive that at least some creditors (there are no equity interests in this case) must support the settlement. See In re Riverside-Linden Inv. Co., 925 F.2d 320 (9th Cir. 1991). The trustee acts as fiduciary for the bankruptcy estate. See, e.g., Wolf v. Weinstein, 372 U.S. 633, 10 L. Ed. 2d 33, [*21] 83 S. Ct. 969 (1963); In re Devine, 131 B.R. 952 (Bankr. S.D. Tex. 1991); In re Russell, 60 B.R. 42, 47 (Bankr. W.D.Ark. 1985) If all creditors, or their representatives, actively oppose the settlement, it would be inappropriate for the trustee to seek its approval, or for a bankruptcy court to grant it. See generally In re Riverside-Linden Inv. Co. A trustee seeking to take any action in opposition to his entire constituency would not be acting appropriately.

However, that some creditors oppose the settlement is not dispositive. In re American Reserve Corp., 841 F.2d at 161-62. Indeed, here, only three creditors out of hundreds oppose the trustee's position. Those that support these three motions - and many creditors attended the hearing and argued in favor of these settlements, as did the Commonwealth of Pennsylvania - hold claims which are asserted in excess of $ 100 million, far greater than the claims of the objectors. Therefore, the trustee has easily met his threshold requirement of acting with the support of at least a portion of his constituency. And, while not dispositive, this significant support from creditors may also be considered when a court determines [*22] whether the trustee is acting within the scope of his fiduciary duties. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 How much weight to give a lack of opposition will depend upon many factors and thus will depend upon the circumstances surrounding each bankruptcy case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B.

Once there is some support for the settlement from some segment that constitutes the debtor's estate, the best interests of the estate coalesce into the issue of fair value. That is, does the settlement provide fair compensation for release of the estate's cause of action? Indeed, a compromise of litigation may be analogized to the sale of an asset - a chose in action - to a third party - the defendant. Generally a "sale" of an asset of the estate must be in "good faith" which includes "fair value". In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986).

As noted earlier, the valuation of litigation traditionally has three components: the amount likely to be awarded by final judgment; the cost of obtaining that award; and the portion of the award that [*23] may be collected on execution. The actual recovery, less costs, is the value of the litigation. If the settlement comes close enough to this value it should be

approved. If the proposed settlement is way below fair value, it should not. n14 Moreover, it is the trustee's burden to demonstrate that fair value has been secured by way of the settlement. Accord, e.g., Matter of AWECO, Inc., 725 F.2d 293 (5th Cir.), cert. denied, 469 U.S. 880, 83 L. Ed 2d 182, 105 S. Ct 244 (1984); In re Neshaminy Office Bldg. Associates.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 In considering the appropriateness of a trustee sale of an asset, the Third Circuit has noted:

> Traditionally, courts have held that "fair and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets."

 In re Abbotts Diaries of Pennsylvania, Inc., 788 F.2d at 143 (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1197 n.1 (7th Cir. 1978)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

With some assets, their values are easily determined. Cash **[*24]** and cash equivalents have obvious values. Stocks traded on a public exchange usually are easily valued. For most property, valuation is not so simple. One accepted method is to offer expert testimony in the form of an "appraisal." At bottom, an appraisal is a prediction by an individual with expertise as to that amount that property would sell for in a bona fide transaction with appropriate marketing. See Matter of Excello Press, Inc., 890 F.2d 896, 905 (7th Cir 1989). When there already has been appropriate marketing, and a bona fide offer is made, appraisal testimony is an unnecessary prediction, since, at best, it would be duplicative of what has already occurred. Id.

Of all types of assets, litigation is among the most difficult for a bankruptcy court to value. One method that could be used by a trustee to justify his settlement position is to conduct a mini-trial in bankruptcy court, so that the strengths and weaknesses of the case - relevant to its value - could be demonstrated. However, such an approach would be unusual, and is certainly not required in all instances. See, e.g., In re American Reserve Corp., 841 F.2d at 163; In re Blair, 538 F.2d 849 **[*25]** (9th Cir. 1976); see also In re Paolino, 87 B.R. 8 (E.D. Pa. 1988) (a settlement supported by sound reasons offered by special counsel to the trustee is sufficient for court approval). The more common approach, and the one utilized in this instance, is for the trustee to offer evidence as to the likely range of recovery, along with the likely range of costs of litigation for comparison with the proposed settlement. This comparison should consider all benefits which would be received by the estate from the settlement.

As I will discuss below, I find this approach acceptable in these circumstances, given the objections which have been raised and the terms of the proposed settlements.

IV.

From the arguments asserted at the hearing and discussed in their posthearing memorandum, the objectors raise three issues. First, they maintain that the trustee has not demonstrated sufficient justification for settling for less than the full amount of the net positive obligation. Second, the objectors argue that the trustee is entitled to more than

100% of the net positive obligation and so has settled for an amount well below one he would obtain in litigation. And, third, they contend that **[*26]** the trustee, by virtue of the "most favored nation" clauses, will be forced to rebate settlement sums from these three universities because he will achieve less from other similarly situated obligors.

For the following reasons, I find all three objections unpersuasive.

A.

The objectors complain that the trustee should never have utilized the net positive obligation approach as a basis for fixing the amount of claims owed to the estate. They clearly suggest that the three universities should repay the net positive obligation plus the time value for the use of the transfers received from the debtor - which at oral argument was argued to be a premium as high as 42%. N.T. at 143. n15 They may also suggest that it is improper to net the amounts received by the universities less the amounts donated on their behalf and less the deposits they made.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 The 42% figure was derived from the objectors' estimate of the return to a hypothetical investor in the stock market over a recent interval. Of course, there was no evidence of how much, if any, investment return was in fact earned by the three universities. Nor does this argument recognize that the donors who named these universities as beneficiaries lost the investment value of their donation over or at least the same period and that the debtor benefitted from the use of the donors' funds.

Furthermore, the objectors base their argument on the trustee's ability to recover more than the matching funds from the universities upon Peterson v. Crown Financial Corp., 661 F.2d 287, 292 (3d Cir. 1981), which considered a plaintiff's right to obtain prejudgment interest under Pennsylvania law. I shall discuss the prejudgment interest issue below.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*27]**

The timeliness of the objectors' suggestions is problematic, however.

By virtue of the trustee's earlier motion and my order of approval dated March 26, 1996, the trustee was authorized to settle disputes using the netting approach just discussed. The net positive obligations of all entities - including the three universities at issue here - were identified and made part of an evidentiary record. The trustee sought and received approval to settle disputes for 100% of the net positive obligation without further notice to creditors. No one, including the present objectors, voiced any opposition to the trustee's request for settlement authority on those terms - even though notice was given and the objectors had counsel who either were or could have been present at the hearing. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 The trustee argues that this earlier order is the "law of the case." As instructed by the Supreme Court:

As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case.

Arizona v. California, 460 U.S. 605, 618, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983); accord
Matter of Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991); J.Moore, 1B Moore's Federal
Practice, P 0.404[1] (2d ed. 1995). It may not be accurate to characterize the granting of an
unopposed motion authorizing the trustee to settle litigation on specified terms-as the March
26th order did - as a decision on a rule of law.

Moreover, the "law of the case" is not absolutely preclusive. There are exceptions to its
application, see Schultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984) which are similar to
aspects of Rule 60(b). Thus, I have analyzed the objectors' position in the context of Rule
9024.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*28]**

The entry of the March 26, 1996 order approving the trustee's motion to settle on specified
terms was subject to appeal upon entry, see, e.g., In re Neshaminy Office Bldg. Assocs., and
can fairly be considered a final order in the bankruptcy sense of the term. See Chemlen v.
Bank of Ireland First Holdings, Inc., 1993 WL 443822, *3 (1st Cir. 1993) n17; Law Research
Service, Inc. v. Crook, 524 F.2d 301, 306 (2d Cir. 1975); In re Joint Eastern and Southern
District Asbestos Litigation, 129 B.R. 710, 861 (E.D.S.D.N.Y. 1991); see generally In re
Brown, 916 F.2d 120 (3d Cir. 1990) (finality in bankruptcy cases is broader than in non-
bankruptcy cases). No appeal was taken therefrom; nor was any timely request for
reconsideration filed. Fed.R.Bankr.P. 9023; see Smith v. Evans, 853 F.2d 155, 157 (3d Cir.
1988) (the deadline for requesting reconsideration under Fed.R.Civ.P. 59 - the source for
bankruptcy rule 9023 - is jurisdictional).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 While available in full text on Westlaw, the First Circuit has identified this decision as a
non-published opinion for use only in "related cases."

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*29]**

At bottom, the objectors are seeking relief from a final order by virtue of Fed.R.Bankr.P.
9024, which incorporates the provisions of Fed.R.Civ.P. 60(b). After considering the evidence
presented and their arguments, I conclude that they have not demonstrated any basis for
such relief.

In general, I note that the provisions of Rule 60(b)(6) may be utilized only in exceptional or
extraordinary circumstances, and can be used only as a "residual clause" in cases which are
not covered under the first five subsections of Rule 60(b). If the objectors' contentions are
within the issues addressed by subsections (b)(1) or (b)(3), then they are not cognizable
under 60(b)(6). Wesco Products Co. v. Alloy Automotive Co., 880 F.2d 981, 983 (7th Cir.
1989); In re Salem Mortg. Co., 791 F.2d 456, 459 (6th Cir. 1986); Pierce v. U M.W. Welfare
& Retirement Fund, 770 F 2d 449, 451 (6th Cir. 1985), cert. denied, 474 U.S. 1104, 88 L
Ed. 2d 925, 106 S. Ct. 890 (1986); In re Watkins, 90 B.R. 848 (Bankr. E.D.Mich. 1988).

It also is well established that the burden rests upon the party seeking relief under Rule 9024
to show justification for its oversight, error or omission pursuant to **[*30]** Rule 60(b)(1),

see generally 11 Wright & Miller, Federal Practice and Procedure: Civil § 2858 (1973 & Supp.1989). Similarly, a motion to vacate an order for fraud in its procurement under Rule 60(b)(3) must be proved by clear and convincing evidence. Brown v. Pennsylvania R. Co., 282 F.2d 522 (3d Cir. 1960), cert. denied, 365 U.S. 818, 5 L. Ed. 2d 696, 81 S. Ct. 690 (1961). In fact, the requirements for pleading fraud under 9024 are stricter than those required for most other claims. In re Met-L-Wood Corp., 80 B.R. 912 (N.D.Ill. 1987), aff'd, 861 F.2d 1012 (7th Cir. 1988), cert. denied sub nom. Gekas v. Pipin, 490 U.S. 1006, 104 L. Ed. 2d 157, 109 S. Ct. 1642 (1989); In re F.A. Potts & Co. Inc., 86 B.R. 853 (Bankr. E.D.Pa.), aff'd, 93 B.R. 62 (E.D.Pa. 1988), aff'd without op., 891 F.2d 280 (3d Cir. 1989); In re Chipwich, Inc., 64 B.R. 670 (Bankr. S.D.N.Y. 1986). A party seeking relief under subsection (b) of this rule must also prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him or her from fully and fairly presenting a claim or defense. Square Const. Co. v. Washington  **[*31]**  Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981); Keys v. Dunbar, 405 F.2d 955, 957-58 (9th Cir.), cert. denied, 396 U.S. 880, 24 L. Ed. 2d 138, 90 S. Ct. 158 (1969); Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc., 301 F.2d 114 (2d Cir. 1962). The existence of a meritorious defense is a prerequisite to granting relief under 60(b)(1), In re Salem Mortg. Co., 791 F.2d at 460, as it is for relief under 60(b)(3), Square Const. Co. v. Washington Metro. Area Transit Auth.; Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384. (D.P.R. 1981). n18

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n18 Motions brought pursuant to 60(b)(1) and (b)(3) must be filed within a reasonable time, but in no event may they be filed beyond one year after the judgment, order or proceeding was entered or taken. Laches or undue delay thus may preclude a party from relief, even though the motion is made within the maximum time allowed by the rule. Central Operating Co. v. Utility Workers of America, 491 F.2d 245 (4th Cir. 1974); MacLeod v. District of Columbia Transit System, Inc , 108 U.S. App. D.C. 399, 283 F.2d 194 (D.C. Cir. 1960); Reid v. Liberty Consumer Discount Co. of Pa , 484 F. Supp. 435 (E.D.Pa. 1980). There has been no suggestion by the trustee of laches or untimeliness against these objectors.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*32]

At the hearing, the only reason given by the objectors for vacating the March 26th order was that they had insufficient information regarding the trustee's methodology. Had they known then what they know now, they argue, they would have opposed the earlier motion. (Implicitly, they also suggest that the earlier motion would not have been approved over their opposition.)

But any information which the objectors now possess could have been sought either prior to or at the March 1996 hearing. The discovery rules apply in contested matters under Fed.R.Bankr.P. 9014; thus, the objectors could have sought prehearing information from the trustee. Alternatively, they could have sought to cross-examine the trustee and his accountant at the March 21st hearing, just as they have done in this dispute.

Accordingly, they have no legitimate basis to claim surprise, misrepresentation or lack of knowledge of the trustee's proposed settlement methodology or the underlying data applicable to the various net positive obligors. The present objectors simply elected not to request more detailed information prior to or at the hearing held. Therefore, they are not entitled to relief from the March 26th order.  **[*33]**  See generally J.Moore, 7 Moore's Federal Practice, P 60.22[2] at 60-182 (2d ed. 1995) ("Generally speaking a party who takes deliberate action with negative consequences, or who makes an informed choice as to a particular course of action will not be relieved of the consequences when it subsequently

develops that the choice was unfortunate").

Since the March 26th order authorized the trustee to settle claims of the estate for the total net positive obligation amount as identified in Ex. T-1, there is no justification for disallowing the trustee's present motions because he does not settle for more than that amount. n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n19 While I need not decide the issue, I do not wish to leave the impression that I would have necessarily sustained objections to the trustee's February 20th motion had any been raised.

There have been a number of recently reported appellate decisions involving bankruptcy cases in which the debtor operated a "Ponzi" scheme. While none of those decisions is from this circuit (and therefore there is no binding precedent in this bankruptcy case), they may be read to support the trustee's settlement methodology: that those who gave money to the debtor have a claim to the extent of their deposit, see In re Johnson, 960 F.2d 396 (4th Cir. 1992); In re United Energy Corp., 944 F.2d 589, 595 (9th Cir. 1991), and those who receive distributions from the debtor have an obligation to the estate to the extent the distribution exceeded the deposit. See In re Hedged-Investments Associates, Inc., 84 F.3d 1286, 1290 (10th Cir. 1986); Scholes v. Lehmann, 56 F.3d 750, 757-58 (7th Cir.), cert. denied sub nom. African Enterprise, Inc. v. Scholes,    U.S.    , 133 L. Ed. 2d 522, 116 S. Ct. 673 (1995); In re United Energy Corp., 944 F.2d at 595 n.6. It may not be unreasonable in the circumstances of this case to offset one against the other. See In re United Energy Corp., 944 F.2d at 596 (bankruptcy court was justified in treating two interrelated transactions as one for purposes of determining a cause of action under section 548(a)(2)); see also In re Johnson 960 F.2d at 404 (equitable powers of bankruptcy court justified paying funds derived from Ponzi scheme directly to investors/limited partners rather than to general partners).

Further, none of these appellate decisions holds that recipients of prepetition distributions are liable to a return of all funds received irrespective of any deposits made. See Scholes v. Lehmann, 56 F.3d at 757-58, 759. Moreover, none holds that the recipient must return the amount received plus the profit that would have been obtained had the distribution from the debtor been invested wisely in the stock market. See generally Scholes v. Lehmann.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*34]**

B.

The objectors next contend that the trustee has not exercised sound business judgment in his willingness to accept in settlement less than 100% of the three universities' net positive obligations. The objectors posit that the trustee's claims are virtually assured, the universities are financially able to pay any judgment and the costs of litigation far less than the trustee's estimate of 10% of the claim.

This analysis is simplistic in that it overlooks a number of issues, including the total benefit to be achieved by these settlements.

Given the possibility of various litigation between the trustee and those charitable institutions who received funds from the debtor, along with the possibility of litigation between those who donated funds and the trustee, I am reluctant to address definitively the legal positions of all donors, grantees, beneficiaries and the trustee in the context of these individual settlement motions. See In re Bell & Beckwith, 87 B.R. 476, 479 (N.D. Ohio 1988) ("In considering a proposed settlement, the bankruptcy court is not resolving issues"). All

relevant facts as to all parties in interest in this large, complex bankruptcy case are not now known **[*35]** to me; and the outcome of a particular dispute may be influenced by particular facts. See generally In re Young, 82 F.3d 1407 (8th Cir. 1996) (charitable contributions, although avoidable, could not be recovered due to Religious Freedom Restoration Act). However, I am comfortable in stating that the analysis of the objectors in these three instances ignores consideration of the benefit to the estate by the waiver of claims against the estate by the donors.

The release of potential claims of those donors who designated the three universities as beneficiaries (along with the claim for the University of Pennsylvania for deposits made but never returned) may be significant in at least two regards. First, the donors and the University of Pennsylvania might claim that they are entitled to enforcement of the promises which the debtor made to them. See In re M & L Business Machine Co., Inc., 84 F.3d 1330 (10th Cir. 1996). Similarly, they might claim fraud and seek consequential or punitive damages. In other words, they may assert and be granted claims in excess of the amounts of their donations (or deposits), see generally In re Hedged-Investments Associates, Inc., 84 F.3d 1281, 1290 **[*36]** (10th Cir. 1996) (recognizing, but denying to apply, the state law concept that one who was the victim of a fraud may seek damages in an amount equal to the difference between that which was promised and that received), and thus obtain claims greater than the recovery by the trustee of the beneficiaries' net positive obligations. By virtue of this settlement, these particular donors have agreed not to do so. Therefore, under the terms of this settlement, the trustee removes all risk that the amounts he might recover would be less than the claims allowed against the estate.

Second, to the extent that the trustee would assert constructive fraudulent conveyance claims against these three universities by virtue of section 548(a)(2), which appears to be the least controversial basis for recovery in Ponzi scheme cases, see In re Hedged-Investments Associates, Inc., 84 F.3d 1286 (10th Cir. 1996), it is generally held that the satisfaction of an antecedent debt may preclude the finding of a fraudulent conveyance. See id. at 1289; In re United Energy Corp., 944 F.2d 589, 595 (9th Cir. 1991). The amount of the antecedent debt need not precisely equal the amount of the transfer **[*37]** sought to be recovered. See Scholes v. Lehmann, 56 F.3d 750, 756 (7th Cir.), cert. denied sub nom. African Enterprise, Inc. v. Scholes,     U.S.    , 133 L. Ed. 2d 522, 116 S. Ct. 673 (1995); it may be less so long as it constitutes "reasonably equivalent value." See id.

Were the trustee to litigate against these universities to recover their matching fund distributions, they may well argue that the challenged distributions satisfied the donors' claims against the debtor, thereby precluding recovery under section 548. n20 See In re United Energy Corp., 944 F.2d at 597:

> Finally, the Trustee argues that by allowing the investors to retain the power payments we are, in effect, sanctioning an impermissible offset of a fraudulent conveyance [sic] against general unsecured claims. This assertion, however, is a bit misleading as it places the proverbial cart before the horse by assuming the conclusion. It is true that a fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim... However, it must first be ascertained that a transfer is a fraudulent conveyance. Because we conclude that there was no fraudulent transfer here, **[*38]** we must necessarily conclude that there was no impermissible offset.

(permitting the collapse of two transactions into one in determining "reasonable equivalent

value" under section 548(a)(2)) (citations omitted). While I do not now imply that this defense would prevail, I note that it has been asserted in similar cases and there is no binding decision on point in this circuit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n20 I appreciate that the trustee may argue that the donations were a gift with the donor having no claim against the estate. However, that position is not certain of success. See In re United Energy Corp , 944 F.2d at 595-96 (the absence of any contractual promise to repay does not disallow claims by investors who were "duped" and defrauded by the debtor).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Accordingly, the trustee's judgment that his claims against the universities did not guarantee full recovery of their net positive obligations is reasonable. To this I add that the trustee's right to prejudgment interest in fraudulent conveyance actions may be discretionary.  **[*39]** See Roth v. Fabrikant Bros., Inc , 175 F.2d 665, 669 (2d Cir. 1949) (prejudgment interest denied as to fraudulent conveyance claims); see generally <u>Osterneck v. Ernst & Whinney</u>, 489 U.S. 169, 103 L. Ed. 2d 146, 109 S. Ct. 987 (1989) (noting that in some instances the award of prejudgment interest is mandatory, in other instances it is discretionary). And to the extent such an award is discretionary, the factors generally considered in the exercise of that discretion may favor the universities, to the extent they, as non-profit institutions, neither knew nor should have known of the debtor's improper conduct in obtaining donations of their behalf. See <u>Osterneck v. Ernst & Whinney, 489 U.S. at 176.</u> Thus, the trustee may well benefit by the prompt voluntary recovery of settlement funds as called for in these three instances.

Finally, the trustee testified that these three settlements will be the catalyst for many other prompt settlements, totaling tens of millions of dollars. This testimony was corroborated by a number of statements made by counsel to various interested parties. n21

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n21 While I do not now find that the terms of these future settlements will be reasonable, the willingness of numerous parties to enter into settlements with the trustee may prove beneficial to the estate and is a legitimate consideration of the trustee in this instance.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*40]**

Therefore, in agreeing to roughly an 8% discount from the net positive obligation - which obligation the trustee viewed as his strongest claim for recovery, and the payment of which creditors did not oppose the trustee accepting - the trustee receives releases for related donor claims, avoids any risk or costs of litigation, obtains prompt payment and the use of the funds without risk of denial of prejudgment interest, and persuades many other net positive obligors to reach settlement agreements. In so doing, he may well administer this complex bankruptcy case more quickly, thereby reducing administrative claims against the estate (beyond those which would be incurred by way of litigation). Chapter 7 trustees have the statutory duty to liquidate the assets of the estate as quickly and efficiently as possible. 11 U.S.C. § 704(1). See In re Riverside-Linden Inv. Co., 925 F.2d at 322 (trustee's "main" duty is to expeditiously liquidate assets and close the estate); <u>In re Wilson, 4 B.R. 605, 606</u> (Bankr. E.D.Wash. 1980)

In light of these benefits, the proposed settlement by the trustee, even with its modest discount, is not outside the proper exercise of his fiduciary responsibilities. **[*41]** Indeed, some of these benefits were mentioned by creditors in their overwhelming support for the trustee's proposals. Given the standard applicable in this dispute, I cannot sustain the objection to the trustee's proposal to accept roughly 92% of the universities' net positive obligations as part of a settlement agreement inclusive of certain donor claims.

C.

The last objection is equally unpersuasive.

The Princeton, Pennsylvania and Harvard n22 agreements contain similar language which is at issue here. In relevant part, this language states:

> ... If and to the extent that any party listed on Exhibit B to the Agreement is accorded more beneficial treatment (considering the net economic benefit to the Estate, taking into account, among other things, treatment of donors' contributions for the benefit of such party) than is accorded Princeton under this Agreement, whether such beneficial treatment is pursuant to an agreement with the Trustee, a plan of reorganization or otherwise, then the Estate shall immediately and automatically be required take any and all remedial actions necessary to accord Princeton equal and equivalent treatment...
> The requirements of this Section **[*42]** shall not apply in any case in which the more beneficial treatment of a creditor is mandated by an Order of the Court (other than a consent order) following the Trustee's litigation of the Estate's claims against such creditor.

Ex. T-5, P 8, at 8; see also Ex. T-3, P 7; Ex. T-4, P 7.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n22 The objectors focus upon one provision of the Harvard agreement and then imply that Harvard is willing to pay 100% of its net positive obligation but the trustee insists upon settling for less. In so doing, they overlook that Harvard insisted on a most favored nation's provision in its agreement. It was unwilling to pay 100% unless all those it viewed as similarly situated also agreed to paid that percentage.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The objectors fear that the trustee will ultimately obtain much less than a 92% recovery from these three obligors due to these "most favored nation" provisions. Such a smaller recovery would reduce the benefit of these settlements to the estate and thus would affect the analysis undertaken above concerning the **[*43]** reasonableness of the settlement results. However, their concerns as to the effect of these provisions were unproven.

The language of the provisions is triggered only by voluntary agreements entered into by the trustee; they are expressly made not applicable to the results of litigation. The trustee's counsel represented in open court that the trustee had no intention of providing voluntarily more favorable terms to the other identified similarly situated institutions  N.T. at 134-36; further, counsel represented that the trustee's broader proposed "global" settlement would not trigger these rebate provisions. N.T. at 135 (were the trustee to later act in a manner

inconsistent with these representations, creditors may be free to object. See generally Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996).)

The objectors offered no evidence that the trustee intended to settle on more favorable terms with similarly situated universities. Instead, they focused upon potential claims and defenses of one of the similarly situated institutions and opined that this other institution ultimately may pay much less than its net positive obligation to the trustee. **[*44]** While this smaller payment could possibly occur as the result of litigation (of course, this argument may conflict with the objectors' earlier objection that the trustee was settling for too little because of the strength of his claims), so long as the trustee does not consent to more favorable treatment, the outcome of litigation will not require the trustee to rebate any settlement funds to these three universities.

Therefore, the inclusion of a conditional rebate provision in these settlement agreements does not yield the result that the trustee is settling for a sum less than is reasonable under these circumstances. The condition which would trigger such a rebate seems to be very unlikely to arise, as it would require the trustee's acquiescence, something his counsel has promised would not occur. As a result, this last objection is overruled.

V.

I have analyzed the trustee's settlement proposals to determine whether they "fall below the lowest point in the range of reasonableness," In re W.T. Grant & Co., 699 F.2d 599, 608 (2d Cir.), cert. denied sub nom. Cosoff v. Rodman, 464 U.S. 822, 78 L. Ed. 2d 97, 104 S. Ct. 89 (1983), and concluded that they do not. Given the **[*45]** benefits to be obtained and the risks avoided, these proposals are reasonable. In so doing, I have not considered whether the trustee's settlement strategy will have any effect upon litigation which I am informed is pending among the three objectors and Prudential Securities, Inc. in District Court for the Northern District of New York. The trustee is not a party to that lawsuit which does not involve claims belonging to the estate.

It may be that Prudential and/or the objectors have raised issues here out of a concern that these settlements will adversely affect their litigation positions in that non-bankruptcy civil action. Bankruptcy Rule 9019(a), however, is concerned only with the fairness of the proposed settlement terms upon the bankruptcy estate. The interests of third parties are not germane to this analysis. See In re Paris Industries Corp., 106 B.R. 339 (Bankr. D. Me. 1989) (settlement approved as in best interest of debtor's estate over objections of debtor's former director and officers, who were not released from liability by the agreement and who faced potential indemnification claims); see also In re Bell & Beckwith, 87 B.R. at 478 ("In deciding whether to **[*46]** approve a proposed settlement, the bankruptcy court must determine whether the settlement is in the best interest of the estate"). As I result, I shall enter an order authorizing the trustee to act and leave to the District Court to assess the implications, if any, of these settlements upon the lawsuit now pending before it. n23

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n23 After the hearing, Prudential filed two additional "statements." One requested that consideration of these three motions be delayed pending consideration of a motion scheduled to be heard on August 1, 1996. A similar request was made by another party at the hearing, opposed by many, and denied by me for reasons which I shall not repeat.

The second statement was to inform me of Prudential's willingness, on certain terms, to pay trustee's counsel to prosecute claims against the three above mentioned universities and to guarantee a certain return. The trustee has not responded to this proposal, which leads me to believe the trustee presses the instant motions. It would have been preferable for

Prudential to raise its proposal prior to or at the hearing so that all parties in interest, along with the trustee, might have a change to analyze it and respond at that time.

Upon my review of Prudential's offer, I conclude that it is more appropriate not to delay resolution of the instant motions in favor of a response from the trustee for two reasons. First, the timing of the proposal is suspect, given Prudential's expressed desire for delay. Second, I anticipate the trustee's position would be that the proposal does not address two aspects of the settlement which the trustee values: resolution of certain donor claims; and encouragement of other parties also to settle with the trustee. As these two settlement benefits play a role in my analysis of the reasonableness of the trustee's proposed actions, and as they are absent from Prudential's belated offer, this statement does not alter my conclusions that the motions should be approved.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*47]

ORDER

AND NOW, this 22nd day of July, 1996, for the reasons stated in the accompanying memorandum, it is hereby ordered that the trustee's motions to enter into settlement agreements with Princeton University, Harvard University and the University of Pennsylvania, along with Laurence S. Rockefeller, Frank E. Richardson, III, The Richardson Foundation, William Thatcher Longstreth, John H.T. Wilson, James J. O'Neill, Henry F. Harris, Vivian Piasecki, The Ross Family Fund, the Benfamil Charitable Trust, George Bennett, Frank Richardson and the Whitehead Foundation are approved.

The trustee is authorized to enter into settlement agreements with these parties on the terms detailed in his respective motions. All amended proofs of claim shall be filed by July 31, 1996.

BRUCE FOX

United States Bankruptcy Judge

Service: **Get by LEXSEE®**
Citation: **1996 bankr lexis 1891**
View: Full
Date/Time: Monday, October 30, 2006 - 10:41 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
◈ - Positive treatment is indicated
🅐 - Citing Refs  With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis    About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc  All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1991 us dist lexis 14708**

*1991 U.S. Dist. LEXIS 14708, \**

RHONE-POULENC RORER INC., and ARMOUR PHARMACEUTICAL CO. v. THE HOME
INDEMNITY COMPANY v. AETNA CASUALTY & SURETY CO., et al. v. CITY INSURANCE
COMPANY, et al.

Civil Action No. 88-9752

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1991 U.S. Dist. LEXIS 14708

October 15, 1991
October 15, 1991, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant insurer filed a motion to compel answers to
interrogatories and production of documents from plaintiffs. One plaintiff filed a response
and memorandum, stating that many of the items sought were no longer in its possession
or under its control and another plaintiff filed an opposition.

**OVERVIEW:** The insurer sought meeting minutes, management letters, sales materials, a
termination agreement as to an employee, answers to interrogatories to plaintiffs' former
counsel, and answers to due diligence interrogatories. One plaintiff filed a response and
memorandum and another filed an opposition. The magistrate observed that the scope of
Fed. R. Civ. P. 26 allowed the discovery of non-privileged information that was reasonably
calculated to lead to admissible information. As to defendants seeking of meeting minutes,
the magistrate held that the request was stated in a way that gave rise to an inescapable
conclusion that the information was privileged. The magistrate observed that plaintiffs had
stated that some documents were lost, and the court ordered a search for those
documents. In addition, as to some other documents, plaintiffs had not raised the issue of
relevance, and therefore under Rule 26(b)(1), those documents were subject to discovery.
The magistrate also held that the management letters were not yet due. As to the
termination agreement, no privilege was asserted, and production was required. The
magistrate declined to grant expenses to either party.

**OUTCOME:** The magistrate recommended the granting of the insurer's request in part and
denied it in part, further ordering that the insurer deliver a copy of its request for
production of documents that contained a request for letters specified in their
memorandum in support of their motion to compel. The court also ordered each party to
pay its own costs.

**CORE TERMS:** memorandum, attorney-client, discovery, production of documents,
interrogatories, marketing, deposition, responsive, work product doctrine, termination,
interviewed, minutes, unavailability, interview, strangers, answers to interrogatories, work
product, privileged, bias, discovery of admissible evidence, reasonably calculated to lead,
admissible evidence, legal proceeding, work-product, formal request, instant motion, law
firm, irrelevancy, forthcoming, circulated

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Discovery > General Overview

*HN1* See Fed. R. Civ. P. 26(b)(1).

Civil Procedure > Discovery > Relevance

*HN2* Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. More Like This Headnote

Civil Procedure > Discovery > Relevance

*HN3* Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction. More Like This Headnote

Civil Procedure > Discovery > Methods > Interrogatories > General Overview

Civil Procedure > Discovery > Privileged Matters > Attorney-Client Privilege

*HN4* A party has a duty under Fed. R. Civ. P. 26(a) and (b) to respond to properly served interrogatories, especially after resolving the issue of any potential conflict with plaintiffs' attorney-client privileges. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Elements

*HN5* The attorney-client privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) The person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > General Overview

*HN6* When an attorney's client is a corporation, statements of employees to the attorney concerning the matter for which the attorney was retained are statements of "the client" for purposes of analyzing attorney-client privilege. More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards

*HN7* Under Fed. R. Civ. P. 37(4), if a motion is granted in part and denied in part, a court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner. More Like This Headnote

## COUNSEL: [*1]

Jill A. Douthett, Esq., Philadelphia, Pennsylvania.

JOHN BARRINGTON HUME & INSCO, Ltd.: by: Louis E. Bricklin, Esq., Illene G. Greenberg, Esq., BENNETT BRICKLIN & SALTZBURG, Philadelphia, Pennsylvania.

THE HOME INDEMNITY COMPANY: BY: Jeffrey B. Albert, Esq., Wendy Fleishman, Esq., Stephanie Resnick, Esq., Timothy D. Mara, Esq., Philadelphia, Pennsylvania, BY: James W. Christie, Esq., (co-counsel), CLARK, LADNER, FORTENBAUGH & YOUNG, Philadelphia, Pennsylvania.

REVLON, INC., and PANTRY PRIDE, INC.: BY: Stephen A. Cozen, Esq., Susan M. Danielski, Esq., Richard C. Bennett, Esq., COZEN AND O'CONNOR, Philadelphia, Pennsylvania.

BIRMINGHAM FIRE INSURANCE COMPANY, AIU INSURANCE COMPANY, NEW HAMPSHIRE INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, NATIONAL UNION INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA: BY: Mark A. Dombroff, Esq., John K. Henderson, Jr, Esq., KATTEN MUCHIN, ZAVIS & DOMBROFF, Washington, D.C., MARGOLIS, EDELSTEIN, SCHERLIS, SAROWITZ AND KRAEMER, B. Alan Dash, Esq.

AMERICAN CENTENIAL INSURANCE COMPANY: BY: Joseph M. Oberlies, Esq., CONNOR AND WEBER, P.C., Philadelphia, Pennsylvania.

HARTFORD INSURANCE COMPANY, TWIN **[\*2]** CITY INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY and NEW ENGLAND REINSURANCE COMPANY: BY: James A. Young, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

AETNA CASUALTY & SURETY INSURANCE: BY: Edward M. Dunham, Jr, Esq., Philadelphia, Pennsylvania, MILLER, DUNHAM, DOERING & MUNSON.

INTERNATIONAL INSURANCE COMPANY: BY: Michael D. Gallagher, Esq., Thomas M. Going, Esq., GERMAN, GALLAGHER & MURTAGH, Philadelphia, Pennsylvania.

LIBERTY MUTUAL INSURANCE COMPANY: BY: WILLIAM C. FOSTER, ESQ., GERARD F. LIPSKI, ESQ., Philadelphia, Pennsylvania, Walter A. Stewart, Esq. MANTA & WELGE, Philadelphia, Pennsylvania.

AIU INSURANCE COMPANY: BIRMINGHAM FIRE INSURANCE COMPANY: GRANITE STATE INSURANCE COMPANY: LEXINGTON INSURANCE COMPANY: NATIONAL UNION INSURANCE COMPANY: NEW HAMPSHIRE INSURANCE COMPANY: ILLINOIS NATIONAL INSURANCE COMPANY: BY: B. Alan Dash, Esq., H. Marc Tepper, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania, Mary J. Davis, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania.

NORTH STAR REINSURANCE CORPORATION: BY: DENNIS R. SUPLEE, ESQ , RONALD P. SCHILLER, ESQ., SCHNADER, HARRISON, SEGAL **[\*3]** & LEWIS, Philadelphia, Pennsylvania.

FIREMAN'S FUND INSURANCE COMPANY: BY: Wayne Partenheimer, Esq., Philadelphia, Pennsylvania.

COLUMBIA CASUALTY COMPANY: BY: Douglas J. Kent, Esq., LABRUM & DOAK, Philadelphia, Pennsylvania.

FIDELITY AND CASUALTY COMPANY OF NEW YORK: BY: DOUGLAS J. KENT, ESQ., LABRUM AND DOAK, PHILADELPHIA, PENNSYLVANIA.

REPUBLIC INSURANCE COMPANY: BY: Wilson M. Brown, III, Esq., David F. Abernethy, Esq.,

Philadelphia, Pennsylvania, BY: DONALD I. STRAUBER, ESQ., PETER N. HILLMAN, ESQ., CHADBOURNE & PARKE, NEW YORK, NEW YORK.

ATLANTA INTERNATIONAL INSURANCE COMPANY: BY: Louis J. Isaachshon, Esq., WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, Philadelphia, Pennsylvania.

NEW ENGLAND INSURANCE, CO.: BY: TIMOTHY J. CAMPBELL, ESQ., JAMES A. YOUNG, ESQ., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

ZURICH INTERNATIONAL INSURANCE COMPANY: BY: Thomas C. DeLorenzo, Esq., MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Philadelphia, Pennsylvania.

PROMETHEAN INSURANCE COMPANY, LTD.: BY: MARK L. ALDERMAN, ESQ., KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, PHILADELPHIA, PENNSYLVANIA.

REVLON, INC.: BY: Nancy E. Stuart, Esq., HOYLE, MORRIS & KERR, Philadelphia, Pennsylvania. **[*4]**

PACIFIC EMPLOYER'S INSURANCE COMPANY: BY: Richard J. Bortnick, Esquire, Philadelphia, Pennsylvania.

INSCO, LTD.; JOHN BARRINGTON HUME, WALBROOK INSURANCE COMPANY, LTD.: EL PASO INSURANCE COMPANY, LTD.: DART & KRAFT INSURANCE COMPANY, LTD., LOUISIANA INSURANCE COMPANY, LTD., LUDGATE INSURANCE COMPANY, LTD., BERMUDA FIRE & MARINE INSURANCE COMPANY, WINTERTHUR SWISS INSURANCE COMPANY, MUTUAL REINSURANCE COMPANY, TD., COMPAGNIE EUROPEANNE D'ASSURANCE INDUSTRIELLES, S.A., FOLKSAM INTERNATIONAL INSURANCE COMPANY (U.K.), LTD., BRITISH NATIONAL INSURANCE COMPANY, PINETOP INSURANCE COMPANY, LTD., YASUDA U.K., WORLD MARINE INSURANCE COMPANY. MUTUAL REINSURANCE COMPANY, LTD., DART INSURANCE COMPANY, LTD., BRYANSTON INSURANCE COMPANY, LTD., ST. CATHERINE INSURANCE COMPANY, LTD., LOUISVILLE INSURANCE COMPANY, LTD., C.A.M.A.T., CNA RE : NORTH ATLANTIC INSURANCE COMPANY, LTD., TUREGUM INSURANCE CO.: LEXINGTON INSURANCE COMPANY: BRITTANY INSURANCE COMPANY: ZURICH (BERMUDA) INSURANCE COMPANY: ISRAEL RE: COMPAGNIE D'ASSURANCE MARITIMES AERIENNES ET TERRESTRES: ASSICURAZIONI GENERALI SPA, NORTH ATLANTIC INSURANCE COMPANY, LTD., STRONGHOLD INSURANCE COMPANY, TRAVELERS CORP. (U.K.): BY: LOUIS E. BRICKLIN, **[*5]** ESQ., ILLENE G. GREENBERG, ESQ., BENNETT, BRICKLIN & SALTZBURG, Philadelphia, Pennsylvania.

CENTURY INDEMNITY COMPANY INSURANCE COMPANY OF NORTH AMERICA: BY: RICHARD M. SHUSTERMAN, ESQ., WHITE & WILLIAMS, PHILADELPHIA, PENNSYLVANIA, E. Douglas Sederholm.

EMPLOYERS' MUTUAL CASUALTY COMPANY: BY: David P. Thompson, Esq., PALMER, BIEZUP & HENDERSON, Philadelphia, Pennsylvania.

OLD REPUBLIC INSURANCE COMPANY PURITAN INSURANCE COMPANY: BY: GEORGE D. SHEEHAN, JR, ESQ., SWEENEY, SHEEHAN & SPENCER, PHILADELPHIA, PENNSYLVANIA.

CENTRAL NAT'L INSURANCE CO. OF OMAHA MOTOR VEHICLE CASUAL COMPANY: BY: Douglas Evan Ress, Esq., KAUFMAN, COREN & RESS, Philadelphia, Pennsylvania.

ILLINOIS NATIONAL INSURANCE COMPANY: BY: B. Alan Dash, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ AND KRAEMER, Philadelphia, Pennsylvania.

MANHATTAN FIRE AND MARINE INSURANCE COMPANY: BY: George D. Sheehan, Jr, Esq.,

SWEENEY, SHEEHAN & SPENCER, Philadelphia, Pennsylvania.

GIBRALTAR CASUALTY COMPANY, PRUDENTIAL REINSURANCE COMPANY: BY: THOMAS C. DeLORENZO, ESQ., MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, PHILADELPHIA, PENNSYLVANIA.

CONTINENTAL CASUALTY COMPANY: BY: Stuart C. Levine, FORD MARRIN ESPOSITO & WITMEYER, New **[*6]** York, New York, By: William G. Scarborough, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

ROYAL INSURANCE COMPANY OF AMERICA HARTFORD INSURANCE COMPANY, TWIN CITY INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY and NEW ENGLAND REINSURANCE COMPANY: BY: James A. Young, Esq., STRADLEY, RONON, STEVENS & YOUNG, Philadelphia, Pennsylvania.

NATIONAL CASUALTY INSURANCE COMPANY: BY: Bonnie Brigance Leadbetter, Esq., FINEMAN & BACH, P.C., Philadelphia, Pennsylvania.

**JUDGES:** Edwin E. Naythons, United States Magistrate.

**OPINION BY:** NAYTHONS

**OPINION:** MEMORANDUM AND ORDER

Presently before this United States Magistrate Judge is the motion of defendant Home Indemnity Co. ("Home"), to compel answers to interrogatories and production of documents from plaintiffs Rhone Poulenc Rorer, Inc. ("RPR") and Armour Pharmaceutical Co. ("Armour"), and fourth-party plaintiff Revlon, Inc.. n1 Also before this Court is the response and memorandum of plaintiffs RPR and Armour in opposition to the motion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 This Court was informed by letter dated September 11, 1991, from Susan M. Danielski of the law firm of Cozen and O'Connor that this motion has been withdrawn as to fourth party plaintiff Revlon, Inc.



- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*7]**

Defendant divides the matter it seeks to compel into four subject areas consisting of:

A. Plasma Executive Committee minutes; Management letters of Lorne Schnell, Michael Rodell, Max Graber, and Fred Feldman; marketing newsletters; marketing and sales brochures circulated to hemophilia treaters; marketing plans; minutes of meetings attended by Schnell and Rodell or Graber; and documents provided by Graber to the Firm of Sidley & Austin relating to the Canadian HPB inspection of December 2nd-3rd. Defendant asks this Court to order plaintiff to either produce these documents, or to file an affidavit that they do not exist, or are not in the possession or control of plaintiffs. Plaintiffs have submitted an affidavit as to some of these items in their response, and further allege that all responsive documents they have in their possession have been produced.

B. Defendant also seeks to compel the Termination Agreement of Stuart Samuels, to which plaintiffs object on the grounds that it is irrelevant and vexatious. In addition, defendant seeks the statements of attorneys who interviewed plaintiffs' employees regarding previous litigation at the Kankakee, Illinois facility. Plaintiffs claim **[*8]** that this information is

protected by the Attorney-Client privilege, and/or the work product doctrine.

C. Defendant seeks to compel answers to interrogatories it served to former counsel for plaintiffs William Ragolia, Jr. Defendant alleges that no responses have been forthcoming from either Ragolia or plaintiffs. Plaintiffs allege that they have no responsibility to answer these interrogatories, as Ragolia is not a party to the action, nor does he have any current relationship with plaintiffs.

D. Finally, defendant seeks to compel answers to its "Due Diligence" interrogatories, which were served on plaintiff's August 1, 1991, 23 days prior to the filing of this motion. Plaintiffs claim that the request is premature. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The firm of Cozen and O'Connor also informed this Court by their Sept. 11, 1991 correspondence that Home and Revlon had resolved all the due diligence issues presented in the instant motion. Thus, this Court need not examine this issue, nor Home's related attempt to compel answers to document requests made to the law firm of Skadden, Arps, Slate, Meagher & Flom.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*9]**

The Documents Requested in Section A of Defendant's Brief

The Home has requested this Court to either compel production of the seven sets of documents listed here, or to compel plaintiffs to submit an affidavit "of the president or other responsible corporate officer of plaintiffs" that such documents never existed or are no longer in their possession, custody, or control. In addition to their response to the motion, plaintiffs have submitted the affidavit of Richard Collier, Vice President and Assistant Secretary of Rhone-Poulenc Rorer Inc. The affidavit states that he has been authorized to make the statement on behalf of RPR and Armour, thus binding the plaintiffs. Mr. Collier states that plaintiffs, despite their efforts to do so, have been unable to locate documents, other than those already produced, in five of the seven categories described in Section A of defendant's memorandum. Those categories are: (1) Plasma Executive Committee minutes; (2) Marketing newsletters; (3) marketing and sales brochures circulated to hemophilia treaters; (4) marketing plans; and (5) minutes of meetings attended by Dr. Michael B. Rodell and Dr. Lorne Schnell or Mr. Max Graber.

Although this **[*10]** affidavit does not comply precisely with the language that defendant requests (it does not affirmatively state that the documents never existed or are not in control of plaintiffs, merely that they are lost) this Court obviously cannot force plaintiffs to produce documents they can not find. However, plaintiffs have produced some of the documents in certain of these classes, and have not brought allegations of irrelevancy or over-burdensomeness to this Court's attention. Thus, plaintiffs are directed to continue to search for the requested documents, and produce any such documents that they do find.

The Canadian Documents

One of the two classes of documents not included in the affadivit, but described in section A of defendant's memorandum in support of their motion, is "documents provided to Sidley & Austin by Graber after December, 1987 which pertain, refer or relate to the 2-3 December 2 Canadian HPB inspection." Defendant's memorandum at 8. Plaintiffs contend that the matter was earlier resolved at the deposition of Max Graber, when defendant initially claimed that plaintiffs had produced only one document in response to defendant's request. Throughout

the course of the deposition, **[*11]** however, it became clear that many more had been produced, as defendant used at least 12 such documents at the deposition. See Exhibit B attached to plaintiffs memorandum in opposition.

Defendant's current argument however, seems to be somewhat different. Defendant claims that Graber stated that he produced more documents than were shown to him at deposition (although this is not entirely clear from the fragments of deposition provided to this Court). Since plaintiffs did not include this class of documents in their affidavit, they are apparently available.

Rule 26(b)(1) provides that *HN1*discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." *HN2*Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978), Rather, *HN3*discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded **[*12]** broad and liberal construction. Buffington v. Gillette Co., 101 F.R.D. 400 (W.D.Okla. 1980). See also Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, at 124 (M.D.N.C. 1989). Because no claims of irrelevancy have been raised as to these documents, and several documents from this class have already been produced, plaintiff will be ordered to produce any remaining documents responsive to request no. 7 in section A of defendant's memorandum which have not already been produced.

The Management Letters

This issue is difficult to resolve for two reasons. First, defendant claims that these letters were requested in their sixth request for production of documents, and that this request is attached as Exhibit E to their memorandum in support of the motion. While the document attached as exhibit is titled "The Home's Sixth Request for Production of Documents to Plaintiffs", the management letters which defendant by this motion seeks to compel, are not mentioned in that request. Further, the request is dated August 1, 1991. Plaintiffs' responses to that request were not even due at the time this motion was filed. This United States Magistrate **[*13]** Judge will decide this issue on the assumption that the management letters were, prior to filing of this motion, properly requested by defendants. My disposition of this issue rests on that assumption, and any showing that the documents were not, in fact, properly requested may void my ruling as to the management letters.

Although the motion to compel these letters was premature, plaintiffs' response to this motion (which was filed the day plaintiffs' responses to the document request were due), makes no mention of these documents. Plaintiff neither confirms nor denies defendant's claims as to the management letters. The letters appear to be relevant, and plaintiff makes no allegations to the contrary. Therefore, in the interests of judicial economy and to prevent the need to file further motions on this point, I will order plaintiff to produce any letters responsive to those described in section A, part 2 of motion, (Defendant's Motion to Compel at 4-5) which have not already been produced. This is not, however, a finding that plaintiffs have not met with their discovery obligations as to these documents, it is merely an order for them to comply in the event that they have not **[*14]** done so. However, because this United States Magistrate Judge can find no record of a formal request for these documents, defendant will be ordered to deliver a copy of such formal request. If such request is not delivered, or was filed after this motion was filed, the Court may void its order that plaintiffs produce these documents.

The Samuels Termination Agreement

Plaintiffs make no allegation that this information is privileged. Their sole ground for refusing to produce the document is that defendant does not seek the termination agreements of other deposed individuals. This is hardly a proper ground on which to object to discovery. If the information sought is relevant and not privileged, the reasons for which a party seeks such information are of no import. Evidence of witness bias is always admissible at trial, and is thus relevant. Further, defendant does not make far-ranging, speculative requests for information based on bias, but asks for a single agreement which this Court agrees is reasonably calculated to lead to evidence of bias as to this specific witness, and thus to admissible evidence. There is no reason for the court to inspect the agreement in camera, as **[*15]** suggested by plaintiffs, for the information it contains is likely to lead to the discovery of admissible evidence, and no privilege has been claimed. The termination agreement between what was then Rorer Group Inc. and Stuart Samuels will be ordered produced.

The Ragolia Interrogatories

I note a the outset that a Mr. Ragolia $^{HN4}$ has a duty under Fed. R. Civ. P. 26(a) and (b) to respond to properly served interrogatories, especially after resolving the issue of any potential conflict with plaintiffs' attorney-client privileges. That being said, Mr. Ragolia is not a plaintiff in this action and is not named in the title of this motion, does not appear to have been served with this motion, and does not have any relationship to any of the plaintiffs which would justify their being responsible for his behavior. Thus, while defendants concern over Mr. Ragolia's apparent refusal to answer interrogatories is well founded, the present motion is not a valid method of compelling such answers. Direct action against Mr. Ragolia should have been taken. Thus, this motion must be denied insofar as they seek to compel plaintiffs to answer the Ragolia interrogatories. Plaintiffs actions in attempting **[*16]** to convince Mr. Ragolia to answer the interrogatories are proper, and should continue until such time as the issue is resolved.

The Work Product Documents

Defendant also seeks what it admits is work product from the attorneys of both Rorer and Armour. Plaintiff objects to these requests, claiming attorney-client privilege, and the attorney work-product doctrine. The information sought is so clearly protected by the attorney-client privilege that this Court need not even decide the issue of whether it is protected by the work product doctrine. Defendant requests: "Any and all statements and/or work product or memoranda by any attorneys who worked for Armour who interviewed employees of Armour at the Kankakee facility." Defendant also seeks to compel: "Any and all statements and/or work product or memoranda by any attorneys who worked for Rorer who interviewed employees of Armour at the Kankakee facility." Clearly this information is protected by the attorney client privilege; in fact, the phrasing of the requests alone contain many of the elements necessary for a claim of attorney-client privilege. The elements of that privilege have been set out in re Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979). **[*17]** That case stated that:

$^{HN5}$ The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) The person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. Id, at 1233, citing United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass. 1950).

The information which defendant seeks to compel meets all the strict elements adopted by

this circuit. Plaintiffs correctly cite the seminal case of Upjohn Co. v. United States, 449 U.S 383 (1981) for the proposition that, [HN6] when an attorney's client is a corporation, statements of employees to the attorney concerning the **[*18]** matter for which the attorney was retained are statements of "the client" for purposes of analyzing attorney-client privilege. Defendant specifically asks for statements only from those attorneys who interviewed employees of the plaintiffs, and were employed by the plaintiffs. This satisfies element (1) and both parts of element (2). There is no reason to believe that strangers were present at these interviews, indeed the term "interview" strongly suggests that no strangers were present, and the purpose of these interviews was clearly to assist the client in a legal proceeding. This satisfies element (3) in its entirety. Since plaintiffs here claim the privilege, and did so in their responses to the request for production, element (4) is satisfied. Having determined that these documents are clearly protected by the attorney client privilege, this Court need not decide whether they are also protected by the work product doctrine.

Defendant alleges that substantial need for the documents, and inability to get the information anywhere else overrides any privileges. Defendant claims: "Such statements may contain the very information which plaintiffs' witnesses claim they no longer recall **[*19]** or were unaware of at the tome [sic] of the issuance of the policy." This argument is futile in circumventing the attorney-client privilege, however. While a showing of substantial need and unavailability of the information from any non-privileged source can negate the protections of the work product doctrine, no such unavailability exception can be extended to the attorney-client privilege. See Reeves v. Teuscher, 881 F.2d 1486 (9th Cir. 1989). In Reeves, the Court of Appeals contrasted the differing purposes between the two doctrines. The court noted that:

The conditional protections of the work-product rule prevent exploitation of a party's efforts in preparing for litigation. . . . The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest similar effort in discovery. Accordingly, when a party makes a substantial showing that he is unable through his efforts to obtain needed information, the balance of equities shifts in favor of disclosure of trial preparation materials. Id. at 1494.

The court went to state that **[*20]** the attorney client-privilege protects communications between the attorney and the client to encourage the client to be forthcoming with his attorney so that accurate legal advice can be offered. To extend the unavailability exception to the attorney client privilege would, in the words of the Ninth Circuit Court of Appeals: "either . . . destroy the privilege or render it so tenuous and uncertain that it would be little better than no privilege at all" Were this Court to allow plaintiff access to documents protected by the attorney-client privilege, it would undercut the purpose of the privilege to encourage clients to be honest with their attorney, because the communications will never be made known to others. Enabling other parties access to the information on a substantial need basis would encourage clients to be less than honest with their counsel, knowing that their words might become part of discovery at any time. The documents relating to employee statements are privileged, and need not be produced.

The Due Diligence Interrogatories

It has been communicated to this Court that the motion has been withdrawn as to Revlon, Inc., as the Due Diligence issue has been resolved **[*21]** by the parties. Thus, no judgement is needed or appropriate as to this issue.

Sanctions

Under Fed. R. Civ. P. 37(4), [HN7] if a motion is granted in part and denied in part, "the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner. I find justice would best be served by requiring each party to

pay their own costs in relation to this motion. The motion for sanctions will be denied.

ORDER

AND NOW, this 15th day of October, 1991, after careful consideration of defendant's Motion to Compel answers to interrogatories and production of documents, and plaintiffs RPR and Armour's response thereto, it is hereby ORDERED that the plaintiffs' motion is GRANTED IN PART and DENIED IN PART and that plaintiffs are ORDERED to produce to defendant:

1. Any documents responsive to request no. 3 of defendant Home's fourth set of requests for production of documents which have not already been produced.

2. All documents responsive to Section A, part 2 of defendant's memorandum in support of the motion which have not already been produced, and subject to the condition that they have been properly requested by the Home prior to the **[*22]** filing of the instant motion.

3. The termination agreement between Stuart Samuels and Rhone-Poulenc Rorer, Inc.

4. Any documents listed in the affidavit of Richard T. Collier which plaintiffs possess, or which come into plaintiffs' possession, and which have not already been produced.

IT IS FURTHER ORDERED that Defendant Home Indemnity Company hand-deliver to this United States Magistrate Judge, within three days of the filing of this Order, a copy of the Request for Production of Documents which contains a request for the management letters specified in their Memorandum in Support of the Motion to Compel at 4-5. Failure to deliver this document, which must have been filed prior to the filing of this Motion, may result in the voiding of one or more parts of this Order.

Service:  **Get by LEXSEE®**
Citation:  **1991 us dist lexis 14708**
View:  Full
Date/Time:  Monday. October 30, 2006 - 10:41 AM EST

* Signal Legend:
🚫 -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
  -  Caution: Possible negative treatment
◈ -  Positive treatment is indicated
🅐 -  Citing Refs  With Analysis Available
🅘 -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case

 LexisNexis    About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.