Service:  Get by LEXSEE®
Citation:  1991 us dist lexis 14400

*1991 U.S. Dist. LEXIS 14400, \**

AMERICAN HEALTH SYSTEMS, INC. v. LIBERTY HEALTH SYSTEM, et al.

Civil Action No. 90-3112

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1991 U.S. Dist. LEXIS 14400

July 22, 1991, Decided

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff filed an antitrust action against defendant six hospitals and others. Plaintiff filed a motion to compel answers to deposition questions for the president of one of the hospitals.

**OVERVIEW:** The hospitals and the president previously filed a motion for protective order requesting that plaintiff be prohibited from requiring the president to produce his personal income tax returns. The motion was dismissed. Thereafter, the parties entered into an agreement with regard to what documents were to be turned over, however defendants refused to abide thereby. The court found that plaintiff met its burden of establishing the relevance of the requested documents. The president's compensation from the various defendants was relevant to determine his potential bias and to examine the methods used by the hospitals to derive income of a defendant health system. In addition, defendants failed to suggest an alternative source for the requested information. The court further determined that plaintiff was entitled to attorney fees for the expense of bringing its motion to compel because defendants acted without substantial justification. Finally, the court decided to conduct a show cause hearing as to why it should not assess additional attorney fees against the defense attorney he seemed to have acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

**OUTCOME:** The court granted the motion to compel, awarded attorney fees to plaintiff for the expenses of bringing the motion to compel, directed that a hospital bear the expense of reconvening the president's deposition, and ordered a defense attorney to show cause why additional attorney fees should not be entered.

**CORE TERMS:** entities, discovery, charitable contributions, nonparty, protective order, deposition, lawsuit, relevance, business expense, health care, requesting, requested information, provide information, oral argument, income tax, burden of establishing, inherent power, discoverable, reasonable expenses, personal income tax, amount of income, sanctioned, antitrust, deponent, redacted, deficit, adequately protect, disclosure, furnishing, two-part

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Discovery > Disclosures > General Overview

*HN1* ⚖ Although public policy disfavors the disclosure of income tax returns, in appropriate circumstances courts have held tax returns discoverable.  More Like This Headnote |

*Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Disclosures > General Overview ⤶ᴬᴸᴸ

*HN2*⤊ Initially in order to disclose tax returns, the tax returns must first be found relevant. Then the need for the returns must be compelled because the information therein is not otherwise readily available. The party seeking discovery of the tax returns bears the burden of establishing relevance; the party resisting disclosure bears the burden of furnishing alternative information sources. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Discovery > Relevance ⤶ᴬᴸᴸ

*HN3*⤊ Fed. R. Civ. P. 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence. Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction. Since the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the district court's discretion. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Disclosures > Motions to Compel ⤶ᴬᴸᴸ

Civil Procedure > Discovery > Disclosures > Sanctions ⤶ᴬᴸᴸ

*HN4*⤊ Fed. R. Civ. P. 37(a)(4) requires a deponent whose conduct necessitates a motion to compel to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees. Such costs may also be imposed against an attorney who advises the deponent to engage in such conduct. However, no costs shall be imposed if the Court finds that the opposition to this motion to compel was substantially justified or that other circumstances make an award of expenses unjust. More Like This Headnote

Civil Procedure > Discovery > Disclosures > Sanctions ⤶ᴬᴸᴸ

*HN5*⤊ A party may be sanctioned for disregarding the obligations imposed upon the discovery rules without a direct violation of a court order. More Like This Headnote

Civil Procedure > Discovery > Disclosures > Sanctions ⤶ᴬᴸᴸ

*HN6*⤊ If the party opposing discovery acts unreasonably, he will pay for it. More Like This Headnote

Civil Procedure > Sanctions > General Overview ⤶ᴬᴸᴸ

*HN7*⤊ Courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process. More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > General Overview ⤶ᴬᴸᴸ

Civil Procedure > Sanctions > General Overview

*HN8* ⚹ Federal courts have the inherent power to award attorney fees against counsel personally when the court has found that the attorney acted in bad faith. Bad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court.  More Like This Headnote

**COUNSEL:**  [*1]

DAVID FREEMAN, DAVID FREEMAN, PHILADELPHIA, PENNSYLVANIA, ALLAN STEINBERG, PHILADELPHIA, PENNSYLVANIA, HENRY F. SIEDZIKOWSKI, ELLIOTT, BRAY & RILEY, PHILADELPHIA, PENNSYLVANIA, FOR PLAINTIFF.

S. GORDON ELKINS, STRADLEY, RONON, STEVENS & YOUNG, PHILADELPHIA, PENNSYLVANIA, WILLIAM G. SCARBOROUGH, STRADLEY, RONON, STEVENS & YOUNG, PHILADELPHIA, PENNSYLVANIA, MARY E. KOHART, DRINKER, BIDDLE & REATH, PHILADELPHIA, PENNSYLVANIA, EDWARD W. MULLINIX, SCHNADER, HARRISON, SEGAL & LEWIS, PHILADELPHIA, PENNSYLVANIA, BRIAN M. PETERS, POST & SCHELL, P.C., PHILADELPHIA, PENNSYLVANIA, ALAN M. LIEBERMAN, SCHNADER, HARRISON, SEGAL & LEWIS, PHILADELPHIA, PENNSYLVANIA, EDWARD C. MENGEL, JR , WHITE AND WILLIAMS, PHILADELPHIA, PENNSYLVANIA, GORDON W. GERBER, JEFFREY G. WEIL, JAN P. LEVINE, DECHERT, PRICE & RHOADS, PHILADELPHIA, PENNSYLVANIA, CHRISTOPHER W. MATTSON, LANCASTER, PENNSYLVANIA, SCOTT A. BURR, PHILADELPHIA, PENNSYLVANIA, THOMAS J. LOVELASS, BARLEY, SNYDER, COOPER & BARBER, LANCASTER, PENNSYLVANIA, FOR DEFENDANTS.

JOEL S. ROBBINS, PROSPECT PARK, PENNSYLVANIA, FOR MOVANT.

**JUDGES:** Edwin E. Naythons, United States Magistrate.

**OPINION BY:** NAYTHONS

**OPINION:** MEMORANDUM AND ORDER

This is an antitrust action filed by plaintiff **[*2]**  American Health Systems, Inc. ("AHS") against six hospitals in Delaware County, n1 Liberty Health System, and Delaware County Home Care Association.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n1 The six original hospital defendants are Crozer-Chester Medical Center, Delaware County Memorial Hospital, Mercy Catholic Medical Center, Riddle Memorial Hospital, Sacred Heart Hospital and Taylor Hospital ("Hospital Defendants"). In April 1991, Riddle Memorial Hospital was dropped from the lawsuit by agreement of the parties. See Plaintiff's Brief at 1.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff has filed a Motion to Compel Answers to Deposition Questions from Richard Thomas, President of Defendant Delaware County Memorial Hospital. For reasons explained more fully below, plaintiff's motion is Granted.

BACKGROUND

On January 9, 1991, nonparty Richard Thomas, and the Hospital Defendants filed a Motion for Protective Order requesting that plaintiff be prohibited from requiring Richard Thomas to produce his personal income tax returns for the taxable years 1986 to present. On March 19, 1991, a **[*3]** hearing was held before this Court for the purpose of oral argument on plaintiff's then-pending Motion to Compel Production of Documents and the counter-motion for a protective order. See American Health Systems, Inc. v. Liberty Health System, No. 90-3112, Order (E.D. Pa. March 6, 1991). At the hearing, after plaintiff's counsel described the specific subject-matter and purpose of the discovery he was seeking, defendant's counsel had no objection, and it appeared to the Court that the parties had resolved the then-pending issue involving the production of Mr. Thomas' income tax returns without further need of the Court's intervention. On April 15, 1991, counsel for defendant represented to the Court by telephone conversation that the parties had in fact resolved the issue asserted in the Motion for Protective Order. See American Health Systems, Inc. v. Liberty Health System, No. 90-3112, Order (E.D. Pa. April 29, 1991) (a copy of which is attached to Plaintiff's Brief as "Exhibit D"). Thus, on April 29, 1991, the Motion for Protective Order was dismissed as moot. Id.

On June 6, 1991, plaintiff's counsel deposed Mr. Thomas. At Mr. Thomas' deposition, plaintiff's counsel **[*4]** inquired as to the amount of income recieved by Mr. Thomas from certain sources, and counsel for defendant objected on the ground that the Court "has already ruled . . . that that is not an issue to be discovered." See N.T. 6/6/91, at 17-19 (a copy of which is attached to Defendant's Brief as "Exhibit B").

On June 24, 1991, plaintiff filed the present Motion to Compel Answers to Deposition Questions. Specifically, plaintiff requests that this Court order that Richard Thomas and Defendant Delaware County Memorial Hospital (1) respond to plaintiff's deposition questions regarding the amount of income Mr. Thomas receives from any defendant or their affiliates; and, (2) abide by the terms of the Agreement between the parties made at oral argument before the Court on March 19, 1991. Plaintiff also requests reasonable expenses, including attorneys' fees and costs incurred in preparing, researching, and presenting the present motion.

In response to plaintiff's motion, Defendant Delaware County Memorial Hospital argues that (1) the Hospital Defendants and Mr. Thomas never agreed to provide information concerning the specific amounts of compensation; and, (2) the amount of income Mr. **[*5]** Thomas received from the various defendants is not relevant. Respondent also argues that plaintiff should be sanctioned for filing a frivolous and harassing motion.

I. THE AGREEMENT AT THE MARCH 19, 1991 HEARING

One of the issues at the hearing held on March 19, 1991 was whether the Court should compel the production of the personal income tax returns of Richard Thomas. n2 However, at the hearing plaintiff's counsel explained to the Court that he did not seek to compel the entire tax returns of Mr. Thomas. Plaintiff's counsel stated that he was specifically only "looking for income from the entities that are involved in this suit." N.T. 3/19/91, at 44-45 (a copy of which is attached to Plaintiff's Brief as "Exhibit B").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Richard Thomas is the President of Defendant Delaware County Memorial Hospital and a member of the Board of Crozer-Keystone Health Systems. See Defendant's Response at para. 2. Mr. Thomas is also the Chairman of the Board of defendant Liberty Health System. Id. at para. 2.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

With respect [*6] to the agreement at the March 19, 1991 hearing, respondent argues that the Hospital Defendants and Mr. Thomas never agreed to provide information concerning the specific amounts of compensation. See Defendant's Brief at 4. Specifically, defendant states:

The transcript of the Oral Argument on this Motion shows only that plaintiff's counsel sought the income from any of the nonparty employees and/or officers received from any of the entities involved in the lawsuit, business expense deductions involving any of the entities involved in the lawsuit and charitable contributions involving either United Way of Delaware County or health care institutions. Defendant's counsel, whether clear from the record or not, only agreed to provide information from the nonparty officers and/or employees tax returns that showed (1) charitable contributions involving either United Way of Delaware County or Liberty Health System or (2) evidence that said nonparties received any income from United Way of Delaware County or Liberty Health System.

Defendant's Response at para. 5 (emphasis in original). Defendant further argues that "plaintiff has always been seeking the sources of these nonparties' [*7] income and now is also seeking the amount of the income." See Defendant's Response at para. 6.

At the March 19th hearing, the following exchange occurred:

THE COURT: Well why do you need the personal income tax returns?

MR. SIEDZIKOWSKI [Plaintiff's Counsel]: Your Honor, I think we're looking for, and I again have offered with other counsel, to limit this to -- what I'm concerned about is any income . .
`

THE COURT: From?

MR. SIEDZIKOWSKI: . . . from these -- the entities that are defendants in this. And part of limiting that is [sic] it appears now as we're getting into discovery, Liberty Health System is actually the related group of three or four corporations.

MR. SIEDZIKOWSKI: There's three -- there's three items that I wanted from the tax returns. Not the entire tax returns. I don't care about these people's financial affairs.

THE COURT: Right.

MR. SIEDzIKOWSKI: I was looking for income from the entities that are involved in this suit. I was looking for business expense deductions . . .

THE COURT: Right.

MR. SIEDZIKOWSKI: . . . from -- involving any of the entities involved in this suit. And I was looking for charitable contributions involving [*8] either United Way in Delaware County or health care institutions. Because there is a key issue that is referenced in the complaint that these people are really using United Way and charitable contributions to in fact fund the deficit created by providing below costs services to the hospital. Those are the three items from the returns. I don't need to see the returns in total. If there's a redacted version of the returns or 1099's or W-2's that could give me that information, I would take that as an alternative. I would take an in camera inspection by the Court to determine if there is any of that information. You know, I'm looking for certain limited pieces of information to establish my conspiracy trail in depositions, documentary evidence of it. I'm not trying a fishing expedition into these individual's personal lives.

THE COURT: Any objections to those items only?

MR. PETERS [Defendant's Counsel]: No. If plaintiff's attorney would like me to review that and redact it, I'll be happy to.

MR. SIEDZIKOWSKI: I would accept that, Your Honor.

N.T. 3/19/91, at 44-45 (emphasis added) (a copy of which is attached to plaintiff's Brief as "Exhibit A").

The Court views the agreement [*9] at the March 19th hearing to be clear and unambiguous. At the hearing, plaintiff's counsel made clear that he was requesting the "income from the entities that are involved in this suit." See id. at 44-45 (emphasis added). There is no evidence in the transcript of the hearing that indicates that plaintiff's counsel was requesting or was willing to agree to accept merely the sources of income by the entities involved in this lawsuit. Specifically, counsel for plaintiff stated that he "was looking for charitable contributions involving either United Way in Delaware County or health care institutions." Id. at 45. As counsel explained, this discovery is relevant "because there is a key issue that is referenced in the complaint that these people are really using United Way and charitable contributions to in fact fund the deficit created by providing below costs [sic] services to the hospital." Id. at 45 (emphasis added). Counsel further stated: "I don't need to see the returns in total. If there's a redacted version of the returns or 1099's or W-2's that would give me that information, I would take that as an alternative." Id. at 45. Thus, counsel was clearly requesting [*10] specific information on the income from these institutions. When defendant's counsel was asked if he had any objections to the specific items requested by plaintiff's counsel, defendant's counsel replied negatively. Id. at 45.

Defendant's counsel agrees that plaintiff's attorney "sought the income from any of the nonparty employees and/or officers received from any of the entities involved in the lawsuit, business expense deductions involving any of the entities involved in the lawsuit and charitable contributions involving either United Way of Delaware County or health care institutions." Defendant's Response at para. 5. However, shockingly, despite the fact that defendant's counsel was aware of what plaintiff's counsel was seeking at the hearing, defendants counsel now argues that, "whether clear from the record or not, [defendant's counsel] only agreed to provide information from the nonparty officers and/or employees tax returns that showed (1) charitable contributions involving either United Way of Delaware County or Liberty Health System or (2) evidence that said nonparties received any income from United Way of Delaware County or Liberty Health System." Defendant's [*11] Response at para. 5.

Defendant's counsel has completely mischaracterized the agreement of the parties made before this Court at the March 19, 1991 hearing, and there is absolutely no evidence in the record of the hearing indicating that the agreement between the parties was in fact as defendant's counsel describes it. plaintiff's counsel agreed to accept and defendant's counsel had no objection at the hearing to producing "a redacted version of the [tax] returns . . . that would give [him the] information" he was requesting, which was "the income from the entities that are involved in this suit." This was especially made clear when plaintiff's counsel explained the purpose of the discovery he sought. n3 Moreover, defendant's counsel admits that plaintiff's counsel was indeed seeking the income and not merely the source of the income or merely "evidence that said nonparties received any income" from the sources in question. See Defendant's Response at 5 (emphasis added).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Plaintiff sought the discovery in question for the purpose of showing that "United Way and charitable contributions [were being used] to in fact fund the deficit created by providing below costs services to the hospital." See N.T. 3/19/91, at 45. Obviously, providing merely sources of income and not the amounts of income would not significantly further plaintiff's counsel's stated purpose.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*12]
II. THE ISSUE OF RELEVANCY

With respect to the relevancy of the information sought by plaintiff, the Court finds that pursuant to Rule 26 of the Federal Rules of Civil Procedure, the requested information is relevant.

HN1✳Although public policy disfavors the disclosure of income tax returns, see DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982), in appropriate circumstances courts have held tax returns discoverable. See id.; Kravitz v. Jewelry Basics, Inc., No. 89-2657, slip op. (E.D. Pa. April 12, 1990) (tax returns relevant to computation of alleged damages and thus discoverable); Poulos v. NAAS Foods, Inc., 132 F.R.D. 513, 521-22 (E.D. Wis. 1990).

In First Fidelity Bank, N.A. v. Nissenbaum, No. 89-2248, slip op. (E.D. Pa., filed March 28, 1991), the Honorable Franklin S. Van Antwerpen, United States District Court Judge, was faced with a similar issue as in the present case. In First Fidelity Bank, plaintiff requested documents and deposition answers relating to defendants' tax returns, and Judge Van Antwerpen granted plaintiff's Motion to Compel Answers to Discovery and Production of Documents. Id. at 2, 5.

The [*13] Court in First Fidelity Bank adopted the two-part approach to balancing the factors outlined in United States v. Bonanno Organized Crime Family, 119 F.R.D. 625, 627 (E.D. N.Y. 1988). HN2✳Initially, the tax returns must first be found relevant. First Fidelity Bank, supra at 4. Then the need for the returns must be compelled because the information therein is not otherwise readily available. Id. at 4 (citing Bonanno, supra) The party seeking discovery of the tax returns bears the burden of establishing relevance; the party resisting disclosure bears the burden of furnishing alternative information sources. First Fidelity Bank, supra at 4; Kravitz, supra at 2 (citing Bonanno, supra at 627).

HN3✳Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). [*14] Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction. Buffington v. Gillette Co., 101 F.R.D. 400 (W.D. Okla. 1980); see also Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, at 124 (M.D. N.C. 1989). Since the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, see Mallinckrodt Chem. Works v. Goldman, Sachs & Co., 58 F.R.D. 348 (S.D. N.Y. 1973), the determination of relevance is within the district court's discretion. O'Neal v. Riceland Foods, 684 F.2d 577 (8th Cir. 1982); Stewart v. Winter, 669 F.2d 328 (5th Cir. 1982); Bowman v. General Motors Corp., 64 F.R.D. 62 (E.D. Pa. 1974).

Defendant's counsel relies on a letter written to plaintiff's counsel on May 3, 1991 allegedly confirming the Agreement reached before me on March 19, 1991. See Letter from Brian M. Peters, Esquire, defendant's counsel, to Henry F. Siedzikowski, **[*15]** Esquire, plaintiff's counsel (dated May 3, 1991) (a copy of which is attached to Defendant's Brief as "Exhibit D"). In that letter counsel attempted to materially alter the Agreement reached in open court by omitting from the letter "the income from the entities that are involved in this suit," as well as "business expense deductions" spelled out by plaintiff's counsel. See N.T. 3/19/91, at 44-45. Plaintiff's counsel in that letter stated:

We further agreed that we would review these income tax documents and determine whether there was any evidence in the same that the deponents had made any contribution to Liberty Health System or the United Way or had received any income from these entities.

Letter from Brian M. Peters, Esquire to Henry F. Siedzikowski, Esquire (dated May 3, 1991).

Counsel's attempt to limit the Agreement to any contributions to Liberty Health System or United Way violates the Court Agreement because all of the defendants in the suit are part of Liberty Health System, the Agreement applied to all defendants, and the letter could not change the Agreement.

Moreover, plaintiff has never sought Mr. Thomas' compensation or income from anywhere except **[*16]** the defendant entities and is willing to comply with any Protective Order to keep such information confidential except for use in this litigation.

In the present case, plaintiff has met its burden of establishing the relevance of the requested information. The Court finds that the amount of compensation Mr. Thomas receives from the various defendants in this lawsuit is relevant to (1) determine Mr. Thomas' potential bias, and (2) to examine the methods the defendant hospitals used to derive income from Liberty Health System. The requested discovery is relevant to plaintiff's allegations that the Defendant Hospitals conspired with each other to form defendant Liberty Health System, and further, that the goal of this conspiracy was to generate income for the hospitals. See TWA v. Hughes, 332 F.2d 602, 615 (2d Cir. 1964) (antitrust action where court found income tax information unquestionably relevant); DeMasi, 669 F. 2d at 116 (civil antitrust action where district court ordered production of gross incomes of 97 nonparty physicians and 10 individual defendant physicians).

Since the plaintiff has met its burden of establishing the relevance of **[*17]** the requested information, the respondents have the burden of furnishing alternative information sources. Kravitz, supra at 2 (citing Bonanno, supra at 627); see First Fidelity Bank, supra at 4. In the present case, however, the defendant has not suggested an alternative source for the requested information. Thus, after applying the two-part approach used in Bonanno, the Court finds that the information sought by plaintiff regarding Mr. Thomas' income is discoverable. Furthermore, plaintiff's counsel shall submit to the Court a proposed protective order that will adequately protect the witnesses' legitimate privacy interests in this information.

III. THE ISSUE OF SANCTIONS

The final issue before this Court is whether defendant, Delaware County Memorial Hospital, and its counsel, Brian M. Peters, Esquire, should be required to pay the expenses incurred by plaintiff in connection with the preparation of this motion. In general, *HN4* Rule 37(a)(4) requires a deponent whose conduct necessitates a motion to compel to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees. Such costs may also be imposed against **[*18]** an attorney who advises the deponent to engage in such conduct. However, no costs shall be imposed if the Court finds that the opposition to this motion to compel was substantially justified or that other circumstances make an award

of expenses unjust.

In the instant case, this Court finds that the defendant and its counsel, Mr. Peters, acted without substantial justification. This Court believes defendant and its counsel abused the discovery process by forcing a discovery dispute to court when no genuine dispute exists. Such abuse is a great waste of judicial time, energy and expense. Such conduct must be deterred and sanctioned. However, the overriding rationale for this Court's imposition of expenses is to reimburse the moving party, consequently, this Court orders defendant and its counsel to pay plaintiff's reasonable expenses incurred in obtaining this order, including attorney fees. [HN5] A party may be sanctioned for disregarding the obligations imposed upon the discovery rules without a direct violation of a court order. Guidry v. Continental Oil Company, 640 F 2d 523, 533 (5th Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed 2d 87 (1981). [*19] If necessary, this Court will conduct a hearing to determine the amount of the award at a later date.

It cannot go unmentioned that this is not the first occasion that this Court has been obliged, very reluctantly, to impose sanctions upon Attorney Peters. In a Memorandum and Order of January 15, 1991, which was affirmed by Judge James McGirr Kelly, on March 3, 1991, I found and held that Attorney Peters together with his client Taylor Hospital, never "intended in good faith to attend" the scheduled deposition. "Notwithstanding counsel's statements that he had earlier agreed that the deposition of his client as well as all of the other hospital depositions had been canceled for the 14th, these words are clearly belied by his own conduct". American Health Systems v. Liberty Health System, No. 90-3112, slip op. at 5 (E.D. Pa. Jan. 15, 1991) (emphasis added).

Once again, counsel has resorted to similar measures in mischaracterizing an agreement that he made in open court attempting to construct language clearly beneficial to himself and to his client while completely ignoring n4 a stipulation made in the presence of this United States Magistrate Judge. Counsel for Delaware County [*20] apparently does not understand that if a party is forced to make a motion under Rule 37(a)(4) for an order compelling discovery, and I find that opposition to the motion was not substantially justified, I will award costs. Put another way, [HN6] if the party opposing discovery acts unreasonably, as attorney Peters has acted, he will pay for it.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 In the January 15, 1991 Memorandum this Court stated that counsel for defendant "violated Rule 37 in refusing to appear with his client, and at the same time filing a motion for a protective order without informing plaintiff's counsel that this was his ultimate objective." American Health Systems v. Liberty Health System, No. 90-3112, slip op. at 6 (E.D. Pa. Jan. 15, 1991).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In addition to the Rule 37(a)(4) sanctions, I shall also conduct a hearing for Attorney Peters to show cause why the Court should not assess additional attorney fees under Federal Rule of Civil Procedure 11 and the Court's "inherent power" to sanction an attorney who acts "in bad faith, [*21] vexatiously, wantonly, or for oppressive reasons." Hamer v. Lake County, 819 F.2d 1362, 1370 (7th Cir. 1987) (quoting F D. Rich Co v. United States, 417 U.S. 116, 129 (1974) (other citations omitted)); see also Textor v. Bd. of Regents of N. Ill. Univ., 711 F.2d 1387 (7th Cir. 1983) ("[The] power to punish counsel who willfully abused judicial processes [was] recently recognized as inherent in a court's power to protect the orderly administration of justice") (citing Roadway Express Inc. v. Piper, 447 U.S. 752, at 766 (1980)). It is well-

established that [HN7]courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process. See Chambers v. NASCO Inc., 111 S.Ct. 2123 (1991) (where the United States Supreme Court held that the district court properly invoked its inherent power in assessing as a sanction for Chambers' bad faith conduct, the attorney fees and related expenses paid by NASCO).

The Court in Roadway as well as Chambers held that apart from 28 U.S.C. § 1927, [HN8]federal courts [*22] have the inherent power to award attorney fees against counsel personally when the court has found that the attorney acted in bad faith. "Bad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." Hackman v. Valley Fair, 932 F.2d 239 (3d Cir. 1991) (addressing the issue of Section 1927 sanctions).

The Court in Roadway Express did not uphold the trial court's award of attorney fees because the trial court did not make a specific finding that counsel's conduct "constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." Roadway, 447 U.S. at 767. Since this United States Magistrate Judge has not made a finding as to whether Attorney Peters acted in bad faith, I will conduct an evidentiary hearing and order Mr. Peters to show cause why additional attorney fees should not be imposed as a sanction for any of the above-discussed reasons.

An appropriate Order is hereby entered.

ORDER

AND NOW, this 22nd day of [*23] July, 1991, it is hereby ORDERED that:

(1) The plaintiff's Motion to Compel Answers to Deposition Questions from Richard Thomas, President of defendant Delaware County Memorial Hospital, is GRANTED.

(2) Richard Thomas and Defendant Delaware County Memorial Hospital shall abide by the terms of the Agreement between the parties made at oral argument before this U.S.M. Judge on March 19, 1991 regarding the income from the entities involved in this suit, business expense deductons and charitable contributions involving either United Way in Delaware County or health care institutions.

(3) plaintiff's counsel shall submit to the Court within ten (10) days a proposed Protective Order that will adequately protect the witnesses' legitimate privacy interests in the information ordered.

(4) An award in favor of plaintiff of the expenses in bringing the Motion to Compel including attorney fees is ORDERED. In addition, joint and several liability for such expenses is hereby imposed on defendant and its counsel. Plaintiff shall provide a verified and itemized statement of such expenses within seven (7) days and a notice to defendant and its counsel.

(5) Delaware County Memorial Hospital and its [*24] counsel are to bear the expense of reconvening Richard Thomas' deposition.

(6) Attorney Peters is hereby ORDERED to show cause why additional attorney fees should not be entered under the Court's inherent powers and for this purpose a hearing is hereby set for AUGUST 12, 1991, at 10:30 A.M., in Courtroom 2, Fourth N; Floor, U. S. Courthouse, 601 Market Street, Philadelphia, PA. 19106.

Service: **Get by LEXSEE®**
Citation: **1991 us dist lexis 14400**
View: Full
Date/Time: Monday, October 30, 2006 - 10:42 AM EST

\* Signal Legend:
🐡 - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Service: **Get by LEXSEE®**
Citation: **2006 us dist lexis 1308**

*2006 U.S. Dist. LEXIS 1308, \**

Mitchell-Tracey v. United General Title Insurance Co., et al.

View the Full Docket from LexisNexis CourtLink for 1:05cv1428
Civil No. AMD-05-1428

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

2006 U.S. Dist. LEXIS 1308

January 9, 2006, Decided
January 9, 2006, Filed

### CASE SUMMARY

**PROCEDURAL POSTURE:** Before the magistrate, defendants moved to compel discovery and asked the court to compel plaintiffs to produce documents responsive to a specific discovery request. The request sought the production of all documents concerning the named plaintiffs' fee agreements or retainer agreements with class counsel. Discovery was ongoing solely as to the issue of the maintainability of the case as a class action.

**OVERVIEW:** Defendants said that the fee agreement might have contained a provision whereby the named plaintiffs received an incentive payment, or that the fee agreement might give the class attorney authority to settle the case, or the fee agreement might have addressed when counsel for plaintiff became involved in the case and whether any other counsel were involved. Defendants' arguments were plainly insufficient. The requisite relevance was not demonstrated. Defendants' arguments were bereft of any supporting authority (and any basis in fact) and did suggest a fishing expedition that the court would not endorse. Any settlement or award of attorneys fees was subject to the approval of the court, so that defense concerns would get a hearing. Moreover, defendants did not demonstrate as a matter of law that their argued concerns would be sufficient to disqualify the named plaintiffs or class counsel. The weight of the case law held that fee arrangements were irrelevant at the instant stage of the proceeding, except in certain instances. Instead, the appropriate time for inquiry into fee arrangements was after judgment under Fed. R. Civ. P. 69.

**OUTCOME:** Defendants' motion to compel discovery was denied by the magistrate.

**CORE TERMS:** discovery, incentive payment, settlement, adequacy, fee agreement, privileged, class certification, class action, case law, relevancy, finance, typicality, relevance

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Discovery > Relevance 👣

[HN1] ⚖ Fed. R. Civ. P. 26 permits discovery of any non-privileged matter relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). The burden is on the party resisting discovery to clarify and explain precisely why the documents sought are not relevant. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation

Civil Procedure > Class Actions > Prerequisites > Typicality

*HN2* When determining whether a named plaintiff is typical, the proper inquiry is whether the conduct alleged is typical to all plaintiffs, not whether the parties have a common interest in pursuing the lawsuit. Moreover, representation is considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. More Like This Headnote

**COUNSEL: [*1]** For Patricia Mitchell-Tracey, Plaintiff: Richard S Gordon, Kieron F Quinn, Quinn Gordon and Wolf Chtd, Towson, MD; Philip Omer Foard, Foard Gisriel OBrien and Ward LLC, Towson, MD; Philip Scott Friedman, Friedman Law Offices PLLC, Washington, DC.

For Milton D. Brown, Francine C. Byrd-Brown, Helen Klatsky, Plaintiffs: Richard S Gordon, Quinn Gordon and Wolf Chtd, Towson, MD.

For United General Title Insurance Co., First American Title Insurance Co., Defendants: Ira L Oring, Fedder and Garten PA, Baltimore, MD; Charles A Newman, Christopher D Baucom, Douglas Willard King, Stephen D Feldman, Bryan Cave LLP, St Louis, MO.

**JUDGES:** Susan K. Gauvey, United States Magistrate Judge.

**OPINION BY:** Susan K. Gauvey

**OPINION:** Presently pending before the Court is defendants' motion to compel discovery. (Paper No. 55). The issue is fully briefed. n1 A hearing was held on January 5, 2006.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendants filed the motion to compel on December 14, 2005. (Paper No. 51). Plaintiffs responded on January 3, 2006. (Paper No. 53). Defendants filed their reply on January 5, 2006. (Paper No. 54).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*2]**

Defendants ask the Court to compel plaintiffs to produce documents responsive to Request No. 12. Request No. 12 seeks the production of all documents concerning the named plaintiffs' fee agreements or retainer agreements with class counsel. Plaintiffs respond that the documents requested are privileged and irrelevant. They contend the dispute has been manufactured "only to harass the named Plaintiffs and their counsel." (Paper No. 53 at 9).

Discovery is currently ongoing solely as to the issue of the maintainability of the case as a class action. Doctor v. Seaboard Coast Line Railroad Co., 540 F.2d 699, 707 (4th Cir. 1976). *HN1* Rule 26 of the Federal Rules of Civil Procedure permits discovery of any non-privileged matter relevant to the claim or defense of any party. FED. R. CIV. P. 26(b)(1). In determining whether discovery is appropriate on this issue, courts should consider "whether he is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23." Doctor v. Seaboard Coast Line Railroad Co., 540 F.2d 699, 707 (4th Cir. 1976). The burden is **[*3]** on the party resisting discovery to clarify and explain precisely why the documents sought are not relevant. United Oil Co., Inc. v. Parts Associates, Inc., 227 F.R.D. 404, 411 (D. Md. 2005).

Several courts have held that fee arrangements are irrelevant to class certification. See Sanderson v. Winner, 507 F.2d 477, 479-80 (10th Cir. 1974); Stahler v. Jamesway Corp., 85 F.R.D. 85, 86 (E.D. Pa. 1979) (inquiry into the manner in which plaintiff intends to compute the fees due to her has no relevancy to the issue of adequacy of representation); In re McDonnell Douglas Corp. Securities Litigation, 92 F.R.D. 761, 763 (E.D. Mo. 1981); In re Nissan Motor Corp. Antitrust Litigation, 1975 WL 166141, *2 (S.D. Fla. 1975). See also 7 A. Conte and H. Newberg, Newberg on Class Actions, § 22:79 (4th ed. 2005) ("Defendants often request discovery regarding fee arrangements between the plaintiffs and their counsel, but courts usually find such discovery to be irrelevant to the issue of certification."). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Review of the case law indicates these courts have treated billing agreements like tax returns, in that both documents are somewhat sensitive and are only circumstantially relevant. See Terwilliger v. York Intern Corp., 176 F.R.D. 214, 216-7 (W.D. Va. 1997)(tax returns are not discoverable unless they are relevant to the subject matter in dispute and the defendants have a compelling need for the information). Thus, courts will carefully scrutinize the asserted rationale for obtaining the records before ordering its disclosure.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*4]**

Other courts have permitted the discovery of fee arrangements as evidence of the ability of class counsel and plaintiff to maintain the class action and pay all associated costs. See Porter v. Nationscredit Consumer Discount Co., 2004 U.S. Dist. LEXIS 13641, 2004 WL 1753255 (E.D. Pa. 2004) ("Fee agreements may be relevant to a plaintiff's ability to protect the interests of potential class members by adequately funding the suit and to the question of awarding attorney's fees upon settlement or judgment."); Epstein v. American Reserve Corp., 1985 U.S. Dist. LEXIS 15842, 1985 WL 2598, *3 (N.D. Ill. 1985); Klein v. Henry S. Miller Residential Co., 82 F.R.D. 6, 8-9 (N.D. Tex. 1978). See also FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21.141 (4th ed. 2004) ("Precertification inquiry into the named parties' finances of the financial arrangements between the class representatives and their counsel are rarely appropriate, except to obtain information necessary to determine whether the parties and their counsel have the resources to represent the class adequately."). However, defendants do not dispute plaintiffs' ability to finance the action so that does not provide a ground **[\*5]** for this discovery request.

Instead, defendants claim that the information is relevant on other grounds. In their motion, defendants stated that the "contractual relationship established between the supposedly adequate representative plaintiff and class counsel is pertinent to the issue of adequacy of the plaintiffs and counsel." (Paper No. 54). At the hearing, defendants asserted the documents were relevant for several reasons: First, defendants said that the fee agreement may contain a provision whereby the named plaintiffs receive an incentive payment. However, defense counsel conceded that incentive payments are not per se illegal and that any award of an incentive payment would be subject to court approval. Nonetheless, because of this possible incentive payment, defendants allege that plaintiffs cannot establish that their claims are typical or representation adequate, as their interests will be different from plaintiffs who will not receive the incentive payment. Two of the named plaintiffs testified at their deposition that such an arrangement does not exist. Counsel for plaintiffs assured the Court that identical agreements exist between counsel and all named plaintiffs. **[\*6]** Second, the defendants said that the fee agreement may give the class attorney authority to settle the case -- demonstrating the named plaintiffs' abdication of their responsibility to the class. Defendants conceded that any settlement is subject to Court approval. In addition, defendants did not have any basis to believe that such arrangement existed. Third, the

defendants said that the fee agreement may address when counsel for the plaintiff became involved in the case and whether any other counsel were involved -- apparently to explore possible ethical lapses due to fee sharing. However, discovery has already demonstrated that the named plaintiffs' first contact was with Mr. Gordon.

Critically, defendants did not cite a single case or other authority attesting to the relevance of these hypothetical aspects of fee agreements to questions of adequacy or typicality during class certification discovery. Instead, defendants stated that they have argued these positions in other cases, but could not cite to opinions adopting them. Accordingly, little weight to this can be accorded.

Defense arguments are plainly insufficient. The requisite relevance has not been demonstrated. Defendants' **[*7]** arguments are bereft of any supporting authority (and any basis in fact) and do suggest a fishing expedition that this court will not endorse. $^{HN2}$ When determining whether a named plaintiff is typical, the proper inquiry is whether the conduct alleged is typical to all plaintiffs, not whether the parties have a common interest in pursuing the lawsuit. See Talley v. ARINC, Inc., 222 F.R.D. 260, 268 (D. Md. 2004) (proper typicality inquiry is whether "a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."). Moreover, representation is considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. Id. Any settlement or award of attorneys fees is subject to the approval of the Court, so that defense concerns will get a hearing. Moreover, defendants have not demonstrated as a matter of law that their argued concerns would be sufficient to disqualify the named plaintiffs or class counsel, in any event.

While relevancy is defined broadly, the definition is not **[*8]** without limit. The weight of the case law holds that fee arrangements are irrelevant at this stage of the proceeding, except in certain instances -- none of which are at issue in this case. Instead, the appropriate time for inquiry into fee arrangements is after judgment under Rule 69 of the Federal Rules of Civil Procedure. See Sanderson v. Winner, 507 F.2d 477, 479-80 (10th Cir. 1974); In re McDonnell Douglas Corp. Securities Litigation, 92 F.R.D. 761, 763 (E.D. Mo. 1981). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Plaintiffs also object to the request as privileged. Because the documents are not relevant, the Court will not address whether the documents are privileged at this time. See Sanderson v. Winner, 507 F.2d 477, 479-80 (10th Cir. 1974).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For the foregoing reasons, the defendants' motion is DENIED.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

Susan K. Gauvey

United **[*9]** States Magistrate Judge

Service: **Get by LEXSEE®**
Citation: **2006 us dist lexis 1308**
View: Full
Date/Time: Monday, October 30, 2006 - 10:42 AM EST

 **LexisNexis**

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc  All rights
reserved.

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 2010**

*2003 U.S. Dist. LEXIS 2010, \*; 2003-1 U.S. Tax Cas. (CCH) P50,251;*
*91 A.F.T.R.2d (RIA) 880*

HERMAN CALAMARI, Plaintiff, vs. UNITED STATES OF AMERICA and ERIC W. FREEDMAN,
Defendants.

Case No. 02-X-74762

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN
DIVISION

2003 U.S. Dist. LEXIS 2010; 2003-1 U.S. Tax Cas. (CCH) P50,251; 91 A.F.T.R.2d (RIA) 880

January 23, 2003, Decided
January 23, 2003, Filed

**SUBSEQUENT HISTORY:** Affirmed by Calamari v. United States, 2004 U.S. Dist. LEXIS
6269 ( E.D. Mich., Apr. 14, 2004)

**DISPOSITION:** **[\*1]** Petition to Quash granted in part and denied in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff taxpayer filed a petition to quash an administrative
summons issued by defendant the Internal Revenue Service (IRS) pursuant to 26 U.S.C.S.
§ 7602. The motion was referred for hearing and determination by a magistrate judge
pursuant to 28 U.S.C.S. § 636(b)(1)(A). The IRS moved for summary denial of the
petition and for enforcement of the summons.

**OVERVIEW:** An IRS agent issued an administrative summons pursuant to 26 U.S.C.S. §
7602 to the taxpayer's accountant, and requested the production of certain records related
to the taxpayer. Attached to the IRS's response to the petition to quash was the sworn
declaration of the IRS agent that identified the purposes of the investigation. The court
found that through the IRS agent's affidavit, the IRS met its burden of establishing a
prima facie case for the enforcement of its subpoena. Neither the running of the statute of
limitations nor the fact that the taxpayer's 1995 tax return was previously audited could
serve to defeat the summons. Thus, the summons was issued pursuant to a legitimate
investigatory purpose. The request for copies of the taxpayer's state tax returns was
relevant to the IRS's investigation as to gift tax liability because the state return requested
income and deduction information which was also reported on the federal return. The
summons was quashed with respect to the IRS's request for the accountant's billing
records because it represented more of a fishing expedition, or at least an "idle hope" of
finding something, rather than a legitimate showing of relevance.

**OUTCOME:** The magistrate judge denied the taxpayer's motion to quash the summons
issued to his accountant as to all records in the accountant's possession, custody, or
control that were prepared or relied upon in connection with the preparation of the
taxpayer's 1995 federal, state, and local tax returns, and as to copies of the taxpayer's
state and local tax returns, and granted the motion as to the accountant's copies of all
invoices/ billings.

**CORE TERMS:** summon, relevance, accountant, billing, legitimate purpose, gift tax, custody, invoices, federal gift tax, statute of limitations, local tax, preparation, correctness, income tax liability, gift tax liability, prima facie case, state tax, inspection, federal income tax liabilities, internal revenue tax, motion to quash, income tax, tax year, investigatory, discovery, fishing expedition, records relating, books of account, probable cause, tax return

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs. 7601-7606, 7608-7613) > General Overview

*HN1* See 26 U.S.C.S. § 7602

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs. 7601-7606, 7608-7613) > General Overview

*HN2* 26 U.S.C.S. § 7602 identifies four separate investigatory purposes which would support the issuance of an administrative summons: (1) to determine the correctness of any return; (2) making a return where none was made; (3) determining a person's liability for any internal revenue tax; and (4) collecting such liability. In addition, the information sought must be relevant or material to one of those investigatory purposes. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs. 7601-7606, 7608-7613) > General Overview

*HN3* The concept of relevance, as that term is used in 26 U.S.C.S. § 7602, is extremely broad. To justify a summons under 26 U.S.C.S. § 7602, the government is not held to a standard of probable cause, nor to the relevancy standard used in deciding whether to admit evidence under Fed. R. Evid. 401. Courts have consistently held that 26 U.S.C.S. § 7602 endows the Internal Revenue Service with expansive information-gathering authority. The generally accepted standard is whether the inspection might shed light on the accuracy of the taxpayer's returns. That is not to say that the government has carte blanche discovery rights, or that it is not held to some threshold showing of relevance. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Governments > Legislation > Overbreadth

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview

*HN4* ✦ The United States Supreme Court has held that a prima facie case for enforcement of a 26 U.S.C.S. § 7602 summons is established if the government shows: (1) the investigation has a legitimate purpose; (2) the summoned materials are relevant to that investigation; (3) the information sought is not already within the Internal Revenue Service's possession; and (4) the Internal Revenue Service has followed the procedural steps outlined in 26 U.S.C.S. § 7603. Once the government makes that showing, the burden shifts to the taxpayer to show that enforcement of the summons would be an abuse of the court's process. The taxpayer can rebut the government's prima facie case by refuting one of the four factors, or by showing that the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. Furthermore, an administrative summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought. Typically, the government makes its prima facie showing through submission of an affidavit of the investigating agent who issued the summons. More Like This Headnote

Governments > Legislation > Statutes of Limitations > Pleading & Proof ⬝ᵢ

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview ⬝ᵢ

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs. 7601-7606, 7608-7613) > General Overview ⬝ᵢ

*HN5* ✦ The United States Supreme Court has clearly held that the burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined. Nor is it necessary for the government to allege or proffer facts to support a claim of fraud. In rejecting a standard which would require the government to show probable cause, the Court stated that although a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, the Court rejects such an interpretation because it might seriously hamper the Commissioner of the Internal Revenue Service in carrying out investigations he thinks warranted. More Like This Headnote

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview ⬝ᵢ

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs 7601-7606, 7608-7613) > Examination Place & Time ⬝ᵢ

*HN6* ✦ 26 U.S.C. § 7605(b), which generally limits the Internal Revenue Service to one inspection of a taxpayer's books, and which provides that no taxpayer shall be subjected to unnecessary examination or investigations, does not apply to documents which are in the possession of a third party. More Like This Headnote

Tax Law > Federal Estate & Gift Taxes > Gifts (IRC secs. 2035, 2501-2524) > General Overview ⬝ᵢ

Tax Law > Federal Income Tax Computation > Deductions for Business Expenses > Taxes Paid (IRC sec 164) ⬝ᵢ

Tax Law > Federal Taxpayer Groups > Individuals > Adjustments to Income (IRC secs. 62, 71, 215, 911) > Adjusted Gross Income (IRC sec 62) ⬝ᵢ

HN7 ± The United States Supreme Court has held that the language of 26 U.S.C.S. § 7602 reflects Congress' express intention to allow the Internal Revenue Service (IRS) to obtain items of even potential relevance, and the IRS can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. For better or worse, Congress and the United States Supreme Court have determined that the standard of relevance under 26 U.S.C.S. § 7602 is not high. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > General Overview

Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs 7601-7606, 7608-7613) > General Overview

HN8 ± For purposes of the standard of relevance under 26 U.S.C.S. § 7602, the question is whether the "might" in the articulated standard, "might throw light upon the correctness of the return," is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered. More Like This Headnote

**COUNSEL:** For HERMAN CALAMARI, plaintiff: John A. Ruemenapp, Weisman, Young, Bingham Farms, MI.

For UNITED STATES OF AMERICA, defendant: Elizabeth Lan, United States Department of Justice, Washington, DC.

**JUDGES:** HONORABLE R. STEVEN WHALEN, U.S. MAGISTRATE JUDGE. HONORABLE GERALD E. ROSEN, U.S. DISTRICT JUDGE.

**OPINION BY:** Whalen

**OPINION: OPINION AND ORDER**

This matter is before the Court on Plaintiff Herman Calamari's petition to quash an administrative summons issued by the Internal Revenue Service (IRS), and has been referred for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). The Court has reviewed Plaintiff's Petition to Quash, the United States' Motion and Brief for Summary Denial of Petition and for Enforcement of Summons, and the Plaintiff's Response. A hearing was held on January 21, 2002. For the reasons set forth below, the Petition to Quash is granted in part and denied in part.

I.

On November 12, 2002, IRS Agent George Zak issued a summons to Eric W. Freedman, an accountant, requesting the production of certain records relating to one of his clients, Plaintiff Herman Calamari. [*2] This was an administrative issued pursuant to 26 U.S.C. § 7602, and demanded the production of the following documents:

Any and all records in your possession, custody, or control that were prepared or relied upon in connection with the preparation of Herman Calamari's 1995 federal, state, and local tax returns;

Copies of all 1993, 1994, 1995, 1996, 1997, and 1998 state and local returns of Herman Calamari in your possession, custody, or control;

Copies of all invoices/ billings or similar documents in your possession, custody, or control related to services performed for Herman Calamari during the calendar years 1993, 1994, 1995, 1996, 1997, 1998, and 1999.

Attached to the government's Response to the Petition to Quash is the sworn declaration of Agent Zak, which includes the following statements:

2. I am conducting an examination to determine the correct federal gift tax liabilities of Herman Calamari for the 1993, 1995, 1996, 1997, and 1998 tax years and the federal income tax liabilities of Herman Calamari for the 1995 tax year.

11. It is relevant and necessary to the purpose of my examination to examine the records sought **[*3]** by the summons in order to properly determine the federal income tax liabilities of Herman Calamari for the 1995 tax year and federal gift tax liabilities of Herman Calamari for the 1993, 1995, 1996, 1997, and 1998 years.

Plaintiff challenges the summons on the grounds that (a) it was not issued for a legitimate purpose, (b) it does not seek material which is relevant to a legitimate purpose, and (c) it was not issued for a good-faith purpose. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In his initial Petition, Plaintiff also alleged that the summons seeks material which is already in the government's possession, and that "the IRS has not satisfied all administrative steps required by the United States Code in connection with the issuance of said Summons." These appear to be "boilerplate" allegations incorporating statutory language from § 7602, and Plaintiff is not to be faulted for crafting as inclusive a petition as possible, particularly in view of the strict time limits for filing a petition. However, following the hearing and argument of counsel, it is apparent to this Court that the government has complied with all necessary administrative steps with regard to the summons, and further, that there has been no showing that the IRS has possession of the documents it requests.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*4]**

**II.**

26 U.S.C. § 7602 states, in pertinent part:

*HN1* ⚲"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized--

"(1) To examine any books, papers, records, or other data which may be relevant
or material to such inquiry."

§ 7602 thus <sup>HN2</sup>identifies four separate investigatory purposes which would support the
issuance of an administrative summons: (1) to determine the correctness of any return, (2)
making a return where none was made, (3) determining a person's liability "for any internal
revenue tax," and (4) collecting such liability. In addition, the information sought must be
"relevant or material" to one of these investigatory purposes.

<sup>HN3</sup>The concept of relevance, as that term is used in § 7602, is extremely broad. To justify
a summons under that section, the government is not held to a standard of probable cause,
*United States v. Powell,* 379 U.S. 48, 57, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964), **[*5]** nor
to the relevancy standard used in deciding whether to admit evidence under Fed. Rule Evid.
401. *United States v. Arthur Young & Co.,* 465 U.S. 805, 814, 104 S. Ct. 1495, 79 L. Ed. 2d
826 (1984). n2 Courts have consistently held that § 7602 "endows the IRS with expansive
information-gathering authority." *United States v. Ritchie,* 15 F.3d 592, 596 (6th Cir. 1994).
The generally accepted standard is whether the inspection "might shed light on the accuracy
of the taxpayer's returns." United States v. Davey, 543 F.2d 996, 1000 (2nd Cir. 1976).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 In *Arthur Young,* the Supreme Court noted:

"The language 'may be' reflects Congress' express intention to allow the IRS to
obtain items of even *potential* relevance to an ongoing investigation, without
reference to its admissibility. The purpose of Congress is obvious: the Service can
hardly be expected to know whether such data will in fact be relevant until it is
procured and scrutinized. As a tool of discovery, the § 7602 summons is critical
to the investigative and enforcement functions of the IRS ... The Service
therefore should not be required to establish that the documents it seeks are
actually relevant in any technical evidentiary sense." *Id.* (Emphasis in original)
(internal citations omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

This is not to say that the government has *carte blanche* discovery rights, or that it is not
held to some threshold showing of relevance. *See United States v. Coopers & Lybrand,* 550
F.2d 615, 619 (10th Cir. 1977)("IRS does not, as it appears to assume on this appeal, have
carte blanche discovery"); *United States v. Matras,* 487 F.2d 1271, 1275 (8th Cir. 1973)
("The term 'relevant' connotes and encompasses more that 'convenience'"); *United States v.
Dauphin Deposit Trust Co.,* 385 F.2d 129, 131 (3rd Cir. 1967)("The Government is not
entitled to go on a fishing expedition through appellant's records").

In *United States v. Powell,* 379 U.S. at 57-58, <sup>HN4</sup>the Supreme Court held that a prima
facie case for enforcement of a § 7602 summons is established if the government shows (1)
the investigation has a legitimate purpose; (2) the summoned materials are relevant to that
investigation; (3) the information sought is not already within the IRS's possession; and (4)
the IRS has followed the procedural steps outlined in 26 U.S.C. § 7603. Once the
government makes that showing, the burden shifts to the **[*7]** taxpayer to show that

enforcement of the summons would be an abuse of the court's process. *United States v. Will,* 671 F.2d 963, 966 (6th Cir. 1982). The taxpayer can rebut the government's prima facie case by refuting one of the *Powell* factors, *Mazurek v. United States,* 271 F.3d 226, 230-31 (5th Cir. 2001), or by showing that "the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell,* 379 U.S. at 58. Furthermore, an administrative summons "will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought." *United States v. Theodore,* 479 F.2d 749, 754 (4th Cir. 1973).

Typically, the government makes its prima facie showing through submission of an affidavit of the investigating agent who issued the summons. *United States v. Will, supra,* 671 F.2d at 966. In the present case, IRS Agent George Zak has submitted a Declaration which identifies two purposes of his investigation: (1) to determine **[*8]** the federal income tax liabilities of Mr. Calamari for the 1995 tax year, and (2) to determine the correct federal gift tax liabilities of Mr. Calamari for the tax years 1993, 1995, 1996, 1997, and 1998. *See* Declaration, PP 2 and 11. I find that the government has met its burden of establishing a prima facie case for the enforcement of its subpoena under *Powell,* and that the burden of showing that it is unenforceable now falls upon the Plaintiff.

Plaintiff first argues that the IRS has failed to articulate a legitimate purpose for its investigation, particularly with regard to the 1995 income tax issues. n3 He argues that any IRS claim for Mr. Calamari's income tax liability for 1995 is barred by the statute of limitations, and that the government has failed to present any evidence of fraud which would negate the statute of limitations. n4 Plaintiff further argues that since his 1995 tax return was already audited in 1997-98, 26 U.S.C. § 7605(b) prohibits a second inspection of his books. Finally, Plaintiff contends that the IRS only expanded its investigation to include his 1995 tax liability after he hired an attorney and challenged the government's **[*9]** request for information relative to gift tax liability.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 In his initial motion to quash, obviously filed prior to Agent Zak's Declaration, Plaintiff made a general allegation that there was no legitimate purpose to any part of the IRS's investigation. In his Response to the government's brief, he argues more specifically that there is no legitimate purpose for the 1995 income tax investigation.

n4 26 U.S.C. § 6501 (a) provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." However, § 6501(c) provides an exception in the case of a false or fraudulent return.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Neither the running of the statute of limitations nor the fact that Plaintiff's 1995 tax return was previously audited can serve to defeat the summons in this case. In *Powell,* 379 U.S. at 58, <sup>HN5</sup>the Supreme Court clearly held:

> "The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing, as **[*10]** was made in this case, that the statute of limitations for ordinary deficiencies has run or that the records in question

have already been once examined."

Nor is it necessary for the government to allege or proffer facts to support a claim of fraud. In rejecting a standard which would require the government to show probable cause, *Powell* stated:

> "Although a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted." *Id.,* 379 U.S. at 53-54.

Further, § 7605(b), [HNG]which generally limits the IRS to one inspection of a taxpayer's books, and which provides that "no taxpayer shall be subjected to unnecessary examination or investigations," does not apply to documents which, as here, are in the possession of a third party. *Hinchcliff v. Clarke,* 371 F.2d 697, 700 (6th Cir. 1967), *cert. denied* 387 U.S. 941, 87 S. Ct. 2073, 18 L. Ed. 2d 1327(Mem) 18 L. Ed. 2d 1327 (1967); *United States v. Grayson County State Bank,* 656 F.2d 1070, 1076 (5th Cir. 1981) **[*11]** (noting that other circuits have "consistently found that Section 7605(b) is a limitation upon the examination of a taxpayer's books of account and does not apply to an examination of books of account of a third person").

The fact that the IRS expanded the scope of its investigation after the Plaintiff obtained counsel and challenged a summons does not, by itself, show bad faith on the part of the government, but it does merit closer scrutiny. Plaintiff has submitted a letter from Agent Zak, dated September 24, 2001, and addressed to Plaintiff's counsel. n5 That letter indicates that following a review of summonsed records from the Sumitomo Corporation, n6 pursuant to "the ongoing 1995 gift tax examination," the IRS determined that the cost basis for the sale of stock reported on Mr. Calamari's 1995 income tax return appeared to be substantially overstated. For that reason, Agent Zak stated, he had requested re-examination of Plaintiff's 1995 return, and his request was concurred in by the Area Counsel and approved by the Area Director.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 This letter is attached to Plaintiff's Response to Motion for Summary Denial of Petition to Quash Summons, filed on January 17, 2003. **[*12]**

n6 On March 26, 2001, Judge Borman dismissed Plaintiff's petition to quash the summons for these records on procedural grounds. *Calamari v. United States,* E.D. Mich. No. 00-75514.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As stated, the Plaintiff has the burden of showing an abuse of the court's process or bad faith on the part of the IRS. Agent Zak's letter of September 24, 2001, shows a valid, good-faith basis for expanding the investigation, and that the decision to do so was reviewed and

approved at two separate levels of IRS bureaucracy beyond Agent Zak. The Plaintiff has presented no other facts, other than the timing of the IRS's decision to reopen the 1995 income tax investigation, to substantiate his claim of bad faith or abuse of process. He has therefore not met his burden.

Accordingly, I find that the summons in this case was issued pursuant to a legitimate investigatory purpose, both as to Plaintiff's gift tax liabilities for the years indicated and his income tax liability for 1995.

Plaintiff next argues that the summonsed documents, in particular the state and local tax returns and the accountant's invoices or billings, **[*13]** are not relevant to the gift tax investigation. n7 He contends that his Michigan tax returns n8 cannot possibly have a nexus to a federal gift tax investigation because Michigan has no gift tax, and nothing on the Michigan form directly relates to a gift tax. However, as $^{HN7}$ the Supreme Court held in United States v. Arthur Young & Co., supra, 465 U.S. at 814, the language of § 7602 "reflects Congress' express intention to allow the IRS to obtain items of even potential relevance," and "the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized" (Emphasis in original). For better or worse, Congress and the Supreme Court have determined that the standard of relevance under § 7602 is not high. Even though there is no corresponding Michigan gift tax, the Michigan return requests income and deduction information which is also reported on the federal return. Plaintiff acknowledges that, at least in part, state income tax is based on the adjusted gross income reported in the federal return. What if there were a discrepancy between income or deductions reported on the state return and those reported federally? **[*14]** Under the Arthur Young standard, that would at least be potentially relevant to the federal gift tax investigation.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 The summons identifies three categories of documents. The first is a request for records that were prepared or relied upon in connection with the preparation of the 1995 federal, state and local returns. Plaintiff argues that these documents are not relevant because the government "has not articulated a proper purpose to examine" them. Having found that Plaintiff's 1995 income tax liability is a legitimate subject for investigation, I also find that those records are relevant to that investigation.

n8 Mr. Calamari files Michigan tax returns, but is not subject to any local income tax.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff cites United States v. Theodore, supra, in support of his argument that his state tax returns are not relevant. Theodore, however, involved an extremely far-reaching summons which the court described as "unprecedented in its breadth." Id., 479 F.2d at 754. **[*15]** The summons in Theodore requested an accountant to produce all of the returns and all of the work records relating to all of his clients over a three-year period. The court held that the language of § 7602 "only allows IRS to summon information relating to the correctness of a particular return or to a particular person and does not authorize the use of open-ended Joe Doe summonses." Id. at 755. The summons in the present case is much more limited in scope, and, consistent with Theodore's holding as to the correct standard under § 7602, particularly describes the specific returns it seeks.

Accordingly, I find that the request for copies of Plaintiff's state tax returns for the years 1993, 1994, 1995, 1996, 1997 and 1998 is relevant to the IRS's investigation as to gift tax

liability. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 According to Agent Zak's Declaration, Plaintiff's gift tax liability for 1994 is not the subject of his investigation. Nevertheless, Plaintiff's state tax return for that year--which both precedes and follows other years which are being investigated--has at least minimal potential relevance under the broad standard of *Arthur Young* and *Powell*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*16]**

Finally, Plaintiff challenges the relevance of the third category of documents sought: his accountant's billing records or invoices for the years 1993, 1994, 1995, 1996, 1997, 1998, and 1999. This presents a much closer question. A billing record reflects work which was performed by an accountant, and the amount charged to the client. Even under the relaxed standard of relevance which inheres in § 7602, that information would have an extremely attenuated nexus with the matters under investigation. The nature of the accountant's work, and the information he relied on in preparing Plaintiff's returns would appear to be covered by the first two categories of documents, which I have determined to be obtainable through the summons. Unlike those items, the accountant's billing statements or invoices were not used in the preparation of the returns. *See United States v. Coopers & Lybrands,* 550 F.2d at 619. Thus, the summons is "overbroad and disproportionate to the end sought" in relation to the billing records. *United States v. Theodore, supra,* 479 F.2d at 754

In *United States v. Matras, supra,* 487 F.2d at 1274, the Court quoted Chief Judge Lumbard in **[\*17]** *United States v. Harrington,* 388 F.2d 520, 524 (2nd Cir. 1968) as follows:

> HN8 "The question \*\*\* is \*\*\* whether the' might' in the articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered."

The government's request for the billing records in this case represents more of a fishing expedition, or at least an "idle hope" of finding something, rather than a legitimate showing of relevance. Therefore, the summons will be quashed with respect to the request for copies of invoices/ billings or similar documents in the possession or control of accountant Eric W. Freedman.

## III.

For these reasons, I DENY the Plaintiff's motion to quash the summons issued to Eric W. Freedman as to the following requested documents and records:

> Any and all records in [Eric W. Freedman's] possession, custody, or control that were prepared or relied upon in connection with the preparation of Herman Calamari's 1995 federal, state, and local tax returns;
>
> Copies of all 1993, 1994, 1995, 1996, 1997, **[\*18]** and 1998 state and local tax returns of Herman Calamari in your possession, custody, or control.

Further, I GRANT Plaintiff's motion to quash the summons issued to Eric W. Freedman as to the following requested documents and records:

> Copies of all invoices/ billings or similar documents in your possession, custody, or control related to services performed for Herman Calamari during the calendar years 1993, 1994, 1995, 1996, 1997, 1998, and 1999.

IT IS SO ORDERED.

**R. STEVEN WHALEN**

**United States Magistrate Judge**

Dated: 1/23/03

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 2010**
View: Full
Date/Time: Monday. October 30, 2006 - 10:43 AM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
  - Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs  With Analysis Available
❶ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case

 LexisNexis

About LexisNexis  | Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 26735**

*2005 U.S. Dist. LEXIS 26735, \**

The Bradbury Co., Inc., Plaintiff, v. Andre Teissier-duCros; Georgia P. Bevis; Gean Oversease, Inc.; Gean Overseas/Bossard, Inc.; and ASC Machine Tools, Inc., Defendants. Andre Teissier-duCros and Gean Overseas, Inc., Counter Plaintiffs, v. The Bradbury Co., Inc.; Strilich Technologies, Inc.; American Machine & Rollform Tech, Inc.; Marion Die & Fixture; Hayes International; and Beck Automation; David Bradbury, in his individual capacity; and Chad Bradbury, in his individual capacity, Counter Defendants

Case No. 03-1391-WEB

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

2005 U.S. Dist. LEXIS 26735

November 3, 2005, Decided

**SUBSEQUENT HISTORY:** Partial summary judgment granted by Bradbury Co. v. Teissier-DuCros, 413 F. Supp. 2d 1203, 2006 U.S. Dist. LEXIS 4376 (D. Kan., Feb. 2, 2006)

**PRIOR HISTORY:** Bradbury Co. v. Teissier-duCros, 231 F.R.D. 413, 2005 U.S. Dist. LEXIS 21004 (D. Kan., 2005)

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant filed a motion pursuant to Fed. R. Civ. P. 37 to compel production of documents requested by subpoena. Plaintiff filed a motion to quash the subpoena pursuant to Fed. R. Civ. P. 45, for a protective order pursuant to Fed. R. Civ. P. 26(c), and for attorney fees pursuant to Fed. R. Civ. P. 37(a)(4)(B).

**OVERVIEW:** Defendant asserted a right under Kan. Stat. Ann. § 60-3323 for an award of attorney fees because plaintiff allegedly made a claim of misappropriation of trade secrets in bad faith. Defendant's bad faith claim stemmed from an allegation that plaintiff was preparing for the case sub judice while also negotiating a settlement agreement in a different lawsuit. Defendant sought to compel plaintiff's counsel to disclose billing statements for a period of two months in order to show when plaintiff's counsel began preparing for the case sub judice. In denying the motion to compel and granting plaintiff's motion to quash the subpoena, the court held that the billing statements were irrelevant because they would not show that the action was frivolous or brought with no supporting evidence. In granting plaintiff's motion for a protective order, the court held that such an order was justified because the billing documents were not available on discovery. In denying plaintiff's motion for attorney fees, the court held that defendant's position was not substantially unjustified because the issue had not previously been conclusively addressed.

**OUTCOME:** The court denied defendant's motion to compel. The court granted plaintiff's motion to quash the subpoena and for a protective order, and denied plaintiff's motion for attorney fees.

**CORE TERMS:** subpoena, protective order, discovery, billing, prevailing party, motion to

quash, trade secrets, sub judice, relevance, settlement agreement, motion to compel, subject matter, undue burden, misappropriation, rules of statutory construction, statutory construction, supporting evidence, documents requested, fundamental rule, pending action, irrelevance, persuasive, frivolous, preparing, lawsuit, burden imposed, time period, particularity, disclosure, non-party

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Discovery > Relevance

Civil Procedure > Pretrial Matters > Subpoenas

*HN1* Irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Fed. R. Civ. P. 45. Fed. R. Civ. P. 45(c)(3). However, courts have incorporated relevance as a factor when determining motions to quash a subpoena. The standard of relevance for materials requested under subpoena is the same as it is under the general discovery provisions in Fed. R. Civ. P. 26 (b). More Like This Headnote

Civil Procedure > Discovery > Relevance

*HN2* The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which states in part that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The key phrase in the definition, "relevant to the subject matter involved in the pending action," has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in this case. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action. More Like This Headnote

Antitrust & Trade Law > Intellectual Property > Bad Faith, Fraud & Nonuse > Bad Faith

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Bad Faith Awards

*HN3* See Kan. Stat. Ann. § 60-3323.

Governments > Legislation > Interpretation

*HN4* It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. More Like This Headnote

Governments > Legislation > Interpretation

*HN5* When the Kansas Legislature adopts a statute from a uniform law, it carries with it the construction placed on that statute by the drafters, except when contrary to the Kansas Constitution or public policy. More Like This Headnote

Governments > Legislation > Interpretation

*HN6* It is a fundamental rule of statutory construction that all parts of a statute must be read together. More Like This Headnote

Antitrust & Trade Law > Intellectual Property > Bad Faith, Fraud & Nonuse > Bad Faith 🔍

*HN7* 🔆 Kansas courts would define bad faith in the Kansas Uniform Trade Secrets Act as a frivolous action or one brought with no supporting evidence. More Like This Headnote

Civil Procedure > Pretrial Matters > Subpoenas 🔍

*HN8* 🔆 See Fed. R. Civ. P. 45(c)(3)(A)(iv).

Civil Procedure > Discovery > Motions to Compel 🔍

*HN9* 🔆 See Fed. R. Civ. P. 37(a)(4)(B).

Civil Procedure > Discovery > Protective Orders 🔍

*HN10* 🔆 It is within the sound discretion of the court to enter a protective order. A party is entitled to request a protective order to preclude any inquiry into areas that are clearly outside the scope of appropriate discovery. More Like This Headnote

**COUNSEL:** **[*1]** For Bradbury Company Inc, The, Plaintiff: J. Michael Kennalley, Martin & Churchill Chartered, Wichita, KS.

For Andre Teissier-duCros, Defendant: Pro se, Decatur, GA.

For Georgia P Bevis, Defendant: Pro se, Decatur, GA.

For Gean Overseas, Inc, Defendant: Pro se, Decatur, GA.

For Gean Overseas/Bossard, Inc, Defendant: Pro se, Decatur, GA.

For ASC Machine Tools, Inc, Defendant: Christian R. Cox, Robert Allen Dunn, Dunn & Black, Spokane, WA; Kenneth G. Gale, Monte A. Vines, Adams & Jones, Chartered, Wichita, KS;

For Gean Overseas, Inc, Counter Claimant: Pro se, Decatur, GA.

For Andre Teissier-duCros, Counter Claimant: Pro se, Decatur, GA.

For Bradbury Group, David Bradbury, Chad Bradbury, Bradbury Company Inc, The, American Machine & Rollform Tech Inc, Marion Die & Fixture, Hayes International, Beck Automation, Counter Defendants: J. Michael Kennalley, Martin & Churchill Chartered, Wichita, KS.

For J Michael Kennalley, Movant: J. Michael Kennalley, Martin & Churchill Chartered, Wichita, KS.

For Gean Overseas, Inc, Counter Claimant: Pro se, Decatur, GA.

For Chad Bradbury, David Bradbury, Bradbury Group, Counter Defendants: J. Michael **[*2]** Kennalley, Martin & Churchill Chartered, Wichita, KS.

**JUDGES:** Wesley E. Brown, U.S. Senior District Judge

**OPINION BY:** Wesley E. Brown

**OPINION:** MEMORANDUM AND ORDER

Now before the Court are Defendant ASC's motion to compel production of documents requested by subpoena and Plaintiff's motion to quash subpoena, for a protective order, and request for attorney fees. Fed. R. Civ. P. 45(c)(2)(B); Fed. R. Civ. P. 45(c)(3); Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 37(a)(4); (Doc. 226, 238).

I. BACKGROUND

ASC has asserted a right under Kan. Stat. Ann. § 60-3323 for an award of attorney fees because Bradbury Company Inc. (Bradbury) has allegedly made a claim of misappropriation of trade secrets in bad faith. ASC's bad faith claim stems from an allegation that Plaintiff was preparing for the case *sub judice* while also negotiating a settlement agreement in a different lawsuit. This settlement agreement stated that: "the parties desire to avoid future litigation insofar as is reasonably possible . . ." (Pl. Ex. **[*3]** A). ASC argues that the preparation for this lawsuit while making the above representation at the settlement agreement shows that Plaintiff brought its trade secrets claim in bad faith.

This motion seeks to compel Plaintiff's counsel Michael Kennalley (Kennalley) to disclose billing statements from September 01, 2003 to November 4, 2003. These billing statements will show when Plaintiff's counsel began preparing for the case *sub judice*. Kennalley has filed a motion to quash Defendant's subpoena and has requested a protective order on the grounds that the billing statements are: 1) not relevant; 2) protected by the attorney-client privilege; 3) protected by the work product doctrine; 5) contain confidential commercial information; and 6) were not timely requested nor were they in accordance with discovery rules. (Doc. 238, 239, 252). The Court agrees with Plaintiff that the billing statements are irrelevant; therefore, this holding will address those issues related to relevancy.

II. ANALYSIS

[HN1]⚓Irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45. Fed. R Civ. P. 45(c)(3); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. 2003). **[*4]** However, courts have incorporated relevance as a factor when determining motions to quash a subpoena. *Id*. The standard of relevance for materials requested under subpoena is the same as it is under the general discovery provisions in Rule 26(b). *Id*.

[HN2]⚓The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which states in part, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ". Fed. R. Civ. P. 26(b)(1). "The key phrase in this definition -- relevant to the subject matter involved in the pending action' -- has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in this case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 336, 341 (D. Kan. 1991); see Fed. R. Civ. P. 26(b)(1) **[*5]** .

The relevant part of the Kansas Uniform Trade Secrets Act (KUTSA) reads, [HN3]⚓"if (i) a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the prevailing party." Kan. Stat. Ann. § 60-3323. The Kansas Supreme Court has not defined bad faith as used in this act; however, federal courts in this district have denied attorney fees forbad faith when sufficient evidence supports the trade secrets claims. *Curtis 1000 v. Pierce*, 905 F. Supp. 898, 902 (D. Kan. 1995); *Andrew Corp. v. Van Doren Industries, Inc.*, No. 88-2414, 1990 U.S. Dist. LEXIS 12132, at *14 (D. Kan. July 5, 1990). Other jurisdictions that have been confronted with this issue have used bad faith in a similar

manner or have outright defined bad faith in the Uniform Trade Secrets Act (UTSA) as a frivolous claim or one brought without justification or supporting evidence. *Contract Materials Processing v. Kataleuna GmbH Catalysts, 222 F. Supp. 2d 733, 744-745 (D. Md. 2002); Exparte Waterjet Sys., Inc., 758 So. 2d 505, 509 (Ala. 1999); Gemini Aluminum Corp. v. Cal. Custom Shapes,* 95 Cal. App. 4th 1249, 1263, 116 Cal. Rptr. 2d 358 (Cal. Ct. App. 2002); **[*6]** *Tritec Assocs., Inc. v. Stiles Mach., Inc.,* 48 Va. Cir. 40, 43-44 (Va. Cir. Ct. 1999); *Russo v. Baxter Healthcare Corp.,* 51 F. Supp. 2d 70, 76 (D. R. I. 1999); *IVS Hydro, Inc. v. Robinson,* 93 Fed. Appx. 521, 528-529 (4th Cir. 2004). These cases from other jurisdictions are persuasive as the KUTSA states, "this act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this act among states enacting it". n1 Kan. Stat. Ann. § 60-3327.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Tenth Circuit interprets state laws according to state rules of statutory construction. Ward v. Utah, 398 F.3d 1239, 1248 (10th Cir. 2005). "The Kansas Supreme Court has explained that *HN4* it "is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained." *United States v. Riccardi,* 258 F. Supp. 2d 1212, 1221 (10th Cir. 2005) (quoting State ex rel. Stovall v. Meneley, 22 P.3d 124, 143, 271 Kan. 355, 378 (2001)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*7]**

Moreover, the comments in the UTSA support the narrow definition of bad faith found in the above cases. This is highly persuasive because the rules of statutory construction "provide that *HN5* when the Kansas Legislature adopts a statute from a uniform law, it carries with it the construction placed on that statute by the drafters, except when contrary to the Kansas Constitution or public policy." *Earth Scientists (Petro Services), Ltd. v. United States Fidelity,* 619 F. Supp. 1465, 1471 (D. Kan. 1985); *In re Estate of Reed,* 664 P.2d 824, 832, 233 Kan. 531, 541 (1983). The UTSA comments state that the act "allows a court to award reasonable attorney fees to a prevailing party as a deterrent to specious claims of misappropriation . . ." Unif. Trade Secrets Act § 4, 14 U.L.A. 460 (Supp. 2005).

Furthermore, a plain reading of the statute itself does not support Defendant's definition of bad faith as *HN6* it is a "fundamental rule of statutory construction that all parts of a statute must be read together." *United States v. Diaz,* 989 F.2d 391, 392 (10th Cir. 1993) (citations omitted). The statute allows for an award of "reasonable attorney fees **[*8]** *to the prevailing party"* Kan. Stat. Ann. § 60-3323 (emphasis added). Black's Law Dictionary 1145 (7th ed. 1999) defines prevailing party as "[a] party in whose favor a judgment is rendered . . . also termed successful party". According to Defendant, bad faith exists because Bradbury made representations about desiring to avoid future litigation while contemporaneously planning to sue in the case *sub judice.* This is a concept of bad faith that is quite unrelated to the merits of Plaintiff's trade secrets claim. Consequently, under Defendant's definition, it would be possible for Plaintiff to be the prevailing party on the merits yet pay attorney fees to Defendant. It is difficult to reconcile such a result with the language of the statute. *Cf. Hewitt v. Helms,* 482 U.S. 755, 760, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987) (ordinary language of civil rights statute requires that party receive some relief on the merits before he can be a prevailing party and receive attorney fees).

Given the cases from the District of Kansas and other jurisdictions, comments from the UTSA and a plain reading of the statute, the Court holds that *HN7* Kansas courts would define bad faith in **[*9]** the KUTSA as a frivolous action or one brought with no supporting evidence. Because the billing statements will not show bad faith as defined in the KUTSA, they are not

relevant.

As stated earlier, relevance is a factor when evaluating a motion to quash a subpoena that subjects a person to undue burden. *Goodyear*, 211 F.R.D. at 662; Fed. R. Civ. P. 45(c)(3)(A)(iv).

> *HN8* Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure.

*Id.* (internal quotations and citations omitted).

In this situation, the irrelevance of the materials under subpoena is the determining factor. Defendant has stated no other need for the billing statements; moreover, the breadth **[*10]** and particularity of the document request, the time period, and the burden to Kennalley are unreasonable because the billing statements are irrelevant. Additionally, Kennalley's status as a non-party in this litigation is another factor which weighs against disclosure. Consequently, the Court holds that Defendant's subpoena would subject Kennalley to an undue burden; therefore, Plaintiff's motion to quash is granted and Defendant's motion to compel is denied. Fed. R. Civ. P. 45(c)(3)(A)(iv); Fed. R. Civ. P. 45(c)(2)(B); *see Oppenheimer*, 437 U.S. at 352 (It is proper to deny discovery of matter that is relevant only to defenses that have been stricken); *see also Johnson v. W.H. Stewart Co.*, 75 F.R.D. 541, 543 (W.D. Okla. 1976) (motion to compel discovery about Defendant's net worth denied because plaintiff not legally entitled to punitive damages).

Denying a motion to compel invites consideration of Fed. R. Civ. P. 37(a)(4)(B). This rule states:

> *HN9* If the motion is denied, the court . . . shall after affording an opportunity to **[*11]** be heard, require the moving party or the attorney filing the motion or both of them to pay to the party . . . who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(B).

The Court finds that attorney fees are not warranted. The issues in the case *sub judice* had not yet been conclusively addressed in this jurisdiction; hence, a broad reading of the statute, while inconsistent with today's holding, was not substantially unjustified. Each party shall bear their own fees and expenses.

Plaintiff has also requested a protective order under Rule 26(c). Fed. R. Civ. P. 26(c). *HN10* It is within the sound discretion of the court to enter a protective order. *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995). "[A] party is entitled to request a protective order to

preclude any inquiry into areas that are clearly outside the scope of appropriate discovery."
*Caldwell v. Life Ins., Co. of N. Am.*, 165 F.R.D. 633, 637 (D. Kan. 1996) **[*12]** The Court
has already determined that the documents requested in the motion to compel are not
relevant; hence, they are not materials available on discovery and a protective order is
justified. Fed. R. Civ. P. 26(c)(1).

The Court expresses no opinion regarding ASC's motion for attorney fees under the KUTSA
based on the frivolous nature of Plaintiff's trade secret claim. (ASC Am. Answer at 7, PP 5,
6).

IT IS THEREFORE ORDERED that Defendant ASC Motion to Compel (Doc. 226) be DENIED;

IT is further ORDERED that Plaintiff Bradbury's Motion to Quash Subpoena and for a
Protective Order (Doc. 238) be GRANTED but the Motion for attorney fees (Doc. 238) be
DENIED;

SO ORDERED this 3rd day of November, 2005.

Wesley E. Brown, U.S. Senior District Judge


Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 26735**
View: Full
Date/Time: Monday, October 30, 2006 - 10:43 AM EST

* Signal Legend:
- ⊕ - Warning: Negative treatment is indicated
- [Q] - Questioned: Validity questioned by citing refs
- - Caution: Possible negative treatment
- ◈ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ❶ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.