Service: Get by LEXSEE®
Citation: 2005 bankr lexis 2374

*2005 Bankr. LEXIS 2374, \**

In re NATIONAL MEDICAL IMAGING, L.L.C., NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC, Debtor.

Chapter 11, Bankruptcy No. 05-12714DWS

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 Bankr. LEXIS 2374

October 31, 2005, Decided

### CASE SUMMARY

**PROCEDURAL POSTURE:** Putative debtors were the subject of an involuntary petition filed by two creditors. The parties engaged in contentious discovery on the issue of whether the debtors were paying their debts as they came due. The putative debtors filed a motion for a protective order and a motion to compel as to one of the creditors.

**OVERVIEW:** The putative debtors sought to prevent the creditors from gaining financial information that the putative debtors submitted to an investment banking firm. However, the debtors failed to identify any harm stemming from the production of these documents save for a premature concern that the creditors believed statements made by the firm were binding upon the debtors. In response to the motion to compel, the creditor claimed attorney-client privilege as to some of these documents. Some of these documents disclosed at least some of the creditor's subjective motivations in filing the petitions. The creditor had previously disclosed some if its motives to the debtors. Thus, the creditor waived protection under the work product doctrine. The creditor alleged that although the privilege may have been waived, several of these documents were exchanged as part of the joint prosecution of the petitions with the other creditor. Because the other creditor did not waive the privilege, the documents remained privilege. Unfortunately for the creditor, not one of these documents complied with the explicit requirements of the joint prosecution agreement.

**OUTCOME:** The bankruptcy court ordered the production of documents as noted.

**CORE TERMS:** attorney-client, motivation, subjective, waived, work product, discovery, anticipation of litigation, common interest, subject matter, involuntary, e-mail, work product doctrine, disclosure, privileged, duplicate, involuntary bankruptcy, motives, good cause, relevancy, applicability, petitioning, disclose, invoking, redacted, paying, production of documents, legal advice, in camera, memorandum, subpoena

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Discovery > Relevance

[HN1] The scope of discovery is governed by Fed. R. Civ. P. 26, which states in relevant part, that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). Relevancy is construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case. More Like This Headnote

Civil Procedure > Discovery > Protective Orders 🔍

*HN2* ⚓ A party seeking a protective order over discovery materials must demonstrate that good cause' exists for the protection of that material. Good cause is shown by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, will not satisfy the Fed. R. Civ. P. 26(c) test. While "good cause" may be satisfied by a showing that the material sought is irrelevant, the burden of showing irrelevancy is on the party resisting discovery. More Like This Headnote

Bankruptcy Law > Case Administration > Commencement > Involuntary Cases > General Overview 🔍

*HN3* ⚓ Fed. R. Bankr. P. 1013(a) requires a court to determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview 🔍

Evidence > Privileges > Attorney-Client Privilege > Elements 🔍

Evidence > Procedural Considerations > Burdens of Proof > Allocation 🔍

*HN4* ⚓ It is well-established that the attorney-client privilege constricts the truth-finding process and is therefore to be construed narrowly. The party asserting the privilege bears the burden of showing: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview 🔍

Evidence > Privileges > Attorney-Client Privilege > Scope 🔍

*HN5* ⚓ The work product doctrine is governed by Fed. R. Civ. P. 26(b)(3), and protects documents and tangible things prepared in anticipation of litigation or for trial unless the party seeking production demonstrates substantial need of the materials in the preparation of the party's case, and that they are unable without undue hardship to obtain the substantial equivalent of the materials by other means. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview 🔍

Evidence > Privileges > Attorney-Client Privilege > Scope 🔍

*HN6* ⚓ See Fed. R. Civ. P. 26(b)(3).

Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview

Evidence > Privileges > Attorney-Client Privilege > Scope

Evidence > Procedural Considerations > Burdens of Proof > Allocation

*HN7* In determining whether a document was prepared "in anticipation of litigation," the appropriate inquiry is whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. There must be a "reasonable anticipation" of litigation, i.e., not merely a remote prospect or inchoate possibility. Rather, a party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared. Moreover, the document must have been prepared for the prospect of litigation and no other purpose. If the party invoking the work product protection establishes these elements, the burden shifts to the party seeking production to show substantial need for the protected material and an inability to get the equivalent information from another source. Unlike the attorney-client privilege, the party invoking the work product doctrine does not bear the burden of proving non-waiver.  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview

Evidence > Privileges > Attorney-Client Privilege > Scope

*HN8* Even where a party seeking production of documents and things prepared in anticipation of litigation meets its burden, the court is nevertheless mandated to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. P. 26(b)(3).  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

*HN9* Voluntary disclosure to one's adversary of documents protected by the attorney-client privilege or work-product doctrine will operate as a waiver of that protection with respect to documents relating to the same subject matter as the disclosed items. This rule is one of fairness. In order to protect against self-serving disclosure, a party who discloses protected documents waives the right to assert work product or attorney-client productions for all documents dealing with the same subject matter.  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

*HN10* Documents subject to common interest privilege are also protected from the other party's waiver of the underlying attorney-client or work product protection. Protection cannot be waived without the consent of all parties to the defense.  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

*HN11* Billing records are subject to the attorney-client privilege to the extent that they

reveal the nature of the services rendered. More Like This Headnote

**COUNSEL:** **[*1]** For National Medical Imaging, L.L.C., National Medical Imaging Holding Company, LLC, Debtors: ARIS J. KARALIS, MAUREEN P. STEADY, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA.

For General Electric Capital Corporation, Petitioning Creditor: JOSHUA THOMAS KLEIN, MICHAEL G. MENKOWITZ, Fox Rothschild LLP, Philadelphia, PA.

For Universal Shielding Corporation, Petitioning Creditor: BRIAN GRADY, GRADY & FALCONE LLP, PHILADELPHIA, PA.

For DVI Receivables XIX, LLC, DVI Receivables XVIII, LLC, DVI Receivables XVII, LLC, Petitioning Creditors: JAY GOTTLIEB, JOSEPH E. FIELD, BROWN RAYSMAN MILSTEIN FELDER & STEINER, NEW YORK, NY; JOSHUA THOMAS KLEIN, Fox Rothschild LLP, Philadelphia, PA.

**JUDGES:** DIANE WEISS SIGMUND, Chief United States Bankruptcy Judge.

**OPINION BY:** DIANE WEISS SIGMUND

**OPINION:** MEMORANDUM OPINION

Before the Court is (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel"). For the reasons which follow, the motions shall be **[*2]** granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 3, 2005, GECC, *inter alios*, filed involuntary Chapter 11 petitions (the "Involuntary Petitions") against related entities National Medical Imaging, LLC and National Medical Imaging Holding Co., LLC ("NMI" and "NMIHC," respectively, and collectively "Putative Debtors") pursuant to 11 U.S.C. § 303. n1 The parties have been engaged in contentious discovery on the issue of whether the substantive requirements of § 303(b) and (h) are met with respect to the Involuntary Petitions, i.e., whether Debtors were paying their debts as they came due prior to the filing of the Involuntary Petitions and whether GECC is a proper petitioning creditor. Indeed, the motions before me are but the latest in what has become a nuclear war of discovery. At the Court's suggestion, the parties have voluntarily narrowed the scope of their respective discovery requests and objections thereto, leaving certain disputed issues which I now address.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The two cases are being jointly administered.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*3]**

**DISCUSSION**

*HN1*⚓The scope of discovery is governed by Fed.R.Civ.P. 26, n2 which states in relevant part:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Made applicable here by Fed. R. Bankr. P. 1018.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Protection Motion

Putative Debtors have filed the Protection Motion in response to subpoenas that GECC issued to Fairmount Partners ("Fairmount" and the "Fairmount Subpoenas") n3 upon its belief that Fairmount is an investment banking firm to whom Putative Debtors provided financial information.  **[*4]**  The Fairmount Subpoenas seek production of two types of documents: (1) those provided to Fairmount by Putative Debtors and (2) those generated by Fairmount itself. See Put. Debtors' Reply Mem. at 3. Putative Debtors do not allege that the current scope of the Fairmount Subpoenas exceeds the broad definition of relevancy, n4 but rather they seek to limit the scope of the Fairmount Subpoenas to only those documents prepared by Debtors and provided to Fairmount. They ask me to disallow the production of Fairmount-generated documents.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 It appears that the subpoenas GECC issued to Keystone Bank are no longer at issue. See Putative Debtors' Reply to [GECC]'s Further Response in Opposition to [Protection Motion] ("Put. Debtors' Reply Mem.") at 2 n.1 (discussing withdrawal of Putative Debtors' subsequent motion to quash as to other banking institutions).

n4 The categories of information sought by the Fairmount Subpoenas are:

   1) Schedule or other documentation provided to or generated by Fairmount Partners reflecting capital lease obligations by creditor, last payment made and status of each loan.

   2) Statement or other documentation of cash flow provided to or generated by Fairmount Partners indicating payment of capital lease obligations to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup for the period January 1, 2002 to July 5, 2005.

   3) The disclosure provided to or prepared by Fairmount Partners to be provided to investors as to the outstanding obligations owed to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup.

   4) Financial statements provided to/prepared by or used by Fairmount Partners as of December 31, 2002, 2003 and 2004 and the most current date in 2005.

   5) Schedule prepared by or given to Fairmount Partners, indicating use of proceeds of equity or sale proceeds.

6) Accounts payable records and or schedule of vendors owed funds provided to or used by Fairmount Partners and the status of NMI et al's obligations as of the most recent date.

7) Any prospectus or financial package prepared by Fairmount Partners to give to potential investors or buyers.

[GECC]'s Further Response in Opposition to Putative Debtors' Motion to Quash at 3 (Doc. No. 164) ("GECC's Further Response").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*5]**

[HN2] "A party seeking a protective order over discovery materials must demonstrate that good cause' exists for the protection of that material." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). Good cause is shown "by demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, will not satisfy the Rule 26(c) test. Id. While "good cause" may be satisfied by a showing that the material sought is irrelevant, the burden of showing irrelevancy is on the party resisting discovery. E.g. McCurdy v. Wedgewood Capital Mgt., 1998 U.S. Dist. LEXIS 20628, 1998 WL 961897, at *3 (E.D. Pa. Dec. 31, 1998).

While Putative Debtors make the unsubstantiated allegation that Fairmount-generated documents would be duplicative of documents already provided by Putative Debtors, n5 they fail to provide any specific examples as to how they would be harmed by production of Fairmount-generated documents. I note that the main concerns identified in the initial Protection Motion were the confidential nature of the documents and **[\*6]** the very broad scope of the initial Fairmount Subpoenas at that time. These concerns, however, have been obviated by the parties' agreement to treat the documents pursuant to confidentiality/protection agreement already in place as well as GECC's significant narrowing of the subject matter of the subpoenas. Putative Debtors fail to identify any harm stemming from the production of documents subject to the current Fairmount Subpoenas, save for a premature concern that GECC believes statements made by Fairmount are binding upon Putative Debtors. Put. Debtors' Reply Mem. at 6-7. Needless to say, allowing GECC access to Fairmount-generated documents is not a finding by the Court as to the admissibility or probative value of the documents. As Putative Debtors fail to meet their burden of showing an identifiable harm through the production of Fairmount-generated documents, the Protection Motion is denied in this respect.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Putative Debtors attach an index which they allege "reveals that GECC is in possession of each document requested in the Fairmount Subpoena which was created by the Putative Debtors." Put. Debtor's Reply Mem. at 4 (emphasis added). The documents at issue, however, are Fairmount-generated documents. Putative Debtors have not explained how those documents, presumably containing some kind of analysis by Fairmount, would be duplicative.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*7]**

Putative Debtors also object to the temporal scope of the Fairmount Subpoenas, which seeks financial statements and documentation of cash flow from January 1, 2002 to July 5, 2005. Putative Debtors correctly note that the relevant date of inquiry as to whether a putative debtor is "generally not paying" debts as they become due is to be applied as of date of filing of involuntary petition, e.g. Bartmann v. Maverick Tube Corp., 853 F.2d 1540, (10th Cir. 1988). GECC has failed to present any contrary argument, so I must agree that the temporal scope of the Fairmount Subpoenas is excessive and unlikely to lead to information bearing on whether Putative Debtors were generally paying their debts as of the Petition Date. I find that good cause exists for limiting Fairmount's production of documents to those produced to it by Putative Debtors or generated by Fairmount between January 1, 2004 to the Petition Date, March 3, 2005;

Motion to Compel

The Motion to Compel seeks certain documents which Putative Debtors allege pertain to GECC's subjective motives in filing the Involuntary Petitions. Putative Debtors take the position that, even assuming GECC can show that the **[*8]** substantive requirements of § 303(b) and (h) are met, improper motivations or other "bad faith" on GECC's part would provide an independent basis for dismissal of the Involuntary Petitions. There appears to be some divergent opinion on this issue. Compare In re WLB-RSK Venture, 296 B.R. 509 (Bankr. C.D. Cal. 2003) (finding that bad faith could provide basis for dismissal independent of substantive requirements of § 303); In re Alexander, 2000 WL 33951465 (Bankr. D. Vermont Aug. 29, 2000) (same) n6 with Kaplan v. Breslow (In re WLB-RSK Venture), 320 B.R. 221, 2004 WL 3119789 at *6 n. 13 (BAP 9th Cir. 2004) (unpublished table opinion affirming 296 B.R. 509 on another basis while rejecting bad faith as independent basis for dismissal); In re Knoth, 168 B.R. 311, 315 (Bankr. D.S.C. 1994) (motivations of petitioning creditors are irrelevant where the substantive requirements of § 303 are otherwise met unless the issue is whether to allow joinder of additional petitioning creditors to cure a defective petition). Neither party has attempted to reconcile the divergent opinions, n7 and I conclude that **[*9]** there may be circumstances where the subjective motivations of a petitioning creditor would warrant the dismissal of an involuntary case. I need not, however, identify the parameters at this discovery stage before any evidence that might be relevant to dismissal on these grounds can be elicited. n8 I will therefore find that GECC's subjective motivations is a relevant subject of discovery and address the remaining objections raised by GECC.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 Alexander relies upon United States Optical, Inc. v. Corning Inc. (In re U.S. Optical, Inc.), 991 F.2d 792, 1993 WL 93931 (4th Cir. 1993) (unpublished decision), which noted that the court was duty bound to conduct an inquiry, if requested, to determine whether an involuntary petition has been filed in good faith. U.S. Optical relies upon In re Winn, 49 B.R. 237 (Bankr. M.D. Fla. 1985). 991 F. 2d 792, Id. at *3. Winn involved an involuntary petition that was in fact conceived by the debtor with three creditors who acted as straw men creditors for the debtor by signing the petition. I agree that it is proper for a bankruptcy court "to inquire to what extent the debtor is involved in the institution of an involuntary case," and not to wear blinders to such clear abuses of the bankruptcy process by a debtor who cannot otherwise file its own voluntary case. 49 B.R. at 239. This collusive situation is clearly not before me and I question the reliance upon Winn by the Alexander and U.S. Optical courts. **[*10]**

n7 GECC, offered the opportunity to respond to the Motion to Compel, simply argues that the absence of a requirement of good faith in § 303(b) and (h) dictates that the defense of bad

faith is not available. To conclude otherwise, it contends is to rewrite the statute. Moreover, the availability of relief under § 303(i) for damages for a bad faith filing requires that there first be a dismissal order. As for case law authority, it correctly observes that there is no binding case law authority in the Third Circuit so I am free to ignore the cases supporting Putative Debtors' position. GECC fails to note that the dismissal of cases for bad faith is not expressly found anywhere in the statute but as the Third Circuit cases it cites evidence, dismissal for that reason has been sanctioned notwithstanding the statute's failure to identify bad faith as grounds. I agree that the availability of damages requires first that there be a dismissal order. However, that does not answer the question of whether bad faith can be a defense to an involuntary petition that otherwise meets the statutory requirements of § 303.

n8 The Court is mindful of $^{HN3}$⚡Fed. R. Bankr. P. 1013(a) which requires the court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Accord In re G.T.L. Corp., 211 B.R. 241, 247 (Bankr. N.D. Ohio 1997) (bankruptcy court has a duty to promptly adjudicate involuntary petitions); In re Kidwell, 158 B.R. 203, 212 (Bankr. E.D. Cal.1993) (noting that "time is of the essence" in determining whether there is a meritorious involuntary bankruptcy). A side trip into this issue at the request of the Putative Debtors of necessity protracts adjudication of the contested petition. Presumably they have weighed that fact and concluded that being subject to the control of the bankruptcy court does not outweigh their need to pursue this defense and not rely on GECC being unable to satisfy the statutory criteria.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*11]**

Putative Debtors have reduced the scope of the Motion to Compel to nineteen documents that have been submitted by GECC to the Court for *in camera* review (the "In Camera Submission") as Exhibits A-S (the "Disputed Documents"). GECC asserts that the Disputed Documents are protected from disclosure by the attorney-client privilege, and/or the work product doctrine. See Privilege Log attached as Exhibit A to Supplement to [Motion to Compel] ("Debtors' Supp. to Compel").

$^{HN4}$⚡It is well-established that the attorney-client privilege constricts the truth-finding process and is therefore to be construed narrowly, e.g. Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3d Cir. 1991). The party asserting the privilege bears the burden of showing (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose **[\*12]** of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. E.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994), (*citing* In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979)). See also Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC, 202 F.R.D. 418 (E.D. Pa. 2001). As noted above, part of this burden is proving that the privilege has not been waived.

$^{HN5}$⚡The work product doctrine is governed by Fed.R.Civ.P. 26(b)(3), n9 and protects documents and tangible things prepared "in anticipation of litigation or for trial" unless the party seeking production demonstrates "substantial need of the materials in the preparation of the party's case," and that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." E.g. United Coal Companies v.

Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988). **[\*13]**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Rule 26(b)(3), made applicable here by Fed.R.Bankr.P. 1018, states in relevant part:

> . . , *HN6*⚓a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN7*⚓In determining whether **[\*14]** a document was prepared "in anticipation of litigation," the appropriate inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993). There must be a "reasonable anticipation" of litigation, i.e., not merely a remote prospect or inchoate possibility. "Rather, a party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared.'" In re Gabapentin Patent Litigation, 214 F.R.D. 178, 183 (D. N.J. 2003); accord In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979); Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., 2001 U.S. Dist. LEXIS 7145, 2001 WL 605199, at \*4 (E.D. Pa. 2001). Moreover, the document must have been prepared for the prospect of litigation and no other purpose. 214 F.R.D. at 184.

If the party invoking the work product protection establishes these elements, the burden shifts to the party seeking production **[\*15]** to show substantial need for the protected material and an inability to get the equivalent information from another source. E.g. E.E.O.C. v. Guess?, Inc., 176 F.Supp. 2d 416, 423 (E.D. Pa. 2001). Unlike the attorney-client privilege, the party invoking the work product doctrine does not bear the burden of proving non-waiver. Greene, Tweed of Delaware, Inc., 202 F.R.D. at 423.

Finally, *HN8*⚓even where the party seeking production of documents and things prepared in anticipation of litigation meets its burden, the Court is nevertheless mandated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," Fed.R.Civ.P. 26(b)(3).

Putative Debtors correctly note that *HN9*⚓voluntary disclosure to one's adversary of documents protected by the attorney-client privilege or work-product doctrine will operate as a waiver of that protection with respect to documents relating to the same subject matter as the disclosed items. See Thorn Emi North America, Inc. v. Micron Technology, Inc., 837 F. Supp. 616 **[\*16]** (D. Del. 1993); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 1993 U.S.

Dist. LEXIS 5234, 1993 WL 106429, at *3 (E.D. Pa. 1993). This rule is one of fairness. "In order to protect against self-serving disclosure, a party who discloses protected documents waives the right to assert work product or attorney-client productions for all documents dealing with the same subject matter." 1993 U.S. Dist. LEXIS 5234, 1993 WL. 106429, at *3. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 However, I reject Putative Debtors' position that GECC has waived the attorney-client privilege and/or work product doctrine defense merely by virtue of filing the Involuntary Petition and therefore placing its good faith "at issue." Putative Debtors cite to Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 484 (S.D.N.Y. 1993), which simply holds that if the privilege holder puts attorney-client communication at issue by virtue of his claim or defense, that subject matter should be waived. GECC has not raised advice of counsel as a defense or a claim here. Moreover, every litigant in federal court places their good faith at issue with every document filed with the Court. See Fed.R.Civ.P. 11. The rule espoused by Putative Debtors would effectively eviscerate well-established protections.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*17]**

Putative Debtors assert that GECC has voluntary disclosed privileged documents relating to GECC's subjective motives in filing the Involuntary Petitions and has therefore waived any claim of attorney-client privilege or work product protection for the Disputed Documents on this subject matter. Exhibits 1 and 5-9 to Debtors' Supp. to Compel (the "Waiver Documents"). n11 I agree.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Exhibits 2-4 to Putative Debtors' Supp. were the subject of a protective motion filed by GECC. By Order dated August 16, 2005, I ordered that these inadvertently produced documents be returned to GECC. I therefore do not include them in determining whether GECC has waived the attorney-client privilege or the work product doctrine.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Waiver Documents are internal GECC memos/reports which were clearly prepared in anticipation of litigation, i.e., GECC's subsequent filing of the Involuntary Petitions. The Waiver Documents also disclose at least some of GECC's subjective motivations in filing the Involuntary Petitions: (1) using involuntary **[*18]** bankruptcy as a method of collecting Putative Debtors outstanding obligations to GECC; (2) a way of dealing with what GECC perceived as Putative Debtors skill at conventional litigation; (3) possible fraud by Putative Debtors which might warrant imposition of a bankruptcy trustee. Having disclosed some if its motives, GECC has waived protection under the work product doctrine as to any Disputed Documents that deal with the same subject matter.

In addition to being work product, Exhibit 1 of the Waiver Documents also appears to convey legal advice from outside counsel that is relevant to GECC's motives. Exhibit 1 at 2 (under the heading "Current Status"). Part of GECC's burden in proving the attorney-client privilege with respect to the Disputed Documents is demonstrating that it has not waived the privilege. GECC fails to address this document at all and therefore fails to meet its burden. Having produced Exhibit 1, GECC has also waived the attorney-client privilege with respect to Disputed Documents relating to its subjective motivations.

Relevant to GECC's waiver is the "joint defense" or "common interest" privilege (hereinafter the "common interest privilege"), which GECC has **[\*19]** raised as to some of the Disputed Documents. The common interest privilege is not a separate protection, but rather enables litigants facing a common opponent to exchange otherwise privileged materials in order to adequately prepare a defense or prosecution without waiving the underlying privilege. Haines v. Liggett Group Inc., 975 F.2d 81 (3d Cir. 1992). GECC asserts that many of the Disputed Documents were created under a joint prosecution strategy with co-petitioning creditor Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("U.S. Bank") as memorialized in a written Joint Prosecution Agreement. Exhibits L and N (duplicate copies) to the In Camera Submission. Thus, documents created by U.S. Bank and its counsel, if otherwise privileged as attorney-client communication or work product, would not lose that protection by their production to GECC and vice versa. Moreover, [HN10] documents subject to common interest privilege are also protected from GECC's waiver of the underlying attorney-client or work product protection through its disclosure of the Waiver Documents. See John Morrell & Co. v. Local Union 304A, United Food and Commercial Workers, 913 F.2d 544, 556 (8th Cir. 1990) **[\*20]** (protection "cannot be waived without the consent of all parties to the defense"); In re In-Store Advertising Securities Litigation, 163 F.R.D. 452, (S.D.N.Y. 1995) (same).

Unfortunately for GECC, not one of Disputed Documents comply with the explicit requirement of the Joint Prosecution Agreement: documents exchanged under that agreement must be marked with (1) the providing party's name and (2) the words "Joint Prosecution Privilege." Exhibits L and N to In Camera Submission at 2. Despite GECC's assertion that certain documents were created or exchanged with U.S. Bank pursuant to this agreement, none of the Disputed Documents bear these required markings. n12 Nor does GECC provide any facts from which I might determine that any Disputed Document was created or exchanged under the Joint Prosecution Agreement. n13

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n12 As discussed below, there is one document (Exhibit K) that bears a hand-written notation "subject to Joint Prosecution Agreement." I address it below.

n13 GECC has followed what is unfortunately a common practice of invoking privileges without providing the necessary information for a privilege determination. Rarely does the document itself provide all the information necessary for a court to make a privilege determination. Indeed, Fed.R.Civ.P. 26(b)(5) specifically requires parties claiming privilege or work product protection to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." The skeletal descriptions found in GECC's privilege log (i.e., "e-mail correspondence re: litigation strategy," "memorandum regarding National Medical Imaging") do not comply with the rule. See In re Lomas Financial Corp., 1999 WL 33495524, at \*5 (Bankr. D. Del. 1999) (privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document).

Aside from the privilege log and documents themselves, the only source of explanation is found in GECC's Further Response To the Motion to Compel. Statements in briefs generally do not constitute evidence unless admitted by the opposing party. Braden v. University of Pittsburgh, 477 F.2d 1, 6 (3d Cir. 1973). Absent any objection by Putative Debtors as to the

admissibility of GECC's assertions or evidence to the contrary, I will treat the document descriptions in the brief as a certification of counsel. That said, even certifications much be factually sufficient and uncontroverted by other evidence to support the claimed privilege. My findings below are based upon the record GECC has made in support of its burden of proving the applicability of the privileges it invoked.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*21]

That said, I will not ignore the obvious fact that GECC and U.S. Bank had a common interest as petitioning creditors. Nor does the common interest privilege require a written joint strategy. Some of the Disputed Documents (albeit fewer than GECC would like) on their face evidence a joint strategy between GECC and U.S. Bank, regardless of the Joint Prosecution Agreement. I will accord any such document the protections of any underlying privilege notwithstanding GECC's own waiver.

After reviewing the Disputed Documents *in camera* along with GECC's descriptions and applying the above legal principles to the privileges claimed by GECC, I make the following findings of fact and conclusions of law.

Exhibit A is an attorney billing record. [HN11] Billing records are subject to the attorney-client privilege to the extent that they reveal the nature of the services rendered. Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999). Thus, the descriptions of the services in this document are privileged. The remaining information (identity of attorney and hours spent) is irrelevant to the issue of GECC's subjective motivation. It need not be produced.

Exhibit B [*22] is a cover letter between Michael G. Menkowitz ("Menkowitz") and GECC employee Joanne M. Harmon ("Harmon") that evidences nothing more than the existence of an attorney-client relationship between GECC and Fox Rothchild LLP. It is therefore not a privileged communication. See Diversified Indus., Inc. V. Meredith, 572 F.2d 596, 603 (8th Cir. 1978); Cohen v. Uniroyal, Inc., 80 F R D. 480, 483 (E.D. Pa. 1978). However, neither does it contain any information relevant to GECC's subjective motivations in filing the Involuntary Petitions. It need not be produced.

Exhibit D, n14 is an e-mail from Menkowitz to GECC that merely forwards a link to the website of Fairmount Partners. It does not disclose any confidential information for the purpose of seeking legal advice so as to support the attorney-client privilege asserted by GECC. Nor is there any indication that it was created in anticipation of litigation. The relevancy of this document seems tenuous, but I cannot say it is unlikely to lead to information regarding GECC's subjective motivations. It shall be produced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 GECC has provided Exhibit C to Putative Debtors, so this exhibit is no longer at issue. GECC's Further Response at 3.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*23]

Exhibits E and P are duplicate copies of a series of GECC internal e-mails pertaining to the recommendation of Harmon to pursue litigation against Putative Debtors. They are relevant to GECC's subjective motivations and the work product doctrine asserted by GECC has been waived by its disclosure of the Waiver Documents. Nor is there any indicia that these e-mails were shared with U.S. Bank pursuant to a joint strategy. This document shall be produced.

Exhibit F is a chart listing various suits against NMI in the Pennsylvania courts. n15 GECC concedes that it was prepared by counsel for U.S. Bank and not by GECC or its representative. GECC's Further Resp. To Compel at 3-4. As such, GECC cannot independently invoke attorney-client privilege or work product doctrine. GECC's assertion that this chart was produced to it pursuant to the Joint Prosecution Agreement, is belied by the document's failure to bear the required designation. Nor does GECC provide any facts for the Court to determine that it was prepared or given to GECC pursuant to a joint strategy with U.S. Bank. It shall be produced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Thus, it is relevant to one of the motivations enunciated in the Waiver Documents, i.e., NMI being a skilled litigant. See Exhibit 1 to Putative Debtors' Supp. to Compel.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*24]

Exhibits G and I are duplicate copies of an agenda for a meeting between GECC and U.S. Bank with respect to the filing of the Involuntary Petitions. It is clear from the face of the document that it was prepared in anticipation of filing the Involuntary Petitions and pursuant to a joint strategy between GECC and U.S. Bank, whether or not such strategy is memorialized in the Joint Prosecution Agreement. Thus, it is protected work product, and subject to the common interest doctrine is unaffected by GECC's disclosure of the Waiver Documents. It need not be produced.

Exhibits H and J are duplicate copies of a chart prepared by GECC that lists various obligations of Putative Debtors. n16 The document does not contain any information which infers that it was created in anticipation of litigation or that it is an attorney client communication. n17 This document shall be produced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 The amounts Putative Debtors owed to GECC is relevant to GECC's subjective motivation. See Exhibit 1 to Putative Debtors' Supp. to Compel (memo discussing involuntary bankruptcy as a method of collecting outstanding debt). [*25]

n17 Again, GECC's self-serving assertion that it prepared this document for distribution to U.S. Bank pursuant to the Joint Prosecution Agreement, is belied by the lack of the required party identification and designation "Joint Prosecution Materials." While GECC also asserts that it prepared the document for distribution to its attorney, that alone is an insufficient factual basis for invocation of the attorney-client privilege.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Exhibit K is a memorandum which GECC concedes was prepared by U.S. Bank's counsel for U.S. Bank. n18 GECC cannot invoke attorney-client privilege or work product absent applicability of the common interest doctrine. While this document bears the handwritten notation "subject to Joint Prosecution Agreement," I find the notation suspect because: (1) it is hand-written; (2) it does not comply with the exact designation required by the parties to the agreement; and (3) it is the only document that bears any marking referring to the Joint

Prosecution Agreement, despite GECC's invocation to that agreement to several Disputed Documents. Nor can I ascertain from the document **[*26]** itself that it was prepared pursuant to a joint litigation strategy between GECC and U.S. Bank. As GECC has failed to provide any factual averments to support a claim of privilege, it shall be produced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n18 The subject of the memo is an investigation by U.S. Bank's counsel of possible fraud by a principal of NMI and therefore relevant to GECC's subjective motivations. See Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible fraud as a basis for appointing a trustee in an involuntary bankruptcy case).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Exhibits L and N are duplicate copies of the Joint Prosecution Agreement entered into by GECC and U.S. Bank. This document was clearly created in anticipation of litigation and pursuant to a joint strategy and is therefore protected work product unaffected by GECC's waiver under the common interest doctrine.

Exhibits M and O are duplicate copies of a document that GECC asserts was produced to it by its counsel. It evidences an implicit request for legal advice and contains legal **[*27]** analysis and advice by counsel. I find that it falls within the attorney-client privilege and does not fall within the scope of GECC's waiver, i.e., GECC's subjective motivations.

Exhibit Q is an e-mail from U.S. Bank to GECC scheduling a conference call or meeting. Nothing in the e-mail reflects that it was sent in anticipation of litigation, nor does it contain confidential communication between attorney and client. It shall be produced.

Exhibit R is an exchange of internal GECC e-mail communication, namely Harmon's request for documents in compliance with Putative Debtors document request and the response of several employees. It is not relevant to GECC's subjective motivation in filing the Involuntary Petition and need not be produced.

Exhibit S consists of two-emails from Mark Tambussi (Vice President, Regional Sales) to Harmon. Neither of these individuals has been identified as counsel for GECC so as to trigger the attorney-client privilege, nor is it trial preparation material. It is arguably relevant to GECC's subjective motivations, n19 and shall be produced.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n19 The e-mail notes that GECC has received inquiries from outside imaging companies regarding NMI filing for bankruptcy and inquiring about available assets. See Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible sale of assets through bankruptcy).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*28]**

Additional Relief Requested

After a hearing on the Motion to Compel, the Court requested the In Camera Submission and supplemental briefing in order to identify and address all the disputed documents at issue in the Motion to Compel. Notwithstanding this directive, Putative Debtors' Additional

Supplement to Motion of Putative Debtors for Order Compelling [GECC] to Produce Documents ("Putative Debtors Add. Supp. to Compel") raises for the first time a request as to documents which GECC produced in redacted form. Putative Debtors' Add. Supp. to Compel at 3. These documents were not mentioned in the original Motion to Compel or as part of the In Camera Submission. The purpose of supplemental briefing was to address the documents at issue in the Motion to Compel, not to submit additional items not framed by the parties to the Court as in dispute. Moreover, Putative Debtors have failed to certify that the parties, after reasonable effort, are unable to resolve the dispute as to the redacted documents. See Local Bankruptcy Rule 7026-1(a). I will deny this request without prejudice to Putative Debtors to bring an appropriate motion.

Putative Debtors also ask the Court to **[*29]** find that the attached Exhibit 10 to their supplement, produced to them by GECC, constitutes a waiver of the attorney-client and work product protections on the subject matter of whether there are any debts subject to a bona fide dispute. Id. at 2. Again, this request goes beyond the scope of the Motion to Compel, i.e., documents pertaining to GECC's subjective motivations. In any case, none of the Disputed Documents that I have held are protected pertain to this subject matter.

An Order consistent with this Memorandum Opinion shall issue.

DIANE WEISS SIGMUND

Chief U.S. Bankruptcy Judge

Dated: October 31, 2005

**ORDER**

**AND NOW**, this 31st day of October 2005, upon consideration of (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

> 1. The Protection Motion is **GRANTED  [*30]  IN PART.** The Fairmount Subpoenas are restricted to documents which relate to the time period January 1, 2004 to March 3, 2005. In all other respects, the Protection Motion is **DENIED.**

> 2. The Motion to Compel is **GRANTED IN PART** as follows:

>> (a) GECC shall produce to Putative Debtors copies of the documents submitted *in camera* as Exhibits D-F, H, J, K, P, Q, and S;

>> (b) To the extent that Putative Debtors have requested additional relief in their supplemental memorandum as to certain redacted documents, this request is **DENIED** without prejudice;

>> (c) In all other respects, the Motion to Compel is **DENIED.**

DIANE WEISS SIGMUND

Chief U.S. Bankruptcy Judge

Service: **Get by LEXSEE®**
Citation: **2005 bankr lexis 2374**
View: Full
Date/Time: Monday, October 30, 2006 - 10:44 AM EST

* Signal Legend:
🐖 - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs  With Analysis Available
⚙ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case

  About LexisNexis  | Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Service: **Get by LEXSEE®**
Citation: **2004 us dist lexis 22101**

*2004 U.S. Dist. LEXIS 22101, \**

AMIHAI MIRON, et al, Plaintiffs, v. BDO SEIDMAN, LLP, et al, Defendants.

CIVIL ACTION 04-968

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2004 U.S. Dist. LEXIS 22101

October 19, 2004, Decided
October 21, 2004, Filed; October 22, 2004, Entered

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by, Motion denied by Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 2004 U.S. Dist. LEXIS 27415 (E.D. Pa., Oct. 20, 2004)

**DISPOSITION:** Plaintiffs' motion to supplement record denied. Defendants' motion to compel return of allegedly privileged document granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a civil suit, plaintiffs moved to supplement the record with a memorandum allegedly disclosed to a third party by a partner in defendant limited liability partnership (LLP). Defendants filed a cross-motion to compel the return of the document, which they alleged was protected by the attorney-client privilege.

**OVERVIEW:** Plaintiffs' counsel allegedly obtained the memorandum from a third party as part of the settlement process in a different lawsuit. Defendants, who sought an order compelling return of the memorandum, alleged that it was protected by the attorney-client privilege. Plaintiffs replied that the instant court was not the proper forum to determine the status of the document and that any privilege protecting the memorandum was waived when the document was disclosed to a third party. The court disagreed with both of plaintiffs' contentions. First, the instant court was the proper forum to resolve defendants' claims regarding the use of the memorandum in the instant action. A decision to limit plaintiffs' use of the document in the instant case would have no effect on the rights of the parties in the settled lawsuit. Second, regardless of how the memorandum was disclosed to the third party, the common interest doctrine prevented the disclosure from waiving the attorney-client privilege. Further, even disclosure to the third party was inadvertent or involuntary, analysis of the Fidelity factors indicated that such a disclosure did not constitute a waiver of the attorney-client privilege.

**OUTCOME:** The court denied plaintiffs' motion to supplement the record and granted defendants' motion to compel return of the memorandum.

**CORE TERMS:** memorandum, disclosure, attorney-client, inadvertent, waived, common interest, faxed, proper forum, intentionally, cross-motion, confidential, settlement, privileged information, outside counsel, able to obtain, tax liability, legal advice, third party, co-defendants, precaution, overriding, refrain, destroy, privileged document, inadvertently

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

Legal Ethics > Client Relations > Confidentiality of Information

*HN1* ± The attorney-client privilege, designed to encourage uninhibited communication between clients and their attorneys, is "worthy of maximum protection." A party seeking to withhold information on the basis of this privilege bears the burden of showing that the communication in question was made in confidence, in connection with a request for legal advice from a legal advisor in his capacity as such, and that the privilege has not been waived. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

Legal Ethics > Client Relations > Confidentiality of Information

*HN2* ± Because waivers of attorney-client privilege must generally be voluntary, inadvertent disclosure of an allegedly privileged communication will not necessarily constitute a waiver. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Government Privileges > Waiver

*HN3* ± A small number of insignificant disclosures do not constitute a waiver of a privilege. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Government Privileges > Waiver

*HN4* ± Limited inadvertent disclosures in extraordinary circumstances, such as expedited discovery or massive document exchanges, do not constitute a waiver of a privilege. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

Evidence > Privileges > Government Privileges > Waiver

*HN5* ± In determining whether an inadvertent disclosure has waived the attorney-client privilege, the United States District Court for the Eastern District of Pennsylvania must consider the following factors: (1) the reasonableness of precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would be served by relieving the party of its errors. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview ↰

Evidence > Privileges > Attorney-Client Privilege > Elements ↰

Evidence > Privileges > Attorney-Client Privilege > Waiver ↰

*HN6* ↧ The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information to a third party. Where parties with shared interest in actual or potential litigation against a common adversary share privileged information pursuant to this shared goal, the common interest doctrine preserves the attorney-client privilege with respect to that information. More Like This Headnote | *Shepardize: Restrict By Headnote*

**COUNSEL:** **[*1]** For Plaintiffs AMIHAI MIRON, AYALA MIRON, AM PARTNERS, AM TUCKERSTOWN INVESTORS, INC., and AM TUCKERSTOWN INVESTORS, LLC: David Stewart Clancy, Jeven R. Sloan and W. Ralph Canada, Jr., Shore Deary, LLP, Dallas, TX, David R. Deary, Fowler, Wiles, Norton and Keith, Dallas, TX, Joe R. Whatley, Jr., and Russell J. Drake, Cooper, Mitch, Crawford, Kuykendall and Whatley, Birmingham, AL, Kathryn C. Harr and Kenneth I. Trujillo, Trujillo Rodriquez & Richard, Philadelphia, PA, and Othni J. Lathram, Whatley Drake, LLC, Birmingham, AL.

For Defendants BDO SEIDMAN, LLP and ROBERT J. DUDZINSKY: Daniel J. Layden, Piper Rudnick, LLP, Philadelphia, PA.

For Defendants DEUTSCHE BANK AG and DEUTSCHE BANK SECURITIES, INC., D/B/A DEUTSCHE BANK ALEX BROWN, A DIVISION OF DEUTSCHE BANK SECURITIES, INC.: Benjamin Sokoly, Christine E. Harding, Lawrence M. Hill, Richard A. Nessler, and Seth C. Farber, Dewey Ballantine, LLP, New York, NY.

For Defendants DEUTSCHE BANK AG and DAVID PARSE: Cheryl A. Krause, Hangley Aronchick Segal & Pudlin, Philadelphia, PA.

For Defendant RAGGI & WEINSTEIN, LLP, & CPA'S & CONSULTANTS: M. Scott Gemberling, Marshall Dennehey Warner Coleman and Goggin, Philadelphia, **[*2]** PA.

For Defendants RAGGI & WEINSTEIN, LLP, & CPA'S & CONSULTANTS and BOB RAGGI: Jay S. Rothman, Marshall Dennehey Warner Coleman and Goggin, Philadelphia, PA.

**JUDGES:** J. CURTIS JOYNER, J.

**OPINION BY:** J. CURTIS JOYNER

**OPINION: MEMORANDUM AND ORDER**

**JOYNER, J.**

October 20, 2004

Via the motions now pending before this Court, Plaintiffs move to supplement the record with a BDO Seidman Memorandum dated August 11, 2000, and Defendants move to compel the return of the allegedly privileged document. For the reasons outlined below, Plaintiffs' Motion is DENIED and Defendants' Motion is GRANTED.

## Discussion

The Proper Forum for Adjudication of this Dispute

Defendants, who have filed a cross-motion to compel return of the BDO Seidman Memorandum dated August 11, 2000 ("the Memorandum"), allege that the Memorandum is protected by the attorney-client privilege. We first address Plaintiffs' contention that this Court is not the proper forum in which to determine the status of the BDO Memorandum dated August 11, 2000 ("the Memorandum") or consider motions for its return.

Plaintiffs' counsel obtained the Memorandum from Jenkens & Gilchrist as part of the settlement process in Denney v. Jenkens & **[*3]** Gilchrist, in which Plaintiffs' counsel are lead class counsel. Denney v. Jenkens & Gilchrist, No. 03-5460 (S.D.N.Y., filed July 23, 2003). Plaintiffs contend that, because the Memorandum was originally produced in connection with the Denney case, Defendants should seek its return before the United States District Court for the Southern District of New York. Plaintiffs further assert that resolution of this issue before this Court would interfere with the rights of the parties in the Denney settlement, which bars putative class members from pursuing further claims against Jenkens & Gilchrist or its related parties.

We find that the United States District Court for the Eastern District of Pennsylvania is the proper forum for Defendants' claims regarding the use of the Memorandum in this action. Defendants, in their cross-motion, demand that Plaintiffs return the Memorandum to Defendants' counsel, destroy all copies, and "refrain from any further use of or reference to that memorandum in this case." A decision by this Court to limit Plaintiffs' use of the Memorandum in the instant case would have no effect on the rights of the parties in the Denney settlement, as the **[*4]** Plaintiffs are not parties to that action; it is questionable whether the United States District Court for the Southern District of New York would even have jurisdiction over Plaintiffs' use of the Memorandum in this case. Nor does Defendants' request for relief implicate the Denney injunction prohibiting claims against Jenkens & Gilchrist and related parties, as Defendants BDO Seidman and Deutsche Bank seek no relief from their Denney co-defendants, Jenkens & Gilchrist. Furthermore, it is unlikely that Defendants would be able to obtain relief before the United States District Court for the Southern District of New York given that the Denney litigation has been stayed pending appeal. Denney v. Jenkens & Gilchrist, No. 03-5460, 340 F. Supp. 2d 348, 2004 U.S. Dist. LEXIS 11241 (S.D.N.Y. 2004).

The Privileged Status of the Memorandum

Defendants contend that the Memorandum is protected by the attorney-client privilege, and move to compel its return and prohibit its use in this case. The central issue before this Court is whether Defendants have waived this privilege by intentionally or inadvertently sharing the Memorandum with Jenkens & Gilchrist; we find that they have **[*5]** not.

*HN1* ↥The attorney-client privilege, designed to encourage uninhibited communication between clients and their attorneys, is "worthy of maximum protection." EEOC v. Guess?, Inc., 176 F. Supp. 2d 416, 422 (E.D. Pa. 2001). A party seeking to withhold information on the basis of this privilege bears the burden of showing that the communication in question was made in confidence, in connection with a request for legal advice from a legal advisor in his capacity as such, and that the privilege has not been waived. See In re Grand Jury Proceeding Impounded, 241 F.3d 308, 316, n.6 (3rd Cir. 2001); Rhone-Poulenc Rorer v. Home Indem. Co., 32 F.3d 851, 862 (3rd Cir. 1994); EEOC v. Guess?, Inc., 176 F. Supp. 2d at 422-23.

*HN2* ↥Because waivers of attorney-client privilege must generally be voluntary, inadvertent

disclosure of an allegedly privileged communication will not necessarily constitute a waiver. Fidelity & Deposit Co. v. McCulloch, 168 F.R.D. 516, 521-22 (E.D. Pa. 1996) (holding that [HN3] a small number of insignificant disclosures do not constitute a waiver); Advanced Medical, Inc. v. Arden Medical Systems, Inc.., No. 87-3059, 1988 U.S. Dist. LEXIS 7297, 5-6, 1988 WL 76128, 2 (E.D. Pa. 1988) [*6] (holding that [HN4] limited inadvertent disclosures in extraordinary circumstances, such as expedited discovery or massive document exchanges, do not constitute a waiver). [HN5] In determining whether an inadvertent disclosure has waived the attorney-client privilege, this Court must consider the following factors: (1) the reasonableness of precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would be served by relieving the party of its errors. Fidelity & Deposit Co., 168 F.R.D. at 522.

[HN6] The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information to a third party. Katz v. AT&T Corp., 191 F.R.D. 433, 436 (E.D. Pa. 2000). Where parties with "shared interest in actual or potential litigation against a common adversary" share privileged information pursuant to this shared goal, the common interest doctrine preserves the attorney-client privilege [*7] with respect to that information. Katz v. AT&T Corp., 191 F.R.D. 433, 436 (E.D. Pa. 2000) (quoting Thompson v. Glenmede Trust Co., No. 92-5233, 1995 U.S. Dist. LEXIS 18780, 15-16, 1995 WL 752443, 4 (E.D. Pa. 1995)); see also In re Diet Drugs Prods. Liab. Litig., 2001 U.S Dist. LEXIS 5494, 14-15, 2001 WL 34133955, 5-6 (E.D. Pa. 2001).

At issue in this case is the question of whether Defendant BDO Seidman waived its right to assert the attorney-client privilege with respect to the Memorandum. Plaintiffs contend that the confidential nature of the Memorandum was destroyed when Jenkens & Gilchrist, a third party, obtained the document. Defendants claim that BDO Seidman did not waive its privilege because it never intentionally or inadvertently shared the Memorandum with anyone outside the firm, and further suggest that Jenkens & Gilchrist obtained the document using improper means. The affidavits of Jenkens & Gilchrist shareholder Donna Guerin and BDO Seidman partner Robert Greisman, which are in direct conflict, do little to resolve this issue, although the detailed and verifiable information in Mr. Greisman's affidavit strongly suggests [*8] that he sent no fax to Ms. Guerin on January 19, 2001, the day she claims to have received it. Luckily, it is not necessary for this Court to delve into the quagmire of exactly how Jenkens & Gilchrist obtained the Memorandum.

If, as Plaintiffs contend, Robert Greisman or anyone at BDO Seidman intentionally faxed the Memorandum to Jenkens & Gilchrist, we find that such disclosure is protected by the common interest doctrine. Even accepting as true Ms. Guerin's assertion that the Memorandum was "not sent in connection with any on-going litigation," Defendants have satisfied their burden of showing that BDO Seidman and Jenkens & Gilchrist were parties with "shared interest in actual or potential litigation against a common adversary" at the time the Memorandum was allegedly faxed. Katz, 191 F.R.D. at 436. The Memorandum sought legal advice from BDO Seidman's outside counsel in connection with confidential issues regarding potential litigation and tax liability. At the time the Memorandum was allegedly faxed to Ms. Guerin, both BDO Seidman and Jenkens & Gilchrist faced the same legal issues concerning their standing before the IRS and common clients. Indeed, Ms. Guerin's [*9] affidavit asserts that Mr. Greisman had on other occasions sent her information relating the same topic and the same common clients, including a September 7, 2000 letter and memorandum regarding whether the two firms would be subject to new IRS requirements. The common interest between these two firms is further established by the fact that BDO Seidman and Jenkens & Gilchrist are co-defendants in the pending Denney litigation, which concerns similar issues of tax liability. This Court is satisfied with Defendants' showing that the common interest doctrine would

protect the BDO Memorandum's privileged status if the communication between BDO Seidman and Jenkens & Gilchrist were found to be intentional.

Even if, on the other hand, Jenkens & Gilchrist obtained the Memorandum without authorization as a result of inadvertent or involuntary disclosure by someone within BDO Seidman (as Defendants contend), our analysis of the five Fidelity factors indicates that such a disclosure would not constitute a waiver. See Fidelity & Deposit Co., 168 F.R.D. at 522. The Memorandum was addressed to a limited audience of high-level BDO employees and outside counsel, suggesting [*10] some degree of precaution in terms of confidentiality. As to the number and extent of disclosures, Plaintiffs allege only that the Memorandum was faxed from BDO Seidman to Jenkens & Gilchrist on January 19, 2001, and claim no further disclosures by BDO. In arguing that the privilege has been waived, Plaintiffs rely on the fact that "multiple persons" now have a copy of the Memorandum; however, Plaintiffs fail to mention that the source of these circulating copies was Plaintiffs' counsel, not BDO Seidman. A week after Judge Kauffman ordered the Memorandum sealed pending resolution of these motions, Plaintiffs' counsel filed five new complaints against Defendants and others in which counsel quoted from the Memorandum. See Heller v. Deutsche Bank AG, et al, No. 04-3572 (E.D. Pa., filed July 28, 2004); Armitage v. BDO Seidman, et al, No. 04-6154 (C.D. Cal.); Crunk v. BDO Seidman, et al, NO. 04-2573-MIV (W.D. Tenn.); Illingworth v. Deutsche Bank, et al, No. 1:04-4966 (N.D. Ill.); Blythe v. Deutsche Bank, et al, No. 04-5867 (S.D.N.Y.). This Court notes that Defendant BDO Seidman has fought vigorously to preserve the privilege surrounding the Memorandum, both before this [*11] Court as well as before the United States District Court for the Northern District of Illinois in United States v. BDO Seidman, LLP, 2004 U.S. Dist. LEXIS 12145, No. 02-4822.

We find that the "overriding interests of justice would be served" by granting Defendants' motion for return of the Memorandum and prohibiting Plaintiffs from using or referring to the Memorandum in this case. Fidelity & Deposit Co., 168 F.R.D. at 522. A ruling in Defendants' favor on the issue of attorney-client privilege will serve to protect Defendants' confidential interests in the instant case, and will not unduly prejudice Plaintiffs or their counsel. Plaintiffs' counsel appears able to obtain copies of the Memorandum by virtue of their relationship with Jenkens & Gilchrist pursuant to the Denney settlement, and will likely continue to cite to the Memorandum in its actions before other Courts. If such a situation arises, Defendants are of course free to assert their claim of privilege before those Courts, as we have no jurisdiction over counsel's use of the Memorandum beyond the present action.

Accordingly, we find that the BDO Memorandum dated August 11, 2000 is protected by attorney-client privilege. We [*12] will DENY Plaintiffs' motion to supplement the record and GRANT Defendants' cross-motion to compel return of the privileged document.

An appropriate order follows.

## ORDER

AND NOW, this 20th day of October, 2004, upon consideration of Plaintiffs' Motion for Leave to Supplement the Record (Doc. No. 58), Defendants' Cross-Motion to Compel the Return of Privileged Document (Doc. No. 67), and all responses thereto (Docs. No. 71, 75), it is hereby ORDERED that Plaintiffs' Motion is DENIED and Defendants' Motion is GRANTED.

It is further DECREED that Plaintiffs shall return to BDO Seidman's counsel the Memorandum dated August 11, 2000 and attached to their Motion within five (5) days of this Order, and destroy all copies, and refrain from any further use of or reference to that Memorandum in this case.

J. CURTIS JOYNER, J.

Service: **Get by LEXSEE®**
Citation: **2004 us dist lexis 22101**
View: Full
Date/Time: Monday, October 30, 2006 - 10:46 AM EST

* Signal Legend:
🐷 - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
 - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 21132**

*2003 U.S. Dist. LEXIS 21132, \**

CONSTAR INTERNATIONAL, INC., CHEVRON PHILLIPS CHEMICAL COMPANY, LP, and
CHEVRON RESEARCH & TECHNOLOGY COMPANY, Plaintiffs, v. CONTINENTAL PET
TECHNOLOGIES, INC., Defendant. CHEVRON PHILLIPS CHEMICAL COMPANY, LP and
CHEVRON RESEARCH & TECHNOLOGY COMPANY, Cross-claim Plaintiffs, v. CONSTAR
INTERNATIONAL, INC., Cross-claim Defendant.

View the Full Docket from LexisNexis CourtLink for 1:99cv234
Civil Action No. 99-234-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 21132

November 19, 2003, Decided

**PRIOR HISTORY:** Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc., 232 F. Supp. 2d
294, 2002 U.S. Dist. LEXIS 22792 (D. Del., 2002)

**DISPOSITION: [\*1]** Motion to compel production of documents denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant technology corporation filed a motion to compel
production of documents subject to plaintiff patent holder's assertion of the common
interest doctrine in a patent infringement action.

**OVERVIEW:** The corporation sought several documents on the patent holder's privilege
log. The patent holder claimed that the withheld documents were privileged
communications between its former counsel and a third party's former counsel and that
some of the documents dealt with patent applications under which the patent holder and
third party shared a common legal interest under a cross-license. The patent holder
claimed that the other withheld documents were work product created in anticipation of
the present litigation and dealing with the common interest of the cross-license. Based on
these assertions, the court held that the documents were privileged communications
between attorneys about a common legal interest that were not subject to disclosure. The
court also held that the patent holder's general objection to disclosing its privileged
documents and its response to each particular document request that it objected to
disclosing "common interest" documents responsive to that request made it clear that the
patent holder was asserting the common interest attorney-client and work product
privileges; therefore, the patent holder did not waive its privilege objections.

**OUTCOME:** The court denied the corporation's motion to compel.

**CORE TERMS:** common interest, privileged, responsive, work product, attorney-client,
waived, patent, legal interest, withheld, Common Interest Doctrine, privileged
communications, reasons discussed, work product privilege, general objection, former
counsel, disclosure, third parties, discourse, log, cross-license, anticipation, disclosing

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Elements

Evidence > Privileges > Attorney-Client Privilege > Exceptions

*HN1* ⬆ If information is communicated to an attorney in the presence of a third party, usually the attorney-client privilege does not protect the disclosure of that communication. The common interest doctrine creates an exception to this general rule. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Privileged Matters > Work Product > Waivers

Evidence > Privileges > Attorney-Client Privilege > Elements

Evidence > Privileges > Attorney-Client Privilege > Waiver

*HN2* ⬆ Under the common interest doctrine, communications made when multiple clients consult an attorney on matters of common interest are still privileged against third parties. Communications made by a party or the party's lawyer to an attorney representing another in a matter of common interest are also privileged. The doctrine allows attorneys facing a common litigation opponent to exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege. A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > General Overview

Legal Ethics > Client Relations > Confidentiality of Information

*HN3* ⬆ A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > Waiver

Evidence > Privileges > Government Privileges > Waiver

*HN4* ⬆ While a general objection may constitute a waiver of privilege, whether a waiver has actually occurred requires the court to consider the circumstances surrounding the assertion of the general objection to the production of privileged documents. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Government Privileges > Waiver

Legal Ethics > Client Relations > Confidentiality of Information

*HN5* Communications with third parties that do not fall under the common interest doctrine are not privileged.  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Evidence > Privileges > Attorney-Client Privilege > General Overview

Evidence > Privileges > Government Privileges > Waiver

*HN6* Depending on the circumstances, negotiations can be adversarial or cooperative for purposes of the common interest doctrine.  More Like This Headnote

**COUNSEL:** Donald F. Parsons, Jr., Esquire and Karen Jacobs Louden, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware. Of Counsel: Dale M. Heist, Esquire, Kathleen Milsark, Esquire, and Joseph D. Rossi, Esquire of WOODCOCK WASHBURN LLP, Philadelphia, Pennsylvania, for Constar International, Inc., Plaintiff.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Douglas A. Freedman, Esquire, Kenneth G. Schuler, Esquire, Sasha A. Mayergoyz, and Michael Faris, Esquire of LATHAM & WATKINS LLP, Chicago, Illinois. Glen P. Belvis, Esquire, Helen A. Odar, Esquire, and K. Shannon Mrksich, Esquire of BRINKS HOFER GILSON & LIONE, Chicago, Illinois, for Continental PET Technologies, Inc., Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge**

Pending before the Court is the Motion to Compel of Defendant Continental **[*2]** Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298). For the reasons discussed, the Court will deny the motion.

**BACKGROUND**

In 1999, Plaintiff Constar International, Inc. ("Constar") n1 initiated this action against Continental Pet Technologies, Inc. ("Continental") alleging that Continental was infringing upon U.S. Patent No. 5,021,515 (the "'515 patent"). Continental has moved 1) to compel several documents on Constar's privilege log, 2) to compel documents responsive to document requests 119-120, 122-126, 128-130, and 3) to compel all other materials withheld by Constar based on the common interest doctrine.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Constar was substituted for Crown Cork & Seal Technologies Corporation as the named

plaintiff by stipulation of the parties on January 22, 2003. (D.I. 275).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Constar contends that all of the withheld documents are privileged communications between Constar's former counsel and PLM's former counsel. Constar responds that **[*3]** it is only withholding four of the documents in question based on work product privilege. Constar asserts that these documents were communications between Constar's former patent counsel and PLM's former counsel and were made "in anticipation of the present lawsuit." Constar's Response, at 2. Constar contends that Continental has not meet its burden to obtain disclosure of work product.

Constar asserts multiple objections to Continental's general request for material responsive to requests 119-120, 122-126, and 128-130. Constar contends that some of the documents are privileged and asserts that it has not waived its attorney client or work product privilege with respect to those documents. Constar also objects to the relevance, breadth, burden, vagueness, and duplicity of the requests. Constar asserts that Continental has not addressed these objections, and therefore, its request is not ripe.

Constar further contends that Continental's request for all materials withheld under the common interest doctrine is too broad and covers materials which Constar is not required to disclose.

Continental responds that Constar has not demonstrated it is entitled to the protections of the attorney **[*4]** client privilege and that any possible attorney-client privilege or work product privilege related to these requests has been waived by Constar's failure to previously make a specific objection.

## DISCUSSION

### I. The Common Interest Attorney Client Privilege

[HN1] If information is communicated to an attorney in the presence of a third party, usually the attorney-client privilege does not protect the disclosure of that communication. The common interest doctrine creates an exception to this general rule. [HN2] Under the common interest doctrine, communications made when multiple clients consult an attorney on matters of common interest are still privileged against third parties. Cavallaro v. U.S., 284 F.3d 236, 249 (1st Cir. 2002). Communications made by a party or the party's lawyer to an attorney representing another in a matter of common interest are also privileged. Id. The doctrine allows "attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." Schachar v. American Academy of Opthalmology, Inc. 106 F.R.D. 187, 191 (D. Ill. 1985). **[*5]** "A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C.1975).

### II. Application of the Common Interest Doctrine in this Case

A. The Privilege Log Documents

[HN3] "A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents." Baxter Travenol Laboratories, Inc. v. Abbott Laboratories,

1987 U.S. Dist. LEXIS 10300, 1987 WL 12919, 1 (N.D. Ill. 1987). Constar contends that documents 933, 983, 1014, 1022, 1026, and 1332 were privileged communications between Constar's counsel and counsel for PLM and dealt with "patent applications under which [Constar and PLM] shared a common legal interest under the 1988 cross-license." Constar's Response, at 2. Constar asserts that Documents 1420, 1476, 1488, and 1489 are work product created in anticipation of the present litigation and dealing **[*6]** with the common interest of the cross-license. Based on Constar's assertions, the Court finds that Constar's documents are privileged communications between attorneys about a common legal interest. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 If requested by Continental, the Court will conduct an in camera review of a random sampling of the documents at issue.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B. Disputed Document Requests

Continental asserts that Constar has waived attorney-client and work product protections with respect to document requests 123-126, 128, and 130. According to Constar, because Continental only asserted that it could not disclose documents under a "common interest," and did not assert an underlying independent privilege, Constar waived the attorney-client privilege with respect to documents responsive to these requests. *HN4* While a general objection may constitute a waiver of privilege, "whether a waiver has actually occurred requires the Court to consider the circumstances surrounding the assertion of [the] general objection to the production of privileged documents. **[*7]** " High Tech Communications, Inc. v. Panasonic Co. 1995 U.S. Dist. LEXIS 4076, 1995 WL 133344, *2 (E.D. La. 1995). Constar made a general objection to disclosing its privileged documents, and, in response to each request, objected to the disclosing "common interest" documents responsive to that request. On this record, the Court finds that it is clear that Constar was asserting the common interest attorney-client and work product privileges, and Constar has not waived its privilege objections.

Additionally, as stated in section A, attorney communications on common legal interests between Constar and others are privileged. Privileged communications between Constar and others, even if responsive to requests 119, 120, 122, 123, 124, 125, 126, 128, 129, 130, need not be produced.

However, *HN5* communications with third parties that do not fall under the common interest doctrine are not privileged. *HN6* Depending on the circumstances, negotiations can be adversarial or cooperative. See Power Mosfet Technologies v. Siemens AG, 206 F.R.D. 422, 426 (E.D. Tex. 2000). For this reason, the Court is reluctant to broadly determine that either all or none of documents responsive to document requests **[*8]** 119 and 120 are privileged. Additionally, while parts of the other requests target legal discourse between companies and attorneys, some communications responsive to these requests may not be privileged because they may be business discourse.

Constar has raised objections unrelated to privilege with respect to Continental's requests and before any disclosure will be ordered by the Court, Continental must address these objections in order to be entitled to a log of the withheld documents.

C. General Request for Common Interest Documents

Constar broadly contends that it is entitled to all common interest materials. For the reasons discussed previously, attorney communications on common legal interests between Constar and others are privileged, and therefore, Continental is not entitled to the requested materials.

**CONCLUSION**

For the reasons discussed, the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine will be denied.

An Order consistent with this Memorandum Opinion will be entered.

**ORDER**

At Wilmington, this 19th day of November 2003, for the reasons **[*9]** discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 21132**
View: Full
Date/Time: Monday, October 30, 2006 - 10:46 AM EST

* Signal Legend:
 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
 - Caution: Possible negative treatment
 - Positive treatment is indicated
 - Citing Refs. With Analysis Available
 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

Service: **Get by LEXSEE®**
Citation: **1997 us dist lexis 8816**

*1997 U.S. Dist. LEXIS 8816, \*; 37 V.I. 176*

ANTHONY GIOVAN, an Individual, Plaintiff, v. ST. THOMAS DIVING CLUB, INC , and
HARBORSIDE CORPORATION, RICHARD R. DOUMENG a/k/a DICK DOUMENG, an Individual,
Defendants.

CIV. NO. 1996-123

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE VIRGIN ISLANDS, DIVISION
OF ST. THOMAS AND ST. JOHN

1997 U.S. Dist. LEXIS 8816; 37 V.I. 176

June 13, 1997, Decided

**DISPOSITION:** **[\*1]** Defendants' January 17, 1997, Motion to Compel DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant sub-lessees requested that the court enter an order
determining that all matters of communication between plaintiff lessee and his former
counsel and present counsel made in the presence of the lessee's daughter were not
privileged. The sub-lessees' motion to compel sought the examination of the lessee's
daughter as to matters revealed in her presence and thus, presumably not protected by
the attorney-client privilege.

**OVERVIEW:** The sub-lessees argued that any conversations between the lessee and his
attorneys in the presence of his daughter waived the attorney-client privilege. The general
rule was that conversations in the presence of a nonessential third party were not
privileged. However, a disclosure in the presence of a client's agent or a person with
commonality of interest did not vitiate the privilege. An agency relationship between the
lessee and his daughter could not be assumed from the mere fact that she acted for the
elderly lessee at times, but the court found that the motion could be resolved under the
common interest doctrine. The lessee's daughter was one of the lessee's heirs. She was
interested in the effect of the lease and subleases on the heirs' interest and in the
litigation's outcome. The sub-lessees had also threatened potential litigation against the
lessee's daughter arising out of her relationship with the lessee and the sublease and any
interest she had in terminating the sublease for her own benefit. The court concluded that
there was a sufficient community of interest and that the presence of the lessee's
daughter in meetings with counsel did not defeat the privilege.

**OUTCOME:** The court denied the sub-lessees' motion to compel.

**CORE TERMS:** attorney-client, legal advice, deposition, disclosure, common interest,
sublease, business affairs, third party, present counsel, conversations, agency relationship,
general rule, settlement, heirs, manifestation, retention, non-party, vitiate, able to provide,
leased property, former counsel, pending suit, year lease, participated, furtherance,
privileged, territory, advancing, notified, one-half

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Evidence > Privileges > Attorney-Client Privilege > Scope 🔍

*HN1* ± Courts have narrowly construed the attorney-client privilege finding that it obstructs the truth-finding process. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Elements

*HN2* ± The traditional elements of the attorney-client privilege which identifies communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication is made (a) is a member of the bar of the court or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort and (4) the privilege has been (a) claimed and (b) not waived by the client. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope

*HN3* ± The attorney-client privilege exists only to the extent that the communications are necessary for obtaining informed legal advice, which might not otherwise have occurred. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope

Evidence > Privileges > Attorney-Client Privilege > Waiver

*HN4* ± The general rule provides that conversations between a client and his attorney are not privileged where there is a nonessential third party present. But, the courts have also concluded that the presence of a third party does not necessarily vitiate the attorney-client privilege. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope

*HN5* ± Courts have crafted exceptions to the general rule regarding attorney-client privilege when disclosure to a third party is necessary for the client to obtain informed legal advice. For example, courts have held that the disclosure in presence of the client's agent or a person with commonality of interest with the client will not vitiate the attorney-client privilege. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope

*HN6* ± In order for the conversations between a client and counsel, held in the presence of a third party, to be classified as an exception within the agency exception to the general rule precluding retention of legal advice in the presence of third parties, the third party's presence must have been necessary for the retention of legal advice. That is the third party's presence must have been essential to and in furtherance of the communication and absent disclosure of the communication to the third party, the purpose of the attorney-client privilege would not have been fulfilled because the client could not or would not have obtained legal assistance. More Like This Headnote

Business & Corporate Law > Agency Relationships > Establishment > Elements > General Overview

*HN7* ± An agency relationship cannot be assumed from the mere fact that one does act for

another. The agency relationship results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. It requires agreement for the creation of a fiduciary relationship with control by the beneficiary.  More Like This Headnote

Business & Corporate Law > Agency Relationships > Establishment > Elements > General Overview ⇐

*HN8* ⭐ The basic factors taken into consideration in determining the nature of an express agency relationship are: (1) a manifestation by the principal that the agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal shall be in control of the undertaking.  More Like This Headnote

Business & Corporate Law > Agency Relationships > Authority to Act > Apparent Authority > General Overview ⇐

*HN9* ⭐ Apparent agency authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of the actual agency relationship.  More Like This Headnote

Business & Corporate Law > Agency Relationships > Authority to Act > Apparent Authority > General Overview ⇐

*HN10* ⭐ Apparent authority is a way of creating an agency relationship which flows from the conduct of the principal. Even though a person may not be an actual agent, based on the manifestations of the principal, that person may be an agent by virtue of apparent authority.  More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope ⇐

*HN11* ⭐ The common interest doctrine protects communications made when a non-party sharing the client's interests is present at a confidential communication between attorney and client, but even where the non-party who is privy to the attorney-client communications has never been sued on the matter of common interest and faces no immediate liability, it can still be found to have a common interest with the party seeking to protect the communications.  More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope ⇐

*HN12* ⭐ A community interest exists where different persons or separate corporations have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. The key consideration is that the nature of the interest be identical, not similar, and be legal, not commercial.  More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope ⇐

Evidence > Privileges > Attorney-Client Privilege > Waiver ⇐

*HN13* ⭐ No waiver of the attorney-client privilege occurs by reason of disclosure of confidential communications to business associates to whom disclosure is reasonably necessary.  More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope ⇐

Evidence > Privileges > Attorney-Client Privilege > Waiver ⇐

HN14⊹ Parties with shared interests in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege.  More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege > Scope ᶜᵤ

Evidence > Privileges > Attorney-Client Privilege > Waiver ᶜᵤ

HN15⊹ Pursuant to the common interest rule the disclosure of any materials to family members, where such information is provided to determine if they want to join other family members in a pending lawsuit against the same set of defendants and based upon the same issues to be litigated, does not waive the attorney-client privilege.  More Like This Headnote

**COUNSEL:** Appearances

James Derr, Esq., St. Thomas, V.I., counsel for plaintiff.

Samuel H. Hall, Jr., Esq., Birch, de Jongh, Hindels & Hall, St. Thomas, V.I., counsel for defendants.

**JUDGES:** GEOFFREY W. BARNARD, U.S. MAGISTRATE JUDGE

**OPINION BY:** GEOFFREY W. BARNARD

**OPINION:** ACTION FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, PRELIMINARY and PERMANENT INJUNCTIVE RELIEF

**MEMORANDUM OPINION and ORDER**

**Geoffrey W. Barnard**, Magistrate Judge

THIS MATTER is before the Court on the defendants' January 17, 1997, Motion to Compel, seeking the examination of Alkione Giovan (Alkione), the plaintiff's daughter, as to matters revealed in her presence and thus, presumably not protected by the attorney-client privilege. The Court heard the arguments of counsel on Wednesday, February 5, 1997. The plaintiff was represented by his counsel James Derr, Esq. and the defendants were represented by their counsel Samuel H. Hall, Esq.

In said motion and oral argument, the defendants request that the Court enter an order determining that all matters of communication between the plaintiff and his former counsel Charles Herndon, Esq. and present counsel **[*2]** made in the presence of Ms. Giovan are not privileged and, therefore, subject to examination.

**I. FACTS**

The facts of this matter as presented reveal that the elderly plaintiff leased property in Frenchtown, St. Thomas, V.I. on a ninety-nine (99) year lease, due to expire in 2067; that a portion of the said leased premise has been subleased to the defendants until 2017; that Alkione resides on the leased premises; that in February 1996, the plaintiff retained Attorney Herndon to review the sublease agreement between him and the defendants; that some time after meetings with counsel, the plaintiff, in a letter directed to the defendants, detailed events of default by them; and that in May 1996, Attorney Herndon, via a letter, notified the

defendants that the sublease was to be terminated effective June 1996.

This action was later commenced. The deposition of the plaintiff and Ms. Giovan was duly noticed. The plaintiff's deposition was taken on October 22, 1996 and Alkione's deposition commenced later the same day. At Alkione's deposition, defendants inquired into the contents of the discussions between the plaintiff and his former counsel at which Alkione was present. The **[*3]** plaintiff's present counsel, James Derr, Esq., objected to these questions arguing that said questions invaded the attorney-client privilege.

In argument before the Court, plaintiff notified the Court that Alkione provides a number of services for her father because of his advancing age; that she assists him in managing the leased property; that she assists him in developing some of the property; and that Alkione is one of the plaintiff's heirs and will have some responsibility with respect to the 99 year lease and the subleases. Moreover, the plaintiff represented that he and Alkione were referred by Attorney Herndon to present counsel in regards to the potential litigation of the sublease dispute; that Ms. Giovan attended the first meeting and several other meetings between plaintiff and present counsel; that Ms. Giovan was able to provide information to counsel regarding the pending suit that the plaintiff could not recall; that she was also able to provide other information which was not readily available; that counsel used the joint information to provide legal advice to the plaintiff and Alkione regarding their rights under the lease and the sublease. Furthermore, Alkione was **[*4]** advised regarding her status as one of the plaintiff's heirs. Importantly, at the hearing, both parties informed the Court that the parties have previously met to resolve this matter and that Alkione was present and fully participated in the settlement discussions.

Based on the above, the defendants argue that any conversations made between the plaintiff and his former attorney, Charles B. Herndon, Esq., in the presence of Ms. Giovan effectuated a waiver of the attorney-client privilege and said conversations are subject to inquiry on oral examination of Ms. Giovan. On the other hand, plaintiffs argue that the attorney-client privilege was not vitiated because Alkione's presence at said meetings was necessary and in furtherance of the communication and the retention of legal advice, and furthermore, Alkione shared a common interest with the plaintiff in the resolution of this matter.

This Court must decide whether the attorney-client privilege was waived, as to the communications between the plaintiff and his former and present counsel, because the discussions occurred in the presence of a third party, namely, Alkione Giovan, the plaintiff's daughter. And lastly are there any **[*5]** exceptions to the third party disclosures which would preserve the privilege.

## II. DISCUSSION

*HN1* ⚡Courts have narrowly construed the attorney-client privilege finding that it obstructs the truth-finding process. *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991), *Advanced Technology Associates Inc., v. Herley Industries, Inc.*, 1996 U.S. Dist. LEXIS 17931, 1996 WL 711018 (E.D. Pa. 1996) *HN2* ⚡The traditional elements of the attorney-client privilege which identifies communications that may be protected from disclosure in discovery are:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication is made (a) is a member of the bar of the court or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the

purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort and (4) the privilege has been (a) claimed **[\*6]** and (b) not waived by the client.

*Advanced Technology Associates Inc.*, 1996 WL 711018

[HN3]Said privilege exists only to the extent that the communications are necessary for obtaining informed legal advice, which might not otherwise have occurred. *Id.* [HN4]The general rule provides that "conversations between a client and his attorney are not privileged where there is a nonessential third party present." *United States v. Jones*, 623 F. Supp. 110, 112 (E.D. Pa. 1983) (citations omitted), *Super Tire Engineering Co. v. Bandag Inc.*, 562 F. Supp. 439, 441 (E.D. Pa. 1983). But, the courts have also concluded that the presence of a third party does not necessarily vitiate the attorney-client privilege. *Id.*

[HN5]Courts have, thus, crafted exceptions to the general rule when disclosure to a third party is necessary for the client to obtain informed legal advice. *Westinghouse Electric Corp. v. Republic of Phillipines*, 951 F 2d 1414, 1424 (3d Cir. 1991), *Advanced Technology Associates*, 1996 WL 711018. For example, courts have held that the disclosure in presence of the client's agent or a person with commonality of interest with the client will not vitiate the attorney-client **[\*7]** privilege. *Westinghouse Electric Corp.*, *In Re Grand Jury Investigation*, 918 F.2d 374 (3d Cir. 1990), *Interfaith Housing Delaware Inc. v. The Town of Georgetown*, 841 F. Supp. 1393, 1397 (D. Del. 1994).

**a. Agency**

[HN6]In order for the conversations between plaintiff and counsel, held in the presence of Alkione, to be classified as an exception within the agency exception to the general rule precluding retention of legal advice in the presence of third parties, Alkione's presence must have been necessary for the retention of legal advice. That is her presence must have been essential to and in furtherance of the communication and absent disclosure of the communication to her, the purpose of the attorney-client privilege would not have been fulfilled because the client could not or would not have obtained legal assistance. *Westinghouse Electric Corp.* and *Advanced Technology Associates, Inc.*

The plaintiff has painted a picture portraying Alkione as his right hand in his business affairs because of his advancing age and diminished capacity for recollection. Alkione provided assistance during conversations with counsel regarding the plaintiff's business affairs and attended **[\*8]** the conferences between plaintiff and counsel. Counsel also represented that her communications were essential in determining the facts in order to properly advise the plaintiff.

Pursuant to her deposition, however, Alkione asserted that she was not involved in the decision to file the instant complaint, nor did she make the decision to seek legal advice, the plaintiff having made said decision on his own. n1 In the deposition and according to the testimony at the hearing, Alkione did, however, handle the plaintiff's day-to-day business affairs while he was out of the territory during one-half the year; assisted him with repairs to the apartments; made deposits; paid light bills; and took an active interest in the plaintiff's business.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Alkione Giovan's deposition of 10/22/96 pg. 17.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Although, the plaintiff made the decision to seek legal advice on his own and Alkione did not participate in the selection of counsel, the Court finds that she provided substantial assistance to the plaintiff in his business affairs **[*9]** and in recounting events to counsel regarding said business dealings to enable counsel to provide adequate legal advice to the plaintiff.

This finding, however, is not enough to support a conclusion that Alkione was, in fact, the plaintiff's agent. *HN7* An "agency [relationship] cannot be assumed from the mere fact that one does act for another." *Clayton v. McCullough*, 448 Pa. Super. 126, 670 A.2d 710 (Pa. Super. 1996) *appeal denied*, 677 A.2d 838 (Pa. 1996). The agency relationship results from "the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Turley v. Kotter*, 263 Pa. Super. 523, 398 A.2d 699, 702 (Pa. Super. 1979). It requires agreement for the creation of a fiduciary relationship with control by the beneficiary. *HH(US), Inc., v. Bozel Mineracao E. Ferroligas, S.A.*, 175 B.R. 188 (Bankr. W.D. Pa. 1994). *HN8* The basic factors taken into consideration in determining the nature of the express agency relationship are: (1) a manifestation by the principal that the agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the understanding **[*10]** of the parties that the principal shall be in control of the undertaking. *Id.* at 194.

Alkione testified at the deposition that she did not receive a salary from the plaintiff. However, she did testify that she recently became the secretary or treasurer of a corporation formed by the plaintiff. The discussions with counsel did not concern said corporation, however. n2 Based on the testimony, the Court notes that no evidence was presented by the plaintiff indicating that there was a formal agreement, express or implied, between the plaintiff and Alkione appointing her as his agent.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Alkione Giovan's 11/22/96 deposition, pg. 27.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

This Court must also examine whether the conduct of the plaintiff led other persons to believe that Alkione was his agent. *HN9* "Apparent agency [authority] arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of the actual agency relationship." *Atlantic Tel. and Tel. Co. v. Winback* **[*11]** *and Conserve Program, Inc.*, 42 F.3d 1421, 1439 (3d Cir. 1994) *cert denied*, 514 U.S. 1103, 131 L. Ed. 2d 757, 115 S. Ct. 1838 (1995), *National Labor Relations Board v. L.& J Equipment Co.*, 745 F.2d 224, 232 (3d Cir. 1984) *reh'g denied*, 750 F.2d 25 (3d Cir. 1984), *Bensalem Township v. Coregis Indemnity Co., et al.*, 1995 U.S. Dist. LEXIS 6329, 1995 WL 290438, (E.D. Pa. 1995) *aff'd*, 77 F.3d 461 (3d Cir. 1996). *HN10* Apparent authority is a way of creating an agency relationship which flows from the conduct of the principal. *Bensalem Township.* Even though a person may not be an actual agent, based on the manifestations of the principal, that person may be an agent by virtue of apparent authority.

The defendants argue against any findings of an agency relationship between the plaintiff and Alkione. Based on the testimony, Alkione operated the plaintiff's business while he was out of the territory. And according to the deposition, the plaintiff was out of town for usually one-half of any given year. Importantly, the defendants have asserted that Alkione was allowed and did participate in settlement discussions between the parties. This underscores the important role that she has played and continues to play in the **[*12]** handling of the plaintiff's business affairs. The Court, however, will not make such a finding on Alkione's agent status, at this time, as evidence of reliance, crucial to a finding of apparent agency, was also not presented. Though the plaintiff has intimated the existence of an agency relationship, the evidence establishing same was scarce. Moreover, the Court need not decide the instant motion on the agency grounds as it can be resolved on the common interest question, and the agency determination is a question better left to the sound discretion of a jury.

**b. Common Interest Doctrine**

Another exception to the general rule which voids the attorney client privilege upon disclosure to a third party is the common interest doctrine. The courts, though, have not described the scope of the doctrine with precision. Some courts have held that *HN11*✲"the rule protects communications made when a non-party sharing the client's interests is present at a confidential communication between attorney and client, but that even where the non-party who is privy to the attorney-client communications has never been sued on the matter of common interest and faces no immediate liability, it can still **[*13]** be found to have a common interest with the party seeking to protect the communications." *In re State Commission of Investigation Subpoena Number 5441*, 226 N.J. Super. 461, 544 A.2d 893, 896 (N.J. Super. Ct. App. Div. 1988) *cert. denied*, 113 N.J. 382, 550 A.2d 484 (N.J. 1988), (citing to *United States v. Zolin*, 809 F.2d 1411 (9th Cir. 1987)). Other courts have held that *HN12*✲"a community interest exists where different persons or separate corporations have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.... The key consideration is that the nature of the interest be identical, not similar, and be legal, not commercial." *Id., Pittston Co., v. Allianz Insurance Co.*, 143 F.R.D. 66 (D. N.J. 1992). Still other courts have stated that *HN13*✲"no waiver of the attorney-client privilege occurs by reason of disclosure of confidential communications to business associates to whom disclosure is reasonably necessary." *Id.* Lastly, other courts have held that *HN14*✲"parties with shared interests in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege." **[*14]** *Thompson v. Glenmede Trust Co.*, 1995 U.S. Dist. LEXIS 18780, 1995 WL 75243 (E.D. Pa. 1995).

Upon consideration of the testimony, the Court notes that Alkione has and continues to handle some of the plaintiff's business affairs; she has participated in the settlement discussions, therefore, she is interested in the outcome and settlement of the instant litigation; she has provided information to counsel regarding the plaintiff's business affairs; and she is one of the heirs and, as such, is interested in the effect of the master lease and subleases on the heirs' interest. Alkione was, thus, taking an ordinary and expected advisory role in her father's business and subsequent legal affairs. See e.g. *Schreiber v. Kellogg*, 1992 U.S. Dist. LEXIS 16180, 1992 WL 309632 (E.D. Pa. 1992).

The Court also notes that the defendants have threatened potential litigation against Alkione arising out of her relationship with her father and the subleases, more particularly, the discussions regarding whether she wanted to terminate the sublease for her own benefits. Thus, within this same context, the *Thompson* court has held that *HN15*✲pursuant to "the common interest rule ... the disclosure of any materials to family members, where such information was **[*15]** provided to determine if they wanted to join other family members in [the] pending lawsuit against the same set of defendants and based upon the same issues to

be litigated, did not waive the attorney-client privilege."

Importantly, the defendants by their action cannot now be heard to complain that Alkione does not share a common interest with the plaintiff in the resolution of this matter. The Court, thus, concludes that the plaintiff and Alkione have a sufficient community of interest to permit the plaintiff to disclose and discuss the pending suit with counsel in the presence of Alkione without vitiating the attorney-client privilege.

## III. CONCLUSION

Based on the facts and testimony as presented before the Court, the plaintiff has demonstrated that Alkione Giovan shares a common interest in the instant litigation with the plaintiff, that she has acted as an advisor in the plaintiff's business and legal affairs. Thus, her presence and participation at the meetings between the plaintiff and his counsel do not defeat the attorney-client privilege. And while she may be examined with respect to facts within her knowledge, the substance of her communications with her counsel **[*16]** and her father's communications with counsel in her presence will be protected. Accordingly, it is hereby

**ORDERED** that the defendants' January 17, 1997, Motion to Compel is **DENIED**.

DATED: JUNE 13, 1997

GEOFFREY W. BARNARD

U.S. MAGISTRATE JUDGE

Service: **Get by LEXSEE®**
Citation: **1997 us dist lexis 8816**
View: **Full**
Date/Time: Monday. October 30. 2006 - 10:47 AM EST

\* Signal Legend:
🐷 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
  - Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1998 us dist lexis 20628**

*1998 U.S. Dist. LEXIS 20628, \**

Richard McCurdy, Trustee, Laborers' Industrial Pension Plan, Plaintiff, v. Wedgewood Capital
Management Co., Inc., Defendant.

CIVIL ACTION No. 97-4304

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1998 U.S. Dist. LEXIS 20628

December 30, 1998, Decided
December 31, 1998, Filed

**DISPOSITION:  [\*1]**  Defendant's motion for entry of a protective order (Doc. # 19)
granted in part and denied in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant moved for entry of a protective order in order to
prevent disclosure of some information not relevant to plaintiff's Employment Retirement
Income Security Act, 29 U.S.C.S. §§ 1001 et seq., claim.

**OVERVIEW:** Plaintiff, a pension fund, brought an action through its trustee against
defendant, an investment management company, pursuant to the Employee Retirement
Income Security Act, 29 U.S.C.S. §§ 1001 et seq. Plaintiff suffered harm when defendant
breached its fiduciary duty by investing $ 950,000.00 of plaintiff's funds in a limited
partnership, which subsequently lost money. Plaintiff sought to discover documents
related to the challenged investment from defendant. The court reviewed defendant's
motion for a protective order to prevent disclosure of some of the information. The court
found that, with regard to information as to the identity of defendant's clients other than
plaintiff and the co-limited partner, plaintiff did not demonstrate a need for the
information and defendant showed that the identity of its other clients was irrelevant to
the subject matter of the action. Accordingly, defendant was entitled to redact the names
of its other clients. Information regarding the co-limited partner and information relating
to breaches of the investment guidelines of other clients was relevant to the subject
matter of the action. Accordingly, such information was subject to discovery.

**OUTCOME:** Defendant's motion for entry of a protective order was granted as to
information relating to the identity of defendant's other clients, as that information was
not relevant to plaintiff's action. The motion was denied as to information relating to
defendant's breach of investment guidelines of its other clients and information regarding
the co-limited partner, as that information was relevant.

**CORE TERMS:** discovery, protective order, redaction, partnership, subject matter, good
cause, redacted, relevance, production of documents, partner, guidelines, redact, information
relating, hardship, information contained, memorandum, disclosure, unredacted, breached,
burden of demonstrating, identifying information, consumer credit, prudent, privileged,
redacting, fiduciary duty, reply, co-limited, pockets

### LexisNexis(R) Headnotes  ♦ Hide Headnotes

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview

$^{HN1}$ See 29 U.S.C.S. § 1104(a)(1)(B) and (C).

Civil Procedure > Discovery > Protective Orders

$^{HN2}$ Fed. R. Civ. 26(c) provides that a person from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from annoyance, embarrassment, oppression, or undue burden or expense. This rule authorizes the court to order that certain matter not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. The court is authorized to issue a protective order only after a showing that good cause exists for the protection of the material. The party requesting the protective order has the burden of demonstrating good cause. Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Discovery > Methods > General Overview

Civil Procedure > Discovery > Protective Orders

Civil Procedure > Discovery > Relevance

$^{HN3}$ In determining whether "good cause" exists for the issuance of a protective order under Fed. R. Civ. P. 26(c), courts apply a balancing of interests standard. Irrelevancy satisfies the good cause requirement. The burden of showing that the requested discovery is not relevant is on the party resisting discovery. Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. The relevance standard will depend on the context of the particular action, and the determination of relevance is within the district court's discretion. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Discovery > Methods > General Overview

Civil Procedure > Discovery > Protective Orders

$^{HN4}$ A motion under Fed. R. Civ. P. 26(c) to limit discovery requires the district judge to compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if it is denied. He must consider the nature of the hardship as well as its magnitude, and thus give more weight to interests that have a distinctively social value than to purely private interests; and he must consider the possibility of reconciling the competing interests through a carefully crafted protective order. More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview

Civil Procedure > Discovery > Relevance

$^{HN5}$ Fed. R. Civ. P. 26(b)(1) provides in part that, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. "Relevance" for discovery purposes is broadly construed and trial courts exercise considerable discretion in handling discovery matters. Information

sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). More Like This Headnote

**COUNSEL:** For RICHARD MCCURDY, TRUSTEE, PLAINTIFF: RICHARD KIRSCHNER, M. KAY GARTRELL, KIRSCHNER & GARTRELL, P.C., WASHINGTON, DC USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: DOUGLAS N. CANDEUB, ADELMAN, LAVINE, GOLD AND LEVINE, PHILA, PA USA. MARK S. MILLER, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA. MARK J. FOLEY, KLETT LIEBER ROONEY & SCHORLING, PHILADELPHIA, PA USA.

For POWELL, GOLDSTEIN, FRAZER & MURPHY LLP, MOVANT: W. SCOTT SORRELS, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA.

**JUDGES:** PETER B. SCUDERI, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** PETER B. SCUDERI

### OPINION: MEMORANDUM AND ORDER
PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

December 30, 1998

This matter comes before the Court on the defendant's motion for entry of a protective order. (Doc. # 19). For the following reasons, defendant's motion is granted in part and denied in part.

### Background

Plaintiff Richard McCurdy, Trustee, Laborer's Industrial Pension Plan, a pension fund, brought this action against defendant Wedgewood Capital Management Co., Inc., an investment management company, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1104(a)(1)(B) & (C); 1109(a) ("ERISA"). Title 29 United States Code sections 1104(a)(1) (B) and (C), provide:

HN1

(a) Prudent man standard of care
(1) a fiduciary shall discharge **[\*2]** his duties with respect to a plan solely in the interest of the participants and beneficiaries and (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matter would use in the conduct of an enterprise of like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, under the circumstances it is clearly prudent not to do so.

29 U.S.C. § 1104(a)(1)(B) & (C).

Plaintiff claims that it suffered harm when defendant breached its fiduciary duty by investing $ 950,000.00 of plaintiff's funds in a limited partnership. Plaintiff contends that this investment violated the parties' contract for investment services and investment guidelines

incorporated therein which restricted defendant to investments in highly-marketable, fixed-income securities. Plaintiff also asserts that defendant breached its fiduciary duty when it (1) signed limited partnership agreements, and other partnership documents in plaintiff's name without legal authority; (2) became the General Partner in the very partnership in which it had made plaintiff **[*3]** a limited partner; (3) required plaintiff to pay $ 51,000 more than PaSWIF, plaintiff's co-limited partner, for identical 49.5% interest in PMSR III; (4) issued misleading reports that failed to inform plaintiff of facts related to its management of plaintiff's money including the fact that it had been made limited partner in two partnerships and that the partnerships were created for the purpose of dealing in highly speculative investments and to fulfill defendant's own obligation to another corporation, Universal Investment Services, Inc., rather than because they were thought to be a good and appropriate investment. (Doc. 20 at 7, 8 n.8, 16, 22; Doc. 24 at 2-3; Plaintiff's Reply to Defendant's Memorandum in Support of its Reactions in its Production of Documents at 2). Thus. Plaintiff alleges that "if [defendant] harmed the plaintiff in order to line its own pockets or the individual pockets of its principals, or to benefit other clients, or to satisfy its other obligations unrelated to the plaintiff," then the "defendant violated its duty of loyalty to the plaintiff." (Doc. 20 at 25). The investment, which had allegedly been purchased in 1993 for $ 950,000, was sold for $ 363,433.16 **[*4]** in 1996.

In the challenged investment, the plaintiff, referred to in defendant's documents variously as Philadelphia Industrial Laborers Plan, Laborers Industrial Pension Fund, PA Laborers Industrial Pension Fund, or PhLIPF, was made a co-limited partner with Pennsylvania State Workmen's Insurance Fund (PASWIF) in what was referred to in defendant's documents as Purchased Mortgage Servicing Rights III, Limited Partnership, ("PMSR") or Tranche IV. (See Def. Wedgewood Capital Management's Mem. in Supp. of its Redactions in its Production of Docs. at 2; Plaintiff's Reply to Def. Wedgewood's Memorandum in Support of its Redactions in its Production of Documents at 2).

The plaintiff seeks to discover documents related to the challenged investment from the defendant. Defendant seeks a protective order to prevent disclosure of some of the information contained in the documents. Specifically, defendant seeks the Court's permission to redact from the documents the identity and substantive information regarding defendant's former, current or prospective clients. In accordance with this Court's order dated November 16, 1998, (Doc. 29). defendant produced one set of redacted documents **[*5]** and one set of unredacted documents for this Court's review accompanied by a memorandum setting forth the reason for the redactions. (Doc. 30). Plaintiff then submitted a reply to defendant's memorandum in support of its redactions in its production of documents. (Doc. 32).

## Discussion

*HN2*⚓Federal Rule of Civil Procedure 26(c), which defendant invokes for the purpose of obtaining a protective order, provides that a person from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). This rule authorizes the court to order that certain matter not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. As noted, the court is authorized to issue a protective order only after a showing that good cause exists for the protection of the material. The party requesting the protective order has the burden of demonstrating good cause. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (stating party seeking protective order must demonstrate that good cause exists for protection **[*6]** of particular material and holding that parties failed to sustain burden of demonstrating specific injury from public dissemination of privileged documents). "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Id. *HN3*⚓In determining whether "good cause" exists for the issuance of a protective order, courts apply a balancing of interests standard. n1 See In re Eli

Lilly & Co. Prozac Prod. Liab. Litig., 142 F.R.D. 454, 460 (S.D.Ind. 1992) (motion by drug manufacturer for entry of protective order redacting names from documents); Arenson v. Whitehall Convalescent & Nursing Home, Inc., 161 F.R.D. 355, 358 (N.D.Ill. 1995) (information sought had significant probative value and privacy interests were sufficiently protected by redaction of names). Irrelevancy satisfies the good cause requirement. Hall v. Harleysville Ins. Co , 164 F.R.D. 172, 173 (E.D.Pa. 1995) (although contents of consumer credit reports were relevant to action, names and other identifying information were not and were subject to redaction); Smith v. Dowson, 158 F.R.D. 138, 140 (D.Minn, 1994) (granting protective order on ground **[\*7]** that actions taken by arresting officers in subject investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of his civil rights). The burden of showing that the requested discovery is not relevant is on the party resisting discovery. See In re Bell Atlantic Securities Litig., 1993 WL 514408 (E.D.Pa. 1993) (unreported). Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. Id. The relevance standard will depend on the context of the particular action, and the determination of relevance is within the district court's discretion. Thompson v. Glenmede Trust, 1995 U.S. Dist. LEXIS 18780, 1995 WL 752422, at 2 n. 4 (E.D.Pa. 1995).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 This standard has been described as follows:

HN4

A motion under Rule 26(c) to limit discovery requires the district judge to compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if it is denied. He must consider the nature of the hardship as well as its magnitude, and thus give more weight to interests that have a distinctively social value than to purely private interests; and he must consider the possibility of reconciling the competing interests through a carefully crafted protective order. In re Eli Lilly & Co. Prozac Prod. Liab. Litig. 142 F.R.D. 454, 455 (S.D.Ind. 1992).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*8]**

With regard to information as to the identity of defendant's clients other than PaSWIF and the plaintiff, I find that plaintiff has not demonstrated a need for the information and defendant has shown that the identity of its other clients is irrelevant to the subject matter of this action. See, e.g., In re Eli Lilly & Co. Prozac Prod. Liab. Litig., 142 F.R.D. 454, 460 (S.D.Ind. 1992) (granting protective order redacting names from documents); Hall v. Harleysville Ins. Co., 1992 WL 202169 (E.D.Pa. 1992) (names and other identifying information contained in consumer credit report were not relevant to action and were subject to redaction). This court does not see any way that the names of other clients could possibly lead to relevant discovery. Accordingly, defendant is entitled to redact the names of those clients.

We also find, however, that plaintiff has demonstrated sufficient need for information

concerning and identifying PaSWIF in documents and paragraphs relating to PMSR III and the Tranche IV investment and that defendant has not demonstrated that such information is irrelevant to plaintiff's claim that defendant breached its fiduciary duties. In light of plaintiff's **[*9]** allegation that such breach occurred when plaintiff was charged 51% more than PaSWIF for an identical 49.5% interest in PMSR III, the information regarding PaSWIF is relevant to the subject matter of this action and will aid plaintiff in determining the basis for the disparate treatment. Accordingly, information, if any, relating to PaSWIF's investment in PMSR III or Tranche IV contained in the unredacted documents submitted to this Court for review shall be subject to discovery.

Moreover, we find that defendant is not entitled to redact certain other information because defendant has not shown that the information does not come within the broad scope of relevance as defined in Fed. R. Civ. P. 26(b)(1). *HN5* Federal Rule of Civil Procedure 26(b)(1) provides in part that, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." "Relevance" for discovery purposes is broadly construed and trial courts exercise considerable discretion in handling discovery matters. Under Rule 26(b), "information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the **[*10]** discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). In the instant case, we find that substantive information relating to breaches of the investment guidelines of other clients of the defendant n2 or relating in any way to PMSR III or Tranche IV, is relevant to the subject matter of this litigation, if not the specific claims themselves. Therefore, such information must be disclosed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Indeed, it appears clear that information relating to other client's of the defendant, possibly with similar investment guidelines and identical breaches thereof during the relevant time period, is relevant to the subject matter of the instant litigation. In this regard, this court has highlighted and tabbed one portion of a document so that it may be disclosed to the plaintiff by the defendant.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

We also note that defendant should ensure that any labels or headings on the documents submitted to this Court indicating the nature of the document or describing information contained therein have not been redacted because such **[*11]** information is necessary to make the redacted documents comprehensible.

**ORDER**
PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

December 30, 1998

AND NOW, this 30Th day of December, 1998, upon consideration of Defendant Wedgewood Capital Management's Memorandum in Support of its Redactions in its Production of Documents, (Doc. 30), and Plaintiff Richard McCurdy, Trustee, Laborers' Industrial Pension Plan's reply thereto, (Doc. 32), and having reviewed the documents at issue in unredacted form it is hereby ORDERED that:

1. Defendant's Motion is GRANTED, IN PART, and defendant properly redacted the names of any present, former, or prospective clients that appear in the documents submitted to the court except Pennsylvania State Worker's Insurance Fund ("PaSWIF").

2. Defendant's Motion is DENIED, IN PART, and defendant may not redact (a) the name of its client, PaSWIF; (b) any substantive information contained in the documents relating to PaSWIF's investment in PMSR III or Tranche IV; or (c) any additional substantive information relating either to breaches of the investment guidelines of other clients of the defendant or relating in any way to PMSR III or Tranche IV. **[*12]**

3. The documents, redacted in accordance with this order, are to be delivered by the defendant to plaintiff within 7 days from the date of this order.

BY THE COURT:

PETER B. SCUDERI, U.S.M.J.

Service: **Get by LEXSEE®**
Citation: **1998 us dist lexis 20628**
View: Full
Date/Time: Monday, October 30, 2006 - 10:48 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs  With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc  All rights reserved