)

1   agreement, and whether we're ever authorized to

2   sue McGladrey on behalf of the estate.

3           We'd like the opportunity to work as

4   closely as we can with the Trustee to try to

5   persuade them so that it is or is not proper.

6   And if they have information that we don't know,

7   we may be wrong.  We may -- we may not be right

8   that there's a cause of action, but I do not

9   believe --

10          THE COURT:  Let me ask McGladrey,

11  why if they subpoenaed you directly, why couldn't

12  they get this?  This isn't privileged

13  information, is it?

14          MS. RENDON:  Some of the documents,

15  I think, are arguably privileged.

16          THE COURT:  Did you give them -- a

17  privilege log to the Trustee?

18          MS. RENDON:  We did not.  What we

19  did is we copied documents that the Trustee

20  requested, and those didn't necessarily -- were

21  not necessarily the privileged documents.

22          So I just -- we have a larger volume

23  of documents.

24          THE COURT:  I'm not sure I

168

 1    understand.  You gave the Trustee privileged

 2    documents or you didn't?

 3              MS. RENDON:  I don't believe we did.

 4              THE COURT:  Why couldn't they

 5    subpoena those from you right now?  If this was a

 6    motion for me to authorize them to take a 2004

 7    examination, why wouldn't I -- I mean, it's sort

 8    of an obscure way of getting to the same point.

 9              Why wouldn't they be entitled to

10    that under the usual scope of 2004(b)?

11              MS. RENDON:  Your Honor, because I

12    believe there really is no other purpose for

13    Royal seeking our documents except to further a

14    civil lawsuit that they're contemplating on

15    behalf for their own personal reasons, having

16    nothing to do with the benefit of the estate.

17              They are -- there really is an in

18    pari delicto problem that applies to the estate.

19              THE COURT:  There may be, and that's

20    an affirmative defense.  And you can plead it at

21    the time.

22              MS. RENDON:  But --

23              THE COURT:  But if I take them at

24    their word that they're working with the Trustee,

1    why shouldn't they have the right to see these

2    documents?  And maybe they can convince the

3    Trustee that he's wrong on his -- on your

4    analysis of in pari delicto.  Maybe the Trustee,

5    maybe not the Trustee.

6              MS. RENDON:  Your Honor, if that

7    were the case, and if that really were Royal's

8    motivation, I don't understand why Royal would

9    dis -- would not agree to enter into a protective

10   order with us wherein people that -- that at

11   Royal, people at Royal, the only people at Royal

12   who could look at our documents are those

13   interested in analyzing estate claims and not

14   those people who are interested in analyzing

15   civil lawsuits on Royal's personal behalf.

16              I think it is very telling that

17   Mr. Gilbert would not agree to enter into that

18   agreement.  The real purpose underlying Royal's

19   interest in the McGladrey documents is for its

20   pursuit of a civil lawsuit that they simply could

21   not bring in good faith on behalf of the estate.

22              I don't think you can divorce out

23   the in pari delicto analysis.

24              THE COURT:  Why shouldn't I enter an

170                        )

1    order limiting that?

2              MR. WOLFSON:  Because it's

3    impossible.  People -- we don't have a big enough

4    time, and we're not Merrill Lynch.  We don't

5    have, you know, a big enough time.

6              It's totally uneconomical for the

7    commitment.  You'd be asking people who have no

8    familiarity of the issues to be looking at.  What

9    we will agree with, though, Your Honor, we'll

10   agree to abide by the same confidentiality

11   agreement that the Trustee is.

12              And we're not looking to, you know,

13   open up the flood gates.  If anyone else wants to              )

14   see it, let them go through the same exercises

15   there, whether it's 2004 --

16              THE COURT:  I mean, what you're

17   really forcing here is them to bring a lawsuit,

18   and the Trustee to bring a lawsuit, and then sort

19   it out afterwards.

20              That's what you are facing by next

21   Wednesday if I deny -- if I quash the subpoena.

22              MS. RENDON:  That's possible, Your

23   Honor.  I will say this, Your Honor, in response

24   to what counsel just said, believing that they

1   don't have the resources when they're entering

2   into a $5 million settlement, they're worried

3   about a $500,000 liability.

4           It strings the bound of credibility,

5   and so I think it's very telling.

6           THE COURT:  Given the number of

7   days, it may be not impractical to do that.

8           MS. RENDON:  Well, Your Honor, I

9   will also say that it was back on September 15

10  that we were first notified that Royal had some

11  interest in our documents.  We did not receive a

12  Royal 2004 notice proceedings motion.

13          At this time, we did not directly

14  receive a subpoena, and there was no reason why

15  Royal couldn't have issued it at that point.

16  Royal has put themselves in a procedural

17  quandary.  And they're looking to abuse the

18  processes of this Court to try to get our

19  documents.

20          And, Your Honor, frankly, I believe

21  it's for an improper purpose.  It's to benefit

22  their possible civil lawsuit against McGladrey.

23          They've already referenced us in

24  proceedings that they've submitted in the MBIA

172                    )

1    lawsuit.  They have already indicated in those

2    pleadings why they think there might be a basis

3    for a civil lawsuit against McGladrey.

4                    And even if you look at Royal's

5    papers submitted in opposition to our motion to

6    quash, it speaks in terms of a private civil

7    lawsuit.  It does not speak in terms of claims

8    brought on behalf of the estate.

9                    It speaks in terms of reliance by

10   Royal as an investor on financial statements,

11   audited financial statements issued by the

12   accountant and the auditor, and not about

13   whether -- where the estate is.                    )

14                    The estate was not an investor in

15   Student Finance.  It is Student Finance, and

16   that's why there's an in pari delicto problem.

17                    I just disbelieve, Your Honor, that

18   the stated purposes of Royal's counsel are just

19   belied by the fact that there is no desire and an

20   unwillingness to enter into the protective order

21   that's very reasonable for McGladrey to have

22   asked for them to enter into.

23                    MR. WOLFSON:  Judge, these are not

24   privileged documents, and we're ultimately going

173

1   to get them any way. All we want to do is

2   interface with the Trustee, see whether or not we

3   can resolve this one remaining issue.

4           Maybe the Trustee is right, and they

5   have to -- after we look at documents, we agree

6   with the Trustee, and the Trustee doesn't bring a

7   lawsuit. We don't bring a lawsuit.

8           But we're going to get documents any

9   way. We're entitled to under the 2004 rule.

10          They're not privileged. It's only

11  confidential because McGladrey is trying to hide

12  them. It doesn't make any sense.

13          MS. RENDON: Your Honor, the offer

14  to enter into a similar confidentiality

15  agreement, well really serves no purpose. Royal

16  is the third party that we're trying to protect

17  ourselves from.

18          So Royal saying they would -- they

19  have a potential $5 million liability, it's clear

20  that if they're facing a $500 million liability,

21  that they're likely going to seek any possible

22  source to offset that liability, including

23  McGladrey.

24          And it's for that purpose they're

174

1    seeking their documents. And we would just

2    submit again that it's --

3              THE COURT: All right. I've heard

4    enough.

5              What do you have to say? A new

6    voice.

7              MS. AUERBACH: A couple points as

8    the person in the middle here. Sheryl Auerbach.

9              I don't regard this agreement as a

10   confidentiality agreement. I sent two letters

11   before it was signed to McGladrey saying, Please

12   don't call it a confidentiality agreement,

13   because it's not a confidentiality agreement.

14   And that's the very --

15             THE COURT: Well, whatever it's

16   called

17             MS. AUERBACH: The reason -- very

18   reason I inserted the paragraph that Ms. Redon

19   read was because I wanted the Trustee to be able

20   to use the documents for this, for whatever

21   purpose he thought was proper to benefit the

22   estate.

23             I did give notice as asked for in

24   the first paragraph of the letter to Ms. Redon as

1    soon as Royal told me they wanted these

2    documents, which was several weeks before they

3    issued the subpoena. And it is true, and I'm

4    representing to the Court that Royal has been

5    urging the Trustee to reconsider and to bring the

6    suit against RSM McGladrey.

7             In fact, the second exhibit to the

8    response we filed is a letter that I sent to

9    Thelen Reid, counsel for RSM McGladrey, which

10   indicated we were still investigating the claim.

11            THE COURT: Thank you. All right.

12            On the limited issue that's before

13   me, because that is how I'm supposed to deal with

14   these things, although there may be other ways to

15   get the documents, I don't think the subpoena was

16   proper.

17            You might get what you wish for,

18   counsel. You may have two lawsuits next week.

19            But the subpoena was not issued with

20   appropriate time. I'm going to enter the order

21   quashing the subpoena.

22            That doesn't mean that I might not

23   grant a motion for 2004 at some point in time,

24   and I might not allow a subpoena in the

176

1   appropriate circumstances.

2            But based on the subpoena that's out

3   there now, the method it was served, and the

4   like, I'm granting the order quashing the

5   subpoena.

6            I'm not sure that's the most

7   practical thing you could have asked for, but

8   that's what you asked for.  Looking at the letter

9   of the Federal Rules, and the Rules of Bankruptcy

10  Procedure, at this point in time, I think you're

11  correct that I don't have a 2004 motion before

12  me.  And I'm going to order the quashing of the

13  subpoena.

14           The Trustee can do what the Trustee

15  feels is appropriate under the terms of the

16  agreement that they have.

17           And you'll have what remedies you

18  might have out there in the world if they violate

19  the agreements, and you have to sue them.  I'm

20  not going to make a judgment on that right now.

21           But as far as a subpoena, and this

22  subpoena, it's quashed.

23           MS. RENDON:  Thank you, Your Honor.

24           THE COURT:  Anything else on the

177

1    agenda, folks?

2             MR. ASTIN:  Nothing else, Your

3    Honor.

4             THE COURT:  Very well.  I will be

5    looking for either a statement, or an Email, or

6    something to my deputy telling me that you're

7    going to modify the term sheet, that you've

8    talked to people, you haven't talked to people.

9    Just let me know what you're going to do.

10             MR. ASTIN:  We can Email it as an

11    attachment to His Honor?

12             THE COURT:  You do it all the time,

13    don't you?

14             MR. ASTIN:  I mean, this particular

15    item?

16             THE COURT:  Yeah.  You don't have to

17    file it.

18             First, we'll file it.  I'll attach

19    it to an order.  If you want to modify the

20    agreement.

21             MR. ASTIN:  And on the motion -- and

22    on the motion to file under seal?

23             THE COURT:  A motion to file, just

24    file the motion.

178

```
 1              MR. ASTIN:  All right.

 2              THE COURT:  Just file it in the

 3    usual fashion.  If you want to E-file the term

 4    sheets, that's fine, too.  Just let her know it

 5    is there.

 6              MR. ASTIN:  I wasn't sure how to

 7    handle the objection, that's fine, Your Honor.

 8              THE COURT:  Okay, either way.

 9              MR. ASTIN:  Mm-hmm.

10              THE COURT:  Just get it to me.  You

11    can use the old fashioned way, just have it

12    delivered.

13              MR. McMICHAEL:  You'll have them

14    tomorrow.

15              THE COURT:  I'll be here.

16              All right.  Thank you all.

17              Please leave the building promptly,

18    because they'll have the search dogs looking for

19    you.

20              (Court was recessed at 7:08 p.m.)

21

22

23

24
```

j                                                                    179

1    State of Delaware      )
                            )
2    New Castle County      )

3

4

5                    CERTIFICATE OF REPORTER

6

7            I, Heather M. Triozzi, Registered

8    Professional Reporter, Certified Shorthand

9    Reporter, and Notary Public, do hereby certify

10   that the foregoing record, Pages 1 to 179

11   inclusive, is a true and accurate transcript of

12   my stenographic notes taken on October 27, 2004,

13   in the above-captioned matter.

14

15           IN WITNESS WHEREOF, I have hereunto

16   set my hand and seal this 28th day of October,

17   2004, at Wilmington.

18

19

20

21                   Heather M. Triozzi, RPR, CSR

22

23

24

10/13/04

SETTLEMENT TERM SHEET

STUDENT FINANCE CORPORATION TRUSTEE - ROYAL INDEMNITY COMPANY

 1. Royal will make a cash settlement payment to the Trustee in the amount of $4,900,000 upon entry of a final, non-appealable order of the Bankruptcy Court approving this settlement ("Settlement Amount").

 2. Royal shall receive, upon payment of the Settlement Amount, an allowed administrative claim in the Chapter 7 case in the amount of $1,900,000 pursuant to Section 364(b) and 364(c)(1) of the Bankruptcy Code, subordinate only to the Trustee's commissions and unpaid, allowed fees of the Trustee's professionals. This administrative claim shall be paid upon the first receipt of proceeds of estate claims against third parties ("Litigation Claims"), as and when received, until such administrative claim is irrevocably paid in full, whether such proceeds are obtained by judgment, settlement or otherwise, and whether or not an action is commenced by the Trustee with respect to any such claim. In the event that the administrative claim has not been paid in full on or before the third anniversary of the approval of this settlement from the proceeds of Litigation Claims, then the balance due on the administrative claim shall be paid in full, or to the extent of available funds then on hand and thereafter as received, from any and all assets of the estate exclusive of $3 million of the Settlement Amount. No further order of the Bankruptcy Court shall be required for the payment of the administrative claim. The Trustee will not agree to any other 364(c)(1) claim without the consent of Royal. The Trustee's professionals shall be permitted to withdraw in the event that the estate does not have the resources to compensate them in amounts allowed by the Court. In such an event, Royal shall have the right to assume prosecution of any claims or undertake other matters on behalf of the estate.

 3. The Trustee will dismiss with prejudice the various actions commenced against Royal, MBIA and Wells Fargo in the Bankruptcy Court and the District Court. To the extent the Trustee commences any other action that gives rise to a claim over against Royal, the Trustee will reduce any judgment received by the amount of any corresponding judgment against Royal (the intent being that the Trustee will not obtain any further recovery directly or indirectly from Royal except as expressly provided herein). In the event the Trustee enters into an agreement with MBIA and/or Wells Fargo for additional consideration relating to the dismissal of the actions noted above, the agreement shall contain the protections for Royal set forth in paragraph 13 below.

 4. The Trustee and Royal will generally release each other, excepting only Royal's pre-petition claims against the estate (described in paragraph 5 below), Royal's administrative

559354_1

claim (described in paragraph 2 above) and their respective obligations under this Settlement Agreement. The releases will not in any way release or diminish any rights or claims by Royal or by the Trustee against any third parties, including but not limited to the trucking schools or Yao and his affiliates.

5.      The Trustee agrees, and the order approving the Settlement Order shall provide, that, as of September 30, 2004, Royal has an allowed unsecured pre-petition claim against the estate in the amount of $516,628,682, and an allowed secured pre-petition claim (secured by the interest only strips) in the amount of $45,418,321. The Trustee further agrees that Royal has the right to amend these claims from time to time (notwithstanding any bar date) in order to reflect its loss up to the date on which the Trustee proposes to make a final distribution or close the estate. Royal's allowed unsecured pre-petition claim shall be reduced to the extent that the summary judgment that was entered on behalf of MBIA, Wells Fargo, Wilmington Trust and PNC against Royal is finally reversed, vacated or modified resulting in a lesser loss so as to reflect the actual amount of Royal's loss.

6.      Royal agrees to release any claims that Royal might have against Pepper Hamilton LLP related to Student Finance Corporation in connection with any settlement between the Trustee and Pepper Hamilton LLP, provided such settlement yields a net recovery to the estate and Royal of amounts that are separately documented.

7.      The Trustee and Royal agree to cooperate with each other (and allow each other to participate) in the management of litigation of estate claims against (and objections to claims of) third parties such as trucking schools, SFC's accountants, Pepper Hamilton, the Gagne family, Andrew Yao, his wife, his children and affiliates. Dilworth shall act as primary litigation counsel on behalf of the Trustee. The Trustee agrees to bring actions against the trucking schools to recover fraudulent transfers and damages for breach of contract (and such other theories as may be applicable), except that Royal shall bring such action on behalf of the estate against CDI/TDI. The Trustee has commenced and will continue to prosecute an action against Yao, subject to the provisions of paragraph 12. To the extent the Trustee determines not to bring an action on behalf of the estate against a third party (other than CDI/TDI), Royal may do so on behalf of the estate at its sole cost and expense (with payment of such costs and fees to be recouped out of any recovery as a super-priority administrative expense before the net is paid to the estate). The Trustee and Royal will enter into an agreement in connection with litigation on behalf of the estate acknowledging their joint interests and allowing each other access to privileged information relating to such estate claims and objections to claims (other than communications (i) between the Trustee and his counsel and (ii) between Royal and its counsel). To the extent Royal is separately suing a third party subject to a similar claim by the estate, it will keep the Trustee reasonably informed of such action. Recoveries on all claims prosecuted in the name of the estate shall pass through the estate.

8.      Royal agrees to withdraw its administrative claim in the amount of approximately $700,000 in its entirety, provided that each and all other Chapter 11 administrative claims or fee applications filed by other professionals (other than those of the Trustee or his professionals) are reduced by an amount satisfactory to Royal as indicated to the Trustee in a separate letter.

9.    The Trustee will promptly move for approval of this settlement by the Bankruptcy Court. This settlement is conditioned in its entirety upon the receipt of a final, non-appealable Bankruptcy Court order approving same.

10.    The Trustee agrees to promptly sell the SFC loan portfolio (pursuant to a Section 363 auction sale subject to higher and better bids), or, in the alternative, promptly terminate the servicing arrangement relating to the unassigned SFC student loans with SLS and to arrange for a new servicer satisfactory to Royal provided that adequate arrangements can be made for office space, computer and telephone systems for the debtor.

11.    The Trustee will use his best efforts to preserve the computers and all records relating to SFC's student loans, Yao, Yao's children, wife and affiliates, and the Litigation Claims, and to give Royal reasonable access to all records relating to same (subject to privileged communications between the Trustee and his counsel).

12.    The Trustee and Royal will confer in good faith before agreeing to settle any Litigation Claim or any claim against the estate. While the Trustee retains his independent judgment with respect to any such settlement, he shall give due deference to the position of Royal with respect thereto. If the Trustee seeks to settle a Litigation Claim and Royal opposes the settlement, then the Trustee may not settle the claim without first offering Royal the option to prosecute the claim on behalf of and in the name of the estate. If Royal elects to prosecute the claim in the name of the estate then Royal will guarantee that the ultimate recovery (after payment of costs and fees associated with the continued prosecution of the claim) will be at least equal to the proposed settlement rejected by Royal. The provisions of paragraph 7 above regarding payment and recoupment of costs and expenses shall apply to any claim Royal prosecutes in the name of the estate.

13    In the event that the Trustee agrees with any other party to settle or compromise claims of the estate against such party, and to the extent that such party has or may assert a claim against Royal for, or related to, any amounts paid by such party to the estate in connection with such compromise or settlement, then the Trustee agrees that it shall be a specific and enforceable term of any such settlement or compromise that the settling party shall waive and release any rights that it may have or assert to seek payment or repayment of such settlement amounts from Royal.

14.    The motion of the Trustee to approve this settlement shall be based on this Term Sheet. No further documentation is contemplated All terms of the settlement are set forth herein. This term sheet can only be amended by a writing signed by both parties. The settlement shall be null and void if not approved by the bankruptcy court.

# ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | :     Chapter 7 |
| STUDENT FINANCE CORPORATION, | : |
| | :     Case No. 02-11620-JBR |
| Debtor. | : |
| | :     RE: DOCKET NO. 906 |

### ORDER APPROVING SETTLEMENT BETWEEN
### THE TRUSTEE AND ROYAL INDEMNITY COMPANY
### (DOCKET NO. 883)

AND NOW, this 29th day of October, 2004, upon the motion of Charles A. Stanziale, Jr.,

Chapter 7 Trustee (the "Chapter 7 Trustee") of the estate of the above-captioned debtor (the

"Debtor") to Approve Settlement with Royal Indemnity Company (the "Motion") seeking entry

of an Order approving the Settlement[1]; the Court having reviewed the Motion; it appearing to the

Court that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

(b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the Court finding that due and

adequate notice of the Motion has been given by the Chapter 7 Trustee; and the Court being fully

advised and having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein, hereby rules as follows:

1.     The Motion is GRANTED.

2.     The Settlement Term Sheet (the "Term Sheet") attached hereto as Exhibit "1",

        which is incorporated by reference as if fully set forth herein, shall be, and hereby

        is, APPROVED.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion or the

3.  The Chapter 7 Trustee and Royal are hereby authorized, without further order of the Court, to enter into all assignments and other agreements necessary to fulfill the terms of the Term Sheet, and to take any and all other actions necessary to consummate the terms of the Term Sheet in accordance with this Order.

4.  The Chapter 7 Trustee and Royal are hereby authorized, without further order of the Court, to take any and all actions consistent with, and otherwise act in accordance with the terms of the Term Sheet.

5.  Royal shall have an allowed unsecured pre-petition claim against the estate in the amount of $516,628,682, and an allowable secured pre-petition claim against the estate in the amount of $15,799,010.  Royal may amend these allowed claims from time to time (notwithstanding any bar date) in order to reflect its loss up to the date on which the Trustee proposes to make a final distribution or close the estate.

6.  If, and to the extent that, the summary judgment that was entered in the United States District Court for the District of Delaware against Royal is finally reversed, vacated or modified so as to result in a lesser loss to Royal, the amount of Royal's allowed unsecured pre-petition claim shall be reduced accordingly so as to reflect the actual amount of Royal's loss.

7.  Royal's secured pre-petition claim of $15,799,010 shall be allowed to the extent of the value of the collateral underlying that claim.  To the extent that the value of such collateral is less than $15,799,010, any deficiency shall be treated as an

561711*1

9923321

B-184

additional unsecured claim of Royal's and shall be added to Royal's allowed unsecured pre-petition claim of $516,628,682.

8.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Settlement and/or implementation of this Order.

9.    Any professional seeking fees from the estate shall submit an appropriate application to the Court.

_Joel B. Rosenthal_

The Honorable Joel B. Rosenthal
United States Bankruptcy Judge

B-185

RECEIVED 6/7/06

JUN 08 2006

Christopher A. Ward

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:                                      :
STUDENT FINANCE CORPORATION,                :
                    Debtor.                 :
                                            :
_____:       Civil Action No. 04-1551(JJF)
                                            :
CHARLES A. STANZIALE, JR.,                  :
CHAPTER 7 TRUSTEE OF STUDENT                :
FINANCE CORPORATION,                        :
                                            :
                    Plaintiff,              :
          v.                                :
                                            :
PEPPER HAMILTON LLP, et al.,                :
                                            :
                    Defendants.             :
_____:

## PEPPER HAMILTON LLP'S RESPONSES AND OBJECTIONS TO THE TRUSTEE'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Pepper

Hamilton LLP ("Pepper") objects and responds to the Second Request for Production of

Documents of Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation

Directed to Pepper Hamilton LLP (the "Requests") as follows:

### GENERAL OBJECTIONS

1.     Pepper objects to the instructions and definitions in the Requests to the

extent they seek to expand Pepper's obligations under the applicable Federal and Local Rules of

Civil Procedure.  Pepper will respond to the Requests pursuant to the Federal Rules of Civil

Procedure and Local Rules of Civil Procedure of the United States District Court for the District of Delaware.

2.    Pepper objects to the Requests to the extent they call for the disclosure of attorney work product or of materials prepared in anticipation of litigation or for trial or disclosure of privileged communications between attorney and client.

3.    Pepper objects to the Requests to the extent they call for the disclosure of confidential information.

4.    Pepper objects to the Requests, including the instructions and definitions, to the extent they are overbroad, vague, ambiguous, confusing and misleading. Pepper will respond in accordance with accepted English usage.

5.    Pepper objects to the Requests as overbroad, unduly burdensome, harassing, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they request the production of documents that do not relate to SFC, the SFC Trusts, Yao, Branford Hall, CEC or Day Hill (as those person and entities are defined in the Trustee's first set of requests for the production of documents). Pepper only will produce documents that relate to SFC, the SFC Trusts, Yao, Branford Hall, CEC or Day Hill (as those person and entities are defined in the Trustee's first set of requests for the production of documents) and that are not subject to other objections.

6.    Pepper objects to the Requests to the extent that responding would impose an undue burden on Pepper and/or to the extent that the information, materials or documents sought are equally available to the Trustee.

2

B-187

7.    Pepper objects to the Requests to the extent they seek information, materials or documents that are not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence.

8.    Pepper objects to the Requests to the extent they seek the production of documents in the possession of other persons or entities or the production or creation of documents not in the possession, custody or control of Pepper. Pepper will respond to each request only to the extent such documents are in the possession, custody or control of Pepper and are not otherwise publicly available.

9.    Pepper objects to each request to the extent that it is unreasonably cumulative or duplicative.

10.    Pepper reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissibility of any material produced. The production of any material does not constitute an admission by Pepper that such material or the information contained therein is relevant to this action or admissible in evidence.

11.    Inadvertent production of any material subject to the attorney-client privilege, the work product doctrine, prepared in anticipation of litigation or for trial, or that is otherwise protected or immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such material, its subject matter or information contained therein or of Pepper's right to object to the use of such material during any later proceeding or otherwise seek return of the material.

3

B-188

12.    The failure of Pepper to make a specific objection to a particular, individual request is not, and shall not be construed as, an admission of knowledge of the information or existence of the documents sought therein.

13.    Pepper objects to the Trustee's definition of the term "You" and "Your" in the Trustee's Definition No. 1 to the extent the definition includes W. Roderick Gagné in any capacity other than in his capacity as an attorney practicing at Pepper. Pepper's responses to the Requests construe the terms "You," and "Your" to mean Pepper Hamilton LLP and W. Roderick Gagné in his capacity as an attorney practicing at Pepper Hamilton LLP.

14.    Pepper objects to the Trustee's definition of the term "Pepper" in the Trustee's Definition No. 2 on the grounds that it is unduly burdensome, overbroad, not reasonably calculated to lead to the discovery of admissible evidence and calculated to harass insofar as it purports to cover persons or entities that are not parties to this action and/or did not have any role in transactions relating to SFC. Pepper's responses to the Requests construe the term "Pepper" to mean Pepper only, and such of its current and former partners, employees, representatives and agents with material personal knowledge about the areas of inquiry of these Requests.

15.    Pepper objects to the Trustee's definition of the terms "Defendants" or "Defendant" in the Trustee's Definition No. 8 on the grounds that it is unduly burdensome, overbroad, not reasonably calculated to lead to the discovery of admissible evidence and calculated to harass insofar as it purports to cover persons or entities that are not parties to this action and/or did not have any role in transactions relating to SFC. Pepper's responses to the Requests construe the terms "Defendants" or "Defendant" to mean Pepper and Gagné only, and

4

such of their current and former partners, employees, representatives and agents with material personal knowledge about the areas of inquiry of these Requests.

16.    Pepper objects to the Trustee's definition of the term "Document" or "documents" in the Trustee's Definition No. 9 on the grounds that it is unduly burdensome insofar as it purports to impose on the Pepper Defendants requirements beyond those provided for in the Federal Rules of Civil Procedure. Pepper construes the term "Document" to have the meaning provided for in Rule 34 of the Federal Rules of Civil Procedure.

17.    Pepper objects to the Trustee's definition of the term "Electronic data" in the Trustee's Definition No. 10 on the grounds that it is unduly burdensome insofar as it purports to impose on Pepper requirements beyond those provided for in the Federal Rules of Civil Procedure.

18.    Pepper objects to the Trustee's definition of the term "Gagné " in the Trustee's Definition No. 12 to the extent the definition includes W. Roderick Gagné in any capacity other than in his capacity as an attorney practicing at Pepper. Pepper's responses to the Requests construe the terms "You," and "Your" to mean Pepper Hamilton LLP and W. Roderick Gagné in his capacity as an attorney practicing at Pepper Hamilton LLP.

19.    Pepper is responding to the Requests subject to and without waiving these general objections.

20.    Any response stating that documents will be produced and/or made available for inspection to the extent they are in the possession, custody or control of Pepper does not constitute an admission that documents responsive to the request exist or ever existed.

5

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

1.     Each and every document on which Pepper relies in asserting any affirmative defense to the Amended Complaint and each and every document which sets forth or refers to facts on which any affirmative defense to the Amended Complaint is based.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that it seeks the production of attorney work product. Subject to and without waiving the foregoing specific and general objections, to the extent responsive documents are or were in the possession, custody or control of the Pepper Defendants, those documents either already have been produced or will be produced and/or made available for inspection.**

2.     Documents sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagne by Pepper Hamilton.

**RESPONSE:**

**No responsive documents exist.**

3.     Each and every document which sets forth, describes, relates or refers to any consideration, evaluation or reference to the business or fees received or anticipated to be received from SFC and Yao, at or about the time at which Roderick Gagne joined Pepper Hamilton.

**RESPONSE:**

**No responsive documents exist.**

4.     All documents which show all or part of the results, including the results in electronic form, of all conflict searches run by Pepper Hamilton with respect to SFC and the Family Defendants.

**RESPONSE:**

**No responsive documents exist.**

6

B-191

5.     Documents sufficient to establish the nature of each of Pepper Hamilton's engagements to perform services for Yao, Lore Yao, and the Family Defendants.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that the phrase "establish the nature" is vague and ambiguous. Subject to and without waiving the foregoing specific and general objections, to the extent responsive documents are or were in the possession, custody or control of the Pepper Defendants, those documents either already have been produced or will be produced and/or made available for inspection.**

6.     Each and every brochure, advertisement or other literature prepared or distributed by Pepper Hamilton or by anyone on its behalf which includes a description or reference to the business of SFC or the work that Pepper Hamilton did for SFC.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that it is overbroad, burdensome, calculated to harass, and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, to the extent responsive documents are in the possession, custody or control of Pepper, those documents will be produced and/or made available for inspection.**

7.     Each and every brochure, advertisement or other literature prepared or distributed by Pepper Hamilton or by anyone on its behalf, which includes a description of or reference to Pepper Hamilton's experience and capabilities regarding securitized financing.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that it is overbroad, burdensome, calculated to harass, and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, to the extent responsive documents are in the possession, custody or control of Pepper, those documents will be produced and/or made available for inspection.**

7

8.    The entire Attorneys' Manual for each year in which Roderick Gagne was an attorney at Pepper Hamilton.

RESPONSE:

Pepper specifically objects to this request on the grounds that it is overbroad, burdensome, calculated to harass, and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

9.    The entire Employees' Manual for each year in which Maria DeCarlo was an employee at Pepper Hamilton.

RESPONSE:

Pepper specifically objects to this request on the grounds that it is overbroad, burdensome, calculated to harass, and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

10.    All documents filed or submitted to the Court on behalf of Pepper Hamilton in the matter <u>Executive Risk Indemnity, Inc. v. Pepper Hamilton LLP, et al.</u>, Index Number 05603624, redacted to eliminate any reference to settlement or settlement negotiations.

RESPONSE:

Pepper specifically objects to this request on the grounds that it is overbroad, burdensome, calculated to harass, and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Pepper also specifically objects to this request on the grounds that it seeks the production of communications protected from disclosure by the attorney client privilege. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information and communications. Subject to and without waiving the foregoing general and specific objections, to the extent non-privileged, non-confidential responsive documents are in the possession, custody or control of Pepper, those documents will be produced and/or made available for inspection.

11.    Each and every document in which anyone with management responsibility at Pepper Hamilton evaluated, reviewed or critiqued the work done by Pepper Hamilton attorneys for SFC.

RESPONSE:

Pepper specifically objects to this request on the grounds that it seeks the production of confidential information.  Subject to and without waiving the foregoing general and specific objections, to the extent non-confidential responsive documents are or were in the possession, custody or control of Pepper, those documents either already have been produced or will be produced and/or made available for inspection.

12.    Each and every document referring to or considering Pepper Hamilton's withdrawal or possible withdrawal from representation of SFC.

RESPONSE:

Pepper specifically objects to this request on the grounds that it seeks the production of privileged communications between attorney and client. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information and attorney work product. Pepper also specifically objects to this request on the grounds that it is duplicative of Request No. 32 in the Trustee's first set of document requests. Subject to and without waiving the foregoing general and specific objections, to the extent non-privileged, non-confidential responsive documents are or were in the possession, custody or control of Pepper, those documents either already have been produced or will be produced and/or made available for inspection.

9

13.    Each and every document evaluating or considering the possibility of a claim against Pepper Hamilton arising out of its representation of SFC, Yao, or the Family Defendants.

### RESPONSE:

Pepper specifically objects to this request on the grounds that it seeks the production of privileged communications between attorney and client. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information and attorney work product. Subject to and without waiving the foregoing general and specific objections, to the extent non-privileged, non-confidential responsive documents are or were in the possession, custody or control of Pepper, those documents either already have been produced or will be produced and/or made available for inspection.

14.    Each and every document submitted to any government agency or authority regarding Yao or Gagne.

### RESPONSE:

Pepper specifically objects to this request on the grounds that it is overbroad. Pepper also specifically objects to this request on the grounds that it requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information. Pepper also specifically objects to this request on the grounds that it seeks the production of documents that, if they exist, may be in the possession of persons or entities other than Pepper. Subject to and without waiving the foregoing general and specific objections, to the extent non-confidential documents that are relevant to this action or that reasonably could lead to the discovery of admissible evidence are or were in the possession, custody or control of Pepper, those documents either already have been produced or will be produced and/or made available for inspection.

10

15.    All documents, including, without limitation, notes, minutes, memoranda and e-mails, prepared, sent or received by any member of Pepper Hamilton's Professional Responsibility Committee referring or relating to Gagne, SFC, Yao or the Family Defendants.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that it seeks the production of privileged communications between attorney and client. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information and attorney work product. Pepper further objects that requiring it to log all communications between Pepper attorneys and Pepper's in-house counsel (who also is a member of Pepper Hamilton's Professional Responsibility Committee) that refer or relate to Gagné, SFC, Yao or the Family Defendants would impose an undue and unreasonable burden on Pepper and, therefore, Pepper will not provide a log of such privileged communications. Subject to and without waiving the foregoing general and specific objections, no responsive documents exist that were sent to a member of Pepper Hamilton's Professional Responsibility Committee in his or her capacity as a member of Pepper Hamilton's Professional Responsibility Committee.**

16.    All documents, including, without limitation, notes, minutes, memoranda and e-mails, prepared, sent or received by any member of Pepper Hamilton's Finance Committee referring or relating to Gagne, SFC, Yao or the Family Defendants.

**RESPONSE:**

**Pepper specifically objects to this request on the grounds that it requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information. Subject to and without waiving the foregoing general and specific objections, to the extent responsive documents are or were in the possession, custody or control of Pepper, those documents either already have been produced or will be produced and/or made available for inspection.**

11

17.    All documents, including, without limitation, notes, minutes, memoranda and e-mails, prepared, sent or received by any Pepper Hamilton committee or partner, performing the function of an executive or management committee or managing partner, referring or relating to Gagne, SFC, Yao or the Family Defendants.

> RESPONSE:
>
> Pepper specifically objects to this request on the grounds that it is overbroad and requests the production of documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Pepper also specifically objects to this request on the grounds that it seeks the production of privileged communications between attorney and client. Pepper also specifically objects to this request on the grounds that it seeks the production of confidential information and attorney work product.

Dated: June 7, 2006
     Wilmington, Delaware

                                 _____
                                 William H. Sudell, Jr., Esq. (No. 0463)
                                 Donna L. Culver (No. 2983)
                                 Daniel B. Butz (No. 4227)
                                 MORRIS, NICHOLS, ARSHT & TUNNELL
                                 1201 North Market Street
                                 P.O. Box 1347
                                 Wilmington, Delaware 19899-1347
                                 (302) 658-9200
                                 (302) 658-3989 (facsimile)

                                 *Counsel for defendant Pepper Hamilton LLP and*
                                 *W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

B-197

## CERTIFICATE OF SERVICE

I, Daniel B. Butz, certify that I am not less than 18 years of age, and that service of the foregoing **Pepper Hamilton LLP's Responses And Objections To The Trustee's Second Request For Production Of Documents** was caused to be made on June 7, 2006, in the manner indicated upon the entities on the attached service list.

Date: June 7, 2006

_____
Daniel B. Butz (No. 4227)

523713

## JOINT LITIGATION AGREEMENT

REDACTED

REDACTED

REDACTED

REDACTED

B-202

REDACTED

REDACTED

B-204

`

REDACTED

23100914\V-5                              6

REDACTED

25130014\V-5                          6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Civil Action No.: 04-1551(JJF)

In re:                               :
STUDENT FINANCE                      :
CORPORATION,                         :
                                     :
    Debtor.                          :
                                     :
CHARLES A. STANZIALE, JR.,           :
CHAPTER 7 TRUSTEE OF                 :
STUDENT FINANCE                      :
CORPORATION,                         :
                                     :
    Plaintiff,                       :
                                     :
                                     :
        v.                           :
                                     :
PEPPER HAMILTON LLP, et al.          :
                                     :
    Defendants.                      :

## CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION'S RESPONSES TO DEFENDANT PEPPER HAMILTON LLP'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation ("Trustee"), hereby responds to Defendant Pepper Hamilton, LLP's ("Pepper") Second Set of Interrogatories as follows:

### I. GENERAL OBJECTIONS

The Trustee objects to each interrogatory, definition and/or instruction propounded by

Pepper to the extent that:

(1)     It requests information that is neither relevant to the subject matter involved

in this action nor reasonably calculated to lead to the discovery of admissible evidence;

(2)     It is overly broad and any attempt to respond would be unduly burdensome,

expensive, harassing and oppressive;

## ANSWERS TO INTERROGATORIES

21.    Do you contend that you are entitled to recover damages in connection with Count I of your Amended Complaint (breach of fiduciary duty) other than damages resulting from the expansion of SFC's debt and the deepening of SFC's insolvency? If so, explain in detail the nature of and basis for the damages to which you claim you are entitled as a result of the breach of fiduciary duty alleged in Count I of your Amended Complaint.

### Response:

The Trustee objects to Interrogatory Number 21 as premature, given that factual discovery has not been completed and expert disclosures have not yet been undertaken.  The Trustee further objects to this Interrogatory as seeking a legal conclusion as to the nature of damages available for this theory of liability.  Without waiving his objections, the Trustee responds that the damages sought in connection with Count I of the Amended Complaint go well beyond any resulting solely from the deepening of SFC's insolvency. The damages are those arising from the conduct of Pepper described in the Amended Complaint and include legal fees paid to Pepper Hamilton; dividends and other funds paid to Andrew Yao or expended on his behalf; forbearance payments made by SFC; monies paid to the Family Defendants and loans obtained from the Family Defendants; monies paid to Royal and loans obtained from Royal; and additional debt incurred by SFC in purchasing loans from trucking schools, all of which are recoverable damages without regard to the impact on SFC's solvency. The nature and extent of damages sought will be further addressed in expert reports and in the Trustee's response to the pending motion to dismiss.

22.    Do you contend that you are entitled to recover damages in connection with Count IV of your Amended Complaint (professional malpractice) other than damages resulting from the expansion of SFC's debt and the deepening of SFC's insolvency? If so, explain in detail the nature of and basis for the damages to which you claim you are entitled as a result of the professional malpractice alleged in Count IV of your Amended Complaint.

### Response:

The Trustee objects to Interrogatory Number 22 as premature, given that factual discovery has not been completed and expert disclosures have not yet been undertaken.  The Trustee further objects to this Interrogatory as seeking a legal conclusion as to the nature of damages available for this theory of liability.  Without waiving his objections, the Trustee responds that the damages sought in connection with Count IV of the Amended Complaint go well beyond any resulting solely from the deepening of SFC's insolvency. The damages are those arising from the conduct of Pepper described in the Amended Complaint and include legal fees paid to Pepper Hamilton; dividends and other funds paid to Andrew Yao or expended on his behalf; forbearance payments made by SFC; monies paid to the Family Defendants and loans obtained from the Family Defendants; monies paid

4

to Royal and loans obtained from Royal; and additional debt incurred by SFC in purchasing loans from trucking schools, all of which are recoverable damages without regard to the impact on SFC's solvency. The nature and extent of damages sought will be further addressed in expert reports and in the Trustee's response to the pending motion to dismiss.

**Pepper Hamilton LLP**
Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

A. H. Wilcox
direct dial: 215-981-4051
wilcoxa@pepperlaw.com

September 1, 2005

*Via Facsimile and U.S. Mail*

Alfred W. Putnam, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103

Re:  Charles A. Stanziale, Jr., as Chapter 7 Trustee of Student
Finance Corp. v. Pepper Hamilton LLP, et al.

Royal Indemnity Company v. Pepper Hamilton LLP, et al.

Dear Alfie:

Rod Gagné has returned from vacation and found, in his e-files, a copy of his response to my 2002 insurance application questionnaire. I enclose his response to Questions 1 and 2 regarding claims and circumstances. I have redacted the remainder since I can't see how it relates to any concerns Chubb/ERRI may have.

Yours truly,

A. H. Wilcox

Enclosure

PEPPER 199234

Philadelphia     Washington, D.C.     Detroit     New York     Pittsburgh
Berwyn     Harrisburg     Princeton     Wilmington
www.pepperlaw.com

Pepper Hamilton LLP
Attorneys at Law

Alfred W. Putnam, Esquire
Page 2
September 1, 2005

bc:  W. Roderick Gagné, Esquire

PEPPER 199235

# MEMORANDUM

**TO:**  Chubb Wilcox

**FROM:** W. Roderick Gagné

**DATE:** August 6, 2002

**RE:**  Insurance Application

---

   I am responding to your memorandum dated July 22, 2002. I will restate the

interrogatories and provide an answer to each:

    1. Have any claims, suits, or demands been made during the past five years against you, whether you were with Pepper or some other firm, relating to the practice of law? **Answer:** To my knowledge, no claims have been filed against me personally with respect to the practice of law in the past five years.

    2. Are you aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of the claim or suit for lawyers professional liability? **Answer:**

# REDACTED

PEPPER 199236

PHLEGAL:-#1296477 v1 (RSD901.DOC)

Please advise if you require any further information on any of the responses contained herein.

WRG/bdw

PEPPER 199237

-2-

PHLEGAL: #1296477 v1 (RSD9011.DOC)

# Schnader
### ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA  19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

September 19, 2006

EXHIBIT
367-I
10/16/06

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

**VIA UPS NEXT DAY AIR**

Michael S. Waters, Esquire
McElroy, Deutsch, Mulvaney & Carpenter LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

John I. Grossbart, Esquire
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606

> Re:   *Royal Indemnity Company v. Pepper Hamilton LLP, et al.*,
> No. 05-165 (D. Del.)
> *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del.)

Gentlemen:

During the deposition of Sheilah Gibson, we produced a memorandum previously withheld as privileged (PEPPER 197283-90) and selected portions of Pepper's attorney and legal assistant manuals (PEPPER 205957-206248). Enclosed is a CD-ROM that contains TIFF images of and load files for those documents. We mistakenly overlapped some of the Bates numbers assigned to the manuals with the Bates numbers assigned to the documents listed in entry number 153 of our privilege log. We have corrected this error by renumbering the documents identified in entry number 153 of the privilege log. A revised copy of the privilege log is enclosed.

Also enclosed is correspondence from and a CD-ROM containing documents produced by Ambac in response to our subpoena. Please note that Ambac has identified the documents produced as confidential pursuant to the confidentiality order in place in these cases.

Sincerely,

Stephen J. Shapiro
For SCHNADER HARRISON SEGAL & LEWIS LLP

Enclosures

cc:   Neil G. Epstein, Esquire (via hand delivery)
      Veronica E. Rendon, Esquire (via UPS)
      Andre Castaybert, Esquire (via UPS)
      John H. Eickemeyer, Esquire (via UPS)
      Thomas H. L. Selby, Esquire (via UPS)

Schnader Harrison Segal & Lewis LLP
NEW YORK    PENNSYLVANIA    CALIFORNIA    WASHINGTON, DC    NEW JERSEY    DELAWARE

Stanziale v. Pepper Hamilton LLP, et al., No. 04-1551 (D. Del.)
Royal Indemnity Company v. Pepper Hamilton LLP, et al., No. 05-165 (D. Del.)
Privilege Log of Pepper Hamilton LLP and Roderick Gagné in his capacity as a partner at Pepper (September 19, 2006)

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 1. | 014321.025-014321.026 | Memorandum | 6/8/04 | Andrew N. Yao | Robert L. Bast, Esq., W. Roderick Gagné, Esq. | Seeking advice of counsel re: bank loan | Attorney-Client |
| 2. | 014321.033-014321.041 | Facsimile/ Draft Contract | 4/18/04 | Roderick Gagné | Andrew Yao | Draft assignment contract between Connecticut Realty Capital P'ship & Andrew N. Yao, with attorney notes and comments | Attorney-Client |
| 3. | 014321.115 | Memorandum | 5/6/94 | W.R. Gagné | One Summit Place P'ship | Providing legal advice re: real estate purchase agreement | PRODUCED |
| 4. | 014321.117-014321.119 | Letter | 4/19/94 | W. Roderick Gagné | Andrew N. Yao | Legal services for One Summit Place Partners | PRODUCED |
| 5. | 014321.239-014321.240 | Agenda and Meeting Notes | 4/19/94 | W. Roderick Gagné, Esq. | Andrew N. Yao | Legal advice re: purchase of real estate | PRODUCED |
| 6. | 014321.124-014321-129 | Facsimile | 4/2/94 | Andrew N. Yao | Roderick Gagné | Seeking advice of counsel re: Investment for One Summit Place Partners, L.P. | PRODUCED |
| 7. | 014321.130-014321.135 | Facsimile | 4/1/94 | Andrew N. Yao | W. Roderick Gagné, Esq. | Seeking advice of counsel re: Investment for One Summit Place Partners, L.P. | PRODUCED |
| 8. | 030145-030145.003 | Letter | 3/21/96 | W. Roderick Gagné | Andrew N. Yao | Legal advice for Educational Methods, Inc. | Attorney-Client |
| 9. | 030152 | Letter | 11/21/95 | Andrew N. Yao | Robert L. Bast, Esq., W. Roderick Gagné, Esq. | Conveying information re: Branford Hall | PRODUCED |

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 10. | 000609.001–000609.007 | E-mails | 7/12/01–7/17/01 | Perry Turnbull | Roderick Gagné | Legal advice re: formation and officers for Student Placement Services, LLC | Attorney-Client |
| 11. | See 13 | | | | | | |
| 12. | See 14 | | | | | | |
| 13. | 033368.001 | E-mail | 11/29/00 | Andrew N. Yao | Roderick Gagné Diane Messick | Redaction: Seeking legal advice re: personal taxes | Attorney-Client |
| 14. | 033368.002–033368.003 | E-mail | 11/29/00 | Roderick Gagné | Andrew Yao | Redactions: Legal advice re: personal taxes, SMS, ECM | Attorney-Client |
| 15. | 033368.004–033368.005 | Notes | n.d. | Roderick Gagné | | Notes re: meeting with Andrew Yao re: legal advice on SMC, SLS, ECM | Attorney-Client |
| 16. | 034139.001 | E-mail | 8/5/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: private foundation | Attorney-Client |
| 17. | 052678 | E-mail | 11/3/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: personal taxes | Attorney-Client |
| 18. | 052690–052692 | E-mails (3) | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: creation and structure of SMS | Attorney-Client |
| 19. | 052689 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: creation and structure of SMS | Attorney-Client |
| 20. | 052907 | E-mail | 8/9/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: personal financial information | Attorney-Client |
| 21. | 052908 | E-mail | 8/5/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: private foundation | Attorney-Client |
| 22. | 047134 | Letter | 12/3/99 | Michael C. Leone (Pepper) | Andrew N. Yao cc: W. Roderick Gagné | Legal advice re: private foundation | Attorney-Client |

2

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 23. | 047169 | Letter | 1/22/97 | W. Roderick Gagné | Andrew N. Yao | Redaction: Legal advice re: personal transaction | Attorney-Client |
| 24. | 047179 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: estate planning | Attorney-Client |
| 25. | 047180 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: estate planning | Attorney-Client |
| 26. | 047182 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |
| 27. | 047183 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |
| 28. | 047184 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |
| 29. | 047184.001 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: creation of SMS | Attorney-Client |
| 30. | 047189-047190 | Facsimile | 3/17/01 | Michele Shedrick (for Andrew Yao) | W. Roderick Gagné | Seeking legal advice on personal credit matter | Attorney-Client |
| 31. | 047271-047274 | Memorandum | 5/15/02 | W. Roderick Gagné | Chub Wilcox | Overview of representation of SFC | Attorney Work Product |
| 32. | 047275-047280 | Memorandum | 4/18/02 | W. Roderick Gagné | James L. Murray Laurence Z. Shiekman John E. Pooler cc: Alfred H. Wilcox | Overview of representation of SFC | Attorney Work Product |
| 33. | 047281-047284 | Memorandum | 5/15/02 | W. Roderick Gagné | Chub Wilcox | Overview of representation of SFC | Attorney Work Product |
| 34. | 047348-047352.002 | Letter | 1/12/01 | W. Roderick Gagné | James J. Byrne, Jr., Esq. | Seeking legal advice re: personal matter | Attorney-Client |
| 35. | 047355 | Letter | 12/28/00 | W. Roderick Gagné | Audrey & Larry Handler | Legal advice re: Andrew Yao family matters | Attorney-Client |

3

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 36. | 047386-047389 | Letter | 9/21/00 | W. Roderick Gagné | Dennis Halterman | Legal advice re: Andrew Yao personal tax matters | Attorney-Client |
| 37. | 047393-047394 | Letter | 9/20/00 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: personal tax matters | Attorney-Client |
| 38. | 055414 | E-mail | 12/19/03 | Alfred Wilcox | Roderick Gagné | Discussion re: SFC files | Attorney Work Product |
| 39. | 055415 | E-mail | 12/19/03 | Alfred Wilcox | Roderick Gagné | Discussion re: SFC files | Attorney Work Product |
| 40. | 056036 | E-mail | 10/28/99 | Roderick Gagné | Andrew N. Yao | Legal advice re: ECM contracts | Attorney-Client |
| 41. | 056038 | E-mail | 10/7/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction | Attorney-Client |
| 42. | 056039 | E-mail | 10/6/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction | Attorney-Client |
| 43. | 056040 | E-mail | 10/6/99 | Roderick Gagné | Andrew N. Yao | Legal advice re: ECM transaction | Attorney-Client |
| 44. | 056041 | E-mail | 10/6/99 | Roderick Gagné | Andrew N. Yao | Legal advice re: ECM transaction | Attorney-Client |
| 45. | 056042 | E-mail | 5/6/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction ( Document 056043 is a duplicate copy of this document.) | Attorney-Client |
| 46. | 056044 | E-mail | 4/26/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction | Attorney-Client |
| 47. | 056045 | E-mail | 4/12/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction | Attorney-Client |
| 48. | 056046 | E-mail | 3/23/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: ECM transaction | Attorney-Client |
| 49. | 051670 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |

4

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 50. | 051671 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |
| 51. | 051672 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |
| 52. | 051673 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: creation of SMS | Attorney-Client |
| 53. | 051674 | E-mail | 10/24/00 | Roderick Gagné | Andrew N. Yao | Legal advice re: creation of SMS | Attorney-Client |
| 54. | 051675 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: estate planning | Attorney-Client |
| 55. | 051676 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: estate planning | Attorney-Client |
| 56. | 051677 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: creation and structure of SMS | Attorney-Client |
| 57. | 051678 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: creation and structure of SMS | Attorney-Client |
| 58. | 051679 | E-mail | 10/24/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: creation and structure of SMS | Attorney-Client |
| 59. | 051682-051683 | Facsimile | 3/17/00 | Michele Shedrick (for Andrew Yao) | W. Roderick Gagne | Seeking legal advice on personal credit matter | Attorney-Client |
| 60. | 051928 | Meeting Notes | 2/23/00 | Roderick Gagné | | Legal advice re: SLS | Attorney-Client |
| 61. | 051933 | Meeting Notes | 10/15/99 | Roderick Gagné | | Legal advice re: SLS | Attorney-Client |
| 62. | 051940 | E-mail | 11/15/00 | Roderick Gagné | Joan Agran | Legal advice re: Andrew Yao personal finances | Attorney-Client |
| 63. | 051941 | E-mail | 11/15/00 | Roderick Gagné | John Shire cc: Andrew N. Yao Diane Messick | Legal advice re: SMS, DCC | Attorney-Client |

5

B-219

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 64. | 051942 | E-mail | 11/15/00 | Diane Messick | Roderick Gagné John Shire cc: Andrew N. Yao | Legal advice re: SMS, DCC | Attorney-Client |
| 65. | 051951 | E-mail | 11/14/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: personal tax matter | Attorney-Client |
| 66. | 051952 | E-mail | 11/16/99 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: personal tax matter | Attorney-Client |
| 67. | 052022.001 | E-mail | 3/30/00 | Andrew N. Yao | Roderick Gagné | Seeking legal advice re: creation of new company | Attorney-Client |
| 68. | 052163-052166 | Facsimile | 5/15/00 | Michele Shedrick (for Andrew Yao) | W. Roderick Gagné | Seeking legal advice re: incident with neighbor | Attorney-Client |
| 69. | 057845-057876 | Calendars | 5/03-12/05 | Roderick Gagné | | Redactions: Items related to non-SFC clients and attorney client communications | Attorney-Client Attorney Work Product |
| 70. | 057912-057913 | Letter | 7/20/05 | Jacqueline Vinar, Esq. | A.H. Wilcox, Esq. | Redaction: Discussion re: defense strategies | Attorney-Client Attorney Work Product |
| 71. | 057939-057941 | Letter | 4/23/04 | David Marseille | Chub Wilcox, Esq. | Redactions: Discussions re: defense strategies | Attorney-Client Attorney Work Product |
| 72. | 197851-197853 | Memorandum | 3/27/02 | Darcy L. Malcolm (Pepper) | Perry Turnbull Gary Hawthorne | Legal advice re: SLS, SMS | Attorney-Client |
| 73. | 197854-197855 | Memorandum | 2/20/02 | Darcy L. Malcolm (Pepper) | Perry Turnbull Gary Hawthorne | Legal advice re: SLS, SMS | Attorney-Client |
| 74. | 197883 | Facsimile Cover | 1/2/01 | Darcy C. Lee (Pepper) | Perry Turnbull | Legal advice re: SMS | Attorney-Client |

6

B-220

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 75. | 197886 | Facsimile Cover | 11/28/00 | Darcy C. Lee (Pepper) | Perry Turnbull | Legal advice re: SMS | Attorney-Client |
| 76. | 197889 | Facsimile Cover | 11/30/00 | Darcy C. Lee (Pepper) | Rod Gagné | Seeking legal advice re: SMS | Attorney-Client |
| 77. | 197892 | Facsimile Cover | 7/13/99 | W. Roderick Gagné | Sandra Bloch | Legal advice re: Andrew Yao | Attorney-Client |
| 78. | 197902-197903 | Letter | 8/21/00 | Darcy C. Lee (Pepper) | Frank Martinez cc: Gary Hawthorne | Legal advice re: SLS | Attorney-Client |
| 79. | 197906 | Facsimile Cover | 7/10/01 | Darcy C. Lee (Pepper) | Rod Gagné | Seeking legal advice re: SMS | Attorney-Client |
| 80. | 197909-197910 | Memorandum | 1/2/02 | Darcy L. Malcolm (Pepper) | Frank Martinez | Legal advice re: SLS | Attorney-Client |
| 81. | 197911-197913 | Letter | 4/25/00 | Darcy C. Lee (Pepper) | Gary Hawthorne | Legal advice re: SLS | Attorney-Client |
| 82. | 197916-197917 | Letter | 5/5/00 | Darcy C. Lee (Pepper) | Gary J. Hawthorne | Legal advice re: SLS | Attorney-Client |
| 83. | 199058-199060 | Letter | 1/14/02 | W. Roderick Gagné | Lore N. Yao | Legal advice re: family trust | Attorney-Client |
| 84. | 199061-199064 | Letter | 2/11/02 | W. Roderick Gagné | Lore Yao | Legal advice re: family trust | Attorney-Client |
| 85. | 199065-199066 | Memorandum | 2/13/02 | Kathleen A. Stephenson | W. Roderick Gagné | Legal advice re: family trust | Attorney-Client |
| 86. | 199067-199068 | Notes | n.d. | Pepper Hamilton | n.a. | Legal advice re: structure of ECM | Attorney-Client |
| 87 | 199069-199071 | Letter | 1/30/02 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: family trust | Attorney-Client |
| 88. | 199072 | Letter | 7/23/01 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: estate planning | Attorney-Client |

B-221

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 89. | 199073-199075 | Letter | 9/21/00 | W. Roderick Gagné | Dennis Halterman cc: Andrew Yao | Legal advice re: Andrew Yao personal taxes | Attorney-Client |
| 90. | 199076-199077 | Letter | 1/17/02 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: family trust | Attorney-Client |
| 91. | 199078 | Memorandum | 7/19/01 | W. Roderick Gagné | Joe D'Amore | Legal advice re: Andrew Yao family trust and estate planning | Attorney-Client |
| 92. | 199079-199082 | Letter | 7/3/97 | W. Roderick Gagné | Andrew & Lore Yao | Legal advice re: family trust and estate planning | Attorney-Client |
| 93. | 199083-199085 | Letter | 7/23/01 | Joseph D'Amore (Pepper) | Andrew & Lore Yao cc: Roderick Gagné | Legal advice re: estate planning | Attorney-Client |
| 94. | 197234-197236 | Letter | 3/26/98 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: ECM LLC | Attorney-Client |
| 95. | 197260-197262 | Letter | 5/5/98 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: ECM | Attorney-Client |
| 96. | 197263-197264 | Letter | 5/14/98 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: ECM | Attorney-Client |
| 97. | 197269-197272 | Memorandum | 12/3/99 | W. Roderick Gagné | Andrew N. Yao | Legal advice re: private foundation | Attorney-Client |
| 98. | 197283-197290 | Memorandum | 7/22/01 | Sheilah Gibson | W. Roderick Gagne | Legal advice re: SMS | PRODUCED |
| 99. | 007218-007219 | E-mail | 11/15/00 | Diane Messick | Roderick Gagné John Shire cc: Andrew N. Yao | Legal advice re: SMS, DCC (This document is the same as 51942 with handwritten notes) | Attorney-Client |
| 100. | 034060 | Letter | 12/3/99 | Michael C. Leone (Pepper) | Andrew N. Yao cc: W. Roderick Gagné | Legal advice re: private foundation | Attorney-Client |

8

B-222

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 101. | 047138-047140 | Facsimile | 5/12/00 | Lore Yao Christine Whitehead Andrew Yao | W. Roderick Gagné | Seeking legal advice re: incident with neighbor | Attorney-Client |
| 102. | 199137-199141 | Letter | 8/10/05 | Alfred Putnam | A.H. Wilcox | Redactions: settlement discussions | Attorney-Client (Common Interest) |
| 103. | 199142-199148 | Letter w/attachments | 8/16/05 | A. H. Wilcox | Alfred Putnam | Redactions: settlement discussions | Attorney-Client (Common Interest) |
| 104. | 199151-199152 | Letter | 8/25/05 | A.H. Wilcox | Alfred Putnam | Redactions: legal advice | Attorney-Client (Common Interest) |
| 105. | 199176-199179 | E-Mail | 4/30/02 | Grant Duncan | Alfred Wilcox Roderick Gagne | Redaction in original. See PEPPER 52576-52577 | |
| 106. | 199185 | Letter | 8/23/05 | Timothy Martin | A.H. Wilcox | Redactions: settlement discussions | Attorney-Client (Common Interest) |
| 107. | 199187-199190 | Letter | 8/18/05 | Dave Marseille | Chub Wilcox | Settlement discussions | Attorney-Client (Common Interest) |
| 108. | 199191 | Letter | 8/11/05 | Timothy Martin | A.H. Wilcox | Redactions: settlement discussions | Attorney-Client (Common Interest) |

9

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 109. | 199192-199195 | Letter | 6/28/05 | A.H. Wilcox | Jacqueline Vinar | Settlement discussions | Attorney-Client (Common Interest) |
| 110. | 199196-199197 | Letter | 2/8/05 | A.H. Wilcox | Kevin Walsh | Redactions: defense strategy/impressions | Attorney-Client (Common Interest) |
| 111. | 199203 | E-mail | 1/3/05 | Dave Marseille | A.H. Wilcox | Redactions: defense strategy | Attorney-Client (Common Interest) |
| 112. | 199204 | E-mail | 12/13/04 | Dave Marseille | A.H. Wilcox | Defense strategy | Attorney-Client (Common Interest) |
| 113. | 199219-199226 | Letter | 2/15/04 | Stephen Harmelin | Alfred Wilcox | Confidential settlement discussions/analysis | N/A |
| 114. | 199227-199231 | Letter | 4/27/04 | A.H. Wilcox | Daniela Lalor | Redactions: defense strategy/legal advice | Attorney-Client (Common Interest) |
| 115. | 199234-199237 | Letter w/attachments | 9/1/05 | A.H. Wilcox | Alfred Putnam | Redactions: legal advice | Attorney-Client (Common Interest) |
| 116. | 199244-199250 | Memorandum | 11/25/96 | Franklin Holland | All Partners | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |

10

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 117. | 199251-199253 | Memorandum | 10/23/97 | Franklin Holland | All Partners | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 118. | 199254 | Statement | 10/18/02 | Pepper Finance Committee | N/A | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 119. | 199485-199510 | Motion | 1/17/06 | Bruce Kaplan | N/A | Redactions: settlement discussions | Attorney-Client (Common Interest) |
| 120. | 199511-199515 | Affidavit | 1/13/06 | Sheila Glackin | N/A | Redactions: settlement discussions | Attorney-Client (Common Interest) |
| 121. | 199517-199530 | Motion | 2/2/06 | Randy Paar | N/A | Redaction: defense strategy | Attorney-Client (Common Interest) |
| 122. | 199605-199611 | Minutes | Various | N/A | N/A | Redactions: legal advice/non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | Attorney-Client |
| 123. | 199612-199623 | Form | N/A | Various | Various | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |

11

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 124. | 199624-199625 | Memorandum | 4/14/02 | James Lawlor | File | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 125. | 199626-199635 | Form | N/A | Various | Various | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 126. | 199636-199638 | Statement | 4/3/01 | N/A | N/A | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 127. | 199638-199652 | Form | N/A | Various | Various | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 128. | 199653-199654 | Statement | 1/3/01 | N/A | N/A | Redactions: non-responsive/irrelevant/confidential information discussing non-SFC related matters and/or clients | N/A |
| 129. | 199655 | Title Page | 12/98 | N/A | Redacted | Identity of non-SFC related target client redacted as non-responsive, irrelevant and confidential | N/A |
| 130. | 199982 | Handwritten Notes | 11/20/01 | Janet Perry | N/A | Notes of conversation between Pepper's special counsel and W. Roderick Gagné in which Gagné requested legal advice relating to a missing signature on a certificate for a bond closing | Attorney-Client |

12

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 131. | 200396-202341 | Various | Various | Various | Various | Documents in this range redacted to remove identities of non-SFC related target clients; non-responsive, irrelevant and confidential | N/A |
| 132. | 205687-205695 | Draft Time Sheets | Various | W. Roderick Gagné | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 133. | 205696-205702 | Client List | 2001 | N/A | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 134. | 205703-205707 | Self Evaluation | 11/17/97 | Maria DeCarlo | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 135. | 205708-205711 | Memorandum | 12/2/03 | W. Roderick Gagné | Compensation Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 136. | 205712-205715 | Memorandum | 11/8/02 | W. Roderick Gagné | Compensation Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 137. | 205716-205721 | Draft Time Sheet | 7/12/99 | W. Roderick Gagné | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |

13

|  | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 138. | 205722-205724 | Memorandum | 12/15/03 | Richard Eckman; Cary Levinson | Executive Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 139. | 205725-205726 | Letter | Undated | A.H. Wilcox | Kevin Walsh | See 199196-97 | N/A |
| 140. | 205727-205729 | Letter | 2/8/05 | A.H. Wilcox | Kevin Walsh | See 199196-97 | N/A |
| 141. | 205730-205732 | Memorandum | 1/12/99 | Roderick Gagné | John Pooler | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 142. | 205733-205734 | Memorandum | 5/26/98 | Roderick Gagné | Contributions Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 143. | 205735-205739 | Letter | Undated | A.H. Wilcox | Daniela Lalor | See 199227-31 | N/A |
| 144. | 205740-205745 | Letter | 4/27/04 | A.H. Wilcox | Daniela Lalor | See 199227-31 | N/A |
| 145. | 205746-205749 | Memorandum | 11/13/00 | N/A | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 146. | 205750-205753 | Memorandum | 6/7/99 | Roderick Gagné | Lisa Kabnick | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |

14

| | Bates Number | Document Type | Date | Author | Recipient(s) | Description | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| 147. | 205754-205757 | Memorandum | 10/22/99 | Associates Committee | Executive Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 148. | 205758-205760 | Letter | 12/6/01 | Joseph D'Amore | IRS | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 149. | 205761-205767 | Memorandum | 9/23/99 | J. Bradley Boericke | Associates Committee | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 150. | 205768 | Transcribed Voicemail | 9/10/99 | N/A | N/A | Text referring to non-SFC related clients and/or issues redacted as non-responsive, irrelevant and confidential | N/A |
| 151. | 205769-205925 | New Matter Reports | Various | N/A | N/A | Documents in this range redacted to remove identity of non-SFC related clients; non-responsive, irrelevant and confidential | N/A |
| 152. | 205928-205931 | Memorandum | 2/12/01 | Janet Perry | Various Pepper attorneys | Memorandum from Pepper's special counsel to various partners regarding ethics screen between lawyers working on matters for Royal and lawyers working on matters for another non-SFC related client | Attorney-Client and Work Product |
| 153. | 205932-205953.064 | File | 2003 | N/A | N/A | File relating to Pepper's representation of Wells Fargo | Attorney-Client |

15

B-229

# MEMORANDUM

**TO:**       Chubb Wilcox

**FROM:**    W. Roderick Gagné

**DATE:**    August 6, 2002

**RE:**       Insurance Application

I am responding to your memorandum dated July 22, 2002.  I will restate the interrogatories and provide an answer to each:

    1.  Have any claims, suits, or demands been made during the past five years against you, whether you were with Pepper or some other firm, relating to the practice of law? Answer:  To my knowledge, no claims have been filed against me personally with respect to the practice of law in the past five years.

    2.  Are you aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of the claim or suit for lawyers professional liability?  Answer:  The only two matters of which I am aware are the Student Finance Corporation transactions of which you are familiar and

## REDACTED

With regard to the Student Finance Corporation action, two law suits have been filed in two different states and to date, we have not been named in either action.  I am not certain as to whether we will be joined in the future.

PEPPER 199236

PHLEGAL: #1296477 v1 (7SD9901LDOC)

# Schnader
### ATTORNEYS AT LAW

1600 MARKET STREET  SUITE 3600
PHILADELPHIA  PA  19103-7286
215 751 2000   FAX 215 751 2205   schnader.com

October 26, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

## VIA E-MAIL AND FIRST CLASS MAIL

Michael S. Waters, Esquire
McElroy, Deutsch, Mulvaney
  & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

> RE:   *Royal Indemn. Co. v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del.)
> *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del.)

Dear Mike:

I write in response to your letter of October 18, 2006.

We previously produced a redacted copy of PEPPER 199236 (No. 115 on our privilege log). We have removed some, but not all, of the redactions on that document and have enclosed a new copy of it. The information that remains redacted does not relate to SFC.

We produced the April 18, 2002 memorandum (listed as entry 32 on our privilege log) because it was not sent to Mr. Wilcox, counsel to Pepper, for the purpose of providing legal advice. Rather, the memorandum was, on its face, addressed to Messrs. Murray, Shiekman and Pooler and only carbon copied to Mr. Wilcox. By contrast, the May 15, 2002 memorandum — which is listed on our privilege log as entries 31 and 33 (two copies of the same document) -- is addressed only to Mr. Wilcox and was sent for the purpose of providing legal advice. Mr. Wilcox, in his capacity as counsel to the firm, requested that Mr. Gagné prepare the May 15, 2002 memorandum so that Mr. Wilcox would have information necessary to provide legal advice to Pepper, his client. Therefore, the document is protected from disclosure by the attorney-client privilege and will not be produced.

Sincerely,

Stephen J. Shapiro
For SCHNADER HARRISON SEGAL & LEWIS LLP

Enclosure

Schnader Harrison Segal & Lewis LLP
NEW YORK    PENNSYLVANIA    CALIFORNIA    WASHINGTON  DC    NEW JERSEY    DELAWARE

**Wilcox, Alfred**

| | |
|---|---|
| **From:** | Grant, M. Duncan |
| **Sent:** | Tuesday, April 30, 2002 6:17 PM |
| **To:** | Wilcox, Alfred; Gagne, Roderick |
| **Subject:** | RE: Nielsen v. SFC — transfer of case to new counsel |

*REDACTED*

-----Original Message-----
From: Perry Turnbull [mailto:Pturnbull@sfcorp.com]
Sent: Tuesday, April 30, 2002 6:09 PM
To: 'Grant, M. Duncan'
Subject: RE: Nielsen v. SFC --- transfer of case to new counsel


Duncan,

Thank you. We will most likely send this to the Fox Rothchild group, but we
are exploring alternatives.

Can you make any recommendations as to who might serve SFC as well as you
did?

Not to be embarrass, but we would like to clone you.

Sincerely,
Perry

-----Original Message-----
From: Grant, M. Duncan [mailto:GRANTM@pepperlaw.com]
Sent: Tuesday, April 30, 2002 4:00 PM
To: 'Perry Turnbull'
Subject: Nielsen v. SFC --- transfer of case to new counsel


Dear Perry:

As you know, the Nielsen case has not been active for several months, almost
all of Nielsen's claims have been resolved in SFC's and Andrew's favor, the
court has ruled in favor of SFC on its counterclaim, and there are no
deadlines facing SFC at the moment. In view of Pepper's withdrawal from SFC
matters, I suggest that you contact Mike Maransky or others at the Fox
Rothchild firm and request that they take over the representation from us.
I have checked Fox Rothschild's web page, and it says they have two
litigators in their Delaware office. In addition, if the Fox Rothschild
firm wishes to do so, they could utilize lawyers from their other offices to
work on the case.

If SFC would prefer to use Delaware counsel other than the Fox Rothschild
firm, that is of course fine, too. Although there is no urgency at the
moment, we would like to make the transfer within the next week or two.
Once you have told us which new firm will be representing SFC, we can make
the appropriate arrangements to transfer our pleadings file, etc.

Regards, Duncan

**PEPPER 199176**

************************************************
1

## Gagne, Roderick

| | |
|---|---|
| **From:** | Grant, M. Duncan |
| **Sent:** | Tuesday, April 30, 2002 6:17 PM |
| **To:** | Wilcox, Alfred; Gagne, Roderick |
| **Subject:** | RE: Nielsen v. SFC — transfer of case to new counsel |

Hello Chub and Rod. See the following reply from Perry Turnbull. I suspect that we don't
want to recommend anyone to him, but rather that we want to ask him to ask the Fox
Rothschild folks for alternatives if SFC doesn't want to use Fox -- do I have that right?
Also you can see that we have no problems with their view of the work we did for them,
although Perry has frequently made that same point to me over the phone and in person
during the last several years.

-----Original Message-----
From: Perry Turnbull [mailto:Pturnbull@sfcorp.com]
Sent: Tuesday, April 30, 2002 6:09 PM
To: 'Grant, M. Duncan'
Subject: RE: Nielsen v. SFC --- transfer of case to new counsel

Duncan,

Thank you. We will most likely send this to the Fox Rothchild group, but we
are exploring alternatives.

Can you make any recommendations as to who might serve SFC as well as you
did?

Not to be embarrass, but we would like to clone you.

Sincerely,
Perry

-----Original Message-----
From: Grant, M. Duncan [mailto:GRANTM@pepperlaw.com]
Sent: Tuesday, April 30, 2002 4:00 PM
To: 'Perry Turnbull'
Subject: Nielsen v. SFC --- transfer of case to new counsel

Dear Perry:

As you know, the Nielsen case has not been active for several months, almost
all of Nielsen's claims have been resolved in SFC's and Andrew's favor, the
court has ruled in favor of SFC on its counterclaim, and there are no
deadlines facing SFC at the moment. In view of Pepper's withdrawal from SFC
matters, I suggest that you contact Mike Maransky or others at the Fox
Rothschild firm and request that they take over the representation from us.
I have checked Fox Rothschild's web page, and it says they have two
litigators in their Delaware office. In addition, if the Fox Rothschild
firm wishes to do so, they could utilize lawyers from their other offices to
work on the case.

If SFC would prefer to use Delaware counsel other than the Fox Rothschild
firm, that is of course fine, too. Although there is no urgency at the
moment, we would like to make the transfer within the next week or two.
Once you have told us which new firm will be representing SFC, we can make
the appropriate arrangements to transfer our pleadings file, etc.

Regards, Duncan

*****************************************************

1

PH 044332

NOTE:

In a telephone call between Mr. Nielsen, Sr. and Mr. Konrad Smith, at different intervals, with Mr. Turnbull, the following conversation took place:

Mr. Turnbull, in an attempt to explain to Mr. Nielsen, Sr. and Mr. Konrad Smith, why the report that was accidentally sent to NEI showed "defaulters" that were actually making payments stated . "Mr. Yao, in order to protect the NEI portfolio was making payments of his own monies against NEI accounts so that the "portfolio auditors" for his lenders would see that they were "current" on their payments for a minimum of twelve months. A step needed for Mr. Yao to continue doing business with them." He also stated. "This explains why NEI is confused." In the conversation, he admitted that NEI and SFC "got off on the wrong footing. NEI should have been placed in the Platinum Program."

I hereby attest that the above is true and correct to the best of my ability to recite it.

Konrad Smith, NEI Chief of Collections: _____

Robert R. Nielsen, Sr., CEO/President: _____

Confidential                    NEIO0008366

B-234



**Pepper Hamilton LLP**
————Attorneys at Law————

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

215.981.4695
gagner@pepperlaw.com

February 15, 2002

Ms. Diane Messick
Controller
Student Finance Corporation
170 Lukens Drive
New Castle, DE 19720

Dear Diane:

        Enclosed please find Pepper Hamilton LLP's bills for services rendered as of January 31, 2002 in connection with Student Finance Corporation, Student Marketing Services and One Summit Place Partners.

        Please call should you have any questions concerning any of the bills.

        Sincerely,

        W. Roderick Gagné

/vam
Enclosures

PHLEGAL: #487559 v1 (@G7B01!.WPD)

PH 116636

| Philadelphia | Washington, D.C. | Detroit | New York | Pittsburgh |
|---|---|---|---|---|
| Berwyn | Cherry Hill | Harrisburg | Princeton | Tysons Corner | Wilmington |

www.pepperlaw.com

B-235

Student Finance Corporation
Client/Matter Number: 111419.00006
February 11, 2002

Invoice: 10085450
Page 6

Billing Partner: W. Roderick Gagne

RE:   Neilsen Electronics Institute

| FEES | EXPENSES | INTERIMS | APPLICATIONS | AMOUNT DUE |
|------|----------|----------|--------------|------------|
| $24,582.50 | $4,648.07 | $0.00 | $0.00 | $29,230.57 |

SUMMARY OF FEES WRITTEN DOWN* (summarized by timekeeper)
TOTAL: $0.00

SUMMARY OF EXPENSES WRITTEN DOWN* (summarized by cost code)

TOTAL:  $0.00

AMOUNT OF ADJUSTMENT:                    $ 5,000.00

* Reason for Write-off / Adjustment _____ *Exemplary* *of Result* *premium*
*Due*

*WRITE-OFF / NEGATIVE ADJUST AUTHORIZATION:

_____Name                    2/14/02_____
                                        Date

PH 116637

B-236

# Pepper Hamilton LLP
#### ——Attorneys at Law——

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000

Invoice Number: 10085450
Client/Matter Number: 111419.00006
February 11, 2002

Diane Messick, Controller
Student Finance Corporation
170 Lukens Drive
New Castle, DE 19720

---

Requesting Attorney: W. Roderick Gagne          Federal Identification No. 23-1433012

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2002 as follows

RE:   Neilsen Electronics Institute

| Date | Name | Services | Time |
|------|------|----------|------|
| 1/1/02 | W. Gagne | Review correspondence; revise and edit and other matters. | 1.50 |
| 1/8/02 | W. Gagne | Discuss issues with Duncan Grant regarding Note of Extortion to Andrew Yao and review alternatives. | 0.80 |
| 1/8/02 | M. Grant | Telephone Andrew Yao to discuss documents that Robert Nielsen sent to him; initial review and analysis of Nielsen letter. | 1.00 |
| 1/9/02 | M. Grant | Further review of letter from Robert Nielsen to Andrew Yao; analyze strategy for responding to same, including possible supplementation of summary judgment record and request for injunction against Nielsen's disclosure of confidential litigation information; conference with Rod Gagne to discuss same; direct J. Naylor analysis of deposition record, to demonstrate inconsistencies between Nielsen testimony and statements in his letter to A. Yao. | 3.00 |
| 1/9/02 | J. Naylor | Review and analyze Nielsen letter; confer with D. Grant regarding same; research and analyze case law in support of motion to enjoin. | 2.00 |
| 1/10/02 | W. Gagne | Review issues with Duncan Grant on Neilsen case and plan strategy on same. | 1.00 |

PH 116638

B-237

Student Finance Corporation
Client/Matter Number:  111419.00006
February 11, 2002

Invoice: 10085450
Page 2

| Date | Name | Services | Time |
|------|------|----------|------|
| 1/10/02 | M. Grant | Telephone Andrew Yao to discuss four-part plan for response to Nielsen letter; conference with J. Naylor to direct fact and legal research; conference with R. Gagne to discuss status of response to Nielsen letter. | 1.00 |
| 1/10/02 | J. Naylor | Research and analyze case law supporting motion for permanent injunction against R. Nielsen. | 4.60 |
| 1/11/02 | W. Gagne | Review Neilsen diatribe, letter and accusations. | 1.00 |
| 1/11/02 | M. Grant | Telephone Perry Turnbull to discuss strategy in response to letter from Robert Nielsen; telephone Jay Devine (Tierney & Co.) To discuss media advice in case Nielsen releases his letter to the press. | 0.80 |
| 1/11/02 | J. Naylor | Research and analyze case law supporting motion for permanent injunction against R. Nielsen. | 8.00 |
| 1/14/02 | J. DeSario | Researched and drafted memo on enforceability of unsigned confidentiality agreement that was not filed | 4.90 |
| 1/14/02 | J. Naylor | Draft Motion for Permanent Injunction. | 4.40 |
| 1/15/02 | W. Gagne | Discuss status of case and strategy with Duncan Grant and other matters. | 0.50 |
| 1/15/02 | M. Grant | Conference with J. Naylor to discuss his research on motion to enjoin Nielsen from disclosing confidential litigation information. | 0.30 |
| 1/15/02 | J. DeSario | Finished memo on enforcement of confidentiality agreement | 1.30 |
| 1/15/02 | J. Naylor | Draft Motion for Permanent Injunction; confer with D. Grant regarding same. | 2.60 |
| 1/16/02 | M. Grant | R- and edit Naylor draft of motion to enjoin Nielsen from publicly disclosing confidential information; Conference with J. Naylor to direct further research; analyze possibilities for filing motion ex parte; conference with Noel Birle (former law clerk to Judge Farnan) to discuss same; review fax from Robert Nielsen to Perry Turnbull relating to timing of Nielsen's threatened disclosure of his 22-page letter. | 2.50 |
| 1/16/02 | J. DeSario | Researched issue of ability to supplement record after summary judgment motion has been filed | 2.40 |
| 1/16/02 | J. Naylor | Review and analyze Nielsen deposition in preparation for draft motion to supplement the record for purposes of SFC motion for summary judgment on fraud and RICO claims. | 2.70 |

PH 116639

B-238

Student Finance Corporation
Client/Matter Number: 111419.00006
February 11, 2002

Invoice: 10085450
Page 3

| Date | Name | Services | Time |
|------|------|----------|------|
| 1/17/02 | W. Gagne | Review documents; review issues with Duncan Grant regarding injunction; review correspondence on same. | 0.50 |
| 1/17/02 | M. Grant | Further work on motion to enjoin NEI from disclosing confidential SFC information; conference with J. Naylor to direct further research. | 2.50 |
| 1/17/02 | J. DeSario | RICO research and issue of establishing reliance; e-mail to D. Grant | 3.10 |
| 1/17/02 | J. Naylor | Research and analyze standards for granting ex parte relief; confer with D. Grant regarding same. | 4.20 |
| 1/18/02 | W. Gagne | Review case with Duncan Grant; review issues and other matters. | 0.50 |
| 1/18/02 | M. Grant | Finalize motion to enjoin Nielsen from disclosing confidential SFC information; telephone Jay Devine (Tierney & Associates) to discuss media strategy. | 2.00 |
| 1/18/02 | J. Naylor | Draft motion to supplement record for purposes of summary judgment motion to assert additional basis for summary judgment in SFC's favor; confer with D. Grant and J. DeSario regarding same. | 5.30 |
| 1/19/02 | W. Gagne | Review Neilson accusations and discuss with Duncan Grant. | 1.50 |
| 1/21/02 | W. Gagne | Review pleadings and motion for ex parte litigation. | 1.50 |
| 1/21/02 | M. Grant | Review and edit J. Naylor's draft of motion to supplement summary judgment record by adding reference to Nielsen admission that he did not rely on any statements by SFC regarding collection rate on NEI student loans; review new fax from Robert Nielsen to Perry Turnbull advising that the threatened disclosure will be released 1/25/02 if SFC does not respond to Nielsen settlement demand. | 2.00 |
| 1/21/02 | J. DeSario | Reviewed motion for J. Naylor | 0.30 |
| 1/21/02 | J. Naylor | Draft motion to supplement record for purposes of summary judgment motion to assert additional basis for summary judgment in SFC's favor; confer with D. Grant and J. DeSario regarding same. | 2.10 |
| 1/22/02 | W. Gagne | Review issues with Duncan Grant on injunction against Neilson; review issues on Summary Judgment and victory for SFC in aspects of the case. | 1.00 |

PH 116540

B-239

Student Finance Corporation
Client/Matter Number: 111419.00006                                          Invoice: 10085450
February 11, 2002                                                                        Page 4

| Date | Name | Services | Time |
|------|------|----------|------|
| 1/22/02 | M. Grant | Telephone Judge Farnan's chambers to confirm that court is enjoining Nielsen from disclosing confidential SFC information; draft order to be signed by court; review court's opinion and order granting summary judgment in favor of SFC on fraud and RICO claims | 3.00 |
| 1/22/02 | J. Naylor | Confer with D. Grant regarding injunction and court opinion granting summary judgment in SFC's favor. | 0.50 |
| 1/23/02 | W. Gagne | Review opinion; discuss issues with Duncan Grant. | 1.00 |
| 1/23/02 | M. Grant | Telephone E. McNally to discuss injunction against disclosure of SFC confidential information; letter to Robert Nielsen (at McNally's request) transmitting injunction; telephone Andrew Yao, Perry Turnbull to discuss injunction and summary judgment ruling in our favor on fraud and RICO claims; review analysis of media issues prepared by Jay Devine (Tierney & Associates) | 2.50 |
| 1/28/02 | M. Grant | Telephone Perry Turnbull to discuss strategy and status in view of court's order granting summary judgment with respect to fraud and RICO claims; review and edit draft press release prepared by Jay Devine (Tierney Communications); review letter from Robert Nielsen to Perry Turnbull relating to response to court's order enjoining Nielsen from disclosing confidential SFC information. | 0.80 |
| 1/28/02 | J. Naylor | Review and analyze correspondence from R. Nielsen. | 0.20 |
| 1/29/02 | M. Grant | Review redraft of press release sent by Jay Devine (Tierney & Associates). | 0.30 |

TOTAL CHARGEABLE HOURS ........................................................................ 81.10

TOTAL FEES ....................................................................................................... $24,582.50

EXPENSES
| | |
|---|---|
| Docket Search | 5.00 |
| Duplicating & Reproductions | 296.60 |
| Data Base Research | 4,030.94 |
| Messenger Service | 42.75 |
| Messenger Service – Overnight Courier | 38.52 |
| Postage | 2.51 |

PH 116641

B-240

Student Finance Corporation
Client/Matter Number: 111419.00006
February 11, 2002

Invoice: 10085450
Page 5

EXPENSES
Telecopy Charge                                225.00
Telephone                                        6.75

TOTAL EXPENSES ................................................................................................. $4,648.07

TOTAL AMOUNT DUE ...................................................................................... $29,230.57

PH 116642

B-241

# Pepper Hamilton LLP
Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000

REMITTANCE PAGE

Diane Messick, Controller
Student Finance Corporation
170 Lukens Drive
New Castle, DE 19720

Invoice Number: 10085450
February 11, 2002
Matter Number: 111419.00006

RE:    Neilsen Electronics Institute

FOR PROFESSIONAL SERVICES RENDERED through January 31, 2002

|  |  |
|---|---|
| Total Fees | $24,582.50 |
| Total Expenses and Services | $4,648.07 |
| Total Amount Due | $29,230.57 |

PLEASE RETURN WITH REMITTANCE

PH 116643

B-242

Pepper Hamilton LLP
Proforma

Page 95 (1)

02/02/02

Client: 111419    Student Finance Corporation

Proforma #:   318995

Matter: 111419.00006    Neilsen Electronics Institute

Requested Fees from 01/01/1980 thru 01/31/2002
Requested Expenses from 01/01/1980 thru 01/31/2002

| | | |
|---|---|---|
| Billing Partner: | 60811 | W. Roderick Gagne |
| Supervising Attorney: | 31325 | M. Duncan Grant |
| Status: | | OP |
| Date Opened: | | 02/10/1998 |
| Fee Frequency: | | M |
| Cost Frequency: | | M |
| Rate #: | 1 | |
| Workflow Template: | | WF01 |
| Billing Instructions: | | |

ADD $5,000 PREMIUM

Billing Contact Name:    Diane Messick, Controller
Address:    170 Lukens Drive
New Castle, DE  19720

#### INFORMATION FOR CURRENT PROFORMA

| | HOURS | FEES | EXPENSES | TOTAL |
|---|---|---|---|---|
| Charges to Date: | 1,682.00 | 345,418.00 | 40,178.13 | 385,596.13 |
| Billed Value: | 1,598.22 | 325,335.50 | 35,449.58 | 360,785.08 |
| Write-Off/Over-Realization: | 2.68 | 500.00 | 80.48 | 580.48 |
| Net Unbilled: | 81.10 | 19,582.50 | 4,648.07 | 24,230.57 |
| | | | | |
| Aged Net Unbilled: | | | | |
| 0 - 45 | 81.10 | 19,582.50 | 4,648.07 | 24,230.57 |
| 46 - 90 | .00 | .00 | .00 | .00 |
| Over 90 | .00 | .00 | .00 | .00 |
| Total | 81.10 | 19,582.50 | 4,648.07 | 24,230.57 |
| | | | | |
| Interim Bills | | | | |
| Uncollected: | | | | .00 |
| Unallocated: | | | | .00 |
| | | | | |
| Unallocated Credits: | | | | .00 |
| Trust Account Balance | | | | .00 |

( X ) BILL EXPENSES AND FEES    ( ) DO NOT BILL
( ) BILL FEES ONLY    ( ) CLOSE FILE
( ) BILL EXPENSES ONLY    ( ) FINAL BILL

PH 116644

B-243

Pepper Hamilton LLP
Proforma

Page 96 (2)
02/02/02

Client:  111419      Student Finance Corporation

Proforma #:   318995

Matter:  111419.00006   Neilsen Electronics Institute

MATTER BILLING HISTORY AS OF 02/02/02

|  | DATE | HOURS | FEES | EXPENSES | TOTAL |
|---|---|---|---|---|---|
| Last Bill Date: | 01/11/2002 |  | 349.50 | 101.12 | 450.62 |
| Last Bill #: | 10079888 | Billed Thru: 12/31/01 |  |  |  |
| Billed Value: |  | 1,590.22 | 325,335.50 | 35,449.58 | 360,785.08 |
| Billing Realization $: |  | 2.68 | 500.00 | 80.48 | 580.48 |
| Billing Realization %: |  | 100 | 100 | 100 | 100 |
| Collections: |  |  | 317,030.50 | 35,038.12 | 352,068.62 |
| Billed Write-Offs: |  |  | .00 | .00 | .00 |
| Aged Accounts Receivable |  |  |  |  |  |
| 0 - 45 |  |  |  |  | 450.62 |
| 46 - 90 |  |  |  |  | 8,265.84 |
| Over 90 |  |  |  |  | .00 |
| Total |  |  |  |  | 8,716.46 |

PH 116645

## Gagne, Roderick

| | |
|---|---|
| **From:** | AndrewNYao@aol.com |
| **Sent:** | Wednesday, November 29, 2000 6:07 PM |
| **To:** | gagner@pepperlaw.com |
| **Cc:** | dmessick@sfcorp.com |
| **Subject:** | Tax Meeting |

Rod,

Diane briefed me on your tax meeting today. Thank you for participating and for lending your considerable expertise.

I share the following observations. Diane will follow up with you in greater detail, as more facts come in.

REDACTED

(3) <u>Interco Receivables</u>. I was unaware that there were any balances left from CEC, DHP, or OSP. I have asked Diane to quantify them and I will talk to Rick about cleaning them up, hopefully by yearend.

Thank you, Rod, for your diligence and valued counsel.

Andrew

PEPPER 033368.001

11/29/00

**Gagne, Roderick**

| | |
|---|---|
| From: | Gagne, Roderick |
| Sent: | Wednesday, November 29, 2000 7:58 PM |
| To: | 'AndrewNYao@aol.com' |
| Subject: | RE: Tax Meeting |

Andrew,

Thank you very much for your e-mail. I really do appreciate your continued confidence in me. I would like to comment on the issues you raised and add one that I believe Diane addressed with you but you did not raise.

REDACTED

3. <u>Stock Repurchase.</u> Diane needs to revisit this a little and quantify numbers, but this is going to be an issue form a cash flow and needs to get factored into your planning. Bob ( and the other shareholders) will need to receive a distribution of $ to pay his share of the tax distributions. I need to get you the shareholder agreement. I think we can  only help out on the equity issue if we pay down the subordinated debt. However, as we discussed this creates a second set of issues, since Bob, the Trust and Pam have all borrowed to finance the same and if the debt is extinguished they will have significant cash flow issue for the monthly interest payments. In any event, this needs to be studied a little more.

4. <u>Interco with CEC, OSP and DHP.</u> I am glad to hear that you were equally surprised that these still existed. I thought these had been taken care of years ago. I suggest that these get a high priority in being paid off. I would defer a significant portion of the cash that the trusts are to receive this year to get these Interco's cleaned up. I will discuss it with Bob as to his portion.

Once we have a few more facts we can discuss it further.

REDACTED

This is a lot longer than what I intended to write when I started. Sorry.

PEPPER 033368.002

11/29/00