PEPPER047133

# Pepper Hamilton LLP
Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

215.981.4695
gagner@pepperlaw.com

June 14, 2002

**VIA FEDERAL EXPRESS**
Mr. Andrew N. Yao
Five Radnor Corporate Center
Suite 501
100 Matsonford Road
Radnor, PA  19087

Dear Andrew:

Enclosed please find three Irrevocable Stock Powers for your execution in connection with your voluntary consent to execute against the collateral held in the Pledge Agreement pursuant to your guaranty of certain loans to Robert Bast and various trusts of which he is a trustee. As agreed, in exchange for the execution of these stock powers and the voluntary consent to execution, Robert Bast and the trusts will assign to you the Notes and Loan Agreements. Please note that if a bankruptcy court should determine that the transfer of the stock certificates to Robert Bast and the various trusts constitutes a preference, the assignment of the loan will be reversed.

You should review these with your individual counsel. After such review, if it meets with your and your counsel's approval, please execute the same and return them to me in the Federal Express envelope provided. Once I return from vacation, I will send to you the assignments.

Please call should you have any questions.

Sincerely,

W. Roderick Gagné

WRG/vam
Enclosures

PHLEGAL: #1274471 v1 (RBDZ011.DOC)

| Philadelphia | Washington, D.C. | | Detroit | New York | Pittsburgh |
|---|---|---|---|---|---|
| Berwyn | Cherry Hill | Harrisburg | Princeton | Tysons Corner | Wilmington |

www.pepperlaw.com

GBT005148

215-981-4695
gagner@pepperlaw.com

June 3, 2002

**VIA FEDERAL EXPRESS**
Robert L. Bast, Esquire
10 Spruce Lane
Ambler, PA 19002

Dear Uncle Bob:

Enclosed please find an execution copy of the Pledge Agreement and all three stock certificates to be held as security for our loans.

I did not receive the interest payments from Student Finance Corporation ("SFC") or CEC today. I spoke with Andrew and learned that we will not be receiving the SFC checks for a while. I think you should determine if you intend to execute against the Pledge Agreement and take possession of the stock.

I also spoke to Gary Camp and learned we will not receive the CEC checks for a couple of weeks. It looks like we will be struggling for cash flow for the near future.

Please call me regarding your receipt of the enclosures.

Sincerely,

W. Roderick Gagné

WRG/bdw
Enclosures

PHLEGAL: #1268826 v1 (R716011.DOC)

## Gagne, Roderick

| | |
|---|---|
| **From:** | AndrewNYao@aol.com |
| **Sent:** | Tuesday, April 23, 2002 8:25 PM |
| **To:** | gagner@pepperlaw.com |
| **Subject:** | SFC Risk Factors |

Rod,

I know that these are troubling times for you as well. I have been very impressed, and reassured, by your steady hand, and continued guidance.

Please be assured, in return, that I will protect your family's investment in SFC, notwithstanding any adverse outcome that may result, should Royal make an uneconomic decision with respect to our recovery and repurchase proposal.

The SFC/FCS JV cash flows are strong and they are independent of Royal, the SFC business model is strong and it is independent of Royal, and the prospects of Premier Education Group continue to progress extraordinarily and it is independent of Royal.

Please know that I always will reciprocate your good will. I will not abandon those who do not abandon us.

I trust that you will have a productive conversation with Gil. Thank you.

Andrew

1

PH 097601

B-249

8/9/06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXHIBIT
364-I
10/16/06

In re:
STUDENT FINANCE CORPORATION,

      Debtor.

_____

CHARLES A. STANZIALE, JR., CHAPTER
7 TRUSTEE OF STUDENT FINANCE
CORPORATION,

      Plaintiff,

     v.

PEPPER HAMILTON LLP, et al.,

      Defendants.

Civil Action No. 04-1551-JJF

## DEFENDANTS W. RODERICK GAGNÉ, ROBERT L. BAST, PAMELA BASHORE GAGNÉ AND THE TRUSTS' RESPONSES TO THE TRUSTEE'S FIRST SET OF INTERROGATORIES TO THE FAMILY DEFENDANTS

Defendants Robert L. Bast ("Bast"), Pamela Bashore Gagné ("Pamela Gagné"), the seven trusts that are named as defendants in this action (the "Trusts") and W. Roderick Gagné, in his capacity as a trustee of the Trusts ("Gagné") (together referred to as "responding defendants"), through their undersigned attorneys, hereby respond to the Trustee's First Set of Interrogatories to the Family Defendants (the "Interrogatories").

## GENERAL OBJECTIONS

1.     The objections and responses set forth below are based only upon such information and documents as are presently known to responding defendants. Responding defendants do not waive and expressly reserve the right to amend, modify and/or supplement their objections and responses and/or to rely on additional information and documents as their investigation and discovery in this matter proceeds, and as their understanding, assessment and evaluation of plaintiff's claims and of their affirmative defenses to those claims may change over

time. Further, by providing information and answers in response to these Interrogatories, responding defendants do not waive and expressly reserve any objection they may have regarding the use of such information and answers in any proceeding in this matter or any other matter, including but not limited to competency, privilege, relevance, materiality and admissibility.

2.      Responding defendants object to the Interrogatories as premature in that discovery in this case is in the initial stages. Responding defendants believe that information relevant to their defenses in this action is in plaintiff's possession, but plaintiff has only recently produced documents to responding defendants in an accessible form, and such production is extremely voluminous and will require a significant amount of time to review. Further, depositions have not yet begun. In addition, information requested by these Interrogatories will or may be subject to expert opinion.

3.      Responding defendants object to the Interrogatories to the extent that they seek information that is subject to the attorney-client privilege, work product protection, joint-defense privilege, accountant-client privilege, marital privilege and/or any other applicable privilege or protection. Inadvertent production of any privileged or protected information is not intended to waive any applicable privilege or protection.

4.      Responding defendants object to the Interrogatories to the extent that they seek information that is not material or relevant to this action or is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Responding defendants object to the Interrogatories to the extent that they seek information that is equally available to plaintiff as to responding defendants or as to which the value, if any, of providing such information is far outweighed by the burden or cost of

2

producing it, on the grounds that such Interrogatories are unduly burdensome, oppressive and expensive.

6.    Responding defendants object to the Interrogatories to the extent that they are overbroad, vague, ambiguous or imprecisely specify the information sought.

7.    Responding defendants object to the Interrogatories to the extent that they seek disclosure of personal and/or confidential information, particularly when such information is of marginal relevance, at best, to any matter at issue in this action

8.    Responding defendants object to the Interrogatories to the extent that they are unreasonably duplicative or cumulative.

9.    Responding defendants object to the Interrogatories, including the instructions and definitions, to the extent that they seek to impose obligations on responding defendants beyond the requirements of the Federal Rules of Civil Procedure and Local Rules of Civil Procedure of the United States District Court of the District of Delaware.

10.    Responding defendants object to the term "Family Defendants." Bast, Pamela Gagné and each of the Trusts are separate individuals and entities and have different relationships to the parties and events at issue in this action. To the extent that the term "Family Defendants" implies to the contrary, it is confusing and misleading. Responding defendants also object to the term "Family Defendants" to the extent, if any, that it implies that these Interrogatories are directed to Gagné in any capacity other than as a trustee of the Trusts. Responding defendants understand these Interrogatories as being directed to Gagné solely as a trustee of the Trusts and are responding to the Interrogatories accordingly.

11.    By setting forth one or more of their General Objections in response to a particular Interrogatory, responding defendants do not waive or intend to waive their other

3

General Objections to that Interrogatory, and do not waive or intend to waive their General

Objections to any other Interrogatory. Responding defendants are responding to each one of the

Interrogatories subject to and without waiving the foregoing General Objections.

## RESPONSES AND SPECIFIC
## OBJECTIONS TO INTERROGATORIES

1.    Identify each and every loan or investment made by or on behalf of any of
the Family Defendants, or with funds provided by them, to SFC, Yao or Lore Yao and identify
separately for each such loan, or investment:

a.  the source of the funds used to make the loan or investment; if funds
were obtained by borrowing, provide the details of the borrowing transaction; if funds were
obtained by the sale of another asset, provide the details of that sale; if funds were removed from
an interest bearing account or instrument, identify and describe that account or instrument;

b.  all of the terms of the loan or investment;

c.  the payments received by the lender;

d   the security received for the loan and the results of any effort to
liquidate that security; and

e.  any guaranty received and the results of any effort to collect from the
guarantor.

**RESPONSE:** Responding defendants object to this Interrogatory as overly burdensome,

oppressive and expensive to the extent that it requests responding defendants to set forth

information contained in documents that are equally available to plaintiff as to responding

defendants. To the extent that the information requested is contained in documents that have

been produced or provided by responding defendants and/or by Pepper Hamilton to the Trustee

and/or the Trustee's counsel, or in documents that responding defendants in good faith believe

are in the possession of the Trustee, responding defendants will refer to such documents rather

than setting forth all of the information contained in the documents. Whenever reasonably

possible, responding defendants will refer to documents by Bates number, although reference to

4

particular Bates numbers does not mean that the documents are not contained elsewhere in the produced documents at different Bates numbers. Responding defendants also object to this Interrogatory as overly burdensome, oppressive and expensive to the extent, if any, that it requests responding defendants to set forth separately by date and/or amount each payment made on each of the loans of which it requests identification. In addition, responding defendants object to this Interrogatory as overbroad, in that most of the information that it requests is not material or relevant to this action and is not reasonably calculated to lead to the discovery of admissible evidence. Responding defendants further object to this Interrogatory on the grounds that it is compound. Subject to and without waiving these objections and their General Objections, responding defendants answer the Interrogatory as follows:

A     Subordinated Debentures

1.     $250,000 Subordinated Debenture and Loan Agreement between Student Finance Corporation ("SFC"), as Borrower, and Pamela Gagné, as Lender, Dated December 31, 1995

    a.     To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

    b.     The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendments to Loan Agreement. See PEPPER 040588-642, 041818-22, 041833-39, 041859-63.

    c.     No principal payments were received. To the best of Pamela Gagné's recollection, monthly interest payments of approximately $3,125.00 were received from approximately January 1996 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.     Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all other existing and future obligations of SFC to Lender and, therefore, secured each of the loans from Pamela Gagné to SFC listed in this response. See Items A.3, B.21, B.22, B.26 and B.34. No action was taken to

5

foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty

e.    Andrew N. Yao ("Yao") guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003031-33. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 3.5 shares of DHP G.P., Inc., 3.5 shares of Premier Education Group G.P., Inc. and 3.5 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Subordinated Debenture and Loan Agreement to Yao. See GBT 003031-33

2.    $750,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated December 31, 1995

a.    To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

b.    The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendments to Loan Agreement. See PEPPER 040643-703, 041782-91, 041802-06, 041870-74.

c.    No principal payments were received. To the best of Bast's recollection, monthly interest payments of approximately $9,375.00 were received from approximately January 1996 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.    Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all other existing and future obligations of SFC to Lender and, therefore, secured each of the loans from Bast to SFC listed in this response. See Items A.4, A.7, B.2, B.3, B.5, B.13, B.15, B.20, B.32, B.33, C.5 and C.10. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty

e.    Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003028-30 Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 12 shares of DHP G.P., Inc., 12 shares of Premier Education Group G.P., Inc. and 12 shares of One Summit Place G.P., Inc to Lender and Lender assigned the Subordinated Debenture and Loan Agreement to Yao. See GBT 003028-30.

6

3.  $250,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and Pamela Gagné, as Lender, Dated August 1, 1997

   a.  To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

   b.  The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendment to Loan Agreement. See PEPPER 040704-828.

   c.  No principal payments were received. To the best of Pamela Gagné's recollection, monthly interest payments of approximately $2,083.33 were received from approximately September 1997 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

   d.  Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all other existing and future obligations of SFC to Lender and, therefore, secured each of the loans from Pamela Gagné to SFC listed in this response. See Items A.1, B.21, B.22, B.26 and B.34. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

   e.  Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003037-39. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 3.5 shares of DHP G.P., Inc., 3.5 shares of Premier Education Group G.P., Inc. and 3.5 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Subordinated Debenture and Loan Agreement to Yao. See GBT 003037-39.

4.  $600,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated August 1, 1997

   a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

   b.  The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendment to Loan Agreement. See PEPPER 040959-1084.

7

c.    No principal payments were received. To the best of Bast's recollection, monthly interest payments of approximately $5,000.00 were received from approximately September 1997 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.    Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all other existing and future obligations of SFC to Lender and, therefore, secured each of the loans from Bast to SFC listed in this response. See Items A.2, A.7, B.2, B.3, B.5, B.13, B.15, B.20, B.32, B.33, C.5 and C.10. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.    Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003025-27. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 8 shares of DHP G.P., Inc., 8 shares of Premier Education Group G.P., Inc. and 8 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Subordinated Debenture and Loan Agreement to Yao. See GBT 003025-27.

5.    $150,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated August 1, 1997

a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

b.    The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendment to Loan Agreement. See PEPPER 040829-958.

c.    No principal payments were received. To the best of Gagné's recollection, monthly interest payments of approximately $1,250.00 were received from approximately September 1997 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.    Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all other existing and future obligations of SFC to Lender and, therefore, secured each of the loans from the Trust to SFC listed in this response. See Items A.6, B.1, B.4, B.14, B.19, B.30, B.31, B.35, C.1 and C.6. No action

8

was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.  Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003049-51. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 2 shares of DHP G.P., Inc., 2 shares of Premier Education Group G.P., Inc. and 2 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Subordinated Debenture and Loan Agreement to Yao. See GBT 003049-51.

6.  $500,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated August 7, 1998

a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

b.  The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendment to Loan Agreement. See PEPPER 041097-110, 041128-35, 041145-50, 041215-33, 041241-95, 041303-70.

c.  No principal payments were received. To the best of Gagné's recollection, monthly interest payments of approximately $6,250.00 were received from approximately September 1998 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel

d.  Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all existing and future obligations of SFC to Lender and, therefore, secured each of the loans from the Trust to SFC listed in this response. See Items A.5, B.1, B.4, B.14, B.19, B.30, B.31, B.35, C.1 and C.6. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.  Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003052-54. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 7 shares of DHP G.P., Inc., 7 shares of Premier Education Group G.P., Inc. and 7 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Subordinated Debenture and Loan to Yao. See GBT 003052-54.

9

7.   $500,000 Subordinated Debenture and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated August 7, 1998

    a.    To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

    b.    The terms of the loan are contained in the Subordinated Debenture, Loan Agreement, Conditional Guaranty, Warrant and Amendment to Loan Agreement. See PEPPER 041085-95, 041112-27, 041136-43, 041155-214, 041234-40, 041297-302, 041371-91.

    c.    No principal payments were received. To the best of Bast's recollection, monthly interest payments of approximately $6,250.00 were received from approximately September 1998 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.    Security interests for this loan were granted by the Subordinated Debenture and the Loan Agreement. The Subordinated Debenture also granted Lender a security interest for all existing and future obligations of SFC to Lender and, therefore, secured each of the loans from Bast to SFC listed in this response See Items A.2, A.4, B.2, B.3, B.5, B.13, B.15, B.20, B.32, B.33, C.5 and C.10. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

    e.    Yao guaranteed the Subordinated Debenture. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003022-24. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 7 shares of DHP G.P., Inc., 7 shares of Premier Education Group G.P., Inc. and 7 shares of One Summit Place G.P., Inc. and Lender assigned the Subordinated Debenture and Loan Agreement pursuant to an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See GBT 003022-24.

B.   Secured Notes

1.   $250,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated August 31, 1998

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

B-259

b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Amended and Restated Servicing Agreement. See PH 007833-69.

c.  The loan was repaid on or about January 23, 1999, after SFC entered into the Wilmington Trust Company Warehouse Facility. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $2,500.00 were received from approximately September 1998 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore N. Yao ("Lore Yao") guaranteed the Secured Note. No action was taken on the Guaranty.

2.  $250,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated August 31, 1998

a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Amended and Restated Servicing Agreement. See PH 007796-832.

c.  The loan was repaid on or about January 23, 1999, after SFC entered into the Wilmington Trust Company Warehouse Facility. To the best of Bast's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $2,500.00 were received from approximately September 1998 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

11

3.  $1,500,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated September 18, 1998

    a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

    b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, the Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 007870-913.

    c.  The loan was repaid on or about January 23, 1999, after SFC entered into the Wilmington Trust Company Warehouse Facility. To the best of Bast's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $15,000.00 were received from approximately October 1998 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.  Security interests were granted by the Amended and Restated Loan and Security Agreement. No action was taken to execute on the security.

    e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

4.  $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated September 18, 1998

    a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

    b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 007914-57.

    c.  The principal was refinanced on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.1, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $5,000.00 were received from approximately October 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

B-261

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

5.  $1,000,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated October 30, 1998

   a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

   b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 007958-8001.

   c.  $600,000 of the principal was refinanced when SFC and Bast entered a new term loan agreement on or about January 20, 1999. See Item C 5, below. The remaining principal of $400,000 was repaid on or about January 23, 1999, after SFC entered into the Wilmington Trust Company Warehouse Facility. To the best of Bast's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $10,000.00 were received from approximately November 1998 until the loan was repaid or refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

   d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

   e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

6.  $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated October 30, 1998

   a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

   b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended

13

and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 008006-50.

c.     The principal was refinanced on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.2, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $5,000.00 were received from approximately November 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.     Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.     Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

7.   $50,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated October 30, 1998

a.     To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.     The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 008055-99.

c.     The principal was refinanced on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.3, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $500.00 were received from approximately November 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.     Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.     Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

8.   $50,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated October 30, 1998

14

a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.  The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 008004-48.

c.  The principal was refinanced on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.4, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $500.00 were received from approximately November 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

9.  $250,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated November 20, 1998

a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Amended and Restated Servicing Agreement. See PH 008352-475.

c.  The principal was refinanced on or about on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.3, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $2,500.00 were received from approximately December 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

15

B-264

   d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

   e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

10.   $250,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated November 20, 1998

   a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

   b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Amended and Restated Servicing Agreement. See PH 008476-599.

   c.    The principal was refinanced on or about on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.4, below. To the best of Gagné's recollection, the 10% commitment fee was paid at that time, and monthly interest payments of approximately $2,500.00 were received from approximately December 1998 until the loan was refinanced. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

   d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

   e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

11.   $200,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated December 18, 1998

   a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

   b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Second Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Second Amended and Restated Servicing Agreement. See PH 008600-65.

B-265

  c.  The principal was refinanced on or about on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.4, below. To the best of Gagné's recollection, the 10% commitment fee and interest of approximately $2,000.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

  d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

  e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

12. $200,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated December 18, 1998

  a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

  b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Second Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Second Amended and Restated Servicing Agreement. See PH 008692-729, 008755-81.

  c.  The principal was refinanced on or about on or about January 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.3, below. To the best of Gagné's recollection, the 10% commitment fee and interest of approximately $2,000.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

  d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

  e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

13. $1,400,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated December 18, 1998

  a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Summit Bank that was interest only at the prime or prime minus rate.

17

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Second Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Second Amended and Restated Servicing Agreement. See PH 008903-40, 008966-92.

c.   The principal was refinanced on or about on or about January 20, 1999, when SFC and Bast entered a new term loan agreement. See Item C.5, below. To the best of Bast's recollection, the 10% commitment fee and interest of approximately $14,000.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.   Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.   Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

14.   $200,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated December 18, 1998

a.   To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Second Amended and Restated Intercreditor, Custodian, Collateral and Assignment Agreement and Second Amended and Restated Servicing Agreement. See PH 009011-50, 009076-102.

c.   The loan was repaid on or about January 23, 1999, after SFC entered into the Wilmington Trust Company Warehouse Facility. To the best of Gagné's recollection, the 10% commitment fee and interest of approximately $2,000.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.   Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.   Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

15.   $3,000,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated March 22, 1999

B-267

a.   To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Summit Bank that was interest only at the prime or prime minus rate.

b.   The terms of the loan are contained in the Amended and Restated Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Third Amended and Restated Servicing Agreement. See PH 009303-46.

c.   $400,000 of the principal was refinanced on or about May 20, 1999, when SFC and Bast entered a new term loan agreement. See Item C.10, below. A total of $1,924,000 was repaid in or around September, October and November 1999. The remaining principal of $676,000 was never repaid. To the best of Bast's recollection, the applicable commitment fee was paid at the time that the loan was repaid or refinanced, and monthly interest payments at the annual rate of 12% on the unpaid principal amount were received from approximately April 1999 to April 2002. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.   Security interests were granted by the Loan and Security Agreement. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.   Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003019-21. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 9 shares of DHP G.P., Inc., 9 shares of Premier Education Group G.P., Inc. and 9 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and the Loan and Security Agreement to Yao. See GBT 003019-21.

16.   $75,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, April 21, 1999

a.   To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Third Amended and Restated Servicing Agreement. See PEPPER 042228-57.

19

B-268

    c.    The principal was refinanced on or about on or about May 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.7, below. To the best of Gagné's recollection, the applicable commitment fee and interest of approximately $750.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

17.    $50,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated April 21, 1999

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Third Amended and Restated Servicing Agreement. See PEPPER 054886-915.

    c.    The principal was refinanced on or about on or about May 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.8, below. To the best of Gagné's recollection, the applicable commitment fee and interest of approximately $500.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

18.    $75,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated April 21, 1999

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

20

B-269

b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Third Amended and Restated Servicing Agreement. See PEPPER 042346-76.

c.  The principal was refinanced on or about on or about May 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.9, below. To the best of Gagné's recollection, the applicable commitment fee and interest of approximately $750.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

19. $600,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated April 21, 1999

a.  To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Corestates Bank (now Wachovia) that was interest only at the prime rate.

b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Third Amended and Restated Servicing Agreement.

c.  The principal was refinanced on or about on or about May 20, 1999, when SFC and the Trust entered a new term loan agreement. See Item C.6, below. To the best of Gagné's recollection, the applicable commitment fee and interest of approximately $6,000.00 were paid at that time. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty

20. $1,500,000 Secured Note and Loan Agreement between SFC ("SFC"), as Borrower, and the Bast, as Lender, Dated June 18, 1999

21

B-270

a.  To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Summit Bank that was interest only at the prime or prime minus rate.

b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009906-63.

c.  The loan was repaid on or about August 2, 1999. To the best of Bast's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $15,000.00 were received from approximately July 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

21.  $3,500,000 Secured Note and Loan Agreement between SFC, as Borrower, and Pamela Gagné, as Lender, Dated June 18, 1999

a.  To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a money market fund at Paine Webber, Inc. bearing interest at the then current rate.

b.  The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009964-10022.

c.  The loan was repaid on or about August 2, 1999. To the best of Pamela Gagné's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $35,000.00 were received from approximately July 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.  Security interests were granted by the Loan and Security Agreement No action was taken to execute on the security.

e.  Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

22. $625,000 Secured Note and Loan Agreement between SFC, as Borrower, and Pamela Gagné, as Lender, Dated October 20, 1999

    a. To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

    b. The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 015511-67.

    c. The loan was repaid on or about January 20, 2000, as the principal sum of $625,000.00 was converted to stock of the Borrower. To the best of Pamela Gagné's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $6,250.00 were received from approximately November 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d. Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e. Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

23. $125,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated October 20, 1999

    a. To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b. The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 015626-83.

    c. The loan was repaid on or about January 20, 2000, as the principal sum of $125,000.00 was converted to stock of the Borrower. To the best of Gagné's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $1,250.00 were received from approximately November 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

23

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

24.    $125,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated October 20, 1999

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 015568-625.

    c.    The loan was repaid on or about January 20, 2000, as the principal sum of $125,000.00 was converted to stock of the Borrower. To the best of Gagné's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $1,250.00 was received from approximately November 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

25.    $125,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated October 20, 1999

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 015684-741.

B-273

c.    The loan was repaid on or about January 20, 2000, as the principal sum of $125,000.00 was converted to stock of the Borrower. To the best of Gagné's recollection, the applicable commitment fee was paid at that time, and monthly interest payments of approximately $1,250.00 were received from approximately November 1999 until the loan was repaid. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

26.  $375,000 Secured Note and Loan Agreement between SFC, as Borrower, and Pamela Gagné, as Lender, Dated September 25, 2001

a.    To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056513-41.

c.    The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $28,750.00 (incorrectly identified in ¶ 314 of the First Amended Complaint as a payment to the Elizabeth Brennan Trust FBO W. Roderick Gagné).

d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

27.  $125,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated September 25, 2001

a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

25

B-274

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056629-57.

c.   The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $9,583.00.

d.   Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.   Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

28.   $175,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated September 25, 2001

a.   To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056600-28.

c.   The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $13,417.00.

d.   Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.   Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

29.   $175,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated September 25, 2001

a.   To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

b.   The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056658-86.

26

    c.    The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $13,417.00

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

30.    $250,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 01/12/94 Family Trust # 2 FBO Philip B. Gagné, as Lender, Dated October 2, 2001

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056571-99.

    c.    The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $18,583.00.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

31.    $375,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 01/12/94 Family Trust # 2 FBO Elizabeth L. Gagné, as Lender, Dated September 25, 2001

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from Mellon Bank, N.A. that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056542-70.

    c.    The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $28,750.00.

27

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

32.    $2,000,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated September 25, 2001

    a.    To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Summit Bank, N.A. that was interest only at the prime or prime minus rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PEPPER 056484-512.

    c.    The loan was repaid on or about November 13, 2001, together with the applicable commitment fee and interest totaling $153,334.00.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Secured Note. No action was taken on the Guaranty.

33.    $2,000,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated March 5, 2002

    a.    To the best of Bast's recollection, the source of funds for the loan to SFC was a collateralized loan from Summit Bank, N.A. that was interest only at the prime or prime minus rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056781-800, 056801-51.

    c.    No principal payments were received. Interest payments totaling $38,000.00 were received through April 2002.

    d.    Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

28

e.    Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003013-15. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 29 shares of DHP G.P., Inc., 29 shares of Premier Education Group G.P., Inc. and 29 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003013-15

34.    $400,000 Secured Note and Loan Agreement between SFC, as Borrower, and Pamela Gagné, as Lender, Dated March 5, 2002

a.    To the best of Pamela Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056781-800, 056852-99.

c.    No principal payments were received. Interest payments totaling $7,600.00 were received through April 2002.

d.    Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.    Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003043-45. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 6 shares of DHP G.P., Inc., 6 shares of Premier Education Group G.P., Inc. and 6 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003043-45.

35.    $400,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 01/12/94 Family Trust # 2 FBO Elizabeth L. Gagné, as Lender, Dated March 5, 2002

a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

29

b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056781-800, 056900-47.

c.    No principal payments were received. Interest payments totaling $7,600.00 were received through April 2002.

d.    Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.    Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003055-57. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 6 shares of DHP G.P., Inc., 6 shares of Premier Education Group G.P., Inc. and 6 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003055-57.

36.    $200,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated March 5, 2002

a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056781-800, 056996-7043.

c.    No principal payments were received. Interest payments totaling $3,800.00 were received through April 2002.

d.    Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e.    Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003061-63. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 3

30

shares of DHP G.P., Inc., 3 shares of Premier Education Group G.P., Inc. and 3 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003061-63.

37. $200,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated March 5, 2002

    a.    To the best of the recollection of Gagné, a trustee of this Trust, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056948-95, 056781-800.

    c.    No principal payments were received. Interest payments totaling $3,800.00 were received through April 2002.

    d.    Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

    e.    Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003058-60. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 3 shares of DHP G.P., Inc., 3 shares of Premier Education Group G.P., Inc. and 3 shares of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003058-60.

38. $100,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated March 5, 2002

    a.    To the best of Gagné's recollection, the source of funds for the loan to SFC was a collateralized loan from First Union Bank, N.A. (now Wachovia) that was interest only at the prime rate.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Secured Note, Guaranty, Intercreditor, Collateral and Assignment Agreement, Custody Agreement and Servicing Agreement. See PEPPER 056781-800, 057044-91.

B-280

c. No principal payments were received. Interest payments totaling $1,900.00 were received through April 2002.

d. Security interests were granted by the Loan and Security Agreement; however, Borrower never established the required security. No action was taken to foreclose on the security interest in the Borrower's assets; however, as stated below, Lender executed on the Guaranty.

e. Yao and Lore Yao guaranteed the Secured Note. As a result of Lender's efforts to collect from Guarantor, Yao entered into a Pledge Agreement dated May 5, 2002 and an Assignment and Acceptance of Loan and Security Agreement dated as of June 14, 2002. See PEPPER 056756-63; GBT 003064-66. Pursuant to the Assignment and Acceptance of Loan and Security Agreement, Yao transferred 1 share of DHP G.P., Inc., 1 share of Premier Education Group G.P., Inc. and 1 share of One Summit Place G.P., Inc. to Lender and Lender assigned the Secured Note and Loan and Security Agreement to Yao. See GBT 003064-66.

C.    18 Month Term Notes

1.    $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated January 20, 1999

a. The loan was a refinancing of the Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, dated September 18, 1998. The source of funds was the same as it had been for the initial loan to SFC.

b. The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009143-82.

c. To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $31,192.39 were received from approximately February 1999 to July 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d. Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e. Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

B-281

2.  $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated January 20, 1999

   a.  The loan was a refinancing of the Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, dated October 30, 1998. The source of funds was the same as it had been for the initial loan to SFC.

   b.  The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009183-222.

   c.  To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $31,192.39 were received from approximately February 1999 to July 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

   d.  Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

   e.  Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

3.  $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated January 20, 1999

   a.  The loan was a refinancing of three Secured Notes and Loan Agreements between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, dated October 30, 1998, November 20, 1998 and December 18, 1998, totaling $500,000 in principal. The source of funds was the same as it had been for the initial loans to SFC.

   b.  The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009263-302.

   c.  To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $31,192.39 were received from approximately February 1999 to July 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of

33

B-282

SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.     Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.     Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

4.     $500,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated January 20, 1999

a.     The loan was a refinancing of three Secured Notes and Loan Agreements between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, dated October 30, 1998, November 20, 1998 and December 18, 1998, totaling $500,000 in principal. The source of funds was the same as it had been for the initial loans to SFC.

b.     The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009223-62.

c.     To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $31,192.39 were received from approximately February 1999 to July 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

d.     Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

e.     Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

5.     $2,000,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated January 20, 1999

a.     The loan was a refinancing of two Secured Notes and Loan Agreements between SFC, as Borrower, and Bast, as Lender, $600,000 of the loan dated October 30, 1998, and all of loan dated December 18, 1998, totaling $2,000,000 in principal. The source of funds was the same as it had been for the initial loans to SFC.

34

    b.    The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. <u>See</u> PH 009103-42.

    c.    To the best of Bast's recollection, monthly payments of approximately $124,769.57 were received from approximately February 1999 to July 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

6.    $600,000 Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, Dated May 20, 1999

    a.    The loan was a refinancing of the Secured Note and Loan Agreement between SFC, as Borrower, and the Elizabeth B. Brennan Trust T/U/D 1/12/94, as Lender, dated April 21, 1999. The source of funds was the same as it had been for the initial loan to SFC.

    b.    The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. <u>See</u> PH 009736-75.

    c.    To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $37,430.87 were received from approximately June 1999 to November 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.    Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.    Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

7.    $75,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W. Roderick Gagné, as Lender, Dated May 20, 1999

35

a.    The loan was a refinancing of the Secured Note and Loan Agreement between
      SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO W.
      Roderick Gagné, as Lender, dated April 21, 1999. The source of funds was the
      same as it had been for the initial loan to SFC.

b.    The terms of the loan are contained in the Loan and Security Agreement,
      Amended and Restated Secured Note, Conditional Guaranty, Intercreditor,
      Custodian, Collateral and Assignment Agreement and Servicing Agreement. See
      PH 009775-815.

c.    To the best of the recollection of Gagné, a trustee of this Trust, monthly payments
      of approximately $4,678.86 were received from approximately June 1999 to
      November 2000, by which time the loan was paid in full. Responding defendants
      believe that all payments made on this loan would be shown in the records of
      SFC, which records are in the possession of the Trustee and/or the Trustee's
      counsel.

d.    Security interests were granted by the Loan and Security Agreement. No action
      was taken to execute on the security.

e.    Yao and Lore Yao guaranteed the Term Note. No action was taken on the
      Guaranty.

8.    $50,000 Secured Note and Loan Agreement between SFC, as Borrower, and the James T.
      Brennan Trust T/U/D 04/08/91 FBO Philip B. Gagné, as Lender, Dated May 20, 1999

a.    The loan was a refinancing of the Secured Note and Loan Agreement between
      SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Philip
      B. Gagné, as Lender, dated April 21, 1999. The source of funds was the same as
      it had been for the initial loan to SFC.

b.    The terms of the loan are contained in the Loan and Security Agreement,
      Amended and Restated Secured Note, Conditional Guaranty, Intercreditor,
      Custodian, Collateral and Assignment Agreement and Servicing Agreement. See
      PH 009865-905.

c.    To the best of the recollection of Gagné, a trustee of this Trust, monthly payments
      of approximately $3,119.24 were received from approximately June 1999 to
      November 2000, by which time the loan was paid in full. Responding defendants
      believe that all payments made on this loan would be shown in the records of
      SFC, which records are in the possession of the Trustee and/or the Trustee's
      counsel.

d.    Security interests were granted by the Loan and Security Agreement. No action
      was taken to execute on the security.

36

e.   Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

9.   $75,000 Secured Note and Loan Agreement between Student Finance Corporation ("SFC"), as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, Dated May 20, 1999

   a.   The loan was a refinancing of the Secured Note and Loan Agreement between SFC, as Borrower, and the James T. Brennan Trust T/U/D 04/08/91 FBO Elizabeth L. Gagné, as Lender, dated April 21, 1999. The source of funds was the same as it had been for the initial loan to SFC.

   b.   The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009816-64.

   c.   To the best of the recollection of Gagné, a trustee of this Trust, monthly payments of approximately $4,678.86 were received from approximately June 1999 to November 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

   d.   Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

   e.   Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

10.   $1,200,000 Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, Dated May 20, 1999

   a.   The loan was a partial refinancing of $400,000 of the Secured Note and Loan Agreement between SFC, as Borrower, and Bast, as Lender, dated March 22, 1999, and new funds of $800,000, totaling $1,200,000 in principal. The source of funds for the refinancing was the same as it had been for the initial loan to SFC. To the best of Bast's recollection, the source of the new funds was a collateralized loan from CoreStates Bank (now Wachovia) that was interest only at the prime or prime minus rate.

   b.   The terms of the loan are contained in the Loan and Security Agreement, Amended and Restated Secured Note, Conditional Guaranty, Intercreditor, Custodian, Collateral and Assignment Agreement and Servicing Agreement. See PH 009696-735.

37

    c.      To the best of Bast's recollection, monthly payments of approximately $74,861.74 were received from approximately June 1999 to November 2000, by which time the loan was paid in full. Responding defendants believe that all payments made on this loan would be shown in the records of SFC, which records are in the possession of the Trustee and/or the Trustee's counsel.

    d.      Security interests were granted by the Loan and Security Agreement. No action was taken to execute on the security.

    e.      Yao and Lore Yao guaranteed the Term Note. No action was taken on the Guaranty.

    2.      Set forth separately as to each affirmative defense asserted in your Answer to the Amended Complaint:

    a.  a description of all facts on which you rely in asserting the defense;

    b.  an identification of all individuals with knowledge of facts regarding the affirmative defenses or on which the affirmative defense is based, and a description of the knowledge of each individual;

    c.  identification of all documents that set forth, describe, relate or refer to facts on which the affirmative defense is based; and

    d.  an identification of all documents that relate to or support the claimed affirmative defense.

**RESPONSE:**

    Responding defendants object to this Interrogatory on the grounds that it is premature at this stage of the litigation to request them to set forth all facts, individuals with knowledge and documents relating to each of their affirmative defenses. Responding defendants further object to this Interrogatory on the grounds that it is unduly burdensome to request them to identify all individuals with knowledge of facts and all documents relating to facts on which their affirmative defenses are based, and to identify all documents that relate to the affirmative defenses. Notwithstanding that the Interrogatory is premature and unduly burdensome, responding defendants will identify facts, individuals and documents to the extent known to them

B-287

and reasonably identifiable at this stage of the litigation, but responding defendants do so without waiving and expressly reserving their right to amend, modify and/or supplement their responses and to rely on additional information and documents, and on the testimony of additional individuals, as investigation and discovery in their matter proceeds, and as their understanding, assessment and evaluation of plaintiff's claims and of their affirmative defenses to those claims may change over time. Responding defendants also object to this Interrogatory on the grounds that it is compound. Subject to and without waiving these objections and their General Objections, and fully reserving their right to amend, modify and/or supplement or correct their answer at a later stage of the litigation, responding defendants answer the Interrogatory as follows:

Affirmative Defense No. 1: See the Motion To Dismiss the Complaint and the accompanying Memorandum of Law filed by Gagné, Bast, Pamela Gagné and the Trusts, in which responding defendants set forth the basis for this defense.

Affirmative Defense No. 2: As provided in 11 U.S.C. § 547(b), one of the requirements for a trustee to avoid a transfer is that the transfer was made while the debtor was insolvent. In asserting this defense, responding defendants rely on the fact that the Trustee has not established that SFC was insolvent at the time of any of the transfers that he seeks to recover from responding defendants.

Responding defendants believe, but have no personal knowledge, that facts regarding the solvency or insolvency of SFC are known by former officers, directors and employees of SFC; SFC's former accountants; and the Trustee and counsel for the Trustee. Responding defendants believe, but have no personal knowledge, that documents regarding the

39

B-288

solvency or insolvency of SFC are in the possession of the Trustee, counsel for the Trustee and

SFC's former accountants, among others.

Affirmative Defense No. 3: Responding defendants incorporate their answer

regarding Affirmative Defense No. 2. In addition, as provided in 11 U.S.C. § 547(b), one of the

requirements for a trustee to avoid a transfer made between ninety days and one year before the

filing of a bankruptcy petition is that the creditor was an insider at the time of the transfer. In

asserting this defense, responding defendants rely on the fact that the Trustee has not established

and cannot establish that responding defendants were insiders of SFC. The Supplemental

Responses of the Trustee to the First Set of Interrogatories of Bast, Pamela Gagné and the Trusts

do not contain any facts that establish or could be used to establish that any of the responding

defendants was an insider of SFC. Neither Gagné nor any of the responding defendants were

directors, officers, general partners or persons in control of SFC.

Individuals with knowledge that neither Gagné nor any of the responding

defendants was a director, officer, general partner or person in control of SFC include Bast;

Pamela Gagné; Gagné; former officers, directors and employees of SFC, including Yao, Diane

Messick and Debbie Pike; employees and former employees of SFC's former lenders and

investment bankers; employees and former employees of Royal; employees or partners and

former employees or partners of Pepper Hamilton, including Sheilah Gibson; and the Trustee and

counsel for the Trustee. Further identification of specific individuals with knowledge and the

areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast,

Pamela Gagné and the Trusts. Responding defendants believe that documents in the possession

of the Trustee and counsel for the Trustee support this defense, in that none of the documents

40

will show that Gagné or responding defendants were directors, officers, general partners or persons in control of SFC, and will show that other individuals were the directors, officers, general partners and persons in control of SFC.

          <u>Affirmative Defense No. 4</u>: Responding defendants incorporate their answer regarding Affirmative Defense No. 3.

          <u>Affirmative Defense No. 5</u>: All of the payments received by responding defendants from SFC in the ninety days and in the one year preceding the petition date were regular payments of principal and interest on loans made by responding defendants to SFC in the ordinary course of the business and financial affairs of SFC and responding defendants. The loans were on terms consistent with rates and terms that SFC did get or could have gotten from other lenders at the time the loans were made. The payments made by SFC during the ninety days and one year preceding the petition date, although to some extent in different amounts and/or on different loans, were not different in substance or procedure from the payments made by SFC to responding defendants in previous years. The principal and interest payments were made in the ordinary course of business and according to ordinary business terms.

          Individuals with knowledge of facts regarding this defense include Bast; Pamela Gagné; Gagné; former officers, directors and employees of SFC, including Yao, Diane Messick, David Zulauf and Pat Kartha; employees and former employees of SFC's investment bankers, including John Loofbourrow and Scott Schauer; SFC's former accountants; David Wrubel; individuals and employees of entities that made loans or considered making loans to SFC, including Sanford Harrick of SWH Funding Corporation and Jeffrey Schaffer of Spectrum

41

B-290

Group LLC; and the Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. Documents produced by responding defendants, including documents at or within Bates Nos. GBT 000001-139, 657-78, 897-1351, 1398-400, 1403-05, 1465-72, 1492-609, 1765-68, 3203-09, as well as documents produced by Pepper Hamilton and other parties to this action, also support and relate to this defense.

        <u>Affirmative Defense No. 6</u>: Responding defendants made loans to SFC on or about September 25, 2001, October 2, 2001 and March 5, 2002, which loans provided new value to SFC. Although SFC was obligated to provide security for these loans, it failed to provide the required security for at least the March 5, 2002 loans. Responding defendants are gathering information and conducting discovery regarding whether SFC established the required security for the September 25, 2001 and October 2, 2001 loans.

        Individuals with knowledge of facts regarding this defense include Bast; Gagné; former officers, directors and employees of SFC, including Yao, Diane Messick, Gary Hawthorne and Lori Swanell; and the Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. The documents identified by responding defendants in response to Interrogatory No. 1, as well as other documents produced in this action by

42

responding defendants, Pepper Hamilton and other parties, also support and relate to this defense.

Affirmative Defense No. 7: Responding defendants incorporate their answers regarding Affirmative Defenses Nos. 5 and 6. In addition, the loans made by responding defendants on or about September 25, 2001 and October 2, 2001, and the repayment of those loans on November 13, 2001, were a substantially contemporaneous exchange of value. Responding defendants understood that the loans were short-term loans that would be repaid soon after they were made.

Individuals with knowledge of facts regarding this defense and documents relating to this defense are identified with regard to Affirmative Defenses Nos. 5 and 6.

Affirmative Defense No. 8: All payments received by Bast, Pamela Gagné and the Trusts that the Trustee claims were preferences were payments of principal and interest on loans to SFC. By loaning money to SFC, Bast, Pamela Gagné and the Trusts provided value and reasonably equivalent value for the payments of principal and interest that they later received. Responding defendants incorporate their answers regarding Affirmative Defenses Nos. 5, 6 and 7. Certain responding defendants received from Yao stock in DHP G.P., Inc., One Summit Place G.P., Inc. and Premier Education Group G.P., Inc. when they executed on Yao's personal guarantee of SFC's obligations to them under loan agreements and debt instruments, which obligations were in default. At the time that they executed against this collateral, Bast, Pamela Gagné and the Trusts assigned to Yao, and Yao assumed, the SFC loan agreements and debt instruments that were in default, the principal amount of which totaled $6,976,000.

43

Individuals with knowledge of facts regarding this defense include Bast; Pamela Gagné; Gagné; former officers, directors and employees of SFC, including Yao, Diane Messick and Gary Hawthorne; the Trustee and counsel for the Trustee; and other individuals identified in regard to Affirmative Defenses Nos. 5, 6 and 7. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. The documents identified by responding defendants in response to Interrogatory No. 1, as well as other documents produced in this action by responding defendants, Pepper Hamilton and other parties, also support and relate to this defense.

Affirmative Defense No. 9: The provision by responding defendants of value and reasonably equivalent value for all payments or transfers made to them constituted fair consideration. Responding defendants incorporate their answer regarding Affirmative Defense No. 8.

Affirmative Defense No. 10: In asserting this defense, responding defendants rely on the fact that the Trustee has not established that Yao was insolvent at the time of the transfers asserted in the fraudulent conveyance claim.

Responding defendants believe, but have no personal knowledge, that facts regarding Yao's solvency or insolvency are known by Yao and his accountants or former accountants. Responding defendants believe, but have no personal knowledge, that documents regarding Yao's solvency or insolvency are in the possession of Yao and his accountants or

44

former accountants. To the extent that the Trustee is alleging that Yao was insolvent by reason of a purported claim of SFC against Yao, responding defendants believe, but have no personal knowledge, that facts and documents regarding such purported claim are known to and/or in the possession of the Trustee and counsel for the Trustee.

Affirmative Defense No. 11: Responding defendants believed at the time, and continue to believe, that Yao acted properly and without any fraudulent intent in fulfilling the personal guarantees he made to them in connection with the loans they made to SFC. The Trustee has not alleged facts that, even if proven, would establish that Yao acted with fraudulent intent in fulfilling his personal guarantees to them and responding defendants are not aware of any such facts. The general partnership interests that Yao transferred were not liquid or marketable assets. Because certain of the responding defendants were the sole limited partners of Day Hill Partners, L.P., One Summit Place, L.P. and Premier Education Group, L.P., and because any transfer of Yao's interests in Premier Education Group G.P. would require approval by the Department of Education, responding defendants believed that the general partnership interests transferred by Yao would have very little value to any other of Yao's creditors or claimed creditors. Further, responding defendants believed at the time, and continue to believe, that the value of the general partnership interests that Yao transferred to them at the time was far less than the amount owed to them by SFC and therefore far less than the amount of their claim against Yao, as guarantor of SFC's obligations to them under the loan agreements and debt instruments identified in response to Interrogatory No. 1.

Individuals with knowledge of facts regarding this defense include Bast; Gagné; officers, directors and employees of Premier Education Group, including Gary Camp; and the

45

Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents in the possession of the Trustee and counsel for the Trustee support this defense, in that none of the documents will show that Yao acted with fraudulent intent in fulfilling his personal guarantees to responding defendants. The documents produced by responding defendants, including documents at Bates Nos. GBT 4203-363, 6024-63, as well as documents produced by Pepper Hamilton and other parties to this action, also support and relate to this defense.

Affirmative Defense No. 12: Responding defendants incorporate their answers regarding Affirmative Defenses Nos. 2 through 11.

Affirmative Defense No. 13: Yao and, in some cases, Lore Yao, guaranteed the obligations of SFC to Bast, Pamela Gagné and certain of the Trusts under loan agreements between those responding defendants and SFC. The execution by responding defendants against Yao's stock in DHP G.P., Inc., One Summit Place G.P., Inc. and Premier Education Group G.P., Inc., which was collateral for Yao's guarantee, constituted the enforcement of a valid security interest, in exchange for which Bast, Pamela Gagné and the Trusts assigned to Yao, and Yao assumed, the outstanding SFC loan agreements and debt instruments, the principal amount of which totaled $6,976,000.

Individuals with knowledge of facts regarding this defense include Bast; Gagné; Yao; and the Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial

46

Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. The documents identified by responding defendants in response to Interrogatory No. 1, as well as other documents produced in this action by responding defendants, Pepper Hamilton and other parties, also support and relate to this defense.

Affirmative Defense No. 14: The payments to Bast, Pamela Gagné and the Trusts that the Trustee claims were preferences, and the transfers that the Trustee claims were fraudulent conveyances, were made pursuant to loan agreements between SFC and responding defendants. The loan agreements and debt instruments provide that SFC will indemnify the lenders or reimburse the lenders for, among other things, attorneys fees and expenses of litigation, in any way arising from or related to the agreements. Therefore, responding defendants have a right of setoff or recoupment against SFC. In addition, if the Trustee were to prevail on his fraudulent conveyance claim and if the transfer of Yao's stock in DHP G.P., Inc., One Summit Place G.P., Inc. and Premier Education Group G.P., Inc. were to be avoided, which responding defendants contend would be error, responding defendants would be entitled to recover the value of their claims against SFC that were transferred to Yao when they executed against the stock that Yao, as guarantor, pledged to them as collateral security for the payment and performance by SFC of its obligations under the loan agreements.

Individuals with knowledge of facts regarding this defense include Bast; Gagné; Yao; and the Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that

47

documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. The documents identified by responding defendants in response to Interrogatory No. 1, as well as other documents produced in this action by responding defendants, Pepper Hamilton and other parties, also support and relate to this defense.

Affirmative Defenses Nos. 16: Yao granted security interests to Bast, Pamela Gagné and the Elizabeth Brennan Trust in 1995, 1997 and 1998, which security interests included any property of Yao into which they came in possession, and thus the stock of DHP G.P., Inc., One Summit Place G.P., Inc. and Premier Education Group G.P., Inc. on which responding defendants later executed. The granting of those security interests was outside the applicable statute of limitations.

Individuals with knowledge of facts regarding this defense include Bast; Pamela Gagné; Gagné; Yao; and the Trustee and counsel for the Trustee. Further identification of specific individuals with knowledge and the areas of which they have knowledge are contained in the Initial Disclosures of Gagné, Bast, Pamela Gagné and the Trusts. Responding defendants believe that documents supporting or relating to this defense are in the possession of the Trustee and counsel for the Trustee. The documents identified by responding defendants in response to Interrogatory No. 1, as well as other documents produced in this action by responding defendants, Pepper Hamilton and other parties, also support and relate to this defense.

Affirmative Defenses Nos. 15, 17 and 18: As responding defendants presently understand the claims of the Trustee, they do not believe that these defenses will be applicable.

48

B-297

If this understanding changes, responding defendants will amend and supplement their response to this Interrogatory accordingly.

      3.    Identify each and every business relationship or transaction between any Family Defendant and Yao, Lore Yao or any entity (other than SFC or a publicly treated entity) in which Yao was a shareholder, officer, director, partner or limited partner.

**RESPONSE:** Responding defendants object to this Interrogatory as vague, ambiguous, overly burdensome, oppressive and expensive to the extent that it requests responding defendants to identify every "transaction" or every "business transaction" between responding defendants and Yao, Lore Yao or any entity (other than SFC or a publicly traded entity) in which Yao was a shareholder, officer, director, partner or limited partner. Responding defendants will identify business relationships, but will not identify every "transaction" that may have occurred in these business relationships. In addition, responding defendants object to this Interrogatory because it fails to specify a relevant time period, and is thus overbroad and requests information that is not material or relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and their General Objections, responding defendants answer the Interrogatory as follows:

    1. Colorado Bankshares: To the best of Bast's recollection, he had an equity or ownership interest in this entity, which was a business formed by Yao.

    2. Premier Education Group, L.P. (formerly CEC Partnership, L.P.): As set forth in the Limited Partnership Agreement for CEC Partnership, L.P. dated February 1, 1993, Bast and the Elizabeth B. Brennan Trust were the limited partners and Premier Education Group G.P., Inc. (formerly CEC G.P., Inc.) was the general partner of this partnership. See GBT 004283-363. At the time that the limited partnership was formed, Yao owned all of the stock of CEC G.P., Inc.

    3. One Summit Place Partners, L.P.: As set forth in the Limited Partnership Agreement for One Summit Place Partners, L.P. dated June 1, 1994, Bast, the Elizabeth B. Brennan Trust FBO Philip B. Gagné and the Elizabeth B. Brennan Trust FBO W. Roderick Gagné were the limited partners and One Summit Place G.P., Inc. was the general partner of this partnership.

49

See GBT 004244-82. At the time that the limited partnership was formed, Yao owned all of the stock of One Summit Place G.P., Inc.

4. Day Hill Partners, L.P.: As set forth in the Limited Partnership Agreement for Day Hill Partners, L.P. dated June 1, 1996, Bast, the Elizabeth B. Brennan Trust FBO Philip B. Gagné, the Elizabeth B. Brennan Trust FBO W. Roderick Gagné and the Elizabeth B. Brennan Trust FBO Elizabeth L. Gagné were the limited partners and DHP G.P., Inc. was the general partner of this partnership. See GBT 004203-43. At the time that the limited partnership was formed, Yao owned all of the stock of DHP G.P., Inc.

5. Electronic Cash Management: As set forth in the Amended and Restated Loan and Servicing Agreement dated as of July 7, 2000, and related documents, Bast, Pamela Gagné, the James T. Brennan Trust FBO Philip B. Gagné, the James T. Brennan Trust FBO W. Roderick Gagné, the James T. Brennan Trust FBO Elizabeth L. Gagné and the Elizabeth B. Brennan Trust were lenders to ECM Funding II, LLC. See GBT 001870-2638. ECM Funding II, LLC, and its affiliate Electronic Cash Management, were businesses formed by Yao.

ECKERT SEAMANS CHERIN & MELLOTT, LLC


Dated: August 9, 2006                By: *Karen Lee Turner*
                                         Karen Lee Turner, Esquire (DE No. 4332)
                                         300 Delaware Avenue, Suite 1360
                                         Wilmington, Delaware 19801
                                         (302) 425-0430
                                         (302) 425-0432 (Facsimile)

                                         Neil G. Epstein, Esquire
                                         Carol L. Press, Esquire
                                         Eckert Seamans Cherin & Mellott, LLC
                                         1515 Market Street, 9th Floor
                                         Philadelphia, PA 19102-1909
                                         (215) 851-8400
                                         (215) 851-8383 (Facsimile)

                                         Attorneys for Defendants W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts

M0555660 DOCv 2

50

B-299

## VERIFICATION

I, W. Roderick Gagné, hereby verify that the foregoing Responses of Defendants W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts to the Trustee's First Set of Interrogatories to the Family Defendants are true and correct to the best of my knowledge, information and belief. I understand that the foregoing statements are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

W. Roderick Gagné

Dated: August 9, 2006

## VERIFICATION

I, Pamela Bashore Gagné, hereby verify that the foregoing Responses of Defendants W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts to the Trustee's First Set of Interrogatories to the Family Defendants are true and correct to the best of my knowledge, information and belief. I understand that the foregoing statements are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

Pamela Bashore Gagné

Dated: August 9 2006

Aug 09 06 07:50a     Robert L. Bast                    215-793-0880              p.1

# VERIFICATION

I, Robert L. Bast, hereby verify that the foregoing Responses of Defendants W.

Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts to the Trustee's First Set

of Interrogatories to the Family Defendants are true and correct to the best of my knowledge,

information and belief. I understand that the foregoing statements are made subject to the

penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

_Robert L. Bast_
Robert L. Bast

Dated: _August 8, 2006_

B-302

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am not less than 18 years of age and that

on this 9th day of August 2006, I caused a true and correct copy of Defendants W.

Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts' Responses to the

Trustee's First Set of Interrogatories to the Family Defendants to be served upon the

following via United States first class regular mail postage prepaid:

William H. Sudell, Jr.
Donna L. Culver
Joanna F. Newdeck
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Counsel for Pepper Hamilton LLP and W.*
*Roderick Gagné*

John H. Eickemeyer
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, NY 10022
*Counsel for Freed Maxick & Battaglia,*
*CPAs, PC*

Stephen J. Shapiro
Elizabeth K. Ainslie
Nicholas J. LePore, III
Bruce P. Merenstein
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 2600
Philadelphia, PA 19103
*Counsel for Pepper Hamilton LLP and W.*
*Roderick Gagné*

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
*Counsel for Freed Maxick & Battaglia,*
*CPAs, PC*

Tiffany Geyer Lydon
Philip Trainer, Jr.
Carolyn Shelly Hake
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
*Counsel for Royal Indemnity Company*

Christopher M. Winter
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801
*Counsel for Freed Maxick & Battaglia,*
*CPAs, PC; McGladrey & Pullen LLP and*
*Michael Aquino*

John I. Grossbart
Alan S. Gilbert
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606
*Counsel for Royal Indemnity Company*

John W. Shaw
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
*Counsel for MBIA*

Andre G. Castaybert
Ronald Rauchberg
Steven Obus
David McTaggart
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
*Counsel for MBIA*

Charles A. Stanziale
Jeffrey T. Testa
Donald Crecca
Schwartz Tobia & Stanziale, P.A.
22 Crestmont Road
Montclair, NJ 07042
*SFC Trustee*

Veronica E. Rendon
Richard P. Swanson
Jason M. Butler
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
*Counsel for McGladrey & Pullen LLP and Michael Aquino*

Daniel K. Astin
Ashley B. Stitzer
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*Counsel for Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*

Michael S. Waters
Lois H. Goodman
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark NJ 07102
*Counsel for Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*

Karen Lee Turner

M0555660 DOCv.2

2

1

1        IN THE UNITED STATES DISTRICT COURT
2             FOR THE DISTRICT OF DELAWARE

3    In Re:                    ) C.A. Nos.05-72-JJF
                               ) 05-165-JJF, 04-1551-JJF,
4    STUDENT FINANCE CORPORATION, ) 02-1294-JJF
                               )
5             Debtors.         )

6

7             Wednesday, December 28, 2005
              11:07 a.m.
8             Courtroom 4B

9             844 King Street
              Wilmington, Delaware
10

11   BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
              United States District Court Judge
12

13
     APPEARANCES:
14

15
              THE BAYARD FIRM
16            BY:  ASHLEY STITZER, ESQ.

17                 -and-

18            McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
              BY:   MICHAEL WATERS, ESQ.
19            BY:  JEFFREY TESTA, ESQ.
              BY:  DONALD CRECCA, ESQ.
20            BY:  LOIS GOODMAN, ESQ.

21                 -and-

22            DILWORTH PAXSON, LLP
              BY:  JAMES J. RODGERS, ESQ.
23
                        Counsel for the Trustee
24

B-305

2

```
1    APPEARANCES CONTINUED:

2

3              ASHBY & GEDDES
               BY:  PHILIP TRAINER, ESQ.
4
                    -and-
5
               SONNENSCHEIN, NATH & ROSENTHAL, LLP
6              BY:  KENNETH J. PFAEHLER, ESQ.
               BY:  STEVEN MEROUSE, ESQ.
7
                    Counsel for Royal Indemnity Co.
8

9
               DUANE MORRIS, LLP
10             BY:  MICHAEL R. LASTOWSKI, ESQ.

11                  -and-

12             ARNOLD & PORTER, LLP
               BY:  VERONICA E. RENDON, ESQ.
13             BY:  JASON BUTLER, ESQ.

14                  Counsel for McGladrey/Aquino

15
               MORRIS, NICHOLS, ARSHT & TUNNELL
16             BY:  WILLIAM H. SUDELL, JR., ESQ.

17                  -and-

18             SCHNADER, HARRISON, SEGAL & LEWIS, LLP
               BY:  STEPHEN SHAPIRO, ESQ.
19             BY:  ELIZABETH AUEZLIE, ESQ.

20                  Counsel for Pepper Hamilton

21

22

23

24
```

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware  19801
(302) 658-6697

B-306

3

```
 1    APPEARANCES CONTINUED

 2

 3

 4

 5         ECKERT, SEAMANS, CHERIN & MELLOTT
           BY:  SUSAN POPPITI, ESQ.
 6         BY:  NEIL C. EPSTEIN, ESQ.

 7             Counsel for Gagne, Bast
               Pam Gagne & Trusts
 8

 9         PROSKAUER ROSE, LLP
           BY:  ANDRE G. CASTAYBERT, ESQ.
10
               Counsel for MBIA/Wells Fargo
11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

B-307

4

```
 1                   THE CLERK:  All rise.
 2                   THE COURT:  All right.  Good
 3     morning.
 4                   Be seated, please.
 5                   (Everyone said Good morning, Your
 6     Honor.)
 7                   THE COURT:  All right.  Who wants
 8     to -- let me get to my paper.
 9                   Who wants to start off with how far
10     you've gotten?  Try to be positive.
11                   All right.  Who wants to start off
12     with how little you've done?
13                   (Everyone laughed.)
14                   MR. SHAPIRO:  Good morning, Your
15     Honor.
16                   THE COURT:  There you go.  Good
17     morning.
18                   MR. SHAPIRO:  Good morning.  I'm
19     Steve Shapiro with the Schnader law firm on
20     behalf of the Pepper defendants.
21                   The Pepper documents --
22     approximately two years ago, before Pepper was
23     named as a defendant in either of the actions
24     brought by the Trustee or Royal, the Trustee
```

5

1     approached Pepper, said we are standing in the

2     shoes of your former client, and we want our

3     files back.

4               So Pepper took all of the

5     SFC-related files which totaled about 93 boxes

6     and sent them to counsel for the Trustee.

7               Those boxes are with the Trustee.

8     We understand the Trustee last reviewed them, and

9     also made them available to other parties,

10    including Royal for review.  So for all intents

11    and purposes, almost all of the documents that

12    Pepper had relating to SFC are already in the

13    hands of the Trustee and Royal.

14               Now, having said that, Pepper did

15    keep copies of some of the documents that it sent

16    to the Trustee's counsel.  Those documents we

17    have and we are having them scanned.  We intend

18    to be able to produce those by the January 6th

19    deadline.

20               We believe that most of them will be

21    duplicates of what the Trustee already has.  But

22    we cannot be a hundred percent sure whether every

23    last document that are in those boxes that Pepper

24    kept is, in fact, with the Trustee's counsel.  So

6

1    rather than, you know, letting something slip

2    through the cracks, you know, by chance, we're

3    simply going to image those documents and produce

4    them again.  And then we can do comparisons and

5    see if there's anything that's missing.

6              In addition to the 90 some boxes of

7    documents that were given to the Trustee's

8    counsel, there are approximately another 20 some

9    boxes that Pepper located after they produced the

10   original 93 to the Dilworth firm.  My

11   understanding is that Dilworth came and reviewed

12   those boxes of documents, took whatever it was

13   they wanted, but again were not positive what it

14   was they took out of those 20 boxes.

15             So with respect to those, which we

16   believe are responsive to the current document

17   requests in these litigations, our intention is

18   to have those documents also scanned and

19   produced.  And we believe we'll be able to have a

20   majority of those documents produced in

21   electronic format, or pardon me, on a CD-ROM by

22   the January 6th deadline.

23             The issue we're having -- oh, pardon

24   me.  We also have some live Emails that we

7

1   believe a lot of the Emails are probably in the

2   documents that were produced already in hard

3   copy. But, again, to assure that we're not

4   missing something, our intention is to simply

5   print all of the live Emails out, have them

6   converted in active files, and produced on a

7   CD-ROM. And I'm told that we can also have that

8   ready by January 6th.

9           Pepper also has many of the

10  documents that were produced in hard copy in

11  electronic format. So, in other words, Pepper

12  has a document management system where they might

13  have several documents that were included in the

14  hard copies that were produced to the Dilworth

15  firm.

16          With respect to those, again, we

17  will produce them. I'm told it's approximately

18  9,000 documents in electronic format. The issue

19  we're having there is it appears that perhaps

20  people accidentally saved documents to the SFC

21  client number at Pepper that were documents for

22  completely different clients.

23          It has nothing to do with this

24  litigation. And we found a few of those already.

B-311

8

1          So we need to very carefully review

2     the 9,000 documents in the system and pull out

3     anything that simply just got saved in there by

4     accident or by mistake.  And that's a very

5     time-intensive review.

6          I'm told we're about halfway

7     through, but I don't think we'll be able to make

8     January 6th on those documents.  And I'd ask for

9     possibly another 30 days after the 6th to produce

10    that subsection of documents that, again, these

11    are the electronic documents in the Pepper

12    system, many of which were probably already

13    produced in hard copy.

14         The most significant issue we have

15    is we have some attorney-client privilege issues.

16    Pepper represented SFC.  They also represented

17    separate entities, the SLS, which I understand

18    was the loan servicing company that worked with

19    the SFC loans, as well as another company called

20    SMS that dealt with marketing of SFC loans.

21         Pepper also represented Andrew Yeow

22    in personal matters.  So to the extent I have a

23    document request from the Trustee or Royal saying

24    give us everything, every communication between

9

1    Pepper and Andrew Yeow, we possibly have

2    responsive documents that are privileged to the

3    extent they contain communications between Pepper

4    and, say, Andrew Yeow relating to, you know,

5    legal questions regarding legal advice that do

6    not relate to SFC.

7            Now, with respect to -- I'll just

8    try to give an example of it to make it easier.

9    If I have a communication from Pepper to Andrew

10   Yeow discussing legal advice relating to SFC, the

11   Trustee has given a waiver of that privilege, so

12   we can produce those without a problem.

13           If I have a communication between

14   Pepper and Andrew Yeow relating solely to SLS, I

15   do not have a waiver, and I believe that Pepper

16   has an obligation to assert the attorney-client

17   privilege with respect to those communications

18   unless or until such time as we receive a waiver,

19   or the Court orders us to produce.

20           The same thing would apply to

21   communications between Pepper and Yeow relating

22   to his estate plan, for example.  So what we're

23   doing, to the extent --

24           THE COURT:  Can I just ask you a

1     question?

2                    MR. SHAPIRO:  Sure.

3                    THE COURT:  Wouldn't -- since it's

4     not your privilege to assert, wouldn't you be in

5     a better procedure if you logged documents you

6     thought might be privileged or believe to be

7     privileged on a by client, by subject matter log,

8     then advise the client that there is a document

9     production request, not yet a Court order, and

10    what their position is on asserting.

11                   You tell them you believe it's

12    attorney-client privilege and what their position

13    is with regard to asserting privilege.  Maybe

14    they don't care that the documents go over, or

15    maybe they care deeply, and would want to retain

16    counsel to address the production request or any

17    subsequent Court order.

18                   But that seems like to me in these

19    kind of disputes, particularly when you're

20    already entangled with law firms and business

21    dealings, just a better way to handle it.

22                   MR. SHAPIRO:  We are following that

23    procedure to some extent right now.  What we're

24    actually doing is, as we're going through, for

B-314

11

1    example, the 20 boxes, or the Emails, or the

2    electronic documents in the Pepper system,

3    anything that looks like it could potentially be

4    a privileged attorney-client communication, we're

5    simply pulling -- pulling and dropping in a note

6    saying, The document has been withheld pending

7    review.  We're going to produce everything else.

8    Then you look at those documents.

9              THE COURT:  But keep in mind, you

10   don't assert the privilege because you don't have

11   it.

12             MR. SHAPIRO:  Right.  And what we'll

13   do then is if we -- of the documents that we

14   pulled, if they are -- we believe that they

15   relate solely to SFC, we'll simply produce them.

16   If they relate to anything else, we'll log them.

17             THE COURT:  And have a conversation

18   with your client --

19             MR. SHAPIRO:  Yeah.

20             THE COURT:  -- which documents they

21   are?

22             MR. SHAPIRO:  We have attempted,

23   Your Honor, to already contact counsel for Andrew

24   Yeow, and now learned it's former counsel for

B-315

12

1    Andrew Yeow. So we're actually having a little

2    bit of difficulty, one, contacting some former

3    clients, and two, figuring out who exactly

4    controls or currently represents some of these

5    entities, such as SLS and SMS. We will do our

6    best.

7                   THE COURT: Then what you do if you

8    haven't -- can't have a conversation with the

9    client, and you don't want to have to contact

10   your carrier down the road, you'll throw those

11   into the Court as responsive, but unknown whether

12   a privilege is asserted, because you can't make

13   contact.

14                  You just wouldn't give them over

15   then, would you?

16                  MR. SHAPIRO: I would not --

17                  THE COURT: Right.

18                  MR. SHAPIRO: -- give them over

19   unless --

20                  THE COURT: So then you made your

21   effort. You document your effort.

22                  I just want this to go very cleanly

23   for everybody. And then if necessary, we'll

24   arrange some procedure to take an in camera

B-316

13

1    review and actually -- because then there's all

2    sorts of issues that come up, not the least of

3    which could be against the assertion of privilege

4    that is going to go over any way given the

5    factual contact.

6            So your work is really combing

7    through and getting the documents, and making

8    sure that you don't lose anything.  And that --

9    like you remember you were talking about like

10   there's some that apply to other clients --

11           MR. SHAPIRO:  Right.

12           THE COURT:  -- on Student Finance.

13           MR. SHAPIRO:  Right.

14           THE COURT:  When you take those out,

15   I assume you're logging those, too?

16           MR. SHAPIRO:  Well, I'm not sure if

17   those documents would be responsive to the

18   document request.  They were simply saved by

19   accident.

20           THE COURT:  Oh, I understand that.

21   But I don't want you to be the subject of another

22   hearing down the road.

23           So it's so simple.  You said there

24   were 9,000 documents and how carefully you're

14

1    looking at them. As you're looking at them

2    carefully, and you find one that got

3    misappropriated through that code, it isn't real

4    hard to put them in an expandable folder, and say

5    these are the ones we found and withheld because

6    they didn't apply.

7              We made a mistake. But then they're

8    there.

9              You're never going to have to -- if

10   that is correct, you're never going to produce

11   them to anybody outside your firm except maybe

12   the Court to take a look and verify that's what

13   they were that you pulled. But I've been in a

14   lot of these cases where folks aren't always as

15   pleasant as you all are with each other.

16             And the things they say about each

17   other and what they did, you'd be surprised. And

18   I know you're making a good faith effort.

19             I'm just trying to give you a little

20   direction of how you, representing Pepper

21   Hamilton, can avoid a lot of trouble down the

22   road for your own firm and for your client.

23             MR. SHAPIRO: I think that's very

24   helpful. We will pursue that course.

B-318

15

1          THE COURT:  Then if there's any

2     question what you should do, you should get up

3     with me.  And we can come back and talk about it.

4          MR. SHAPIRO:  I guess, my question

5     then would be as far as the documents that we are

6     pulling for potential review later on, I don't

7     think we can have that review done by

8     January 6th.

9          THE COURT:  Sure.

10          MR. SHAPIRO:  The parties among

11     themselves agreed we would produce privilege

12     logs, I believe it was February 17th.

13          THE COURT:  But we're working

14     toward -- well, toward the end.  As I said

15     before, a little bit of time can be expected.

16          And so I think -- I think that's

17     fine.  February 17th.

18          MR. SHAPIRO:  Okay.  That's all I

19     have, Your Honor.

20          Thank you.

21          THE COURT:  Okay.  Thank you.

22          MR. WATERS:  If Your Honor please,

23     Michael Waters, McElroy, Deutsch, Mulvaney &

24     Carpenter.  And I'm going to speak for the

# McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
### ATTORNEYS AT LAW

THREE GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY  07102-4079
(973) 622-7711
FACSIMILE (973) 622-5314

MICHAEL S. WATERS
Direct Dial: (973) 565-2011
E-mail: mwaters@mdmc-law.com

August 31, 2006

*VIA E-MAIL AND FIRST CLASS MAIL*

Stephen J. Shapiro, Esq.
Schnader Harrison Segal & Lewis LLP
Suite 3600, 1600 Market Street
Philadelphia, Pennsylvania 19103-7286

> Re:   *In Re: Student Finance Corporation*
>       *Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*
>       *vs. Pepper Hamilton LLP, et al.*
>       *Civil Action Number: 04-1551 (JJF)*

Dear Steve:

I understand from your letter of August 14, 2006 that all requested documents regarding Mr. Wilcox prior to April 12, 2004 as to which a privilege is asserted are on your June 31, 2006 privilege log. I write to request that you cure certain deficiencies in that log and produce certain documents as to which a claim of privilege is asserted.

First, because of Pepper and Gagné's multiple representations during this period, it is not always clear from your log who the client; that is, whether it is Yao, SLS, SCM, ECM, SMS, Bast, the Trusts, some other named entity, or some combination thereof. Accordingly, it is necessary that you identify separately as to each of the documents the name of the client or clients. Please advise us if Pepper billed SFC for the work involved in any of the documents you have withheld from production to SFC. In addition, I take it that on every entry on your list, the attorney is Pepper Hamilton, LLP. If that is incorrect as to any entry, please advise.

At the hearing before Judge Farnan, when the issue of privilege was addressed, you advised that, as the privilege belongs to the clients, you were trying to contact the clients to determine whether they wish to assert the privilege. I think it was expected that you would report back on the result of that inquiry. Accordingly, please advise us as to each entity other than SFC, the name of the person you contacted, when the contact was made and what the response was, as to each item on the log. If any of those communications were in writing, please provide us with a copy



NEW YORK, NEW YORK   DENVER, COLORADO   RIDGEWOOD, NEW JERSEY   MORRISTOWN, NEW JERSEY   PHILADELPHIA, PENNSYLVANIA

## McElroy, Deutsch, Mulvaney & Carpenter, LLP

Stephen J. Shapiro, Esq.
August 31, 2006
Page 2

    To the extent your response indicates that Mr. Yao has asked you to refuse to produce a document on the grounds of privilege, we believe that certain of Pepper's representations give rise to what is sometimes called a fiduciary exception to the privilege. Where Pepper was doing work for Yao, who had a fiduciary obligation to SFC, or doing work with any of the other entities controlled by Yao in which SFC was a shareholder, we are entitled to see those documents on behalf of SFC. Please advise us as to whether you will produce the documents. Also, please explain your position on those documents listed on your privilege log that you have already produced, for example, number 32.

                            Very truly yours,

                            McElroy, Deutsch, Mulvaney & Carpenter, LLP

                            /s/ Michael S. Waters

                            Michael S. Waters

MSW:dmc
cc:    John Grossbart, Esq. (Via E-Mail)

# Schnader
### ATTORNEYS AT LAW

1600 MARKET STREET  SUITE 3600
PHILADELPHIA, PA 19103-7286
215.751.2000  FAX 215.751.2205  schnader.com

September 18, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

## VIA E-MAIL AND FIRST CLASS MAIL

Michael S. Waters, Esquire
McElroy, Deutsch, Mulvaney
   & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

> **RE:**   *Royal Indemn. Co. v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del.)
> *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del.)

Dear Mike:

I write in response to your letter of August 31, 2006 regarding Pepper's privilege log. Initially, we do not agree that the identity of the client is not clear for most of the communications listed on Pepper's privilege log. The description of the communication in most cases contains a reference to the particular client for whom the legal advice was sought or given. In the few cases in which the description does not expressly identify the client, it is clear from the description that the client was *not* SFC. If there are specific entries on the log that you believe require clarification, please let us know which ones they are.

As for the privilege waivers that we have sought, the vast majority of items listed on Pepper's privilege log relate to legal advice given to Andrew Yao on personal or non-SFC Yao-related business matters, particularly those involving DCC Aircraft ("DCC") or Electronic Cash Management ("ECM") entities. We have contacted Ed Goldsmith, counsel for Yao, to request a waiver of the attorney-client privilege for these communications but he has not provided such a waiver.

Most of the remaining attorney-client privileged communications listed on Pepper's privilege log relate to the SLS and SMS entities. Yao is the only officer listed for the SLS entities on corporate filings for these entities and, as noted, he has not consented to a waiver of the privilege for any communications involving personal matters or matters related to non-SFC entities. Perry Turnbull is listed as an officer of certain SMS entities, as well as Student Placement Services ("SPS"). We wrote to Mr. Turnbull on April 4, 2006, to request that he waive the privilege as to any communications involving these entities, but he did not respond to our request.

We also contacted Linda Richenderfer, Esq., formerly of Saul Ewing's Wilmington office, who was listed as counsel for SLS and SMS in the SFC bankruptcy

B-322

Schnader
ATTORNEYS AT LAW

Michael S. Waters, Esquire
September 18, 2006
Page 2

proceedings to request a waiver of the privilege as to those entities. Ms. Richenderfer informed us that she no longer represented SLS and SMS, and therefore could not waive the privilege for those entities

       With regard to the so-called fiduciary exception, we do not believe that the exception (which has yet to be adopted by the Third Circuit) would apply here. To the extent the exception applies, it typically only requires the production of otherwise privileged communications between corporate counsel and an officer or director of a corporation when the production is sought in shareholder derivative litigation. Even in its most expansive variation, the exception would only require the production of such communications when sought by shareholders challenging the fiduciary acts of a corporate officer or director. As your client has already waived the privilege as to Pepper's legal representation of SFC, Pepper has not withheld any communications that might be subject to the broad version of the exception, *i.e.*, communications with Yao or other SFC officers or directors involving Pepper's legal representation of SFC. In short, because it is far from clear that the exception would apply in this situation, Pepper could not in good faith rely on the exception as a justification for producing otherwise privileged communications absent a waiver from its former clients.

       I hope that this clarifies some of the issues with regard to Pepper's privilege log. I also want to reiterate, as we have stated in prior discussions of this issue, that we will gladly produce any of the communications regarding Andrew Yao and other non-SFC entities upon receiving the proper waiver from Pepper's former clients. But absent such waivers, we are obviously unable to produce these materials and will continue to withhold them.

       Sincerely,

       Stephen J. Shapiro
      For SCHNADER HARRISON SEGAL & LEWIS LLP

PEPPER047339



STUDENT FINANCE CORPORATION
Christiana Executive Campus
111 Continental Drive, Suite 408
Newark, DE 19713
Toll Free: 800-732-3312



EXHIBIT
365-I
10/16/06

# Memo

**To:**    Robert L. Bast

**From:**   Robert C. Faix

**CC:**    W. Roderick Gagné

**Date:**   09/30/99

**Re:**    Note Payments

**Robert L. Bast**
**Secured Note**
**Repayment**
**Schedule**

| Date | Princ. | Int. | Fee | Addl Fee | Total Payment |
|---|---|---|---|---|---|
| 08/20/1999 | N | O | N | E | |
| 08/31/1999 | $650,000.00 | $36,400.00 | $260,000.00 | | $946,400.00 |
| 09/30/1999 | 650,000.00 | $19,500.00 | | $58,500.00 | 728,000.00 |
| 10/31/1999 | 650,000.00 | $13,000.00 | | 39,000.00 | 702,000.00 |
| 11/30/1999 | 650,000.00 | $6,500.00 | | 19,500.00 | 676,000.00 |
| | $2,600,000.00 | $75,400.00 | $260,000.00 | $117,000.00 | $3,052,400.00 |

**Payment 8/2/99**

| Secured Note | Princ. | Int. | Fee | Total Payment |
|---|---|---|---|---|
| 08/02/1999 | 1,500,000.00 | 5,000.00 | 90,000.00 | 1,595,000.00 |
| | | 10 days | 6% | |
| **Term Note - 18** | | | | |
| **month** | | | | |
| **$2,000,000** | | | | |
| 08/02/1999 | - | - | 120,000.00 | 120,000.00 |
| | | | 6% | 1,715,000.00 |

• Page 1

PEPPER047340

**Robert L. Bast**
**Secured Note**
**Repayment Schedule**

| Date | Princ. | Int. | Fee | Addl Fee | Total Payment |
|---|---|---|---|---|---|
| 8/20/99 | **N** | **O** | **N** | **E** | |
| 8/31/99 | $ 650,000.00 | $36,400.00 | $260,000.00 | | $ 946,400.00 |
| 9/30/99 | 650,000.00 | $19,500.00 | | $ 58,500.00 | 728,000.00 |
| 10/31/99 | 650,000.00 | $13,000.00 | | 39,000.00 | 702,000.00 |
| 11/30/99 | 650,000.00 | $ 6,500.00 | | 19,500.00 | 676,000.00 |
| | $2,600,000.00 | $75,400.00 | $260,000.00 | $117,000.00 | $ 3,052,400.00 |

**Payment 8/2/99**

| Secured Note | Princ. | Int. | Fee | Total Payment |
|---|---|---|---|---|
| 8/2/99 | 1,500,000.00 | 5,000.00 | 90,000.00 | 1,595,000.00 |
| | | 10 days | 6% | |
| **Term Note - 18 month $2,000,000** | | | | |
| 8/2/99 | - | - | 120,000.00 | 120,000.00 |
| | | | 6% | 1,715,000.00 |