IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| STUDENT FINANCE CORP., | ) | Case No. 02-11620 (JBR) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION, | ) ) ) | Civil Action No. 04-1551 (JJF) |
| Plaintiff, | ) ) | **REDACTED PUBLIC VERSION** |
| v. | ) ) | |
| PEPPER HAMILTON LLP, et al., | ) ) | |
| Defendants. | ) ) | |

**ROYAL INDEMNITY COMPANY'S OPPOSITION
TO MOTION OF PEPPER HAMILTON LLP TO COMPEL
PRODUCTION OF COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL**

Royal Indemnity Company ("Royal") hereby responds to the Motion to Compel Production of Communications Between the Trustee and Royal and Documents Relating to Compensation Received by the Trustee (the "Motion") filed by Pepper Hamilton LLP ("Pepper") (D.I. 133) as follows:

**Introduction**

Pepper's Motion seeks to discover protected, privileged communications between the Chapter 7 Trustee (the "Trustee") of debtor Student Finance Corporation ("SFC" or "Debtor") and Royal. As more fully discussed below, in accordance with a settlement entered into by Royal and the Trustee that was approved by the United States Bankruptcy Court for the District of Delaware more than two years ago, Royal is cooperating with, and assisting, the Trustee in the

prosecution of numerous actions brought by the Trustee on behalf of the SFC estate, including claims against Pepper directly. As part of their cooperative efforts to maximize recoveries to SFC's estate from those actions, Royal and the Trustee have entered into a Joint Litigation Agreement -- an arrangement explicitly approved by the Bankruptcy Court when it approved that settlement -- for the sharing and protection of privileged information. The communications sought by Pepper are squarely covered by that agreement. Having proceeded thereunder for nearly two years, Pepper's Motion now essentially seeks to undo that aspect of the Bankruptcy Court's Order and discover the Trustee's and Royal's privileged communications. Pepper's Motion should be denied.

## Background

On June 5, 2002, several creditors of SFC filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against SFC. The case was later converted to one under Chapter 11, and then back to Chapter 7. Charles A. Stanziale, Jr. was appointed, and continues as, Trustee of the Debtor.

**SFC's Fraud and Pepper's Involvement**

As the Court is well aware, both the Trustee in this action, as well as Royal in its own action pending in this Court,[1] have asserted numerous claims against Pepper relating to SFC. As more fully alleged in each of those actions, the "business" of SFC was a massive fraud that thus far has caused more than $500 million in losses to SFC's creditors. SFC induced lenders, insurers and investors to provide funds and insurance that facilitated the origination and purchase of more than $650 million of student tuition loans based on misrepresentations, among others,

---

[1] This is only one of four cases consolidated (for certain purposes) here: *Wells Fargo Bank N.A. v. Royal*, Case No. 02-1294-JJF; *Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corp. v. Pepper Hamilton, et al.*, Case No. 04-1551-JJF; *Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corp. v. McGladrey & Pullen LLP, et al.*, Case No. 05-72-JJF; and *Royal v. Pepper Hamilton, et al.*, Case No 05-165-JJF.

about the quality of the loans, the legitimacy of the borrowers, the source of payments on the loans, and their true default rates.

SFC's ability to perpetrate this fraud depended, in large part, on the conduct of outside professionals, including Pepper, who knew or should have known of SFC's wrongdoing, and whose actions and failures to act helped conceal the true nature of SFC's business. As part of that effort, SFC's creditors, insurers and potential investors were provided various financial statements, reports and offering memoranda which were false in several material respects. Key among those falsehoods was the fact that numerous documents grossly understated the default rates of student loan portfolios and concealed the fact that SFC and others were secretly making payments on the student loans for the sole purpose of obtaining more funds from new investors by deceiving them into believing such loans were performing. These so-called "forbearance payments" were at the heart of SFC's fraudulent scheme.

By 1998, Pepper began serving as SFC's outside counsel. Pepper partner Roderick Gagne was in charge of the representation. Gagne's relationship with SFC dated even longer -- he brought the SFC representation with him when he left another law firm to join Pepper. Gagne, who is also a defendant, personally supervised the substantial legal work performed by Pepper for SFC. As a result, he established a very close working relationship with Andrew Yao, the former chief executive and sole shareholder of SFC, and other senior officers of SFC, became intimately familiar with SFC's business and financial affairs, and generated substantial income for Pepper. Moreover, while performing legal services for SFC, Gagne also was busy negotiating, documenting and consummating numerous transactions through which his own family invested heavily in SFC. Both Pepper and Gagne knew, or should have known, of SFC's fraudulent scheme -- and specifically, the use of "forbearance payments" -- and through their

knowing, conspiratorial conduct or negligence, aided and abetted the continuation of that fraudulent scheme.

**Royal's Settlement with the Trustee**

On November 20, 2002, prior to the appointment of the Trustee, the Debtor filed a complaint against Royal alleging various claims based on Royal's decision not to continue to extend credit risk insurance for SFC's benefit prior to the filing of the bankruptcy case. The Court later ordered that that complaint be amended, which it was on April 15, 2004. ("Amended Complaint," included in the Appendix that accompanied Pepper's Motion ("Pepper Appx.") at A-15.) On that same date, the Trustee also filed an action seeking to avoid certain payments made for the benefit of Royal as alleged fraudulent transfers (the "Avoidance Action").

On May 11, 2004, Royal filed an amended proof of claim ("Proof of Claim") in the SFC bankruptcy case. The Proof of Claim alleged that Royal held claims against SFC in an aggregate amount of at least $562,047,003.00, of which Royal alleged that $45,418,321.00 was secured by property of the Debtor. The claims arose from Royal's provision of credit risk insurance to certain of the Debtor's affiliates in connection with loan securitization transactions in which the SFC loans were pooled and sold.[2]

On October 13, 2004, Royal and the Trustee entered into a Settlement Term Sheet (the "Term Sheet") providing for: (i) the dismissal of the Amended Complaint and the Avoidance Action; (ii) the allowance of Royal's claims against SFC in the total amount of $562,047,003.00; (iii) Royal's payment of $5 million to the SFC estate; (iv) the exchange of mutual releases between Royal and the Trustee; and (v) the mutual agreement of the Trustee and Royal to cooperate with one another in the prosecution of SFC's claims against third parties. (The Trustee's motion for approval of the settlement Term Sheet is at Pepper Appx. A-1; the Term

---

[2] The Amended Complaint, Avoidance Action and Proof of Claim are all described in Pepper Appx., at A-4 to 6.

Sheet, itself, is attached as Exhibit A.) The Term Sheet expressly provided that, "[t]he Trustee and Royal will enter into an agreement in connection with litigation on behalf of the estate acknowledging their joint interests and allowing each other access to privileged information relating to such estate claims and objections to claims (other than communications (i) between the Trustee and his counsel and (ii) between Royal and its counsel)." (Ex. A, at ¶ 7.)

Following an October 27, 2004 hearing on the Trustee's motion to approve the settlement, the Bankruptcy Court entered its Order expressly incorporating the Term Sheet and approving in full, the Term Sheet and the settlement between Royal and the Trustee that it embodied. (Copies of the transcript from the approval hearing and the Bankruptcy Court's Order of October 29, 2004 ("Order") approving the settlement, are attached as Exhibits B and C, respectively.) Thereafter, in accordance with the Order's authorization that the Trustee and Royal "take any and all other actions necessary to consummate the terms of the Term Sheet," Royal and the Trustee promptly executed their Joint Litigation Agreement for the express purpose of protecting the confidentiality of their cooperative efforts to secure litigation results in furtherance of their common interests. (The Joint Litigation Agreement is attached as Exhibit D).[3]

During the nearly two years since the Term Sheet settlement was approved, counsel for Royal and the Trustee have worked closely and cooperatively in connection with the prosecution of more than 80 adversary proceedings that were commenced by the Trustee against various third parties to recover value for the benefit of all of the creditors of the SFC estate. Those collaborative efforts have thus far resulted in the recovery of millions of dollars for the estate through the successful settlement of a number of these adversary proceedings. Other adversary

---

3

**REDACTED**

- 5 -

proceedings, which may involve some of the estate's largest and most valuable claims -- including the Trustee's claims against Pepper and Gagne -- continue to be actively and aggressively pursued, aided by those same cooperative efforts.

## Argument

Although not stating in so many words, two years after the court-approved settlement between the Trustee and Royal, and the entry of the Bankruptcy Court's Order expressly approving the joint litigation and cooperative efforts that were an integral part of that agreement, Pepper's Motion seeks to obliterate the privileged status and confidentiality of communications between the Trustee and Royal. In doing so, the Motion selectively omits and misstates several key facts concerning the SFC bankruptcy and Royal's involvement in those and related proceedings. The Motion makes essentially two arguments based on factual assertions that are completely without basis. First, Pepper argues that the requested materials are not privileged because either the Joint Litigation Agreement does not exist, or if it does exist, its protections do not apply to the requested materials because Royal and the Trustee are actually adverse to one another. Second, it asserts that the settlement between the Trustee and Royal was either a collusive sham intended to generate substantial damage claims that the Trustee could then assert against Pepper or, alternatively, was wrongfully induced by Royal's misrepresentations to the Trustee. Pepper's Motion is wrong on all counts and should be denied.

**REDACTED**

**REDACTED**

In approving the settlement between the Trustee and Royal, the Bankruptcy Court Order also recognized and expressly approved their common interest arrangement embodied in that settlement. The details of that arrangement were further set out in the Joint Litigation Agreement that followed. Thus, case law interpreting the application and protections of the common interest doctrine, which is well developed and settled in Delaware and elsewhere, is directly pertinent.

In *Corning Incorporated et ano. v. SRU Biosystems, LLC, et al.*, 223 F.R.D. 189 (D. Del. 2004) (Farnan, J.), this Court noted that "[t]he common interest doctrine is an exception to the general rule that the attorney-client privilege will be waived following disclosure of privileged materials to a third party." 223 F.R.D. at 190 (citing *Union Carbide Corp. v Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985)). "[C]ontinued protection between clients and attorneys 'allied in a common legal cause' exists because it is reasonable to expect that parties pursing common legal interests intended resultant disclosures to be 'insulated from exposure beyond the confines of the group.'" *Id.*, citing *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). Thus, "the [c]ommon interest] doctrine allows 'attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to

prepare a common defense without waiving either privilege.'" *Constar International, Inc., et al. v. Continental Pet Technologies, Inc., et al.*, 2003 U.S. Dist. LEXIS 21132, *4 (D. Del. Nov. 19, 2003) (Farnan, J.) (citing *Schachar v. American Academy of Opthamology, Inc.*, 106 F.R.D. 187, 191 (D. Ill. 1985) (attached as Exhibit E).

 Communications between Royal and the Trustee relating to the pursuit of litigation on behalf of the SFC estate qualify for the protections afforded by the common interest doctrine. The parties negotiated and entered into a detailed Joint Litigation Agreement and, prior to that, the Term Sheet authorized by the Bankruptcy Court Order, both of which plainly set forth their joint intention to protect the confidentiality of communications made in furtherance of their common litigation aims. As set forth in the Joint Litigation Agreement, Royal (as the single largest creditor of the SFC estate) and the Trustee (as the fiduciary for all creditors of the SFC estate) have the same legal interests in seeing that the estate's claims against various third parties are effectively prosecuted so as to achieve the maximum recovery. Accordingly, it was, and remains, the stated intention of the parties to cooperate and share privileged information with one another as part of that effort, while simultaneously protecting that information from disclosure to third parties to the fullest extent allowed by law. The common interest doctrine applies to communications between Royal and the Trustee regarding SFC estate litigation matters. Not only is that protection appropriate under the law, but its importance is particularly obvious here, where the party seeking to intrude on those communications is a defendant in that very same litigation.

**The Interests of Royal and of the Trustee in this Matter are not Adverse**

 Pepper also asserts that, even despite the Joint Litigation Agreement, any otherwise applicable legal protection of the communications between Royal and the Trustee has been waived because Royal and the Trustee are actually adverse to one another. The facts are plainly

otherwise. Under the court-approved Term Sheet settlement, Royal and the SFC estate fully released all claims that they had or might have had against each other, with the exception of Royal's pre-petition and administrative claims against the estate (both which were fixed and allowed as part of the Term Sheet) and their respective obligations under the Term Sheet, itself. Thus, under the express terms of the Term Sheet and Order, neither Royal nor the Trustee can assert now, or will they ever be able to later assert, any claims against one another as a result of anything having to do with SFC.

*United States v. Massachusetts Inst. of Tech.*, 129 F.2d 681, 687 (1st Cir. 1997), solely relied upon by Pepper (Pepper Mem. at 7), could not be more off-point. In that case, which had nothing whatsoever to do with the common interest doctrine, the Court held that work product protections claimed by MIT with respect to documents sought by the Internal Revenue Service were waived by MIT's earlier disclosure of the same documents to the Department of Defense -- at the time of that earlier production, "a potential adversary" -- in connection with an audit being conducted by the Department. That case is not remotely analogous to the situation here, where there is no such "potential" as between the Trustee and Royal with respect to the subject matter of the Joint Litigation Agreement[4]

**The Settlement between the Trustee and Royal was not Collusive or Improper**

Pepper's Motion also asserts that the Term Sheet and, by necessary implication, the Bankruptcy Court Order which approved and fully incorporated it, should be disregarded

---

[4] Pepper attempts to seize on a portion of a single sentence from Royal's Third Amended Complaint against Pepper (originally filed in March, 2005) in Case No. 05-165 in an effort to show that the Trustee and Royal somehow remain adverse to one another even following the Bankruptcy Court's approval of the settlement Term Sheet. (Pepper Mem. at 7.) Royal's complaint allegation -- in context, and obviously characterizing that period of time when SFC operated as a going concern engaged in a conspiracy to defraud -- states that absent "the bankruptcy laws," Royal would have sued SFC. That was, and remains accurate. However, first the automatic stay provisions of the bankruptcy code, and then the court-approved bankruptcy proceedings which culminated in the settlement Term Sheet and mutual releases, have precluded, and will always preclude, Royal from bringing an action against SFC. Nothing stated in Royal's complaint, as interpreted by Pepper or otherwise, can change that legal reality. And nothing in Royal's complaint precludes the Trustee and Royal from pursuing their "common interests" that emerged as a result of that bankruptcy process – fully aided by the confidentiality afforded those efforts by the Joint Litigation Agreement.

because the Term Sheet was the result of collusion between the Trustee and Royal -- entered into solely to manufacture a substantial damages claim. (Pepper Mem. at 5.) Alternatively, the Motion contends that the Trustee was tricked into entering into the Term Sheet by Royal's allegedly false representations regarding the state of Royal's own knowledge about SFC. (Pepper Mem. 7-8.) Even a cursory review of the facts demonstrates the untruth of both of these conflicting contentions.

As the record of the hearing before the Bankruptcy Court makes clear (Ex. B), the Term Sheet was heavily negotiated between Royal and the Trustee. The $5 million in consideration which Royal agreed to pay to the SFC estate in connection with that settlement was at the time, and remains to this day, the largest sum that the estate has received in any single settlement. The Term Sheet was approved by the Bankruptcy Court following a multi-hour hearing, and over the objections of a number of parties that appeared and argued against approval, each of whom are now (or were) defendants in adversary proceedings brought by the Trustee.

Among the principal reasons that the Trustee decided to enter into the Term Sheet were the complexities, costs and uncertainties associated with litigating the estate's claims against Royal, measured against the certain and substantial payment that Royal had agreed to make under the settlement. (*See, e.g.*, Ex. B, pp. 17-19.) In addition, the Trustee advised the Bankruptcy Court of his belief that obtaining Royal's cooperation in the prosecution of the many adversary proceedings being brought by the Trustee would be of substantial value to the estate. (*See, e.g.*, Ex. B, pp. 22-23.)

Moreover, as explained by the Trustee, there also was a significant "recycling effect" problem that militated in favor of the settlement. Because Royal was likely, in the end, to have claim to more than 90% of the estate's litigation recoveries, that same percentage of any recovery that the estate actually obtained from Royal through litigation would simply be paid

right back to Royal. (Exhibit B, pp. 18-19). Because of this unique fact, the Trustee reasoned, there was particularly little to be gained for other creditors of the estate for the Trustee to spend substantial time and resources pursuing complex and highly uncertain claims against Royal. (*Id.*)

It simply is untrue, as Pepper urges, that Pepper would not be facing the damages claims asserted against it by the Trustee if the Trustee had not settled with Royal. It was not the fact of that settlement, but Pepper's own improper conduct, that gave rise to the claims now being asserted against it by the Trustee. Moreover, those claims exist independently of the Trustee's decision, made as part of the settlement with Royal, to liquidate and allow the amount of Royal's claim against the SFC estate. So long as Royal has paid significant insurance claims and continues to face claims exposure under its policies, SFC's estate is similarly indebted and exposed to Royal. That was always true, and remains true, irrespective of whether Royal's Proof of Claim was allowed or not, and irrespective of whether the Trustee, in turn, can seek redress against Pepper for all or any part of that claim. In any event, having been fully approved by the Bankruptcy Court, which gave careful consideration to the motion to approve the Term Sheet, and the arguments of those who appeared at the hearing and argued against its approval more than two years ago, it is way too late in the day for Pepper to challenge the Bankruptcy Court Order and Term Sheet now as part of its effort to gain advantage in defending the serious claims asserted against it by the Trustee and Royal.

Finally, Pepper alternatively asserts that a single, September, 2000 e-mail, produced among tens of thousands of pages of material produced in this litigation (Pepper Appx. A-107), evidences Royal's knowledge of SFC's fraud as of no later than that date, and that Royal wrongfully induced the Trustee to enter into the Term Sheet when it misrepresented to the

Trustee that it "did not discover SFC's true financial condition until 2002." (Pepper Mem. at 7.) The e-mail is evidence of no such thing and the proposition, itself, is absurd.

The vast bulk of Royal's exposure to the SFC fraud -- well in excess of $400 million -- arose as a result of insurance policies issued by Royal *after* September, 2000 -- indeed, the last of which was issued in November, 2001. That alone is compelling evidence of Royal's lack of knowledge of SFC's true financial condition prior to 2002.

Moreover, the e-mail in question relates to an entirely different issue -- separate and distinct from the "forbearance payment"-related wrongdoing at the heart of the Trustee's and Royal's claims against Pepper and which, when disclosed by SFC in 2002, led to the discovery of "SFC's true financial condition." The e-mail raises no question or concern about "forbearance payments" or the like, but rather about operational cash flows and related modeling. Indeed, that same September, 2000 e-mail previously was presented to this Court by Pepper in an attempt to show essentially the same alleged state of knowledge by Royal when Pepper moved to dismiss Royal's claims against it in Case No. 05-165 -- principally on statute of limitations grounds. (*See* Reply Brief in Support of Motion of Pepper Hamilton LLP For the Dismissal of Plaintiff's First Amended Complaint, dated August 16, 2005, filed in Case No. 05-165 (D.I. 51), at p. 5.) This Court denied Pepper's motion to dismiss in its entirety on March 31, 2006 (D.I. 122). That e-mail no more evidences knowledge by Royal that was pertinent to the Trustee's decision to settle with Royal (much less any misrepresentation to, or wrongful inducement of, the Trustee by Royal), than it does knowledge by Royal necessary to support the statute of limitations arguments previously urged by Pepper and already rejected by this Court.

## Conclusion

For all of the foregoing reasons, Royal respectfully requests that the Court deny that part of Pepper's Motion which seeks communications between the Trustee and Royal.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | */s/ Tiffany Geyer Lydon* |
| *Of Counsel:* | Philip Trainer, Jr. (I.D. #2788)<br>Tiffany Geyer Lydon (I.D. #3950) |
| Michael H. Barr<br>John A. Bicks<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>1221 Avenue of the Americas<br>New York, New York 10020-1089<br>(212) 768-6700 | 222 Delaware Avenue, 17th Floor<br>Wilmington, Delaware 19899<br>(302) 654-1888<br>ptrainer@ashby-geddes.com<br>tlydon@ashby-geddes.com |
|  | *Attorneys for Royal Indemnity Company* |
| - and - |  |
| John Grossbart<br>Steve Merouse<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>7800 Sears Tower<br>233 S. Wacker Drive<br>Chicago, Illinois 60606<br>(312) 876-8000 |  |

Dated: October 30, 2006
174655.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2006, the attached **REDACTED PUBLIC VERSION OF ROYAL INDEMNITY COMPANY'S OPPOSITION TO MOTION OF PEPPER HAMILTON LLP TO COMPEL PRODUCTION OF COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| William H. Sudell, Jr., Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 North Market Street<br>Wilmington, DE  19899-1347 | ELECTRONIC MAIL |
| James L. Holzman, Esquire<br>J. Clayton Athey, Esquire<br>Prickett, Jones & Elliott, P.A.<br>1310 King Street<br>Wilmington, DE  19899 | ELECTRONIC MAIL |
| Michael R. Lastkowski, Esquire<br>Christopher M. Winter, Esquire<br>Duane Morris LLP<br>1100 North Market Street, Suite 1200<br>Wilmington, DE  19801 | ELECTRONIC MAIL |
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE  19899 | ELECTRONIC MAIL |
| Karen Lee Turner, Esquire<br>Susan E. Poppiti, Esquire<br>Eckert Seamans Cherin & Mellott, LLC<br>300 Delaware Avenue, Suite 1360<br>Wilmington, DE  19801 | ELECTRONIC MAIL |

| | |
|---|---|
| Daniel K. Astin, Esquire<br>Meg Augustine, Esquire<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801 | ELECTRONIC MAIL |
| John H. Eickemeyer, Esquire<br>Jonathan A. Wexler, Esquire<br>Vedder, Price, Kaufman & Kammholz, P.C.<br>805 Third Avenue<br>New York, NY 10022 | ELECTRONIC MAIL |
| Elizabeth K. Ainslie, Esquire<br>Schnader Harrison Segal & Lewis LLP<br>1600 Market Street, Suite 3600<br>Philadelphia, Pennsylvania 19103 | ELECTRONIC MAIL |
| Richard P. Swanson, Esquire<br>Veronica E. Rendon, Esquire<br>Jason M. Butler, Esquire<br>Arnold & Porter LLP<br>399 Park Avenue<br>New York, NY 10022-4690 | ELECTRONIC MAIL |
| Steven M. Farina, Esquire<br>Thomas H.L. Selby<br>Amber M. Mettler<br>Williams & Connolly LLP<br>725 Twelfth Street, NW.<br>Washington, DC 20005 | ELECTRONIC MAIL |
| Neil G. Epstein, Esquire<br>Eckert Seamans Cherin & Mellott, LLC<br>1515 Market Street, 9th Floor<br>Philadelphia, PA 19102 | ELECTRONIC MAIL |
| Michael S. Waters, Esquire<br>Lois H. Goodman, Esquire<br>McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>Three Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102-4079 | ELECTRONIC MAIL |

3

James J. Rodgers, Esquire                                              ELECTRONIC MAIL
Laura E. Vendzules, Esquire
Andrew M. Marble, Esquire
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia PA 19103-7595

Andre G. Castaybert, Esquire                                           ELECTRONIC MAIL
Ronald Rauchberg, Esquire
Steven Obus, Esquire
David McTaggart, Esquire
Proskauer Rose LLP
1585 Broadway
New York, NY  10036-8299

Student Loan Servicing LLC                                             U.S. MAIL
1405 Foulk Road, Suite 102
Wilmington, DE  19803-2769

Andrew N. Yao                                                          U.S. MAIL
107 Leighton Drive
Bryn Mawr, PA  19010


                                            */s/ Tiffany Geyer Lydon*
                                            _____
                                            Tiffany Geyer Lydon

170005.1