UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>　　　　Debtor, | :<br>:<br>:<br>: |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:　Civil Action No. 04-1551(JJF)<br>:<br>:<br>:<br>:<br>:<br>: |

**REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL AND
DOCUMENTS RELATING TO COMPENSATION RECEIVED BY THE TRUSTEE**

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
Daniel B. Butz, Esq. (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT................................................................................................................................ 2

I.     COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE AND ARE NOT PROTECTED FROM DISCLOSURE BY THE WORK PRODUCT DOCTRINE ................................................. 2

II.    DOCUMENTS RELATING TO THE COMPENSATION THAT THE TRUSTEE AND HIS FIRM RECEIVE FROM SFC ARE RELEVANT TO THIS ACTION. ....................................... 6

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

## CASES

*Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189 (D. Del. 2004) ........................................ 5-6

*Constar Int'l, Inc. v. Continental Pet Techs., Inc.*, No. 99-234-JJF,
    2003 U.S. Dist. LEXIS 21132 (D. Del. Nov. 19, 2003) .............................................. 6

*Raytech Corp. v. White*, 54 F.3d 187 (3d Cir. 1995) ....................................................... 3

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997) ................................. 5

## RULES

Fed. R. Civ. P. 8(b) ............................................................................................................. 6

## INTRODUCTION

Contrary to the repeated assertions in the responsive briefs of the Trustee and Royal, Pepper does not seek through its present motion to undo the settlement that those parties entered into two years ago. Rather, Pepper simply seeks discovery of relevant and non-privileged documents that relate to Pepper's defenses. The attempts by the Trustee and Royal to deflect attention from this request by claiming that Pepper is attacking a court-approved settlement and (in the Trustee's case) by raising unrelated and unsupported allegations regarding Pepper's document production are unavailing.[1]

The Trustee concedes that SFC's alleged injury is based, in part, on the proofs of claim filed by SFC's creditors, the largest of which, by far, is Royal's allowed claim of $562 million. Any notion that this claim is unrelated to the damages the Trustee seeks from Pepper is belied by the Trustee's (and Royal's) repeated assertion that they are working hand-in-hand to maximize their collective recovery from Pepper. One of Pepper's defenses in this case is that the entire basis of this allowed claim, which forms the bulk of the Trustee's putative injury, is flawed, and Pepper is entitled to discovery that is relevant to that defense. The Trustee cannot shield such discovery from disclosure simply by entering into a joint litigation agreement with an adverse party that claims in its own complaint against Pepper that the Trustee's corporation, SFC, is responsible for its $562 million in losses.

Finally, the Trustee is wrong to contend that his compensation for litigating this action against Pepper is not relevant to Pepper's defenses. The Trustee is not a typical plaintiff; he has not suffered any injury personally and does not seek to recover any funds that will go into his own pocket. Rather, he is bringing this action ostensibly for the sake of creditors who are

---

[1] Pepper addresses in this reply brief only the arguments raised by the Trustee and Royal in response to Pepper's motion to compel. Pepper will address the Trustee's unfounded allegations in support of his own recently filed motion to compel at the appropriate time.

owed money by SFC. Yet, as the Trustee concedes, the vast bulk of any funds the Trustee recovers will go directly to Royal, which, through its $5 million payment to the estate, has provided the funds for this litigation (and others) that, to some unknown degree, inure to the benefit of the Trustee personally. Thus, it is entirely fair for Pepper to ask (and to seek discovery regarding) whether the Trustee has manufactured his claim against Pepper for the purpose of reaping the benefits of litigation through payments to himself and his law firm.

## ARGUMENT

Initially, it is clear that neither the Trustee nor Royal can offer any basis for withholding communications between the two of them (or their counsel) *prior* to their settlement. As they concede, they were clearly adverse at that time and any communications between them plainly do not enjoy the protection of the work product doctrine or attorney-client privilege. Thus, any such documents should be produced. In addition, as discussed below, the Trustee and Royal offer no persuasive arguments against production of their post-settlement communications or information regarding the compensation the Trustee will receive as a result of this litigation against Pepper.

I. **COMMUNICATIONS BETWEEN THE TRUSTEE AND ROYAL ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE AND ARE NOT PROTECTED FROM DISCLOSURE BY THE WORK PRODUCT DOCTRINE.**

The primary basis for both the Trustee's and Royal's objections to production of the requested documents is that their settlement was approved by the court after notice and an opportunity for notified parties to object to the settlement, and thus, the settlement is legitimate and off-limits in this lawsuit. Factually, this argument is wrong for the simple reason that Pepper never received notice and an opportunity to object to the Trustee's settlement with Royal. *See* Notice of Motion & Certificate of Service, *In re Student Fin. Corp.*, No. 02-11620-JBR (Bankr. D. Del., filed Oct. 14, 2004) (D.I. # 883) (C-1). But more fundamentally, the argument is

2

irrelevant because Pepper does not seek to challenge the settlement. Rather, Pepper seeks to obtain communications between the Trustee and Royal because such communications (if they refer or relate to SFC, Pepper, Gagné or Royal) are relevant to the claims and defenses in this action and are not protected by the work product doctrine or the attorney-client privilege — and the settlement of the Trustee's and Royal's claims against each other does not change this fact.

Tellingly, although the Trustee and Royal spend much time arguing that the settlement is a done deal not subject to further review in this litigation, they offer no legal authority for this claim. Although left unstated, it is clear that their argument is based on the doctrine of collateral estoppel. They both argue, repeatedly, that, given Pepper's purported notice and opportunity to be heard on the terms of the settlement, and the court's approval of the settlement, Pepper cannot raise any issue relating to the settlement in the present case. This is a collateral estoppel argument in all but name. Yet, there is no question that Pepper is not estopped by the court's approval of the settlement from arguing in this case that the settlement is insufficient to immunize the Trustee's communications with Royal from scrutiny by others. Pepper and Gagné were not parties to the prior proceedings and, even if they had been, they certainly would not have had the incentive to challenge the settlement (or the evidence to do so, uncovered in the discovery so far conducted in this case) that they now have. *See, e.g., Raytech Corp. v. White*, 54 F.3d 187, 190, 195 (3d Cir. 1995).

Moreover, as will be clear on summary judgment, Royal withheld substantial evidence from the Trustee prior to the settlement indicating that Royal was well aware of SFC's fraud long before it claimed to discover it in 2002. Royal claims (at pages 11-12 of its brief) that Pepper can only cite a single e-mail in support of its argument that Royal knew (or should have known) of the fraud long before 2002. Yet, this motion to compel obviously is not the place for Pepper to marshal all of its evidence to prove that Royal's claim is barred by the statute of limitations and other defenses; rather, Pepper will present this evidence to the Court at the

3

appropriate time. In fact, however, that evidence reveals that Royal knew as early as 2000 — two years before Royal claims it discovered SFC's fraud — that SFC had misrepresented the delinquency and default rates on the loans Royal insured, and yet, Royal was content to continue issuing insurance for SFC transactions.[2] As the Trustee implicitly concedes by his silence in response to this point in Pepper's initial brief, Royal concealed this information from the Trustee at the time of the settlement.

Royal's argument that its issuance of more than $400 million in policies *after* September 2000 is "compelling evidence of Royal's lack of knowledge of SFC's true financial condition prior to 2002," Royal Br. at 12, is unavailing. If anything, this is "compelling" proof of

---

[2]  *See, e.g.*, ROY000948 (by February 11, 2000, Royal was aware that student loan delinquencies were "a point of concern") (C-8); ROY075143 (by March 6, 2000, Royal was aware that certain "students . . . are in forbearance" and that payments made on their behalf "distort[] the default curve") (C-12); ROY105161 (by September of 2000, Royal was concerned whether, if Royal stopped insuring the student loans, SFC would be able to stay in business: "I guess the question is, 'Can they stay in business about one year after we add the last loan that we are going to ensure?'") (C-14); ROY045003 (by December 2000, Royal was concerned that it did not have "any audit or similar investigation of SFC where fraud prevention was evaluated") (C-15); ROY001255 (by April 5, 2001, at the latest, Royal was aware of "the extremely high delinquency rate on these notes . . . it looks to be in the range of 65% . . . . This account is a new revelation every day") (C-16); ROY165652 (by April 20, 2001, Royal was aware that the amount of money SFC was collecting from students did not correlate with the percentage of loans that SFC represented were performing: "Why are these amounts [delinquencies for the Current and Prior month] so drastically different from what is shown on the servicer reports. . . . 74% of the loans were current at April month end implying $852,000 should have been received. The Servicer reports indicate only $120,000. It seems to continue that way through the rest of the months. . . . Grantor Trust 3 [is e]specially troublesome. The statistics indicate virtually all loans current at August 31, yet the actual flows show a substantial shortfall. Grantor Trust 4 [is m]ore of the same, perhaps worse than Grantor 3") (C-17); ROY045922 (a Royal executive conceded on April 24, 2001, that he had had "[a]nother sleepless night" because of the SFC account and stated that "If we don't go forward [with providing further insurance coverage to SFC], we will surely get whacked") (C-56); ROY075795 (by April 2001, Royal knew that SFC's "[d]elinquency Data does not seem to match the cash flows") (C-57); ROY047317 (by April 25, 2001, Royal concluded that SFC's explanation for the discrepancies in its financial data "[did] not leave [Royal] with a comfortable feeling") (C-58); ROY045895 (by May 7, 2001, a Royal executive was aware of "the harsh reality of policy #2 all too well. It is what I think about every night when I wake up") (C-59); ROY041141 (by July 10, 2001, Royal understood that "[i]f they [SFC] cannot find someone else to insure their securitizations, they will be dead in the water and so very well may we") (C-61); ROY045618 (by December 4, 2001, Royal was asking "are we idiots?" for continuing to keep SFC in business) (C-65).

4

Royal's lack of due diligence in repeatedly issuing policies to SFC (which is amply supported by a wealth of additional evidence that Pepper will present at the appropriate time). In addition, because this Court did not issue an opinion explaining its denial of Pepper's motion to dismiss Royal's lawsuit and because that motion necessarily assumed the truth of Royal's (factually unsupported) allegations in its complaint, it is disingenuous for Royal to claim that this Court already has rejected the notion that Royal was aware of SFC's true financial condition before 2002.

Finally, although the Trustee repeatedly refers to his common interest with Royal in "the litigation," there is no single lawsuit in which the Trustee and Royal are co-parties with shared interests. Rather, the Trustee is the only plaintiff in this action and Royal is the only plaintiff in an entirely separate action. As the quotation in the Trustee's own brief reveals, the common interest or joint prosecution doctrine covers those "working together in prosecuting or defending *a lawsuit*." Trustee Br. at 18 (quoting *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997)) (emphasis added). The Trustee and Royal have brought separate cases and are proceeding on the basis of different causes of action and different theories of causation and harm. Moreover, the Trustee and Royal are subject to different (if, in some cases, overlapping) defenses. The Trustee and Royal have not (and cannot) point to any cases in which a joint litigation privilege was extended to plaintiffs in separate cases, where each party's possible recovery from the same defendant is not only independent from, but to some degree inconsistent with, the other party's recovery. The cases they do cite provide no support for this radical notion. *See, e.g., Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (Farnan, J.) (cited in Royal Br. at 7) (denying protection of common interest privilege to documents revealed to third party during negotiations over potential investment in defendant); *Constar Int'l, Inc. v. Continental Pet Techs., Inc.*, 2003 U.S. Dist. LEXIS 21132, at *5-*6 (D. Del. Nov. 19, 2003) (Farnan, J.) (cited in Trustee Br. at 19 and Royal Br. at 8, and found in App.

5

B-107) (holding that common interest privilege applies to communications between counsel for two parties with a shared legal interest in a patent under a cross-license).

The Trustee's communications with a third party regarding matters relevant to his claims and Pepper's defenses are discoverable and are not protected by the Trustee's and Royal's joint efforts to shield them from disclosure.

## II. DOCUMENTS RELATING TO THE COMPENSATION THAT THE TRUSTEE AND HIS FIRM RECEIVE FROM SFC ARE RELEVANT TO THIS ACTION.

The Trustee protests that nowhere in the "pleadings" filed by Pepper in this case can one find allegations that the Trustee manufactured a claim against Pepper in order to increase his own compensation. *See* Trustee Br. at 9. Yet, Pepper has not filed any pleadings that set forth its defenses in full and all of its arguments against the Trustee's remaining claims. Rather, Pepper filed a motion to dismiss that, obviously, assumed the truth of the Trustee's allegations. After that motion was granted in part and denied in part, and the Trustee filed an amended complaint, Pepper filed an answer that responded to the Trustee's allegations "in short and plain terms," as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(b). That answer denied that Pepper had caused any damages that the Trustee had suffered and asserted as affirmative defenses (among others) that the Trustee had failed to mitigate his damages, had assumed his own damages, and had not incurred the damages he alleged. These averments were plainly sufficient to put at issue the Trustee's motivation for settling his dispute with Royal and thereby manufacturing an inflated damages claim against Pepper.[3]

---

[3] Royal's contention (at page 11 of its brief) that, even absent its settlement with the Trustee, the estate would owe Royal the same $562 million that the Trustee agreed to allow is just silly. Royal obviously believes that its proof of claim was warranted and that it was entitled to these funds from SFC's estate, but the Trustee had substantial defenses to Royal's claims and, if not for his desire to secure a litigation war chest, he easily could have contested that claim and declined to settle with Royal for the full amount of Royal's claim. Thus, it is undoubtedly true

6

The Trustee's citation to cases involving defendants' requests for production of documents relating to "plaintiffs' fee arrangements with class counsel," Trustee Br. at 13, is off point. Here, defendants seek information not about compensation to plaintiff's counsel but, rather, information regarding the compensation that *the plaintiff himself* will reap from this litigation, regardless of its outcome. Where such compensation arises from plaintiff's settlement of a dispute with the adverse party asserting the largest claim against it, and is funded with the money paid by that adverse party, the plaintiff's newest targets are certainly entitled to discover the terms of the plaintiff's compensation so that they might adequately and knowledgably defend plaintiff's claims against them.

Finally, the Trustee's argument that "there is no reason to believe" that his fee arrangement is any different from that of any other bankruptcy trustee ignores the entire context of his claim against Pepper. Two years ago, SFC's estate was effectively a no-asset estate with relatively minor claims against it (other than Royal's). As the Trustee conceded in his motion to approve the settlement with Royal (A-12 to A-13, ¶¶ 44-45) and in his responsive brief to this motion, the estate had few if any funds with which to pay counsel (such as the Trustee's firm) to litigate claims on behalf of creditors, and the claims of creditors were hardly worth pursuing. Suddenly, after the settlement, the estate had a $5 million war chest to use for litigation, much of it since paid to the Trustee's firm,[4] and a substantial need for litigation to obtain funds to pay Royal's $562 million claim. How much of this $5 million was paid (and will be paid in the future) to the Trustee himself is an issue that is directly relevant to Pepper's contention that the

---

that at least a portion of the Trustee's claim against Pepper was created through the Trustee's settlement with Royal.

[4] *See* D.I. # 1117, Exs. C, E; #1195; #1249; #1250; #1284; #1323; #1398; #1474, *In re Student Fin. Corp.*, No. 02-11620-JBR (Bankr. D. Del.) (fee petitions of the Trustee's law firms, indicating $1.175 million in fee requests as of June 30, 2006, for the Pepper and McGladrey matters alone).

7

Trustee settled with Royal in order to create a justification to pursue litigation against Pepper (and others), with the ultimate beneficiaries of such litigation being Royal and the Trustee.

As set forth above and in Pepper's initial brief, there is every reason to believe that the Trustee's fee arrangement, which would disclose how much of the war chest created by the Royal settlement went into his own pocket, is relevant to Pepper's defenses. Thus, the Court should compel discovery of such information.

## CONCLUSION

For the foregoing reasons and those set forth in Pepper's initial brief in support of its motion to compel, Pepper respectfully requests that the Court grant its motion to compel and order the Trustee to produce copies of communications between the Trustee and Royal and documents relating to the compensation of the Trustee and his law firm.

Dated: November 6, 2006
        Wilmington, Delaware

/s/ *signature*

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver (No. 2983)
Daniel B. Butz (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

- and -

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendant Pepper Hamilton LLP and W. Roderick Gagné*

9