### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>   Debtor, | :<br>:<br>: |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>   Plaintiff,<br><br>    v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>   Defendants. | :<br>:<br>:<br>:<br>:<br>:  Civil Action No. 04-1551(JJF)<br>:<br>:<br>:<br>:<br>:<br>: |

---

### BRIEF IN RESPONSE TO MOTION BY PLAINTIFF
### FOR A PROTECTIVE ORDER AND TO COMPEL DISCOVERY

---

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
Daniel B. Butz (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ............................... 2

SUMMARY OF ARGUMENT............................................................................................ 2

STATEMENT OF FACTS.................................................................................................. 3

ARGUMENT .................................................................................................................. 5

I.    PEPPER DOES NOT OBJECT TO THE TRUSTEE'S REQUEST FOR IN CAMERA REVIEW OF
      PRIVILEGED DOCUMENTS. ................................................................................... 5

II.   THE TRUSTEE HAS MISREPRESENTED THE FACTS SURROUNDING PEPPER'S
      WITHHOLDING OF PRIVILEGED DOCUMENTS. ...................................................... 9

III.  THE TRUSTEE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS RELATING TO
      GAGNÉ'S COMPENSATION IS MOOT. ................................................................... 12

CONCLUSION.............................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

*DeWitt v. Penn-Del Directory Corp.*, 912 F. Supp. 707 (D. Del. 1996),
    *aff'd in relevant part*, 106 F.3d 514 (3d Cir. 1997) ...................................................... 1

*Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954 (3d Cir. 1997) ............................ 7

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*,
    5 F.3d 1508 (D.C. Cir. 1993) ...................................................................... 8

*Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co.*,
    183 F.R.D. 627 (N.D. Ill. 1999) .................................................................... 8

*Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180 (3d Cir. 2003) ......................... 1

*Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) .................................... 7-8

*United States v. Doe*, 429 F.3d 450 (3d Cir. 2005) .......................................................... 8

## RULES

Fed. R. Civ. P. 37 ...................................................................................... 1

D. Del. LR. 7.1.1 ................................................................................. 1, 10-11

D. Del. LR. 7.1.3 ...................................................................................... 3

## PRELIMINARY STATEMENT

Apparently of the school that "the best defense is a good offense," the Trustee has responded to Pepper's motion to compel him to produce documents by criticizing Pepper's own document production. As explained below, the trustee's "offense" — his own motion to compel — not only fails to meet the adage's requirement that it be a "good offense," but it is completely unnecessary. If the Trustee had complied with Federal Rule of Civil Procedure 37(a)(2)(A) and Local Rule 7.1.1 of this Court, he would have obtained the precise relief he now seeks.[1] Instead, he has done nothing more than burden the Court with a needless motion. Pepper has already given the Trustee the non-privileged documents he sought (for the first time) in his motion to compel, and Pepper willingly consents to an *in camera* review by the Court of those privileged documents as to which Pepper has been unable to obtain a waiver by its former clients. The Trustee's effort to deflect attention away from his own failure to produce relevant, responsive and non-privileged documents is both moot and misguided.[2]

---

[1]        Under Rule 37, a motion to compel "*must include* a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." FED. R. CIV. P. 37(a)(2)(A) (emphasis added). Similarly, Local Rule 7.1.1 requires that "counsel for the moving party file[] with the Court, *at the time of filing the motion*, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion." D. DEL. LR. 7.1.1 (emphasis added). The Trustee failed to include the required certification in his motion, which is a sufficient ground to deny that motion. *See, e.g., Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 187 (3d Cir. 2003) ("Rule 37(a) . . . contains an explicit requirement that the moving party certify its good faith efforts at conferral."); *DeWitt v. Penn-Del Directory Corp.*, 912 F. Supp. 707, 712-13 (D. Del. 1996) (striking party's motion to compel discovery due to its "blatant disregard for Local Rule 7.1.1"), *aff'd in relevant part*, 106 F.3d 514, 520 n.5 (3d Cir. 1997). Instead, 23 days after filing his motion, the Trustee filed a certification in which he claimed that the parties had conferred regarding the matters covered by his motion and had "been unable to reach an agreement on the matters therein." D.I. 174. As discussed below, Pepper strenuously disputes the Trustee's contention that the Trustee adequately undertook to obtain Pepper's agreement on the issues covered by his motion.

[2]        The Trustee also seeks a protective order relating to certain information that Pepper moved to compel the Trustee to produce. *See* D.I. 156 (Trustee's motion); D.I. 133 (Pepper's motion). For the reasons set forth in Pepper's motion to compel, supporting brief, and

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation (the "Trustee") filed the instant lawsuit against Pepper Hamilton LLP ("Pepper"), W. Roderick Gagné (collectively, the "Pepper Defendants") and others in connection with the bankruptcy of Student Finance Corporation ("SFC"). The Complaint alleged numerous tort claims, which the Pepper Defendants moved to dismiss. In an Opinion and Order dated December 22, 2005, this Court dismissed most of the Trustee's tort claims, leaving professional malpractice and breach of fiduciary duty as the only tort claims remaining in the Trustee's case.[3] Written discovery commenced on September 7, 2005.

## SUMMARY OF ARGUMENT

*1. Request for in camera review.* Pepper has no objection to the Trustee's request that Pepper submit privileged documents to the Court for *in camera* review. In fact, had the Trustee made such a request prior to filing his motion, Pepper would have agreed to jointly request such review. However, while Pepper does not object to the Trustee's substantive request, the underlying factual basis for the Trustee's motion is rife with misrepresentations of the discovery proceedings, which we address below at pages 9 to 12.

*2. Request for documents relating to Gagné's compensation.* As the Trustee notes in his brief (at p. 33), he has previously requested documents "sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné by Pepper Hamilton." As Pepper stated in its response to this request and in subsequent discussions with the Trustee's counsel, no such documents exist. It is simply not possible to

---

reply brief, the information that Pepper seeks is discoverable and the Trustee's motion for a protective order should be denied. *See* D.I. 134, 164.

[3] The Trustee's equitable subordination and preference claims against the Pepper Defendants also remain in the case.

identify and establish the effect of the fees Pepper has received from SFC on Gagné's compensation because the amount of compensation paid to each Pepper partner is not determined by any formula based on fees received from particular clients associated with that partner. Nonetheless, Pepper has now provided the Trustee with documents used by Pepper's compensation committee in the process of establishing the compensation paid to Gagné, none of which information is broken down by client. Because Pepper has provided the Trustee the information he has requested in his motion, this aspect of the Trustee's motion is moot.

## STATEMENT OF FACTS[4]

*Facts Related to Pepper's Privilege Log.* On February 17, 2006, Pepper served its privilege log on the Trustee and the parties in the other cases consolidated with this matter for discovery. *See* B-1 to B-7.[5] That log listed all arguably responsive documents that Pepper had withheld from production on the basis of the attorney-client privilege. An amended log was served on September 19, 2006. *See* B-8 to B-22.[6]

Pepper's withheld documents can be broken down into four general categories of documents: 1) documents where the attorney-client privilege is held by Andrew Yao personally; 2) documents where the attorney-client privilege is held by an entity not controlled by SFC and for which Pepper has been unable to obtain a waiver; 3) privileged communications between

---

[4] We recite here only the discovery-related procedural background and facts that are necessary to respond to the Trustee's motion.

[5] In compliance with Local Rule 7.1.3(a)(C), the pages to the appendix accompanying this responsive brief are numbered B-1, B-2, etc. Because the Trustee filed a single appendix accompanying his brief both responding to Pepper's motion to compel and in support of the Trustee's own motion, the pages of the Trustee's appendix are also numbered B-1, B-2, etc. All citations to the appendix in this brief are to the appendix filed with Pepper's brief, not the Trustee's.

[6] Contrary to the Trustee's assertion (Trustee Br. at 24), Pepper is not withholding a single document where the attorney-client privilege with respect to the document is held by Rod or Pamela Gagné or Robert Bast. Indeed, the Gagnés and Mr. Bast have voluntarily waived the attorney-client privilege as to all relevant documents for which they hold the privilege.

Pepper attorneys and Pepper's in-house counsel; and 4) privileged communications between Pepper and its insurers.[7]

On August 31, 2006, the Trustee's counsel wrote to Pepper's counsel requesting clarification of certain items on Pepper's privilege log. *See* B-23. On September 18, 2006, Pepper's counsel responded by letter, explaining that Pepper had sought privilege waivers for all items in the first two categories of withheld documents (those for which Andrew Yao personally or a corporate entity not controlled by SFC held the privilege), but had been unable to obtain such a waiver from the appropriate individuals or entities. *See* B-25. As Pepper's counsel explained in that letter, "we will gladly produce any of the communications regarding Andrew Yao and other non-SFC entities upon receiving the proper waiver from Pepper's former clients. But absent such waivers, we are obviously unable to produce these materials and will continue to withhold them." B-26.

**Facts Related to Compensation Documents.** On May 8, 2006, the Trustee served a request for production on Pepper, seeking documents "sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné by Pepper Hamilton." B-36. On June 7, 2006, Pepper responded, accurately reporting that no such documents existed. *See* B-46. At his October 11, 2006 deposition, Pepper partner Duncan Grant was asked what "financial performance figures" the Pepper compensation committee uses in the process of setting the compensation paid to each partner each year. *See* B-57. Grant responded that the committee looks at such information as "fees collected on the basis of chargeable hours

---

[7]   Pepper also redacted non-responsive and/or confidential information from certain documents. For example, Pepper redacted references to non-SFC related clients from certain billing records, attorney performance evaluations, and promotional materials. Although those redactions do not implicate a privilege, Pepper included the redactions on its privilege log for ease of reference. Pepper does not understand that such redactions are at issue in the Trustee's current motion, as the Trustee has made no contention (and none would be warranted) that such material is responsive or relevant.

worked, . . . and three other categories, which are originating lawyer, both amount billed and
collected, billing lawyer, billed and collected, and handling or supervising lawyer, amount billed
and amount collected." *Id.*  Two weeks later, on October 25, 2006, the Trustee's counsel sent
Pepper's counsel a letter requesting the information identified by Grant.  *See* B-59.  Three
business days later, and without awaiting Pepper's reply, the Trustee filed the present motion.
Nonetheless, in response to the Trustee's letter, on November 10, 2006, Pepper produced the
documents identified by Grant.  None of the data in those documents is broken down by client,
and none is responsive to the Trustee's original request for documents "sufficient to identify and
establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné."
B-60.

## ARGUMENT

I.    **PEPPER DOES NOT OBJECT TO THE TRUSTEE'S REQUEST FOR *IN CAMERA* REVIEW
OF PRIVILEGED DOCUMENTS.**

As noted above, the documents withheld by Pepper can be divided into four
categories.[8]  We address each category separately below.

1. Pepper represented Andrew Yao individually, primarily in matters relating to
Yao's estate planning.  Pepper also represented DCC Aircraft ("DCC") and Electronic Cash
Management ("ECM"), two entities unrelated to SFC that were owned and controlled by Yao.
On January 9, 2006, Pepper's counsel contacted Yao's counsel, Ed Goldsmith, first by telephone
and then by e-mail, requesting that Yao waive the privilege as to communications involving legal

---

[8]    The Trustee's proposed procedure for resolving the privilege issue – issuing a
subpoena to Pepper to produce the documents for which the privilege is held by non-SFC entities
(Trustee Br. at 32) – will resolve nothing.  If Pepper does not receive an affirmative waiver from
its former clients in response to the subpoena, Pepper will be compelled, in order to comply with
its obligations to its former clients, to object to the subpoena and refuse to produce the
documents.  The Trustee will then have to file a motion to compel, which would put the parties in
the very same position they currently occupy.

advice to Yao personally or on behalf of various entities that Yao may have controlled, including ECM. Yao's counsel responded that Yao would not agree to waive the attorney-client privilege as to any privileged documents between Pepper and Yao in his personal capacity or between Pepper and DCC, ECM, or any other entities controlled by Yao. Therefore, Pepper withheld such documents and listed them on its privilege log. *See* B-8 to B-22 (Nos. 1-2, 8, 13-17, 20-28, 30, 34-37, 40-51, 54-55, 59, 62-68, 77, 83-97, 99-101). Pepper has no objection to submitting the Yao, DCC or ECM documents to the Court for *in camera* review, if so ordered, and would have consented to such an order had the Trustee simply asked.

2. Pepper represented several entities that were affiliated with SFC, including Student Loan Servicing LLC ("SLS"), Student Marketing Services, LLC ("SMS"), and Student Placement Services, LLC ("SPS") (the "SFC-Affiliated Entities"). Despite Pepper's repeated requests that the Trustee agree to waive the privilege on behalf of these entities, so that withheld documents could be produced to all parties, the Trustee has refused to do so, claiming that he does not stand in the shoes of these entities. *See, e.g.*, B-64 to B-68 (deposition of Sheilah Gibson). Therefore, Pepper withheld and included on its log privileged communications between Pepper and the SFC-Affiliated Entities. *See* B-8 to B-22 (Nos. 10, 14-15, 18-19, 29, 52-53, 56-58, 60-61, 63-64, 72-76, 78-82, 99).

In accordance with the Court's instructions at the hearing held on December 28, 2005, Pepper's counsel attempted to contact individuals possibly in a position to assert or waive the privilege on behalf of the SFC-Affiliated Entities. Pepper's research revealed that:

- Yao is the only officer listed in corporate filings for SLS and SMS, which are no longer in good standing. *See* B-69, B-71;

- Perry Turnbull is listed as an officer of SPS, which is no longer in good standing. *See* B-73;

- Linda Richenderfer, Esq., was listed as counsel for SLS and SMS on the docket in the SFC bankruptcy case.

6

As noted above, Yao, through his counsel, refused to waive the privilege on behalf of SLS, SMS or any other entity within his control. Turnbull did not respond to a written request from Pepper's counsel to waive the privilege on behalf of SMS and SPS. *See* B-75. Richenderfer indicated that she no longer represented SLS or SMS and, therefore, could not waive the privilege on behalf of either entity. Pepper's counsel made the Trustee aware of all of this information. *See* B-25. Rather than simply asking Pepper to submit the SLS, SMS and SPS documents to the Court for *in camera* review, however, the Trustee elected to burden the Court with this motion. Once again, Pepper has no objection to an order requiring it to submit these documents to the Court for *in camera* review.

3. Alfred H. Wilcox, a former Pepper partner who is now of counsel to the firm, is Pepper's in-house counsel and was Pepper's in-house counsel in March 2002 when Pepper first learned about SFC's fraudulent practices. In order to advise Pepper, his client, about how the revelation of SFC's fraud and Pepper's subsequent withdrawal from representing SFC might impact the firm, Wilcox requested that Gagné provide him with information about his representation of SFC, which Gagné did in a memorandum dated May 15, 2002. *See* B-10 (Privilege Log Nos. 31 and 33, which are identical copies of the May 15, 2002 memorandum).[9]

---

[9]     The Trustee mentions that Pepper produced a copy of an April 18, 2002 memorandum that Gagné prepared for Pepper's Finance Committee and suggests that, since Pepper produced the April 18, 2002 memorandum, it must produce the completely different, May 15, 2002 memorandum as well. *See* Trustee Br. at 25. This argument makes no sense. The April 18 memorandum was addressed to the members of Pepper's Finance Committee and therefore was not sent for the purpose of seeking or providing legal advice. *See* B-76. The May 15 memorandum, on the other hand, was addressed solely to Wilcox and was sent for the express purpose of providing Wilcox with information he needed in his capacity as in-house counsel to Pepper, to advise the firm on legal strategies. The Trustee's additional argument that neither memorandum was prepared in anticipation of litigation (Trustee Br. at 25) is irrelevant. The attorney-client privilege attaches to any communications between attorney and client for the purposes of obtaining legal advice and, unlike the work-product doctrine, does not require a showing that the communication was made in anticipation of litigation. *See, e.g., Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 965 (3d Cir. 1997) (attorney-client privilege protects all communications between attorney and client "for the purpose of obtaining legal advice"); *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (noting that

Pepper withheld, and listed on its privilege log, the May 15, 2002 memorandum and other unquestionably privileged communications between Wilcox and Gagné (or others at Pepper). *See* B-8 to B-22 (Nos. 31, 33, 38-39, 130, 152). If the Court deems it necessary, Pepper has no objection to submitting these documents to the Court for *in camera* review.

        4. Pepper produced copies of correspondence with its liability insurers, with portions of that correspondence redacted (and identified on Pepper's privilege log) where it related to possible settlement or litigation strategies. *See* B-8 to B-22 (Nos. 70-71, 102-04, 106-12, 114-15). The Trustee has not asserted any basis for forcing Pepper to produce this redacted material, which plainly is protected by the attorney-client privilege and work-product doctrine. *See, e.g.*, *United States v. Doe*, 429 F.3d 450, 453 (3d Cir. 2005); *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993); *Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co.*, 183 F.R.D. 627, 631 (N.D. Ill. 1999).

        In addition, one of Pepper's insurers brought a declaratory judgment action in New York state court. Portions of the pleadings in that matter include communications between Pepper and its insurers that are protected by the attorney-client privilege and work-product doctrine. The court in that matter has entered a protective order sealing those pleadings. When asked by one of the parties in the consolidated discovery proceedings here to produce all of the pleadings in the New York state court action, Pepper did so, but redacted the portions that related to settlement or litigation strategies in this matter, which are subject to the attorney-client privilege and work-product doctrine. *See* B-8 to B-22 (Nos. 119-21).

---

attorney-client privilege applies to communications "for the purpose of securing primarily either (i) an opinion of law or (ii) legal services").

II.    **THE TRUSTEE HAS MISREPRESENTED THE FACTS SURROUNDING PEPPER'S WITHHOLDING OF PRIVILEGED DOCUMENTS.**

Although, as discussed above, Pepper does not object to the Trustee's request for *in camera* review of documents withheld by Pepper as privileged, in support of his request the Trustee misrepresents the discovery record to create the false impression that Pepper's privilege designations are suspect. For instance, the Trustee attempts to make much of an April 30, 2002 e-mail among Gagné, Wilcox, and Grant, who handled a litigation matter for SFC (the *Nielsen* litigation). *See* Trustee Br. at 26. In response to a request from its insurer, Pepper sent the insurer a thirty-four page letter (*see* B-82 to B-115), to which it attached, among other documents, a redacted version of the April 30 e-mail (*see* B-107). When Pepper subsequently produced the April 30 e-mail to the Trustee in this case, Pepper produced the e-mail without any redactions. *See* B-116. Thereafter, plaintiffs requested that Pepper produce copies of communications between Pepper and its insurers. As part of that production, Pepper produced the thirty-four page letter to its insurer, in its original format, with the redacted copy of the April 30 e-mail as an attachment to the letter. In its privilege log, Pepper explained the redaction by stating that the redactions on the e-mail reflected the manner in which the e-mail was produced to Pepper's insurer. Pepper also stated that it already had produced an un-redacted copy of the e-mail to the Trustee in this litigation and identified the Bates range for the produced document. Most important, Pepper indicated that *Pepper was not asserting any privilege as to the April 30 e-mail. See* B-16 (Privilege Log No. 105, with "Privilege Asserted" column left blank).[10] The Trustee's attempt to use the April 30, 2002 e-mail – *a document that Pepper did not withhold as privileged in this litigation* – to create the impression that Pepper's privilege designations are suspect is, at

---

[10]    Despite the fact that the Trustee had Pepper's privilege log for months before Grant's deposition, the Trustee raised this issue for the first time at his deposition.

best, misleading and, given the virtual certainty that the Trustee was aware of these facts, more likely disingenuous.[11]

      The Trustee also cites to a legal research memorandum prepared by former Pepper attorney Sheilah Gibson, who worked on SFC matters. *See* Trustee Br. at 27. Pepper withheld the memorandum as privileged because it appeared to constitute legal research relating to SMS. In fact, contrary to the Trustee's misrepresentation in his brief, the memorandum explicitly mentions SMS. *See* B-118, B-121 to B-122. Despite the fact that the Trustee had Pepper's privilege log for months before Gibson's deposition, the Trustee raised a question relating to the memorandum for the first time at Gibson's deposition. After reviewing a copy of the memorandum in private, Gibson confirmed that, although the memorandum discussed SMS, SFC was the client for whom she was performing the research contained in the memorandum. *See* B-129 to B-130. Therefore, Pepper agreed to produce the memorandum and did so during Gibson's deposition. The Trustee, notably, did not ask a single question about the memorandum after it was produced.

      The Trustee also cites to a November 29, 2000 e-mail that Pepper redacted to remove legal advice given to Yao, SMS and ECM. *See* Trustee Br. at 27-28.[12] As explained

---

[11]    The Trustee referred to the April 30, 2002 e-mail no doubt as an excuse to press substantive arguments (and to misrepresent the record) regarding the *Nielsen* litigation and Gagné's (or Pepper's) alleged awareness, as a result of Pepper's representation of SFC in the *Nielsen* litigation, of SFC's fraudulent activity. *See* Trustee Br. at 26-27. Contrary to the false impression created by the Trustee's discussion of this issue, Grant testified at his deposition that SFC never disclosed to him that it was making forbearance payments. *See* B-135. As for the statement of Konrad Smith, which the Trustee cites in his brief (at pp. 26-27), Grant testified that he did not focus on the statement, and did not discuss it with Gagné because it was not relevant to the claims in the *Nielsen* litigation. *See* B-136 to B-137. Grant also testified that Gagné was "minimally involved" in the *Nielsen* litigation, received only cursory reports about certain depositions, and was not routinely copied on documents relating to the litigation. *See* B-132, B-133, B-134, B-138 to B-139.

[12]    Despite the fact that the Trustee has had a copy of the redacted e-mail for months, the Trustee never contacted Pepper to question the redactions. Rather, in violation of

above, Pepper was required to withhold this material because Yao refused to waive the privilege for legal advice given to him on personal matters or matters relating to his non-SFC related companies or SFC-Affiliated Entities within his control.[13]   Again, Pepper does not object to providing such documents to the Court for *in camera* review if the Court believes such a procedure is necessary under the circumstances.[14]

Finally, the Trustee points to a redacted copy of a memorandum from Gagné to Wilcox in which Gagné responded to a request from Pepper's insurer to identify any information that could lead to a claim against Pepper.  Gagné's response referred to SFC as well as another non-SFC related matter.  Once again, although the Trustee had the documents in question for months, he did not raise with Pepper any issue relating to the redaction until the Wilcox deposition.  After the deposition, Pepper examined the document and discovered that it had mistakenly redacted the entire response, rather than just the portion of the response related to the non-SFC matter.  The mistakenly redacted portion reads, in its entirety, "The only two matters of which I am aware are the Student Finance Corporation transactions of which you are familiar and [correctly redacted portion].  With regard to the Student Finance Corporation action, two law suits have been filed in two different states and to date, we have not been named in either action. I am not certain as to whether we will be joined in the future."  *See* B-140.

---

Local Rule 7.1.1, the Trustee raised the redactions on the November 29, 2000 e-mail as an issue for the first time in the instant motion.

[13]    The Trustee also argues that, because Diane Messick, an employee of SFC, was copied on the e-mail, any privilege as to Yao, SMS and ECM was waived.  The Trustee cites no evidence to support his contention that Messick was not acting as an agent of Yao, SMS or ECM at the time.  Indeed, the very fact that she was copied on the e-mail suggests that she had some kind of agency relationship with Yao, SMS and ECM.  This particular question likely will be addressed at the deposition of Messick, which is scheduled to take place in mid-January 2007.

[14]    The Trustee once again uses his present unwarranted discovery motion as an excuse to advance unsupported arguments on the ultimate issues in this case.  Thus, the Trustee argues that the un-redacted portions of the November 29, 2000 e-mail indicate that Gagné was an insider of SFC.  Yet, the e-mail says no such thing.  More important, ultimately, is the fact that not a single one of the more than twenty individuals deposed in this case to date have offered any testimony suggesting that Gagné was an insider of SFC.

The Trustee has not explained how he has been prejudiced by the recent production of this material. Indeed, although the Trustee attempts to create the false impression that he was somehow prejudiced by the production of this innocuous material after Wilcox was deposed (Trustee Br. at 25), the Trustee's actions speak louder than his words; the Trustee has never requested that Pepper produce Wilcox again to answer questions about the previously-redacted and innocuous material. Like the other documents cited by the Trustee, this memorandum simply does not support the Trustee's implication that Pepper is improperly hiding information from the Trustee under the guise of the attorney-client privilege.

III.    THE TRUSTEE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS RELATING TO GAGNÉ'S COMPENSATION IS MOOT.

As outlined above, Pepper does not possess documents responsive to the Trustee's request for documents "sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné by Pepper Hamilton." B-36. Pepper does not apply a formulaic approach to partner compensation. Pepper does, however, use data regarding the total chargeable hours worked for each attorney and the total amount of billed and collected fees for each partner as originating lawyer, billing lawyer, and supervising lawyer as part of its process for determining partner compensation. None of this data is broken down by client or matter. After Duncan Grant testified at his deposition that this combined data is provided to Pepper's compensation committee, the Trustee's counsel again requested, in a letter to Pepper's counsel, documents "sufficient to identify and establish the effect of the fees received from SFC on the compensation paid to Roderick Gagné." B-59. Three business days later, before Pepper's counsel could respond to the Trustee's counsel's letter, the Trustee filed this motion, seeking the same information. Although, as explained repeatedly to the Trustee's counsel and set forth above, the requested data does not exist, Pepper produced to the Trustee on

November 10, 2006, the combined data that Grant described. *See* B-60. Therefore, the Trustee's motion to compel the production of such data is moot.

## CONCLUSION

For the foregoing reasons, Pepper respectfully requests that the Court deny the Trustee's motion to compel as unsupported and moot, but, to the extent the Court deems it advisable, Pepper does not object to the Trustee's request that the Court conduct an *in camera* review of Pepper's withheld documents.

Dated: November 28, 2006
       Wilmington, Delaware

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                _____
                                William H. Sudell, Jr., Esq. (No. 0463)
                                Donna L. Culver (No. 2983)
                                Daniel B. Butz (No. 4227)
                                1201 North Market Street
                                P.O. Box 1347
                                Wilmington, Delaware 19899-1347
                                (302) 658-9200
                                (302) 658-3989 (facsimile)

                                - and -

                                Elizabeth K. Ainslie, Esq.
                                Nicholas J. LePore, III, Esq.
                                Bruce P. Merenstein, Esq.
                                Stephen J. Shapiro, Esq.
                                SCHNADER HARRISON SEGAL & LEWIS LLP
                                1600 Market Street, Suite 3600
                                Philadelphia, Pennsylvania 19103
                                (215) 751-2000
                                (215) 751-2205 (facsimile)

                                *Counsel for defendant Pepper Hamilton LLP*
                                *and W. Roderick Gagné*

547149