UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STUDENT FINANCE CORPORATION<br><br>    Debtor.<br><br>CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON, LLP, et al.,<br><br>    Defendants. | Civil Action No.: 04-1551 (JJF) |

**REPLY BRIEF OF THE TRUSTEE IN SUPPORT OF HIS MOTION TO COMPEL**

Michael S. Waters, Esq.
Lois H. Goodman, Esq.
Candice E. Chesson, Esq.
MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Daniel K. Astin, Esq. (No. 4068)
Mary E. Augustine, Esq. (No. 4477)
THE BAYARD FIRM
222 Delaware Avenue
Suite 900
Wilmington, Delaware 19899

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................. -ii-

ARGUMENT

    POINT I

        THE COURT SHOULD REQUIRE PEPPER TO PRODUCE
        DOCUMENTS SUFFICIENT TO CALCULATE THE
        EFFECT OF SFC FEES ON THE COMPENSATION OF
        RODERICK GAGNÉ ................................................. 1

    POINT II

        THIS COURT SHOULD ORDER AN *IN-CAMERA*
        INSPECTION OF THE DOCUMENTS LISTED ON
        PEPPER'S PRIVILEGE LOG, IN PART BY CONSENT,
        AND ORDER THAT THE BURDEN OF ESTABLISHING
        THE PRIVILEGE RESTS ON THE PARTY HOLDING
        THE PRIVILEGE ................................................. 4

        A.    THE REQUESTED ORDER SHOULD BE ENTERED ............. 4

        B.    PEPPER'S CHARGES OF MISREPRESENTATION
               AGAINST THE TRUSTEE ARE UNFOUNDED ................. 8

CONCLUSION ................................................. 11

# TABLE OF AUTHORITIES

United States v. Bump,
    605 F.2d 548 (10th Cir. 1979) .................................... 5

United States v. Schwimmer,
    892 F.2d 237 (2d Cir. 1989) ..................................... 6

In re Grand Jury Matter,
    147 F.R.D. 82 (E.D. Pa. 1992) ................................... 6

Gilliland v. Geramita,
    2006 U.S. Dist. LEXIS 65546 (W.D. Pa. Sept. 14, 2006) ........... 7

## ARGUMENT

### POINT I

### THE COURT SHOULD REQUIRE PEPPER TO PRODUCE DOCUMENTS SUFFICIENT TO CALCULATE THE EFFECT OF SFC FEES ON THE COMPENSATION OF RODERICK GAGNÉ

On May 8, 2006, the Trustee requested that Pepper Hamilton LLP and Roderick Gagné, (collectively "Pepper") produce documents sufficient for a determination of the effect of the fees received from SFC (broadly defined to include SFC and its related entities and individuals) on the compensation of Roderick Gagné. This request was based on allegations in the Amended Complaint regarding malpractice and breach of professional responsibilities, involving Gagné's representation of conflicting interests, including those of his own family. One element of the economic impact of those conflicting representations was the proceeds of transactions by his family with SFC. Another was the fees associated with the representation of SFC, a consideration he listed first in his catalog of concerns at the time Pepper determined to resign from its representation of SFC. (Pepper Appendix B-80)

That request for discovery was met with a stone wall in the form of a statement that no such documents exist. As indicated in the Trustee's brief in support of this motion, it was disclosed at the deposition of Duncan Grant that Pepper's compensation of Mr. Gagné was indeed based upon his total billings, originations and hours worked. As one might expect, Pepper is able to determine what portion of those numbers was attributable to SFC, and certainly Mr. Gagné was aware of his billings and originations and where they came from. After the Grant deposition, the Trustee reiterated the request for documents sufficient to determine the impact of SFC fees on Mr. Gagné's compensation. (Trustee Appendix C-1). Notwithstanding the disclosure at the deposition, Pepper

1

belatedly produced only the document submitted to the Pepper Compensation Committee, without documents sufficient to break down those numbers to show the portion attributable to the SFC clients; Pepper continued to maintain that no documents responsive to the request existed. (Trustee Appendix C-2). They made the same assertion to this Court. (Pepper brief at 3).

In response to the Trustee's repeated requests (Trustee Appendix C-3) and this motion, on December 5, Pepper made another production limited to selected data showing the breakdown of certain SFC billings and their impact on Gagné's originations at the firm. (Trustee Appendix C-5;C-7). To this date, Pepper has still failed to produce the resulting compensation to Mr. Gagné or the firm's billings to Mr. Yao or any SFC related entities other than SLS and SMS. The other billings will produce an accurate percentage, which, when applied to the dollar amount, will allow comparison with the profits Gagné received through his wife and related trusts on the loan transactions with SFC.

Although the data now produced shows that originations from Student Finance Corporation at times ranged as high as 70% of the originations and collections upon which Mr. Gagné's performance was assessed, Pepper still maintains that these documents are not responsive to the request because the Pepper Compensation Committee does not review this client data when it determines the compensation of its partners, including Mr. Gagné. (Trustee Appendix C-5). Such an argument is a mere contrivance, to avoid admitting that these documents should have been produced before, since it is obvious that Mr. Gagné, who prepared all of the bills, well knows the source of his originations. The Court can determine that the position relied on by Pepper, that the Compensation Committee did not know what portion of Mr. Gagné's activities were attributable to SFC, is not a valid basis to claim that there are no documents from which the impact of SFC's fees

2

on Mr. Gagné's compensation can be determined. Because Pepper has offered no other objection to the request in its reply, the Court should order that documents sufficient to determine the effect on compensation, as described above, be produced.

## POINT II

### THIS COURT SHOULD ORDER AN *IN-CAMERA* INSPECTION OF THE DOCUMENTS LISTED ON PEPPER'S PRIVILEGE LOG, IN PART BY CONSENT, AND ORDER THAT THE BURDEN OF ESTABLISHING THE PRIVILEGE RESTS ON THE PARTY HOLDING THE PRIVILEGE

A.     The Requested Order Should be Entered

By his motion, the Trustee respectfully asks the Court to order Pepper to submit the documents as to which it has asserted a claim of privilege for *in-camera* review. This request arises in part out of a history of documents that were withheld from production on the grounds of privilege, but which were subsequently determined not to be privileged. The Trustee believes there is the need for an impartial determination of privilege, and Pepper does not object as to certain documents.[1]

Notwithstanding the Court's early indication to counsel that the party owning the privilege should be the one to assert and defend it (Trustee's Appendix B-314, 316), Pepper argues that it sees no need for *in-camera* review, and intimates that it will continue to vigorously fight on Mr. Yao's behalf to avoid the production of his documents. The Trustee has attempted to avoid this fight by suggesting a mechanism in the Order for appropriate notice to the parties having ownership of the privilege, to allow them to take action to resist if they so desire. By opposing this mechanism,

---

[1] At the same time that they say they will produce certain documents for *in-camera* review if ordered to do so, Pepper contends that it was always ready to allow inspection of certain documents. In its papers, Pepper says that it will consent to an order for the *in-camera* review of documents numbered 1, 2, 8, 10, 13-31, 33-68, 72-97, 99-100, and 152 on its privilege log, and the Trustee has amended its proposed form of order accordingly. Pepper should also be required to produce for *in-camera* review documents on its log numbered 135-36, 141-42 and 146, which concern Mr. Gagné's presentation to the Compensation Committee. Pepper argues that the firm's later-dated communications with its insurance carrier should be excluded from *in-camera* review (Pepper brief at. 8), and the Trustee accepts that exclusion. Accordingly, those communications are not in the Trustee's revised proposed form of order.

4

Pepper creates the vise that will continue to hamper the discovery process in depositions in this matter.

The need for such relief becomes apparent in one of the examples cited in the briefs: the e-mail among Gagné, Messick and Yao. The Trustee views this exchange as potentially important for the deposition of Mr. Gagné and others, because it appears to indicate Mr. Gagné's insider status by his directing financial payments by SFC. See Trustee's Appendix B-245. The Trustee has waived any privilege SFC might have with regard to its representation by Pepper, and has asked that the entire e-mail be produced. During the relevant time frame, Ms. Messick was an employee of SFC; she was not employed by Mr. Yao, and her being copied on the communication would destroy any privilege that might otherwise arguably exist between Pepper and Mr. Yao. Nonetheless, Pepper has refused to produce an unredacted version of the communication, arguing that Ms. Messick might conceivably have acted as an agent for Mr. Yao or a related entity. Pepper suggests, at page 11 of its brief, that the inquiry can be left until Ms. Messick's deposition, at which time counsel can explore this newly created agency theory. This leaves the Trustee at a distinct disadvantage in this deposition, and throughout the discovery process. The document contains other material shared by the three participants and therefore known to Mr. Gagné and Ms. Messick prior to their depositions but unknown to the attorneys who will be examining them.

Moreover, such an argument is quite a stretch. "[T]he burden of proving the confidentiality of the communication rests on the party asserting the privilege." United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979). As such, the party claiming the attorney-client privilege in the context of agency relationship would have to prove that the third party is in fact an agent of the client. Although no explicit test has been devised by courts as to what constitutes an agent, courts have held

5

that the presence of an agent must be for a specific purpose and that the communications between the attorney and the client are relevant to the role of the agent. See United States v. Schwimmer, 892 F.2d 237 (2d Cir. 1989). Moreover, the party asserting the privilege would have to prove that the communication's purpose is to obtain legal advice from an attorney. See In re Grand Jury Matter, 147 F.R.D. 82, 85 (E.D. Pa. 1992). Here, there is no indication whatsoever that Diane Messick was acting as the agent for Andrew Yao or any entity other than SFC when she was copied on the e-mail from Andrew Yao to Roderick Gagné. Rather, there is only Pepper's speculation that there could be a basis for the privilege to exist. Again, this highlights the mischief that is done when the party asserting the privilege is someone other than the one who holds it.

Another example apparent from the log is the assertion of privilege on behalf of entities that no longer exist. Pepper has included on its log documents that relate to advice allegedly given to SMS, SLS, and other entities related to SFC, in which Andrew Yao and others (including SFC) had ownership interests. Because SFC was a partial owner of SLS, the Trustee's counsel wrote to Pepper seeking production of documents relating to work for SLS (Trustee Appendix B-321). Pepper refused. These documents, however, are directly relevant to the allegations in the Amended Complaint. In Count I, which alleges that Pepper breached its fiduciary obligations to SFC, the Trustee alleges that Pepper's involvement in the creation of, and its representation of, SLS and SMS was in direct violation of its responsibilities to SFC. See paragraphs 185-195 of Amended Complaint. The records produced by Pepper reveal that SFC was billed for Pepper's representation of SLS and SMS. Thus, Pepper argues that advice given to Andrew Yao (the principal of SFC) in setting up SLS (of which SFC was a 30% owner) is privileged, even though it billed SFC for that advice; Pepper refuses to give SFC access to information relating to the representation.

6

Pepper also insists that the Trustee has refused to waive the privilege with regard to these entities. Pepper Brief at 7. In fact, the Trustee would willingly waive any privilege he holds with regard to those entities but because he is not the trustee for them, does not believe he has the authority to do so. It is clear, however, that a number of the entities in question, such as SLS, SMS and ECM, no longer are in operation. Pepper Brief at 6 and Appendix at B-69 and B-71. See Gilliland v. Geramita, 2006 U.S. Dist. LEXIS 65546, *12 (W.D. Pa. Sept. 14, 2006) ("the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause.").

Pepper's brief raises the likelihood that instead of placing the documents in court to allow the party seeking production and the party asserting the privilege to present their proofs for resolution of the privilege issues, Pepper will itself vigorously assert a privilege on behalf of Mr. Yao, which will result in continued foreclosure of production of the full document on which its partner will be examined. The Trustee asks the Court to recognize that the burden lies with the party owning the privilege to establish its application, and has proposed the use of a subpoena, which the Trustee would serve on Pepper, with notice to Andrew Yao. The Court could instead direct counsel to submit an Order to Show Cause to Mr. Yao, which would similarly allow for the resolution of this issue. What the Trustee urges the Court not to allow is a situation in which Pepper continues to assert a privilege on behalf of clients that have not appeared, no longer exist, or may not be able to establish the basis for a privilege as to many of the documents Pepper has withheld.

Pepper's claim that information given by Mr. Gagné to Mr. Wilcox is also foreclosed from discovery by the attorney-client privilege raises other questions that will have to be resolved on the examination of the documents. Pepper claims that the May 15, 2002 memorandum and similar

7

communications between Wilcox and Gagné are unquestionably privileged. However, it is not possible to determine whether the attorney-client privilege applies to these documents absent an *in-camera* review. Some of the information contained in the documents may be factual or unrelated to legal advice, and therefore discoverable. Mr. Wilcox wears at least two hats and receives information as Chairman of Pepper's Professional Responsibility Committee.

### B. Pepper's Charges of Misrepresentation Against the Trustee are Unfounded

After claiming there is no issue in dispute, Pepper gratuitously argues that the Trustee made misrepresentations in his moving brief. The claim is based on two charges. First, Pepper correctly notes that the Trustee has not sought to re-depose witnesses or proven prejudice arising from documents withheld from production and then later produced after Pepper recognized that the information was not in fact privileged. Pepper then incorrectly concludes that by not seeking to re-depose the witness or claiming prejudice, the Trustee has somehow conceded that the materials did not have to be produced in the first place. This is circular logic at its best. Pepper did not refuse to produce the documents in question based on relevance but rather, on the basis of a privilege that turned out to be unsupported. The Trustee referenced those documents as examples of the need for *in-camera* review because of the concern that Pepper's overly broad designation of material as privileged could extend to other documents.

Second, in its most strongly worded accusation, Pepper charges the Trustee of blatant misrepresentation in telling the Court that Pepper had asserted a claim of privilege as to the redacted portion of the Duncan Grant e-mail. Pepper Brief at 9-10. Pepper contends in its brief that it had fully disclosed and "explained" that Pepper was not asserting a privilege as to this document, and

8

that this fact must have been apparent to the Trustee because there was a blank in one of the boxes on their privilege log. Pepper then accuses the Trustee of being "disingenuous" to argue otherwise.

Fortunately, there is a written record to the contrary. At the Duncan Grant deposition, before examining the witness on the document, the Trustee's counsel stated that both a redacted and unredacted copy had been produced and specifically asked counsel for Pepper to state whether this was an intentional or an inadvertent production. If it was an intentional production, the examination on the document could continue. If it was an inadvertent production, as to which a privilege was claimed, Pepper was entitled to a return of the document with no examination. At that point in time, the Pepper group conferred. It consisted of Ms. Ainslee and Mr. Shapiro, counsel for Pepper, and Mr. Wilcox, the Pepper "General Counsel." The following colloquy and stipulation took place on the record:

> MR. WATERS: I just want to ask you, and I don't mind doing it on the record, I had a redacted copy, and then I have an unredacted copy. I think you unredacted that. I just want to make sure before I mark it.
>
> MS. AINSLIE: Can I consult with Mr. Wilcox?
>
> \*\*\*
>
> MS. AINSLIE: Mike, are you going to state the agreement on 312?
>
> MR. WATERS: Just to be very brief, a redacted and unredacted copy of Exhibit 312 was produced. It apparently was an inadvertent production, not intended to waive any privilege, but upon review of the document, all counsel have agreed to stipulate that we may examine on the unredacted document, and that will not be considered a waiver of the privilege.
>
> MS. AINSLIE: Thank you.
>
> MR. WATERS: Just for purposes of this examination.

9

        MS. AINSLIE: Thank you.

(Trustee Appendix C-8 through C-11).

        As Pepper represented that the production had been inadvertent, that a privilege was claimed but they would allow examination on the document without waiver of the privilege, the Trustee so argued in the brief. The harsh charge of wilful "misrepresentation" is completely unfounded.

10

## CONCLUSION

For the foregoing reasons, Charles A. Stanziale, Jr., as Chapter 7 Trustee for Debtor Student Finance Corporation, respectfully submits that the motion to compel discovery should be granted.

Respectfully submitted,

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

By: _____
Michael S. Waters
Attorneys for Charles A. Stanziale, Trustee

Dated: December 11, 2006

11