**EXHIBIT F**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2223252 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Syngenta Seeds, Inc. v. Monsanto Co.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
SYNGENTA SEEDS, INC., Plaintiff,
v.
MONSANTO COMPANY, Dekalb Genetics Corp., Pioneer Hi-Bred International, Inc., Dow Agrosciences, LLC, and Mycogen Plant Science, Inc. and Agrigenetics, Inc., collectively d.b.a. Mycogen Seeds, Defendants.
No. 02-1331-SLR.

Sept. 27, 2004.

Paul M. Lukoff, Prickett, Jones & Elliott, Wilmington, DE, for Plaintiff.
Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

MEMORANDUM ORDER
ROBINSON, J.
*1 At Wilmington this 27th day of September, 2004, having reviewed defendant Pioneer Hi-Bred International, Inc.'s ("defendant's") motion to disqualify Dr. Michael Lee as an expert witness;

IT IS ORDERED that defendant's motion (D.I.249) is denied for the reasons that follow:

1. On July 25, 2002, plaintiff Syngenta Seeds, Inc., filed a complaint alleging defendant infringed three of its patents. (D.I.1)

2. In October of 2002, defendant brought suit against plaintiff, alleging misappropriation of defendant's corn germplasm. (D.I.257) This suit, titled *Pioneer Hi-Bred International, Inc. v. Syngenta Seeds, Inc.,* was brought in the Southern District of Iowa (the "Iowa Litigation"). (D.I.253)

3. Shortly after defendant initiated the Iowa Litigation, Lindley Brenza, counsel for defendant, contacted Dr. Michael Lee to discuss the prospect of Dr. Lee serving as an expert for defendant in the Iowa Litigation. (D.I. 257 at 2)

4. On February 4, 2003 Brenza sent Dr. Lee a letter purporting to be a consultation agreement. (D.I.250, ex. A) In this letter Mr. Brenza stated, "If the foregoing accurately sets forth the terms of your engagement, please confirm your agreement by signing and returning a copy of this letter." (D.I.250, ex. A-1) Dr. Lee never signed or returned this letter, and likewise ignored follow-up phone calls from Mr. Brenza. (D.I. 257 at 2)

5. On May 19th, 2004 plaintiff retained Dr. Lee as a consultant in the present litigation. (D.I.250, ex. B) In response defendant filed the present motion to disqualify Dr. Lee as an expert witness adverse to defendant. (D.I.249) Defendant claims Dr. Lee's work for plaintiff creates a conflict of interest because of: (1) Dr. Lee's previous involvement, on behalf of defendant, in the Iowa Litigation; (2) Dr. Lee's previous involvement in other litigations involving the defendant; [FN1] (3) Dr. Lee's extensive dealings with defendant as a research collaborator; and (4) confidential information Dr. Lee received from all of his interactions with defendant. (D.I. 250 at 1) Defendant argues that Dr. Lee should be disqualified because defendant had an objectively reasonable expectation of confidentiality and because Dr. Lee received privileged and confidential information from defendant. (*Id.* at 6)

FN1. Dr. Lee served as a consultant for defendant in unrelated litigations titled *Pioneer Hi-Bred International v. Asgrow Seed Co .* and *Pioneer Hi-Bred International v. DeKalb Genetics Corp..* (D.I. 250 at 3)

6. Plaintiff contends, however, that defendant does not have an on-going confidential relationship with Dr. Lee and that defendant cannot demonstrate that Dr. Lee was ever in possession of any confidential information belonging to defendant that is relevant to the current proceedings. (D.I. 253 at 4) As a result, plaintiff argues that Dr. Lee should not be disqualified as plaintiff's expert in this case.

7. Federal courts have the inherent power to disqualify experts. *Koch Ref. Co. v. Jennifer L. Boudreaux M/V,* 85 F.3d 1171, 1181 (5th Cir.1996) *Crenshaw v. Mony Life Ins. Co.,* 318 F.Supp.2d 1015, 1026 (S.D.Cal.2004); *Grant Thornton, LLP v. F.D.I.C.,* 297 F.Supp.2d 880, 881-82 (S.D.W.Va.2004); *Stencel v. Fairchild Corp.,* 174 F.Supp.2d 1080, 1083 (C.D.Cal.2001); *United States*

Case 1:04-cv-01551-JJF    Document 232-7    Filed 05/11/2007    Page 3 of 4

Not Reported in F.Supp.2d                                              Page 2
Not Reported in F.Supp.2d, 2004 WL 2223252 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*ex rel., Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.,* 994 F.Supp. 244, 248 (D.N.J.1997); *Hansen v. Umtech Industrieservice Und Spedition, Gmbh,* Civ. No. 95-516, slip op. at 3 (D.Del. July 3, 1996). However, disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1993); *Grant Thornton,* 297 F.Supp.2d at 882; *United States v. Salamanca,* 244 F.Supp.2d 1023, 1025 (D.S.D.2003); *see also Palmer v. Ozbek,* 144 F.R.D. 66, 67 (D.Md.1992) ("Courts are generally reluctant to disqualify expert witnesses.").

*2 8. Courts have adopted a two-part inquiry to determine whether disqualification of an expert is necessary: (1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert. *Crenshaw,* 318 F.Supp.2d at 1026; *Mays v. Reassure Am. Life Ins. Co.,* 293 F.Supp.2d 954, 957 (E.D.Ark.2003); *Hansen v. Umtech Industrieservice Und Spedition, Gmbh,* Civ. No. 95-516, slip op. at 4 (D.Del. July 3, 1996). If only one of these two factors is present, disqualification likely is inappropriate. *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D. 426, 428 (E.D.Pa.2001); *Wang Labs., Inc. v. Toshiba Corp.,* 762 F.Supp. 1246, 1248 (E.D.Va.1991) ("But disqualification is likely inappropriate if either inquiry yields a negative result."); *Hansen v. Umtech Industrieservice Und Spedition, Gmbh,* Civ. No. 95-516, slip op. at 4 (D.Del. July 3, 1996). The party moving for disqualification bears the burden of proof with respect each of these factors. *Koch Ref. Co. v. Jennifer L. Boudreaux M/V,* 85 F.3d 1171, 1181 (5th Cir.1996); *Rodriguez v. Pataki,* 293 F.Supp.2d 305, 32 (S.D.N.Y.2003) (requiring the moving party to proffer evidence and stating that a conclusory assertion is insufficient); *Larson v. Rourick,* 284 F.Supp.2d 1155, 1156 (N.D.Iowa 2003). In analyzing the disqualification issue, courts also balance competing policy objectives and concerns for fundamental fairness. *Koch,* 85 F.3d at 1182; *Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 580 (D.N.J.1994).

9. Although several opinions have analyzed the issue of expert disqualification, none of these rulings are binding precedent in the present matter. Nevertheless, existing persuasive authority points to the conclusion that Dr. Lee should not be disqualified.

10. In determining the reasonableness of a party's conclusion that a fiduciary relationship existed, courts consider several factors, including: (1) the length of the relationship and the frequency of contact; (2) whether the moving party funded or directed the formation of the opinion to be offered at trial; (3) whether the parties entered into a formal confidentiality agreement; (4) whether the expert was retained to assist in the litigation; (5) whether the expert was paid a fee; and (6) whether the expert was asked to agree not to discuss the case with opposing parties or counsel. *Stencel,* 174 F.Supp.2d at 1083 (C.D.Cal.2001); *Mayer v. Dell,* 139 F.R.D. 1, 3 (D.D.C.1991); *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 280 (S.D.Ohio 1988).

11. With respect to the present litigation, the length of the relationship and the amount of contact between Dr. Lee and defendant was limited. According to Dr. Lee, "Prior to being retained by [plaintiff], I was not retained or contacted by [defendant] to act as an expert in connection with the present litigation." (D.I. 254 at B002) Some courts have found an implied confidential relationship based on a "long-standing series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operations, decision making-process, and the like." *Koch,* 85 F.3d at 1182. Defendant claims that in the past, Dr. Lee collaborated with defendant on numerous research projects over many years; that Dr. Lee consulted with defendant on two separate litigations; and that Dr. Lee was retained by defendant in the Iowa Litigation. (D.I. 250 at 2-3) Dr. Lee, however, describes his research with defendant as "several minor research projects" over the last several years. (D.I. 254 at B003) Furthermore, Dr. Lee described his consulting with defendant in the previous two litigations as consisting of reviewing documents and spending a few days preparing for his deposition. (D.I. 254 at B003) Finally, Dr. Lee claims that he never accepted defendant's offer to serve as an expert in the Iowa Litigation. Based on these conflicting representations, defendant has not shown that it is more likely than not that Dr. Lee developed a basic understanding of defendant's modus operandi, patterns of operations, and decision making-process. Consequently, the court concludes that the duration of the relationship and the frequency of contacts does not establish that defendant had an objectively reasonable belief that it had a confidential relationship with Dr. Lee.

*3 12. The remaining factors also indicate a lack of an objectively reasonable expectation of a

confidential relationship. First, defendant did not fund Dr. Lee's opinion in the present matter. Second, Dr. Lee and defendant did not enter into a formal confidentiality agreement for the present matter.[FN2] Third, Dr. Lee was not retained to assist in the present litigation. Fourth, defendant did not pay Dr. Lee a fee for the present litigation. Finally, in connection with the present litigation, Dr. Lee was not asked to agree not to discuss the case with plaintiff.[FN3] Consequently, the court concludes that it was not objectively reasonable for defendant to conclude that it had a fiduciary relationship with Dr. Lee.

> FN2. Even in the Iowa Litigation, Dr. Lee did not enter into a formal confidentiality agreement with defendant. In that litigation Lindley Brenza, counsel for defendant, sent Dr. Lee a "retention letter" which defendant asked Dr. Lee to sign and return if he agreed to consult with defendant. (D.I.250, ex. A) Dr. Lee never signed or returned the letter. (Id.)

> FN3. In the Iowa Litigation, Dr. Lee was asked, in the retention letter from Lindly Brenza, to preserve the confidentiality of defendant's proprietary information. (D.I.250, ex. A) However, this was a separate litigation and, furthermore, Dr. Lee did not sign or return this letter, manifesting his refusal to agree to the terms of the retention letter.

13. Even if defendant had established a reasonable expectation of a fiduciary relationship with Dr. Lee, it did not establish that confidential information has been exchanged. Confidential information, in the context of expert disqualification, includes discussion of: litigation strategy, the kinds of experts the party expects to retain, views on the strengths and weaknesses of each side, the role of each witness, and anticipated defenses. Cherry Hill, 994 F.Supp. at 250 (quoting Koch Refining Co., 85 F.3d at 118). Defendant has the burden of pointing to specific and unambiguous confidential disclosures that it made to Dr. Lee. Mays, 293 F.Supp.2d at 957; Cherry Hill, 994 F.Supp. at 251 (refusing to disqualify an expert because "[t]he defendants [did] not submit[ ] any evidence to the court to suggest that [confidential communications or documents pertaining to litigation] were ever exchanged between [defendant] and [the expert]."); In re Ambassador Group, Inc. Litig., 879 F.Supp. 237, 243 (E.D.N.Y.1994). Defendant fails to point to any specific confidential communications that were shared with Dr. Lee. Defendant claims that Dr. Lee received confidential know-how and proprietary materials from defendant through research collaborations and litigation preparation. (D.I. 250 at 8-9) Defendant also points to "the evident exchange of confidential information that took place and that is inevitably a part of preparing a witness for deposition." (D.I. 257 at 10) Neither of these allegations identify specific confidential information defendant gave to Dr. Lee or explain how this information relates to the present matter. As a result, defendant has not satisfied its burden of showing confidential information was shared with Dr. Lee.

14. Finally, this court finds that policy considerations balance in favor of recognizing Dr. Lee. The policy considerations favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. English Feedlot, Inc. v. Norden Labs., Inc., 833 F.Supp. 1498, 1505 (D.Colo.1993). The policy considerations militating against disqualification are ensuring that parties have access to qualified expert witnesses and allowing experts to pursue their professional calling. Id. The court does not believe that allowing Dr. Lee to serve as an expert adverse to defendant creates a conflict of interest or that it challenges the integrity of the judicial process. The court has already found that Dr. Lee's previous work with defendant does not create a conflict of interest. Furthermore, Dr. Lee made a conscious decision to turn down the consulting position with defendant in the Iowa Litigation and take the position with plaintiff in this case. As a result, the policy consideration of allowing experts to pursue their professional calling marshals in favor of recognizing Dr. Lee.

*4 15. In light of the forgoing, the court denies defendant's motion to disqualify Dr. Lee. (D.I.249)

D.Del.,2004.
Syngenta Seeds, Inc. v. Monsanto Co.
Not Reported in F.Supp.2d, 2004 WL 2223252 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.