UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:                                              :
STUDENT FINANCE CORPORATION,                        :
      Debtor,                                      :
                                                    :
_____            :
                                                    :
CHARLES A. STANZIALE, JR.,                          :
CHAPTER 7 TRUSTEE OF STUDENT                        :
FINANCE CORPORATION,                                :
                                                    :
        Plaintiff,                               :
                                                    :    Civil Action No. 04-1551(JJF)
    v.                                           :
                                                    :
PEPPER HAMILTON LLP, et al.,                        :
                                                    :
      Defendants.                                  :
_____            :

## APPENDIX OF UNREPORTED CASE CITED IN THE BRIEF IN RESPONSE TO MOTION BY PLAINTIFF FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

Charles A. Gilman
David G. Januszewski
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, NY 10005
(212) 701-3000
(212) 269-5420 (facsimile)

*Counsel for defendant Pepper Hamilton LLP*

May 18, 2007

## TABLE OF CONTENTS

**EXHIBIT**

*CC Investors Corp. v. Raytheon Co.*, No. 03-114,
2005 U.S. Dist. LEXIS 6893 (D. Del. Apr. 22, 2005) .................................................................A

*Corning Inc. v. SRU Biosystems*, No. 03-633,
2006 U.S. Dist. LEXIS 1896 (D. Del. Jan. 20, 2006) ..................................................................B

*Leonard v. Univ. of Del.*, No. 96-0360,
2002 U.S. Dist. LEXIS 12583 (D. Del. July 9, 2002) ..................................................................C

*Miller v. Computer Sciences Corp.*, No. 05-10,
2006 U.S. Dist. LEXIS 48746 (D. Del. July 14, 2006) .................................................................D

*Royal Indemnity Co. v. Pepper Hamilton LLP*, No. 05-165,
2007 U.S. Dist. LEXIS 20797 (D. Del. Mar. 22, 2007) ...............................................................E

*Thompson v. Glenmede Trust Co.*, No. 92-5233,
1993 U.S. Dist. LEXIS 7677 (E.D. Pa. Jun. 8, 1993) ..................................................................F

A

1 of 1 DOCUMENT

**CC INVESTORS CORP., on behalf of itself and all others similarly situated, Plaintiff, v. RAYTHEON COMPANY, RAYTHEON TRAVEL AIR COMPANY, FLIGHT OPTIONS, LLC, and FLIGHT OPTIONS INTERNATIONAL, INC., Defendants.**

**Civil Action No. 03-114-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 6893*

**April 22, 2005, Decided**

**PRIOR HISTORY:** *CC Investors Corp. v. Raytheon Co., 2005 U.S. Dist. LEXIS 435 (D. Del., Jan. 7, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant companies alleging claims for breach of contract and common law fraud that allegedly resulted from a business combination between two of the companies. which resulted in the formation of a third company. Plaintiff moved for class certification pursuant to *Fed. R. Civ. P. 23* and moved to amend its amended complaint pursuant to *Fed. R. Civ. P. 15.*

**OVERVIEW:** Plaintiff failed to demonstrate that common questions of law and fact predominated with regard to the common law fraud claims because a significant number of individualized questions existed related to the issues of reliance, waiver and choice of law. Although the question of justifiable reliance was not always a bar to class certification, numerous fact questions existed which required a plaintiff-by-plaintiff analysis. Choice of law questions existed with respect to the common law fraud claims. The breach of contract claims also raised a significant number of individualized legal and factual issues. Because plaintiff's breach of contract claim against one of the companies was based

upon a legal predicate different than that of the vast majority of the proposed class members, plaintiff could not establish the typicality element requirement for class certification. With regard to the request to amend the compliant, depositions had not been conducted and documents had been gathered but not produced which suggested a "borderline" scenario; therefore, the court would err in favor of allowing plaintiff to amend.

**OUTCOME:** Plaintiff's motion for class certification was denied. Plaintiff's request for leave to amend its amended complaint was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN1] The party seeking class certification bears the burden of establishing that certification is warranted under the circumstances. *Fed. R. Civ. P. 23* sets forth the requirements for certification of a class. Pursuant to Rule 23(a), four requirements must be met in order for a class to be certified. These requirements are: (1) the class is so numerous that joinder of all members is impracticable,

  

(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN2] In addition to the four requirements of *Fed. R. Civ. P. 23(a)*, a plaintiff seeking class certification must also satisfy one of the three requirements in *Fed. R. Civ. P. 23(b)*. Rule 23(b)(3) requires the court to find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN3] *Fed. R. Civ. P. 23(b)(3)* requires the party seeking class certification to prove that common issues of law and fact predominate over any issues that may be particular to individual class members. In this regard, the court must examine whether the class is sufficiently cohesive to warrant certification. The predominance requirement is not met when there exists a great number of significant questions peculiar to the individual members of the class.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN4] *Fed. R. Civ. P. 23(b)(3)* requires the party moving for class certification to demonstrate the class action is superior to other methods of adjudicating the controversy. The superiority inquiry is related to the question of whether common questions of law and fact predominate because, the greater the number of individual issues that exist, the less likely superiority can be established. If the requirements of Rule 23(b)(3) cannot be satisfied, the court need not address the *Fed. R. Civ. P. 23(a)* requirements of numerosity, commonality, typicality and adequacy of representation.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > Significant Relationships*
*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview*
[HN5] To determine which law applies, a federal court, sitting in diversity, needs to apply a state's choice of law rule where the injury occurred, which is referred to as the "most significant relationship test." The most significant relationship test places considerable emphasis on the place where the injury occurred.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN6] Choice of law questions do not bar class certification unless the differences in the state law constitute "insuperable obstacles," and an "extensive analysis" of the state law variations is required for the court to make this determination.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN7] To satisfy the typicality requirement, the plaintiff must show that the class representatives are part of the class and "possess the same injury" as the class members. A representative's claim is typical if it arises from the same event, practice, or conduct that gives rise to the claim of the other class members, and is based on the same legal theory. The purpose of the typicality requirement is to ensure that the interests of the named plaintiffs are aligned with the absent members of the class, so as to ensure that the absent members of the class will be fairly represented in the litigation.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN8] For purposes of determining whether adequacy of representation has been satisfied, a court may find antagonism between the interests of the plaintiffs and those of the class when the defendants assert unique defenses against the named plaintiff, or when the

  

plaintiff's situation is unique.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*

[HN9] Pursuant to *Fed. R. Civ. P. 15*, leave to amend shall be freely given when justice so requires. Denial of leave to amend is reviewed for an abuse of discretion. Leave to amend should be granted, unless the plaintiff's delay in seeking amendment is undue made in bad faith, prejudicial to the opposing party, or the amendment fails to cure the jurisdictional defect. Ordinarily the passage of time alone is not sufficient to deny leave to amend and a showing of prejudice is required.

*Contracts Law > Performance > Novation*

[HN10] An obligor is discharged by substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent to the substitution, forming a novation. The existence of a novation may be inferred, like any other contract, from the facts, circumstances and conduct of the parties.

**COUNSEL:** [*1] Barry M. Klayman, Esquire and Todd C. Schiltz, Esquire of WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP, Wilmington, Delaware.; Of Counsel: Theodore R. Mann, Esquire of WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP, Philadelphia, PA; Michael D. LiPuma, Esquire of the LAW OFFICE OF MICHAEL LiPUMA, Philadelphia, PA, for Plaintiff and the Putative Class.

Jesse A. Finkelstein, Esquire and Richard P. Rollo, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.; Of Counsel: R. Stan Mortenson, Esquire; David A. Super, Esquire, Steven M. Silver, Esquire and Benjamin E. Kringer, Esquire of BAKER BOTTS L.L.P., Washington, D.C., for Defendants Raytheon Company and Raytheon Travel Air Company.

Richard L. Horwitz, Esquire and Erica L. Niezgoda, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.; Of Counsel: Mark A. Phillips, Esquire and Craig L. Moore, Esquire of BENESCH FRIEDLANDER COPLAN & ARONOFF LLP, Cleveland, Ohio, for Defendants Flight Options LLC and Flight Options International, Inc.

**JUDGES:** Farnan, District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

### MEMORANDUM OPINION

April 22, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the [*2] Court is a Motion For Class Certification (D.I. 64) filed by Plaintiff, CC Investors Corp. ("CCI") on behalf of itself and all similarly situated plaintiffs. For the reasons discussed, CCI's Motion For Class Certification has been denied. To the extent that CCI has requested leave to amend its Amended Class Action Complaint (the "Amended Complaint"), the Court will grant CCI's request.

### BACKGROUND

CCI brought this action on behalf of itself and the putative class members against Raytheon Travel Air Company ("Travel Air"); Travel Air's parent company, Raytheon Company ("Raytheon") (collectively, "the Raytheon Defendants"); Flight Options, LLC and Flight Options International, Inc. (collectively, the "Flight Options Defendants") alleging claims for breach of contract and common law fraud resulting from a business combination between the Raytheon Defendants and Flight Options, International, Inc. which resulted in the formation of Flight Options, LLC.

Various motions, including motions to dismiss, stay discovery and transfer venue were filed and adjudicated by the Court. Travel Air also moved for leave to file its first amended answer and counterclaim. By separate Memorandum Opinion [*3] and Order, the Court granted Travel Air's Motion.

By its Motion, CCI requests the Court to certify this action as a class action pursuant to *Federal Rule of Civil Procedure 23*. The Raytheon Defendants and the Flight Options Defendants have filed briefs in opposition to CCI's motion, and CCI has filed a Reply Brief. With the parties' mutual consent and the Court's approval, the Raytheon Defendants have filed a Surreply (D.I. 85) and CCI has responded to the Surreply (D.I. 86). Oral argument has been held on the motion, and the Court has issued an Order denying CCI's Motion For Class

  

Certification. The reasons for the Court's decision to deny CCI's Motion follow.

## DISCUSSION

### I. Standard For Class Certification

[HN1] The party seeking class certification bears the burden of establishing that certification is warranted under the circumstances. *In re ML-Lee Acquisition Fund II, L.P. Sec. Litig., 848 F. Supp. 527, 557 (D. Del. 1994). Rule 23 of the Federal Rules of Civil Procedure* sets forth the requirements for certification of a class. Pursuant to *Rule 23(a)*, four requirements [*4] must be met in order for a class to be certified. *Anchor Prods. Inc. v. Windsor, 521 U.S. 591, 613, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997).* These requirements are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a).*

[HN2] In addition to the four requirements of *Rule 23(a)*, a plaintiff seeking class certification must also satisfy one of the three requirements in *Rule 23(b)*. In this case, the applicable requirement is *Rule 23(b)(3)*, which requires the Court to find that: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3).*

### II. Whether CCI Has Satisfied The Requirements For Class [*5] Certification Under *Rule 23(b)(3)* For Its Claims Against The Flight Options Defendants

[HN3] *Rule 23(b)(3)* requires the party seeking class certification to prove that common issues of law and fact predominate over any issues that may be particular to individual class members. See *Georgine v. Amchem Prods., Inc., 83 F.3d 610, 626 (3d Cir. 1996),* aff'd sub nom. *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623,*

*138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997).* In this regard, the court must examine, "whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 187 (3d Cir. 2001).* "The predominance requirement is not met when there exists a great number of significant questions peculiar to the individual members of the class." *Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 400 (D.N.J. 1988)* (citing *Georgine, 83 F.3d at 624).*

In addition, [HN4] *Rule 23(b)(3)* requires the party moving for class certification to demonstrate the class action is superior to other methods of adjudicating the controversy. The superiority inquiry is related to the question of whether common questions [*6] of law and fact predominate because, "the greater the number of individual issues that exist, the less likely superiority can be established." *Costano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996).* If the requirements of *Rule 23(b)(3)* cannot be satisfied, the court need not address the *Rule 23(a)* requirements of numerosity, commonality, typicality and adequacy of representation. See *Young v. Jo-Ann's Nut House, Inc., 1980 U.S. Dist. LEXIS 16141, 1980 WL 1987, *5 (D.N.J. Dec. 16, 1980).*

### A. Whether Count III Alleging A Claim For Common Law Fraud Against The Flight Options Defendants Should Be Certified As A Class Action

Reviewing CCI's claim of common law fraud in light of the applicable legal standards, the parties' arguments and the circumstances of this case, the Court concludes that CCI has not demonstrated that common questions of law and fact predominate, because a significant number of individualized questions exist related to the issues of reliance, waiver and choice of law. Although the question of justifiable reliance is not always a bar to class certification, the Court finds that numerous fact questions exist in this case which require a plaintiff-by-plaintiff [*7] analysis. Specifically, CCI needs to establish whether each member of the putative class reviewed the March 11 and March 15 letters and the M&T report; justifiably disregarded statements in the M&T Report indicating that the MIA was being updated to reflect the 2002 Interchange Rates for Flight Options LLC; reviewed and justifiably disregarded the Amended MIA; signed the Acknowledgment and Power of Attorney forms; objected to the MIA; reviewed and justifiably disregarded Exhibit B to the amended MIA; interchanged aircraft and paid the costs associated with the


LexisNexis™    LexisNexis™    LexisNexis™

interchanges.

In addition, an individualized analysis is required to determine whether the putative class members waived their rights to pursue damages for fraud. Further, choice of law questions exist with respect to CCI's common law fraud claims, and the putative class members are located in 47 states and the District of Columbia. [HN5] To determine which law applies, the Court, sitting in diversity, needs to apply Delaware's choice of law rule which is referred to as the "most significant relationship test." The most significant relationship test places considerable emphasis on the place where the injury occurred, and the Court [*8] needs to apply this test to each of the putative class members' fraud claims. *Niemann v. Rogers, 802 F. Supp. 1154, 1156 n.1 (D. Del. 1992).* Although it is true, as CCI point out, that [HN6] choice of law questions do not bar class certification unless the differences in the state law constitute "insuperable obstacles," an "extensive analysis" of the state law variations is required for the Court to make this determination. *Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 219 (E.D. Pa. 2000).* In this case, CCI has failed to provide such an extensive analysis, and the Flight Options Defendants have demonstrated significant variations in the potentially applicable state laws, beginning with perhaps the most basic inquiry of what standard of proof to apply to CCI's common law fraud claims. Given these variations, along with the individualized questions related to the issues of reliance and waiver n1, the Court has concluded that class certification of CCI's common law fraud claims is inappropriate.

> n1 See e.g. *In re Ford Motor Company Vehicle Paint Litigation, 182 F.R.D. 214, 221-224 (E.D. La. 1998)* (holding that variations in state law and questions of reliance, as well as the presence of fact specific defenses, precluded certification of class).

[*9]

B. Whether Count I Alleging A Claim For Breach Of Contract Against The Flight Options Defendants Should Be Certified As A Class Action

As for CCI's breach of contract claims against the Flight Options Defendants, the Court also concludes that these claims raise a significant number of individualized legal and factual issues. Although a form contract was used as the starting point, the evidence adduced thus far demonstrates that, at least some of the individual plaintiffs, including CCI, negotiated for different terms which impact the substantive breach of contract question and the damages question necessitating a plaintiff-by-plaintiff analysis. Further, individual fact questions exist regarding whether individual class members received the Amended MIA and Exhibit B thereto; objected to the Amended MIA; upgraded or downgraded their aircrafts to several different models and paid the costs associated with those upgrades or downgrades. The answers to these questions also impact the defenses of the Flight Options Defendants including whether the putative class members have waived their claims and whether and to what extent they suffered damages. In addition, there are individual [*10] questions concerning whether the proposed class members terminated their contracts, and whether those who terminated entered into Repurchase Agreements which may have resulted in the release of any claims they might have against the Flight Options Defendants. Because of the number and extent of individualized issues raised by CCI's claims, the Court also concludes that CCI cannot demonstrate that a class action is superior to other methods of adjudicating the controversy alleged in Count I of the Amended Complaint.

During oral argument regarding both its claim for common law fraud and its claim for breach of contract, CCI suggested that the issues raised by Defendants could be handled through the mechanism of subclasses. However, the Court is persuaded that given the extent of issues raised necessitating individual inquiries, the proposed subclasses would be difficult to manage and possibly confusing, particularly for a jury. Accordingly, the Court has denied CCI's motion for class certification of both Counts I and III on the grounds that CCI cannot establish the requirements of *Rule 23(b)(2).*

**II. Whether CCI Has Satisfied The Requirements For Class Certification Under *Rule* [*11] *23(b)(3)* and *23(a)* For Its Claims Against The Raytheon Defendants**

In Count II, CCI alleges a claim for breach of contract against the Raytheon Defendants based on the alleged breach by the Raytheon Defendants of the provision limiting assignments to those "fully qualified and capable" of fulfilling the contracts' obligations.

  

Reviewing this claim in light of the legal standards governing the application of *Rule 23(b)(3)* and *Rule 23(a)*, the parties' arguments and the circumstances of this case, the Court concludes that CCI has not demonstrated that class certification is appropriate. In the Court's view, CCI has not established the requirement of *Rule 23(b)(3)* that common questions of law and fact predominate over the issues pertaining to the individual putative class members. As discussed in the context of the claims against the Flight Options Defendants, a number of putative class members modified the form contracts to add different provisions which impact the claims asserted in this case. With respect to the Raytheon Defendants in particular, the breach of contract claim asserted by CCI is premised upon a violation of the "fully qualified and capable provision," a provision which [*12] is not provided for in the standard contract, but was separately negotiated by only 22 class members. Of these 22 putative class plaintiffs, at least 9 have terminated their contracts. As such, the question raised by CCI's claim of whether this provision has been breached does not predominate over the vast majority of the putative class since only about 2% of the proposed class have contracts containing this provision. n2

> n2 In addition, the Court concludes that CCI has not established the numerosity requirement with respect to Count II against the Raytheon Defendants, because only 22 members of the putative class negotiated for the contract clause at issue and CCI has not demonstrated that joinder is impracticable for this small number of potential plaintiffs. Indeed, courts have been reluctant to certify a class containing less than 30 members. See e.g. *CL-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454, 455 (S.D.N.Y. 1989); Johnson v. Gross, 125 F.R.D. 169, 170-171 (W.D. Okla. 1989).*

[*13]

CCI contends that the legal questions associated with its breach of contract claims permeate all class members because the contracts at issue are personal service contracts, which are not assignable, regardless of any express provision in 22 of the contracts limiting assignments to those "fully qualified and capable." However, CCI's Amended Complaint does not allege that the contracts at issue were non-assignable personal services contracts. Further, CCI's contract permits assignments subject to the "fully capable and qualified" language of the contract, a provision which only CCI and 21 other putative plaintiffs had in their contracts. Thus, even if the remaining contracts are personal service contracts that are not assignable as CCI contends, the Court concludes that class certification is not appropriate because CCI cannot establish the typicality element required under *Rule 23(a) (3)*.

[HN7] To satisfy the typicality requirement, the plaintiff must show that the class representatives are "part of the class and 'possess the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 52 L. Ed. 2d 453, 97 S. Ct. 1891 (1977)* (citations omitted). "A representative's [*14] claim is typical if it arises from the same event, practice, or conduct that gives rise to the claim of the other class members, and is based on the same legal theory." *Wilmington Firefighters Local 1590 v. City of Wilmington, 109 F.R.D. 89, 93 (D. Del. 1985)* (citations omitted). The purpose of the typicality requirement is to ensure that the interests of the named plaintiffs are aligned with the absent members of the class, so as to ensure that the absent members of the class will be fairly represented in the litigation. *Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994).* Because CCI's breach of contract claim against the Raytheon Defendants is based upon a legal predicate different than that of the vast majority of plaintiffs, the Court concludes that CCI cannot establish the typicality element requirement for class certification. n3

> n3 In addition, CCI is also subject to a unique claim by Travel Air which was not brought against any other plaintiff. Specifically, Travel Air alleges that CCI breached the *Kansas Uniform Trade Secrets Act* based on the alleged misappropriation of Travel Air's trade secrets by Travel Air's former contracts manager. Part of the relief Travel Air seeks in this counterclaim is to prevent CCI from sharing the information allegedly improperly obtained with other members of the putative class. In addition, Travel Air asserts that proposed lead counsel may need to testify on the issue of the counterclaim. Thus, the presence of this counterclaim also weighs against a finding that CCI has established the typicality and adequacy of representation

  

requirements for class certification under *Rule 23(a).* See *In re ML-Lee, 848 F. Supp. at 560* (stating that [HN8] for purposes of determining whether adequacy of representation has been satisfied, "court may find antagonism between the interests of the plaintiffs and those of the class when defendants assert unique defenses against the named plaintiff, or when the plaintiff's situation is unique").

[*15]

CCI also contends that Count II of its Amended Complaint should be construed to raise Count I against the Raytheon Defendants, as well as the Flight Options Defendants, so that the Raytheon Defendants are not only alleged to have breached the "fully qualified and capable" provision of the contract, but also to be liable for the alleged breaches by the Flight Options Defendants. In support of its argument, CCI directs the Court to the incorporation by reference provisions contained in its Amended Complaint. However, the Court is not persuaded that the Amended Complaint should be read in the manner suggested by CCI, particularly where, as here, the Counts specifically state against whom they are brought.

To the extent that the Amended Complaint is not read to allege Count I against the Raytheon Defendants, CCI urges the Court to grant it leave to amend the Amended Complaint. [HN9] Pursuant to *Federal Rule of Civil Procedure 15,* leave to amend "shall be freely given when justice so requires." Denial of leave to amend is reviewed for an abuse of discretion. Leave to amend should be granted, unless the "'plaintiff's delay in seeking amendment is undue [*16] made in bad faith, prejudicial to the opposing party, or [the amendment] fails to cure the jurisdictional defect.'" *Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)* (quoting *Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 886 (3d Cir. 1992).* Ordinarily the passage of time alone is not sufficient to deny leave to amend and a showing of prejudice is required. Defendants have alleged some prejudice based on the 20 month delay, the fact that motions to dismiss have been litigated, and full written discovery has been conducted. However, depositions have not been conducted and documents have been gathered but not produced. In the Court's view, these circumstances suggest a "borderline" scenario, and therefore, the Court will err in favor of allowing CCI to amend its Amended Complaint.

However, even considering the amendment proposed by CCI, the Court concludes that class certification is inappropriate for the reasons discussed with respect to Count I as it applied to the Flight Options Defendants. Further, the Court is persuaded that CCI's novation theory, which is the legal basis for applying Count I to the Raytheon Defendants, is not suited [*17] for class certification. As the law cited by CCI explains, [HN10] "an obligor is discharged by substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent to the substitution, forming a novation." *Security Ben. Life Ins. Co. v. FDIC, 804 F. Supp. 217, 225 (D. Kan. 1992)* (emphasis added). The existence of a novation "may be inferred, like any other contract, from the facts, circumstances and conduct of the parties." *Elliott v. Whitney, 215 Kan. 256, 524 P.2d 699, 703 (1974).* Defendants acknowledge that a customer's failure to object to new rates could be deemed a novation; however, Defendants contend that the conduct of each customer is unique and should be evaluated individually. In this regard, Defendants pointed out at oral argument, the various factual questions that might arise in determining whether each customer agreed to a novation. Because the Court agrees with Defendants that the novation issue raises several questions which require a plaintiff-by-plaintiff analysis, the Court concludes that CCI's claim against the Raytheon Defendants, as to be amended to include the allegations of Count I, is not [*18] suited for class certification.

In sum, the Court concludes that CCI has not established the requirements for class certification of its claims against the Raytheon Defendants. CCI has not established that common questions of law and fact predominate under *Rule 23(b)* and has not established the typicality and numerosity requirements of *Rule 23(a).* Accordingly, the Court has denied CCI's motion for class certification of the claims alleged in Count II against the Raytheon Defendants.

**CONCLUSION**

For the reasons discussed, the Court has denied CCI's motion for class certification. An Order codifying the Court's decision has been entered; however, a separate Order will be entered with this Memorandum Opinion granting CCI's request for leave to amend its Amended Complaint.





2005 U.S. Dist. LEXIS 6893, *18

**ORDER**

At Wilmington, this 22 day of April 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. CCI's request for leave to amend its Amended Complaint is GRANTED.

2. CCI shall file its Second Amended Complaint within twenty (20) days of the date of this Order.

UNITED STATES DISTRICT JUDGE [*19]

  

**B**

1 of 1 DOCUMENT

**CORNING INCORPORATED, et al., Plaintiffs, v. SRU BIOSYSTEMS, et al., Defendants.**

**Civil Action No. 03-633-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 1896*

**January 20, 2006, Decided**

**SUBSEQUENT HISTORY:** Findings of fact/conclusions of law at *Corning Inc. v. SRU Biosystems, 418 F. Supp. 2d 596, 2006 U.S. Dist. LEXIS 9197 (D. Del., Mar. 7, 2006)*

**PRIOR HISTORY:** *Corning Inc. v. SRU Biosystems, 400 F. Supp. 2d 653, 2005 U.S. Dist. LEXIS 27752 (D. Del., 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant companies filed a motion for reconsideration in a patent case pursuant to D. Del. R. 7.1.5. Although the motion was couched in terms of a motion for reargument, the court concluded that defendants actually sought reconsideration. Such a motion under D. Del. R. 7.1.5 was the functional equivalent of a motion to alter or amend judgment under *Fed. R. Civ. P. 59(e)*. Plaintiff companies filed an opposition to the motion.

**OVERVIEW:** In support of their motion, defendants claimed that (1) the court overlooked testimony of plaintiffs' own witness in concluding that the patent in question was not invalid for lack of a written description; (2) the court erroneously excluded a prior patent that defendants claimed was relevant to the action; and (3) the court should have considered whether the patent in question was invalid as indefinite as a result of an intervening development in the law. In denying the motion, the court found that defendants previously raised their arguments concerning the court's decision to exclude the prior patent from evidence. The court's decision to exclude that patent was issued on September 27, 2005; thus, defendants were required to raise any motion to reconsider by October 20, 2005, which they did not. Further, defendants' arguments concerning the written description requirement had already been raised in their previous briefing and considered by the court. Defendants did not show that reconsideration of those arguments was warranted. The court also found that the indefiniteness argument was available to defendants well before trial; thus, it was waived.

**OUTCOME:** The court denied the request for reconsideration.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*

[HN1] A motion for reconsideration under D. Del. R. 7.1.5, which is timely filed and challenges the correctness of a previously entered order, is considered the "functional equivalent" of a motion to alter or amend judgment pursuant to *Fed. R. Civ. P. 59(e)*. The purpose

  

of a motion for reconsideration filed pursuant to Rule 59(e) is to correct manifest errors of law or fact or to present newly discovered evidence. Motions for reargument or reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the court. Thus, a court may only grant reconsideration if there is: (1) a change in the controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice.

***Civil Procedure > Judgments > Relief From Judgment > General Overview***
***Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend***
[HN2] Reargument, like reconsideration, is granted sparingly, but the grounds justifying reargument differ slightly from that which is required for reconsideration. Specifically, reargument is only appropriate where: (1) the court has patently misunderstood a party, (2) the court has made an error not of reasoning, but of apprehension, and (3) the court has made a decision outside the scope of the issues presented to the court by the parties.

***Civil Procedure > Judgments > Relief From Judgment > General Overview***
***Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend***
[HN3] Newly raised arguments are not properly the subject of a motion for reargument.

**COUNSEL:** [*1] Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Larry L. Shatzer, Esquire, Andrew E. Rawlins, Esquire, Kenneth E. Krosin, Esquire, and George C. Best, Esquire, of FOLEY & LARDNER, Washington, D.C. Attorneys for Plaintiffs.

Steven J. Balick, Esquire, and John G. Day, Esquire, of ASHBY & GEDDES, Wilmington, Delaware. Of Counsel: John J. McDonnell, Esquire, Daniel A. Boehnen, Esquire, Matthew J. Sampson, Esquire, Richard A. Machonkin, Esquire, Patrick G. Gattari, Esquire, of McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, Illinois. Attorneys for Defendants.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED

STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

**Farnan, District Judge.**

Pending before the Court is a Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I. 299) filed by Defendants, SRU Biosystems, LLC, SRU Biosystems, Inc. and SRU Biosystems Holdings, LLC (collectively, "SRU"). Corning Incorporated and Artificial Sensing Instruments ASI AG (collectively, "Corning") have filed an Opposition to SRU's request. For the reasons discussed, the [*2] Court will deny SRU's Request For Reconsideration.

### I. THE PARTIES' CONTENTIONS

By its Motion, SRU requests the Court to reconsider its November 15, 2005 decision on three grounds. Specifically, SRU contends that (1) the Court overlooked testimony of Corning's own witness in concluding that the *'843 patent* was not invalid for lack of written description; (2) the Court erroneously excluded the *'248 patent* which SRU maintains is relevant to this action; and (3) the Court should consider whether the *'843 patent* is invalid as indefinite as a result of an intervening development in the law, i.e. the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005).*

In response, Corning contends that the Court should deny reargument, because SRU restates arguments that have already been made by SRU in its prior submissions and rejected by the Court. Corning also contends SRU's request to reconsider the Court's exclusion of the *'248 patent* is untimely. As for the Federal Circuit's recent decision in IPXL, Corning contends that SRU waived any argument related to indefiniteness by failing to raise an indefinite argument [*3] at any point prior to the instant Request For Reconsideration.

### II. STANDARD OF REVIEW

[HN1] A motion for reconsideration under Delaware Local Rule 7.1.5 which is timely filed and challenges the

  

correctness of a previously entered ordered is considered the "functional equivalent" of a motion to alter or amend judgment pursuant to *Federal Rule of Civil Procedure 59(e)*. n1 *In re DaimlerChrysler AG Securities Litigation, 200 F. Supp. 2d 439, 441 (D. Del. 2002)* (citations omitted). The purpose of a motion for reconsideration filed pursuant to *Rule 59(e)* is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)*. Motions for reargument or reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court. *Karr v. Castle, 768 F. Supp. 1087, 1090 (D. Del. 1991); Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)*. Thus, a court may only grant reconsideration if there [*4] is: (1) a change in the controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood, 176 F.3d at 677*. With this standard in mind, the Court will address SRU's Request For Reconsideration.

> n1 Because SRU's motion is made under Del. L.R. 7.1.5, Corning couches its discussion of the standard of review solely in terms of that which is required for reargument. [HN2] Reargument, like reconsideration, is granted sparingly, but the grounds justifying reargument differ slightly from that which is required for reconsideration. Specifically, reargument is only appropriate where: (1) the court has patently misunderstood a party, (2) the court has made an error not of reasoning, but of apprehension, and (3) the court has made a decision outside the scope of the issues presented to the court by the parties.
>
> Though brought under Del. L.R. 7.1.5, the Court believes SRU is seeking reconsideration as evidenced both by the relief it requests and its use of the term "reconsideration" throughout its briefing. However, under either the standard for reargument or the standard for reconsideration, the Court concludes that SRU is not entitled to relief.

[*5]

### III. DISCUSSION

**A. Whether SRU Is Entitled To Reconsideration Of The Court's Decision To Exclude The '248 Patent**

SRU requests the Court to reconsider its decision excluding from evidence the *'248 patent*. SRU contends that the *'248 patent* is a continuation of the *'843 patent*, and thus, relevant to demonstrate that the *'843 patent* fails to satisfy the written description requirement.

SRU raised these arguments previously, and they have already been considered by the Court. In addition, the Court's decision excluding the *'248 patent* from evidence was issued on September 27, 2005, with a Memorandum Opinion explaining the Court's decision on October 5, 2005. Thus, SRU was required to raise any motion to reconsider or reargue that decision by October 20, 2005, at the latest. Accordingly, the Court declines to grant reconsideration of its decision to exclude the *'248 patent*.

**B. Whether SRU Is Entitled To Reconsideration Of The Court's Decision That SRU Failed To Establish Invalidity Of The '843 Patent Based On Lack Of Written Description**

SRU also requests reconsideration of the Court's decision regarding the invalidity of the *'843 patent* based on the lack of written [*6] description. SRU contends that one of ordinary skill in the art would know that the evanescent field can actually extend into the sample more than one wavelength. SRU contends that the testimony of Corning's Dr. Pollock supports its position, and therefore, the Court erred in concluding that the specification teaches that the evanescent wave penetrates less than one wavelength into the sample and that the chemoresponsive layer within the evanescent field must therefore be less than one wavelength thick.

SRU's arguments concerning the written description requirement have already been raised in its previous briefing and considered by the Court. SRU has not demonstrated that reconsideration of these arguments is warranted.

In a letter requesting oral argument on its request for reconsideration, SRU contends that Corning has changed its position regarding what the *'843 patent* discloses. Specifically, SRU contends that Corning has "now admitted that the *'843 patent* discloses that 'the thickness of the chemo-responsive layer can be more than the evanescent filed.'" (D.I. 312) (citing D.I. 306 at 9).



However, it appears to the Court that Corning has always recognized that the *'843 patent* [*7] describes other sensors, such as sensors that work on absorption principles, and that in those types of sensors the thickness of the chemo-responsive layer can be more than the thickness of the evanescent field. D.I. 279 at 25-26; D.I. 275 at PFF 436. However, Corning has also argued that in sensors using adsorption principles, the chemo-responsive layer must be less than the evanescent field, and the Court's discussion of this issue is in the context of an adsorption layer. As such, the Court is not persuaded that it overlooked SRU's arguments or the testimony of Dr. Pollock as it pertains to this issue, and therefore, the Court is not persuaded that reconsideration of the Court's written description decision is warranted.

C. Whether SRU Is Entitled To Reconsideration In Light Of The Federal Circuit's Decision In IPXL Holdings, L.L.C. Relating To Indefiniteness

SRU also contends that reconsideration is appropriate so that the Court can consider whether the *'843 patent* is invalid for indefiniteness in light of the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005)*. In IPXL, the Federal Circuit concluded [*8] that an invention is invalid for indefiniteness if it is a combination of two statutory classes of the invention. However, SRU did not raise an indefiniteness defense in response to Corning's Interrogatories requesting SRU's defenses, in the Joint Proposed Pretrial Order, at trial or in any of its original post-trial submissions. Although SRU contends that the IPXL decision was reached by the Federal Circuit as a matter of first impression, the Court notes that this type of indefiniteness argument was available to SRU well before the trial in this case, despite the lack of available Federal Circuit precedent on point. Specifically, the U.S. Patent & Trademark Office

concluded in a published decision fifteen years ago that a patent claim is invalid if it is a combination of two statutory classes of invention. See *Ex parte Lyell, 17 U.S.P.Q.2d 1548, 1552 (Bd. Pat. App. & Inter. 1990)*. Further, the United States District Court for the Eastern District of Virginia reached the same conclusion in the IPXL case more than a year ago and before the trial in this case. In addition, SRU has not offered any reasons for its failure to pursue this argument earlier. Accordingly, [*9] the Court concludes that SRU's argument related to indefiniteness has been waived, and therefore, it is not the proper subject of a motion for reargument. See e.g., *Davis v. Mountaire Farms. Inc., 2005 U.S. Dist. LEXIS 15375, 2005 WL 180054, *1 (D. Del. Jul. 29, 2005)* [HN3] (declining to address newly raised argument and recognizing that such an argument is "not properly the subject of a motion for reargument").

**CONCLUSION**

For the reasons discussed, the Court will deny SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 20 day of January 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I. 299) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

  

C

1 of 1 DOCUMENT


**HAROLD LEONARD, Plaintiff, v. UNIVERSITY OF DELAWARE, a corporation of the State of Delaware, PAUL METTLER, and MARY MARTIN, Defendants.**

**Civil Action No. 96-360-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**


*2002 U.S. Dist. LEXIS 12583*

**July 9, 2002, Decided**

**SUBSEQUENT HISTORY:** Affirmed by, Appeal dismissed by, Motion denied by *Leonard v. Univ. of Del., 2003 U.S. App. LEXIS 11391* (3d Cir. Del., May 8, 2003)

**PRIOR HISTORY:** *Leonard v. Univ. of Del., 204 F. Supp. 2d 784, 2002 U.S. Dist. LEXIS 9419* (D. Del., 2002)

**DISPOSITION:** Defendants' fee petition approved for $ 5,837.75. Defendants shall deduct this amount from $ 6,900.87 currently held in escrow and promptly remit remainder of amount held in escrow to plaintiff.

**CASE SUMMARY:**


**PROCEDURAL POSTURE:** The plaintiff brought suit against the defendants, alleging violations of his constitutional right to due process and for breaching a prior settlement agreement. The parties reached a settlement, and the court granted the defendants' motion to enforce the settlement. Before the court was the defendants' fee petition and motion to deduct the fees from the settlement amount.

**OVERVIEW:** After the court granted the motion to enforce the settlement, it also granted the defendants' motion for an award of reasonable attorneys' fees as sanction for the plaintiff's bad faith actions. The plaintiff objected to the reasonableness of the fees because the fee petition: (1) lacked an affidavit establishing a normal billing rate; (2) lacked appropriate documentation as to the hours expended and the hourly rate; and (3) lacked evidence supporting the reasonableness and necessity of the expenses for which reimbursement was sought. However, the court was unpersuaded that the lack of an affidavit rendered the fee petition invalid. The court awarded attorneys' fees as a sanction against the plaintiff because he acted vexatiously and in bad faith. As such, the court was eminently capable of determining whether the requested fees were a reasonable sanction without the aid of an affidavit. In addition, the defendants sought authorization for them to deduct the amount of attorneys' fees awarded to them from the amount owed to the plaintiff under the settlement agreement. Given the behavior of the plaintiff that led to sanctions, the request was warranted.

**OUTCOME:** The court granted the defendants' motion for reasonable attorneys' fees. The court granted the defendants' motion to deduct the fees from the settlement amount.


**COUNSEL:** [*1] For HAROLD LEONARD, plaintiff: Thomas S. Neuberger, Thomas S. Neuberger, P.A., Wilmington, DE.

For UNIVERSITY OF DELAWARE, PAUL





METTLER, MARY MARTIN, defendants: W. Harding Drane, Jr., Kathleen Furey McDonough, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

ORDER

## I. INTRODUCTION

On July 2, 1996, Harold Leonard ("Leonard") filed the above-captioned action against the University of Delaware ("the University"), Paul Mettler, and Mary Martin (collectively "the defendants") for violating his constitutional right to due process and for breaching a prior settlement agreement. The parties reached a settlement on November 21, 2001. On May 24, 2002, the court granted the defendants' motion to enforce this settlement. In that order, the court also awarded the defendants reasonable attorneys' fees incurred in preparing the motion to enforce the settlement agreement.

Presently before the court is the defendants' fee petition and motion to deduct the fees from the settlement amount. For the following reasons, the court will award the defendants reasonable attorneys' fees. The court will further [*2] grant the defendants' motion to deduct the fees from the settlement amount.

## II. DISCUSSION

### A. Reasonableness of Fees

The defendants request fees and expenses in the amount of $ 6,900.87. Leonard objects to the reasonableness of these fees because the fee petition: (1) lacks an affidavit establishing a normal billing rate; (2) lacks appropriate documentation as to the hours expended and the hourly rate; and (3) lacks evidence supporting the reasonableness and necessity of the expenses for which reimbursement is sought. n1

n1 The court is also in receipt of the Leonard's letter dated June 19, 2002, which he filed without the assistance of his counsel. The

letter contains arguments solely to the effect that the court should not have enforced the settlement agreement and that an award of attorneys' fees was inappropriate in this case. The letter does not contest the amount of attorneys' fees enumerated in the fee petition presently pending before the court. Thus, to the extent that the letter is a motion for reconsideration of the court's May 24, 2002 Memorandum and Order, it will be disregarded as untimely. *See* Local Rule 7.1.5.

[*3]

With regard to Leonard's first concern, the court is unpersuaded that the lack of an affidavit renders the fee petition invalid. As the defendants correctly note, the court awarded attorneys' fees as a sanction against Leonard because he acted vexatiously and in bad faith. As such, the court is eminently capable of determining whether the requested fees are a reasonable sanction without the aid of an affidavit.

As to Leonard's second concern, the defendants themselves have already remedied the fee petition's alleged defect. Accordingly, the defendants have now provided the court, and Leonard, with a detailed description of the time expended and the hourly rate utilized for each task. After reviewing this information, the court finds that an award of attorneys' fees in the amount of $ 5,837.75 is reasonable, and will suffice as an appropriate sanction against Leonard.

The defendants additionally request that the court award them $ 1,063.12 in costs and expenses. The court declines to do so as it has concluded that the above-determined award of attorneys' fees is an adequate sanction on these facts.

### B. Deduction of Fees From the Settlement Agreement

The defendants further [*4] ask that the court authorize them to deduct the amount of attorneys' fees awarded to them from the amount owed to Leonard under the settlement agreement. Indeed, the defendants submit that such protection is their best, and perhaps only, chance of recovering the awarded attorneys' fees. Given the tortured history of this case, and specifically the behavior that led the court to sanctioning Leonard, the court will grant this request. In so ordering, the court concludes that this outcome is a fair and prudent manner

  

2002 U.S. Dist. LEXIS 12583, *4

of safeguarding the funds in dispute.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

    1. The Defendants' fee petition (D.I. 251) is approved in the amount of $ 5,837.75.

    2. The Defendants shall deduct this amount from the $ 6,900.87 currently held in escrow and promptly remit the remainder of the amount held in escrow to the Plaintiff.

Date: July 9, 2002

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE



**D**

1 of 1 DOCUMENT

**BRIAN MILLER, et al., Plaintiffs, v. COMPUTER SCIENCES CORP., Defendant.**

**Civil Action No. 05-10-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 48746*

**July 14, 2006, Decided**

**COUNSEL:** [*1] Timothy James Wilson, Esquire, of MARGOLIS EDELSTEIN, Wilmington, Delaware, Attorney for Plaintiffs.

Erica N. Finnegan, Esquire, of CROSS & SIMON, LLC, Wilmington, Delaware. David Ellis Moore, Esquire, and Sarah Elizabeth DiLuzio, Esquire, of POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware. Of Counsel: Larry R. Seegull, Esquire, and Linda M. Boyd, Esquire, of DLA PIPER RUDNICK GRAY CARY US LLP, Baltimore, Maryland. Of Counsel: Tyler Brian Raimo, Esquire, of COMPUTER SCIENCES CORP., Falls Church, Virginia, Attorneys for Defendant.

**JUDGES:** Joseph J. Farnan, Jr., District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

**MEMORANDUM OPINION**

**Joseph J. Farnan Jr., District Judge.**

Pending before the Court are Defendant's Motion For Summary Judgment (D.I. 97) and Defendant's Motion For Leave To File An Amended Answer (D.I. 105). For the reasons discussed, both motions will be denied.

**I. BACKGROUND**

Defendant, an information technology services company, has an incentive program, known as the Annual Management Incentive Program ("AMIP"), whereby participants receive a percentage of their base salary if they meet certain objectives for the fiscal year. n1 AMIP's original [*2] purpose was to create incentives for upper-level management; however, more employees became involved as the company accumulated new employees from clients in connection with outsourcing transactions. Plaintiffs became Defendant's employees through an outsourcing transaction with DuPont. Following the changeover and until April 2003, Plaintiffs participated in AMIP and received annual bonuses. Plaintiffs contend that the AMIP bonus was a substantial portion of their annual salaries and was used to entice them to work for Defendant.

> n1 Defendant's fiscal year runs from April 1 through May 31 of each year. Fiscal year 2004 ran from April 1, 2003 through May 31, 2004.

According to Defendant, fiscal year 2003 was difficult, and the company was forced to decrease the number of AMIP participants. Plaintiffs were notified in September 2003 that they would no longer be participants. Plaintiffs filed their Complaint on December 13, 2004 in the Superior Court for the State of Delaware in and for New Castle County. Plaintiffs' [*3] Complaint alleges that Defendant violated the Delaware Wage Payment and Collection Act ("DWPCA") by withholding "the earned AMIP bonus of each of the Plaintiffs for the period of time from April 1, 2003 through and including the time of CSC's notice to each Plaintiff in September 2003." (D.I. 1, Ex. A). On January 10, 2005, the action was removed to this Court.

**II. PARTIES' CONTENTIONS**

  

By its motions, Defendant contends that it should be permitted to amend its Answer to state that Plaintiffs' claims are barred by the one-year statute of limitations on claims for wages. Defendant further contends that Plaintiffs are not entitled to an AMIP bonus for fiscal year 2004 because they were never eligible to participate and did not know the criteria on which the bonus would be based.

In response, Plaintiffs contend that Defendant should not be given leave to amend because an amendment would unduly prejudice Plaintiffs. Alternatively, Plaintiffs contend that the statute of limitations has not expired because their cause of action did not accrue until after the close of the 2004 fiscal year. Finally, Plaintiffs contend that there are genuine issues of material fact as to their DWCPA [*4] claim, and therefore, summary judgment is not warranted.

## III. DISCUSSION

### A. Whether The Court Should Grant Defendant Leave To Amend Its Answer

*Rule 15(a) of the Federal Rules of Civil Procedure* provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*. The grant or denial of a motion to amend is within the discretion of the Court. *Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971)*. However, the United States Supreme Court has cautioned that leave should be freely granted unless there is an apparent reason for denying a request such as: undue delay, bad faith, dilatory motive, undue prejudice, or futility of the claims. *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*; *Adams v. Gould, Inc., 739 F.2d 858 (3d Cir. 1984)*.

The Court will not grant Defendant leave to amend its Answer because Defendant's statute of limitations defense is futile. The DWCPA provides that "[a] civil action to recover unpaid wages and liquidated damages [*5] may be maintained in any court of competent jurisdiction." *19 Del. C. 1113*. Bonuses, particularly "year-end bonus[es] based upon. . . performance," fall within the DWCPA's definition of "wages." *Seitz v. Siegfried Group, 2001 Del. Super. LEXIS 364, *; 19 Del. C. § 1101(a)(2)*. Under Delaware law, a plaintiff's claim for wages is subject to *Section 8111* of the Delaware

Code, which provides:

> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or from any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of one year from the accruing of the cause of action on which such action is based.

*10 Del. C. § 8111*; *Compass v. Am. Mirrex Corp., 72 F. Supp. 2d 462, 467 (D. Del. 1999)*.

Plaintiffs' sole claim is for a prorated amount of their AMIP bonuses [*6] under the DWCPA "for the period of time from April 1, 2003 through and including the time of CSC's notice to each Plaintiff in September of 2003." (D.I. 1 at Ex. A). Because Plaintiffs' claim is a claim for wages, the one-year statute of limitations applies, and the Court must determine when Plaintiffs' cause of action accrued.

In Delaware, the statute of limitations begins to run "when proper parties are in existence capable of suing and being sued, and a cause of action exists capable of being sued on forthwith." *Plant v. Catalytic Constr. Co., 287 A.2d 682, 684 (Del. Super. 1972)*. Defendants contend that the statute of limitations began to run when Plaintiffs received notice that they were no longer AMIP participants in September 2003. However, Plaintiffs' claim is one for wages, and a cause of action for wages cannot accrue until the employer fails to pay the wages. See e.g. *Roos v. Delaware Valley Radiology, P.A., 1989 U.S. Dist. LEXIS 4023, at *17-18 (D. Del. April 3, 1989)* (cause of action accrued when defendant failed to pay plaintiff); *Martinez v. Gastroenterology Assocs., 2005 Del. Super. LEXIS 233, at *5 (Del. Super. [*7] July 5, 2005)* ("claim must be raised within one year of the employer's failure to pay"). Plaintiffs filed their Complaint in December 2004. Accepting March 31, 2004, the end of the 2004 fiscal year, as the earliest date on which the statute of limitations on Plaintiffs' claim began to run, the Court concludes that Plaintiffs filed

  

before the statute of limitations had expired. Accordingly, the Court will deny Defendant's Motion For Leave To File An Amended Answer (D.I. 105).

B. Whether The Court Should Grant Defendant's Motion For Summary Judgment On Plaintiffs' Claim Under The DWCPA

Pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure*, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light [*8] most favorable to the non-moving party. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)*.

The Court concludes that genuine issues of material fact exist, and therefore, summary judgment is inappropriate. Defendant contends that Plaintiffs were not entitled to participate in AMIP because participation was never guaranteed and Plaintiffs never received the AMIP criteria. To demonstrate that participation was never guaranteed, Defendant has adduced evidence from the Employee Total Rewards Guide, which states that participation is reviewed each year and not guaranteed (D.I. 98 at A344, A346), and deposition testimony in which Plaintiffs acknowledge that participation is not guaranteed (D.I. 98 at A66-67, A128-29, A250, A282). Defendant has also put forth evidence that Plaintiffs never received the AMIP criteria. (See e.g. D.I. 98 at A6-7, A67, A133). Defendant argues that in order to be eligible for AMIP for fiscal year 2004, Plaintiffs would need to receive and act in conformity with the criteria.

In response, Plaintiffs contend that, while participation was not guaranteed, Defendant failed to adhere to its policy of annual review and that employees [*9] were in the program unless they were given notice

of removal within weeks of the beginning of a new fiscal year. (D.I. 101 at B542-43, D.I. 102 at B993, B1045-46, B1103). Plaintiffs further contend that receipt of the criteria was not a prerequisite to participation in AMIP. In support of this contention, Plaintiffs have put forth evidence that as a rule, employees, even those considered participants, were not informed of the AMIP criteria until sometime during the fall of the fiscal year. (See e.g. D.I. 100 at B231, B318). Plaintiffs' deposition testimony shows that the criteria changed very little from year to year, and therefore, Plaintiffs generally knew what was required to earn a bonus until they received the specifics later in the fiscal year. (D.I. 101 at B409, B547, B839). Finally, there is evidence that certain employees who have lost or lose their status as AMIP participants have received or can receive prorated portions of their AMIP bonuses. (D.I. 101 at B485-87, D.I. 98 at A344). n2

n2 The Employee Total Rewards Guide does state that participation may vary from year to year. (D.I. 98 at A344, A346). It also lists certain circumstances in which an employee may be given a prorated amount. (D.I. 98 at 344). It does not specifically state how a situation like Plaintiffs' is handled, however.

[*10]

As the evidence adduced by Plaintiffs and Defendant demonstrates, there are genuine issues of material fact relating to whether Plaintiffs are entitled to AMIP payments for April 1, 2003 to the time they received notice that they were no longer participating in the program. Accordingly, the Court will deny Defendant's Motion For Summary Judgment (D.I. 97).

IV. CONCLUSION

For the reasons discussed, Defendant's Motions will be denied. An appropriate Order will be entered.





E

1 of 1 DOCUMENT

**ROYAL INDEMNITY COMPANY, Plaintiff, v. PEPPER HAMILTON LLP, W. RODERICK GAGNE, FREED MAXICK & BATTAGLIA CPA'S PC, MCGLADREY & PULLEN LLP, MICHAEL AQUINO, and FREED MAXICK SACHS & MURPHY, P.C., Defendants.**

**Civil Action No: 05-165-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2007 U.S. Dist. LEXIS 20797*

**March 22, 2007, Decided**
**March 22, 2007, Filed**

**PRIOR HISTORY:** *Royal Indem. Co. v. Pepper Hamilton LLP, 2006 U.S. Dist. LEXIS 93309 (D. Del., Dec. 26, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer sued defendants, a law firm, a lawyer, accounting firms, and a director, for fraud, conspiracy, breach of fiduciary duty, and negligence, inter alia, in connection with a student loan financing operation. The insurer also asserted Racketeer Influenced and Corrupt Organizations Act (RICO) claims against the attorney and the director. The insurer moved to compel and for sanctions, and defendants moved to dismiss.

**OVERVIEW:** The insurer first claimed that certain defendants did not comply with the court's order to commence written discovery. The court concluded that written discovery, including the production of relevant documents, was to occur pursuant to the instructions in its previous order. The court did, however, accept defendants' assertion that no party had produced a single document as of the date of filing its answer brief in response to the insurer's motion to compel. Because the insurer had not demonstrated that defendants acted in bad faith, sanctions were not warranted. The insurer's amended complaint alleged that the enterprise was the association in fact and by agreement between the student loan financing operation and its related entities, the law firm and accounting firms. The insurer alleged that the operation conducted the business of borrowing money, making loans, and obtaining insurance while the firms provided the necessary legal and financial guidance. Because the insurer identified an enterprise that existed apart from the underlying alleged racketeering activity, and met the other requirements of a RICO claim, the insurer's allegations were sufficient to survive dismissal.

**OUTCOME:** The insurer's motion to compel was granted, but sanction were denied. The court denied defendants' motions to dismiss.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] Pursuant to *Fed. R. Civ. P. 12(b)(6)*, a court may dismiss a complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6).*

  

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. However, the court is not required to accept legal conclusions either alleged or inferred from the pleaded facts. Dismissal is only appropriate when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
***Securities Law > Liability > Private Securities Litigation > Federal Preemption***
***Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Fraud as Predicate Act***
[HN2] The Private Securities Litigation Reform Act precludes from the type of conduct that could qualify as a predicate act to establish a violation of the Racketeer Influenced and Corrupt Organizations Act any conduct that would have been actionable as fraud in the purchase or sale of securities. *18 U.S.C.S. § 1964(c)*. The proper focus of the analysis is on whether the conduct pled as predicate offenses is "actionable" as securities fraud - not on whether the conduct is intrinsically connected to, and dependent upon conduct actionable as securities fraud.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview***
***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN3] In order to establish a claim under *18 U.S.C.S. § 1962(c)*, a plaintiff must show: 1) the existence of an enterprise affecting interstate commerce; 2) that the defendant is employed by or associated with the enterprise; 3) that the defendant participates, either directly or indirectly, in the conduct or the affairs of the enterprise; and 4) that the defendant participates through a pattern of racketeering activity that includes at least two racketeering acts.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN4] An enterprise is defined as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity. *18 U.S.C.S. § 1961(4)*. The identification of an enterprise separate from the underlying pattern of racketeering activity is sufficient to withstand a motion to dismiss.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN5] Liability under *18 U.S.C.S. § 1962(c)* is limited to those who participate in the operation or management of the enterprise.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud***
***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN6] A "pattern of racketeering activity" requires the commission of at least two predicate offenses, including mail and wire fraud. *18 U.S.C.S. § 1961(1)(B)*, (5). To establish a pattern, two critical factors must be present: 1) a relationship between the acts of racketeering charged; and 2) a threat of continuing activity, or continuity. To establish the continuity requirement, a Racketeer Influenced and Corrupt Organizations Act plaintiff must show that the predicate acts of racketeering either constitute or threaten long-term criminal activity. Continuity may be either "close-ended" or "open-ended". Open-ended continuity may be established by evidence that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the acts are part of an ongoing entity's regular way of doing business.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN7] A party can demonstrate close-ended continuity for Racketeer Influenced and Corrupt Organizations Act purposes by proving a series of related predicate acts extending over a substantial period of time. A court may focus on the duration of the underlying scheme rather than on the occurrences of the predicate acts themselves.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud***
***Criminal Law & Procedure > Criminal Offenses > Fraud > Mail Fraud > Elements***
***Criminal Law & Procedure > Criminal Offenses >***

*Fraud > Wire Fraud > Elements*
[HN8] A plaintiff raising a claim of mail or wire fraud must establish two essential elements: 1) a scheme to defraud; and 2) the use of the mails or wires for the purpose of executing the scheme. A scheme "need not be fraudulent on its face"; rather, it must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. The second requirement, use of the mail or wires to execute the scheme, requires that the mail or wire communications be incident to an essential part of the scheme, or a step in the plot, although they need not contain misrepresentations.

*Governments > Legislation > Statutes of Limitations > Tolling*
[HN9] Under either Delaware or Pennsylvania law, the statute of limitations is tolled where the defendants fraudulently conceal their wrongdoing.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements*
[HN10] Under Delaware or North Carolina law, a claim for civil conspiracy requires: 1) a combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damage. Under Pennsylvania law, malice is an essential element to a civil conspiracy claim. Malice exists where the defendant intends to injure the plaintiff without legal justification.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements*
[HN11] Under Delaware law, the elements of common law fraud are: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation is false, or is made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as the result of such reliance.

**COUNSEL:** [*1] For Royal Indemnity Company, Plaintiff: Philip Trainer, Jr., LEAD ATTORNEY, Tiffany Geyer Lydon, Ashby & Geddes, Wilmington, DE.

For Pepper Hamilton LLP, W. Roderick Gagne', Defendants: William H. Sudell, Jr., LEAD ATTORNEY,

Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Bruce P. Merenstein, Pro Hac Vice; Daniel Bryan Butz, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Elizabeth K. Ainslie, Pro Hac Vice; Nicholas J. LePore, Pro Hac Vice; Stephen J. Shapiro, Pro Hac Vice.

For Freed Maxick & Battaglia CPA's PC, Defendant: James L. Holzman, LEAD ATTORNEY, J. Clayton Athey, Prickett, Jones & Elliott, P.A., Wilmington, DE; John H. Eickemeyer, Pro Hac Vice; Marie A. Tieri, Pro Hac Vice.

For McGladrey & Pullen LLP, Defendant: Christopher M. Winter, LEAD ATTORNEY, Duane Morris LLP, Wilmington, DE; Amber M. Mettler, Pro Hac Vice; Jason M. Butler, Pro Hac Vice; Richard P. Swanson, Pro Hac Vice; Steven M. Farina, Pro Hac Vice; Thomas H.L. Selby, Pro Hac Vice; Veronica E. Rendon, Pro Hac Vice.

For Michael Aquino, Defendant: Christopher M. Winter, LEAD ATTORNEY, Duane Morris LLP, Wilmington, DE.

For Freed Maxick Sachs & Murphy, P.C., Defendant: J. Clayton Athey, [*2] Prickett, Jones & Elliott, P.A., Wilmington, DE.

**JUDGES:** Joseph J. Farnan, Jr., District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

### MEMORANDUM OPINION

March 22, 2007
Wilmington, Delaware

**Farnan, District Judge**

On March 31, 2006, the Court entered an Order (D.I. 122) granting in part Plaintiff's Motion To Compel And For Sanctions (D.I. 84) and denying the following motions to dismiss filed by the Defendants: 1) Motion To Dismiss for Failure To State A Claim filed by Freed Maxick & Battaglia CPA's PC (D.I. 29); 2) Motion To Dismiss Based Upon Motion Of W. Roderick Gagne For The Dismissal Of Plaintiff's First Amended Complaint filed by W. Roderick Gagne (D.I. 32); 3) Motion To Dismiss Based Upon Motion Of Pepper Hamilton LLP

  

For The Dismissal Of Plaintiff's First Amended Complaint filed by Pepper Hamilton LLP (D.I. 35); and 4) Motion To Dismiss For Failure To State A Claim filed by McGladrey & Pullen LLP and Michael Aquino (D.I. 58). The Court's reasons are discussed herein.

## I. BACKGROUND

The following facts are alleged in Plaintiff's Amended Complaint (D.I. 14). Plaintiff is a Delaware Capital Stock Insurance Company with its principal place of business [*3] in North Carolina. Defendant Pepper Hamilton, LLP ("Pepper") is a Pennsylvania limited liability general partnership which provides legal services. Defendant W. Roderick Gagne ("Gagne") was, at the time of the filing of this action, a partner in the Philadelphia office of Pepper Hamilton, LLP. Defendants Freed Maxick & Battaglia CPAs, PC ("Freed") and McGladrey & Pullen, LLP ("McGladrey") are accounting firms. Freed is headquartered in Buffalo, New York. McGladrey is headquartered in Bloomington, Minnesota. Defendant Michael Aquino ("Aquino"), was, at the time of filing of this action, a Managing Director and Partner with McGladrey.

The instant action relates to the operations of Student Finance Corporation ("SFC"), which was in the business of originating, purchasing, and selling tuition loans primarily to students of truck driving schools. n1 Defendants Pepper and Aquino became involved with SFC around 1998 by providing legal and accounting services, respectively. In the summer of 1998, an insurance broker contacted Plaintiff on behalf of SFC regarding the opportunity to provide credit risk insurance to SFC. Thereafter, SFC communicated to Plaintiff information about its loan programs. [*4] Plaintiff alleges that these communications contained numerous material misrepresentations.

> n1 On June 5, 2002, SFC was the subject of an involuntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

On January 22, 1999, Plaintiff issued to SFC a credit risk insurance policy with a liability limit of $ 75 million. The policy was intended to provide coverage for loan defaults by students. Plaintiff alleges that SFC made payments on behalf of its borrowers to conceal defaults,

referring to them as "forbearance payments" or "ghost payments". These payments were allegedly reported to Plaintiff as if they were made by the student borrowers, thus, distorting the actual rate of default. Plaintiff alleges the accountant Defendants (Freed, McGladrey, and Aquino) knowingly aided and abetted SFC in disguising that the payments were made by SFC itself. Plaintiff further alleges that Defendant Pepper knew the payments made by SFC manipulated the true performance [*5] of the loan activity.

Plaintiff alleges that, based on misrepresentations made by Defendants, it issued numerous additional credit risk insurance policies to cover SFC loans between 1999 and November 2001. Plaintiff alleges it relied on numerous documents drafted by the Defendants regarding SFC's financial situation and its loan performance; specifically: 1) monthly "servicer reports" issued by SFC to Plaintiff regarding the performance of SFC loans; 2) an Independent Accountant's Report issued in 2001 by McGladrey and Aquino which did not disclose that SFC was making "ghost payments"; 3) Private Placement Memoranda drafted by SFC and Pepper which failed to disclose the "ghost payments"; 4) an Independent Auditor's Report issued in 2000 by Freed which certified SFC's financial statements for 1998 and 1999; 5) an Independent Auditor's Report issued in 2001 by McGladrey under Aquino's supervision which certified SFC's financial statements for 2000; and 6) notes with SFC's 2000 financial statements for which McGladrey assisted with the drafting. Plaintiff also alleges that, after expressing concern for a high number of delinquent loans, it relied on false statements knowingly made by [*6] Andrew N. Yao, owner of SFC, that the delinquencies were caused by students making advance payments. The statements were made in the presence of Gagne, who allegedly knew the statements were false.

On or around March 20, 2002, Mr. Yao admitted to Plaintiff that SFC had been making "forbearance payments" to reduce the number or appearance of defaulted student loans. On or around April 10, 2002, an SFC officer disclosed in an email to Plaintiff that SFC had made more than $ 50 million in "ghost payments" between January 2001 and March 2002 on policies which Plaintiff insured.

On March 18, 2005, Plaintiff filed its original Complaint. On April 12, 2005, Plaintiff filed its Amended Complaint (D.I. 14) asserting claims for fraud,

conspiracy to commit fraud, aiding and abetting fraud and breach of fiduciary duty, negligence and negligent misrepresentation in connection with the student loan financing operations of Student Finance Corporation. Plaintiff also asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants Gagne and Aquino.

## II. LEGAL STANDARD

[HN1] Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* [*7] , the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. *Fed. R. Civ. P. 12(b)(6)*. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)*. When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*; *Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)*. However, the Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost, 1 F.3d at 183*. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*.

## III. DISCUSSION

A. Motion To Compel And For Sanctions (D.I. 84)

By its Motion, Plaintiff contends that the Defendants McGladrey, [*8] Freed, and Aquino have not complied with the Court's Order (D.I. 38) to commence written discovery on September 7, 2005. Plaintiff further contends that sanctions are warranted because the Defendants McGladrey, Freed, and Aquino have acted in bad faith in refusing to comply with the Court's Order regarding the scheduling of discovery. In response, the Defendants contend they were waiting for the Court to resolve the pending motions to dismiss before commencing written discovery in full compliance with the Court's Order (D.I. 38).

The Court concludes that a proper reading of its Order is that written discovery was to commence on September 7, 2005, regardless of the status of the motions to dismiss. The Court accepts the Defendants' assertion that the Court had indicated that addressing the motions to dismiss would be a priority. The Court, however, disagrees with the Defendants' conclusion that written discovery was not to commence before the motions to dismiss were resolved. Thus, the Court concludes that written discovery, including the production of relevant documents, shall occur pursuant to the instructions in the Court's Order entered June 13, 2005 (D.I. 38).

Further, the Court accepts [*9] the Defendants' assertion that no party has produced a single document as of the date of filing its answer brief in response to Plaintiff's Motion To Compel. Because Plaintiff has not demonstrated that Defendants have acted in bad faith, the Court concludes that sanctions are not warranted at this time. Accordingly, the Court will grant in part Plaintiff's Motion To Compel (D.I. 84) and deny the Motion in part to the extent Plaintiff requests an award of sanctions.

B. Motions To Dismiss For Failure To State A Claim (D.I. 29, 32, 35, 58)

By its motions to dismiss, Defendants raise the same or similar arguments. Therefore, the Court will address the issues raised by the motions collectively.

1. Whether Plaintiff's RICO Claims Are Precluded By The Private Securities Litigation Reform Act

Defendant Gagne contends that because the predicate acts on which Plaintiff bases its claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") allege fraud in the purchase or sale of securities, the claims are barred by the Private Securities Litigation Reform Act ("PSLRA") pursuant to *18 U.S.C. § 1964(c)*. In response, Plaintiff contends that [*10] the PSLRA does not apply to preclude its claims because the predicate acts alleged are not actionable as securities fraud.

[HN2] The PSLRA precluded from the type of conduct that could qualify as a predicate act to establish a violation of RICO "any conduct that would have been actionable as fraud in the purchase or sale of securities." *18 U.S.C. § 1964(c)*; see PSLRA Pub.L. No. 104-67, 109 Stat. 737 (1995). "[T]he proper focus of the analysis is on whether the conduct pled as predicate offenses is 'actionable' as securities fraud -- not on whether the conduct is 'intrinsically connected to, and dependent





upon' conduct actionable as securities fraud." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 330 (3d. Cir. 1999).*

In its Amended Complaint, Plaintiff alleges that mail and wire fraud are the predicate acts of the RICO-violating conduct. More specifically, Plaintiff alleges that the Defendants made fraudulent misrepresentations to Plaintiff which induced it to issue insurance policies. Construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged predicate acts that [*11] do not constitute conduct "actionable as fraud in the purchase or sale of securities." Thus, Plaintiff's claims are not barred by the PSLRA pursuant to *18 U.S.C. § 1964(c)*.

2. Whether Plaintiff Has Stated A RICO Claim For Which Relief May Be Granted

Defendants Aquino and Gagne contend that Plaintiff fails to state a claim under RICO, *18 U.S.C. § 1962(c)*, or a claim for conspiracy to violate RICO under *§ 1962(d)*. n2 Defendants contend that Plaintiff's RICO claims (Count I and II) fail because: 1) Plaintiff fails to allege the existence of an enterprise; 2) Plaintiff's allegations are insufficient to establish that Aquino or Gagne was involved in the operation or management of the enterprise necessary to establish "control" of the enterprise; 3) the alleged predicate acts do not constitute a pattern of racketeering activity; and 4) the predicate acts to not rise to the level of mail or wire fraud. Accepting all allegations in Plaintiff's Amended Complaint as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately stated its RICO claims against Defendants [*12] Aquino and Gagne.

n2 Defendant Freed also contends in its Motion To Dismiss that Plaintiff fails to state a RICO claim against it. However, by its Amended Complaint, Plaintiff does not include Defendant Freed in Counts I or II. Thus, the Court need not address Defendant Freed's arguments with respect to the RICO claims.

[HN3] In order to establish a claim under *section 1962(c)*, a plaintiff must show: "1) the existence of an enterprise affecting interstate commerce; 2) that the

defendant was employed by or associated with the enterprise; 3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and 4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts." *Annulli v. Panikkar, 200 F.3d 189, 198 (3d. Cir. 1999).*

With respect to the Defendants' argument that Plaintiff fails to allege an enterprise, the Court concludes that, construing the Amended Complaint in the light most favorable [*13] to Plaintiff, Plaintiff alleges the existence of an enterprise.[HN4] An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." *18 U.S.C. § 1961(4).* The identification of an enterprise separate from the underlying pattern of racketeering activity is sufficient to withstand a motion to dismiss. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 790 (3d. Cir. 1984).* Here, Plaintiff's Amended Complaint alleges that the "enterprise" was the association in fact and by agreement between SFC and its related entities, Pepper, McGladrey, and Freed. (D.I. 14, P 141). Plaintiff alleges that SFC conducted the business of borrowing money, making loans, and obtaining insurance while Defendants Pepper, through Gagne, and McGladrey, through Aquino, provided the necessary legal and financial advice, guidance and information. Because Plaintiff identifies an enterprise that existed apart from the underlying alleged racketeering activity, the Court concludes that Plaintiff's allegations are sufficient to plead [*14] the existence of an enterprise.

With respect to the Defendants' argument that Plaintiff fails to plead that Aquino or Gagne had "control" of the enterprise, the Court concludes that Plaintiff's allegations are sufficient to withstand dismissal. [HN5] Liability under *§ 1962(c)* is limited to those who participate in the operation or management of the enterprise. *Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).* Plaintiff alleges that, "Aquino guided the enterprise on the effective representation of Student Finance Corporation's financial status . . ." (D.I. 14, P 151). Plaintiff alleges that, "Gagne advised and guided the enterprise on legal issues . . ." (D.I. 14, P 151). Plaintiff also alleges that Aquino and Gagne "participated in, conducted the affairs of, directed the activities of, used and . . . knowingly

  

facilitated, the RICO Enterprise . . . ." (D.I. 14, P150). Reading the allegations of the Amended Complaint in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has alleged facts sufficient to plead "control" of the enterprise by Defendants Aquino and Gagne.

With respect to the Defendants' argument that the predicate acts do not constitute [*15] a pattern of racketeering activity, the Court concludes that Plaintiff has sufficiently pled continuity so as to avoid dismissal.[HN6] A "pattern of racketeering activity" requires the commission of at least two predicate offenses, including mail and wire fraud. *18 U.S.C. §§ 1961(1)(B), 1961(5)*. To establish a pattern, two critical factors must be present: 1) a relationship between the acts of racketeering charged; and 2) a threat of continuing activity, or continuity. *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)*. To establish the continuity requirement, a RICO plaintiff must show that the predicate acts of racketeering either constitute or threaten long-term criminal activity. n3 *Id.* Continuity may be either "close-ended" or "open-ended". Open-ended continuity may be established by evidence that the predicate acts themselves involve a distinct threat of long-term racketeering activity or that the acts are part of an ongoing entity's regular way of doing business. *Id. at 242-43*. In its Amended Complaint, Plaintiff alleges that "[t]here is a threat of continued racketeering activity [*16] in the future because all of the RICO Persons continue in the same or similar lines of business today. . ." (D.I. 14, P 152). Reading the Amended Complaint in the light most favorable to the Plaintiff, the Court concludes that Plaintiff satisfies the requirement of open-ended continuity because Plaintiff has alleged a threat of continued criminal activity.

n3 Defendants do not challenge the relatedness requirement. Accordingly, the Court will discuss only the continuity element.

[HN7] A party can demonstrate close-ended continuity by proving a series of related predicate acts "extending over a substantial period of time." *Id. at 242*. A court may focus on the duration of the underlying scheme rather than on the occurrences of the predicate acts themselves. *Tabas v. Tabas, 47 F.3d 1280, 1294 (3d. Cir. 1995)*; *Nielsen Electronics Institute v. Student*

*Finance Corporation, No. 99-285, 2001 U.S. Dist. LEXIS 25556 at *25 (D. Del. Jan. 16, 2001)*. Reading the Amended Complaint [*17] in the light most favorable to Plaintiff, the Court concludes that Plaintiff sufficiently pled close-ended continuity because it has alleged a scheme extending from 1998 through the spring of 2002.

With respect to the Defendants' argument that the predicate acts do not rise to the level of mail or wire fraud, the Court concludes that Plaintiff has alleged sufficient facts to plead the predicate acts of mail or wire fraud. [HN8] A plaintiff raising a claim of mail or wire fraud must establish two essential elements: "1) a scheme to defraud; and 2) the use of the mails or wires for the purpose of executing the scheme." *Schuylkill Skyport Inn, Inc. v. Rich, No. 95-3128, 1996 U.S. Dist. LEXIS 12655, at *47 (E.D. Pa. Aug. 21, 1996)*. A scheme "need not be fraudulent on its face"; rather, it "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d. Cir. 1991)*(citation and internal quotation marks omitted), cert. denied, *501 U.S. 1222, 111 S. Ct. 2839, 115 L. Ed. 2d 1007 (1991)*. The second requirement, use of the mail or wires [*18] to execute the scheme, requires that the mail or wire communications be "incident to an essential part of the scheme," or "a step in [the] plot," although they need not contain misrepresentations. *Schmuck v. United States, 489 U.S. 705, 710-11, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989)*; *Kehr Packages, Inc., 926 F.2d at 1413*. Reading the Amended Complaint liberally, the Court concludes that Plaintiff has alleged that the Defendants knew of and facilitated communication via the mail and wires to further the scheme.

In sum, the Court concludes that the facts alleged in Plaintiff's Amended Complaint are sufficient to state a RICO claim. Accordingly, the Court will deny the Defendants' motions to dismiss Counts I and II of Plaintiff's Amended Complaint; for violation of RICO and conspiracy to commit a violation of RICO.

3. Whether Plaintiff's Common Law Claims Are Barred As Untimely

By its Motion, the Defendants contend that Pennsylvania law applies to Plaintiff's claims and thus, its claims are barred by the two year statute of limitations. In response, Plaintiff contends that its claims are timely

  

whether Delaware or Pennsylvania law applies because it could not have learned of [*19] the Defendants' participation in the fraudulent scheme until 2004.

The Court concludes that, accepting all allegations in Plaintiff's Amended Complaint as true, Plaintiff has alleged that it did not learn and could not have learned of the Defendants' knowing participation in the fraudulent scheme until the fall of 2004.[HN9] Under either Delaware or Pennsylvania law, the statute of limitations is tolled where the defendants fraudulently conceal their wrongdoing. *Bohus v. Beloff, 950 F.2d 919, 926 (3d Cir. 1991)*; *Albert v. Alex. Brown Mgmt. Servs., No. 762-N, 2005 Del. Ch. LEXIS 100, 2005 WL 1594085 at *19 (Del. Ch. June 29, 2005)*. Plaintiff has alleged that the Defendants knowingly and fraudulently concealed the scheme of making "forbearance payments" on the student loans. Thus, the Court concludes Plaintiff has alleged sufficient facts to adequately plead that its claims are timely.

4. Whether Plaintiff Has Stated Common Law Claims For Which Relief May Be Granted

Defendants contend that Pennsylvania law applies to Plaintiff's common law claims. Defendants further contend that Plaintiff's common law claims are deficient as a matter of law. In response, Plaintiff contends [*20] that Delaware or North Carolina law applies to its common law claims and that it properly pled causes of action.

a. Whether Plaintiff has stated a claim for civil conspiracy to commit fraud.

Defendants contend that Plaintiff has failed to allege malice, an essential element to a civil conspiracy claim under Pennsylvania law. In response, Plaintiff contends that Delaware or North Carolina law applies, and, under both, its allegations are sufficient. Plaintiff further contends that, even if Pennsylvania law applies, it properly pleads malice.

[HN10] Under Delaware or North Carolina law, a claim for civil conspiracy requires: 1) a combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damage. See *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428, 437 n.8 (Del. 2005)*; *DiFrega v. Pugliese, 164 N.C. App. 499, 596 S.E.2d 456, 461-62 (N.C. Ct. App. 2004)*. Under Pennsylvania law, malice is an

essential element to a civil conspiracy claim. See *Jeter v. Brown & Williamson Tobacco Co., 294 F.Supp.2d 681, 688 (W.D. Pa. 2003)*. Malice exists where the defendant intends to injure the plaintiff without [*21] legal justification. *Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (Pa. 1979)*. Construing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged sufficient facts to plead all the elements of a civil conspiracy claim under either Delaware, North Carolina, or Pennsylvania law.

b. Whether Plaintiff has stated a claim for fraud, fraudulent inducement, fraudulent concealment, and aiding and abetting fraud.

Defendants contend that Plaintiff has failed to state a claim for fraud for the following reasons: 1) the facts alleged by Plaintiff are inconsistent with the elements of fraud; 2) Plaintiff fails to plead fraud with particularity pursuant to *Federal Rule of Civil Procedure 9(b)*; and 3) Plaintiff fails to allege facts showing justifiable reliance on the Defendants' alleged misrepresentations.

[HN11] Under Delaware law, the elements of common law fraud are:

> 1) a false representation, usually one of fact, made by the defendant;
> 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to [*22] the truth;
> 3) an intent to induce the plaintiff to act or to refrain from acting;
> 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
> 5) damage to the plaintiff as the result of such reliance.

*Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 (Del. 1992)*. Accepting all allegations in Plaintiff's Amended Complaint as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim for fraud sufficient to survive a motion to dismiss.

With respect to the pleading requirements of *Rule*

  

*9(b)*, the Court finds that Plaintiff's Amended Complaint contains specific allegations of factual misrepresentations made by the Defendants. For example, Plaintiff has alleged that the Defendants knew of the falsity of the financial reports and intended that Plaintiff rely on them. Plaintiff has also alleged that its reliance on the Defendants' misrepresentations was justifiable and that it was harmed as a result. Accordingly, the Court concludes that Plaintiff has sufficiently pled fraud to withstand dismissal.

c. Whether Plaintiff has stated a claim for negligence [*23] and negligent misrepresentation.

Defendants contend that, under Pennsylvania law, Plaintiff's claim for negligence fails because there is no strict privity between the Defendants and Plaintiff. Defendants contend that Plaintiff's claim for negligent misrepresentation should be dismissed because Plaintiff fails to allege justifiable reliance. In response, Plaintiff contends that Pennsylvania law does not apply and contractual privity is not a requirement under Delaware or North Carolina law. Plaintiff further contends that, even under Pennsylvania law, it has sufficiently pled the elements necessary for its negligence claims.

After reviewing the allegations in Plaintiff's Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged the elements of its negligence claims. Considering the requirements of negligence and negligent misrepresentation under the law of Delaware, North Carolina, and Pennsylvania, and the similarity with the elements of fraud discussed above, the Court concludes that Plaintiff's allegations are sufficient to withstand a motion to dismiss.

d. Whether Plaintiff has stated a claim for aiding and abetting breach [*24] of fiduciary duty.

Defendants contend that Pennsylvania law applies and a claim for aiding and abetting a breach of fiduciary duty is not recognized under Pennsylvania law. Defendants further contend that even if such a claim were recognized, Plaintiff fails to allege the existence of a fiduciary duty.

At the motion to dismiss stage, the Court need not accept legal conclusions alleged or inferred in the pleaded facts. Thus, the Court does not predict whether Pennsylvania law would recognize a claim for aiding and

abetting a breach of fiduciary duty. However, considering the elements necessary for such a claim under Delaware and North Carolina law, the Court concludes that, construing the Amended Complaint in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to withstand dismissal. Plaintiff has alleged that SFC was insolvent and that such insolvency led to a fiduciary duty. Plaintiff has also alleged that Defendants knowingly participated in the fraudulent scheme and gave SFC substantial assistance through its accounting and legal services.

e. Whether Plaintiff has stated a claim for deepening insolvency.

Defendants contend that Plaintiff's claim [*25] for "deepening insolvency" should be dismissed because it is not an independent cause of action. Defendant Pepper further contends that, even if it was a cause of action, Plaintiff has no standing to bring the claim. In response, Plaintiff contends that federal courts have found that Delaware, North Carolina, and Pennsylvania have recognized claims for deepening insolvency and it has adequately pled the elements of such a claim.

In support of its contentions, the Defendants and Plaintiff rely on differing interpretations of a Third Circuit case, *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 350 (3d. Cir. 2001)*. Considering the uncertainty of the law in this area and drawing all reasonable factual inferences in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has pled sufficient facts to state a claim for deepening insolvency.

In sum, the Court concludes that Plaintiff's allegations are sufficient to state common law claims for fraud, conspiracy to commit fraud, aiding and abetting breach of fiduciary duty, negligence and negligent misrepresentation against all of the Defendants. In addition, the Court [*26] concludes that Plaintiff's allegations are sufficient to establish that its common law claims are not barred as untimely. Accordingly, the Court will deny Defendants' motions to dismiss with respect to Plaintiff's common law claims.

**IV. CONCLUSION**

For the reasons discussed, the Court granted in part and denied in part Plaintiff's Motion To Compel (D.I. 84). Additionally, the Court denied Defendants' Motions





2007 U.S. Dist. LEXIS 20797, *26

To Dismiss (D.I. 29, 32, 35, 58). See D.I 122.

  

F

1 of 1 DOCUMENT

**B. RAY THOMPSON, JR., et al. v. GLENMEDE TRUST COMPANY, et al.**

**CIVIL ACTION NO. 92-5233**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

*1993 U.S. Dist. LEXIS 7677*

**June 8, 1993, Decided**
**June 10, 1993, Filed; June 11, 1993, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs were numerous individuals and trusts who collectively were a minority shareholder in a corporation. Defendants included numerous individuals, trusts, and corporations that collectively representing the majority shareholder position of the same corporation. The complaint alleged various causes of action, including breach of fiduciary duty. Plaintiffs filed a motion to dismiss pursuant to *Fed. R. Civ. P. 23.1, 12(b)(6)* and *9(b)*.

**OVERVIEW:** Plaintiffs complaint was based on allegations that defendants had initiated a stock buy-back that cause the value of plaintiffs' stock to drop. The complaint alleged a variety of theories, most of which the court rejected by holding: (1) the complaint alleged that a fiduciary relationship existed with only certain defendants and it was dismissed as to the others; (2) plaintiffs admitted that they failed to comply with *Fed. R. Civ. P. 23.1* by making efforts to obtain the desired action from the corporations involved, so that count of the complaint was dismissed; (3) the allegations of the complaint were derivative in nature rather than individual because there was no allegation of harm distinction from that suffered by other stockholders; (4) the complaint failed to allege actions by individual defendants that constituted a breach of fiduciary duty; (5) the civil

conspiracy claim failed because there was no allegation of malice; and (6) the validity of a contractual exculpatory clause could not be determined from the face of the complaint, so dismissal on that ground was denied.

**OUTCOME:** Defendants' motion to dismiss was granted in part and denied in part.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN1] *Federal Rule of Civil Procedure 8(a)* requires that a plaintiff's complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN2] When considering a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, the court shall take all

  

allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. The complaint shall only be dismissed if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims***
[HN3] As a special pleading matter, a count for fraud must be stated with particularity. *Fed. R. Civ. P. 9(b).*

***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims***
[HN4] See *Fed. R. Civ. P. 9(b).*

***Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims***
[HN5] To meet the requirement of *Fed. R. Civ. P. 9(b)*, the complaint must allege sufficient detail as to the circumstances of the alleged fraud so that the defendant will have notice of the precise misconduct charged.

***Civil Procedure > Class Actions > Derivative Actions > General Overview***
[HN6] See *Fed. R. Civ. P. 23.1.*

***Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview***
[HN7] A fiduciary relationship exists where there is a relationship involving trust and confidence, and the proof must show confidence reposed by one side and domination and influence exercised by the other. It is not enough to show that the plaintiff reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship.

***Civil Procedure > Class Actions > Derivative Actions > General Overview***
[HN8] Under Delaware law, the court must examine the nature of wrongs alleged in the body of the complaint rather than the plaintiffs' designation or stated intention in determining whether a claim is derivative or individual. A stockholder can maintain an individual action if he has sustained a "special injury." A special injury is defined as a wrong inflicted upon a stockholder alone or a wrong affecting any particular right which he is asserting such

as preemptive rights, rights involving control of the corporation, or a wrong affecting the stockholders and not the corporation. A shareholder who suffers an injury peculiar to itself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong. However, when an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively on behalf of the corporation.

***Civil Procedure > Federal & State Interrelationships > Erie Doctrine***
***Civil Procedure > Class Actions > Derivative Actions > General Overview***
[HN9] In a diversity action, state law applies to the determination of whether an action is individual or derivative under *Federal Rule of Civil Procedure 23.1.*

***Contracts Law > Remedies > Rescission & Redhibition > General Overview***
[HN10] Rescission of a contract as a remedy is only available to a party to the contract.

***Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements***
[HN11] To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action. A cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice is an essential part of a cause of action for conspiracy.

***Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview***
***Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting***
[HN12] The elements for a claim for aiding and abetting breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

***Business & Corporate Law > Corporations > Directors***

  

*& Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN13] It is clear that officers and directors of a corporation cannot conspire with a corporation. Generally, the acts of the agents of a corporation are the acts of the corporation itself. Since a individual cannot conspire without another party, a corporation cannot conspire with its agents, officers and directors.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting*
[HN14] Under existing Pennsylvania law it appears that the Pennsylvania Supreme Court would not permit an aiding and abetting claim against the officers and directors of a corporation for the wrong of the corporation. A claim for a breach of a fiduciary duty although arising from a contract, is an allegation of tortious conduct. Under Pennsylvania law, officers and directors are not liable for tortious conduct of the corporation in the absence of affirmative participation in the conduct. Under this participation theory, the defendant directors and officers can be liable for knowingly participating in the tortious act.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > Misfeasance & Nonfeasance*
[HN15] It is true that a director or officer of a corporation may have personal liability for damages suffered by third persons when he knowingly participates in a wrongful act. But where directors or officers are charged with nonfeasance, no individual liability attaches. This has always been the rule in Pennsylvania.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
[HN16] Pennsylvania law recognizes the participation theory as a basis of liability. The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by

the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated in, or cooperated therein.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN17] Pennsylvania law provides the circumstances for which a parent corporation may be liable for the acts of its subsidiary within the doctrine of piercing the corporate veil. The Pennsylvania Supreme Court has held that the corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime. In applying the test (for piercing the corporate veil), any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. Care should be taken on all occasions to avoid making the entire theory of the corporate entity useless. In determining whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholder's traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operation of the dominant shareholder.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN18] Allegations of joint action is not sufficient to justify piercing the corporate veil between a parent and subsidiary corporation. The complaint must allege facts sufficient to support a finding that the subsidiary was dominated by the parent to an extent that the subsidiary was a sham or alter ego. Relevant facts for piercing under an alter ego theory would be: (a) insufficient capitalization; (b) intermingling of funds; (c) other officers and directors were not functioning; (d) failure to observe corporate formalities; (e) failure to pay dividends; (f) the fact that the corporation is a facade for the operations of the dominant stockholder.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements*
[HN19] A claim for common-law fraud requires a

 LexisNexis™
 LexisNexis™
 LexisNexis™

1993 U.S. Dist. LEXIS 7677, *

misrepresentation made for the purpose of inducing reliance on the false statement. A claim of fraud based upon failure to disclose information is actionable if there exists a confidential or fiduciary relationship.

*Business & Corporate Law > Agency Relationships > Causes of Action & Remedies > Restitution*
*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
*Torts > Business Torts > Unfair Business Practices > General Overview*

[HN20] Essential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. A necessary element of unjust enrichment is that a benefit must have been conferred for which no compensation was given.

*Torts > Malpractice & Professional Liability > General Overview*

[HN21] To state a claim for professional negligence, plaintiffs must allege: (1) employment by a person or entity giving rise to a duty to the plaintiffs; (2) the failure of the defendant to exercise ordinary skill and knowledge; and (3) that this negligence proximately caused damages to the plaintiff.

*Torts > Negligence > Defenses > Exculpatory Clauses > General Overview*

[HN22] An exculpatory clause is generally valid where three conditions are satisfied. The three conditions are: (1) the clause does not contravene any policy of law, that is, it is not a matter of interest to the public or State; (2) the contract is between persons relating entirely to their own private affairs; and (3) each party is a free bargaining agent in that the agreement is not in effect a mere contract of adhesion. If these conditions are met, and the clause is determined to be valid, the contract must still meet four additional standards in order to be interpreted and construed to relieve a person of liability for his own acts of negligence. The four standards are: (1) the contract immunizing a party from liability for negligence must be construed strictly, since they are not favorites of the law; (2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference

from words of general import can establish it; (3) the contract must be construed against the party seeking immunity from liability; and (4) the burden of establishing the immunity is upon the party seeking protection of the clause. These seven considerations demonstrate that contracts providing for the immunity of parties from their own negligent acts are not regarded positively under the law of the Commonwealth of Pennsylvania.

**COUNSEL:**

For B. RAY THOMPSON, JR., JUANNE J. THOMPSON, CATHERINE V. THOMPSON, ADELLA S. THOMPSON, B. RAY THOMPSON, III, SARAH THOMPSON TARVER, REBEKAH L. THOMPSON, B. RAY THOMPSON, JR., As trustee of five Thompson family trusts, JUANNE J. THOMPSON, as trustee of five Thompson family trusts, DALE A. KEASLING, as trustee of five Thompson family trusts, PLAINTIFFS: MICHAEL C. SPENCER, MILBERG, WEISS, BERSHAD, HYNES & LERACH, ONE PENNSYLVANIA PLAA, NEW YORK, NY 10119, USA. JAMES J. BINNS, JAMES J. BINNS, P.A., 1735 MARKET STREET, 3200 THE MELLON BANK CENTER, PHILA, PA 19103, USA.

For GLENMEDE TRUST COMPANY, DEFENDANT: ELEANOR N. EWING, BARBARA W. MATHER, PEPPER, HAMILTON & SCHEETZ, 18TH & ARCH STS., 3000 TWO LOGAN SQUARE, PHILA, PA 19103, USA. For GLENMEDE CORPORATION, THOMAS W. LANGFITT, ALBERT E. PISCOPO, J. HOWARD PEW, II, J. N. PEW, III, J. N. PEW, IV, R. ANDERSON PEW, JOHN G. PEW, JR., G. THOMPSON PEW, JR., GLENMEDE TRUST COMPANY, as trustee or co-trustee of nine trusts, including the Pew Charitable Trusts, FRANCIS M. RICHARDS, JR., as trustee or co-trustee of nine trusts, including the Pew Charitable Trusts, KARIN E. MYRIN, as trustee or co-trustee of nine trusts, including the Pew Charitable Trusts, SAMUEL W. MORRIS, SR., as trustee or co-trustee of nine trusts, includign the Pew Charitable Trusts, DEFENDANTS: BARBARA W. MATHER, PEPPER, HAMILTON & SCHEETZ, 18TH & ARCH STS., 3000 TWO LOGAN SQUARE, PHILA, PA 19103-2799, USA. For ROBERT P. HAUPTFUHRER, DEFENDANT: STEVEN B. FEIRSON, MARY MINEHAN MC KENZIE, DECHERT, PRICE & RHOADS, 1717 ARCH STREET,





4000 BELL ATLANTIC TOWER, PHILA, PA 19103-2793, USA. BARBARA W. MATHER, PEPPER, HAMILTON & SCHEETZ, 18TH & ARCH STS., 3000 TWO LOGAN SQUARE, PHILA, PA 19103-2799, USA.

**JUDGES:** [*1] HUTTON

**OPINION BY:** BY THE COURT; HERBERT J. HUTTON

**OPINION: MEMORANDUM AND ORDER**

HUTTON, J.

June 8, 1993

Presently before the Court is a Motion to Dismiss pursuant to *Federal Rules of Civil Procedure 23.1, 12(b)(6)* and *9(b)*, the plaintiffs' response and the defendants' reply. The Motion is filed on behalf of defendants Glenmede Trust Company, Glenmede Corporation, Thomas W. Langfitt, Albert E. Piscopo, J. Howard Pew, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris, Sr..

### I. BACKGROUND

#### A. Parties

The plaintiffs in this matter include seven individual members of the Thompson family. n1 In addition, three plaintiffs have sued in their capacity as trustees of five Thompson family trusts. n2 The individual plaintiffs, in addition to their common bond in the Thompson family name, all hold shares of stock in Oryx Energy Corporation ("Oryx"). In addition, the five Thompson family trusts each hold shares of Oryx stock for the benefit of members of the Thompson family. Collectively, the plaintiffs were the second largest shareholder of Oryx. All plaintiffs shall be commonly referred [*2] to as the "Thompson Family" or "plaintiffs."

> n1 The plaintiffs are as follows: B. Ray Thompson, Jr., Juanne J. Thompson, Catherine V. Thompson, Adella S. Thompson, B. Ray Thompson, III, Sarah Thompson Tarver, Rebekah L. Thompson.

> n2 The trustees of the five trusts are as follows: B. Ray Thompson, Jr., Juanne J. Thompson, Dale A. Keasling.

The plaintiffs have named as defendants the Glenmede Trust Company ("Glenmede Trust") and its parent Glenmede Corporation. Glenmede Trust is Glenmede Corporation's wholly owned subsidiary. The plaintiffs have also named J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., and G. Thompson Pew, Jr., as defendants (hereinafter "Pew Defendants"). These defendants are shareholders of Glenmede Corporation and have for the most part been directors of one or both of Glenmede Corporation and Glenmede Trust during the times relevant to the events complained of in the complaint. John G. Pew, Jr. was also a director of Oryx.

The complaint also names Thomas [*3] W. Langfitt. Mr. Langfitt is the president, chief executive officer and a director of both Glenmede Corporation and Glenmede Trust. Mr. Langfitt is also the president of seven trusts commonly known as the Pew Charitable Trusts. n3 In addition, the plaintiffs have named Albert E. Piscopo. Mr. Piscopo is the executive vice president and chief financial officer of Glenmede Corporation and Glenmede Trust. He was also a director of Oryx.

> n3 The seven trusts are as follows: the Pew Memorial Trust, the J. Howard Pew Freedom Trust, The Mabel Pew Myrin Trust, The J. N. Pew Jr. Charitable Trust, The Medical Trust, Mary Anderson Trust, and The Knollbrook Trust.

The plaintiffs have also named Glenmede Trust in its capacity as trustee of nine trusts. These trusts include the seven Pew Charitable Trusts and The Waldorf Educational Foundation, and The J. Howard Pew Fund for Presbyterian Uses.

The remaining trustees of these trusts have also been named in the capacity as trustee. Defendants, J. Howard Pew, II, J. N. Pew, III, [*4] J. N. Pew, IV, and R. Anderson Pew, have been members of the board that assists in managing the Pew Charitable Trusts. Francis M. Richard, Jr. is sued in his capacity as co-trustee for the





Medical Trust, one of the Pew Charitable Trusts. Karin E. Myrin and Samuel W. Morris, Sr. are sued in their capacities as co-trustees for the Waldorf Educational Foundation. The plaintiff has referred to all these trusts and trustees as the "Defendant Trusts."

Finally, the plaintiffs have named Robert P. Hauptfuhrer. Mr. Hauptfuhrer is the chairman of the board, a director, and chief executive officer of Oryx.

## B. Plaintiffs' Claims

The triggering event which prompted the filing of this diversity action involves a stock buy-back transaction in which Oryx purchased approximately 25.3 million shares held by the trusts of which Glenmede Trust was trustee. Glenmede Trust held shares of Oryx as trustee for the previously named nine trusts. Oryx purchased the 25.3 million shares for $ 1.36 billion. As a result of the purchase, the market for Oryx shares began to fall. From the date of the purchase, September 11, 1990 to the filing of the complaint on December 7, 1992, Oryx stock fell from a [*5] high of approximately $ 54 a share to the low to mid $ 20 range. The Thompson Family alleges a loss of approximately $ 80 million as a result of the buy-back transaction.

The plaintiffs contend that the goals of the transaction were: (1) to divert funds improperly out of Oryx and into the Defendant Trusts; (2) to liquidate or diversify the Defendant Trusts' holdings of Oryx stock and to maximize the value received for the Defendant Trusts' holdings in Oryx; (3) to entrench and protect defendant Hauptfuhrer in his executive position at Oryx; and (4) to allay his concerns that the Glenmede/Pew defendants might act unilaterally in a way that would threaten his position.

Plaintiffs have alleged that the transaction was instigated, devised and executed by Glenmede Trust, its parent, defendant Glenmede Corporation, and the Pew Defendants and the Defendant Trusts. (Complaint PP 3, 34). The plaintiffs allege that Glenmede Trust and Glenmede Corporation are controlled by the Pew family. Allegedly, the stock transaction was detrimental to Oryx and the plaintiffs and was extremely lucrative for Glenmede Corporation, Glenmede Trust, the Defendant Trusts and the Pew Defendants. (Complaint P 43). [*6] Plaintiffs allege that Glenmede Trust failed to advise them before and after the transaction of its consequences

to Oryx.

According to the allegations of the complaint, Glenmede owed fiduciary duties to plaintiffs (the Thompson family interests) at the same time as it owed duties to the Pew family interests. Plaintiffs allege that Glenmede and the Pew family interests are commonly controlled and indivisible, making the duties owed to plaintiffs even clearer. Those duties were allegedly breached when the Pew family interests were advanced by the buy-back transaction, and the Thompsons were ignored by Glenmede and harmed by the transaction it precipitated.

All defendants named in this action with the exception of defendant Robert P. Hauptfuhrer have collectively joined in this motion to dismiss.

## II. DISCUSSION

[HN1] *Federal Rule of Civil Procedure 8(a)* requires that a plaintiff's complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." *Fed.R.Civ.P. 8(a)*. Defendants have moved to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. [HN2] When considering this motion, the Court shall take all allegations in the complaint [*7] as true and construe them in the light most favorable to the plaintiffs. *H.J. Inc. v. Northwest Bell Tel. Co., 492 U.S. 229, 109 S. Ct. 2893, 2906 (1989)*. The complaint shall only be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (quoting *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*).

[HN3] As a special pleading matter, a count for fraud must be stated with particularity. *Fed.R.Civ.P. 9(b)*. Rule 9(b) provides:

> [HN4] (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*Fed.R.Civ.P. 9(b)*. [HN5] To meet the requirement of

  

Rule 9(b), the complaint must allege sufficient detail as to the circumstances of the alleged fraud so that the defendant will have notice of the precise misconduct charged. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984),* [*8] cert. denied, *469 U.S. 1211, 84 L. Ed. 2d 327, 105 S. Ct. 1179 (1985); In re Scott Paper Securities Litigation, 138 F.R.D. 56, 58 (E.D. Pa. 1991); Antinoph v. Laverell Reynolds Securities, Inc., 703 F. Supp. 1185, 1188 (E.D. Pa. 1989)* (Hutton, J.).

The defendants have also moved to dismiss pursuant to *Federal Rule of Civil Procedure 23.1.* The defendants contend that some of the plaintiffs' claims are derivative and must be filed on behalf of Oryx. However, they argue that since the plaintiffs have not complied with the pleading requirements of a derivative action under Rule 23.1, these "derivative claims" must be dismissed. Rule 23.1, entitled "Derivative Actions by Shareholders," in pertinent part provides:

> [HN6] In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that [*9] the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

The Court will address each count separately.

**A. Count One: Breach of Fiduciary Duty**

Count one alleges violations of fiduciary duties owed to the Thompson Family. The count seeks relief against Glenmede Corporation, Glenmede Trust, the Pew Defendants, the Defendant Trusts, Defendant Langfitt and Defendant Piscopo. The plaintiffs' fiduciary allegations can be classified as: (1) the fiduciary relationship arising from Glenmede Trust's oral and written agreement to provide financial guidance to the Thompson Family (Complaint P 21); and (2) the fiduciary relationship arising from the defendants' status as dominant and controlling [*10] shareholders and/or directors of Oryx. (Complaint P 24).

The plaintiffs have asserted that the defendants violated their fiduciary duties by:

> (a) failing to advise plaintiffs that Oryx shares should be sold prior to the buy-back transaction;

> (b) participating in the scheme and conspiracy [improperly diverting funds out of Oryx to the benefit of the Defendant trusts and entrenching defendant Hauptfuhrer at Oryx];

> (c) entering into the buy-back transaction; and

> (d) failing to advise plaintiffs at the time of or following the transaction of the detrimental effect of the transaction on Oryx and plaintiffs and to advise plaintiffs to sell their Oryx stock.

(Complaint P 44).

**1. Agreement for Financial Guidance -- Defendant Glenmede Trust Company**

The plaintiffs contend that Glenmede Trust owed fiduciary duties to them in its capacity as the plaintiffs' investment advisor. (Complaint PP 1 and 20). This contractual fiduciary relationship allegedly covered the plaintiffs' ownership interest in Oryx. The defendant Glenmede Trust does not challenge the plaintiffs' claim of violation of this particular fiduciary relationship in this





motion.

**2. Defendant Glenmede [*11] Corporation, Defendant Trusts, Defendant Langfitt, Defendant Piscopo and the Pew Defendants**

The plaintiffs' complaint, although recognizing a distinction between Glenmede Trust and Glenmede Corporation, has commonly referred to both Glenmede Trust and Glenmede Corporation. The plaintiffs' reasoning behind this common reference is the allegation that "both entities have substantially similar management and directors and have each acted interchangeably. . ." (Complaint P 11). Although not entirely clear, it is apparent from the complaint and the parties' briefs that the fiduciary relationship with respect to the investment agreement is solely between defendant Glenmede Trust and the plaintiffs. (Complaint PP 1 and 20). The complaint states that the professional fiduciary is Glenmede Trust. (Complaint P 1).

Nevertheless, with respect to Glenmede Corporation as well as the Pew defendants, the Defendant Trusts, Defendant Piscopo, and Defendant Langfitt, the plaintiffs have not alleged a fiduciary relationship. [HN7] "A fiduciary relationship exists where there is 'a relationship involving trust and confidence, and the proof must show confidence reposed by one side and domination and [*12] influence exercised by the other." *Antinoph v. Laverell Reynolds Sec. Inc., 703 F. Supp. 1185, 1188 (E.D. Pa. 1988),* (Hutton, J.), (quoting, *Lehner v. Crane Co., 448 F. Supp. 1127, 1131 (E.D. Pa. 1978));* See also *City of Harrisburg v. Bradford Trust, 621 F. Supp. 463, 473 (M.D. Pa. 1985).* "It is not enough to show that the plaintiff reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship." *City of Harrisburg, 621 F. Supp. at 473; Antinoph, 703 F. Supp. at 1188.*

The plaintiffs' complaint does not allege that plaintiffs have reposed their trust in these particular defendants nor does it allege that these particular defendants accepted a fiduciary relationship with the plaintiffs. *Antinoph, 703 F.Supp at 1188; Bradford Trust, 621 F. Supp. at 473-474.* The plaintiffs have only alleged the investment advisory fiduciary relationship with respect to Glenmede Trust. Accordingly, the plaintiffs' complaint does not allege a claim against these [*13] defendants for violation of a fiduciary duty.

**3. Status as Shareholder and Director of ORYX**

To the extent that the plaintiffs have raised claims for breach of fiduciary duties arising from the defendants' status as dominant and controlling shareholder and/or directors of Oryx in count one, the plaintiffs' claim shall be dismissed. The plaintiffs freely admit that they have not complied with the requirements of *Fed.R.Civ.P. 23.1.* (Plaintiffs' Memorandum in Opposition at 9). In particular, the plaintiffs have not alleged that they have made efforts to obtain the desired action from the directors or comparable authority and from the shareholders or members, or the reasons for the failure to obtain the action or for not making the effort. Instead, they contend that Rule 23.1 does not apply to their complaint because it only seeks relief for claims which are individual. The defendants contend that these claims are derivative.

[HN8] Under Delaware law, the state of incorporation of Oryx, the court must examine the nature of wrongs alleged in the body of the complaint rather than the plaintiffs' designation or stated intention in determining whether a claim is derivative or individual. [*14] n4 *Brug v. The Enstar Group, Inc., 755 F. Supp. 1247, 1257 (D.Del. 1991),* (citing, Lipton v. News Int'l, Plc, 514 a.2d 1075, 1078 (Del. 1986)). A stockholder can maintain an individual action if he has sustained a "special injury." *Lipton, 514 A.2d at 1078.* A special injury is defined as a wrong inflicted upon a stockholder alone or a wrong affecting any particular right which he is asserting such as preemptive rights, rights involving control of the corporation, or a wrong affecting the stockholders and not the corporation. Id. (quoting *Elster v. American Airlines, Inc., 34 Del. Ch. 94, 100 A.2d 219, 223 (Del.Ch. 1953)).* "A shareholder who suffers an injury peculiar to itself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong." *Lipton, 514 A.2d at 1079.* However, "when an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively on behalf of the corporation." *Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del. 1970).* [*15]

n4 [HN9] In a diversity action, state law applies to the determination of whether an action is individual or derivative under *Federal Rule of Civil Procedure 23.1. Sax v. World Wide Press,*

*Inc.*, 809 F.2d 610, 613 (9th Cir. 1987); *Brown v. Ferro Corp.* 763 F.2d 798, 803 (6th Cir.) ("Shareholder's derivative actions are governed by *Rule 23.1 of the federal Rules of Civil Procedure*, and federal courts apply the law of the state in which the company is incorporated."), cert. denied, 474 U.S. (1985).

The plaintiffs' claims arising from the particular breach of the fiduciary duty existing as a result of the defendants' status as dominant and controlling shareholder and/or directors of Oryx are not individual. These claims are derivative. See *MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc., 1985 WL 21129* (Del.Ch.), (citing, *Gearhart Industries, Inc. v. Smith International, 741 F.2d 707, 721 (5th Cir. 1984); Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del.Sup. 1970). [*16]*

The plaintiffs have not identified any wrong peculiar to them with respect to this violation. The plaintiffs' injuries are common to all shareholders of Oryx and to Oryx itself. The complaint states that the buy-back transaction was "inimical to the best interests of Oryx and its remaining shareholders, including the Thompson plaintiffs. . ." (Complaint P 36). The plaintiffs' complaint primarily articulates that the fiduciary breach of the defendants resulted in the decline in value of their shareholdings in Oryx. (Complaint P 47). The best summary of the plaintiffs' injuries appears in the plaintiffs' complaint at paragraph 4. It provides:

> As a result of the buy-back transaction, the Oryx shareholders remaining after the transaction (including plaintiffs) have seen the apparent value of their company shares plummet from a high of over $ 53 per share on the day of the transaction, to the low- to mid-$ 20's per share today. The loss in value of the plaintiffs' Oryx shares since the buy-back transaction is over $ 80 million.

Further, the relief which the plaintiffs are requesting in their complaint confirms this determination. The relief sought may be an indicator as to the derivative [*17] nature of a claim. *Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 352 (Del. 1988).* The complaint in this case includes the request for the following relief with respect to count one:

> B) . . . Rescission of the buy-back transaction;
>
> . . .
>
> D) . . . Disgorgement of any consideration derived by any defendant from the buy-back transaction, and imposition of a constructive trust on any such consideration.

[HN10] Rescission of a contract as a remedy is only available to a party to the contract. *Paul S. Mullin & Assocs., Inc. v. Bassett, 632 F. Supp. 532, 537 (D.Del 1986).* The plaintiffs were not a party to the buy-back transaction between Glenmede Trust and Oryx. Rescission could only be available to one of those parties. Further, the plaintiffs recognized that they would not be personally entitled to disgorgement consideration by requesting a constructive trust. These remedies are the type of remedies expected to be pled in a derivative action seeking relief on behalf of the corporation.

Since the violation of this fiduciary relationship is derivative, the plaintiffs may not maintain this claim without first complying [*18] with *Federal Rule of Civil Procedure 23.1.* Plaintiffs have admitted that they have not complied with the rule's requirements. Accordingly, this claim is dismissed with respect to all defendants who have been named in this count for failure to meet the requirements of Rule 23.1.

**B. Count Two**

**1. Civil Conspiracy**

Count two seeks liability for civil conspiracy against all defendants. In *Burnside v. Abbott Laboratories, 351 Pa. Super. 264, 505 A.2d 973 (Pa.Super. 1985),* the Pennsylvania court stated:

> [HN11] To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action. A cause of action for conspiracy requires that two or more persons combine

  

or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice is an essential part of a cause of action for conspiracy.

Id. at 980. (citations omitted). See also *Murphy v. Villanova Univ., 547 F. Supp. 512, 522 (E.D. Pa. 1982),* aff'd without op., *707 F.2d 1402 (3d Cir. 1983);* [*19] *Swartzbauer v. Lead Industries Ass'n, Inc., 794 F. Supp. 142 (E.D. Pa. 1992).*

The plaintiffs' complaint provides:

The primary goals of the scheme and conspiracy were:

(a) to divert funds improperly out of Oryx into the Defendant Trusts; to liquidate or diversify the Defendant Trusts' holdings of Oryx stock out of Oryx, preferably into cash or other diversified assets; and to maximize the value received for the Defendant Trusts' holdings in Oryx; and

(b) to entrench and protect Hauptfuhrer in his executive position at Oryx and allay his concerns that the Glenmede/Pew defendants might act unilaterally in a way that would threaten his position.

(Complaint P 32). The complaint fails to plead a cause of action for civil conspiracy. Noticeably absent from the plaintiffs' conspiracy allegations is the essential element of malice. The complaint is devoid of any allegation that the defendants acted with the intent to injure the plaintiffs. Accordingly, the plaintiffs' conspiracy allegations are dismissed.

**2. Aiding and Abetting**

Count two of the plaintiffs' complaint alleges aiding and abetting against all defendants. In support [*20] of their claim, the plaintiffs cite *section 876 of the Restatement (Second) of Torts.* Section 876, entitled "Persons Acting in Concert," provides:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Restatement (Second) of Torts § 876.* The plaintiffs contend that the defendants are jointly and severely liable for the fiduciary breach of Glenmede Trust because they acted in concert. Apparently, the plaintiffs are proceeding under 876(b).

A claim for aiding and abetting in a breach of a fiduciary duty as described by § 876(b) of the Restatement, although not specifically provided for by the Pennsylvania Supreme Court, has been recognized as a cognizable claim in the Eastern District [*21] of Pennsylvania. In *Pierce v. Rossetta Corp., Civil Action No. 88-5873, 1992 WL 165817* (E.D. Pa. June 12, 1992), anticipating the acceptance of the claim by Pennsylvania courts the district court held:

[HN12] the elements for a claim for aiding and abetting breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

Id. at *8 (citing, *Restatement (Second) Torts § 876*

  

(1979); *Kranzdorf v. Green, 582 F. Supp. 335, 337 (E.D. Pa. 1983))*. The Pierce court based the decision on a thorough examination of relevant Pennsylvania authority.

The defendants do not take issue with the Pierce decision. However, the defendants' contend that this aiding and abetting liability does not extend to the officers or directors of a corporation for a breach committed by the corporation. The defendants contend that the reasoning which bars a claim of conspiracy between officers and directors of a corporation and the corporation itself necessarily prevents the [*22] plaintiffs' aiding and abetting claim.

[HN13] It is clear that officers and directors of a corporation cannot conspire with a corporation. *Nix v. Temple Univ, 408 Pa. Super. 369, 596 A.2d 1132, 1137 n.3 (Pa.Super 1991)* (citing, *Daniel Adams Assoc. v. Rimbach Pub., Inc., 360 Pa. Super. 72, 519 A.2d 997 (Pa.Super. 1987)); Accord, e.g., Scott v. Township of Bristol, Civil Action No. 1412, 1990 WL 178556 (E.D. Pa. 1990),* (Hutton, J.). Generally, the acts of the agents of a corporation are the acts of the corporation itself. Since a individual cannot conspire without another party, a corporation cannot conspire with its agents, officers and directors. *Jagielski v. Package Mach. Co., 489 F. Supp. 232, 233 (E.D. Pa. 1980)*.

The plaintiffs have not cited any Pennsylvania authority for the proposition that a director or officer of a corporation could be liable for aiding and abetting a fiduciary breach by the corporation. However, this is not surprising given that no Pennsylvania court has yet held any individual liable for aiding and abetting a fiduciary breach. Nor do the cases which the plaintiffs cite support the conclusion that [*23] officers and directors of a corporation can be liable for aiding and abetting a breach of a fiduciary duty by the corporation.

The plaintiffs' reliance on *Seaboard Industries, Inc. v. Monaco, 442 Pa. 256, 276 A.2d 305 (1971),* is not persuasive. Seaboard involved the liability of a director for joint participation of, approving of, acquiescing in, or concealing a breach of a fiduciary of another director owed to the corporation. Id. Thus, it involved a breach committed by a director. It did not involve liability of a director for a corporate breach of a fiduciary duty. Nothing in the opinion would lead this court to the conclusion that aiding and abetting could be established against a director for assisting the corporation in a fiduciary breach.

Plaintiffs' remaining cases are also not persuasive. *Kranzdorf v. Green, 582 F. Supp. 335 (E.D. Pa. 1983)* (aiding and abetting liability claim permitted against a non-agent of the corporation); *Ging v. Parker-Hunter Inc., 544 F. Supp. 49 (W.D. Pa. 1982)* (permitting corporation to be liable for aiding and abetting securities fraud of a third party); *Hickman v. Taylor, 75 F. Supp. 528 (E.D. Pa. 1947)* [*24] (non-agent alleged to have participated in corporation's negligence).

Nevertheless, [HN14] under existing Pennsylvania law it appears that the Pennsylvania Supreme Court would not permit an "aiding and abetting" claim against the officers and directors of a corporation for the wrong of the corporation. A claim for a breach of a fiduciary duty although arising from a contract, is an allegation of tortious conduct. See *Zimmer v. Gruntal & Co. Inc., 732 F. Supp. 1330, 1336 (W.D.Pa. 1989); Restatement (Second) of Torts, § 874 (1979)*. Under Pennsylvania law, officers and directors are not liable for tortious conduct of the corporation in the absence of affirmative participation in the conduct. *Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 470 A.2d 86, 90 (Pa. 1983); Chester-Cambridge Bank & Trust Co. v. Rhodes, 346 Pa. 427, 31 A.2d 128, 131 (Pa. 1943).* Under this participation theory, the defendant directors and officers can be liable for knowingly participating in the tortious act. *Wicks, 470 A.2d at 90; Chester-Cambridge Bank & Trust Co., 31 A.2d at 131;* see also [*25] *Newman v. Forward Lands, Inc., 418 F. Supp. 134, 137 (E.D. Pa. 1976)*.

In Chester-Cambridge Bank & Trust Co. v. Rhodes, the Supreme Court of Pennsylvania, in addressing the issue of officer and director liability stated:

> [HN15] It is true that a director or officer of a corporation may have personal liability for damages suffered by third persons when he knowingly participates in a wrongful act.

See *Malone v. Pierce, 231 Pa. 534, 80 A. 979;*

*Warner v. McMullin, 131 Pa. 370, 18 A. 1056.*

But where, as in this case, directors or officers are charged with nonfeasance, no individual liability attaches. This has always been the rule in this jurisdiction. See *Spering's Appeal, 71 Pa. 11, 10 Am.Rep. 684; Swentzel v. Penn Bank, 147 Pa. 140, 23 a. 405, 415, 15 L.R.A. 305, 30 A.m.St.Rep. 718; Cohen, et al. v. Maus,*





*et al., 297 Pa. 454, 147* A.103. In the latter case we held that directors of a corporation could not [*26] be charged with individual liability for conversion of property by the corporation of which they had no actual knowledge. However *(297 Pa. at page 458, 147 A. 103)*, Justice Schaffer, afterwards Chief Justice, pointed out that a director who participated actively in the conversion would have been personally liable.

*31 A.2d at 131.* The Court in a more recent discussion of the participation theory stated:

> [HN16] Pennsylvania law recognizes the participation theory as a basis of liability. The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein. (citations omitted)

*Wicks, 470 A.2d at 90.*

Accordingly, this Court will [*27] apply Pennsylvania's participation theory to the plaintiffs' aiding and abetting claim in Count II with respect to the acts of directors and officers of Glenmede Trust. Therefore, if the plaintiffs have alleged that the directors and officers knowingly participated in, cooperated or directed the corporation's breach of fiduciary duty, Count II against these individuals will survive a motion to dismiss.

With respect to the defendant directors and officers of the corporation, the plaintiffs have not specifically alleged that these individuals have participated in the breach of the fiduciary duty. The plaintiffs must plead that each defendant director or officer "actively participated in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the [plaintiffs]." See *Newman v. Forward Lands Inc., 418 F.*

*Supp. 134, 136 (E.D. Pa. 1976).*

In addition, the Court recognizes that a claim for aiding and abetting a breach of a fiduciary duty would exist against non-agents of Glenmede Trust under Pennsylvania law. *Pierce v. Rossetta Corp., Civil Action No. 88-5873, 1992 WL 165817* (E.D. Pa. June 12, 1992). However, the Court finds [*28] that based upon the allegations in the complaint, plaintiffs have not sufficiently stated claims for aiding and abetting with respect to the remaining defendants. The plaintiffs have not alleged the requirements of aiding and abetting as set forth in *Pierce v. Rossetta Corp., 1992 WL 165817* at *8. The complaint does allege a breach of a fiduciary duty by Glenmede Trust as discussed above. The complaint also alleges that all the defendants had knowledge of the fiduciary relationship. (Complaint P 46). However, the plaintiffs have not alleged substantial assistance or encouragement in effecting the breach by the remaining defendants who were not acting as officers and directors of the Glenmede Trust. Accordingly, Count II with respect to non-agents of Glenmede Trust is dismissed.

### 3. Glenmede Corporation

The plaintiffs seek to extend liability to Glenmede Corporation as the parent for the acts of Glenmede Trust on the basis of aiding and abetting liability. The defendant Glenmede Corporation contends that it cannot be liable for aiding and abetting a breach of a fiduciary duty owed by its wholly owned subsidiary for the same reasons that a director or officer cannot be [*29] liable for aiding and abetting the corporation of which they control. Glenmede Corporation, citing *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 777, 81 L. Ed. 2d 628, 104 S. Ct. 2731 (1984)*, contends that a parent corporation cannot conspire with a wholly-owned subsidiary because they have a single conscience and are run by a "single driver." Thus, it argues that it cannot be liable for aiding and abetting its subsidiary.

[HN17] Pennsylvania law provides the circumstances for which a parent corporation may be liable for the acts of its subsidiary within the doctrine of piercing the corporate veil. *Parker v. Bell Asbestos Mines, Ltd., 607 F. Supp. 1397 (D.C. Pa. 1985); McCarthy v. Ference, 358 Pa. 485, 58 A.2d 49 (Pa. 1948).* In *First Realvest Inc. v. Avery Builders, Inc., 410 Pa. Super. 572, 600 A.2d 601 (Pa.Super. 1991)*, the court stated:

  

The Pennsylvania Supreme Court has held that the corporate form "will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." In applying the test (for piercing the corporate veil), ... any court must start from the general [*30] rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . Care should be taken on all occasions to avoid making "the entire theory of the corporate entity. . . useless. . ."

*Id. at 604,* (citations omitted). In determining whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholder's traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operation of the dominant shareholder. *Carpenters 's Health and Welfare Fund v. Ambrose, 727 F.2d 279 (3d Cir. 1983); Village at Camelback Property Owners Assn. Inc. v. Carr, 371 Pa. Super. 452, 538 A.2d 528 (Pa.Super. 1988); Wicks v. Milzoco Builders Inc., 503 Pa. 614, 470 A.2d 86, 90-91 (Pa. 1983).*

In this case, Glenmede Trust is the wholly owned subsidiary of Glenmede Corporation. The plaintiffs have alleged that the entities have "substantially similar management and directors and have each acted interchangeably with the other [*31] with respect to the matters described in [the] complaint." (Complaint P 11). However, this alone is not sufficient to allege that Glenmede Trust is a sham or alter ego of the Glenmede Corporation. [HN18] Allegations of joint action is not sufficient to justify piercing the corporate veil between a parent and subsidiary corporation. *Nobers v. Crucible, Inc., 602 F. Supp. 703 (W.D. Pa. 1985).* The complaint must allege facts sufficient to support a finding that Glenmede Trust was dominated by Glenmede Corporation to an extent that Glenmede Trust was a sham or alter ego. Relevant facts for piercing under an alter ego theory would be:

(a) insufficient capitalization;

(b) intermingling of funds;

(c) other officers and directors were not functioning;

(d) failure to observe corporate formalities;

(e) failure to pay dividends;

(f) the fact that the corporation is a facade for the operations of the dominant stockholder;

*Nobers v. Crucible, Inc., 602 F. Supp. at 707; Village at Camelback Property Owners Assn. Inc., 538 A.2d at 535; United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981).* [*32] The complaint does not meet these requirements.

However, the plaintiffs contend that the existence of fraud in the complaint is sufficient for purposes of piercing the corporate veil. The complaint has alleged that Glenmede Trust was used to perpetrate common law fraud. See infra, at 23-24. Considering the complaint in light most favorable to the plaintiffs as the Court must do, the plaintiffs may have the potential for piercing the corporate veil of Glenmede Trust for this fraud. Accordingly, Glenmede Corporation's motion to dismiss count two is denied.

## C. Count Three

In count three, the plaintiffs allege common law fraud against all defendants. [HN19] A claim for common-law fraud requires a misrepresentation made for the purpose of inducing reliance on the false statement. *Antinoph v. Laverell Reynolds Securities Inc., 703 F. Supp. 1185, 1187 n.1.* A claim of fraud based upon failure to disclose



information is actionable if there exists a confidential or fiduciary relationship. See Id.; *City of Harrisburg v. Bradford Trust Co., 621 F. Supp. 463, 473 (D.C. Pa. 1985)*; see e.g. *Federal Land Bank of Baltimore v. Fetner, 269 Pa. Super. 455, 410 A.2d 344 (Pa.Super. 1979)*, [*33] cert. denied, *446 U.S. 918, 64 L. Ed. 2d 273, 100 S. Ct. 1853 (1980)*.

As the Court has previously discussed, the plaintiffs' complaint has alleged a confidential/fiduciary relationship with respect to Glenmede Trust. The complaint provides that the "defendants concealed the pendency of the buy-back transaction until it was consummated and announced on September 11, 1990." (Complaint P 37). The defendants also allegedly concealed knowledge and information regarding Oryx's inability to generate capital needed to ultimately allow Oryx to create value for its shareholders and their knowledge that the buy-back transaction would operate to depress the value of the plaintiffs' stock. (Complaint PP 37, 38). Therefore, the complaint states a common law claim against Glenmede Trust.

However, the complaint does not allege a claim against defendants, Glenmede Corporation, the Pew Defendants, the Defendant Trusts, Defendants Piscopo and Defendant Langfitt. As explained in the Court's discussion of count one, no fiduciary relationship between these defendants and the plaintiffs has been alleged. Accordingly, the plaintiffs' common law fraud claim is dismissed against these defendants.

## D. [*34] Count Four

Count four seeks relief against Glenmede Trust, Glenmede Corporation and the Defendant Trusts for unjust enrichment. In *Burgettstown-Smith Township Joint Sewage Authority v. Langeloth Townsite Company, 403 Pa. Super. 84, 588 A.2d 43 (Pa.Super. 1991)*, the court noted that:

> [HN20] essential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

Id. at 44, (quoting, *Wolf v. Wolf, 356 Pa. Super. 365, 514 a.2d 901, 905-06 (Pa.Super. 1986)*, overruled on other grounds by *Van Buskirk v. Van Buskirk, 527 Pa. 218, 590 A.2d 4, 8 (Pa. 1991)*). "A necessary element of unjust enrichment is that a benefit must have been conferred for which no compensation was given." Meyers Plumbing & Heating Supply Co. v. West End Fed. Sav. & *Loan Ass'n, 345 Pa. Super. 559, 498 A.2d 966, 969 (Pa.Super. 1985)*. The plaintiffs' complaint fails to allege the requisites of such a claim. Accordingly, Count four [*35] of the complaint is dismissed.

## E. Count Five

The fifth count of the plaintiffs' complaint alleges breach of contract by both Glenmede Trust and Glenmede Corporation. As the Court has previously discussed, the complaint alleges an investment advisory agreement in which Glenmede Trust accepted the position as the plaintiffs' professional fiduciary. (Complaint PP 1, 17 and 20). Glenmede Trust does not oppose the claim in the motion. However, Glenmede Corporation contends that it is not a party to the investment advisory contract and, therefore, it can not be liable on the contract simply due to its parent subsidiary relationship. The plaintiffs contend that liability extends pursuant to the equitable doctrine of piercing the corporate veil. As the Court has found that the complaint alleges a claim for piercing the corporate veil, Glenmede Corporations motion to dismiss count five is denied.

## F. Count Six

The last count of the plaintiffs' complaint alleges negligence against both Glenmede Trust and Glenmede Corporation. The plaintiffs are contending that Glenmede Trust is liable for professional negligence with respect to its oral and written agreement to act as [*36] the plaintiffs' investment advisor and that the Glenmede Corporation is liable for both its participation in the negligence and under the plaintiffs' theory of piercing the corporate veil.

[HN21] To state a claim for professional negligence, the plaintiffs must allege: (1) employment by a person or entity giving rise to a duty to the plaintiffs; (2) the failure of the defendant to exercise ordinary skill and knowledge; and (3) that this negligence proximately caused damages to the plaintiff. See *Schenkel v. Monheit,*

  

*266 Pa. Super. 396, 405 A.2d 493, 494 (Pa.Super. 1979),* (Essential elements for cause of action against attorney for professional negligence).

The plaintiffs' complaint alleges that the plaintiffs contracted with Glenmede Trust to provide investment advise and guidance with respect to the plaintiffs' holdings in Oryx stock. Allegedly, the defendants breached their duty to exercise ordinary skill and knowledge by:

> (a) failing to advise plaintiffs that Oryx shares should be sold prior to the buy-back transaction;

> (b) participating in the scheme and conspiracy [improperly diverting funds out of Oryx to the benefit of the Defendant trusts and entrenching defendant [*37] Hauptfuhrer at Oryx];

> (c) entering into the buy-back transaction; and

> (d) failing to advise plaintiffs at the time of or following the transaction of the detrimental effect of the transaction on Oryx and plaintiffs and to advise plaintiffs to sell their Oryx stock.

(Complaint P 44). Finally, the plaintiffs contend that their injuries were proximately caused by Glenmede Trust. Accordingly, the complaint states a claim for negligence against the defendant Glenmede Trust.

However, Glenmede Trust contends that its agreement with the plaintiffs specifically excludes liability for negligence. Glenmede Trust cites an exculpatory clause of its agreement with the plaintiffs. The clause provides:

> Glenmede shall not be liable for any loss or damage or any costs and expenses associated with such loss or damage resulting from any act, omission or mistake or judgment in the course of, or connected with, the performance of its responsibilities hereunder, or that of its representatives, agents or employees,

except for its own gross negligence or bad faith.

(Complaint P 23).

In *Topp Copy Products Inc. v. Singletary, 404 Pa. Super. 459, 591 A.2d 298 (Pa.Super. 1991),* the [*38] Pennsylvania court recently discussed the issue of the application of exculpatory clauses under Pennsylvania law. The Court stated:

> Our Supreme Court has held that [HN22] an exculpatory clause is generally valid where three conditions are satisfied. The three conditions are: (1) the clause "does not contravene any policy of law, that is, ... it is not a matter of interest to the public or State"; (2) the "contract is between persons relating entirely to their own private affairs"; and (3) "each party is a free bargaining agent ... [in that the agreement] is not in effect a mere contract of adhesion."

If these conditions are met, and the clause is determined to be valid, the contract must still meet four additional standards in order to be "interpreted and construed to relieve a person of liability for his own ... acts of negligence." The four standards are: (1) the contract immunizing a party from liability for negligence must be construed strictly, "since they are not favorites of the law"; (2) the contract must state the intention of the parties "with the greatest particularity, ... beyond doubt by express stipulation, [and] no inference from words of general import can establish [*39] it"; (3) the contract must be construed against the party seeking immunity from liability; and (4) the burden of establishing the immunity is upon the party seeking protection of the clause.

> These seven considerations demonstrate that contracts providing for the immunity of parties from their own negligent acts are not regarded positively under the law of the Commonwealth.

Id. at 301 (citations omitted).

  

While Glenmede Trust may be immune from liability for negligence pursuant to the clause, the Court cannot determine from the face of the complaint the specific application of the clause under Pennsylvania's teachings. Therefore, Glenmede Trust's motion to dismiss count six is denied.

With respect to Glenmede Corporation, it is clear that the plaintiffs' complaint does not allege that the corporation was the professional advisor of the plaintiffs. However, the plaintiffs contend that Glenmede Corporation as the parent of Glenmede Trust is liable for the negligence under the piercing theory discussed above. Since the Court has found that the plaintiffs may have a claim against Glenmede Corporation under the Pennsylvania doctrine, the plaintiffs' [*40] claim for negligence shall not be dismissed against Glenmede Corporation.

An appropriate Order follows.

**ORDER** - June 10, 1993, Filed

AND NOW, this 8th day of June, 1993, upon consideration of the Defendants' Motion to Dismiss, the Plaintiffs' Response and the Defendants' Reply, IT IS HEREBY ORDERED that:

(1) Count I of the Plaintiffs' Complaint against Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is **DISMISSED;**

(2) Count II of the Plaintiffs' Complaint for civil conspiracy against all defendants is **DISMISSED;**

(3) Count II of the Plaintiffs' Complaint for aiding and abetting a breach of fiduciary duty against Glenmede Trust, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is **DISMISSED;**

(4) Count III of the Plaintiffs' Complaint against Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, [*41] Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is **DISMISSED;**

(5) Count IV of the Plaintiffs' Complaint against Glenmede Trust, Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is **DISMISSED;** and

(6) The Motion to Dismiss Count V and Count VI of the Plaintiffs' Complaint is **DENIED.**

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file an amended complaint within twenty (20) days of the date of this Order.

BY THE COURT:

HERBERT J. HUTTON, J.

