# TAB 8

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1428628 (S.D.Tex.)
(Cite as: Slip Copy)

**H**
Performance Aftermarket Parts Group, Ltd. v. TI Group Automotive Systems, Inc.
S.D.Tex.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas,Houston Division.
PERFORMANCE AFTERMARKET PARTS GROUP, LTD., et al., Plaintiffs,
v.
TI GROUP AUTOMOTIVE SYSTEMS, INC., Defendant.
**Civil Action No. H-05-4251.**

May 11, 2007.

### *MEMORANDUM AND ORDER*
NANCY F. ATLAS, United States District Judge.
*1 This patent case is before the Court on a dispute between the parties regarding Defendant TI Group Automotive Systems, LLC's ("TI Group") assertion of privilege as to certain documents requested by Plaintiff Performance Aftermarket Parts Group, Ltd. ("Performance") in discovery. The Court has reviewed *in camera* the documents in issue [FN1] and rules on the privilege assertions as explained herein.

> FN1. Document 14 on TI Group's list of 19 privileged documents was not provided to the Court and, therefore, has not been reviewed. Document 15 on the list has now been produced and is no longer in dispute.

### I. *LEGAL PRINCIPLES REGARDING ASSERTIONS OF PRIVILEGE*

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir.2001).

#### A. *Attorney-Client Privilege*

The attorney-client privilege exists to protect both "the giving of professional advice [and] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981). The privilege protects

from disclosure confidential communications between a client and his attorney "made for the purpose of facilitating the rendition of professional legal services to the client .... " *International Ins. Co. v. RSR Corp.,* 426 F.3d 291, 299 (5th Cir.2005) (quoting Tex.R. Evid. 503(b)).[FN2] "A communication is only "confidential" for the purposes of the attorney-client privilege if it is not intended to be disclosed to a third party." *Id.* at 299 n. 27 (citing Tex.R. Evid. 503(a)(5)).

> FN2. Texas law applies to the claims of attorney-client privilege in this civil action. *See* Fed.R.Evid. 501.

The attorney-client privilege protects confidential communications made between "representatives of the client" where the communications are made "for the purpose of facilitating the rendition of professional legal services." *See* Tex.R. Evid. 503(b)(1)(D). A "representative of the client" is defined to include persons "having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client" and "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." Tex.R. Evid. 503(a)(2). The attorney-client privilege covers communications made by corporate employees concerning matters pertinent to their job tasks if the information is sought by the corporation's attorney in order to formulate and render legal advice to the corporation. *See Upjohn Co.,* 449 U.S. at 394-95.

Under Texas law, a "subject-matter" test applies to extend the attorney-client privilege to a broad range of communications, "including those made by individuals outside the corporation's control group." *In re Avantel, S.A.,* 343 F.3d 311, 318 (5th Cir.2003). "The subject matter test is met where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *In re E.I. DuPont de Nemours and Co.,* 136 S.W .3d 218, 225 n. 3 (Tex.2004) (internal quotations and citations omitted).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*2** The attorney-client privilege also applies to notes that are not themselves communications "if disclosure would reveal the substance of any confidential communications between the attorney and client that were made in the course of seeking or giving legal advice." *Robinson v. Texas Auto. Dealers Ass'n.,* 214 F.R.D. 432, 440 (E.D.Tex.2003), *vacated to the extent district court ordered production of certain documents,* 2003 WL 21911333 (5th Cir., July 25, 2003); *see also Ferko v. National Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 134-35 (E.D.Tex.2003) (holding that attorney-client privilege applies to "third parties who assist an attorney in rendering legal advice" and to "documents produced as a result of those communications").

### B. Work-Product Privilege

"The work product privilege applies to documents 'prepared in anticipation of litigation.' " *In re Kaiser Aluminum and Chem. Co.,* 214 F.3d 586, 593 (5th Cir.2000) (quoting Fed. R. Civ. P. 26(b)(3)). The privilege can apply where litigation is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*

If documents qualify for the work product privilege, they may still be discoverable if the "party seeking discovery has substantial need of the materials [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See* Fed. R. Civ. P. 26(b)(3).

### II. *TI GROUP'S ASSERTION OF PRIVILEGE*

#### A. *Documents That Have Been Redacted*

Documents 1-4 and 12 have been produced with certain portions redacted based on an assertion of attorney-client privilege. The only redacted information from Document 12 is the "From/To/Date/Subject" information. This information is not privileged and TI Group must produce an unredacted version of Document 12.

The redacted portions of Documents 1 and 4 are not privileged because they are not communications made for the purpose of seeking legal advice. Unredacted copies must be produced.

The redacted portion of Document 3 is an email from Rich Gibbs, an employee of TI Group, to Edward Duplaga, General Counsel for TI Group. The same information is redacted from Document 4, plus the response from Duplaga to Gibbs. In Gibbs's email, several companies other than TI Group are mentioned. In response, Duplaga suggests that Gibbs "pass on" to his colleagues at the companies mentioned by Gibbs. The Gibbs portion of the email is not for the purpose of seeking legal advice, and the Duplaga response indicates that the information was not intended to be confidential but, instead, it was "appropriate" to pass the information on to third parties. For these reasons, the redacted portions of Documents 3 and 4 are not protected by the attorney-client privilege, and TI Group must produce unredacted copies of these documents.

### B. *Documents Relating to Counterfeiting Investigations*

**\*3** TI Group asserts a privilege as to Document 13 and Document 16, documents relating to TI Group's counterfeiting investigations. In general, the documents appear to be protected by the work product privilege, but certain aspects of them are unclear and the Court is unable to make a final determination without additional information. Consequently, the Court will make inquiry of Duplaga at the May 24, 2007 hearing. TI Group may submit an affidavit of the individual who created each document. If so, the affidavit(s) must be submitted no later than May 22, 2007.

### C. *Documents Relating to "Settlement Negotiations" in Other Cases*

TI Group asserts a "settlement negotiations" privilege as to Documents 5-11 and Documents 18-19. The documents are primarily letters between counsel for TI Group and counsel for third parties where TI Group claimed patent infringement against a party other than Performance. To support the existence of a "settlement negotiations" privilege, TI Group relies on *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 980 (6th Cir.2003), a Sixth Circuit case that has not been widely followed and whose reasoning has not been adopted by any court within the Fifth Circuit. The District Court for the District of Columbia has rejected the argument that there exists a "settlement negotiations" privilege.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 3
Slip Copy, 2007 WL 1428628 (S.D.Tex.)
**(Cite as: Slip Copy)**

*See In re Subpoena Issued to Commodity Futures Trading Comm.,* 370 F.Supp.2d 201, 208-212 (D.D.C.2005). This Court finds the analysis in the *Commodity Futures* case to be well-reasoned and persuasive, and likewise concludes that no "settlement negotiations" privilege exists. TI Group must produce Documents 5-11 and 18-19.

Even were the Court to find the existence of a settlement negotiations privilege, the Court would not find its protection as expansive as TI Group argues. For example, Document 5 is a letter to a TI Group Vice President from the attorney for a third party accused of patent infringement. In the letter, the attorney adamantly denies that his client's product infringes TI Group's patent and makes no mention of settlement. Document 6 is a three-sentence cover letter attached to copies of two patents. The other documents, to the most part, have only minimal discussion of settlement. As a result, even if the Court were to recognize a "settlement negotiations" privilege, that privilege would not apply for the most part to the documents in dispute.

### III. *CONCLUSION AND ORDER*

Based on the foregoing, it is hereby

**ORDERED** that TI Group shall produce the documents as set forth herein by **May 24, 2007.** It is further

**ORDERED** that any affidavits in support of TI Group's claim of privilege as to the documents relating to counterfeiting investigations shall be submitted no later than **May 22, 2007.**

S.D.Tex.,2007.
Performance Aftermarket Parts Group, Ltd. v. TI Group Automotive Systems, Inc.
Slip Copy, 2007 WL 1428628 (S.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 9

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
**(Cite as: 2006 WL 3446584 (W.D.Mich.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
W.D. Michigan,
Southern Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES COR-
PORATION and J.D. Edwards World Solutions
Company, Defendants.
No. 1:04-CV-568.

Nov. 29, 2006.

Aaron M. Phelps, Varnum Riddering Schmidt &
Howlett LLP, Grand Rapids, MI, John W. Boyd,
Joseph Goldberg, Freedman Boyd Daniels Hollander
& Goldberg PA, Albuquerque, NM, for Plaintiff.

Shannon J. Cassell, Gary Michael Miller, Mary Laura
Swietnicki, Paul A. Sheldon, Todd C. Jacobs, Grippo
& Elden LLC, Stephen J. Rosenfeld, Kristin Lee Lin-
gren, Suzanne Miriam Scheuing, Natalie A. Harris,
Mandell Menkes LLC, Chicago, IL, Charles E.
Chamberlain, Jr., Willey Chamberlain & Yates LLP,
Grand Rapids, MI, Earle I. Erman, Erman Teicher
Miller Zucker & Freedman PC, Southfield, MI, for
Defendants.

**ORDER STRIKING EXPERT WITNESSES**
HUGH W. BRENNEMAN, JR., Magistrate Judge.

*1 Pending before the court is a motion by defendant
International Business Machines Corporation
("IBM") to strike plaintiff's experts due to Irwin Seat-
ing Company's ("Irwin") violation of mediation con-
fidentiality (docket no. 195). Defendant J.D. Edwards
World Solutions Company has joined in IBM's mo-
tion.

Defendant IBM bases its motion on the fact that Ir-
win improperly supplied its testifying experts with
confidential mediation statements and exhibits ob-
tained during a mediation between the parties, and
that the experts reviewed these documents in render-
ing their opinions.

This matter was sent to voluntary facilitative medi-
ation by the court on October 21, 2005. An order
entered by the court several days later outlining the
procedures for the mediation, provided that "all in-
formation disclosed during the mediation session, in-
cluding the conduct and demeanor of the parties and
their counsel during the proceedings, must remain
confidential, and must not be disclosed to any other
party nor to this court, without consent of the party
disclosing the information." Order of November 2,
2005.

At the direction of the mediator, the parties each fur-
nished to her mediation statements and accompany-
ing documents, highlighting those portions of the ex-
hibits the defendants believed to be the most import-
ant. IBM asserts, and Irwin does not deny, that Irwin
subsequently provided its experts with the defend-
ants' confidential mediation statements accompany-
ing the documents, which explain the importance of
certain documents and why they were selected. The
documents were also highlighted at the request of the
mediator to indicate those portions of the documents
that the defendants believed to be the most important.

On April 18, 2006, Irwin produced two expert re-
ports, one by Jeff Hagins assessing the liability of the
defendants, and the other by Marianne DeMario per-
taining to damages. Each expert report explicitly
states that the expert reviewed the mediation material
produced by IBM and J.D. Edwards. See Expert Re-
port of Jeff Hagins at p. 40 ("I have reviewed all of
the mediation exhibits from IBM, J.D. Edwards, and
Irwin Seating."); Expert Report of Marianne L. De-
Mario at Exhibit B to the report ("Documents Re-
viewed by Marianne DeMario ... IBM mediation let-
ter, 1/11/06 ... Exhibit C to IBM mediation letter; Ex-
hibit F to JDE mediation brief ... Exhibit G to IBM
mediation letter, J.D. Edwards World Solutions Com-
pany's Confidential Mediation Brief,
1/12/06....Exhibit G to JDE mediation brief ... Exhibit
A to JDE mediation brief). DeMario also cites to the
mediation materials throughout the text of her opin-
ion. Id. at 3, 4, 5, 6, 7, and 8. Irwin acknowledges
that the mediation briefs and attached exhibits "were
provided to Mr. Hagins and Ms. DeMario as back-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
**(Cite as: 2006 WL 3446584 (W.D.Mich.))**

ground and were used by them as such." Plaintiff's Brief in Opposition to IBM's Motion, filed May 22, 2006, at 3.

### Confidentiality Rule

It is beyond question that the mediation proceedings in this case were intended to be confidential, and for settlement purposes only. The explicit order of the court was sufficient notice of this fact to the parties without more.

**\*2** But there was more. The November 15, 2005 letter from the mediator to the parties reiterated that "[t]he mediation process is confidential." In reliance upon this, IBM states that each page of its mediation statement was clearly marked in bold print: **"CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY."**

Moreover, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation. W.D. Mich. LCiv R 16.2(e) provides:

> *Confidentiality*--information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408. [FN1]

> > FN1. Rule 408 provides in pertinent part: "... Evidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations ..."

The Sixth Circuit has long recognized that "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must

feel *uninhibited* in their communications." (emphasis added)

*Goodyear Tire & Rubber v. Chiles Power Supply, 332 F.3d 976, 980 (6th Cir.2003).* In deciding to recognize the existence of a settlement privilege protecting settlement communications, the court noted that

> "confidential settlement communications are a tradition in this country. *See, e.g., Palmieri v. New York, 779 F.2d 861, 865 (2nd Cir.1985)* (citing *In Re: Franklin Nat'l Bank, 92 F.R.D. 468, 472 (E.D.N.Y.1981))* (stating that "[s]ecrecy of settlement terms ... is a well-established American litigation practice"). This Court has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings (citations omitted)." *Id.* at 980.

In summary, the court held that "any communications made in furtherance of settlement are privileged." *Id.* 983.

### Violation of the Conflict Rule

There is also no question but that Irwin's lawyers provided copies of IBM's and JDE's mediation briefs and exhibits to the experts. See Affidavit of Jeff L. Hagins dated May 19, 2006 at ¶ 3; Affidavit of Marianne L. DeMario dated May 19, 2006 at ¶ 3. While both experts deny either of the mediation briefs from the defendants influenced them in developing their opinion, they both admit they read these mediation statements as they began their analysis. Mr. Hagins stated, "I did read both IBM's and JDE's mediation briefs once, as part of my initial reading of foundational materials, ... in order to gain some sense of what the case was about. I read these mediation briefs on my computer in the electronic format in which they were provided to me. Hagins Brief at ¶ 5.

**\*3** Ms. DeMario states, "I read the mediation brief for context, when I first started working on my damages analysis...." Ms. DeMario explains that she "cited certain documents as exhibits to the mediation briefs for the sake of simplicity, since it was easier to cite them that way than to locate the same documents among the thousands of pages of materials that had been provided to me by Irwin's lawyers". DeMario's affidavit at 6. [FN2]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. This protestation proves too much, since by utilizing the exhibits attached to defendants' briefs throughout her analysis, rather than the bates-stamped versions, she was, necessarily, repeatedly pulled back to defendants' briefs and their marked up copies of the documents.

Both experts claim they do not recall what the defendants' mediation positions were, but in this context the affidavits are not particularly persuasive since it is readily apparent both were drawn up by the same hand. For example, Mr. Hagins testifies in paragraph 7 of his affidavit:

"I do not even recall what IBM's and JDE's mediation positions were",

while Ms. DeMario states in paragraph 7 of her affidavit:

"I don't even recall what were IBM's and JDE's mediation positions."

Plaintiff does not deny the documents were confidential documents nor that its lawyers provided them to the plaintiff's experts, nor that the plaintiff's experts reviewed these documents in preparing their reports. Rather, plaintiff's defense is an attempt to minimize the impact these disclosures had and to argue that the sanction requested by defendants--that these experts be stricken as expert witnesses--is too severe.

The court finds that plaintiff's conduct was in direct derogation of the order of this court, the directions of the mediator, and the common understanding of the purpose for which the mediation documents were to be used. Clearly the mediation briefs and the marked-up documents attached to them constituted settlement communications. While defendants correctly acknowledge that the documents themselves were otherwise producible to the plaintiff's experts, they persuasively argue that the mediation reports themselves, and the highlighting of portions of documents especially selected by the defendants as referred to in their mediation reports, were communications subject to the settlement privilege, not grist for the experts' mill.

### Impact of Violation of Confidentiality

The court need not find a bad intent on the part of Ir-

win's lawyers in furnishing all of these materials to their experts. What the court does find, whatever the intent, was that these documents were furnished on purpose for the experts to review, and they were in fact reviewed. This is the reality of the situation confronting the court, and it is a dilemma created solely by the actions of plaintiff's own lawyers.

Nor does the problem end here since these reports are now a part of the record used by the plaintiff's experts, and the experts are subject to cross-examination on them. Any cross-examination, of course, runs a risk of touching on the privileged communications. Moreover, and perhaps more significantly, there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously in response to the claims made and positions taken by defendants in their mediation briefs. Even in denying any recall of what defendants' positions were in their reports, both experts concede these briefs were among the first documents they read, "in order to gain some sense of what the case was about." [FN3] The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

FN3. By way of analogy, apropos to this time of the year, if a football coach learns that his opponent for next week's game is relying on his team's ability to pass to a particular deep receiver, the coach learning this will doubtlessly concentrate his attention on strategies to cover that receiver.

*4 Moreover, plaintiff's counsel's behavior in sharing these materials with unauthorized persons strikes at the heart of the ADR process.

Striking an expert witness is a harsh remedy, but not an unfair one, where a party has placed its experts at risk by infusing them with knowledge to which they were not entitled. The risk should not be upon the innocent defendants in this instance. The extent of the damage done in terms of how much these mediation briefs and the highlighted documents affected the experts, again consciously or unconsciously, in shaping their approaches and their opinions, is not truly

Slip Copy                                                                                              Page 4
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
**(Cite as: 2006 WL 3446584 (W.D.Mich.))**

knowable nor easily remediable. Where this situation arises from a clear violation of the court's order and the settlement privilege generally, it is the plaintiff that must bear the brunt of the resolution.

Defendant's motion is GRANTED, and plaintiff's experts Hagins and DeMario are stricken as experts and shall not testify in this action. [FN4] Movant IBM is also awarded costs and attorney's fees in the amount of $1,000.00, payable within 30 days. *See,* Rules 26(c)and 37(a)(4). If either party objects within 10 days of this order to the amount assessed, IBM shall, within 7 days thereafter, provide an affidavit together with any supporting documentation justifying the amount it believes is appropriate (more or less than $1,000.00), and plaintiff shall have 7 days thereafter to file an appropriate response. The court may schedule a further hearing on the question of costs if it deems it necessary.

> FN4. The court is aware this resolution may also have a salutary effect in preserving confidences of future mediation participants, and the candor necessary to successful facilitative mediations. A contrary result would certainly have a dramatically contrary impact.

IT IS SO ORDERED.

Slip Copy, 2006 WL 3446584 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 10



Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: 2007 WL 518866 (W.D.Mich.))**

H

Only the Westlaw citation is currently available.

United States District Court,
W.D. Michigan,
Southern Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES
CORP. et al., Defendants.
No. 1:04-CV-568.

Feb. 15, 2007.

Aaron M. Phelps, Varnum Riddering Schmidt &
Howlett LLP (Grand Rapids), Bridgewater Place,
Grand Rapids, MI, John W. Boyd, Joseph Goldberg,
Freedman Boyd Daniels Hollander & Goldberg PA,
Albuquerque, NM, for Plaintiff.

Todd C. Jacobs, Shannon J. Cassell, Gary Michael
Miller, Mary Laura Swietnicki, Paul A. Sheldon,
Grippo & Elden LLC, Stephen J. Rosenfeld, Kristin
Lee Lingren, Suzanne Miriam Scheuing, Natalie A.
Harris, Mandell Menkes LLC, Chicago, IL, Charles
E. Chamberlain, Jr., Willey Chamberlain & Yates
LLP, Grand Rapids, MI, Earle I. Erman, Erman
Teicher Miller Zucker & Freedman PC, Southfield,
MI, for Defendants.

### OPINION

ROBERT HOLMES BELL, Chief United States District Judge.

**\*1** This matter is before the Court on Plaintiff's appeal (Docket # 313) of the Magistrate Judge's order striking Plaintiff's expert witnesses (Docket # 310). For the reasons that follow, the order of the Magistrate Judge is affirmed.

### I.

This matter was referred to voluntary facilitative mediation by this Court on October 21, 2005. The notice of appointment of facilitative mediator outlined the procedures for mediation and, among other things, provided that "all information disclosed during the mediation session, including the conduct and demeanor of the parties and their counsel during the

proceedings, must remain confidential, and must not be disclosed to any other party nor to this court, without consent of the party disclosing the information." (Notice of Appointment of Facilitative Mediator, at 2, docket # 94.)

Subsequently, at the direction of the mediator, the parties furnished mediation statements and accompanying documents, highlighting those portions of the exhibits the parties believed to be most important. The Magistrate Judge found, and Plaintiff Irwin has not disputed, that Irwin later provided Defendants' mediation statements and accompanying highlighted documents to two experts expected to testify for Plaintiff at trial.

On April 18, 2006, Plaintiff produced two expert reports, one by Jeff Hagins assessing the liability of the Defendants, and the other by Marianne DeMario assessing damages. Each expert report declared that the expert had reviewed the mediation briefs and exhibits produced by Defendants. DeMario's report extensively cited to portions of the mediation attachments. All of the attachments to the mediation statement were otherwise produced during discovery. However, the mediation attachments were highlighted to identify those portions Plaintiff believed to be significant to the case.

The Magistrate Judge held that the mediation proceedings and documents were intended to be confidential and for settlement purposes only, pursuant to the order of appointment of mediator, W.D. Mich. LCivR 16.2(e), Fed.R.Evid. 408 and established Sixth Circuit case law. The Magistrate Judge reasoned that, regardless of whether Plaintiff acted with bad faith, Plaintiff was solely at fault for the breach of confidentiality and had acted intentionally to release the information. The Magistrate Judge further concluded that the exposure by Plaintiff's experts to Defendants' case theory could not simply be forgotten by those experts. Moreover, since any attempt to cross-examine those experts as to the specifics of their recollection would itself expose confidential information, the Magistrate Judge concluded that the only appropriate remedy was to strike Plaintiff's ex-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 518866 (W.D.Mich.)
(Cite as: 2007 WL 518866 (W.D.Mich.))

Page 2

pert witnesses.

Plaintiff now appeals the Magistrate Judge's order, contending that the sanction is unduly harsh and unsupported by law.

## II.

Under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), a federal magistrate judge may be designated to hear and determine nondispositive pretrial matters. *Id.* Rule 72(a) provides in relevant part:

*2 A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a). [FN1]

> FN1. Rule 72(a) of the Federal Rules of Civil Procedure implements 28 U.S.C. § 636(b)(1)(A). *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir.1993).

A factual "finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985). The question before the court "is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Id.*

A magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, which this

Court will overrule only if that discretion is clearly abused. *See Dayco Prod., Inc. v. Walker*, 142 F.R.D. 450, 454 (S.D.Ohio 1992) (citing *Snowden By and Through Victor v. Connaught Labs., Inc.*, 136 F.R.D. 694, 697 (D.Kan.1991); *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y.1982); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir.1990)).

## III.

In its objections to the Magistrate Judge's determination, Plaintiff argues only that the striking of its expert witnesses is an excessive sanction, not warranted by the nature of the violation. [FN2] Plaintiff argues that the Magistrate Judge should have imposed a less severe sanction. Plaintiff contends that it did not act in bad faith to release the mediation materials, believing that disclosure to its own retained experts was disclosure to agents of itself, the represented party, and therefore was not a breach of confidentiality. While Plaintiff no longer asserts that its disclosure was not a violation of the mediation order and the local rules, it asserts that the reason for the disclosure did not amount to bad faith. Further, Plaintiff argues that the information contained in the mediation attachments was otherwise disclosed during discovery and fully available to the experts from other sources. For both reasons, Plaintiff contends that the harsh sanction of striking experts was not warranted.

> FN2. In its reply brief, Plaintiff raises two additional issues not raised before either the Magistrate Judge or in Plaintiff's initial timely objections. First, citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir.2002), Plaintiff argues that a finding of bad faith is legally required to support the imposition of a sanction under the Court's inherent authority. Second, Plaintiff argues that the Magistrate Judge lacked evidence to support a finding that Plaintiff's disclosure of mediation materials to the experts had an adverse impact on Defendants or on the mediation process. Neither argument was raised in Plaintiff's objections. Under Fed. R. Civ. P. § 72(a), "a party may not thereafter assign as error a defect in the magistrate judge's order to which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 3
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: 2007 WL 518866 (W.D.Mich.))**

objection was not timely made." *Id.* Moreover, the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived. *See United States v. Lopez-Medina,* 461 F.3d 724, 743 (6th Cir.2006) (citing *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir.1997) (deeming arguments that are not raised in the appellant's main brief, or raised merely in a perfunctory manner, as waived)); *see also Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.,* 436 F.3d 662, 676 (6th Cir.2006) (a district court properly declines to consider an issue raised for the first time in a reply brief) (citing, *Sundberg v. Keller Ladder,* 189 F.Supp.2d 671, 682-83 (E.D.Mich.2002) (noting, in the context of summary judgment, "it is not the office of a reply brief to raise issues for the first time") (citation omitted)). For both reasons, the arguments raised in Plaintiff's reply brief are waived, and the Court declines to address either argument.

As the Magistrate Judge fully discussed, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation:

> **\*3** *Confidentiality*--information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408. **[FN3]**

> > **FN3.** Rule 408 provides in relevant part that "[e]vidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations...."

W.D. MICH. LCIVR 16.2(e). In addition, as the Sixth Circuit repeatedly has recognized,

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settle-

ment negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications.
*Goodyear Tire & Rubber Co. v. Chiles Power Supply,* 332 F.3d 976, 980 (6th Cir.2003).

In determining that the sanction of striking experts was appropriate, the Magistrate Judge made a number of factual determinations. First, he noted that Plaintiff conceded that its attorneys had provided copies of Defendants' mediation briefs and exhibits to the experts, and both experts acknowledged reading the materials. Indeed, Plaintiff's damages expert repeatedly referred to the mediation exhibits in her expert report. Although both experts averred that they did not recall Defendants' mediation positions and further averred that their opinions were not influenced by their knowledge of those positions, the Magistrate Judge found those averments unpersuasive. The Magistrate Judge noted that the experts had used essentially identical language in their affidavits and that the averments in question appeared to have been drawn up by the same hand.

The Magistrate Judge further found that, regardless of Plaintiff's intent in disclosing the documents, the experts had received confidential information. The Magistrate Judge concluded that no adequate means existed for undoing the experts' improper knowledge. As the Magistrate Judge noted, the facts upon which an expert relies are not required to be admissible. However, the factual basis for the expert's opinion is subject to inquiry and cross-examination. Fed.R.Evid. 703. Because the information in issue is confidential, Defendants will be unable to fully challenge the experts' assertions that their opinions were not influenced by confidential settlement knowledge.

Although Plaintiff continues to argue that the experts were not influenced by the confidential content of the mediation briefs or the highlighting of specific portions of the otherwise discoverable exhibits, the Magistrate Judge's reasons for discrediting the experts' claims are reasonable. The Court finds no basis for

Slip Copy                                                                                            Page 4
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: 2007 WL 518866 (W.D.Mich.))**

concluding that the finding is clearly erroneous. Accepting, therefore, that the experts did remember the mediation positions and that they were, consciously or unconsciously affected by that information, the Magistrate Judge's decision to exclude the experts was reasonable and sound.

**\*4** Further, contrary to Plaintiff's argument, the Magistrate Judge's decision to strike Plaintiff's experts is not inconsistent with other federal decisions. In *Goodyear Tire & Rubber*, applying the mediation confidentiality privilege, the Sixth Circuit upheld the district court's refusal to permit discovery about settlement negotiations to support a plaintiff's claim that a witness had been bribed. 332 F.3d at 983. The court recognized that disclosure of settlement negotiations, even long after those negotiations had failed, would undermine the public policy underlying settlement. *Id.* at 980. The court further held that, because settlement negotiations "are typically punctuated with numerous instances of puffing and posturing since they are 'motivated by a desire for peace rather than from a concession of the merits of the claim,' " the use of "these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement." *Goodyear Tire & Rubber*, 332 F.3d at 981 (quoting *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982)).

Similarly here, permitting Plaintiff's experts to testify after having had access to Defendants' confidential representations has the potential to undermine the willingness of parties to engage in future settlement negotiations. Further, the "facts" upon which those experts rely in such briefing have the potential to be misleading because of the purpose for which they are presented. They therefore may color the expert's conclusions based on a characterization of the facts distorted by the goal of settlement. In any event, the information provides the expert with information about the other party's view of the significance of particular evidence.

The fact that the Sixth Circuit did not approve the identical sanction does not demonstrate the unreasonableness of the sanction imposed in this case. The facts of *Goodyear Tire & Rubber* did not call for the striking of an expert. Instead, the problem was fully able to be addressed by the denial of discovery. Here, in contrast, Plaintiff cannot identify an alternate sanction that will adequately address these experts' improper knowledge. No admonition, reprimand, mediation training or assessment of costs can remove from the experts' minds the information to which they have been exposed. And, because of the ongoing confidentiality of the mediation process, such alternatives cannot remove the obstacle to Defendants' cross-examination of the experts.

The remaining cases cited by Plaintiff are equally unpersuasive. For example, in *Frank v. L.L. Bean Inc.*, 377 F.Supp.2d 233 (D.Me.2005), the court declined to exclude the fruits of an ex parte interview with a potential witness in which the opposing party's settlement position was revealed. The court instead imposed financial sanctions. In *Frank*, however, the party violating settlement confidentiality revealed information to a former employee of the opposing party, who shared the opposing party's interests. As a result, the opposing party could not demonstrate prejudice arising from the breach of confidentiality. The court expressly noted that, "[h]ad Defendant been able to demonstrate such prejudice, such a sanction might have been an appropriate remedy to counteract Plaintiff's ill-gotten advantage." *Frank*, 377 F.Supp.2d at 240-41.

**\*5** Here, Plaintiff disclosed Defendants' settlement positions to its own expert witnesses. That information is inherently prejudicial to Defendants and is an "ill-gotten advantage," even if the extent of the prejudice is not precisely measurable. In such circumstances, the Magistrate Judge's order striking Plaintiff's expert witnesses, is both reasonable and consistent with the analysis of *Frank*.

In *In re Anonymous*, 283 F.3d 627 (4th Cir.2002), the Fourth Circuit addressed breaches of the confidentiality of the appellate mediation process. The court found that the client, current counsel and local counsel had all violated the confidentiality requirements of the appellate mediation process during their subsequent bar-mediated fee dispute. The court, however, weighing the totality of the circumstances, declined to issue sanctions for several reasons. The court found that none of the participants had acted in

Slip Copy
Slip Copy, 2007 WL 518866 (W.D.Mich.)
(Cite as: 2007 WL 518866 (W.D.Mich.))

Page 5

bad faith. The court further found that the disclosures to another confidential forum did not severely impact the effectiveness of the mediation process. Further, the court noted that, in light of the breaches by all parties, no single party was harmed by the disclosures. *Id.* at 635-36.

The *In re Anonymous* decision is fully consistent with the Magistrate Judge's determination in the instant case. The case endorses the notion that sanctions determinations are to be based on the totality of the circumstances. *Id.* Here, unlike in *In re Anonymous,* the only party breaching confidentiality is the party with the opportunity to benefit from that breach. Moreover, the breach did not occur within the confines of another confidential process, but instead permitted an expert to offer an opinion influenced by confidential information upon which he could not be fully cross-examined. As the Magistrate Judge found, such a breach has the potential to seriously undermine the effectiveness of the mediated settlement proceedings, thereby undermining important public policy.

A review of Plaintiff's remaining citations to unpublished decisions in which sanctions have been denied reveals substantial differences in the totality of the circumstances from those before this Court. *See Frazier v. Layne Christensen Co.,* No. 04-C-315-C, 2005 WL 372253 (W.D.Wis. Feb.11, 2005); *Concerned Citizens of Belle Haven v. The Belle Haven Club,* No. 3:99CV 1467 (D.Conn. Oct. 25, 2002). Plaintiff has identified no comparable disclosure to that in issue here.

Moreover, the fact that any other district court may have decided a sanctions question differently than the Magistrate Judge does not in itself suggest that the Magistrate Judge's decision constituted an abuse of discretion. *See Heights Cmty. Congress,* 774 F.2d at 140 (question is not whether the determination is the best or only conclusion that can be drawn but whether it is a reasonable one.) The Court finds that the factual determinations of the Magistrate Judge were not clearly erroneous and that the striking of Plaintiff's experts is not contrary to law. Accordingly, the Court will affirm the Magistrate Judge's order to strike.

**\*6** Having agreed that the Magistrate Judge properly struck Plaintiff's expert witnesses as a remedy for Plaintiff's breach of mediation confidentiality, the Court must determine whether Plaintiff may retain other experts. The Court has reviewed the totality of the circumstances and finds that a complete denial of expert witnesses would be an excessive sanction, not warranted by the nature of Plaintiff's conduct. The harm to Defendants is fully mitigated by the exclusion of the testimony of those experts exposed to the confidential information. The striking of experts is itself a harsh sanction and should not be made greater by the exclusion of all expert evidence in support of Plaintiff's case. Accordingly, notwithstanding the late stage of these proceedings, the Court will permit Plaintiff to engage new experts.

### IV.

For the foregoing reasons, the Court affirms the order of the Magistrate Judge striking Plaintiff's experts. The Court, however, will permit Plaintiff to designate new experts. In accordance with the Magistrate Judge's order denying clarification (Docket # 323), deadlines for expert reports will be addressed in the scheduling conference to be held after resolution of the dispositive motions.

Slip Copy, 2007 WL 518866 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 11

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580
**(Cite as: 2003 WL 21488511 (E.D.Pa.))**

C

United States District Court,
E.D. Pennsylvania.
Jeffrey BORDEN, Plaintiff
v.
INGERSOLL-RAND CO., Defendant.
No. 01-CV-5455.

filed Oct. 26, 2001.
Jan. 17, 2003.
last filing June 13, 2003.

Paul A. Lauricella, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, representing Jeffrey Borden, (Plaintiff).

Michael J. O'Neill, Piper Marbury Ruddick & Wolfe, Phila, PA, Lead Attorney, Attorney to be Noticed, representing Ingersoll-Rand Company, (Defendant).

Michael A. Smerconish, Beasley Casey & Erbstein, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, representing Jeffrey Borden, (Plaintiff).

YOHN, J.

*1 Plaintiff Jeffrey Borden ("Borden") brought suit against defendant Ingersoll-Rand Company ("Ingersoll") for injuries he sustained while using one of defendant's products. Plaintiff asserts strict liability claims for defective design, manufacture, and failure to warn and negligence claims for negligent design, manufacture, repair and failure to warn. Presently before the court is defendant's motion to preclude the product liability/design defect opinions contained in the deposition testimony of two of plaintiff's expert witnesses, Craig Clauser and Ezra Krendel. For the reasons set forth below, I will deny defendant's motion.

BACKGROUND

Plaintiff brought suit against Ingersoll for injuries he sustained while using one of defendant's products. Pursuant to the court's amended scheduling order, plaintiff's expert testimony disclosures were to be submitted by May 13, 2002. Plaintiff submitted the expert reports of Clauser and Krendel. In their reports, Clauser and Krendel discussed plaintiff's strict liability claim for failure to warn and his negligence claims for negligent repair and failure to warn. The reports did not, however, explicitly discuss plaintiff's defective design or manufacture claims, which sounded in both negligence and strict liability.

On June 12, 2002, approximately one month after plaintiff was required to file his expert reports, defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On July 1, 2002, plaintiff filed a response to that motion. On July 10, 2002, defendant filed a reply and on July 24, 2002, plaintiff filed a sur-reply.

The parties then conducted depositions of Clauser and Krendel on November 6, 2002. In their deposition testimony, for the first time, both experts offered opinions in support of plaintiff's defective design claim. On November 26, 2002, despite the apparent closure of the pleadings with regard to defendant's motion for summary judgment, plaintiff filed a supplemental memorandum of law in response to defendant's motion for summary judgment. In that supplemental memorandum, plaintiff relied on the deposition testimony of experts Clauser and Krendel to refute the grounds on which defendant based its motion for summary judgment. On December 10, 2002, the court granted plaintiff's motion to file the supplemental memorandum *nunc pro tunc,* thereby allowing the court to consider plaintiff's supplemental memorandum in resolving defendant's motion for summary judgment. The court also gave the defendant the opportunity to respond to the supplemental memorandum. Presently before the court is defendant's motion to preclude the product liability/design defect opinions contained in the deposition testimony of Clauser and Krendel.

STANDARD OF REVIEW

In evaluating the appropriateness of an exclusionary sanction, a district court should consider.

"(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580
**(Cite as: 2003 WL 21488511 (E.D.Pa.))**

orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order."

**\*2** *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904- 905 (3d Cir.1977) *overruled on other grounds by Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985)); *see also In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717, 791 (3d Cir.1994) (reaffirming consideration of *Pennypack* factors to resolve exclusionary sanctions). A court, however, must also note that the "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Pennypack,* 559 F.2d at 905 (citation omitted); *see also Paoli,* 35 F.3d at 792.

### DISCUSSION

The issue here is whether the court should preclude the product liability/design defect opinion testimony contained in the depositions of two of plaintiff's expert witnesses, Clauser and Krendel. Rule 26(a)(2) governs the disclosure of expert testimony. In pertinent part, it provides:

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. Pro. 26(a)(2)(B). Where a party fails to comply with the disclosure requirements, Rule 37 of the Federal Rules of Civil Procedure gives the court the ability to impose sanctions, including the preclu-

sion of certain witness testimony. Fed. R. Civ. Pro. 37(c). [FN1]

> FN1. Rule 37(c) provides, in pertinent part: A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.
> Fed. R. Civ. Pro. 37(c)(1).

The preclusion of witness testimony is an extreme sanction, and as such, courts should be wary of imposing such a sanction absent a showing of a willful or flagrant violation. *Pennypack,* 559 at 905 (3d Cir.1977); *In re TMI Litigation Cases Consolidated II,* 922 F.Supp. 997, 1003 (M.D.Pa.1996). In determining whether to impose Rule 37 sanctions, a court should consider "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order." *Pennypack,* 559 F.2d at 904-905; *see also In re Paoli,* 35 F.3d at 791 (reaffirming consideration of *Pennypack* factors to resolve exclusionary sanctions). Said another way, exclusion of testimony is appropriate only if a party (1) has revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith. *Pennypack,* 559 F.2d at 905; *In re TMI,* 922 F.Supp. at 1003-1004. Furthermore, the Third Circuit has stated that lack of

# TAB 12



Not Reported in F.Supp.                                                                              Page 1
Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869
**(Cite as: 1995 WL 710592 (E.D.Pa.))**

**H**

United States District Court, E.D. Pennsylvania.
Jeanette M. DiFLORIO, Plaintiff
v.
NABISCO BISCUIT COMPANY, et al. Defendants
**No. CIV. A. 95-0089.**

Nov. 13, 1995.

MEMORANDUM AND ORDER

YOHN, J.

**\*1** Before the court is defendants' Motion to Exclude Plaintiff's Expert Witness, filed on October 17, 1995. Although it must deny the motion at this time, the court will establish a short deadline for plaintiff's disclosure of the information concerning its expert's opinions to which defendants are entitled. Furthermore, the court will hold a hearing on the question of what sanctions would best compensate defendants for plaintiff's lawyers' lack of diligence in complying with the court's schedule for discovery.

A May 4, 1995 scheduling order required plaintiff to comply with Fed.R.Civ.P. 26(a)(2), the mandate for automatic disclosure of expert witness reports before trial, by September 7, 1995. [FN1] However, plaintiff did not retain an expert until August 30, 1995. She did not forward to defendants the curriculum vitae of her retained expert psychologist, Dr. Gerald Cooke, until September 28, 1995. On October 10, 1995, plaintiffs filed a Motion for Extension of Discovery Deadline and for Protective Order, but did not mention any difficulties with obtaining an expert report. The court declined to extend the deadline and the discovery period came to a close on October 26, 1995.

FN1. Federal Rule of Civil Procedure 26(a) states, in relevant part:
[A] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
Except as otherwise stipulated or directed by

the court, this disclosure shall with respect to a witness who is retained or specially employed to provide expert testimony in the case ... be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor ...

The case is scheduled for trial on December 11, 1995. To date, defendants still do not know whether Dr. Cooke will testify on liability or damages. They certainly do not have the "complete statement of all opinions to be expressed [by Dr. Cooke at trial] and the basis and reasons therefor," Fed.R.Civ.P. 26(a), to which they are entitled.

In their motion to exclude Dr. Cooke's testimony, defendants argue that the current trial schedule does not permit adequate time for them to review an expert report and to retain a rebuttal expert. They also argue that they would be prejudiced by a delay of the trial since plaintiff has identified many of her co-workers as witnesses, creating an "unfortunate but unavoidable disruption in the workplace."

Plaintiff's sole justification for her violation of the court's scheduling order is that some of her medical care providers have not yet produced her records and that Dr. Cooke needs "certain of these records" to render an expert opinion. She does not inform the court of any steps she has taken to obtain the records. Moreover, she does not state when defendants may expect to receive Dr. Cooke's report. Without even nodding at the Federal Rules of Civil Procedure or the court's scheduling order, plaintiff's counsel simply respond to defendants' motion with the assertion that the court is powerless to order the requested relief.

The Federal Rules of Civil Procedure clearly authorize the exclusion of expert witness testimony as a sanction for a party's failure to disclose information about the expert's opinions in accordance with court deadlines. Rule 37(c) states, in part:
A party that without substantial justification fails to

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869
(Cite as: 1995 WL 710592 (E.D.Pa.))

disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

**\*2** The court finds that plaintiff has not offered *substantial justification* for failing to comply with its order, as she has made no attempt to explain the missing records' significance or her efforts to obtain them. Furthermore, the court finds that plaintiff's dilatoriness is not *harmless*. Both parties have described to the court how this litigation continues to disrupt Ms. DiFlorio's workplace at Nabisco; protracting the proceedings seemingly serves no one's interests. Moreover, the court's ability to schedule trials for other waiting litigants is hampered by the delay potentially necessitated by plaintiff's cavalier disregard of its deadlines. Thus, under the Rules, excluding Dr. Cooke's report would be the obvious and appropriate sanction.

Unfortunately, the courts of this circuit are not free to exercise the full range of sanctions for discovery abuses authorized by the Rules. The United States Court of Appeals for the Third Circuit has been reluctant to approve the exclusion of testimony unless a party has (1) revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith. *Compare, Coleco Indus., Inc. v. Berman, 567 F.2d 569 (3rd Cir.1977), cert. denied, 439 U.S. 830 (1978)*(affirming exclusion of expert findings first revealed in midst of complex trial) *and Semper v. Santos, 845 F.2d 1233 (3rd Cir.1988)*(affirming exclusion when expert witness, long known to party, was identified after jury selection had commenced) *and U.S. v. 68.94 Acres of Land, 918 F.2d 389 (3rd Cir.1990)*(affirming exclusion of expert testimony where, at trial, witness intended to testify beyond clearly defined scope of pretrial order) *with Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894 (3rd Cir.1977), disavowed on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3rd Cir.1985)*(exclusion reversed where party acted in good faith and three weeks remained before trial) *and DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193 (3rd Cir.1978)*(exclusion reversed where opposing party

was prepared for substance of testimony and evidence did not suggest bad faith). Although the conduct of plaintiff's lawyers is hardly commendable, lack of diligence does not constitute bad faith. *In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 793 (3rd Cir.1994), cert. denied, 115 S.Ct. 1253 (1995)*. Furthermore, with the trial still a month away, prejudice to defendants' opportunity to prepare can be cured. Additionally, the court notes that plaintiff is not personally responsible for her lawyers' attitudes toward the orders of this court. Therefore, the court will not exclude plaintiff's expert report.

However, the court is not satisfied that this ruling will adequately protect the interests of both parties. At the very least, defendants have incurred costs in filing the Motion to Exclude and have had to conduct discovery without the benefit of plaintiff's mandatory disclosures.

**\*3** Thus, the court will consider alternative remedies for the flaunting of its scheduling order. The United States Court of Appeals for the Third Circuit has recently suggested that a district court judge facing similar circumstances (1) allow the party standing in defendants' position to depose the expert, and (2) tax the resultant costs to the proponent of the expert's testimony. *In re Paoli R.R. Yard PCB Litigation, 35 F.3d at 793*. The Third Circuit has also "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Carter v. Albert Einstein Medical Center, 804 F.2d 805, 807 (3rd Cir.1986)*. Moreover, Rule 37(c) specifically permits the award of reasonable expenses, including attorneys' fees, caused by the breach of Rule 26(a). Therefore, after the benefit of a hearing, the court will determine whether defendants should have the option of deposing Dr. Cooke entirely at plaintiff's counsel's expense.

### ORDER

And now, this ____ day of November, 1995, it is hereby ORDERED that:

1. Defendants' Motion to Exclude Plaintiff's Expert Witness is denied.

2. By 12:00 noon on Monday, November 20, 1995,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869

**(Cite as: 1995 WL 710592 (E.D.Pa.))**

plaintiff will deliver to the court and to defendants' counsel the expert report of Dr. Gerald Cooke.   The report shall contain all of the information required by <u>Fed.R.Civ.P. 26(a)</u>.

3. At 5:00 PM on Monday, November 20, 1995, counsel shall appear at the U.S. Courthouse for a hearing on whether the court should enter alternative sanctions to the exclusion of testimony, as proposed in the above memorandum. Specifically, plaintiff's counsel shall be prepared to address why defendants should not have the opportunity to depose Dr. Gerald Cooke at the expense of plaintiff's counsel.

Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 13



**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Stephanie ROBERTSON, Mary Ann Robertson,
Samuel Robertson, and Matthew
Robertson, Plaintiffs,
v.
HORTON BROTHERS RECOVERY, INC. and
Richard Baxendale, Defendants.
**No. CIVA 02-1656 JJF.**

Oct. 10, 2006.
Elwood T. Eveland, Jr., The Eveland Law Firm,
Wilmington, Delaware, for Plaintiffs.

Horton Brothers Recovery, Inc., Defendant, pro se.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Pending before the Court is Plaintiff's Motion For
Judgment As A Matter Of Law. (D.I.85). By this Mo-
tion, Plaintiff requests the imposition of sanctions
against Defendant Horton Brothers Recovery, Inc.
("Horton Brothers") for its non-compliance with the
pre-trial process, and also requests judgment as a
matter of law on each count of the
Complaint and as to damages for violations of 15
U.S.C. §§ 1692, et seq. For the following reasons,
this Motion will be granted.

I. BACKGROUND

This lawsuit arises from the events surrounding the
attempted repossession of a car owned by Plaintiff
Stephanie Robertson. On March 20, 2002, Ms.
Robertson purchased the car from Reasonable Rides,
Inc. Shortly thereafter, the engine of the vehicle
failed, rendering it inoperable. Plaintiffs allege that
Ms. Robertson informed Reasonable Rides that she
would not continue to make scheduled payments on
the vehicle until it was repaired, and that the vehicle
was located at a local car dealership. Plaintiffs allege
that on June 4, 2002, and during the week following,
Defendant Richard Baxendale, representing Defend-

ant Horton Brothers Recovery, Inc. ("Horton Broth-
ers"), harassed the Robertson family in an attempt to
repossess the vehicle, despite a call from Reasonable
Rides to Horton Brothers rescinding the repossession
request. At the time of the events at issue, Ms.
Robertson resided with her parents, Plaintiffs Mary
Ann Robertson and Samuel Robertson, and her broth-
er, Plaintiff Matthew Robertson.

On November 26, 2002, Plaintiffs filed their com-
plaint, which contains 6 counts: Count I--Violation of
the Fair Debt Collection Practices Act; Count II-
-Violation of the Uniform Commercial Code; Count
III--Trespass, Assault, and Invasion of Privacy;
Count IV--Negligence; and Count V--Defamation;
Count VI-- Intentional Infliction of Emotional Dis-
tress.

Throughout this litigation, Horton Brothers has failed
to appear at court hearings. In April 2005, represent-
atives of Horton Brothers failed to appear at their
scheduled depositions. The Court held Show Cause
hearings to determine whether Horton Brothers
should be held in civil contempt because of the fail-
ure to appear. (D.I.58, 59). The representatives
provided satisfactory explanations, so the Orders to
Show Cause were retired. (D.I.63). On July 27, 2005,
Horton Brothers did not attend a status conference
held by the Court. On January 9, 2006, Plaintiffs'
counsel wrote to the Court explaining that mediation
could not be pursued because Horton Brothers had
made no efforts to cooperate with the Magistrate
Judge. On March 2, 2006, Horton Brothers failed to
appear at another status conference held by the Court.
Finally, on June 8, 2006, Horton Brothers failed to
appear at the parties' pre-trial conference. Sub-
sequently, Plaintiff was granted permission to request
judgment as a matter of law. Horton Brothers failed
to file any answer to the Motion.

II. Discussion

*A. Sanctions For Failing to Obey A Scheduling Or
Pretrial Order*

**\*2** Plaintiff contends that sanctions should be im-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 2917377 (D.Del.)
**(Cite as: 2006 WL 2917377 (D.Del.))**

posed barring Horton Brothers from supporting the denials and defenses raised in its Answer due to Horton Brothers' continued failure to appear at hearings. The Court agrees.

Federal Rule of Civil Procedure 16(f) authorizes the Court to impose sanctions upon a party for its failure to appear at a scheduling or pre-trial conference. Fed.R.Civ.P. 16(f). The Court, by motion or sua sponte, may "make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B),(C),(D)." *Id.* One permitted sanction is to refuse to allow the non-compliant party to support or oppose designated claims or defenses. Fed.R.Civ.P. 37(b)(2)(B). The Court must balance six factors when assessing the propriety of sanctions: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir.1984).* The Court shall also order the party or that party's attorney to pay those reasonable expenses incurred because of its noncompliance. Fed.R.Civ.P. 16(f).

In reviewing the pattern of Horton Brothers's behavior before the Court, the Court concludes that sanctions are warranted. On at least four occasions, Horton Brothers has failed to appear at court proceedings. Moreover, Horton Brothers has failed to take any action regarding mediation, case management or responding to pleadings. Horton Brothers has been repeatedly warned about the consequences of failing to participate in the pretrial process and has still failed to cooperate. The Court can only construe this conduct as willful noncompliance. Further, because it is voluntarily proceeding without counsel, [FN1] responsibility for this non-compliance lies with Horton Brothers.

> FN1. Horton Brothers terminated its counsel on December 22, 2003 and has ignored two different court orders to retain counsel. The

Court ordered Horton Brothers to retain counsel by January 26, 2004, which was then extended to March 9, 2004. To this day, Horton Brothers has not retained new counsel.

Of the sanctions available under Rule 16(f), the Court finds that disallowing support for denials and defenses is the most appropriate sanction. Striking pleadings would be ineffective, because the Answer (D.I.5) is the only pleading to strike. Further, Horton Brothers' continuing indifference toward this litigation clearly demonstrates the futility of suspending the proceedings awaiting compliance. Finally, Horton Brothers has offered no defense for its failure to participate in this litigation.

Horton Brothers' pattern of dilatory behavior, coupled with its failure to appear at any proceedings for over a year, has adversely affected Plaintiffs, for whom relief has repeatedly been delayed. Therefore, the Court concludes that the *Poulis* factors weigh in favor of imposing sanctions and denying Horton Brothers the opportunity to support any denials or defenses raised in its Answer (D.I.5).

*B. Judgment As A Matter Of Law*

**\*3** A court may grant judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a party that has been fully heard] on that issue." Fed.R.Civ.P. 50(a). In assessing the sufficiency of the evidence, a court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).*

Having concluded that Horton Brothers may not support any denials or defenses raised in its responsive pleadings, the Court must now decide whether the evidence is sufficient to support Plaintiffs' claims against Horton Brothers. Viewing all of the evidence in the light most favorable to Horton Brothers, the Court concludes that Plaintiffs' claims against Horton Brothers are supported by the record. Further, the re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2917377 (D.Del.)
**(Cite as: 2006 WL 2917377 (D.Del.))**

cord offers no legally sufficient evidentiary basis to find in favor of Horton Brothers. Thus, Plaintiffs are entitled to judgment as a matter of law.

III. CONCLUSION

For the reasons discussed, the Court concludes that sanctions will be imposed denying Horton Brothers the opportunity to support any denials or defenses raised in its responsive pleadings. As a result of these sanctions, Plaintiffs are entitled to judgment as a matter of law against Defendant Horton Brothers as to liability on each count of Plaintiffs' Complaint. Plaintiffs are also entitled to judgment as a matter of law against Defendant Horton Brothers as to damages for violations of violations of 15 U.S.C. §§ 1692, et seq. Therefore, Plaintiff's Motion For Judgment As A Matter Of Law (D.I.85) is granted. A hearing will be scheduled to assess damages.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2006 WL 2917377 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 14



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1237034 (D.Del.)
**(Cite as: 2006 WL 1237034 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CHERRY LINE, S.A., a corporation, Plaintiff,
v.
MUMA SERVICES f/k/a Murphy Marine Services,
Inc., Defendant.
**No. Civ.A. 03-199-JJF.**

May 8, 2006.

Julie M. Sebring, of Rawle & Henderson LLP, Wilmington, Delaware, for Plaintiff.

Richard H. Cross, Jr., and Sean T. O'Kelly, of Cross & Simon, LLC, Wilmington, Delaware, for Defendant.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Pending before the Court is a Motion For Sanctions And Dismissal Of Case (D.I.43) filed by Defendant MUMA Services f/k/a Murphy Marine Services, Inc. For the reasons discussed, the Court will issue a Show Cause Order and schedule a hearing to determine whether this case should be dismissed for failure to prosecute.

BACKGROUND
Plaintiff initiated this action more than three years ago on February 14, 2003, alleging that Defendant carelessly and negligently caused harm to its vessel, Wild Jasmine, while Defendant was engaged by Plaintiff for stevedoring services. Plaintiff failed to take any action to prosecute this case for nearly two years, and on July 14, 2005, the Court ordered Plaintiff to show cause why this action should not be dismissed with prejudice.

Plaintiff responded to the Court's order by filing a stipulated proposed scheduling order. The Court entered the Scheduling Order, which provided for the completion of fact witness and document discovery by November 1, 2005, the completion of all discovery by January 31, 2006, and referred this matter to mediation.

In September 2005, Defendant served upon Plaintiff a first set of interrogatories and requests for production. According to Defendant, these requests were discussed with Plaintiff numerous times, and Plaintiff represented that answers would be forthcoming.

As of January 18, 2006, Plaintiff failed to file any responses to Defendant's discovery requests, and Defendant filed a Motion To Compel. [FN1] Plaintiff failed to respond to the Motion, but an Amended Rule 16 Scheduling Order was jointly submitted by the parties which extended the discovery deadline to March 1, 2006, for all fact witness and document production and October 31, 2006, for the completion of all discovery. A pretrial conference was also set for May 11, 2006, but later rescheduled by the Court to March 8, 2007, in light of the revised deadlines provided by the parties in the Scheduling Order.

> FN1. Although no Certificate of Service was filed with the Court by Plaintiff concerning its discovery, Plaintiff apparently served Requests for Admission on Defendant, because Defendant also moved for a protective order on the grounds that the requests exceeded the number of requests for admission agreed to by the parties in the Scheduling Order. Plaintiff did not respond to that Motion, and the Court granted Defendant's Motion.

On February 27, 2006, the Court granted Defendant's Motion To Compel, and ordered Plaintiff to provide discovery responses to Defendant's request within twenty days of the Court's Order. To date, Plaintiff has failed to provide Defendant with any responses.

On March 31, 2006, Defendant filed the instant Motion requesting dismissal of the case. In the alternative, Defendant requested the Court to reschedule the mediation conference set for April 27, 2006, until such time as Defendant receives discovery responses from Plaintiff. Plaintiff's Answer to the Motion was due by April 14, 2006. To date, no answer has been filed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1237034 (D.Del.)
(Cite as: 2006 WL 1237034 (D.Del.))

On April 20, 2006, Magistrate Judge Thynge entered an Order cancelling the mediation and requiring counsel to inform her by May 5, 2006, whether mediation should be rescheduled to November 20, 2006.

## DISCUSSION

### I. Standard of Review

Pursuant to <u>Federal Rule of Civil Procedure 37(b)(2)(C)</u>, the Court has the discretion to dismiss a case for failure to obey the Court's discovery orders. In determining whether to dismiss a complaint the Court is guided by the following six factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of claim or defense. *See <u>Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984)</u>.* Each of these factors is not required to be met for the Court to conclude that dismissal is appropriate; however, the Court must weigh the factors to ensure that the sanction of dismissal is reserved for those cases in which it is justly merited. *Id., see also <u>Hicks v. Feeney, 850 F.2d 152, 156-157 (D.Del.1987)</u>.*

### II. Whether Defendant's Motion For Sanctions And Dismissal Of Case Should Be Granted

**\*2** Applying the *Poulis* factors in the circumstances of this case, the Court concludes that Plaintiff's failure to prosecute this action could result in dismissal of this case, particularly in light of Plaintiff's failure to respond to the instant Motion. Plaintiff has demonstrated a history of dilatoriness beginning with the inception of this action. Plaintiff took no action to prosecute this case for a period of nearly two years. The Court issued an Order To Show Cause why the action should not be dismissed, and Plaintiff's only response was the filing of a joint proposed scheduling order. Plaintiff has failed to respond to Defendant's discovery requests and failed to adhere to the Court's Order requiring Plaintiff to comply with Defendant's discovery requests.

Plaintiff has frustrated the discovery process and completely stalled this litigation, which has been pending for more than three years. Plaintiff's dilatoriness has frustrated both the utility and purpose of the mediation which had been scheduled in this action. Moreover, the Court is persuaded that Plaintiff's dilatoriness has prejudiced Defendant. Defendant has been forced to file both a Motion To Compel and the instant Motion For Sanctions And Dismissal Of Case, and Defendant has received no responses from Plaintiff. Defendant cannot defend this case without the discovery it has requested, and as time continues to pass in this more than three-year old action, the memories of witnesses will undoubtedly fade resulting in further prejudice to Defendant's ability to defend this action. Plaintiff's have provided the Court with no substantive responses explaining the delay, and thus, the Court is left with no other conclusion, at this time, than Plaintiff has willfully failed to prosecute this action and obey the Court's orders. However, in order to permit Plaintiff a final opportunity to explain its delay and avoid dismissal of this action, the Court will issue Show Cause Order and schedule a hearing.

## CONCLUSION

For the reasons discussed, the Court will schedule a hearing and require Plaintiff to show cause why this action should not be dismissed with prejudice.

An appropriate Order will be entered.

### *SHOW CAUSE HEARING ORDER*

At Wilmington, this *8* day of May 2006, for the reasons set forth in the Memorandum Opinion this date;

IT IS HEREBY ORDERED that Plaintiff shall appear for a show cause hearing on Tuesday, May 23, 2006 at 2:00 p.m. in Courtroom 4B, 4th Floor, Boggs Federal Building, Wilmington, Delaware to show cause why this action should not be dismissed with prejudice.

Not Reported in F.Supp.2d, 2006 WL 1237034 (D.Del.)

END OF DOCUMENT

# TAB 15



Slip Copy, 2007 WL 1040676 (S.D.N.Y.)
**(Cite as: Slip Copy)**

---

**C**
Conopco, Inc. v. Wein
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
CONOPCO, INC. d/b/a Unilever, Plaintiff,
v.
Dina WEIN, et al., Defendants.
**No. 05Civ.9899(RCC)(THK).**

April 4, 2007.

MEMORANDUM OPINION AND ORDER
KATZ, Magistrate J.
**\*1** Plaintiff Conopco Inc. d/b/a Unilever ("Conopco") filed this action in November 2005, alleging that Defendant Dina Wein, various corporate entities she organized, and employees of those entities, perpetrated an extensive fraudulent scheme against Plaintiff and numerous other consumer product companies. Specifically, alleging fraud and federal RICO claims, Plaintiff contends that Defendants, through a variety of misrepresentations and sophisticated ruses, obtained Plaintiff's and other companies' products at substantially discounted prices, purportedly to utilize in promotional and sampling programs intended to expand the companies' markets. Plaintiff alleges that, instead, Defendants diverted the products back into the wholesale market, causing economic harm to Plaintiff and the other victim companies, while unjustly enriching Defendants.

The action was referred to this Court for general pretrial supervision and, accordingly, the Court has addressed numerous discovery disputes among the parties. Presently before the Court is Defendants' Motion to Quash Plaintiff's Subpoena Directed to the law firm Arnold & Porter, LLP.

BACKGROUND

Arnold & Porter represented Roche Diagnostics Corporation ("Roche") in separate litigation, filed in January 2007, against Defendant Wein and individuals and entities associated with Wein. *See Roche Diagnostics Corp. v. Wein,* 07-CV-0034 (S.D.Indiana). The allegations asserted by Roche in that action are virtually identical to the allegations in

the instant action. Roche alleged that Defendants obtained diabetes products from Roche at an 85% discount, based on Defendants' representations to Roche that the products would be used exclusively for promotional purposes. Instead, it was alleged, Defendants diverted or attempted to divert Roche's products, at high mark-ups, to Roche's own customers. Among the claims asserted by Roche were fraud and RICO violations. (*See* Complaint in *Roche v. Wein,* 07-CV-0034 (S.D.Ind.2007), attached as Exhibit ("Ex.") C to Letter from Rodney A. Brown, Esq. to the Court, dated Feb. 9, 2007 ("Brown Feb. 9 Ltr.") .) The District Court of Indiana issued a preliminary injunction in the *Roche* action, restraining the Defendants from any further sales or distribution of Roches' products. Subsequently, the action was settled, and the terms of the settlement agreement are subject to a confidentiality order.

In its subpoena to Arnold & Porter, Plaintiff seeks all documents and pretrial discovery produced in the *Roche* litigation, transcripts of depositions and court proceedings, and the settlement agreement itself. (*See* Subpoena, dated Feb. 16, 2007, Ex. B. to Affidavit of Rodney A. Brown in Opposition to Defendants' Joint Motion to Quash Subpoena Served on Arnold & Porter, dated Mar. 7, 2007 ("Brown Aff.").) Defendants have moved to quash the subpoena, arguing that (1) this Court has precluded discovery, for the period subsequent to March 2006, relating to Defendants' promotional and sampling programs, (2) the subpoena seeks confidential commercial information related to Defendants' current business transactions, (3) the subpoena seeks irrelevant and duplicative information, and (4) the confidentiality of the settlement agreement should be respected. (*See* Defendants' Joint Memorandum in Support of Motion to Quash Plaintiffs' Subpoena, dated Mar. 1, 2007 ("Defs.' Mem.").)

DISCUSSION

**\*2** In effect, Defendants are seeking a protective order that precludes discovery relating to the Roche litigation. Rule 26(c) of the Federal Rules of Civil Procedure permits a district court, upon a showing of good cause, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[T]he party seeking a protective order has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG,* 377 F .3d 133, (2d Cir.2004). Ordinarily, good cause for a protective order exists when a party shows that disclosure will result in a clearly defined, specific and serious injury. Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26© ) test. Moreover, the harm must be significant, not a mere trifle.

*Schiller v. City of New York,* Nos. 04 Civ. 7922 & 7921(KMK) (JCF), 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) (internal citations and quotation marks omitted).

Defendants are correct that the Court previously limited their obligation to produce documents relating to their other sampling and promotional programs to the period of January 2000 through March 2006. (*See* Memorandum Endorsed Order, dated June 9, 2006.) When that Order was entered, however, pretrial discovery was at an early stage and Defendants argued that Plaintiff was engaging in a "fishing expedition" in the hope that it would discover fraudulent conduct to support its allegations. In addition, Defendants asserted that it would be extremely burdensome and disruptive to their business if they were required to continue to produce documents about current, ongoing business relationships.

In an attempt to address Defendants' concerns, while taking into account Plaintiff's right to relevant discovery that was calculated to lead to the discovery of admissible evidence, *see* Fed.R.Civ.P. 26(b)(1), the Court concluded that it was reasonable to require Defendants to produce documents, relating to other sampling and promotional programs, only through March 2006-three months prior to entry of the Order. That limitation was reiterated in several subsequent orders. Nevertheless, although Defendants had expressed concern about the numerous subpoenas issued to third parties with whom they did business, the Court did not place temporal restrictions on Plaintiff's right to seek documents from those third parties. And, according to Plaintiff's counsel, his subpoenas to third parties sought relevant documents from January 1, 2000 *to the present,* and no objection was lodged by Defendants to that time frame. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Quash Subpoena, dated Mar. 7, 2007 ("Pl .'s Mem."), at 3.)

Defendants' concerns about business disruption and

burden, which led to the Court's previous Orders limiting party-discovery about Defendants' other promotional programs, to the period from January 2000 through March 2006, do not exist with respect to the outstanding subpoena to Arnold & Porter, and are clearly outweighed by Plaintiff's right to patently relevant discovery.

**\*3** That the information sought is relevant cannot seriously be disputed. The Complaint in this action alleges that Defendants have been involved in a RICO enterprise that has engaged in a pattern of racketeering activity through which Plaintiff and other large companies have been defrauded of millions of dollars. Moreover, as alleged, the threat posed by the enterprise's racketeering activity continues and threatens to continue indefinitely, as evidenced by Defendants' ongoing fraudulent solicitation of other targeted manufacturers. (*See* First Amended Complaint dated June 7, 2006, Count II, ¶ ¶ 73-84.) [FN1] As Plaintiff persuasively argues, the RICO scheme alleged in the Complaint is open and ongoing, and the best evidence of that contention is the January 2007 action filed by *Roche* against Defendants, in which a fraudulent scheme virtually identical to the scheme set forth in this action continued during the period from approximately December 2005 through December 2006.[FN2] Any evidence of an ongoing pattern of fraudulent activity by the RICO enterprise is clearly relevant to Plaintiff's RICO claim.

FN1. When the Court set the original time parameters for party discovery, there was scant, if any, evidence to support Defendants' contention that the RICO enterprise was continuing to engage in fraudulent conduct. Plaintiff has now uncovered other litigations, brought by Eight O'Clock Coffee, Hanover Corporation, Beechnut, and Roche, in which Defendants are alleged to have engaged in fraudulent schemes similar to the one alleged by Plaintiff. Based upon that discovery, Plaintiff is in the process of filing a motion to amend the First Amended Complaint to assert that Defendants fraudulent conduct is ongoing, and to seek injunctive relief. The request for more current information about Defendants' promotional programs can hardly be considered a "fishing expedition" at this point.

FN2. By contrast, Plaintiff and Defendants'

Slip Copy                                                                                                      Page 3
Slip Copy, 2007 WL 1040676 (S.D.N.Y.)
**(Cite as: Slip Copy)**

business relationship spanned the period of 2003 through 2005.

[A] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time). To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F .3d 159, 180 (2d Cir.2004) (internal citations and quotation marks omitted).

In addition, contrary to Defendants' contention, the subpoena to Arnold & Porter does not threaten any of the harms the Court attempted to attenuate by limiting the time period for Defendants' own production of information about their ongoing business transactions. First, the response to the subpoena will impose no burden on Defendants, as they are not being required to produce additional documents. Moreover, Arnold & Porter has voiced no objection to complying with the subpoena; it is Defendants who are seeking the protective order, not Arnold & Porter.

Nor will the subpoena cause irreparable injury to Defendants by jeopardizing their current business relationships. It is difficult to comprehend Defendants' contention that their business relationship with Roche could be disrupted by requiring Arnold & Porter to comply with the subpoena (*see* Defs.' Mem. at 8; Defendants' Memorandum in Reply to Plaintiff's Opposition to Defendants' Motion to Quash, dated Mar. 13, 2007, at 5), when that relationship has already been disrupted by Defendants' own conduct. The clear evidence of this disruption is the lawsuit brought by Roche for essentially the same fraudulent conduct that is alleged in the instant action.

*4 Finally, Defendants contend that the material sought from Arnold & Porter contains proprietary business information, such as pricing and marketing information, that should not be disclosed to Plaintiff. This argument fails for a number of reasons. First, Defendants have already produced the information to Roche, and have produced similar information to Plaintiff. Second, Plaintiff is not in the same business as Defendants, nor is it a competitor of Defendants.

The only possible use Plaintiff could make of the information is in support of its claims in this litigation. Moreover, there is a Confidentiality Order in place in this action that is more than adequate to protect Defendants' proprietary information from misuse.

Defendants have raised one issue, however, which has some facial plausibility. They object to the production of the Confidential Settlement Agreement with Roche, arguing that there are strong policy reasons to preserve its confidentiality, which are not outweighed by any legitimate use to which Plaintiff could put the agreement.

As the parties recognize, the Federal Rules of Evidence bar the introduction of settlement negotiations and agreements in evidence in order to prove or disprove liability. Rule 408 provides in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

The Rule furthers "the strong federal policy favoring settlement of disputes." *Tribune v. Purcigliotti*, No. 93 Civ. 7222(LAP)(THK), 1996 WL 337277, at *1 (S.D.N.Y. June 19, 1996); *accord In re: Initial Public Offering Secs. Litig.*, No. 21 MC 92(SAS), 2004 WL 60290, at *5 (S.D.N.Y. Jan. 12, 2004). That purpose is accomplished, however, "not by making settlement information unavailable, but by limiting the abusive use of positions taken during the process. The rule insures that offers of compromise will not have intrinsic evidentiary value ... The rule thus fosters non-judicial resolution of disputes because compromises made during the settlement process will not later surface to haunt the parties as substantive evidence." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, Nos. 93 Civ. 5298 & 8270(LMM)(RLE), 1996 WL 71507, at *3 (S.D.N.Y. Feb. 20, 1996). Moreover, Rule 408 does not prohibit the use of settlement agreements for other evidentiary purposes, such as impeachment. *See, e.g., Playboy*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1040676 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 4

*Enters. Int'l v. On Line Entm't, Inc.,* No. 00 Civ. 6618(DGT), 2004 WL 626807, at *5 (E.D.N.Y. Mar. 29, 2004) (noting that evidence of settlement, otherwise excludable pursuant to Rule 408, is admissible for purposes of impeachment); *Purcigliotti,* 1996 WL 337277, at *1 (settlement discussions may be used for impeachment).

**\*5** More importantly, Rule 408 pertains only to evidentiary issues at trial, and does not govern pretrial disclosure of settlement agreements. Rather, Federal Rule of Civil Procedure 26(b)(1) sets the standard for pretrial disclosure, and requires only that the information sought be relevant and calculated to lead to the discovery of admissible evidence. *See Johnson Matthey, Inc. v. Research Corp.,* No. 01 Civ. 8115, 2003 WL 24136087, at *3 (S.D.N.Y. June 16, 2003); *Rates Tech. Inc. v. Cablevision Sys. Corp.,* No. 05 Civ. 3583(DRH)(WDW), 2006 WL 3050879, at *3 (E.D.N.Y. Oct. 20, 2006); *Bank Brussels Lambert,* 1996 WL 71507, at *3; *Purcigliotti,* 1996 WL 337277, at *1. "Thus, admissibility is not a prerequisite to discoverability, and the scope of relevance under Rule 26 is broader than under the Rules of Evidence." *Initial Public Offering Secs. Litig.,* 2004 WL 60290, at *4; *ABF Capital Mgmt. v. Askin Capital,* No. 96 Civ. 2978(RWS), 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000) ("Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Rule 26(b)(1) ], and that no heightened showing of relevance need be made in order to justify disclosure of a settlement agreement."); *cf. Newman Assocs. v. J.K. Harris,* No. 04 Civ. 9264(RJH)(MHD), 2005 WL 3610140, at *2-3 (S.D.N.Y. Dec. 15, 2005) (holding that there is no privilege that precludes the discovery of settlement agreements, and that production of statements made in the context of settlement discussions would not undermine the policy of encouraging settlements, because the settlement discussions were no longer ongoing, and there were no other specific circumstances outweighing the relevance of the material). Moreover, the simple fact that the parties to the settlement agreement agreed to its confidentiality "does not shield it from discovery." *LaForest v. Honeywell Int'l Inc.,* No. 03 Civ. 6448T, 2004 WL 1498916, at *7 (W.D.N.Y. July 1, 2004) (citing *Tribune Co.,* 1996 WL 337277 at *3 and *Weissman v.. Fruchtman,* No. 83 Civ. 8958(PKL), 1986 WL 15669, at *19 (S.D.N.Y. Oct. 31, 1986)); *accord ABF Capital,* 2000 WL 191698, at *2.

Latching on to a passing statement Plaintiff's counsel made in correspondence with the Court-"to the extent

the Roche action was settled pursuant to a confidentiality agreement, discovery in this regard is particularly relevant in assessing Defendants' culpability-whether Defendants returned product to Roche and whether Defendants paid monies to Roche" (Letter from Rodney A. Brown to the Court, dated Mar. 2, 2007, at 2)-Defendants contend that their settlement agreement with Roche is not relevant because Plaintiff's intended use of the agreement to establish liability is impermissible.

The Court disagrees. The litigation with Roche, and its resolution, are clearly relevant to this action. As discussed, Plaintiff contends that Defendants perpetrated an elaborate scheme of fraud against Plaintiff and numerous other companies, and the allegations asserted against Defendants in the Roche complaint are virtually identical to those asserted in this action. It is premature to conclude at this point that the settlement agreement cannot be used for any purpose at trial. For example, Plaintiff argues that there is a strong likelihood that it can be used for purposes of impeachment, as Defendants contend that they make full disclosure of their sampling programs, and the Roche litigation may demonstrate otherwise. In any event, even if the settlement agreement is ultimately inadmissible, the disclosure of the terms of the settlement agreement could certainly lead to the discovery of admissible evidence.

**\*6** The Court therefore concludes that Defendants have failed to show good cause for quashing the subpoena to Arnold & Porter.[FN3]

> FN3. The Roche settlement agreement and any proprietary business information produced by Arnold & Porter shall be covered by the Confidentiality Order in place in this litigation.

### CONCLUSION

For the reasons set forth above, Defendants' motion to quash the subpoena issued to Arnold & Porter is denied.

So Ordered.

S.D.N.Y.,2007.
Conopco, Inc. v. Wein
Slip Copy, 2007 WL 1040676 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 16



Slip Copy, 2007 WL 963975 (N.D.Cal.)
**(Cite as: Slip Copy)**

**H**

Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.

N.D.Cal.,2007.

Only the Westlaw citation is currently available.

United States District Court,N.D. California.

MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., Plaintiff(s),

v.

MEDIATEK, INC., et al., Defendant(s).

**No. C-05-3148 MMC (JCS).**

March 30, 2007.

Anthony W. Shaw, Steven A. Bowers, Dewey Ballantine LLP, Washington, DC, Bijal Vijay Vakil, Shamita D. Etienne, Jack Q. Lever, James E. Glore, Jennifer Yokoyama, Mark Malin, McDermott Will & Emery LLP, Vinh Huy Pham, Attorney at Law, Palo Alto, CA, Jeffrey L. Kessler, Lisa B. Deutsch, Aldo A. Badini, Jason D. Clark, Michelle Lo, Dewey Ballantine LLP, New York, NY, Bryon Wasserman, Washington, DC, Daniel Raymond Foster, Esq., David M. Stein, Fay E. Morisseau, McDermott Will & Emery, Tyler Woods, Attorney at Law, Irvine, CA, David M. Beckwith, Mcdermott, Will & Emery, San Diego, CA, for Plaintiff.

Kevin P.B. Johnson, Brian C. Cannon, Randy Garteiser, Quinn Emanuel Urquhart Oliver & Hedges Llp, Redwood Shores, CA, Adrian Mary Pruetz, Pruetz Law Group Llp, Manhattan Beach, CA, Benjamin Singer, Carlos A. Rodriguez, Eric Hui-Chieh Huang, Richard W. Erwine, Quinn Emanuel Urquhart Oliver & Hedges, Llp, New York, NY, Eugene Chen, Quinn Emanuel Urquhart Oliver & Hedges Llp, Los Angeles, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF THE COURT'S ORDERS RE SETTLEMENT NEGOTIATION DOCUMENTS, DENYING MOTION FOR RECONSIDERATION, AND DENYING MOTION FOR STAY [Docket Nos. 565, 572] ]**

JOSEPH C. SPERO, United States Magistrate Judge.

*1 Plaintiff/Counterclaim Defendant, Matsushita Electric Industrial Co., Ltd., and Counterclaim Defendant, Panasonic Corporation of North America (referred to collectively as "Plaintiff") have filed a Motion for Leave to File a Motion for Reconsideration of the Court's Orders Re Settlement Negotiation Documents (the "Motion for Leave") [Docket Nos. 565 (redacted version) and 572 (sealed version) ]. As set forth below, that Motion is GRANTED IN PART and DENIED IN PART. Further, the Court treats the papers submitted in support of the Motion for Leave as a Motion for Reconsideration. The Motion for Reconsideration is DENIED. The Court finds that both Motions are suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b).

**I. BACKGROUND**

On March 9, 2007, as ordered by the Court, the parties filed a Joint Discovery Letter regarding various issues the parties believed the Court should decide, and other issues which the parties had resolved. The Court treated the Joint Letter as a "Motion to Compel." In the Motion to Compel, the parties set forth their respective positions, both factually and legally, with respect to each of the contested issues. Defendants MediaTek, Inc., OPPO Digital, Inc., and MSI Computer Corp. sought, *inter alia,* documents and testimony related to the licensing of, and the negotiations regarding the licensing of, the patents-in-suit. Motion to Compel at 7. Defendants argued that these documents are relevant based on several theories. First, during licensing negotiations, one of the prospective licensees may have raised the invalidity of the patents-in-suit, and may have pointed to prior art in support of those invalidity arguments. Motion to Compel at 6. As a result, Defendants asserted, it is reasonably likely the discovery of licensing negotiation documents may lead to the discovery of admissible evidence concerning invalidity. Defendants also argued that production of these materials may lead to the discovery of admissible evidence on the royalty rate that should be applied to determine damages in this case and may also lead to evidence regarding theories of non-infringement.

Plaintiff objected. Insofar as is relevant to the instant application, Plaintiff argued that a "federal settlement privilege ... shields from discovery any communication created in the context of settlement negotiations." Motion to Compel at 8.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 963975 (N.D.Cal.)
**(Cite as: Slip Copy)**

On March 13 and March 15, 2007, the Court denied the Motion to Compel and overruled the objection regarding the "federal settlement privilege." Objections followed, which Judge Chesney denied on March 21, 2007, without prejudice to filing a motion for leave to file a motion for reconsideration before the undersigned. Plaintiff filed the Motion for Leave on March 26, 2007.

## II. THE MOTION FOR LEAVE

The Motion for Leave is premised on Local Rule 7-9(b)(2). Motion for Leave at 7. That Local Rule provides that the "moving party must specifically show ... the emergence of new material facts or a change of law occurring after the time of such order...." In support of the Motion for Leave, Plaintiff cites to only a single new event: the Ninth Circuit's decision in *In re Napster Copyright Litig.*, Nos. 06-15886, 06-72515, 2007 WL 754748 (9th Cir. March 14, 2007). That decision was filed on March 14, 2007, after this Court's original decision on March 13, 2007. Accordingly, to the extent that the Motion for Leave is premised on the existence of new law decided after this Court's decision, the Motion is GRANTED, and the Motion for Leave is deemed to be a Motion for Reconsideration.

**\*2** On the other hand, the Motion for Leave also raised many arguments other than those premised on *Napster*. For example, Plaintiff argues, *inter alia,* that the settlement documents in question are not reasonably calculated to lead to the discovery of admissible evidence, and that Defendants' request for production of these documents was untimely and predicated on false representations. None of those events occurred after the Court's decision on the Motion to Compel and should have been raised with the Court in the Joint Letter. Accordingly, other than as specifically granted above, the Motion for Leave is DENIED.

## III. THE MOTION FOR RECONSIDERATION

### A. THE *NAPSTER* DECISION IS NOT APPLICABLE TO THE QUESTION BEFORE THE COURT

In *Napster*, the Ninth Circuit faced two questions relating to the crime fraud exception to the attorney-client privilege. First, in a civil case where outright disclosure is requested under the crime fraud exception, does a party seeking to preserve the attorney-client privilege have the right to introduce counterveiling evidence to rebut the evidence introduced by the party seeking disclosure? *Id.* at 10. Second, what is the burden of proof "for the party seeking to establish the crime fraud exception [to the attorney-client privilege]." *Id.*

*Napster* is not applicable to the case at bar. In *Napster*, the question of whether or not the privilege (or the exception to the privilege) existed as a matter of law was not at issue. The sole question was the procedure and quantum of proof necessary to prove an exception to the attorney-client privilege. As discussed below, the Court has concluded that the federal settlement privilege proffered by Defendants does not exist. As a result, *Napster's* mandate that courts consider evidence from both sides before deciding whether or not certain materials fall within an existing privilege is not applicable to this case. Accordingly, while the Court has granted leave to reconsider the matter in light of *Napster*, the Motion for Reconsideration is DENIED.[FN1]

> FN1. While the Motion for Reconsideration is denied on this basis, the Court also takes this opportunity to set forth in the section that follows the basis for its conclusion in granting the Motion to Compel that a federal settlement privilege does not exist as a matter of law.

### B. FEDERAL RULES OF EVIDENCE 501 AND 408 DO NOT CREATE A FEDERAL ETTLEMENT PRIVILEGE

Federal Rule of Civil Procedure 26 permits discovery "regarding any matter, not privileged, that is relevant to a claim or defense of any party.... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to the lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). In the Motion to Compel, the Court concluded that the discovery sought was reasonably calculated to lead to the discovery of admissible evidence. Accordingly, these materials are discoverable so long as they are not privileged. Neither Rule 408 nor Rule 501 creates a federal settlement privilege.

### 1. Rule 408 Does Not Prohibit The Disclosure Of

Slip Copy
Slip Copy, 2007 WL 963975 (N.D.Cal.)
(Cite as: Slip Copy)

Page 3

### Compromise Negotiations On Its Face

In order to dispel the notion that there is a federal settlement privilege, one need look no further than the language of Federal Rule of Evidence 408:

### Compromise and Offers to Compromise

**\*3** (a) Prohibited uses.-Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
(1) furnishing or offering or promising to furnish-or accepting or offering or promising to accept-a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
(b) Permitted uses.-This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

On its face, Federal Rule of Evidence 408 is not a discovery rule. It only limits the admissibility of some, but not all, evidence of events that occur during the course of settlement negotiations. Moreover, Rule 408 provides for the **admissibility** of evidence relating to settlement negotiations for specific purposes. *See* Fed.R.Evid. 408(b) (permitting the introduction of evidence of compromise and offers to compromise to prove a witness's bias or prejudice, negate a contention of undue delay, or to prove an effort to obstruct a criminal investigation). The only prohibited use of such evidence is to prove or disprove liability or the amount of a claim "or to impeach through a prior inconsistent statement or contradiction." *Id.* at 408(a).

The inescapable conclusion is that a privilege against **disclosure** cannot be found in Rule 408. To the contrary, because the Rule anticipates that settlement negotiations may be admissible, a privilege against their discovery would be inconsistent with Rule 26.

### 2. Under Rule 501, No Novel Privilege Applying to Settlement Discussions Can Be Implied From Rule 408

Because it is obvious that Rule 408 permits, rather than forbids, the disclosure of compromise negotiations, courts and parties that have sought to establish a "federal settlement privilege" have relied on the sweeping language of Federal Rule of Evidence 501:
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

**\*4** Fed.R.Evid. 501.

Rule 501 permits the federal courts to define new privileges in light of "reason and experience." However, the Supreme Court has repeatedly cautioned that this right to fashion new privileges should be used with great restraint. The general rule is that the public has "a right to every man's evidence" and that "any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *Jaffe v. Redmond,* 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (citing *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)). *See also Univ. of Penn. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1890) (the Supreme Court is "disinclined to exercise [Rule 501's] authority expansively").

The Supreme Court has, in recent years, identified a number of considerations that should guide the decision whether or not to imply a new privilege under Rule 501, which this Court has taken into account:

(1) Is there a significant public and private interest supporting the recognition of the privilege? *Jaffe,* 518 U.S. at 11.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4
Slip Copy, 2007 WL 963975 (N.D.Cal.)
**(Cite as: Slip Copy)**

(2) Is the likely "evidentiary benefit that [will] result from the denial of the privilege [ ] modest"? *Id.*

(3) Is there a consensus among the states as to the existence of the new privilege? *Id.* at 12-13.

(4) Has Congress considered the relevant competing concerns itself and acted on the question of whether or not the information should be privileged? *Univ. of Penn.,* 493 U.S. at 189.

(5) Is there an historical and statutory basis for the new privilege? *Id.* at 195.

(6) Is the proposed privilege on the list of privileges that was proposed by the Judicial Conference in 1973? *United States v. Gillock,* 445 U.S. 360, 367-68, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980).[FN2]

> FN2. Applying this analysis, courts have declined to recognize many privileges, including the identity of reporters' confidential sources, child abuse records, parent-child communications, academic peer review records, corporate ombudsman records, unemployment hearings, and communications between an insurer and an insured. *See In re Subpoena Issued to Commodity Futures Trading Comm'n,* 370 F.Supp.2d 201, 208 n. 8 (D.D.C.2005) (listing proposed privileges rejected under Fed.R.Evid. 501).

It is worth noting that, with and without a detailed analysis of the issue, courts have reached widely divergent conclusions about whether or not a federal settlement privilege exists. The Sixth Circuit approved the application of a federal settlement privilege in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 980 (6th Cir.2003). *See also Cook v. Yellow Freight Sys., Inc.,* 132 F.R.D. 548 (E.D.Cal.1990); *Allen County v. Riley Indus., Inc.,* 197 F.R.D. 352, 353 (N.D.Ohio 2000). Many courts have rejected the existence of a privilege. *In re Subpoena Issued to Commodity Futures Trading Comm'n,* 370 F.Supp.2d 201 (D.D.C.2005); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.,* 831 F.Supp. 1516, 1531 (D.Colo.1993) (Rule 408 of the Federal Rules of Evidence is "not a broad discovery privilege"); *NAACP Legal Defense and Educ. Fund, Inc. v. The United States Dep't of Justice,* 612 F.Supp. 1143, 1146 (D.D.C.1985) (same). *See also Alcan Int'l Ltd.*

*v. S.A. De Mfg. Co.,* 179 F.R.D. 403, 405 (W.D.N.Y.1998) (noting that Rule 408 does not limit the discovery of evidence); *In re Gen. Motors Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir.1979) (finding "no convincing basis" for the proposition that "the conduct of settlement negotiations is protected from examination by some form of privilege"); *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.,* No. 98Civ.6738, 2000 WL 97680 at *4 n. 5 (S.D.N.Y. Jan.28, 2000) ("[W]e agree with defendants' observation that Fed.R.Evid. 408 does not create a settlement privilege."). Some courts have taken a middle ground and held that settlement negotiation materials may not be disclosed absent a showing greater than that required for ordinary discovery under Rule 26. *See, e.g., Bottaro v. Hatton Assocs.,* 96 F.R.D. 158, 160 (E.D.N.Y.1982) (requiring a "particularized showing").

**\*5** Most of these cases, however, have not conducted the detailed analysis required for the creation of a new federal privilege under the *Jaffe* and *Univ. of Penn.* decisions. The most thorough analysis of the subject was conducted in *In re Subpoena Issued to Commodity Futures Trading Comm'n* in 2005. *In re Subpoena Issued to Commodity Futures Trading Comm'n,* 370 F.Supp.2d 201 (D.D.C.2005). In *In re Subpoena,* a subpoena had been served on the Commodity Futures Trading Commission ("CFTC") by an energy consumer who had sued an energy company for its alleged manipulation of the energy market. *Id.* at 202. The energy company sought to quash the subpoena, which would otherwise have required the production of, *inter alia,* settlement negotiation documents. *Id.* at 203-04. In a ruling directly applicable to the question before this Court, Judge Bates conducted an exhaustive analysis under *Jaffe* and the *Univ. of Penn.,* and concluded that a federal settlement privilege does not exist. *Id.* at 208-09.

First, the court noted that while there is a public policy of promoting settlement disputes outside the judicial process, it was far from clear that a federal settlement privilege would result in an increased likelihood of settlements so substantial that it would justify an exception to the production of evidence in support of the truth-finding process. *Id.* at 212. This argument is buttressed by the fact that there is no evidence that the method taken by Rule 408 to protect settlement negotiations-limiting the admissibility of settlement discussions without limiting their disclosure in discovery-is insufficient to promote public policy of settling disputes outside the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2007 WL 963975 (N.D.Cal.)
**(Cite as: Slip Copy)**

judicial process.

Second, the court in *In re Subpoena* found that there is no "consensus" among the states as to the existence of a settlement privilege. *Id.* at 210. Unlike the situation in *Jaffe*, where "all 50 states and the District of Columbia" had enacted into law a form of psychotherapist privilege, there is no such foundation for a "settlement privilege" under state law. *Jaffe*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337.

Finally, it is clear that when Congress approved Rule 408 to promote settlements, it chose to do so by limiting admissibility-and not by limiting discovery. *See In re Subpoena*, 370 F.Supp.2d at 211. Indeed, it specifically provided that settlement negotiations can be admitted for certain purposes. Accordingly, any federal settlement privilege is contrary to the enactment approved by the legislature.

The only major case to conduct the analysis required by the *Jaffe* and *Univ. of Penn.* decisions that found in favor of the existence of a settlement privilege is the Sixth Circuit's decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.2003). To the extent that the *Goodyear* decision is at variance with the analysis described above, and the court's interpretation of Rules 501 and 408 in *In re Subpoena*, this Court disagrees with the *Goodyear* decision. First, the court in *Goodyear* did not analyze each of the important factors identified by the United States Supreme Court in order to determine whether a new privilege should be implied under Rule 501. Second, the court seemed persuaded that many of the "facts" that might be discovered from the examination of settlement negotiations would not be reliable. *See Goodyear*, 332 F.3d at 981. ("The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement.") The court did not even analyze Congress's solution to this problem: permitting the admissibility of settlement discussions only in very limited circumstances. Nor did the court address the fact that Congress had chosen, by its approval of Federal Rule of Evidence 408, to allow settlement discussions to be admitted in certain circumstances. The *Goodyear* court also did not analyze whether or not creation of this new privilege had a foothold in a consensus, or even a majority, of state jurisdictions.

**\*6** Accordingly, this Court concludes that a federal settlement privilege should not be implied under Rule 501 of the Federal Rules of Evidence.

## IV. CONCLUSION

For all of the foregoing reasons, the Motion for Leave to File a Motion for Reconsideration is GRANTED IN PART and DENIED IN PART, and the Motion for Reconsideration is DENIED. The Motion for a Stay is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.
Slip Copy, 2007 WL 963975 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 17



Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1670281 (M.D.Pa.)
(Cite as: 2006 WL 1670281 (M.D.Pa.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
ST. MARYS AREA WATER AUTHORITY,
Plaintiff
v.
ST. PAUL FIRE & MARINE INSURANCE COM-
PANY, Defendant.
**Civil No. 1:CV-04-1593.**

June 15, 2006.

Charles T. Young, Jr., Michael R. Kelley, McNees
Wallace & Wallace LLC, Harrisburg, PA, for
Plaintiff.

Ernest J. Mattei, Michelle I. Turner, Day, Berry &
Howard LLP, Hartford, CT, Jack M. Stover,
Buchanan Ingersoll, Harrisburg, PA, for Defendant.

*MEMORANDUM*
WILLIAM W. CALDWELL, District Judge.

I. *Introduction*

**\*1** We are considering the Defendant's motion to
compel deposition testimony. The Defendant, St.
Paul Fire & Marine Insurance Company, seeks to
compel the Plaintiff's expert witnesses to answer
questions about conversations that the experts may
have had with Plaintiff's counsel regarding the sub-
ject matter of the litigation. The Plaintiff, St. Mary's
Area Water Authority, opposes the motion.

II. *Background*

On May 1, 2006, St. Paul conducted depositions of
Dr. Richard Roberts and Joseph Crosson, St. Mary's
expert witnesses. During the course of the depos-
itions, counsel for St. Paul asked the experts numer-
ous questions regarding their communications with
St. Mary's counsel. Specifically, St Paul's counsel
sought to question Crosson about discussions he had
with St. Mary's lawyers concerning the insurance is-
sues associated with the litigation and any changes
the lawyers may have recommended to his draft re-

port. (Doc. 60, Def. Mem. in Support, Ex. B, pp.
12-15). As to Dr. Roberts' deposition, Defendant's
counsel sought to question him about a conversation
Dr. Roberts had with Plaintiff's counsel concerning
the scope of his assignment, information he received
about the case from conversations with Plaintiff's
counsel, and Dr. Roberts' understanding of what the
Plaintiff believed to be covered by the insurance
policy. (Doc. 60, Def. Mem. in Support, Ex. A, pp.
10-11, 33-34, 73- 76). Plaintiff's counsel objected to
these questions on the basis of attorney-client and/or
work-product privilege.

III. *Discussion*

St. Paul contends that it is entitled to examine
Plaintiff's experts concerning their communications
with St. Mary's counsel for three reasons. First, the
Defendant argues that Federal Rule of Civil Proced-
ure 26(a)(2)(B) requires full disclosure of all inform-
ation considered by an expert witness in forming an
opinion. Second, St. Paul maintains that policy con-
siderations weigh against protecting communications
between attorneys and experts. Finally, the Defendant
contends that St. Mary's waived any privilege as to
oral communications through their document produc-
tion.

Relying on *Bogosian v. Gulf Oil Corporation,* 738
F.2d 587 (3d Cir.1984), and *In re: Cendant Corp. Se-
curities Litigation,* 343 F .3d 658 (3d Cir.2003), St.
Mary's argues that its counsel's mental impressions,
conclusions, and opinions are not subject to discov-
ery through their experts on the basis of work-
product privilege [FN1]. Plaintiff further contends
that Rule 26(a)(2)(B) does not require the disclosure
of the experts' discussions with counsel. St. Mary's
also maintains that it did not waive the work-product
privilege.

> FN1. Although the Plaintiff objected to the
> deposition questions on the basis of the
> work-product privilege and/or the attorney-cli-
> ent privilege, St. Mary's has confined its ar-
> gument in its brief to the work-product priv-
> ilege. Thus, we will only consider the ap-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 1670281 (M.D.Pa.)
**(Cite as: 2006 WL 1670281 (M.D.Pa.))**

plicability of the work-product privilege to the issues at hand.

In *Bogosian*, the Third Circuit held that core attorney work-product was not discoverable even if it was disclosed to an expert. *Bogosian*, 738 F.2d at 594-5. The court was considering the interplay between Federal Rules of Civil Procedure 26(b)(3) and 26(b)(4) and determined that a textual interpretation of the rules did not support "... [a] conclusion that Rule 26(b)(3), protecting this category of attorney's work product, 'must give way' to Rule 26(b)(4) authorizing discovery relating to expert witnesses." *Id.* at 594. The Third Circuit noted that although the permissibility of an "examination into a lawyer's role" was not before them, "... the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure ... of core attorney's work product." *Id.* at 595. In *In re: Cendant Corp.*, the Third Circuit reaffirmed this holding. *In re: Cendant Corp.*, 343 F.3d at 665. It is important to note that neither case addresses Rule 26(a)(2)(B). *Bogosian* was decided before the 1993 amendments to Rule 26 which added section (a)(2)(B). *Krisa v. Equitable Life Assurance Society*, 196 F.R.D. 254, 259 (M.D.Pa.2000)(Vanaskie, C. J.). *In re: Cendant Corp.* was decided in 2003, ten years after Rule 26 was amended.

**\*2** Rule 26(a)(2)(B) requires that an expert's report must "... contain ... the data or other information considered by the witness in forming [his] opinion...." The advisory committee notes indicate that the purpose behind the report is as follows:

The report is to disclose the data and other information considered by the expert.... Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed. Fed. R. Civ. Pro. 26, Advisory Committee Notes, 1993 Amend., Subdivision(a), Paragraph (2). The majority of courts that have addressed the argument that Rule 26(a)(2)(B) requires discovery of attorney

work-product disclosed to experts have found in favor of discovery in such instances. *See Synthes Spine Company, L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D.Pa.2005)(collecting cases).

While we are cognizant of the cases that have interpreted Rule 26(a)(2)(B) as requiring the discovery of attorney work-product that has been disclosed to experts, we cannot reach the same conclusion based on prevailing Third Circuit case law. While other courts have found the *Bogosian* to be "inapposite" after the 1993 amendments, *In re: Cendant Corp.* makes it clear that *Bogosian's* holding is still binding on lower courts. Compare *Synthes Spine Co.*, 232 F.R.D. at 462 n. 2 ("[Bogosian], and its underlying rationale, have been held inapposite when determining whether evidentiary privileges shield from discovery materials provided to experts after the 1993 amendments."); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 65 (noting that the reasoning of cases interpreting Rule 26 prior to the 1993 amendments "is probably obsolete.") *with In re: Cendant Corp.*, 343 F.3d at 665 (reaffirming the Third Circuit's holding in *Bogosian*). Given that *In re: Cendant Corp.* was decided ten years after Rule 26 was amended, we cannot find that the Third Circuit's holding in *Bogosian* is inapplicable to the instant case. As such, we must find that core attorney work-product cannot be discovered under Rule 26 even if it is disclosed to an expert.

Having reviewed the questions posed by the Defendant during the depositions, it is clear that the information being sought is prohibited under *Bogosian*. Core attorney work-product "... encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation'...." *In re: Cendant Corp.*, 343 F.3d at 663 (quoting Fed.R.Civ.P. 26(b)(3)). The questions posed by St. Paul's counsel would elicit answers that reveal the opinions or theories of St. Mary's counsel. Further, we find that St. Mary's has not waived the work-product privilege by its document production. The exhibits relied upon by St. Paul indicate what documents and other factual information were supplied to St. Mary's experts to facilitate the preparation of expert reports. *(See Doc. 60, Def. Mem. in Support, Exs. G & H)*. They do not reveal core attorney

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1670281 (M.D.Pa.)
**(Cite as: 2006 WL 1670281 (M.D.Pa.))**

work-product.

**\*3** We will enter an appropriate order.

*ORDER*

AND NOW, this 15th day of June, 2006, it is
Ordered that the Defendant's motion to compel de-
position testimony (Doc. 59) is denied.

Defendant shall respond to Plaintiff's motion for sum-
mary judgment on or before July 6, 2006. Defendant
shall file its motion for summary judgment, if any, on
or before July 6, 2006, accompanied by its brief.

Not Reported in F.Supp.2d, 2006 WL 1670281
(M.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.