## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MBIA INSURANCE CORPORATION, et al., Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | C.A. No. 02-1294-JJF |
| ROYAL INDEMNITY COMPANY, Defendant/Counterclaim Plaintiff. | ) ) ) | |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee, Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 04-1551-JJF |
| PEPPER HAMILTON LLP, et al., Defendants. | ) ) ) | |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee, Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 05-72-JJF |
| McGLADREY & PULLEN LLP, et al., Defendants. | ) ) ) | |
| ROYAL INDEMNITY COMPANY, Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 05-165-JJF |
| PEPPER HAMILTON LLP, et al., Defendants. | ) ) ) | |

## COMPENDIUM OF UNREPORTED CASES CITED IN MEMORANDUM OF ROYAL INDEMNITY COMPANY IN SUPPORT OF EMERGENCY MOTION FOR LEAVE TO REPLACE STRICKEN EXPERT WITNESSES

ASHBY & GEDDES
Lawrence C. Ashby (#468)
Philip Trainer, Jr. (#2788)
Tiffany L. Geyer (#3950)
Andrew D. Cordo (#4534)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
(302) 654-1888
(302) 654 2067 (Fax)

SONNENSCHEIN NATH & ROSENTHAL LLP
Michael H. Barr
Alan S. Gilbert
John Grossbart
Kenneth J. Pfaehler
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700
(212) 768-6800 (Fax)

*Attorneys for Royal Indemnity Company*

May 29, 2007

## UNREPORTED CASES

**Case**                                                                                                                   **Tab**

*Irwin Seating Company v. International Business Machines Corporation,*
     No. 1:04-CV-568, 2006 WL 3446584 (W.D.Mich. Nov. 29, 2006) ...................................1

*Irwin Seating Company v. International Business Machines Corporation,*
     No. 1:04-CV-568, 2006 WL 3446584 (W.D.Mich. Feb. 15, 2007) ...................................2

*Upchurch v. Hester,*
     No. 05-252, 2006 WL 3020772 (D.Del. Oct. 23, 2006) .......................................................3

*DiFlorio v. Nabisco Biscuit Company,*
     No. Civ.A. 95-0089, 1995 WL 710592 (E.D.Pa. Nov. 13, 1995).......................................4

*Borden v. Ingersoll-Rand Co.,*
     No. 01-CV-5455, 2003 WL 21488511 (E.D.Pa. Jan. 17, 2003).........................................5

181012.1

# EXHIBIT 1



Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 1

**H**
Irwin Seating Company v. International Business Machines Corp.
W.D.Mich.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION and J.D. Edwards World Solutions Company, Defendants.
**No. 1:04-CV-568.**

Nov. 29, 2006.

Aaron M. Phelps, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, John W. Boyd, Joseph Goldberg, Freedman Boyd Daniels Hollander & Goldberg PA, Albuquerque, NM, for Plaintiff.
Shannon J. Cassell, Gary Michael Miller, Mary Laura Swietnicki, Paul A. Sheldon, Todd C. Jacobs, Grippo & Elden LLC, Stephen J. Rosenfeld, Kristin Lee Lingren, Suzanne Miriam Scheuing, Natalie A. Harris, Mandell Menkes LLC, Chicago, IL, Charles E. Chamberlain, Jr., Willey Chamberlain & Yates LLP, Grand Rapids, MI, Earle I. Erman, Erman Teicher Miller Zucker & Freedman PC, Southfield, MI, for Defendants.

## ORDER STRIKING EXPERT WITNESSES
HUGH W. BRENNEMAN, JR., Magistrate Judge.
*1 Pending before the court is a motion by defendant International Business Machines Corporation ("IBM") to strike plaintiff's experts due to Irwin Seating Company's ("Irwin") violation of mediation confidentiality (docket no. 195). Defendant J.D. Edwards World Solutions Company has joined in IBM's motion.

Defendant IBM bases its motion on the fact that Irwin improperly supplied its testifying experts with confidential mediation statements and exhibits obtained during a mediation between the parties, and that the experts reviewed these documents in rendering their opinions.

This matter was sent to voluntary facilitative mediation by the court on October 21, 2005. An order entered by the court several days later outlining the procedures for the mediation, provided that "all information disclosed during the mediation session, including the conduct and demeanor of the parties and their counsel during the proceedings, must remain confidential, and must not be disclosed to any other party nor to this court, without consent of the party disclosing the information." Order of November 2, 2005.

At the direction of the mediator, the parties each furnished to her mediation statements and accompanying documents, highlighting those portions of the exhibits the defendants believed to be the most important. IBM asserts, and Irwin does not deny, that Irwin subsequently provided its experts with the defendants' confidential mediation statements accompanying the documents, which explain the importance of certain documents and why they were selected. The documents were also highlighted at the request of the mediator to indicate those portions of the documents that the defendants believed to be the most important.

On April 18, 2006, Irwin produced two expert reports, one by Jeff Hagins assessing the liability of the defendants, and the other by Marianne DeMario pertaining to damages. Each expert report explicitly states that the expert reviewed the mediation material produced by IBM and J.D. Edwards. See Expert Report of Jeff Hagins at p. 40 ("I have reviewed all of the mediation exhibits from IBM, J.D. Edwards, and Irwin Seating."); Expert Report of Marianne L. DeMario at Exhibit B to the report ("Documents Reviewed by Marianne DeMario ... IBM mediation letter, 1/11/06 ... Exhibit C to IBM mediation letter; Exhibit F to JDE mediation brief ... Exhibit G to IBM mediation letter, J.D. Edwards World Solutions Company's Confidential Mediation Brief, 1/12/06....Exhibit G to JDE mediation brief ... Exhibit A to JDE mediation brief). DeMario also cites to the mediation materials throughout the text of her opinion. *Id.* at 3, 4, 5, 6, 7, and 8. Irwin acknowledges that the mediation briefs and attached exhibits "were provided to Mr. Hagins and Ms. DeMario as background and were used by them as such." Plaintiff's Brief in Opposition to IBM's Motion, filed May 22, 2006, at 3.

*Confidentiality Rule*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
**(Cite as: Slip Copy)**

It is beyond question that the mediation proceedings in this case were intended to be confidential, and for settlement purposes only. The explicit order of the court was sufficient notice of this fact to the parties without more.

**\*2** But there was more. The November 15, 2005 letter from the mediator to the parties reiterated that "[t]he mediation process is confidential." In reliance upon this, IBM states that each page of its mediation statement was clearly marked in bold print: **"CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY."**

Moreover, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation. W.D. Mich. LCiv R 16.2(e) provides:
*Confidentiality*-information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408.[FN1]

> FN1. Rule 408 provides in pertinent part: "... Evidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations ..."

The Sixth Circuit has long recognized that "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel *uninhibited* in their communications." (emphasis added)

*Goodyear Tire & Rubber v. Chiles Power Supply,* 332 F.3d 976, 980 (6th Cir.2003). In deciding to recognize the existence of a settlement privilege protecting settlement communications, the court noted that "confidential settlement communications are a tradition in this country. *See, e.g., Palmieri v.*

*New York,* 779 F.2d 861, 865 (2nd Cir.1985) (citing *In Re: Franklin Nat'l Bank,* 92 F.R.D. 468, 472 (E.D.N.Y.1981)) (stating that "[s]ecrecy of settlement terms ... is a well-established American litigation practice"). This Court has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings (citations omitted)." *Id.* at 980.

In summary, the court held that "any communications made in furtherance of settlement are privileged." *Id.* 983.

### *Violation of the Conflict Rule*

There is also no question but that Irwin's lawyers provided copies of IBM's and JDE's mediation briefs and exhibits to the experts. See Affidavit of Jeff L. Hagins dated May 19, 2006 at ¶ 3; Affidavit of Marianne L. DeMario dated May 19, 2006 at ¶ 3. While both experts deny either of the mediation briefs from the defendants influenced them in developing their opinion, they both admit they read these mediation statements as they began their analysis. Mr. Hagins stated, "I did read both IBM's and JDE's mediation briefs once, as part of my initial reading of foundational materials, ... in order to gain some sense of what the case was about. I read these mediation briefs on my computer in the electronic format in which they were provided to me." Hagins Brief at ¶ 5.

**\*3** Ms. DeMario states, "I read the mediation brief for context, when I first started working on my damages analysis...." Ms. DeMario explains that she "cited certain documents as exhibits to the mediation briefs for the sake of simplicity, since it was easier to cite them that way than to locate the same documents among the thousands of pages of materials that had been provided to me by Irwin's lawyers". DeMario's affidavit at 6.[FN2]

> FN2. This protestation proves too much, since by utilizing the exhibits attached to defendants' briefs throughout her analysis, rather than the bates-stamped versions, she was, necessarily, repeatedly pulled back to defendants' briefs and their marked up copies of the documents.

Both experts claim they do not recall what the defendants' mediation positions were, but in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 3
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

context the affidavits are not particularly persuasive since it is readily apparent both were drawn up by the same hand. For example, Mr. Hagins testifies in paragraph 7 of his affidavit:

"I do not even recall what IBM's and JDE's mediation positions were",

while Ms. DeMario states in paragraph 7 of her affidavit:"I don't even recall what were IBM's and JDE's mediation positions."

Plaintiff does not deny the documents were confidential documents nor that its lawyers provided them to the plaintiff's experts, nor that the plaintiff's experts reviewed these documents in preparing their reports. Rather, plaintiff's defense is an attempt to minimize the impact these disclosures had and to argue that the sanction requested by defendants-that these experts be stricken as expert witnesses-is too severe.

The court finds that plaintiff's conduct was in direct derogation of the order of this court, the directions of the mediator, and the common understanding of the purpose for which the mediation documents were to be used. Clearly the mediation briefs and the marked-up documents attached to them constituted settlement communications. While defendants correctly acknowledge that the documents themselves were otherwise producible to the plaintiff's experts, they persuasively argue that the mediation reports themselves, and the highlighting of portions of documents especially selected by the defendants as referred to in their mediation reports, were communications subject to the settlement privilege, not grist for the experts' mill.

### Impact of Violation of Confidentiality

The court need not find a bad intent on the part of Irwin's lawyers in furnishing all of these materials to their experts. What the court does find, whatever the intent, was that these documents were furnished on purpose for the experts to review, and they were in fact reviewed. This is the reality of the situation confronting the court, and it is a dilemma created solely by the actions of plaintiff's own lawyers.

Nor does the problem end here since these reports are now a part of the record used by the plaintiff's experts, and the experts are subject to cross-examination on them. Any cross-examination, of course, runs a risk of touching on the privileged communications. Moreover, and perhaps more

significantly, there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously in response to the claims made and positions taken by defendants in their mediation briefs. Even in denying any recall of what defendants' positions were in their reports, both experts concede these briefs were among the first documents they read, "in order to gain some sense of what the case was about." [FN3] The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

> FN3. By way of analogy, apropos to this time of the year, if a football coach learns that his opponent for next week's game is relying on his team's ability to pass to a particular deep receiver, the coach learning this will doubtlessly concentrate his attention on strategies to cover that receiver.

*4 Moreover, plaintiff's counsel's behavior in sharing these materials with unauthorized persons strikes at the heart of the ADR process.

Striking an expert witness is a harsh remedy, but not an unfair one, where a party has placed its experts at risk by infusing them with knowledge to which they were not entitled. The risk should not be upon the innocent defendants in this instance. The extent of the damage done in terms of how much these mediation briefs and the highlighted documents affected the experts, again consciously or unconsciously, in shaping their approaches and their opinions, is not truly knowable nor easily remediable. Where this situation arises from a clear violation of the court's order and the settlement privilege generally, it is the plaintiff that must bear the brunt of the resolution.

Defendant's motion is GRANTED, and plaintiff's experts Hagins and DeMario are stricken as experts and shall not testify in this action.[FN4] Movant IBM is also awarded costs and attorney's fees in the amount of $1,000.00, payable within 30 days. See, Rules 26(c)and 37(a)(4). If either party objects within 10 days of this order to the amount assessed, IBM shall, within 7 days thereafter, provide an affidavit together with any supporting documentation justifying the amount it believes is appropriate (more or less than $1,000.00), and plaintiff shall have 7 days thereafter to file an appropriate response. The court may schedule a further hearing on the question of costs if it deems it necessary.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 4
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
**(Cite as: Slip Copy)**

> FN4. The court is aware this resolution may also have a salutary effect in preserving confidences of future mediation participants, and the candor necessary to successful facilitative mediations. A contrary result would certainly have a dramatically contrary impact.

IT IS SO ORDERED.

W.D.Mich.,2006.
Irwin Seating Company v. International Business Machines Corp.
Slip Copy, 2006 WL 3446584 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2



Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: Slip Copy)**

**H**
Irwin Seating Co. v. International Business Machines
Corp.
W.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern
Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES
CORP. et al., Defendants.
No. 1:04-CV-568.

Feb. 15, 2007.

Aaron M. Phelps, Varnum Riddering Schmidt &
Howlett LLP (Grand Rapids), Bridgewater Place,
Grand Rapids, MI, John W. Boyd, Joseph Goldberg,
Freedman Boyd Daniels Hollander & Goldberg PA,
Albuquerque, NM, for Plaintiff.
Todd C. Jacobs, Shannon J. Cassell, Gary Michael
Miller, Mary Laura Swietnicki, Paul A. Sheldon,
Grippo & Elden LLC, Stephen J. Rosenfeld, Kristin
Lee Lingren, Suzanne Miriam Scheuing, Natalie A.
Harris, Mandell Menkes LLC, Chicago, IL, Charles
E. Chamberlain, Jr., Willey Chamberlain & Yates
LLP, Grand Rapids, MI, Earle I. Erman, Erman
Teicher Miller Zucker & Freedman PC, Southfield,
MI, for Defendants.

***OPINION***
ROBERT HOLMES BELL, Chief United States
District Judge.
**\*1** This matter is before the Court on Plaintiff's
appeal (Docket # 313) of the Magistrate Judge's order
striking Plaintiff's expert witnesses (Docket # 310).
For the reasons that follow, the order of the
Magistrate Judge is affirmed.

**I.**

This matter was referred to voluntary facilitative
mediation by this Court on October 21, 2005. The
notice of appointment of facilitative mediator
outlined the procedures for mediation and, among
other things, provided that "all information disclosed
during the mediation session, including the conduct
and demeanor of the parties and their counsel during
the proceedings, must remain confidential, and must

not be disclosed to any other party nor to this court,
without consent of the party disclosing the
information." (Notice of Appointment of Facilitative
Mediator, at 2, docket # 94.)

Subsequently, at the direction of the mediator, the
parties furnished mediation statements and
accompanying documents, highlighting those
portions of the exhibits the parties believed to be
most important. The Magistrate Judge found, and
Plaintiff Irwin has not disputed, that Irwin later
provided Defendants' mediation statements and
accompanying highlighted documents to two experts
expected to testify for Plaintiff at trial.

On April 18, 2006, Plaintiff produced two expert
reports, one by Jeff Hagins assessing the liability of
the Defendants, and the other by Marianne DeMario
assessing damages. Each expert report declared that
the expert had reviewed the mediation briefs and
exhibits produced by Defendants. DeMario's report
extensively cited to portions of the mediation
attachments. All of the attachments to the mediation
statement were otherwise produced during discovery.
However, the mediation attachments were
highlighted to identify those portions Plaintiff
believed to be significant to the case.

The Magistrate Judge held that the mediation
proceedings and documents were intended to be
confidential and for settlement purposes only,
pursuant to the order of appointment of mediator,
W.D. Mich. LCivR 16.2(e), Fed.R.Evid. 408 and
established Sixth Circuit case law. The Magistrate
Judge reasoned that, regardless of whether Plaintiff
acted with bad faith, Plaintiff was solely at fault for
the breach of confidentiality and had acted
intentionally to release the information. The
Magistrate Judge further concluded that the exposure
by Plaintiff's experts to Defendants' case theory could
not simply be forgotten by those experts. Moreover,
since any attempt to cross-examine those experts as
to the specifics of their recollection would itself
expose confidential information, the Magistrate
Judge concluded that the only appropriate remedy
was to strike Plaintiff's expert witnesses.

Plaintiff now appeals the Magistrate Judge's order,
contending that the sanction is unduly harsh and
unsupported by law.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II.

Under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), a federal magistrate judge may be designated to hear and determine nondispositive pretrial matters. *Id.* Rule 72(a) provides in relevant part:

**\*2** A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a).[FN1]

> FN1. Rule 72(a) of the Federal Rules of Civil Procedure implements 28 U.S.C. § 636(b)(1)(A). *Massey v. City of Ferndale,* 7 F.3d 506, 509 (6th Cir.1993).

A factual "finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Congress v. Hilltop Realty, Inc.,* 774 F.2d 135, 140 (6th Cir.1985). The question before the court "is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Id.*

A magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, which this Court will overrule only if that discretion is clearly abused. *See Dayco Prod., Inc. v. Walker,* 142 F.R.D. 450, 454 (S.D.Ohio 1992) (citing *Snowden By and Through Victor v. Connaught Labs., Inc.,* 136 F.R.D. 694, 697 (D.Kan.1991); *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 154 (W.D.N.Y.1982); *Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1514 (10th Cir.1990)).

## III.

In its objections to the Magistrate Judge's determination, Plaintiff argues only that the striking of its expert witnesses is an excessive sanction, not warranted by the nature of the violation.[FN2] Plaintiff argues that the Magistrate Judge should have imposed a less severe sanction. Plaintiff contends that it did not act in bad faith to release the mediation materials, believing that disclosure to its own retained experts was disclosure to agents of itself, the represented party, and therefore was not a breach of confidentiality. While Plaintiff no longer asserts that its disclosure was not a violation of the mediation order and the local rules, it asserts that the reason for the disclosure did not amount to bad faith. Further, Plaintiff argues that the information contained in the mediation attachments was otherwise disclosed during discovery and fully available to the experts from other sources. For both reasons, Plaintiff contends that the harsh sanction of striking experts was not warranted.

> FN2. In its reply brief, Plaintiff raises two additional issues not raised before either the Magistrate Judge or in Plaintiff's initial timely objections. First, citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 519 (6th Cir.2002), Plaintiff argues that a finding of bad faith is legally required to support the imposition of a sanction under the Court's inherent authority. Second, Plaintiff argues that the Magistrate Judge lacked evidence to support a finding that Plaintiff's disclosure of mediation materials to the experts had an adverse impact on Defendants or on the mediation process. Neither argument was raised in Plaintiff's objections. Under Fed. R. Civ. P. § 72(a), "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* Moreover, the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived. *See United States v. Lopez-Medina,* 461 F.3d 724, 743 (6th Cir.2006) (citing *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir.1997) (deeming arguments that are not raised in the appellant's main brief, or raised merely

Slip Copy                                                                                      Page 3
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: Slip Copy)**

in a perfunctory manner, as waived)); *see also Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.,* 436 F.3d 662, 676 (6th Cir.2006) (a district court properly declines to consider an issue raised for the first time in a reply brief) (citing, *Sundberg v. Keller Ladder,* 189 F.Supp.2d 671, 682-83 (E.D.Mich.2002) (noting, in the context of summary judgment, "it is not the office of a reply brief to raise issues for the first time") (citation omitted)). For both reasons, the arguments raised in Plaintiff's reply brief are waived, and the Court declines to address either argument.

As the Magistrate Judge fully discussed, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation:
**\*3** *Confidentiality*-information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408.[FN3]

> FN3. Rule 408 provides in relevant part that "[e]vidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations...."

W.D. Mich. LCivR 16.2(e). In addition, as the Sixth Circuit repeatedly has recognized,
There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications.

*Goodyear Tire & Rubber Co. v. Chiles Power Supply,* 332 F.3d 976, 980 (6th Cir.2003).

In determining that the sanction of striking experts was appropriate, the Magistrate Judge made a

number of factual determinations. First, he noted that Plaintiff conceded that its attorneys had provided copies of Defendants' mediation briefs and exhibits to the experts, and both experts acknowledged reading the materials. Indeed, Plaintiff's damages expert repeatedly referred to the mediation exhibits in her expert report. Although both experts averred that they did not recall Defendants' mediation positions and further averred that their opinions were not influenced by their knowledge of those positions, the Magistrate Judge found those averments unpersuasive. The Magistrate Judge noted that the experts had used essentially identical language in their affidavits and that the averments in question appeared to have been drawn up by the same hand.

The Magistrate Judge further found that, regardless of Plaintiff's intent in disclosing the documents, the experts had received confidential information. The Magistrate Judge concluded that no adequate means existed for undoing the experts' improper knowledge. As the Magistrate Judge noted, the facts upon which an expert relies are not required to be admissible. However, the factual basis for the expert's opinion is subject to inquiry and cross-examination. Fed.R.Evid. 703. Because the information in issue is confidential, Defendants will be unable to fully challenge the experts' assertions that their opinions were not influenced by confidential settlement knowledge.

Although Plaintiff continues to argue that the experts were not influenced by the confidential content of the mediation briefs or the highlighting of specific portions of the otherwise discoverable exhibits, the Magistrate Judge's reasons for discrediting the experts' claims are reasonable. The Court finds no basis for concluding that the finding is clearly erroneous. Accepting, therefore, that the experts did remember the mediation positions and that they were, consciously or unconsciously affected by that information, the Magistrate Judge's decision to exclude the experts was reasonable and sound.

**\*4** Further, contrary to Plaintiff's argument, the Magistrate Judge's decision to strike Plaintiff's experts is not inconsistent with other federal decisions. In *Goodyear Tire & Rubber,* applying the mediation confidentiality privilege, the Sixth Circuit upheld the district court's refusal to permit discovery about settlement negotiations to support a plaintiff's claim that a witness had been bribed. 332 F.3d at 983. The court recognized that disclosure of settlement negotiations, even long after those negotiations had failed, would undermine the public policy underlying

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 518866 (W.D.Mich.)
(Cite as: Slip Copy)

Page 4

settlement. *Id.* at 980. The court further held that, because settlement negotiations "are typically punctuated with numerous instances of puffing and posturing since they are 'motivated by a desire for peace rather than from a concession of the merits of the claim,' " the use of "these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement." *Goodyear Tire & Rubber,* 332 F.3d at 981 (quoting *United States v. Contra Costa County Water Dist.,* 678 F.2d 90, 92 (9th Cir.1982)).

Similarly here, permitting Plaintiff's experts to testify after having had access to Defendants' confidential representations has the potential to undermine the willingness of parties to engage in future settlement negotiations. Further, the "facts" upon which those experts rely in such briefing have the potential to be misleading because of the purpose for which they are presented. They therefore may color the expert's conclusions based on a characterization of the facts distorted by the goal of settlement. In any event, the information provides the expert with information about the other party's view of the significance of particular evidence.

The fact that the Sixth Circuit did not approve the identical sanction does not demonstrate the unreasonableness of the sanction imposed in this case. The facts of *Goodyear Tire & Rubber* did not call for the striking of an expert. Instead, the problem was fully able to be addressed by the denial of discovery. Here, in contrast, Plaintiff cannot identify an alternate sanction that will adequately address these experts' improper knowledge. No admonition, reprimand, mediation training or assessment of costs can remove from the experts' minds the information to which they have been exposed. And, because of the ongoing confidentiality of the mediation process, such alternatives cannot remove the obstacle to Defendants' cross-examination of the experts.

The remaining cases cited by Plaintiff are equally unpersuasive. For example, in *Frank v. L.L. Bean Inc.,* 377 F.Supp.2d 233 (D.Me.2005), the court declined to exclude the fruits of an ex parte interview with a potential witness in which the opposing party's settlement position was revealed. The court instead imposed financial sanctions. In *Frank,* however, the party violating settlement confidentiality revealed information to a former employee of the opposing party, who shared the opposing party's interests. As a result, the opposing party could not demonstrate prejudice arising from the breach of confidentiality. The court expressly noted that, "[h]ad Defendant been able to demonstrate such prejudice, such a

sanction might have been an appropriate remedy to counteract Plaintiff's ill-gotten advantage." *Frank,* 377 F.Supp.2d at 240-41.

**\*5** Here, Plaintiff disclosed Defendants' settlement positions to its own expert witnesses. That information is inherently prejudicial to Defendants and is an "ill-gotten advantage," even if the extent of the prejudice is not precisely measurable. In such circumstances, the Magistrate Judge's order striking Plaintiff's expert witnesses, is both reasonable and consistent with the analysis of *Frank.*

In *In re Anonymous,* 283 F.3d 627 (4th Cir.2002), the Fourth Circuit addressed breaches of the confidentiality of the appellate mediation process. The court found that the client, current counsel and local counsel had all violated the confidentiality requirements of the appellate mediation process during their subsequent bar-mediated fee dispute. The court, however, weighing the totality of the circumstances, declined to issue sanctions for several reasons. The court found that none of the participants had acted in bad faith. The court further found that the disclosures to another confidential forum did not severely impact the effectiveness of the mediation process. Further, the court noted that, in light of the breaches by all parties, no single party was harmed by the disclosures. *Id.* at 635-36.

The *In re Anonymous* decision is fully consistent with the Magistrate Judge's determination in the instant case. The case endorses the notion that sanctions determinations are to be based on the totality of the circumstances. *Id.* Here, unlike in *In re Anonymous,* the only party breaching confidentiality is the party with the opportunity to benefit from that breach. Moreover, the breach did not occur within the confines of another confidential process, but instead permitted an expert to offer an opinion influenced by confidential information upon which he could not be fully cross-examined. As the Magistrate Judge found, such a breach has the potential to seriously undermine the effectiveness of the mediated settlement proceedings, thereby undermining important public policy.

A review of Plaintiff's remaining citations to unpublished decisions in which sanctions have been denied reveals substantial differences in the totality of the circumstances from those before this Court. *See Frazier v. Layne Christensen Co.,* No. 04-C-315-C, 2005 WL 372253 (W.D.Wis. Feb.11, 2005); *Concerned Citizens of Belle Haven v. The Belle Haven Club,* No. 3:99CV 1467 (D.Conn. Oct. 25,

Slip Copy                                                                                                    Page 5
Slip Copy, 2007 WL 518866 (W.D.Mich.)
**(Cite as: Slip Copy)**

2002). Plaintiff has identified no comparable disclosure to that in issue here.

Moreover, the fact that any other district court may have decided a sanctions question differently than the Magistrate Judge does not in itself suggest that the Magistrate Judge's decision constituted an abuse of discretion. *See Heights Cmty. Congress,* 774 F.2d at 140 (question is not whether the determination is the best or only conclusion that can be drawn but whether it is a reasonable one.) The Court finds that the factual determinations of the Magistrate Judge were not clearly erroneous and that the striking of Plaintiff's experts is not contrary to law. Accordingly, the Court will affirm the Magistrate Judge's order to strike.

**\*6** Having agreed that the Magistrate Judge properly struck Plaintiff's expert witnesses as a remedy for Plaintiff's breach of mediation confidentiality, the Court must determine whether Plaintiff may retain other experts. The Court has reviewed the totality of the circumstances and finds that a complete denial of expert witnesses would be an excessive sanction, not warranted by the nature of Plaintiff's conduct. The harm to Defendants is fully mitigated by the exclusion of the testimony of those experts exposed to the confidential information. The striking of experts is itself a harsh sanction and should not be made greater by the exclusion of all expert evidence in support of Plaintiff's case. Accordingly, notwithstanding the late stage of these proceedings, the Court will permit Plaintiff to engage new experts.

## IV.

For the foregoing reasons, the Court affirms the order of the Magistrate Judge striking Plaintiff's experts. The Court, however, will permit Plaintiff to designate new experts. In accordance with the Magistrate Judge's order denying clarification (Docket # 323), deadlines for expert reports will be addressed in the scheduling conference to be held after resolution of the dispositive motions.

W.D.Mich.,2007.
Irwin Seating Co. v. International Business Machines Corp.
Slip Copy, 2007 WL 518866 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

Slip Copy                                                                                      Page 1
Slip Copy, 2006 WL 3020772 (D.Del.)
(Cite as: Slip Copy)

**H**
Upchurch v. Hester
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Robert Andrew UPCHURCH and Isa Upchurch,
Plaintiffs,
v.
Officer Edward K. HESTER, Officer Timothy D.
Mutter, City of Dover, the Mills Corporation, d/b/a
Dover Mall, SMS Holdings Corporation d/b/a Valor
Security Services, and Daniel Widener, Defendants.
**No. CIVA 05-252 JJF.**

Oct. 23, 2006.

Victor F. Battaglia, Sr., and Phillip B. Bartoshesky,
of Biggs & Battaglia, Wilmington, Delaware, for
Plaintiffs.
Daniel A. Griffith, and John Vernon Work, of
Marshall, Dennehey, Warner, Coleman & Goggin,
Wilmington, Delaware, for Defendants Officer
Edward K. Hester, Officer Timothy D. Mutter and
City of Dover.
Michael L. Sensor, of Perry & Sensor, Wilmington,
Delaware, for Defendants The Mills Corporation
d/b/a Dover Mall, SMS Holdings Corporation d/b/a
Valor Security Services, and Daniel Widener.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Pending before the Court is Plaintiffs'
request/motion [FN1] seeking thirty days to produce an
expert report from Mr. Upchurch's treating physician.
(D.I.62). For the following reasons, the request will
be granted.

FN1. The parties have submitted this dispute
by letters, which is prohibited by the Rule
16 Scheduling Order (D.I.17). Although the
Court will entertain the current request, the
Court will not entertain further requests
submitted by letters.

I. BACKGROUND

A. *Parties*

Plaintiffs, Robert Andrew Upchurch and Isa
Upchurch ("Plaintiffs"), are citizens of the State of
Delaware who have brought this action pursuant to
42 U.S.C. § 1983, in connection with an incident at
the Dover Mall in March 2004.

Defendants Edward K. Hester ("Hester") and
Timothy D. Mutter ("Mutter") are officers of the
Dover Police Department who were engaged in extra
duty assignments at the Dover Mall in March 2004.
Defendant City of Dover is a political subdivision of
the State of Delaware. The Court will refer to these
defendants, collectively, as the "Dover Defendants."

Defendant Dover Mall Limited Partnership,
designated by Plaintiffs as "The Mills Corporation
d/b/a Dover Mall" is a Delaware business entity
which operates and does business as the Dover Mall
("Mall"). Defendant SMS Holdings Corporation
d/b/a Valor Security Services is a Delaware
Corporation which provides security services for the
Dover Mall ("Valor"). Defendant Daniel Widener
("Widener"), a Delaware resident, was an employee
of Valor in March 2004. The Court will refer to these
defendants, collectively, as the "Mall Defendants."

B. *Background*

The following facts are alleged in Plaintiffs'
Amended Complaint. (D.I.12). On the evening of
March 14, 2006, after 9:00 p.m., Plaintiffs were
shopping at the Dover Mall. Around 9:30 p.m., Mr.
Upchurch went to see if the Boscov's store was still
open. It was not. Mr. Upchurch was then approached
by Defendant Widener, a security guard for Valor
Security Services ("Valor"). Mr. Upchurch was
advised that the store was not an exit from the Mall
area. Mr. Upchurch then left the area after a verbal
exchange between Defendant Widener and Mr.
Upchurch, in which Defendant Widener identified
himself as a security guard. As he was leaving, Mr.
Upchurch heard Defendant Widener make a call on
his two-way radio. Mr. Upchurch headed toward the
Stawbridge's store, also in the Mall and still open at
the time. As he approached Strawbridge's, he was
stopped by Defendant Hester, an extra-duty City of
Dover police officer procured by Valor for mall
security duty through an arrangement with the City of
Dover Police Department. Defendant Hester placed
his hands on Mr. Upchurch's shoulders. Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3020772 (D.Del.)
**(Cite as: Slip Copy)**

Upchurch alleges he tried to run into Strawbridge's but was tackled to the floor from behind by Defendant Hester. Mr. Upchurch also alleges that Defendant Mutter, another extra-duty police officer, then sprayed Mr. Upchurch with mace or pepper spray while Mr. Upchurch was pinned to the floor. Mr. Upchurch was taken into custody and escorted out of the mall. As a result of this incident, Mr. Upchurch alleges he sustained injuries to his arm and left shoulder.

**\*2** On April 28, 2005, Plaintiffs filed their Complaint. (D.I.1). On December 22, 2005, the Court entered a Scheduling Order setting forth the parties' discovery deadlines. (D.I.17). The Court designated April 20, 2006 as the date by which Plaintiffs were to produce expert reports, and, consequently, identify their experts. *Id.* To date, Plaintiffs have not designated any experts, and have not produced any expert reports. Plaintiffs now seek leave to submit an expert report from Dr. Glenn D. Rowe, Mr. Upchurch's treating physician.

## II. PARTIES' CONTENTIONS

By their letter request, Plaintiffs seek permission to designate Dr. Rowe as an expert, even though the Scheduling Order deadline has passed. Plaintiffs also seek to allow Dr. Rowe to produce an expert report within 30 days if the Court grants the request.

Both the Mall Defendants and the Dover Defendants object to Plaintiffs' request. The Mall Defendants contend that Dr. Rowe cannot opine on the cause of Mr. Upchurch's injuries or on any future medical needs of Mr. Upchurch because his testimony is expert, not factual, testimony, and because Plaintiffs did not timely identify Dr. Rowe or submit an expert report by him. (D.I.61). Since all expert disclosures and reports were due by April 20, 2006, the Mall Defendants contend that Plaintiffs should not now be permitted to designate Dr. Rowe as an expert, nearly six months after the Scheduling Order deadline. *Id.* The Dover Defendants have also filed a letter in opposition to Plaintiffs' Motion, reiterating the Mall Defendants position. (D.I.63).

## III. ISSUES PRESENTED

In the Court's view, the issues raised by Plaintiffs' request are: (1) whether the proffered testimony of

Dr. Rowe is "expert" or "factual" in nature; and (2) when were Plaintiffs required to disclose Dr. Rowe's identity and proffered expert testimony to Defendants.

## IV. DISCUSSION

### A. *Dr. Rowe's Testimony Is Expert In Nature*

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), expert witnesses must be disclosed to the opposing side(s). In determining whether a witness is an expert and therefore must be identified and disclosed, Rule 26 "focuses not on the status of the witness, but rather on the substance of the testimony." *Gomez v. Rivera Rodriguez,* 344 F.3d 103, 113 (1st Cir.2003) (citing *Patel v. Gayes,* 984 F.2d 214, 218 (7th Cir.1993)). The Court concludes that Plaintiffs should have designated and disclosed Dr. Rowe, Mr. Upchurch's treating physician, as an expert witness under Rule 26(a)(2)(A).

The designation of a witness as an expert is a matter separate from whether an expert report must be submitted by that witness. Not all identified experts must submit expert reports. Rather, expert reports only need to be submitted by those witnesses who are "retained or specifically employed to provide expert testimony." Fed.R.Civ.P. 26(a)(2)(B). In advancing their contention that Dr. Rowe was not previously required to submit an expert report, Plaintiffs misconstrue the commentary to Rule 26 identifying treating physicians as one group for which an expert report is not automatically required. (D.I.62); *see* Fed.R.Civ.P. 26, cmt. 1993 Amendments, *subdivision (a), para (2).* Rule 26(a)(2)(B) does not require an expert report from a treating physician who will testify concerning his or her examination, diagnosis, treatment of a patient. However, the spirit and substance of Rule 26 cannot be avoided by employing the treating physician to provide, without an accompanying expert report, "classic expert testimony" regarding prognosis. *Lauria v. Nat'l R.R. Passenger Corp., a/k/a Amtrak,* 1997 U.S. Dist. LEXIS 3408 at \*4 (E.D. Pa 1997). When a treating physician's proffered testimony reaches beyond the basic facts learned during the treatment of a patient, and extends to typical opinion testimony, the provisions of Rule 26(a)(2)(B) attach, and an expert report must be provided. *Buss v. Quigg,* 2002 U.S. Dist. LEXIS 15081 at \*2 (E.D. Pa 2002).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3020772 (D.Del.)
**(Cite as: Slip Copy)**

Page 3

**\*3** Because Plaintiffs intend to have Dr. Rowe opine as to the causation of Mr. Upchurch's injuries, and his future treatment needs, the Court concludes that Plaintiffs intend to have Dr. Rowe provide expert testimony that reaches beyond the ordinary treatment of Mr. Upchurch. The Court, therefore, concludes that an expert report should have been provided to all Defendants in accordance with Rule 26(a)(2)(B).

### B. *Plaintiffs Were Required To Disclose All Experts In Accordance With The Court's Scheduling Order*

Federal Rule of Civil Procedure 26(a)(2)(C) details three methods to set a date for submitting an expert report: (1) by direction of the Court, (2) by stipulation of the parties, or (3) by statute. If the parties or the Court have not set a disclosure date, disclosures must be made "at least 90 days before the trial date or the date the case is to be ready for trial." *Id.*

In this case, the Rule 16 Scheduling Order (D.I.17) required the Plaintiffs to disclose all experts and expert reports no later than April 20, 2006. Because Plaintiffs' current request to identify Dr. Rowe as an expert, and produce his expert report, was made on October 11, 2006, the Court concludes that the request is untimely.

### C. *The Impact Of Failing To Timely Disclose An Expert*

Having concluded that Plaintiff's expert report is untimely, the Court must determine whether that untimeliness is sufficient to preclude Plaintiff from offering Dr. Rowe's expert report and testimony pursuant to Federal Rule of Civil Procedure 37. "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court ... may impose other appropriate sanctions." Fed.R.Civ.P. 37(c)(1).

Plaintiffs' only justification for failing to disclose Dr. Rowe as an expert witness is their misunderstanding of the requirements of Rule 26. In the Court's view, this misunderstanding of the statute does not clearly constitute "substantial justification;" however, the Court finds that Plaintiff's failure to disclose is harmless. The Pre-Trial Conference is scheduled for

January 2007. Moreover, Defendants have been aware, throughout the discovery period, of Mr. Upchurch's alleged shoulder injury as well as the identity of Dr. Rowe as Mr. Upchurch's treating physician. Further, Plaintiffs indicate that Dr. Rowe's "expert report" will be provided to Defendants by mid-November. In these circumstances, the Court concludes that Plaintiffs should not be precluded from designating Dr. Rowe as an expert witness.

### V. CONCLUSION

In sum, the Court concludes that Plaintiffs failed to comply with Rule 26(a) and identify Dr. Rowe as an expert witness and provide his expert report. However, because the Court finds that Plaintiffs' failure to disclose under Rule 26(a) was harmless, the Court will grant Plaintiff's request. Plaintiffs will be required to produce Dr. Rowe's expert report within thirty days of the date of this Order.

**\*4** Finally, to avoid any undue prejudice to Defendants, the Court will require Mr. Upchurch to submit to a medical examination pursuant to Federal Rule of Civil Procedure 35, as requested by the Mall Defendants. (D.I.61). Any medical expert reports to be offered by Defendants will be due 45 days after Mr. Upchurch's medical examination.

An order consistent with this Memorandum Opinion will be entered.

### ORDER

At Wilmington, this 23 day of October 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' request to designate an expert and submit an expert report is *GRANTED* (D.I.62);

IT IS FURTHER ORDERED that:

1. Plaintiff is permitted to designate Dr. Rowe as an expert witness;

2. Plaintiff is required to produce Plaintiff's medical reports and Dr. Rowe's expert report to all Defendants within 30 days of this date;

3. Mr. Upchurch must submit to a medical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 4
Slip Copy, 2006 WL 3020772 (D.Del.)
**(Cite as: Slip Copy)**

examination pursuant to Federal Rule of Civil
Procedure 35; and

4. Any medical expert reports to be offered by
Defendants are due 45 days after Mr. Upchurch's
medical examination.

D.Del.,2006.
Upchurch v. Hester
Slip Copy, 2006 WL 3020772 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869
**(Cite as: Not Reported in F.Supp.)**

**H**
DiFlorio v. Nabisco Biscuit Co.
E.D.Pa.,1995.

United States District Court, E.D. Pennsylvania.
Jeanette M. DiFLORIO, Plaintiff
v.
NABISCO BISCUIT COMPANY, et al. Defendants
**No. CIV. A. 95-0089.**

Nov. 13, 1995.

MEMORANDUM AND ORDER
YOHN, J.
*1 Before the court is defendants' Motion to Exclude Plaintiff's Expert Witness, filed on October 17, 1995. Although it must deny the motion at this time, the court will establish a short deadline for plaintiff's disclosure of the information concerning its expert's opinions to which defendants are entitled. Furthermore, the court will hold a hearing on the question of what sanctions would best compensate defendants for plaintiff's lawyers' lack of diligence in complying with the court's schedule for discovery.

A May 4, 1995 scheduling order required plaintiff to comply with Fed.R.Civ.P. 26(a)(2), the mandate for automatic disclosure of expert witness reports before trial, by September 7, 1995.[FN1] However, plaintiff did not retain an expert until August 30, 1995. She did not forward to defendants the curriculum vitae of her retained expert psychologist, Dr. Gerald Cooke, until September 28, 1995. On October 10, 1995, plaintiffs filed a Motion for Extension of Discovery Deadline and for Protective Order, but did not mention any difficulties with obtaining an expert report. The court declined to extend the deadline and the discovery period came to a close on October 26, 1995.

FN1. Federal Rule of Civil Procedure 26(a) states, in relevant part:
[A] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
Except as otherwise stipulated or directed by the court, this disclosure shall with respect to a witness who is retained or specially employed to provide expert testimony in the case ... be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor ...

The case is scheduled for trial on December 11, 1995. To date, defendants still do not know whether Dr. Cooke will testify on liability or damages. They certainly do not have the "complete statement of all opinions to be expressed [by Dr. Cooke at trial] and the basis and reasons therefor," Fed.R.Civ.P. 26(a), to which they are entitled.

In their motion to exclude Dr. Cooke's testimony, defendants argue that the current trial schedule does not permit adequate time for them to review an expert report and to retain a rebuttal expert. They also argue that they would be prejudiced by a delay of the trial since plaintiff has identified many of her co-workers as witnesses, creating an "unfortunate but unavoidable disruption in the workplace."

Plaintiff's sole justification for her violation of the court's scheduling order is that some of her medical care providers have not yet produced their records and that Dr. Cooke needs "certain of these records" to render an expert opinion. She does not inform the court of any steps she has taken to obtain the records. Moreover, she does not state when defendants may expect to receive Dr. Cooke's report. Without even nodding at the Federal Rules of Civil Procedure or the court's scheduling order, plaintiff's counsel simply respond to defendants' motion with the assertion that the court is powerless to order the requested relief.

The Federal Rules of Civil Procedure clearly authorize the exclusion of expert witness testimony as a sanction for a party's failure to disclose information about the expert's opinions in accordance with court deadlines. Rule 37(c) states, in part:
A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 2
Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869
(Cite as: Not Reported in F.Supp.)

**\*2** The court finds that plaintiff has not offered *substantial justification* for failing to comply with its order, as she has made no attempt to explain the missing records' significance or her efforts to obtain them. Furthermore, the court finds that plaintiff's dilatoriness is not *harmless*. Both parties have described to the court how this litigation continues to disrupt Ms. DiFlorio's workplace at Nabisco; protracting the proceedings seemingly serves no one's interests. Moreover, the court's ability to schedule trials for other waiting litigants is hampered by the delay potentially necessitated by plaintiff's cavalier disregard of its deadlines. Thus, under the Rules, excluding Dr. Cooke's report would be the obvious and appropriate sanction.

Unfortunately, the courts of this circuit are not free to exercise the full range of sanctions for discovery abuses authorized by the Rules. The United States Court of Appeals for the Third Circuit has been reluctant to approve the exclusion of testimony unless a party has (1) revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith. *Compare, Coleco Indus., Inc. v. Berman,* 567 F.2d 569 (3rd Cir.1977), *cert. denied,* 439 U.S. 830 (1978)(affirming exclusion of expert findings first revealed in midst of complex trial) *and Semper v. Santos,* 845 F.2d 1233 (3rd Cir.1988)(affirming exclusion when expert witness, long known to party, was identified after jury selection had commenced) *and U.S. v. 68.94 Acres of Land,* 918 F.2d 389 (3rd Cir.1990)(affirming exclusion of expert testimony where, at trial, witness intended to testify beyond clearly defined scope of pre-trial order) *with Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3rd Cir.1977), *disavowed on other grounds, Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3rd Cir.1985)(exclusion reversed where party acted in good faith and three weeks remained before trial) *and DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (3rd Cir.1978)(exclusion reversed where opposing party was prepared for substance of testimony and evidence did not suggest bad faith). Although the conduct of plaintiff's lawyers is hardly commendable, lack of diligence does not constitute bad faith. *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 793 (3rd Cir.1994), *cert. denied,* 115 S.Ct. 1253 (1995). Furthermore, with the trial still a month away, prejudice to defendants' opportunity to prepare can be cured. Additionally, the court notes that plaintiff is not personally responsible for her lawyers' attitudes toward the orders of this court. Therefore, the court will not exclude plaintiff's expert report.

However, the court is not satisfied that this ruling will adequately protect the interests of both parties. At the very least, defendants have incurred costs in filing the Motion to Exclude and have had to conduct discovery without the benefit of plaintiff's mandatory disclosures.

**\*3** Thus, the court will consider alternative remedies for the flaunting of its scheduling order. The United States Court of Appeals for the Third Circuit has recently suggested that a district court judge facing similar circumstances (1) allow the party standing in defendants' position to depose the expert, and (2) tax the resultant costs to the proponent of the expert's testimony. *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d at 793. The Third Circuit has also "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Carter v. Albert Einstein Medical Center,* 804 F.2d 805, 807 (3rd Cir.1986). Moreover, Rule 37(c) specifically permits the award of reasonable expenses, including attorneys' fees, caused by the breach of Rule 26(a). Therefore, after the benefit of a hearing, the court will determine whether defendants should have the option of deposing Dr. Cooke entirely at plaintiff's counsel's expense.

### ORDER

And now, this ___ day of November, 1995, it is hereby ORDERED that:

1. Defendants' Motion to Exclude Plaintiff's Expert Witness is denied.

2. By 12:00 noon on Monday, November 20, 1995, plaintiff will deliver to the court and to defendants' counsel the expert report of Dr. Gerald Cooke. The report shall contain all of the information required by Fed.R.Civ.P. 26(a).

3. At 5:00 PM on Monday, November 20, 1995, counsel shall appear at the U.S. Courthouse for a hearing on whether the court should enter alternative sanctions to the exclusion of testimony, as proposed in the above memorandum. Specifically, plaintiff's counsel shall be prepared to address why defendants should not have the opportunity to depose Dr. Gerald Cooke at the expense of plaintiff's counsel.

E.D.Pa.,1995.
DiFlorio v. Nabisco Biscuit Co.
Not Reported in F.Supp., 1995 WL 710592

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 3
Not Reported in F.Supp., 1995 WL 710592 (E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869
**(Cite as: Not Reported in F.Supp.)**

(E.D.Pa.), 69 Fair Empl.Prac.Cas. (BNA) 869

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580
**(Cite as: Not Reported in F.Supp.2d)**

C

Borden v. Ingersoll-Rand Co.
E.D.Pa.,2003.

United States District Court,E.D. Pennsylvania.
Jeffrey BORDEN, Plaintiff
v.
INGERSOLL-RAND CO., Defendant.
**No. 01-CV-5455.**

filed Oct. 26, 2001.
Jan. 17, 2003.
last filing June 13, 2003.

Paul A. Lauricella, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, representing Jeffrey Borden, (Plaintiff).
Michael J. O'Neill, Piper Marbury Ruddick & Wolfe, Phila, PA, Lead Attorney, Attorney to be Noticed, representing Ingersoll-Rand Company, (Defendant).
Michael A. Smerconish, Beasley Casey & Erbstein, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, representing Jeffrey Borden, (Plaintiff).
YOHN, J.

**\*1** Plaintiff Jeffrey Borden ("Borden") brought suit against defendant Ingersoll-Rand Company ("Ingersoll") for injuries he sustained while using one of defendant's products. Plaintiff asserts strict liability claims for defective design, manufacture, and failure to warn and negligence claims for negligent design, manufacture, repair and failure to warn. Presently before the court is defendant's motion to preclude the product liability/design defect opinions contained in the deposition testimony of two of plaintiff's expert witnesses, Craig Clauser and Ezra Krendel. For the reasons set forth below, I will deny defendant's motion.

### BACKGROUND

Plaintiff brought suit against Ingersoll for injuries he sustained while using one of defendant's products. Pursuant to the court's amended scheduling order, plaintiff's expert testimony disclosures were to be submitted by May 13, 2002. Plaintiff submitted the expert reports of Clauser and Krendel. In their reports, Clauser and Krendel discussed plaintiff's strict liability claim for failure to warn and his negligence claims for negligent repair and failure to

warn. The reports did not, however, explicitly discuss plaintiff's defective design or manufacture claims, which sounded in both negligence and strict liability.

On June 12, 2002, approximately one month after plaintiff was required to file his expert reports, defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On July 1, 2002, plaintiff filed a response to that motion. On July 10, 2002, defendant filed a reply and on July 24, 2002, plaintiff filed a sur-reply.

The parties then conducted depositions of Clauser and Krendel on November 6, 2002. In their deposition testimony, for the first time, both experts offered opinions in support of plaintiff's defective design claim. On November 26, 2002, despite the apparent closure of the pleadings with regard to defendant's motion for summary judgment, plaintiff filed a supplemental memorandum of law in response to defendant's motion for summary judgment. In that supplemental memorandum, plaintiff relied on the deposition testimony of experts Clauser and Krendel to refute the grounds on which defendant based its motion for summary judgment. On December 10, 2002, the court granted plaintiff's motion to file the supplemental memorandum *nunc pro tunc*, thereby allowing the court to consider plaintiff's supplemental memorandum in resolving defendant's motion for summary judgment. The court also gave the defendant the opportunity to respond to the supplemental memorandum. Presently before the court is defendant's motion to preclude the product liability/design defect opinions contained in the deposition testimony of Clauser and Krendel.

### STANDARD OF REVIEW

In evaluating the appropriateness of an exclusionary sanction, a district court should consider.
"(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order."

**\*2** *Meyers v. Pennypack Woods Home Ownership*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01551-JJF    Document 256    Filed 05/29/2007    Page 25 of 26

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580
**(Cite as: Not Reported in F.Supp.2d)**

*Ass'n,* 559 F.2d 894, 904-905 (3d Cir.1977) *overruled on other grounds by Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985)); *see also In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717, 791 (3d Cir.1994) (reaffirming consideration of *Pennypack* factors to resolve exclusionary sanctions). A court, however, must also note that the "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Pennypack,* 559 F.2d at 905 (citation omitted); *see also Paoli,* 35 F.3d at 792.

### DISCUSSION

The issue here is whether the court should preclude the product liability/design defect opinion testimony contained in the depositions of two of plaintiff's expert witnesses, Clauser and Krendel. Rule 26(a)(2) governs the disclosure of expert testimony. In pertinent part, it provides:
(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. Pro. 26(a)(2)(B). Where a party fails to comply with the disclosure requirements, Rule 37 of the Federal Rules of Civil Procedure gives the court the ability to impose sanctions, including the preclusion of certain witness testimony. Fed. R. Civ. Pro. 37(c).[FN1]

> FN1. Rule 37(c) provides, in pertinent part:
> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior

response to discovery as required by Rule 26(e)(2), is, not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.
Fed. R. Civ. Pro. 37(c)(1).

The preclusion of witness testimony is an extreme sanction, and as such, courts should be wary of imposing such a sanction absent a showing of a willful or flagrant violation. *Pennypack,* 559 at 905 (3d Cir.1977); *In re TMI Litigation Cases Consolidated II,* 922 F.Supp. 997, 1003 (M.D.Pa.1996). In determining whether to impose Rule 37 sanctions, a court should consider "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order." *Pennypack,* 559 F.2d at 904-905; *see also In re Paoli,* 35 F.3d at 791 (reaffirming consideration of *Pennypack* factors to resolve exclusionary sanctions). Said another way, exclusion of testimony is appropriate only if a party (1) has revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith. *Pennypack,* 559 F.2d at 905; *In re TMI,* 922 F.Supp. at 1003-1004. Furthermore, the Third Circuit has stated that lack of diligence is not bad faith. *In re Paoli,* 35 F.3d at 793.

**\*3** Applying the above principles to the instant case, I conclude an exclusionary sanction is unwarranted here. Plaintiff asserted a design defect claim in his complaint, thereby giving defendant notice of such claim. Defendant had a chance to cross-examine plaintiff's expert witnesses during the November 2002 depositions. Plaintiff offered the deposition testimony of his expert witnesses more than three months before the case was scheduled to go to trial, thereby vitiating any claims of extreme unfairness or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580
**(Cite as: Not Reported in F.Supp.2d)**

surprise. On these facts, there is no evidence of bad faith on the part of the plaintiff. Nor is there evidence of anything more than minimal prejudice on the defendant. [FN2] As such, I will deny defendant's motion to preclude the product liability/design defect opinion testimony contained in the depositions of Clauser and Krendel.

> FN2. If defendant requests, I will re-open the discovery period. During that time, defendant may choose to re-depose plaintiff's expert witnesses or to find its own rebuttal expert witness. Furthermore, defendant may renew its motion for summary judgment based on the evidence that comes to light during this period.

## CONCLUSION

For the reasons set forth above, defendant's motion to exclude the deposition testimony of the plaintiff's expert witnesses is denied. An appropriate order follows.

## *ORDER*

And now, this 17th day of January, 2003, upon consideration of plaintiff's supplemental memorandum (Doc. 27); defendant's reply thereto (Doc. 30); and plaintiff's response (Doc. 31), it is hereby ORDERED AND DECREED that defendant's motion to preclude Craig Clauser and Ezra Krendel's product liability/design defect opinions is DENIED.

E.D.Pa.,2003.
Borden v. Ingersoll-Rand Co.
Not Reported in F.Supp.2d, 2003 WL 21488511 (E.D.Pa.), Prod.Liab.Rep. (CCH) P 16,580

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.