

Eckert Seamans Cherin & Mellott, LLC  TEL 302 425 0430
300 Delaware Avenue, Suite 1210  FAX 302 425 0432
Wilmington, DE 19801  www.eckertseamans.com

Karen L. Turner
302.425.0430 (Wilmington)
215.851.8431 (Philadelphia)
kturner@eckertseamans.com

July 30, 2007

The Honorable Joseph J. Farnan, Jr.
United States District Court for the
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124
Lockbox 27
Wilmington, DE 19801

Re:  Charles A. Stanziale, Jr., Chapter 7 Trustee of
Student Finance Corporation v. Pepper Hamilton LLP, *et al.*
Civil Action No. 04-1551 (JJF)

Dear Judge Farnan:

This firm represents defendants Robert L. Bast, Pamela Bashore Gagné, the Brennan Trusts and W. Roderick Gagné ("Gagné") as a Trustee of the Brennan Trusts ("the Family defendants"). We submit this letter pursuant to item 10 of the Second Amended Case Management Order # 1 which provides that the parties may submit letters to the Court regarding issues to be raised on summary judgment.

As a result of this Court's Order and Memorandum Opinion dated December 22, 2005, which granted in part the Family defendants' Motion to Dismiss, two Counts of the Trustee's First Amended Complaint ("FAC") against the Family defendants remain: (1) Count VII, which seeks to avoid transfers of stock in three corporations (each of which was the general partner in a limited partnership in which certain Family defendants were limited partners) by Andrew Yao ("Yao"), CEO and sole shareholder of Student Finance Corporation ("SFC"), to certain Family defendants under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa. Cons. Stat. §§ 5101-5110; and (2) Count XI, which under section 547 of the Bankruptcy Code (Preferences) ("the Code") seeks to avoid payments of $4,229,093 by SFC to the Family defendants, for interest, fees and principal on debentures and loans, made within one year preceding the filing of the bankruptcy petition on June 5, 2002 ("Filing Date"). With respect to both Counts VII and XI, there are no genuine issues of material fact and the applicable law and material facts established through extensive discovery require the granting of summary judgment in favor of the Family defendants.

1. **Count VII - Fraudulent Conveyance.**

The Trustee alleged that the pledge by Yao in May 2002 of the stock of One Summit Place, GP, Inc., DHP, GP, Inc. and Premier Education Group GP, Inc. (collectively "GP stock")

**ECKERT
SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 2

to the Family defendants was a fraudulent conveyance under the Bankruptcy Code, 11 U.S.C. §§ 544(b) and 550, and under PUFTA. In its December 22, 2005 Opinion and Order, 335 B.R. 539 (D. Del. 2005), this Court dismissed the claim in part, holding that (1) the Trustee did not have standing to bring a fraudulent conveyance claim under 11 U.S.C. § 544, since the transfer he sought to avoid was of Yao's property, not the property of the debtor, SFC; (2) the Trustee had standing to bring a claim under PUFTA, but could not proceed on a theory of constructive fraudulent transfer, because he did not allege that Yao had not received a reasonably equivalent value in exchange for the transfers in question; and (3) for purposes of a motion to dismiss, the general averment that "Yao pledged the assets with actual intent to defraud his creditors" was adequate to allege fraudulent intent, and therefore the Trustee could proceed to discovery on an actual fraudulent intent theory under PUFTA. 335 B.R. at 552-53.

The Family defendants are entitled to summary judgment on the fraudulent conveyance claim because, at the close of discovery, it is clear that the Trustee will not be able to prove that Yao transferred the GP stock to the Family defendants with actual fraudulent intent. Any argument as to actual fraudulent intent is negated by the following facts, which have been established in discovery and are not subject to reasonable dispute: (1) beginning in 1995, the Family defendants made a number of loans to SFC, including the purchase of debentures; (2) Yao, and in some cases his wife, personally guarantied each of the loans; (3) as of April 2002, loans with an outstanding principal balance of $6.976 million remained unpaid; (4) in April 2002, SFC was in default of its obligations under the loan agreements for these loans because, among other things, it had failed to provide the required collateral for the March 2002 loans made by the Family defendants; (5) on May 5, 2002, Yao pledged his GP stock to the Family defendants as collateral partially to secure his obligations under the guaranties; (6) in May 2002, SFC again defaulted on its obligations under the loan agreements, this time by failing to make the interest payments due; and (7) on June 14, 2002, the defaults still were not cured, and the Family defendants exercised their right to accelerate the maturity date of the debt, proceed against the guarantor and execute against the GP stock which they held as collateral for Yao's guaranties.

The record establishes that with regard to the execution against the GP stock, the Family defendants and Yao entered a series of Assignment and Acceptance Agreements dated as of June 14, 2002, under which Yao transferred the GP stock to the Family defendants and the Family defendants assigned to Yao the SFC loan agreements and debt instruments that were in default. The Assignment and Acceptance Agreements provided that if the GP stock were sold, and the amount received was less than the amount of principal, accrued interest and fees due under the loan agreements, the Family defendants would be entitled to receive the shortfall from Yao; conversely, if the amount received was more than the amount of principal, accrued interest and fees, Yao would be entitled to the excess.

**ECKERT**
**SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 3

The Trustee bears the burden of proving intent to defraud by clear and convincing evidence. *See, e.g., Protocomm Corp. v. Novell Advanced Servs., Inc*, 171 F. Supp. 2d 459, 468 (E.D. Pa. 2001); *Morse Operations, Inc. v. Goodway Graphics of Va., Inc. (In re Lease-A-Fleet, Inc.)*, 155 B.R. 666, 674 (Bankr. E.D. Pa. 1993); *Schaps v. Just Enough Corp. (In re Pinto Trucking Serv., Inc.)*, 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988). No evidence has been adduced in discovery with which he could meet this evidentiary burden, or a lesser one. To the contrary, the undisputed facts establish that Yao did nothing more than pay a debt due under his guaranties after SFC, the primary obligor, defaulted, and that the Family defendants did nothing more than exercise their rights under the loan agreements and guaranties. Counsel for the Family defendants have located no cases in which a court has found a fraudulent conveyance under PUFTA or its predecessor statute on facts such as these. As one Court concluded, "[i]t is difficult to perceive how the payments made by the Debtor . . . on a debt which was justly owed can be tortured into an act done with the intent to hinder, delay and defraud creditors." *Erie Marine Enters., Inc. v. Nationsbank, N.A. (In re Erie Marine Enters., Inc.)*, 216 B.R. 529, 538 (W.D. Pa. 1998).

PUFTA provides that in determining actual intent to defraud, consideration may be given to a list of factors, commonly referred to as badges of fraud. *See* 12 Pa. C.S. § 5104(b) (listing factors). To prevail on a fraudulent transfer claim using these factors, the Trustee must establish a "goodly number" of them. *See, e.g., Provident Life & Accident Ins. Co. v. Gen Syndicators of Am. (In re Laramie Assoc.)*, No. 97-3135, 1997 U.S. Dist. LEXIS 14170, at *15 (E.D. Pa. Sept. 8, 1997); *Pinto Trucking*, 93 B.R. at 386.

Based on the facts developed in discovery, the Trustee will not be able to establish fraudulent intent using the so-called badges of fraud. The Family defendants are not relatives or otherwise insiders with regard to Yao. The GP stock did not constitute substantially all of Yao's assets. There is no evidence that the transfer was concealed, that Yao incurred a substantial debt shortly before or after the transfer, that Yao was sued or threatened with suit before the transfer occurred, that Yao absconded, that Yao removed or concealed assets, or that Yao was insolvent or became insolvent as a result of the transfer. Yao did not retain possession or control of the GP stock. The provision in the Assignment and Acceptance Agreements under which Yao might be entitled to receive certain amounts upon sale of the GP stock did not give Yao possession or control of the GP stock and in any event is not evidence of fraudulent intent, since any amounts received by Yao under this provision would be available to his creditors. As this Court has already ruled, there is no issue regarding lack of reasonably equivalent value, since this was not pled by the Trustee. *See* 335 B.R. at 553. Moreover, under the Assignment and Acceptance Agreements, if the Family defendants ever do receive more from the sale of the GP stock than they are owed, Yao would be entitled to receive such excess amount; therefore, the facts cannot support any argument by the Trustee that Yao received less than reasonably equivalent value for the transfer of the GP stock.

**ECKERT**
**SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 4

      The undisputed facts that the Family defendants received the GP stock on account of a debt duly owed by Yao under his guaranties, and that Yao received reasonably equivalent value for the transfer, also establish that the Family defendants are good faith transferees under section 5108(a) of PUFTA, 12 Pa. C.S. § 5108(a). Even if the Trustee could establish a genuine issue of material fact as to actual fraudulent intent, which he cannot, the good faith transferee defense would defeat his fraudulent conveyance claim.

      The Family defendants believe that the Trustee may attempt to rely on two documents as purported evidence of Yao's fraudulent intent. One is an e-mail from Yao to Gagné dated April 23, 2002, in which Yao states that he will "protect your family's investment in SFC." Even if, as the Trustee apparently contends (see FAC ¶ 154), Yao pledged his GP stock to protect the Family defendants' investment, this does not render the pledge or transfer of the GP stock fraudulent. At most, it is evidence that Yao may have favored the Family defendants over others of his creditors, but the law is clear that absent fraudulent intent, a preferential transfer is not a fraudulent conveyance. *See, e.g., Lichtenstein v. MBNA Am. Bank (In re Computer Personalities Sys. Inc.)*, 284 B.R. 415, 420 n.9 (Bankr. E.D. Pa. 2002); *Beard v. DeVito (In re DeVito)*, 111 B.R. 529, 530-31 (Bankr. W.D. Pa. 1990); *Commonwealth Nat'l Bank v. Miller*, 437 A.2d 1012, 1014 (Pa. Super. 1981). The second is an e-mail from Gagné to Yao dated October 3, 2002, almost five months after the pledge, in which Gagné stated:

> I want to begin the process of the change in control at PEG [Premier Education Group] for several reasons, but most importantly I want the filings with the state and federal departments of education to represent the actual holdings. I have raised this consistently in the past and I think this is a propitious time to move forward. Moreover, we need to do so to reflect various changes in the trust. As an aside, it is also important to evidence our consented to execution against the stock of Premier Education Group G.P. Inc., One Summit Place Partners G.P. Inc. and DHP G.P., Inc. on June 18, 2002 in the event that Wilmington Trust attempts to overturn the same. In fact, Bob has asked that we enter judgment to assert our claims against your other assets in an effort to assist you in thwarting WTC. I have been negligent in passing this along to you.

      Since the GP stock only partially satisfied the Family defendants' claims against Yao under his guaranties, it indisputably would have been their right to enter judgment against him to assert their claims against his other assets. Thus, there can be no argument that the entry of judgment would have been wrongful, even if it did thwart WTC. In any event, judgment was never entered. Moreover, the e-mail does not discuss Yao's intent in transferring the GP stock to the Family defendants four or five months earlier and cannot somehow, after the fact, render that

**ECKERT SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 5

earlier transfer fraudulent. Therefore, despite the Trustee's focus on this e-mail in discovery, it does nothing to support his fraudulent conveyance claim.

Finally, it is noteworthy that even if Yao still held the GP stock, as the Trustee apparently contends he should, it would not avail the Trustee, because the Trustee still does not have a judgment against Yao. The Trustee's failure to prosecute his alleged claims against Yao through to judgment makes his contention that, five years ago, Yao was somehow trying to hinder, delay or defraud SFC and its creditors when he transferred the GP stock to the Family defendants to pay the debt he owed under his guaranties ring hollow.

2.  **Count XI – Preference Claims.**

The Trustee asserts preference claims against the Family defendants in the amount of $4,229,073, which is the total of all payments made by SFC to the Family defendants within one year before the Filing Date. Each payment was for interest, fees or repayment of principal in accord with the terms of debentures that SFC sold to certain of the Family defendants or loan agreements with respect to loans made by the Family defendants to SFC. Based on the material facts elicited in discovery, summary judgment should be entered on these claims on three separate grounds, two of which dramatically reduce the amount of the preference claims and one of which bars them entirely.

    A.  **None of the Family Defendants Was an Insider of SFC.**

The Trustee seeks to use a one-year preference period against the Family defendants, rather than the 90-day period provided in section 547(b)(4)(A) of the Code, by contending that the Family defendants were insiders of SFC. By making an insider allegation, the Trustee increased his alleged preference claim by $4,082,686, from $146,387 (payments within 90 days of the Filing Date) to $4,229,073 (payments within one year of the Filing Date). However, discovery has established that there are no facts based upon which the Trustee could prove insider status.

Section 547(b)(4)(B) of the Code provides that the trustee may avoid any transfer of an interest of the debtor in property made "between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider." Section 101(31)(B) provides that where the debtor is a corporation, "insider" includes a director, officer or person in control of the debtor or a relative of such persons. Section 101(45) in part defines "relative" as meaning an "individual."

None of the Family defendants was a director, officer or person in control of SFC. The uncontroverted deposition testimony of at least nine former mid to high-level SFC employees and four outside persons who had continuing contact with SFC establish those facts beyond

ECKERT
SEAMANS

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 6

dispute. Taken together, the testimony of these persons was that to their knowledge Gagné, Robert Bast and Pamela Gagné were not involved in the management or business operations of SFC, were not a part of the management structure of SFC, were never present at management meetings and were not involved in the financial decisions made at SFC. There is no evidence that any of the Family defendants ever participated in any discussions or decisions regarding the management or business operations of SFC, let alone exercised "day-to-day control" over SFC's business affairs. *See Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 840-41 (Bankr. D. Del. 2006); *Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)*, 348 B.R. 234, 279 (Bankr. D. Del. 2005).

The Trustee's response to the Family defendants' interrogatories in effect concedes that the Family defendants did not control SFC. Interrogatory 1 required the Trustee to state separately for each Family defendant all actions, if any, taken to exercise control or authority over SFC. The Trustee's response did not point to a single specific act that supported his contention that the Family defendants controlled SFC. Instead, the Trustee stated:

> The Family's ability to exercise authority and control over SFC primarily arises out of Pepper and Roderick Gagné's functioning as general counsel for SFC. As such, Gagné had the opportunity to know what was going on at SFC and to direct and structure investment opportunities for the Family's benefit. In representing SFC, Yao and the Family, Gagné was in a position to obtain knowledge and assert influence and control over many of the dealings among them.

The Trustee went on to state that the Family defendants provided sizable loans to SFC between 1996 and 2002, that some of the Family defendants owned stock of SFC for approximately one year (January 2000 to January 2001), that Yao testified in another proceeding that the Family defendants expressed interest in providing bridge financing or obtaining an equity participation in SFC, that some of the Family defendants were limited partners in Yao-related entities, that pursuant to his personal guaranties to the Family defendants, Yao pledged the GP stock to the Family defendants and that Yao wrote to Gagné and assured him that Yao would protect the Family defendants' investment in SFC. Not one of these assertions supports any contention by the Trustee that the Family defendants exercised day-to-day control of SFC or even influenced SFC management in its decisions on business matters during the year preceding the Filing Date or at any other time.

In reality, the Trustee's contention that the Family defendants were insiders of SFC is based entirely on his contention that Roderick Gagné was a person in control of SFC and that the Family defendants, as relatives of Gagné, are derivatively insiders under section 101(31)(B) of

**ECKERT**
**SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 7

the Code, notwithstanding the absence of actions on their part other than lending money to SFC. Of the scores of people that have been deposed, not one has given testimony that supports the Trustee's contention that Gagné was an insider of SFC. The facts elicited in this case establish that at all times and in all respects, Gagné acted as an outside attorney giving legal advice and rendering legal services to SFC and in no other capacity. Furthermore, the Brennan Trusts are not "individuals" and, therefore, not relatives of Gagné.

For these reasons, the Family defendants are entitled to summary judgment that they were not insiders of SFC and, therefore, that payments of $4,082,686 made between 90 days and one year before the Filing Date cannot be avoided, leaving preference claims of $146,387.

B.   **New Value Defense.**

Even if the Trustee could establish a factual basis for a one-year preference period, which he cannot, most of that preference claim would be barred by the Family defendants' new value defense. Section 547(c)(4) of the Bankruptcy Code provides that a "Trustee may not avoid under this section a transfer . . . (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." Here, the indisputable facts establish that the requirements of section 547(c)(4) have been met, and that the Trustee is precluded from avoiding payments made by SFC to each Family defendant prior to March 5, 2002, to the extent of that Family defendant's part of the total $3.3 million new value that the Family defendants gave to SFC on March 5, 2002. Consequently, of the $4,082,686 paid to the Family defendants during the period from June 5, 2001, one year prior to the Filing Date, to March 5, 2002, the Trustee is precluded by the new value defense from avoiding all but $805,852.

While the loan agreements for the $3.3 million loaned to SFC by six Family defendants on March 5, 2002, granted to those Family defendants a security interest in all assets of SFC, including student loans, those security interests were never perfected. Therefore, they are not "otherwise unavoidable security interests" which would preclude the application of the $3.3 million new value against prior preferences. *See, e.g., Williams v. Agama Sys., Inc. (In re Micro Innovations Corp.)*, 185 F.3d 329, 335-36 (5th Cir. 1999); *Intercontinental Polymers, Inc. v. Equistar Chems., LP*, 359 B.R. 868, 876-79 (Bankr. E.D. Tenn. 2005).

Finally, SFC made no unavoidable transfer to or for the benefit of the Family defendants on account of the new value of $3.3 million given to SFC on March 5, 2002. The only payments made to the Family defendants by SFC after March 5, 2002 were interest payments in March and April on outstanding loans, including those loans made on March 5, 2002, all of which payments were made in the ordinary course of business between SFC and the Family defendants. The fact

**ECKERT SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 8

that the Family defendants received GP stock from Yao that in part could be on account of the March 5, 2002, loans is irrelevant to the new value issue. As stated by the Third Circuit in *New York City Shoes, Inc .v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679 (3d Cir. 1989), the requirement of section 547(c)(4)(B) is that "*the debtor* must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition." *Id.* at 680 (emphasis added). Here, the consideration received by the Family defendants came not from SFC, the debtor, but from Yao, and was received after the Filing Date.

### C.     Ordinary Course of Business Defense.

Finally, whether the preference period is 90 days or one year, the Family defendants are entitled to summary judgment on the Trustee's preference claims because all allegedly preferential payments made by SFC to the Family defendants were made in the ordinary course of business. Section 547(c)(2) of the Code, prior to its amendment for bankruptcy cases filed after October 17, 2005, provided that a "trustee may not avoid under this section a transfer . . . (2) to the extent that such a transfer was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms." The purpose of this section is "to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Safety-Kleen Creditor Trust v. Eimco Process Equip. Co. (In re Safety-Kleen Corp.)*, 331 B.R. 591, 596 (Bankr. D. Del. 2005).

The determination of whether a creditor has met its burden under the ordinary course of business provision of subsections 547(c)(2)(A) and (B) is a subjective test involving the consistency of transactions between the debtor and the creditor before and during the preference period. *See, e.g., HL1 Creditor Trust v. Metal Techs. Woodstock Corp. (In re Hayes Lemmerz Int'l, Inc.)*, 339 B.R. 97, 106 (Bankr. D. Del. 2006); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Del., Inc.)*, 320 B.R. 541, 548 (Bankr. D. Del. 2004). The undisputable evidence in this case establishes that there is complete consistency in the transactions between SFC and the Family defendants with respect to loans and payments before and during the one year preceding the Filing Date. *See Hechinger Inv. Co. v. Universal Forest Prods., Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, Nos. 06-2166 and 06-2229, 2007 U.S. App. LEXIS 13155, at *18-26 (3d Cir., June 7, 2007) (holding that the Bankruptcy Court properly rejected the creditor's ordinary course of business defense where the changes in credit arrangements were "so extreme, and so out of character with the long historical relationship between these parties").

From 1998 to 2002, the Family defendants made some 39 bridge loans to SFC. Each of these loans, with the exception of six loans made on March 5, 2002, and part of a loan made by

**ECKERT**
**SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 9

Robert Bast in March 1999, was paid off between 1999 and 2001. All of the evidence of record establishes that these loans had similar documentation and collateral requirements, had the same interest rate and similar commitment fees and had the substantively same payment terms and default provisions. Each required that the proceeds be used solely to finance the business and operating needs of SFC in the ordinary course of SFC's business and contained a representation by SFC that the proceeds would be used solely in connection with the business by SFC for the purpose of financing more loans to students/customers of SFC. In addition to the bridge loans, three Family defendants purchased a total of $3 million in subordinated debentures from SFC in 1995, 1997 and 1998. All payments received by the Family defendants during the year preceding the Filing Date were made by SFC with respect to the outstanding debentures and loans. In the face of these facts, it cannot be reasonably disputed that those payments were made by SFC in payment of debts incurred by SFC in the ordinary course of business or financial affairs of SFC and the Family defendants.

Exhibit 229(II), which was marked at the deposition of Patricia Kartha, former Accounting Manager at SFC, and which consisted mainly of entries from the general ledger of SFC from 1996 through 2002, showed interest and fee payments made by SFC to the Family defendants during that period. That exhibit and the testimony of Ms. Kartha and others establish that the interest and fee payments made by SFC to the Family defendants on outstanding loans during the year preceding the Filing Date were entirely consistent with the interest and fee payments made on outstanding loans during the preceding five years. Moreover, as Ms. Kartha testified, each of the payments to the Family defendants was made in the same ordinary course of business as other payables were paid by SFC. While Exhibit 229(II) does not include the repayments of principal to the family defendants, it cannot be reasonably disputed that each repayment of principal, including those made in November 2001 which are included in the preference claims, was made in accord with the terms of the applicable loan agreements and the ordinary course of business and financial affairs between SFC and the Family defendants.

Nor can there be any reasonable dispute that payments made by SFC to the Family defendants met the third prong of section 547(c)(2), that is, were made according to ordinary business terms. In *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 224 (3d Cir. 1994), the Third Circuit defined "ordinary business terms" in subsection 547(c)(2)(C) as follows:

> "ordinary business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so unusual as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C.

**ECKERT**
**SEAMANS**

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page 10

      Recognizing that the "preference provisions are designed not to disturb normal debtor-creditor relationships, but to derail unusual ones," the Court adopted the following rule of construction with respect to the definition: "the more cemented (as measured by its duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of § 547(c)(2)." *Id.* at 224-25.

      Here, each and every payment made by SFC to the Family defendants during the year preceding the Filing Date was made in accord with the terms of the debentures and loan agreements, the six year "cemented" relationship between the parties and the industry practice. Under the definition and rule of construction in *Molded Acoustical Products*, all such payments were made in accord with ordinary business terms under subsection 542(c)(2)(C).

      We believe that summary judgment in favor of the Family defendants is fully warranted on the grounds described in this letter. Thank you for your consideration of these matters.

Respectfully submitted,

*/s/ Karen Lee Turner*

Karen Lee Turner

KLT:jg
cc:    All counsel on attached Service List

(M0602228)

## SERVICE LIST

William H. Sudell, Jr.
Donna L. Culver
Joanna F. Newdeck
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Email: wsudell@mnat.com
*Counsel for Pepper Hamilton LLP and W. Roderick Gagné*

Elizabeth K. Ainslie
Stephen J. Shapiro
Nicholas J. LePore, III
Bruce P. Merenstein
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 2600
Philadelphia, PA 19103
Email: eainslie@schnader.com
sshapiro@schnader.com
nlepore@schnader.com
bmerenstein@schnader.com
*Counsel for Pepper Hamilton LLP and W. Roderick Gagné*

Tiffany Geyer Lydon
Philip Trainer, Jr.
Carolyn Shelly Hake
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Email: tlydon@ashby-geddes.com
ptrainer@ashby-geddes.com
*Counsel for Royal Indemnity Company*

John H. Eickemeyer
Marie A. Tieri
Vedder, Price, Kaufman & Kammholz, P.C.
1633 Broadway, 47th Floor
New York, NY 10019
Email: jeickemeyer@vedderprice.com
mtieri@vedderprice.com
*Counsel for Freed Maxick & Battaglia, CPAs, PC*

David E. Wilks
Reed Smith LLP
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Email: dwilks@reedsmith.com
*Counsel for Freed Maxick & Battaglia, CPAs, PC*

Christopher M. Winter
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801
Email: cmwinter@duanemorris.com
*Counsel for Freed Maxick & Battaglia, CPAs, PC; McGladrey & Pullen LLP and Michael Aquino*

John I. Grossbart
Alan S. Gilbert
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606
Email: jgrossbart@sonnenschein.com
  agilbert@sonnenschein.com
*Counsel for Royal Indemnity Company*


John W. Shaw
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Email: jshaw@ycst.com
*Counsel for MBIA*


Steven M. Farina
Thomas H.L. Selby
Williams & Connolly LLP
725 12th Street, N.W.
Washington, DC 20005
Email: sfarina@wc.com
  tselby@wc.com
*Counsel for McGladrey & Pullen LLP*

Veronica E. Rendon
Richard P. Swanson
Jason M. Butler
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
Email: veronica_rendon@aporter.com
  richard.swanson@aporter.com
  jason_butler@aporter.com
*Counsel for McGladrey & Pullen LLP and Michael Aquino*


Charlene M. Davis
Ashley B. Stitzer
Mary E. Augustine
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Email: cdavis@bayardfirm.com
  astitzer@bayardfirm.com
  maugustine@bayardfirm.com
*Counsel for Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*


Charles A. Gilman
David G. Montone
David G. Januszewski
M. Justin Lubeley
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY 10005
Email: cgilman@cahill.com
  dmontone@cahill.com
  djanuszewski@cahill.com
  jlubeley@cahill.com
*Counsel for Pepper Hamilton LLP*

Michael S. Waters  
Lois H. Goodman  
Jeffrey T. Testa  
Donald Crecca  
John P. Dwyer  
McElroy, Deutsch, Mulvaney &  
 Carpenter, LLP  
Three Gateway Center  
100 Mulberry Street  
Newark NJ 07102  
Email:  lgoodman@mdmc-law.com  
  mwaters@mdmc-law.com  
  dcrecca@mdmc-law.com  
  jtesta@mdmc-law.com  
  jdwyer@mdmc-law.com  
*Counsel for Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*

Andre G. Castaybert  
Ronald Rauchberg  
Steven Obus  
Proskauer Rose LLP  
1585 Broadway  
New York, NY 10036  
Email:  acastaybert@proskauer.com  
  rrauchberg@proskauer.com  
  sobus@proskauer.com  
*Counsel for MBIA*