# THE BAYARD FIRM
A T T O R N E Y S

222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Zip Code For Deliveries 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(Fax) 302-658-6395

Writer's Direct Access

302-429-4212
cdavis@bayardfirm.com

August 14, 2007

Honorable Joseph J. Farnan, Jr., U.S.D.J.
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 4124
Lockbox 27
Wilmington, DE 19801

> RE:  Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation vs. Pepper Hamilton LLP, et al.
> Civil Action No. 04-1551 (JJF)

Dear Judge Farnan:

On behalf of Charles A. Stanziale, Jr., Chapter 7 Trustee (hereinafter the "Trustee" or "Plaintiff") of Student Finance Corporation (hereinafter "SFC"), we respectfully submit this letter in response to the letters dated July 30, 2007 stating their intention to move for summary judgment, submitted by Defendants Robert L. Blast, Pamela Bashore Gagné, the Brennan Trusts and W. Roderick Gagné (hereinafter collectively the "Family" or "Family Defendants"), as well as Pepper Hamilton, LLP (hereinafter "Pepper Hamilton") and W. Roderick Gagné (hereinafter "Gagné"), in his capacity as an attorney practicing at Pepper Hamilton, LLP (Pepper Hamilton and Gagné

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 2

hereinafter referred to collectively as "Pepper") (the Family Defendants and Pepper referred to collectively as "Defendants").

Prior to the completion of discovery, Defendants moved to dismiss various counts of the Trustee's Complaint. At that time, Defendants unsuccessfully attempted to make the same arguments they seek to make now. The Court denied the motion on the counts currently pending, finding, among other things, that they required factual determinations. In re Student Finance Corp., 335 B.R. 539, 547 (D. Del. 2005). By their July 30 submissions, Defendants once again ask the Court to ignore issues of material fact that must be decided.

Neither Pepper nor the Family Defendants address the fact that 25 experts have submitted reports in this case. All of these experts are presently being deposed and when their depositions are complete on or about September 7, there will be a scant 30 days before the very substantial pretrial submissions must be completed and filed. It is likely that this time period will also be occupied with Daubert motions and hearings. Adding to that the filing of summary judgment motions based on more than 130 days of deposition and a half million documents will be disruptive both for the Court and for counsel preparing for trial.

The Court allowed the parties to submit letters explaining how, after heavily briefed motions to dismiss followed by months of intense discovery and 25 diverse expert reports, there could be a reasonable basis for summary judgment. Defendants have failed to meet that burden and in some instances have failed to even address it.

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 3

### A. Breach of Fiduciary Duty and Legal Malpractice:

Pepper and Gagné make no arguments with regard to the substance of the Trustee's claims of breach of fiduciary duty and malpractice, but instead rely exclusively on *in pari delicto*, which is addressed separately in the next section. They ignore this Court's ruling in denying their motion to dismiss the Complaint at the pleading stage, 335 B.R. 539, and the Court's ruling denying their motion to dismiss based on Seitz v. Detweiler, Hershey and Assoc., P.C. (In re CitX), 448 F. 3d 672 (3rd Cir. 2006). Order dated March 23, 2007.

Pepper seeks to convince the Court that summary judgment is appropriate, dismissing the Trustee's malpractice and breach of fiduciary duty claims, by merely saying the Trustee will not prove his case. The facts set forth in Royal's letter of August 10, 2007 to this Court, as well as the Trustee's detailed supplemental answers to interrogatories, and the expert reports which have been produced, clearly describe a course of conduct by Gagné and Pepper resulting in a breach of their obligations that will support the Trustee's claims.

### B. Insider Status:

Whether Defendants are insiders is raised in the submissions of both Pepper and the Family Defendants. In the Family submission, it relates to whether the Court should consider the one-year period for disgorgement of preference payments applicable to insiders, as opposed to the three-month period applicable to non-insiders. Insider status is relevant to Pepper's proposed motion, both with regard to the preference claim and

667404-1

THE BAYARD FIRM
Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 4

because the defense of *in pari delicto* will not apply if Pepper is found to have been an insider of SFC.

Pepper is not entitled to protection under the doctrine of *in pari delicto* because the facts will show it was an insider of SFC. See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340 (3rd Cir. 2001). In Official Comm. of Unsecured Creditors v. Shapiro, 2001 U.S. Dist. LEXIS 18734 (E.D. Pa. 2001), the court heard motions in a case arising out of a Ponzi scheme alleged to have been conducted by the defendants, who had various relationships with two bankrupt lease financing corporations. While dismissing claims against individuals who were deemed outsiders of the corporation, the court refused to dismiss claims against insiders, holding that the doctrine of *in pari delicto* "does not apply to corporate insiders or partners." Id. at 5.

As this Court found in denying Pepper's motion to dismiss the Trustee's Complaint, "[a]ny person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an 'insider.' Walsh v. Dutil (In re Demko), 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001)." In re Student Finance Corp. 335 B.R. at 547. Whether a party is an insider is largely a factual inquiry. Id. ("[t]hus, the inquiry into insider status 'is fact-intensive and can be made only on a case-by-case basis.'" (citations omitted)). Courts have routinely held that "[d]etermining who should be considered an insider for purposes of this analysis presents a highly fact sensitive question." Liberty Mutual Ins. Co. v. Leroy Holding Co., Inc., 226 B.R. 746, 755 (N.D.N.Y. 1998) (citing In re Chas. P. Young Co., 145 B.R. 131, 136 (Bankr. S.D.N.Y. 1992), leave to appeal denied, Nos. 89-B-11879 & 91-6021A, 1992 WL

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 5

308359 (S.D.N.Y. Oct. 13, 1992)); see also In re Daddy's Money of Clearwater, Inc., 187 B.R. 750 (M.D. Fla. 1995) (whether a creditor is an insider under the Bankruptcy Code is a question of fact).

Thus, it is not, as Defendants contend, simply a mechanical exercise as to whether the party exercised dominion and control over the corporation's day-to-day activities. The Court must look at the facts unique to the relationship, an endeavor inconsistent with summary judgment.

Pepper's reliance upon Glassman v. Heimbach, Spitko & Heckman, 2007 Bankr. LEXIS 2050 (Bankr. E.D. Pa. 2007), to argue that attorneys are not insiders of a corporation is flawed. In fact, Glassman, in which the court explained that attorneys can be insiders of a corporation where there exists a "relationship with the debtor that transcend[s] the normal attorney-client boundaries," supports the Trustee's position that Pepper's relationship with SFC (and its principal, Andrew Yao) went well beyond that typical of the attorney-client relationship. Id at 27; see also In re Broumas, 1998 U.S. App. LEXIS 3070, at 20-22 (4th Cir. 1998) (attorney, who had been engaged by the debtor for years, during which time the attorney and debtor made loans to one another and pledged each other's credit, was found to be an insider).

The role played by Gagné in the operation of SFC, and whether that role makes Gagné an insider of SFC, presents a genuine issue of material fact. The Trustee should be given the opportunity at trial to adduce facts sufficient to show that Pepper's relationship with SFC was that of an insider. Those facts will include evidence that:

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 6

- Gagné was sufficiently involved in SFC to give business advice to Andrew Yao and the company;

- Gagné, through trusts in which he was a trustee and in some cases a beneficiary, along with his wife and his uncle, entered into non-arms length business transactions with SFC. One of the Trustee's experts has opined that the commitment fees on the loans from the Family to SFC aggregated more than $1 million above market and that the interest and fees combined provided an effective annual interest rate as high as 77%;

- Gagné and his family members were shareholders in SFC for a year, at the end of which SFC redeemed their stock in the company for almost $7 million, at a time when the company was already deeply insolvent. The Trustee's expert has offered a report that SFC was insolvent as early as 1998 and the insolvency increased to more than $100 million by 2001. Defendants have offered no expert to claim that SFC was solvent during the relevant period. The stated purpose of the investment, protected at all times by Yao's guaranties, was to give an appearance of financial health to SFC. In addition to its status as a fraudulent conveyance to the Family (which the Trustee seeks to recover under the Pennsylvania Fraudulent Transfer Act, 12 Pa. C.S.A. § 5104), this stock redemption is part of the breach of duty and malpractice claims against Pepper and Gagné. Gagné, as a shareholder and creditor, had contractual and statutory rights to see financial records of SFC. As SFC's attorney, he had a duty not to prefer

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 7

the shareholders over the creditors of an insolvent company. Gagné either knew or willfully ignored SFC's financial condition and as a partner in Pepper documented and completed the transaction for the redemption of stock from him and his family;

- As shareholders, the Family Defendants executed a written ratification and approval of all of the actions of Andrew Yao, the officers and the board of SFC during 2000, a period that included conduct at the heart of the fraud;

- Gagné and his family members were involved with Yao in substantial financial investments, including in the entity that became Premier Education Group ("Premier"), a group of schools in which Yao obtained an interest using funds from SFC. The Family then obtained Yao's interest in Premier. While the amount of Yao's percentage of ownership is in dispute, the Trustee's experts estimate Premier is worth up to $172 million;

- A Pepper employee was an officer of SFC for several years;

- Gagné aided Andrew Yao in manipulating SFC's assets among various inter-related companies, which was in part designed to mask distributions to Yao;

- Over a weekend in March 2002, in response to an emergency request from Yao, Gagné and the other Family Defendants, including Bast, who

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 8

urgently flew back from Florida, came up with $3 million which Yao used to fund the February forbearance payments that were made in early March. Through these facts and others, the Trustee intends to show that Pepper maintained just the kind of relationship found by the court in Broumas to go well beyond the normal confines of an attorney-client relationship.

Gagné is one of the Family Defendants by virtue of his position as trustee and beneficiary of certain trusts. Like Pepper, the other Family Defendants claim that they are not insiders of SFC and therefore not subject to the one-year preference provision. But the Family Defendants operated collectively, coming up with the funds and dividing the investments among themselves. By virtue of Gagné's close relationship with SFC, as set forth above, and the fact that he was the conduit for the Family Defendants' funneling of money to SFC, in exchange for above-market returns, the Family Defendants should also be deemed insiders.

### C. Ordinary Course of Business:

On a separate but related note, the Family would have the Court believe that it is beyond dispute that the loan transactions between them and SFC were in fact reasonable and made in the ordinary course of SFC's business. The facts brought out in discovery show that many of the loans were not reasonable. Indeed, the final loans, made in March 2002 on the eve of the broader disclosure of SFC's fraudulent activity, were anything but in the ordinary course: the flurry of frantic activity surrounding those loans reflects that they were no less than a last ditch effort by Yao and the Family to keep the company afloat by lending money to make forbearance payments. By putting more money into

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 9

SFC in March 2002, the Family was taking very little risk: either they would help the company avert the crisis and get their money back in the short term, or they would be made whole by virtue of Yao's guaranties and subsequent pledge and transfer of stock in Premier Education Group and other entities. The Trustee should have the opportunity to put his proofs before the jury, to show what Gagné knew at the time that the Family made those loans, and even before, with regard to SFC's fraudulent operations. The jury should be allowed to evaluate whether the final loans, which became the Family's basis for obtaining an ownership interest in a separate and highly successful company (Premier) that Yao had developed using funds from SFC, were part of a scheme to protect the Family Defendants' investments.

### D. Fraudulent Conveyance:

The Family Defendants contend that the Trustee will not be able to meet his burden of showing fraudulent intent with regard to certain transfers of assets. Few issues are more fact intensive, and therefore less appropriate for summary judgment, than the subjective intent to defraud. See, e.g., Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir. 1987) (holding that determination of intent to defraud requires a case-by-case individualized analysis of the intent of the debtor). The Family's selective recitation of facts does not make this an issue for summary judgment.

First and most simply, the existence of a fraudulent scheme in the nature of a Ponzi scheme is, in and of itself, sufficient to establish an inference of fraudulent intent. See, e.g., In re C.F. Foods, 280 B.R. 103, 110 (Bankr. E.D. Pa. 2002); In re Independent Clearing House Co., 77 B.R. 843, 860-61 (D. Utah 1987). The Trustee has submitted an

667404-1

THE BAYARD FIRM

Hon. Joseph J. Farnan, Jr., U.S.D.J.
August 14, 2007
Page 10

expert report that shows just that: SFC was operated in a fraudulent manner akin to a Ponzi scheme, with new financing being used to pay old debt, while all the while giving the appearance of a profitably performing portfolio. This alone is sufficient to defeat the Family Defendants' proposed motion on the fraudulent conveyance claim. The Family Defendants' experts do not address this point.

Furthermore, the Trustee disputes the Family's contention that the proofs would not show actual intent to defraud. As set forth above, the facts will show that the transfers at issue, by which the Family Defendants received almost $7 million for worthless stock in SFC, and later received very valuable stock in Premier which they own to this day, were fraught with the intent to defraud. The Trustee should be allowed to present his evidence to the jury.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully submits that there is no basis for summary judgment, and the case should proceed to trial on October 10, 2007, as scheduled.

Respectfully submitted,

*/s/ Charlene D. Davis*

Charlene D. Davis

CDD/tlw

cc: All Counsel of on the Attached Service List

667404-1