## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : |
| | :   Chapter 7 |
| STUDENT FINANCE CORPORATION, | : |
| | : |
| Debtor. | :   Bankruptcy Case No. 02-11620 (KJC) |
| | : |
| CHARLES A. STANZIALE, JR., CHAPTER | : |
| 7 TRUSTEE OF STUDENT FINANCE | : |
| CORPORATION, | :   Civil Action No. 04-1551 (JJF) |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PEPPER HAMILTON LLP, et al., | : |
| | : |
| Defendants. | : |
| | : |

---

### PLAINTIFF, CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE
### OF STUDENT FINANCE CORPORATION'S MEMORANDUM IN OPPOSITION TO
### FAMILY DEFENDANTS' MOTION TO STRIKE TRUSTEE'S DAMAGE CLAIMS

---

Charlene D. Davis, Esquire (No. 2336)
Mary E. Augustine (No. 4477)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney
& Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711

*Counsel for Plaintiff*
*Charles A. Stanziale, Jr., Chapter 7 Trustee*

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………………………………ii

I.    Statement of the Nature and Stage of the
      Proceedings……………………………………………………………………………… 1

II.   Summary of Argument…………………..…………………………………………… 1

III.  Statement of Facts……………………………………………………………………...4

IV.   Legal Argument………………………………………………………………….. 10

      A.    The Trustee has properly asserted claims for fraudulent conveyance
            and preference against the Family Defendants……………………………… 10

            1.    Fraudulent Conveyance Claims
                  against the Family Defendants………………………………………. 10

                  a.    Actual intent to hinder, delay or defraud……………………. 11

                  b.    Received reasonably equivalent value………………………. 13

      B.    The Family Defendants have been on notice of the Trustee's
            claims and resulting damages since the inception of this litigation
            and as such the Trustee does not seek to add new damages claims…………… 15

            1.    Preference Claims against the Family Defendants…………………….. 20

      C.    The Family Defendants have not been,
            and will not be, prejudiced as the Trustee does not
            seek to add newly raised damages claims…..………………………………… 21

      D.    The Trustee should be afforded an opportunity
            to amend his pleadings at the pretrial…..……………………………..……… 23

V.    Conclusion………………………………………………………………………… 25

# TABLE OF AUTHORITIES

## Cases

Brown v. Peoples Sec. Ins.,
   158 F.R.D. 350 (E.D.Pa. 1994) …...………………………………………….....   15

Carmel v. River Bank America,
   185 B.R. 265 (N.D. Ill. 1995) ………………………..…………………………   12

Conley v. Gibson,
   355 U.S. 41 (1957), rev'd on other grounds
   Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (May 21, 2007)..……………………   15

Devers v. Bank of Sheridan, Mont.,
   759 F.2d 751 (9th Cir. 1985)……………………………. …………………………   12

Emerson v. Maples,
   161 B.R. 644 (Bankr. W.D.Tenn. 1993) …………………………...…………………   12

Floyd v. Dunson,
   209 B.R. 424 (Bankr.S.D.Tex. 1997)……………………………………………..   12

Foman v. Davis,
   371 U.S. 178 (1962)…………………...……………………………………..   23

In re Agricultural Research and Technology Group, Inc.,
   916 F.2d 528 (9th Cir. 1990) ..………………………………………………… 12

In re C.F. Foods,
   280 B.R. 103 (E.D.Pa. 2002) …...………………………………………….....   11

In re Harry Levin, Inc.,
   175 B.R. 560 (Bankr. E.D.Pa. 1994)………………………………………………15, 16

In re Old Naples Securities, Inc.,
   343 B.R. 310 (Bankr. M.D.Fla. 2006)………………………………………… 14, 15

In re Pittsburgh Cut Flower Co., Inc.,
   124 B.R. 451 (W.D. Pa. 1991)…………………………………………………   13

In re Southmark Corp.,
   138 B.R. 820 (Bankr. N.D. Texas. 1992)……………………………………………   14

In re:  Student Finance Corporation,
   335 B.R. 539 (D. Del. 2005) ………………………………………………………   20

Mellon Bank, N.A. v. Metro Communications, Inc.,
   945 F.2d 635 (3d Cir. 1991) …..……………………..…………………………… 14

Merrill v. Abbott,
   77 B.R. 843 (D. Utah 1987) …………………………………………………… 11

Network Enterprises, Inc. v. APBA Offshroe Productions, Inc.,
   2002 WL 31050846 (S.D.N.Y. September 12, 2002) ……...………………………… 17

Salomon v. Kaiser,
   722 F.2d 1574 (2nd Cir. 1983)…………………………………………………… 13

San Francisco Bay Area Rapid Transit Dist. v. Spencer,
   2007 U.S. Dist. LEXIS 11693 (N.D. Cal. Feb. 5, 2007) ……….……………………17, 18, 24

Williamson v. Fireman's Fund Ins. Co.,
   828 F.2d 249 (4th Cir. 1987)…………………………………………………………11

**Rules**

Fed.R.Civ.P. 8(a)……………………………………………………………… 15

Fed.R.Civ.P. 9(b)……………………………………………………………… 16

Fed.R.Civ.P. 15(a)…..………………………………………………………… 23

Fed.R.Civ.P. 26(a)……………………………………………………… 1, 2, 21, 22

Fed.R.Civ.P. 37(c)…………………………………………………………………21

**Statutes**

11 U.S.C.A. §547(b)……...………………….…….…………………………………20

11 U.S.C.A. §548………………………….…….……………………………………10

12 Pa.C.S.A. §5104………………………….……………………………………… 11

Cal. Gov. Code §12654(c)…..………………….………………………………… 18

**Treatises**

5 Collier on Bankruptcy ¶548.04 (15th ed. 1996) …………………………………… 13

Understanding Bankruptcy, Herbert, Ch. 15, §15.01…………………………………… 10

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Charles A. Stanziale, Jr., Chapter 7 Trustee (hereinafter the "Trustee" or "Plaintiff") of Student Finance Corporation (hereinafter "SFC"), by his undersigned counsel, submits this memorandum in opposition to the motion filed by defendants Pamela Bashore Gagné, Robert L. Bast, the Brennan Family Trusts, and W. Roderick Gagné as trustee of the Brennan Family Trusts (collectively the "Family Defendants"), by which  they seek to strike two damage claims. Those damages claims are based on facts and causes of action for fraudulent conveyance and preference asserted by the Trustee in the pleadings, and were within the scope of responses to contention interrogatories, were supported by the expert reports of William Hecht and Harry Steinmetz, served on May 7, 2007, to which the Family Defendants responded with expert reports on July 13, 2007, and were detailed in timely Rule 26(a)(1)(C) disclosures.

## II.    SUMMARY OF ARGUMENT

1.     At this point in the case, the Trustee has two causes of action pending against the Family Defendants for the return of fraudulent transfers and preference payments made  to  the  Family. These are not recently asserted claims, nor are the Family Defendants alleging that they are only recently asserted.  The gravamen of the Family Defendants' motion to strike is that the Trustee first advised them on July 10, 2007 of the fact that he is seeking the return of all monies fraudulently transferred to them, as well as all preference payments made to them.  Despite their claims of surprise, the fact is that these elements of damage have been in the case for a long time.

2.     Reference to the payments at issue can be found not only in the First Amended Complaint but also in the original complaint itself, where the Trustee sets forth the Family Defendants' involvement with SFC in regard to the sizeable loans made to SFC between 1996 and 2002 at interest rates ranging from ten to fifteen percent per annum plus fees.  The complaint

also states that in the year 2000, the Family loaned $6 million to SFC, which was converted to common stock, and that when the stock shares were redeemed, the Family received not only its principal but also interest and a substantial payoff premium.  Those allegations are expressly incorporated by reference into the preference and fraudulent conveyance counts. Thus, the Family Defendants are simply wrong when they contend the Trustee did not assert the factual bases for these damages claims in the complaint.

3.    The Family Defendants are also wrong in their contention that the Trustee "turned his back on the required process set forth in the Federal Rules of Civil Procedure" by failing to serve timely disclosures under Rule 26(a)(1)(C).   In fact, the Trustee abided by the Court's instructions, which limited the disclosures to those under Rule 26(a)(1)(A).   Although not required to do so, the Trustee later served Rule 26(a)(1)(C) disclosures on July 10, 2007, setting forth his computation of damages by category.

4.    Even before he served the Rule 26(a)(1)(C) disclosures, however, the Trustee provided ample and unequivocal notice that the monies at issue were included within the fraudulent conveyance and preference claims.   As early as June, 2006, two months before the first depositions, the Trustee advised that he was seeking "a return of **all** money and items of value obtained by the Family Defendants directly or indirectly from SFC," (emphasis added), and expressly referenced in the response that his damages included payments made within one year of the filing date, "together with the value of other transfers that are identified in discovery." Again, on May 7, 2007, shortly after fact discovery closed, the Trustee specifically identified that SFC had paid the Family Defendants $6,931,636 for worthless stock in SFC and that "the payment was a fraudulent conveyance."

5.      The excessive fees and stock redemption were also addressed in the Trustee's expert reports, served on May 7, 2007, which included opinions that the loan commitment fees SFC paid to the Family Defendants were excessive in the amount of $1,018,500 and that SFC was insolvent as early as 1998. The Family Defendants requested additional documents regarding the commitment fee issue, and then served its own expert reports, including one which put forth the opinion that the interest rates and commitment fees were reasonable. All of the experts have been deposed.

6.      Despite the answers to interrogatories, disclosures, expert reports, and depositions of fact witnesses and experts on these issues, the Family Defendants now tell this Court that these claims were "sprung" on them on July 10, 2007. They claim injury as a result, arguing that they would have to re-open fact and expert discovery to address the preference and fraudulent conveyance but identify no witnesses that they would need to depose or re-depose, nor could they; the only people involved in these issues are Andrew Yao, who has been unavailable in discovery because of his pending criminal charges, and Gagné and Bast themselves, both of whom have been deposed on the issues and both of whom remain available to their own counsel. There could be no prejudice.

7.      The Trustee's claims against the Family Defendants for overpayment of commitment fees to Family Defendants for loans in the amount of $1,018,500 and for redemption of worthless SFC stock in the amount of $6,932,000 have been properly asserted and should not be stricken by this Court. Further, the Trustee intends to ask the Court at the pretrial conference for leave to amend the complaint to include in the pleading the very references to damages that were given to the Family Defendants in the June 2006 answers to interrogatories.

III.    **STATEMENT OF FACTS**

On or about November 1, 2004, the Trustee filed a complaint against a number of parties including, inter alia, the Family Defendants. See Bankruptcy Case No. 02-11620, D.I. 927. By Order dated December 22, 2005, the Court dismissed certain counts of the complaint, but did not dismiss those counts seeking the return of fraudulent conveyances and preference payments. See Civil Action No. 04-1551, D.I. 70. On January 23, 2006, the Trustee filed his First Amended Complaint, which supplemented the allegations relating to Pepper Hamilton but did not add any claims against the Family Defendants. Id. at D.I. 76.

Both the original complaint and the First Amended Complaint describe in detail the series of loans the Family Defendants made to SFC between 1996 and 2002, at interest rates ranging from ten to fifteen percent per annum, plus fees. See Bankruptcy Case No. 02-11620, D.I. 927, paragraphs 73 through 95 of the Complaint, and Civil Action No. 04-1551, D.I. 76, paragraphs 73 through 95 of the First Amended Complaint. Paragraph 77, which was in large part admitted by the Family Defendants in their answer, with identical language in both the Complaint and First Amended Complaint, specifically states:

> In 2000, the Family loaned $6 million to SFC, which was converted to common stock. When these shares were redeemed, the Family was repaid principal plus interest and was paid a 7% "Payoff Premium."

Id. at paragraph 77.

The assertions in Count VII in the complaint and in the First Amended Complaint are identical and set forth the Trustee's fraudulent conveyance claim against the Family. In Paragraph 269 under Count VII, the complaint specifically states:

> Paragraphs 1 through 268 above are incorporated by reference as if set forth in full herein.

Id. at paragraph 269.  Paragraph 278 of Count VII provides that the transactions may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§ 5101-5119, the Pennsylvania Uniform Fraudulent Transfer Act.

Count XI states the Trustee's preference claims against the Family.  In Paragraph 312 under Count XI, the complaint specifically states:

> Paragraphs 1 through 311 above are incorporated by reference as if set forth in full herein.

Id. at paragraph 312.

Therefore, the fact that the Family received payments of principal, interest and fees on numerous sizeable loans made to SFC, that the Family loaned $6 million to SFC in 2000, which was then converted to common stock in SFC, that the stock shares were redeemed by the Family, and that the Family was repaid principal plus interest and a 7% payoff premium, was expressly incorporated in the fraudulent conveyance and preference counts "as if set forth in full herein."

Moreover, the Family Defendants' affirmative defenses were stated broadly enough to cover the claims at issue.  The Family Defendants assert that both Yao and SFC were not insolvent, D.I. 77 ¶¶2 & 10, that for "all payments or transfers made to them" Defendants provided fair consideration, ¶9, and equivalent value, ¶8.  Defendants claim that "the payments received by answering defendants" were in the ordinary course of business, ¶5, that they provided new value, ¶6, and acted "in good faith."  ¶12.

By Order entered August 31, 2005, the Court set the schedule for written discovery and specifically addressed the parties' Rule 26 obligations:  "The parties shall serve Rule 26(a)(1)(A) disclosures on or before **October 3, 2005**." D.I. 41, paragraph 2 of August 31, 2005 Scheduling Order (emphasis in original).  In accordance with the Scheduling Order, the Trustee served Rule

26(a)(1)(A) disclosures on or about October 3, 2005.  No other Rule 26 disclosures were required to be filed at that time nor were any requested.

On June 7, 2006, more than two months before fact depositions began on August 21, 2006, the Trustee served supplemental responses to the Family Defendants' First Set of Interrogatories.  In those responses, the Trustee advised that discovery, investigation or preparation for trial had not been completed, nor had the Trustee completed an analysis of the information which had been produced:

> Future discovery and independent investigation may supply additional facts or information, add meaning to known facts, and may establish entirely new factual conclusions or contentions.

See Waters' Certification, Exhibit A, Trustee's Supplemental Responses to Family Defendants' First Set of Interrogatories, pages 1-2.

In response to Interrogatory 1, which asked for a description in detail of all actions taken by the Family Defendants to exercise control or authority over SFC, the Trustee stated:

> In 2000, the Family loaned $6 million to SFC, which was converted to common stock via a Buy-Sell Agreement (the "Agreement"), where, upon execution of the Agreement the Trusts, Bast and Gagné would acquire 180 shares of stock of SFC for a capital contribution of $5,000,000.00 by Bast and the conversion of $1,000,000.00 of debt to equity while earning an interest rate of 14% with a 7% payoff premium to be paid when shares were redeemed.  Schedules of debts as between SFC and the Family evidence that certain shares were still outstanding as of December 31, 2000, thereby indicating shareholder status of the Family for approximately one year.

Id. at page 5.

Responding to a request to provide a calculation of any category of damages claimed, the Trustee replied:

> The Trustee seeks a return of all money and items of value obtained by the Family Defendants directly or indirectly from SFC,

> including those obtained from Yao. <u>This includes but is not limited to</u> $4,293,179.40 million in payments within one year of the filing date, <u>together with the value of other transfers that are identified in discovery</u>, interest, costs and attorneys' fees.

<u>Id.</u> at page 10 (emphasis added).

On April 4, 2007, counsel for the Trustee questioned Robert Bast at his deposition about becoming a shareholder of SFC. Mr. Bast identified a letter, dated February 5, 2000, which he sent to Andrew Yao, who was the Chief Executive Officer of SFC, and incorporated the terms of the purchase of $6 million of SFC common stock as well as the redemption schedule. <u>See</u> Waters' Cert., Exhibit B, Bast Deposition Transcript, Tr. 69:5-18; 75:4-7, and Exhibit C, February 5, 2000 letter from Bast to Yao. Mr. Bast testified that W. Roderick Gagné, his nephew and trustee of the Brennan Family Trusts, drafted the letter. <u>Id.</u> at Exhibit B, Tr. 69:17-18. Mr. Bast also identified his handwritten notes that appeared to be appended to the February 5, 2000 letter which he read into the record: "[Yao] agrees to his and [Yao's wife's] personal guarantee of the SFC purchases. Please document for us. Not included in this letter for a variety of reasons." <u>Id.</u> at Exhibit B, Tr. 70:1-5 and Exhibit C. Mr. Bast answered that he did not know why the Yaos' personal guarantee was not included in the February letter along with the other terms of the purchase. <u>Id.</u> at Exhibit B, Tr. 70:6-8. Gagné has argued that no one would buy stock in a company they knew to be insolvent. Of course, here, unlike other creditors, they as shareholders still had the personal guarantees of Mr. and Mrs. Yao backed by their assets, including stock in Premier Education Group's predecessor, which Yao jointly owned with them.

Initially, when Mr. Bast was asked why the Family Defendants became shareholders, he recalled a conversation with either or both Andrew Yao and W. Roderick Gagné and stated:

> That SFC wanted to broaden its equity – the percentage of its equity holdings would include more equity participation as distinguished from loans.

Id. at Tr. 75:21-25.   Mr. Bast could not recall why SFC wanted to do that.   Id. at Tr. 76:1-2.

Thereafter, Mr. Bast was shown a letter from Andrew Yao to Wilmington Trust Company, dated

February 23, 2000, which was read into the record:

> SFC sold common stock to demonstrate that it has the capability to
> raise equity financing on short notice and to signal SFC's
> commitment to its long term business plan.   SFC did not need
> equity for cash flow, nor did it need equity to satisfy its external
> auditors.   SFC intends to repurchase the stock in 2000.

Id. at Tr. 163:1-10.   Bast testified that this was consistent with what Mr. Yao told Bast about the

raising of equity financing.   Id. at Tr.163:15.

Mr. Bast further testified, and was shown substantiating records, that shares of SFC

stock, which he purchased in 2000, were repurchased by SFC.   Id. at Tr. 80:19 to 81:5.   Mr. Bast

identified the K-1's he received from SFC, which showed a loss which he could apply against

other income, as well as distributions to shareholders.   Id. at Tr. 79:8-80:12.   Similar shareholder

distributions were made to Pamela Gagné and Roderick Gagné, a trustee, over the course of a

year when SFC was insolvent.

Throughout the fact discovery period, the Family Defendants, along with the other

parties, served several written discovery requests.   By agreement, responses to outstanding

requests were deferred until depositions had concluded.   Shortly after fact discovery closed on

April 30, 2007, on May 7, 2007, the agreed date by which parties were to update their answers to

contention interrogatories, the Trustee provided a response to the Family Defendants' Third Set

of Interrogatories.   In that response, the Trustee identified that SFC had paid the Family

Defendants $6,931,636 for worthless stock in SFC and that "the payment was a fraudulent

conveyance."   See Waters' Cert., Exhibit D, Trustee's Responses to Family Defendants' Third

Set of Interrogatories, Interrogatory 26, with May 7, 2007 Waters letter enclosing answers, as

well as Exhibit E, Goodman e-mail to Epstein dated March 30, 2007 confirming extension of time to respond until the end of fact discovery; and Exhibit F, Goodman e-mail to Epstein dated April 5, 2007, confirming extension of time to respond until May 7, 2007.

On May 7, 2007, the Trustee also served his expert reports, including that of William Hecht, CPA.  Mr. Hecht evaluated the interest rates and commitment fees charged on the 55 loans from the Family Defendants to SFC and found that SFC had paid the Family Defendants excess fees on the loans in the amount of $1,018,500.  See Waters Cert., Exhibit G, Expert Report of William Hecht, Exhibit A, pages 5-8.  Mr. Hecht also set forth the Family shareholding and the terms of their redemption.

The Family Defendants requested additional documents regarding the commitment fee issue.  See Exhibit H to the Waters Cert., May 24, 2007 letter from Epstein to Waters. Notwithstanding the Family Defendants' contention in their moving papers that "no reasonable person could construe the Trustee's pleadings, disclosures and interrogatory responses – individually or collectively – as setting forth a claim that the Trustee was entitled to relief" as a result of overpayment of commitment fees, D.I. 317-3 at 6, on July 13, 2007, the Family Defendants served their own expert report from Owen Carney.  Mr. Carney offered his opinion that the fees paid on the Family Defendants' loans were fair and reasonable.  Both Mr. Hecht and Mr. Carney have been deposed, and counsel for the Family Defendants examined the Trustee's experts with regard to these opinions.

The Trustee also served the expert report of Harry Steinmetz, CPA, on May 7, 2007.  Mr. Steinmetz found that SFC was highly unprofitable after 1997 and was insolvent by at least mid-1998.  Thus, when the Family Defendants were paid almost $7 million for the redemption of stock, SFC was insolvent, and that stock was in fact worthless, while, as Yao indicated in his

letter described above, the stock transaction had been used to make SFC appear more creditworthy. Counsel for the Family Defendants deposed Mr. Steinmetz on August 20, 2007.

On July 10, 2007, the Trustee served Rule 26(a)(1)(C) disclosures, confirming his computation of damages by category.

## IV.   LEGAL ARGUMENT

### A.   The Trustee has properly asserted claims for fraudulent conveyance and preference against the Family Defendants.

#### 1.   Fraudulent Conveyance Claims against the Family Defendants

The Bankruptcy Code's fraudulent conveyance provisions are similar in both form and substance to Pennsylvania's fraudulent conveyance statute. Generally, the elements of a cause of action for fraudulent conveyance under the Bankruptcy Code and Pennsylvania law fall into either one of two categories: a transfer made with the intention of defrauding creditors or a transfer made by an insolvent party for grossly inadequate consideration. Understanding Bankruptcy, Herbert, Ch. 15, §15.01, p. 273.

> Under the Bankruptcy Code, the Trustee can avoid transfers where the debtor,
>
> voluntarily or involuntarily (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts mature.

11 U.S.C.A. § 548.

In language similar to the Bankruptcy Code, the Uniform Fraudulent Transfer Act, adopted by Pennsylvania, states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent[1] to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S.A. § 5104.

The drafters of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA") expected § 5104(a)(2) and § 548(a)(1)(B) of the Bankruptcy Code to be construed and interpreted in a uniform manner. In re C.F. Foods, 280 B.R. 103, 115 (E.D.Pa. 2002). Therefore, under the Bankruptcy Code and the PUFTA, a trustee can avoid a transfer if it was made with the intention of defrauding creditors or by an insolvent entity for grossly inadequate consideration.

### a.     Actual intent to hinder, delay or defraud

A determination of actual intent to defraud requires a case-by-case, individualized analysis of the intent of the debtor. Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir. 1987). However, one can infer an intent to defraud from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. In re C.F. Foods, supra at 110; see also Merrill v. Abbott, (In re Independent Clearing House Co.), 77 B.R. 843,

---

[1] (b) Certain factors. — In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider;  (2) the debtor retained possession or control of the property transferred after the transfer;  (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

860-61 (D.Utah 1987). Numerous courts have decided that a debtor's actual intent to hinder, delay or defraud may be inferred from active participation in a Ponzi scheme. See Floyd v. Dunson, 209 B.R. 424 (Bankr.S.D.Tex. 1997); Emerson v. Maples, (In re Mark Benskin & Co.), 161 B.R. 644 (Bankr.W.D.Tenn. 1993); In re Agricultural Research and Technology Group, Inc., 916 F.2d 528 (9th Cir. 1990). That SFC was engaged in fraudulent activity in the nature of a Ponzi scheme, an aspect of Mr. Steinmetz's report, will be made evident at trial. That scheme clearly supports the Trustee's position and warrants an inference of intent to defraud the creditors of SFC.

Nonetheless, even absent the finding of a Ponzi scheme, courts may deduce fraudulent intent from all the facts and circumstances of the case. Devers v. Bank of Sheridan, Mont., (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985). Some of the most common indicators of fraudulent intent have been classified into "badges of fraud," the existence of which can be used to infer the actual intent to defraud. Carmel v. River Bank America, (In re FBN Food Services, Inc.), 185 B.R. 265 (N.D. Ill. 1995) (quoting Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir. 1991)). Courts have identified various badges of fraud, a number of which could apply here: concealment of facts and false pretenses by the transferor; reservation by the transferor of rights in the transferred property; his or her absconding with or secreting the proceeds of the transfer immediately after their receipt; a transfer for no consideration when the transferor and the transferee know of the claims of creditors and know the creditors cannot be paid; the existence of an unconscionable discrepancy between the value of property transferred and the consideration received therefore; the fact that the transfer was made to satisfy or secure a debt long since forgiven; the fact that the transferee was an officer, or an agent, or creditor of an officer of an insolvent corporate transferor, and the creation by an oppressed debtor of a closely-

held corporation to receive the transferred property. 5 <u>Collier on Bankruptcy</u> ¶ 548.04[2][b], at 548-26 to 548-28 (15th ed. 1996). Courts will also consider the family, friendship or close associate relationship between the parties; the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt; and the general chronology of the events and transactions under inquiry. <u>Salomon v. Kaiser, (In re Kaiser)</u>, 722 F.2d 1574 (2nd Cir. 1983).

The Trustee has submitted an expert report that shows that SFC was operated in a fraudulent manner akin to a Ponzi scheme, with new financing being used to pay old debt, while all the while giving the appearance of a profitably performing portfolio. SFC's operation in the nature of a Ponzi scheme alone substantially demonstrates the element of fraud. Nonetheless, the actions of SFC also clearly satisfy the "badges of fraud" inquiry. Specifically, the transfers at issue, first by which the Family Defendants received almost $7 million for worthless stock in SFC in a transaction that provided them a profit on the redemption, their share of SFC's losses for the year and extra income in Subchapter S shareholder distributions, all under the shelter of Yao's personal guaranties provided so he could use the transaction to make SFC appear more creditworthy, and later exchanged their claim against a bankrupt company for very valuable stock in Premier and related entities, which they own to this day, and which companies were valued by experts at amounts arguably up to $172 million, were fraught with the intent to defraud.

### b.     Received reasonably equivalent value

Whether reasonably equivalent value has been received depends on the particular facts and circumstances of a given case. <u>In re Pittsburgh Cut Flower Co., Inc.</u>, 124 B.R. 451 (W.D.Pa. 1991), and the court must literally compare the value of what was transferred out of the estate

with the value of what was received.  In re Southmark Corp., 138 B.R. 820 (Bankr. N.D.Texas 1992).

The facts relating to the transfers at issue, the payment to the Family for the redemption of stock and for excessive fees on loans the Family made to SFC, clearly constitute fraudulent conveyances for which no reasonably equivalent value was received by SFC.  Information adduced in discovery and set forth in the Trustee's expert reports reflects, for example, that SFC was in fact insolvent when it redeemed the stock held by the Family Defendants; by definition, that stock was worthless and the almost $7 million paid to the Family was without any value to SFC, let alone reasonably equivalent value.  Similarly, based on discovery and expert opinions, it has become clear that SFC paid excess commitment fees to the Family Defendants on numerous sizeable loans, as a result of which the Family Defendants received more than $1 million without any value to SFC.

The Family Defendants fail to recognize that the burden of demonstrating damages does not rest upon the Trustee.  A trustee seeking to void a transfer as fraudulent has the burden of proving that the transferor either had intent to defraud or did not receive "reasonably equivalent value" for the transfer.  See Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635 (3d Cir. 1991) (requiring the trustee to show that the debtor received "less than a reasonably equivalent value"). The requirement to demonstrate that a transfer was made for "less than reasonably equivalent value" is very different from a need to prove specific damages caused by a defendant.  This position is further supported by In re Old Naples Securities, Inc., 343 B.R. 310 (Bankr. M.D.Fla. 2006), where the debtor corporation operated a Ponzi scheme related to the sale and repurchase of securities. The court ruled that proof of intent to defraud was itself sufficient to enter judgment in favor of the trustee seeking to avoid transfers pursuant to § 548.

Id. at 321.  Nowhere in its analysis of the fraudulent transfer claim did the court even broach the subject of proving damages, let alone any burden of the trustee to prove damages in order to obtain a judgment.  Id. at 319-321.  Once the court established that a fraudulent transfer had occurred, it had "more than ample" grounds to enter judgment in favor of the trustee.  Id. at 321.

Rather than meeting these issues head on, the Family Defendants have resorted to an effort to prevent the Trustee from presenting his proofs at trial, by arguing that the Trustee did not properly disclose these damages sustained by SFC.

**B.    The Family Defendants have been on notice of the Trustee's claims and resulting damages since the early stages of this litigation.**

As acknowledged by the Family Defendants in their moving papers, pursuant to Conley v. Gibson, 355 U.S. 41, 47 (1957), rev'd on other grounds Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (May 21, 2007), a complaint must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  The Trustee's Complaint does in fact provide substantial "fair notice" of his claims against the Family Defendants, as well as the grounds upon which those claims rest.  The Trustee has not sought to alter those claims.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief".  Fed.R.Civ.P. 8(a)(2).  Rule 8(a) does *not* impose any requirement that the pleading state facts sufficient to constitute a cause of action.  Brown v. Peoples Sec. Ins., 158 F.R.D. 350, 352 (E.D.Pa.1994) (*citing* Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795, 798 (3d Cir.1967)).

Courts do not require a complaint to specify individual transactions that give rise to claims for preference or fraudulent conveyance.  In In re Harry Levin, Inc., 175 B.R. 560 (Bankr. E.D.Pa. 1994), a trustee brought adversary proceedings against a corporate debtor's former

president and corporate parent for turnover of debtor's alleged preferential and fraudulent transfers. The defendants challenged the allegations in the complaint as overly vague and ambiguous because they did not include specific details about the transactions. The Bankruptcy Court held that the trustee had plead sufficient facts to place the defendants on notice as to the claims for fraudulent conveyance and preference. Id. at 568, 570.

Preference claims do not face any heightened standard of pleading. Claims for fraudulent conveyance brought by a trustee require more detail as to the transactions, but do not rise to the high level required by Fed.R.Civ.P. 9(b). The Harry Levin court held that a preference claim that did not plead the specifics of the subject transactions was sufficient. Id. at 570. In doing so, it held that "[w]hile the specific transfers are not articulated, this information is discoverable." Id.

Generally, claims of fraud require a plaintiff to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice. Fed.R.Civ.P. 9(b). However, the stringency of this rule is relaxed in bankruptcy matters brought by a trustee.

> When a trustee in bankruptcy pleads a claim of fraud, cases have held the Rule 9(b) requirement of particularity is relaxed. A persuasive reason to permit this relaxation is the trustee's inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.

In re Harry Levin, Inc., 175 B.R. at 567. The Harry Levin court found that the trustee had plead

> that the transfers occurred within two years of Levin's bankruptcy filing; that the defendant used his position as president of Levin and as a director of its sole shareholder to use the debtor's assets for his own personal benefit and to pay his own personal debts; and that he received an " excessive" salary.

Id. at 568. On this basis, the Court upheld the fraudulent conveyance claim because it found sufficient information about the nature of the transactions that would place the defendants on notice. Id. See Network Enterprises, Inc. v. APBA Offshore Productions, Inc., 2002 WL 31050846, 6 (S.D.N.Y. September 12, 2002) (although plaintiff did not furnish important details such as the amount and precise timing of the alleged transactions, those are the kind of facts which need not be pleaded because they are peculiarly within the knowledge of the defendants).

The Trustee's pleadings, with regard to setting forth his claims for fraudulent conveyance and preference, went well beyond the requirements of Rule 8(a) and the standards articulated by the courts in such matters.

The Family Defendants' reliance on San Francisco Bay Area Rapid Transit Dist. v. Spencer, Civil Action No. C 04-04632 SI, 2007 U.S. Dist. LEXIS 11693 (N.D. Cal. Feb. 5, 2007) ("Spencer"), to support their motion to strike the Trustee's elements of damages is also misplaced. In Spencer, the plaintiff raised a claim for violation of the California False Claims Act ("CFCA"), and repeatedly identified 97 specific violations of the CFCA, throughout the course of discovery, in amended answers to interrogatories, in response to a summary judgment motion, and in its submissions to the court prior to the pretrial conference. On the eve of trial, by way of a Joint Pretrial Conference Statement, the plaintiff indicated that it intended to prove an additional 520 violations. However, the plaintiff had again failed to specifically identify the additional violations. The court responded by limiting the proofs to those claims articulated prior to trial. On the third day of trial, the plaintiff finally identified the more than 600 claims it sought to prove. The court limited the plaintiff's proofs to the 97 identified claims and reasoned that the plaintiff had failed to properly identify more than the 97 claims in its pleadings, interrogatory responses, summary judgment opposition or Pretrial Statement. Id. at *9-11.

In direct contrast to Spencer, the Trustee has put the Family on notice not only of the causes of action asserted but also of the elements of damages with regard to each of those causes of action. Unlike the defendant in the Spencer case, who had no notice of the identity of the new claims until only the third day of trial and had not conducted discovery on them, in this case, the Family Defendants have had notice of the fact that these claims were in the case and have conducted discovery on the issues.

As an initial matter, the claims asserted in Spencer, which arose under a California statute, are different from those asserted here under the Bankruptcy Act. In asserting claims of preference and fraudulent conveyance under the Act, the Trustee only has the burden of establishing the statutory elements set forth in the code, including that a transfer was made. Unlike the plaintiff in Spencer, the Trustee does not have the burden of proving actual damages. See Cal. Gov. Code § 12654(c) (2007) (Under the California False Claims Act, the "plaintiff shall be required to prove all essential elements of the cause of action, including damages").

Moreover, the Trustee identified these claims in the complaint, the amended complaint, in responses to contention interrogatories, as well as in Rule 26(a)(1)(C) disclosures. The Trustee's pleadings set forth the factual bases for damages to which the Trustee is entitled. Additionally, they were the subject of expert reports and depositions. Furthermore, the Trustee specifically supplemented his responses to the Family's contention interrogatories on June 7, 2006, months before depositions began, advising that the Trustee is seeking "a return of all money and items of value obtained by the Family Defendants directly or indirectly from SFC," which included but was not limited to payments within one year of the filing date, "together with the value of other transfers that are identified in discovery." See Waters' Cert., Exhibit A, at 10 (emphasis added). This would, of course, include the fraudulent conveyance to the Family

Defendants by redemption of worthless SFC stock in the amount of $6,932,000.00. Additionally, it would include overpayment of $1,018,500 for commitment fees to the Family Defendants.

Furthermore, the Family Defendants served Requests for Admissions and a Third Set of Interrogatories in March 2007. On May 7, 2007, in responding to Interrogatory 26, which asked the Trustee to identify payments SFC made to the Family Defendants from 1996 through 2002 that were not made in the ordinary course of business of SFC, the Trustee specifically identified that in 2000 and 2001 SFC paid the Family Defendants $6,931,636 for worthless stock in SFC and that the payment was a fraudulent conveyance. See Waters Cert., Exhibit D, Trustee's Response to Family Defendants' Third Set of Interrogatories, Interrogatory 26.

The damage claims were also addressed at depositions, both of fact and expert witnesses. Moreover, the damages were the subject of expert reports. In fact, the Family Defendants submitted the report of an expert who offered an opinion on the reasonableness of the fees paid by SFC to the Family on the loans at issue. It defies logic for the Family Defendants to say in their motion to strike that they did not have notice and are prejudiced by the failure to plead these damages in the Amended Complaint, when in fact they are the subject of expert reports submitted by the Family. Considering all of their arguments on the issue of insider status at every stage of this litigation, there can be no doubt that the Family Defendants were aware that all payments to them during that period were under scrutiny as preferences and fraudulent conveyances.

Accordingly, the Trustee has repeatedly and sufficiently set forth the factual basis for his damages as to the Family Defendants throughout this litigation. The Family Defendants' instant attempt to strike damages that have been sufficiently and properly identified should be denied.

### 1. Preference Claims against the Family Defendants

Pursuant to 11 U.S.C. § 547(b), a trustee in bankruptcy may avoid transfers of the

debtor's interest in property upon showing that the transfer was

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>   (A) on or within 90 days before the date the petition was filed; or
>   (B) if the creditor was an insider, on or within one year before the date the petition was filed; and
>
> (5) that enabled the creditor to receive more than the creditor would have received if –
>   (A) the case were a case under Chapter 7 of the Bankruptcy Code;
>   (B) the transfer had not been made; and
>   (C) the creditor received payment of such debt to the extent provided by the provisions of Chapter 7.

Thus, in order to avoid transfers to the Family, the Trustee must show that the transfers were

made within the preference period, on account of antecedent debt rather than in exchange for

new value, and that SFC was insolvent at the time.

The applicable preference period depends on whether the Family Defendants are insiders.

A finding of insider status depends upon the nature of the relationship between the transferees

and the debtor, such that a court can conclude that it was more than an arms length transaction.

As this Court has already articulated, "[a]ny person or entity whose relationship with the debtor

is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an

'insider.' Walsh v. Dutil (In re Demko), 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001)." In re

Student Finance Corp. 335 B.R. 539, 547 (D. Del. 2005). This is clearly the case here, where

one of the Family Defendants, Gagné, was at the same time outside general counsel and business

advisor to SFC, counsel to its owner Andrew Yao and to various related entities, and a shareholder, lender and investor on behalf of trusts in which he was a trustee and beneficiary, as well as through the loans and investments by his wife and uncle.

The Trustee has also presented the expert report of Harry Steinmetz of Weiser & Company, in which Mr. Steinmetz opines that SFC was insolvent as early at 1998, certainly well before the preference period began. Accordingly, the Trustee will meet his burden of showing that payments made to the Family Defendants during the preference period must be returned.

**C.      The Family Defendants have not been, and will not be, prejudiced as the Trustee does not seek to add newly raised damages claims.**

As clearly set forth above, the Trustee's claims against the Family Defendants, and the damages sought by the Trustee, were clearly identified in the pleadings, discovery responses and expert reports, as well as during many depositions. There are no newly added causes of action by the Trustee, and the Family Defendants have not been and will not be prejudiced when the Court permits the Trustee to pursue its long standing claims at the time of trial.

The Family Defendants argue that the damages sought by the Trustee should be stricken under Federal Rule of Civil Procedure 37(c)(1), which provides for the preclusion of information a party fails to disclose under Rule 26(a), unless the failure is substantially justified or harmless. The Family fails to mention that the Court's Scheduling Order, dated August 31, 2005, required the parties to exchange only Rule 26(a)(1)(A) disclosures, not Rule 26(a)(1)(C) disclosures. The Order governs the parties' conduct, and the Trustee was not required to make the Rule 26 (a)(1)(C) disclosure, but elected to do so at the close of discovery to create a complete record in support of claims that had been made.

In their moving brief, the Family Defendants cite several cases to demonstrate that courts regularly preclude damage claims at trial if a party fails to timely comply with Rule 26(a)(1)(C).

See D.I. 317-3 at 11. These cases do not apply when the Court has issued an order expressly modifying the Rule 26 obligations. Thus, the Trustee did not make Rule 26(a)(1)(C) disclosures because the Court curtailed the standard application of the rule and limited disclosures to Rule 26(a)(1)(A). Defendants' motion to strike arises out of the Trustee's voluntary disclosure to provide further notice to the Family Defendants and not from an attempt to supplement previous Rule 26(a)(1)(C) disclosures at the last minute.

More to the point, however, is the fact that although the Family Defendants seek the extreme relief of striking an element of damages prior to trial based on prejudice they allege they will suffer if the damages stay in the case, they do not point to any specific harm. While the burden is on them to show in their moving papers the need for the relief they seek, they make only vague references to re-opening discovery, without saying which depositions they would need or what discovery they did not conduct, and then argue again without any factual support that even if discovery were opened, they would still suffer prejudice. This alleged need must also be viewed in light of the fact that all of the depositions in this case were conducted after the Family Defendants received the Trustee's amended answers to interrogatories on June 7, 2006.

In fact, the only individuals directly involved in these transactions were Andrew Yao, W. Roderick Gagné and Robert Bast. Mr. Yao has not been available to any of the parties for deposition because of the pending criminal charges against him and his assertion of the privilege. The other two witnesses and their documents have been the source of the Trustee's claim and are of course available to their attorneys. They were examined at deposition on these issues and relevant documents were marked. With regard to expert depositions, the overpayment of fees, the redemption of stock and the insolvency of SFC were all the subject of the Trustee's expert reports, to which the Family Defendants had over two months to respond with their own expert

reports, and were the subject of discovery and examination by the Family Defendants. As early as March 12, 2007, the Family Defendants said they would have an expert on the fees paid to them by SFC, and they presented such an expert report on July 13, 2007.  See Waters Cert. Exhibit I.  Noticeably absent from the Family Defendants' arguments on prejudice is any acknowledgment of the fact that they have already served their own expert report addressing the loan commitment fees, which are the subject of the instant motion.

As already set forth above in detail, the claims the Trustee seeks have been the subject of pleadings, discovery, depositions, and expert reports.  No further discovery as to these damages is needed.  The parties have fully explored the causes of action and related damages throughout this litigation.  The Family Defendants have had every opportunity to depose witnesses and present experts, and they have taken advantage of that opportunity.

**D.      The Trustee should be afforded an opportunity to amend his pleadings at the pretrial.**

The Federal Rules of Civil Procedure provide that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  The United States Supreme Court has held that when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  The Supreme Court in Foman further explained that "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; [and] this mandate is to be heeded." Id.  As already set forth above in detail, the claims have been the subject of discovery, depositions and expert reports.  As such, no further discovery would be needed or warranted by their inclusion, and the Family Defendants would not be prejudiced in any way.

In the <u>Spencer</u> case, on which the Family relies, the court held that the plaintiff did not describe the claim in the pleadings, interrogatory responses, summary judgment opposition, or pretrial statement. The plaintiff's proofs were limited because the description was not made until the third day of trial. Here, the Family Defendants have been given information and disclosures regarding the Trustee's claims, growing ever more detailed as discovery advanced, and the Family has responded to those claims with its own witnesses and arguments.

The June 2006 interrogatory answers by the Trustee clearly state that all transfers to the Family are at issue. The Family's motion indicates that their position is that it is all transfers *except* the redemption of stock. While the Trustee believes that the pleadings and conduct of the discovery described above give the Family notice, the Trustee will nevertheless ask at the pretrial conference to amend the claim against the Family Defendants to include the specific language in the June 2006 interrogatory answers, so that there can be no doubt that all of the elements addressed by the court in <u>Spencer</u>, from the pleadings to the pretrial, assert these claims. The Family Defendants cannot be prejudiced by such an amendment. They were given that information before deposition discovery began in the form of answers to interrogatories. Their argument that they were not given the same information in a pleading promotes form over substance.

## V.    **CONCLUSION**

For the foregoing reasons, the Trustee requests this Court to deny the Family Defendants' motion to strike certain damage claims.

Respectfully submitted,

Dated: September 17, 2007
      Wilmington, Delaware

THE BAYARD FIRM

Charlene D. Davis, Esquire (No. 2336)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899
Telephone:  (302) 655-5000

-and-

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney &
Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ  07102-4079
(973) 622-7711
*Counsel for Charles A. Stanziale, Jr.,*
*Chapter 7 Trustee*