IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:                                                :
STUDENT FINANCE CORPORATION,          :
                              Debtor.                 :
_____   :        CIVIL ACTION No. 04-1551 (JJF)
CHARLES A. STANZIALE, JR.,              :
CHAPTER 7 TRUSTEE OF STUDENT          :
FINANCE CORPORATION,                    :
                                                      :
                              Plaintiff,               :
        v.                                            :
                                                      :
PEPPER HAMILTON LLP, et al.,            :
                                                      :
                              Defendants.             :
_____   :

**REPLY MEMORANDUM IN SUPPORT OF THE FAMILY DEFENDANTS'
MOTION TO STRIKE THE TRUSTEE'S IMPROPER DAMAGE CLAIMS**

Dated: September 27, 2007

KAREN LEE TURNER (No. 4332)
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Fax:         (302) 425-0431
E-mail:     kturner@eckertseamans.com

Neil G. Epstein
Carol L. Press
Charles F. Forer
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone: (215) 851-8400
Fax:         (215) 851-8383

Attorneys for Defendants Robert L. Bast,
Pamela Bashore Gagné, the Brennan Trusts
and W. Roderick Gagné, as Trustee of the
Brennan Trusts

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   ARGUMENT ......................................................................................... 3

     A.    The First Amended Complaint Did Not Assert Claims Arising out
          of the Asserted Overpayment of Commitment Fees or the Redemp-
          tion of SFC Stock............................................................................... 3

     B.    The Family Defendants Will Suffer Extreme and Unfair Prejudice
          if the Trustee Is Permitted To Assert These Additional Claims .................. 7

     C.    The Trustee's Responses To the Family Defendants' Interrogato-
          ries Failed To Put the Family Defendants on Notice That the Trus-
          tee Was Seeking To Assert These New Claims.............................................. 9

     D.    The Expert Reports do not Give Rise To New Claims Against the
          Family Defendants........................................................................... 13

     E.    The Trustee Has Not Complied With Rule 26(a)(1)(C) ................................ 14

     F.    The Trustee Should not be Permitted To Amend the First Amended
          Complaint........................................................................................ 15

III.  CONCLUSION..................................................................................... 16

*M0611413.DOC*

# TABLE OF AUTHORITIES

## Cases

Berger v. Edgewater Steel Co., 911 F.2d 911, 924 (3d Cir. 1990)......................................... 15

Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820,
    824-25 (3d Cir. 1978) .................................................................................15, 16

Lorenz v. CSX Corp., 1 F.3d 1406, 1444 (3d Cir. 1993) ........................................ 15

Network Enterprises, Inc. v. APBA Offshore Productions, Inc., No. 01 Civ. 11765
    (CSH), 2002 WL 31050846 (S.D.N.Y. Sept. 20, 2006) ............................................. 7

San Francisco Bay Area Rapid Transit Dist. v. Spencer, Civil Action No. C04-
    04632 SI, 2007 U.S. Dist. LEXIS 11693 (N.D. Cal. Feb. 5, 2007).......................... 15

Schwartz v. Kursman (In re Harry Levin, Inc.), 175 B.R. 560 (Bkrtcy. E.D. Pa.
    1994) .................................................................................................................... 6, 7

Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.), 335 B.R. 539,
    552-53 (D. Del. 2005).............................................................................................. 3

## Statutes

11 U.S.C. § 544(b) ..................................................................................................... 3, 4

11 U.S.C. § 547(c) ..................................................................................................... 3, 6

11 U.S.C. § 550 .......................................................................................................... 3, 4

12 Pa. C.S.A. §§ 5101-5119 ...................................................................................... 3, 4

## Rules

Fed.R.Civ.P. 26(a)(1)................................................................................................14, 15

*M0611430.DOC*

## I.    INTRODUCTION.

At the outset of its response, the Trustee states that "[a]t this point in the case, the Trustee has two causes of action pending against the Family defendants for the return of fraudulent transfers and preference payments made to the Family." (Trustee's Response at 1). The Family defendants could not agree more with this statement. As set forth below, however, the Trustee's Response then turns its back on the allegations of its very own pleadings and discovery responses and, based on misreading and even downright misquoting of its legal papers, claims that the First Amended Complaint ("FAC") asserts additional causes of action that do not exist anywhere on paper. The Trustee's response misses the mark for at least five reasons:

1.    The FAC did not assert claims arising out of (a) the purported overpayment of commitment fees that Student Finance Corporation ("SFC") paid to the Family defendants, from 1999 through 2001, with respect to loans that the Family defendants made to SFC; and (b) payments in the total amount of approximately $7 million that SFC made, from March 2000 through January 2001, to redeem SFC stock that the Family defendants purchased in February 2000.

2.    The FAC pled that "[b]eginning in May 2001, using a balance sheet test (with the exception of October and November 2001, when SFC had recently completed a large securitization), SFC was insolvent." (FAC ¶ 57; see also id. at ¶ 250 ("May 2001 [was] the date SFC was either insolvent on a balance sheet or, at the very least, operating in the zone of insolvency."))[1] Based on this allegation and the remaining claims in Counts VII and XI of the FAC, the Family defendants had no reason whatsoever to conduct discovery on the factual issue of whether SFC was insolvent before May 2001. However, the Trustee can prove its eleventh-hour claims only if the Trustee proves, among other things, that SFC was insolvent on each and every

---

[1]    The FAC was filed on January 23, 2006 (DI 76).

1

pre-May 2001 date when SFC redeemed the Family defendants' stock and paid a commitment fee. To respond to these claims of pre-May 2001 insolvency, the Family defendants would now have to do something that there was no reason to do before: conduct extensive additional discovery, including numerous depositions of fact witnesses, on factual issues that were not material to the Trustee's claims in Counts VII and XI – the state of SFC's finances from 1999 to May 2001 and the value of SFC stock on the date of each redemption payment between March 2000 and January 2001. For these reasons, the Family defendants will suffer extreme prejudice if the Trustee, on the eve of trial and well after fact discovery has ended, is permitted to assert these two additional claims.

3.      The Trustee's responses to the Family defendants' interrogatories failed to put the Family defendants on notice that the Trustee was seeking to assert these new claims.

4.      The Trustee's expert reports and the Family defendants' expert reports relate to issues that presently exist or previously existed in the Trustee's remaining claims against the Family defendants and the Pepper defendants. Moreover, pleadings not expert reports are the vehicle to assert claims against the Family defendants.

5.      When he decided to assert these claims, the Trustee was obligated to seek leave to amend his complaint and, thereby, notify the Family defendants of his intent to assert new causes of actions on facts known by the Trustee when he filed the original complaint. However, the Trustee, by his own admission and without any explanation or justification whatsoever, informed the Family defendants of these claims only after the close of fact discovery, when it was far too late for the Family defendants to conduct discovery in order to defend against these belated claims.

## II.     ARGUMENT.

### A.     The First Amended Complaint Did Not Assert Claims Arising out of the Asserted Overpayment of Commitment Fees or the Redemption of SFC Stock.

The Trustee's contentions must be considered in the context of the two remaining claims that the Trustee pled in the FAC.  Count VII unambiguously alleges only one claimed fraudulent conveyance – a stock transfer by Yao to certain Family defendants – and unmistakably seeks to avoid only this single claimed transfer:

> 271.     Specifically, Yao pledged his interest in One Summit Place GP, Inc., DHP GP, Inc., and Premier Education Group GP, Inc.
>
>          .   .   .   .
>
> 277.     On information and belief, Yao pledged the assets with an actual intent to defraud his creditors.
>
> 278.     The transaction may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§ 5101-5119.

(FAC ¶¶ 271, 277 & 278.)

As this Court stated in ruling on the Family defendants' motion to dismiss, Count VII "seeks to avoid a transfer of Yao's property, not the property of the debtor, SFC." Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.), 335 B.R. 539, 552-53 (D. Del. 2005) (emphasis added).

The Trustee's only other remaining claim against the Family defendants is Count XI, which seeks to avoid, as alleged preferences under Section 547 of the Bankruptcy Code, specifically identified payments totaling $4,229,093 of interest, fees and principal on debentures and loans that SFC made to the Family defendants within one year preceding the Filing Date.

Arguing that Count VII of the FAC should be read as including the two new claims, the Trustee contends that "[r]eference to the payments at issue can be found not only in

the First Amended Complaint but also in the original complaint itself." (Trustee's Response at 1). However, the Trustee's Response does not point to a single sentence in the original complaint or in the FAC that claims that the Trustee seeks any relief whatsoever as a result of these "referenced" payments that are somehow now "at issue."

To make matters worse, the Trustee's Response, in seeking to demonstrate that the FAC pleads more than one alleged fraudulent conveyance, misquotes the FAC, as follows: "Paragraph 278 of Count VII provides that the transaction**s** may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§ 5101-5119, the Pennsylvania Uniform Fraudulent Transfer Act." (Trustee's Response at 5; emphasis added). However, paragraph 278 and Count VII allege only one fraudulent conveyance: "The transaction [singular, not plural] may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§ 5101-5119."

Moreover, Count VII specifically refers to one transferor – Yao. The Trustee now claims, for the first time, that Count VII includes two allegedly fraudulent conveyances made by a different transferor, SFC. There is simply no rational way to interpret Count VII to include these two new claims that relate to a different transferor making totally unrelated conveyances of completely different assets.

The Trustee's reliance on factual allegations in the FAC that refer to the Family defendants' loans to SFC or the stock redemption by SFC is misplaced. Both factual allegations were made as claimed support for the contention, not that SFC had engaged in fraudulent conveyances, but that Roderick Gagné or Pepper Hamilton was engaged in impermissible conflicts of interest. The portion of the FAC that includes these factual allegations says nothing about fraudulent conveyances and instead is subtitled "Pepper, Gagné and Gagné's Family's Involve-

ment with SFC." (FAC at 16). Moreover, as the First Amended Complaint unambiguously

claims, the specific reference in paragraph 77 to SFC's redemption of the Family defendants'

stock is solely and exclusively in the context of the claimed conflicts of interest of Gagné and the

Pepper law firm:

> 75.  While counsel to SFC, Gagné prepared loan transaction documents for a number of transactions between SFC and his own family members and family trusts for which he served as trustee and of which he was the beneficiary.
>
> 76.  Pepper was purported representing SFC – and billed SFC for time incurred in preparing transaction documents for transactions between SFC and Gagné's family – with respect to transactions between SFC and Gagné's wife Pamela Gagné, his uncle Robert Bast and trusts created by his aunt Elizabeth Brennan and his uncle James Brennan for the benefit of Phillip Gagné, Elizabeth Gagné and Roderick Gagné himself.
>
> 77.  In 2000, the Family loaned $6 million to SFC, which converted to common stock. When these shares were redeemed, the Family was repaid principal plus interest and was paid a 7% "Payoff Premium."

(FAC ¶¶ 75-77.)

Turning the rules of pleading on their head, the Trustee points to the Family de-

fendants' Answer and Affirmative Defenses in attempting to show that the FAC included these

additional claims. (Trustee's Response at 5) ("the Family defendants' affirmative defenses were

stated broadly enough to cover the claims at issue").[2] This illogical argument ignores the obvi-

---

[2]    The Trustee refers to the following Affirmative Defenses of the Family defendants:

> 2.  Plaintiff's claims are barred, in whole or in part, to the extent that SFC was not insolvent at the time of one or more of the payments that plaintiff seeks to recover from answering defendants.
>
>        .   .   .   .
>
> 5.  Plaintiff's claims are barred, in whole or in part, because the payments received by answering defendants were received in the ordinary course.

ous – that a plaintiff has the burden of notifying a defendant of the plaintiff's causes of action and neither the parties nor the Court look to the defendant's answer and affirmative defenses to divine the nature of a plaintiff's causes of action. Further, each of the Family defendants' affirmative defenses is applicable to the two remaining Counts in the FAC.

Not surprisingly, the two cases on which the Trustee relies have nothing to do with the facts of this case or with the Trustee's remarkable arguments. In <u>Schwartz v. Kursman</u> <u>(In re Harry Levin, Inc.)</u>, 175 B.R. 560 (Bkrtcy. E.D. Pa. 1994), the trustee pled a fraudulent conveyance claim by specifically alleging the identity of the transferor (the bankrupt company) and describing the property transferred (assets of the company that the president purportedly used for his own personal benefit and to pay his personal debts). The trustee's complaint further informed the defendant that his salary was "excessive" and also constituted a fraudulent conveyance. <u>Id.</u> at 564 & 568. These extensive factual allegations more than put the defendant on notice that he was subject to a fraudulent conveyance claim. Accordingly, the Court held that the

---

.  .  .  .

6.    Plaintiff's claims are barred, in whole or in part, to the extent that the payments as to which plaintiff asserts a preference claim come within the provision of section 547(c) of the Bankruptcy Code, 11 U.S.C. § 547(c).

.  .  .  .

8.    Plaintiff's claims are barred, in whole or in part, because answering defendants provided value and reasonably equivalent value for all payments or transfers made to them.

9.    Plaintiff's claims are barred, in whole or in part, because answering defendants provided fair consideration for all payments or transfers made to them.

10.   Plaintiff's claims are barred, in whole or in part, to the extent that Yao was not insolvent at the time of the transfers that plaintiff seeks to recover from answering defendants.

.  .  .  .

12.   Plaintiff's claims are barred, in whole or in part, because answering defendants took in good faith the transfers that plaintiff seeks to recover.

The Family defendants' answer and affirmative defenses was filed on February 6, 2006 (DI 77).

trustee's failure to plead the date and exact amount of each conveyance was not fatal: "there is enough detail provided in this complaint to enable the defendant to respond thereto, and to obtain further information through discovery." Id. at 568.

Likewise, in Network Enterprises, Inc. v. APBA Offshore Productions, Inc., No. 01 Civ. 11765 (CSH), 2002 WL 31050846 (S.D.N.Y. Sept. 20, 2006), the only other case on which the Trustee relies, the proposed amended complaint gave the defendant ample notice by stating the particulars of a fraudulent conveyance claim that are absent from the FAC, including (a) the identity of the alleged transferor; (b) the specific nature of the alleged fraudulent conveyance; (c) the claim that the alleged fraudulent conveyance was made when the transferor was insolvent; (d) the claim of absence of fair consideration for the transfer; (e) a claimed intent to defraud with respect to the purported conveyance; and (f) the claimed damages resulting from the alleged fraudulent conveyance.

**B.      The Family Defendants Will Suffer Extreme and Unfair Prejudice if the Trustee Is Permitted To Assert These Additional Claims.**

The original complaint and FAC both contained allegations that SFC was insolvent as of May 2001 and thereafter, except for October and November 2001. The Family defendants conducted no discovery whether SFC was insolvent before May 2001 because they had no need to take any discovery directed to a factual issue that did not exist and was not relevant to Counts VIII or XI. If permitted to assert these last-minute claims, however, the Trustee must prove, among other essential facts, that SFC was insolvent at the time of each and every alleged fraudulent conveyance to the Family defendants. Consequently, the Family defendants would have the right to take discovery on whether SFC was insolvent before May 2001 and on each and every date on which SFC made an alleged fraudulent payment.

Turning his back on the additional discovery that would be relevant to these claims, the Trustee dismissively contends that only three persons were "involved with" the alleged pre-May 2001 fraudulent conveyances that SFC made to the Family defendants – Gagné, Bast and Yao. (Trustee's Response at 22). This contention disregards the indisputable fact that the Trustee can avoid these pre-May 2001 conveyances as fraudulent only by proving that SFC made these conveyances with actual intent to defraud or hinder a creditor or that SFC did not receive substantially equivalent value; and by proving that SFC was insolvent at the time of each and every such conveyance. These factual issues and the factual issues relating to the Family defendants' good faith defense will require extensive discovery of persons other than Gagné, Best or Yao.

It cannot be reasonably disputed that a substantial number of former SFC employees, accountants and consultants have knowledge regarding (a) SFC's finances during the period before May 2001; (b) the value of the SFC stock when it was redeemed; and (c) the intent of SFC when it made the transfers. These persons include the following:

- **Diane Messick** – former SFC controller.

- **Patricia Kartha** – former SFC Accounting Manager.

- **Gary Hawthorne** – former SFC president.

- **John Loufbourrow and Scott Schauer** – former SFC outside financial consultants.

- **Roger W. Saylor** – managing director of the capital markets unit of PNC Bank, a primary SFC lender and underwriter.

- **Michael Aquino, Jeffrey Westad and Mark Colatrella** – certified public accountants.

These individuals were previously deposed. However, the Family defendants had no reason to and therefore did not question them regarding the pre-May 2001 state of SFC's fi-

nances, SFC's intent with respect to transfers before June 2001 or the value of SFC stock at the time of redemption. In addition to fact discovery, the Family defendants would be compelled to present expert witnesses on all three issues, not one of which was material to Counts VII or XI of the FAC.

The Trustee contends that an issue material to proving its brand new fraudulent conveyance claims is whether SFC ran a Ponzi scheme. (Trustee's Response at 12). This issue also has not been the subject of the Family defendants' discovery, since it was not relevant to Count XI (the preference claim) or to Count VII of the FAC, in which Yao and not SFC was the claimed transferor. Accordingly, the Family defendants would need to depose individuals who had personal knowledge of SFC's pre-May 2001 business model and who could provide relevant evidence on that subject.

In summary, the Trustee's claim that its newly asserted claims do not require additional discovery and that the Family defendants would not be prejudiced if required to defend against those claims makes no sense whatsoever. The Federal Rules do not authorize such extreme prejudice.

### C. The Trustee's Responses To the Family Defendants' Interrogatories Failed To Put the Family Defendants on Notice That the Trustee Was Seeking To Assert These New Claims.

The Trustee claims that its responses to the Family defendants' interrogatory nos. 1 and 10 put the Family defendants on notice that the Trustee was seeking the return of anything of value that it transferred to the Family defendants at any time.[3] Even a cursory glance at the Trustee's answers to these two interrogatories shows that the Trustee's contention is baseless.

---

[3]     A copy of the supplemental objections and answers of the Trustee to the Family's First Set of Interrogatories is Exhibit "A" to the Trustee's Appendix.

In order to obtain relevant information regarding a central factual issue – whether the Family defendants "controlled" SFC – interrogatory no. 1 asked, not for a listing of the Trustee's claimed damages, but for a description of all actions taken by the Family defendants to exercise control or authority over SFC: "Separately for Bast, Pamela Gagné and the Trusts, describe in detail all actions if any, taken by Bast, Pamela Gagné or the Trusts to exercise control or authority over SFC." The Trustee's response claimed that the Family defendants' purchase of SFC stock and the subsequent redemption of that stock evidenced the exercise of control or authority over SFC:

> In 2000, the Family [defendants] loaned $6 million to SFC which was converted to common stock via a Buy-Sell Agreement (the "Agreement"), where, upon execution of the Agreement the Trusts, Bast and Gagné would acquire 180 shares of stock of SFC for a capital contribution of $5,000,000.00 by Bast and the conversion of $1,000,000.00 of debt to equity while earning an interest rate of 14% with a 7% payoff premium to be paid when shares were redeemed. Schedules of debts as between SFC and the Family [defendants] evidence that certain shares were still outstanding as of December 31, 2000, thereby indicating shareholder status of the Family [defendants] for approximately one year.

The Trustee's response did not state or otherwise indicate that the Trustee was setting forth a cause of action relating to this redemption. Nor did the Trustee's response state or in any way imply that SFC was insolvent at the time of the redemption or that the terms were unfair, fraudulent or otherwise improper. Finally, and most significantly, the Trustee's response did not state that the Trustee sought any relief as a result of the redemption.

The Trustee's response to interrogatory no. 10, which sought information about the Trustee's claimed damages, also gives no clue that the Trustee was seeking to attack the redemption of the SFC stock as an alleged fraudulent conveyance.[4] The Trustee's interrogatory

---

[4] This interrogatory and the Trustee's response are as follows:

response identifies only one conveyance – "$4,293,179.40 million [sic] in payments within one year of the filing date, together with the value of other transfer that are identified in discovery . . . ."

The Trustee's response cannot sensibly be interpreted to include the transfer identified in the Trustee's response to interrogatory No. 1 – the redemption of the SFC stock – because the Trustee already knew about, and hence did not need "discovery" to identify, this transaction, which was readily apparent from SFC's own records and, indeed, was mentioned in the facts section of the original complaint.

The Trustee argues that the Trustee's response to interrogatory No. 10 should have put the Family defendants on notice that the Trustee was seeking to recover the value of each and every payment made by SFC to the Family defendants for any reason. According to the Trustee, "there can be no doubt that the Family defendants were aware that all payments to them during that period were under scrutiny as preferences and fraudulent conveyances." (Trustee's Response at 19). This contention is specious. The simple fact is that the Family defendants had no idea – or any reason to know – that the Trustee was asserting fraudulent conveyance claims relating to the stock redemption or the alleged excessive commitment fees.

The Trustee's response to interrogatory No. 26 of the Family defendants' Third Set of Interrogatories likewise did not put the Family defendants on notice of the Trustee's new

---

[Interrogatory] 10.  Provide a calculation of any category of damages you claim in this matter, specifying as to each element of damages the parties against whom you claim such damages are recoverable.

[The Trustee's] Response.  The Trustee seeks a return of all money and items of value obtained by the Family defendants directly or indirectly from SFC, including those obtained from Yao.  This includes but is not limited to $4,293,179.40 million [sic] in payments within one year of the filing date, together with the value of other transfers that are identified in discovery, interest, costs and attorneys' fees.

claims.[5] Even if the Trustee's response was read to refer to a new claim, which the Family defendants deny, the Trustee admittedly waited until May 7, 2007, one week after the close of fact discovery, to bring this new claim to the attention of the Family defendants. (See Trustee's Response at 8).

Further, the Family defendants through this interrogatory sought to obtain discovery relevant to the as-pleaded preference claims of the Trustee. Interrogatory no. 26 sought information to show that the payments that SFC made to the Family defendants between June 5, 2001 and June 5, 2002, which were the subject of Count XI of the FAC, were made in the ordinary course of business between SFC and the Family defendants over a five-year period:

> If in request to the Requests for Admission, you deny, or do not unqualifiedly admit, that each and every payment made by SFC to Bast, Pamela Gagné or the Trusts between June 5, 2001 and June 5, 2002 was made in the ordinary course of business or financial affairs of SFC, Bast and Pamela Gagné, then identify each and every payment made to Bast, Pamela Gagné and the Trusts from 1996 through 2002 and, for each payment, identify the obligation on account of which the payment was made, the date of payment, the method of payment and the identity of the payee.

Reflecting yet a further instance of the Trustee's trifling with the language of the pleadings and the discovery requests and responses, the language of this interrogatory is very different from the Trustee's incorrect claim that interrogatory no. 26 "asked the Trustee to identify payments SFC made to the Family defendants from 1996 through 2002 that were not made in the ordinary course of business of SFC." (Trustee's Response at 19; emphasis added). What the Family defendants sought was evidence of the ordinary course of business and not whether any payment was made outside of that course of business. It is nothing less than disingenuous for the Trustee now to contend that the plain and unambiguous language of this interrogatory and

---

[5]    A copy of the objections and responses of the Trustee to the Third Set of Interrogatories by the Family defendants is Exhibit "D" to the Trustee's Appendix.

the Trustee's response put the Family defendants on notice of claims that (a) were not preference claims at all; and (b) relate to a period other than the one year from June 5, 2001 to June 5, 2002.

### D. The Expert Reports do not Give Rise to New Claims Against the Family Defendants.

Contending that the expert reports should have put the Family defendants on notice of the Trustee's newly raised fraudulent conveyance claims, the Trustee relies on the May 7, 2007 expert reports of William Hecht and Harry Steinmetz.[6] (Trustee's Response at 9-10). The Trustee submitted both reports one week after the close of fact discovery. Neither report serves as a proper substitute for a pleading to put the Family defendants on notice of the claims for which they must obtain discovery.

Further, neither report suggests that SFC's redemptions of stock that the Family defendants owned were fraudulent or otherwise improper. The Hecht report refers to the payments that SFC made from March 2000 through January 2001 to redeem SFC stock that the Family defendants purchased in February 2000 (Hecht Report § 3.0, at 5), but does not state or in any way suggest that these stock redemptions constituted fraudulent conveyances or that the Trustee was asserting a claim based on the redemptions. The Steinmetz report does not mention any of these stock redemptions and, in fact, does not even mention any of the Family defendants. Although the report discusses the pre-May 2001 state of SFC's finances, the Steinmetz report says nothing about the Family defendants or about the commitment fees that SFC paid to the Family defendants from 1999 through 2001.

Likewise, neither report states or suggests that the Trustee was asserting a fraudulent conveyance claim with respect to the commitment fees that SFC paid to the Family defendants. The Steinmetz report does not mention the commitment fees at all. While the Hecht re-

---

[6]    A copy of the Hecht report was Exhibit "G" to the Trustee's Appendix. A copy of the Steinmetz expert report was not included in the Trustee's Appendix.

port set forth an opinion regarding these alleged excessive commitment fees paid to the Family defendants, the report did not state that the Trustee was seeking to recover these fees. The Family defendants reasonably assumed that the Hecht report provided an opinion relating to the claims against Pepper Hamilton and Gagné as an attorney and to an issue that goes to the very heart of the Trustee's preference claims against the Family defendants – whether the Family defendants were "insiders" of SFC, the assumed argument being that the Family defendants' receipt of excessive fees is evidence of their "control" of SFC. Notwithstanding the weakness of that assumed argument, the Family defendants viewed the Hecht report as going to that issue and only that issue.

Not surprisingly, the Trustee does not point to a single sentence in any of the Family defendants' expert reports that responds to the Trustee's new claims. It therefore strains credulity for the Trustee to contend that the Family defendants' expert reports show that the Family defendants already have dealt with these two new and never-before-pleaded claims.

**E.      The Trustee Has Not Complied With Rule 26(a)(1)(C).**

The Trustee claims that the Family defendants knew all along about the Trustee's new claims because the Trustee had asserted these claims as early as the filing of its original Complaint; but that the Trustee "elected to [make its Rule 26(a)(1)(C) disclosure] at the close of discovery to create a complete record in support of claims that had been made." (Trustee's Response at 21). Even if the Court had excused the Trustee from making a Rule 26(a)(1)(C) disclosure statement – and the Court's scheduling of Rule 26(a)(1)(A) disclosures did not excuse the filing of timely Rule 26(a)(1)(C) disclosures – the Trustee's admitted multi-year delay in disclosing its alleged damages has severely undermined the ability of the Family defendants to obtain discovery and prepare for trial. The Trustee's acknowledged intentional delay in serving its

damage disclosure flies in the face of Rule 26(a)(1), which requires parties to serve these disclosures, not "to create a complete record," but to allow the parties to conduct meaningful discovery so that they can prepare for trial.[7]

### F.     The Trustee Should not be Permitted To Amend the First Amended Complaint.

The Trustee should not be permitted to amend the FAC to include these two additional items of claimed damages in view of (a) the unfair and severe prejudice to the Family defendants who would have no opportunity to prepare their defenses to these claims; (b) the fact that the Trustee has deprived the Family defendants of fair notice and opportunities for additional discovery and motion practice with respect to these claims; and (c) the additional burdens on non-parties, some of whom have already sat for multiple days of deposition in this action. See, e.g., Lorenz v. CSX Corp., 1 F.3d 1406, 1444 (3d Cir. 1993) (motion to amend complaint denied; amendment was proposed three years after action filed and nearly two years after complaint was amended twice); Berger v. Edgewater Steel Co., 911 F.2d 911, 924 (3d Cir. 1990) (motion to amend complaint denied; motion sought to add a different legal theory that would require new discovery after the close of discovery); Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 824-25 (3d Cir. 1978) (motion to amend denied; amendment would

---

[7]     Seeking to distinguish San Francisco Bay Area Rapid Transit Dist. v. Spencer, Civil Action No. C 04-04632 SI, 2007 U.S. Dist. LEXIS 11693 (N.D. Cal. Feb. 5, 2007), the Trustee points to the original complaint, the FAC and its discovery responses and argues that that, unlike the plaintiff in Spencer, the Trustee "put the Family [Defendants] on notice not only of the causes of action asserted but also of the elements of damage with regard to each of those causes of action." (Trustee's Response at 18).

The Trustee's attempt to hide behind its pleadings and discovery responses is misguided. As set forth above, neither the Trustee's pleadings nor its discovery responses say anything about the new claims that the Trustee is now seeking to spring on the Family defendants at the very last minute. The bottom line is that the Family defendants are in the same boat as the defendants in Spencer, both unfairly prejudiced by the plaintiff's untimely assertion of claims that utterly prevented the defendant from obtaining relevant discovery and preparing thoroughly for trial.

change the legal and factual matters in dispute; defendant was entitled to rely on movant's earlier pleaded allegations).

In its response to the Family defendants' present motion, the Trustee does not offer a single explanation or mitigating circumstance as to why he waited until after fact discovery to assert these claims, despite his admitted knowledge of the claims long before. In the Family defendants' minds, the reason for the Trustee's not asserting these claims earlier is most obvious – to stymie and block the Family defendants from presenting a defense to these claims. The Trustee's failure to offer an explanation or justification is sufficient in and of itself to warrant the granting of the Family defendants' present motion.

## III.    CONCLUSION.

Allowing the Trustee to assert two new claims at this eleventh hour would result in a trial by ambush. Accordingly, this Court should strike these two claims from the Trustee's July 10, 2007 Disclosure Statement and preclude the Trustee from asserting these claims at trial. Further, the Family defendants request that this Court award costs, including attorney's fees, incurred by the Family defendants with respect to this Motion.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Dated: September 27, 2007

KAREN LEE TURNER (No. 4332)
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Fax:        (302) 425-0431
E-mail:     kturner@eckertseamans.com

Neil G. Epstein
Carol L. Press
Charles F. Forer
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone:  (215) 851-8400
Fax:     (215) 851-8383

Attorneys for Defendants Robert L. Bast,
Pamela Bashore Gagné, the Brennan Trusts
and W. Roderick Gagné, as Trustee of the
Brennan Trusts

M0611016

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am not less than 18 years of age and that

on September 27, 2007, I caused a true and correct copy of the Reply Memorandum in Support

of the Family defendants' Motion to Strike the Trustee's Improper Damage Claims upon the fol-

lowing via e-mail and United States first class regular mail postage prepaid:

William H. Sudell, Jr., Esquire
Donna L. Culver, Esquire
Joanna F. Newdock, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Email:wsudell@mnat.com
*Counsel for Pepper Hamilton LLP and
W. Roderick Gagné*

John H. Eickemeyer, Esquire
Marie A. Tieri, Esquire
Vedder, Price, Kaufman & Kammholz, P.C.
1633 Broadway, 47th Floor
New York, NY 10019
Email: jeickemeyer@vedderprice.com
            mtieri@vedderprice.com
*Counsel for Freed Maxick & Battaglia,
CPAs, PC*

Elizabeth K. Ainslie, Esquire
Nicholas J. LePore, III, Esquire
Bruce P. Merenstein, Esquire
Stephen J. Shapiro, Esquire
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Email: eainslie@schnader.com
            sshaprio@schnader.com
            nlepore@schnader.com
            bmerenstein@schnader.com
*Counsel for Pepper Hamilton LLP and
W. Roderick Gagné*

David E. Wilks, Esquire
Reed Smith, LLP
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Email: dwilks@reedsmith.com
*Counsel for Freed Maxick & Battaglia,
CPAs, PC*

Tiffany Geyer Lydon, Esquire
Philip Trainer, Jr., Esquire
Carolyn Shelly Hake, Esquire
Ashby & Geddes
222 Delaware Avenue
P. O. Box 1150
Wilmington, DE  19899
Email:  tlydon@ashby-geddes.com
        ptrainer@ashby-geddes.com
*Counsel for Royal Indemnity Company*

John I. Grossbart, Esquire
Alan S. Gilbert, Esquire
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, IL  60606
Email:  jgrossbart@sonnenschein.com
        agilbert@sonnenschein.com
*Counsel for Royal Indemnity Company*

John W. Shaw, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391
Email:  jshaw@ycst.com
*Counsel for McGladrey & Pullen LLP*

Christopher M. Winter, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801
Email:  cmwinter@duanemorris.com
*Counsel for Freed Maxick & Battaglia,
CPAs, PC; McGladrey & Pullen LLP
and Michael Aquino*

Veronica E. Rendon, Esquire
Richard P. Swanson, Esquire
Jason M. Butler, Esquire
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022
Email:  veronica_rendon@aporter.com
        richard.swanson@aporter.com
        jason_butler@aporter.com
*Counsel for McGladrey & Pullen LLP
and Michael Aquino*

Charlene M. Davis, Esquire
Ashley B. Stitzer, Esquire
Mary E. Augustine, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P. O. Box 25130
Wilmington, DE  19899
Email:  cdavis@bayardfirm.com
        astitzer@bayardfirm.com
        maugustine@bayardfirm.com
*Counsel for Charles A. Stanziale, Jr.,
Chapter 7 Trustee of Student Finance
Corporation*

Steven M. Farina, Esquire
Thomas H.L. Selby, Esquire
Williams & Connolly LLP
725 12th Street, N.W.
Washington, DC  20005
Email:  sfarina@wc.com
         tselby@wc.com
*Counsel for McGladrey & Pullen LLP*

Charles A. Gilman, Esquire
David G. Montone, Esquire
David G. Januszewski, Esquire
M. Justin Lubeley, Esquire
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY  10005
Email:  cgilman@cahill.com
         dmontone@cahill.com
         djanuszewski@cahill.com
         jlubeley@cahill.com
*Counsel for Pepper Hamilton LLP*

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
Jeffrey T. Testa, Esquire
Donald Crecca, Esquire
John P. Dwyer, Esquire
McElroy, Deutsch, Mulvaney & Carpenter,
LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ  07102
Email:  lgoodman@mdmc-law.com
         mwaters@mdmc-law.com
         dcrecca@mdmc-law.com
         dtesta@mdmc-law.com
         jdwyer@mdmc-law.com
*Counsel for Charles A. Stanziale, Jr.,*
*Chapter 7 Trustee of Student Finance*
*Corporation*

Andre G. Castaybert, Esquire
Ronald Rauchberg, Esquire
Steven Obus, Esquire
Proskauer Rose LLP
1585 Broadway
New York, NY  10035
Email:  acastaybert@proskauer.com
         rrauchberg@proskauer.com
         sobus@proskauer.com
*Counsel for MBIA*

KAREN LEE TURNER

M0611016