**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MBIA INSURANCE CORPORATION, et al.,  ) <br>     Plaintiffs/Counterclaim Defendants, ) <br> ) <br> v. ) <br> ) <br> ROYAL INDEMNITY COMPANY, ) <br>     Defendant/Counterclaim Plaintiff. ) | C.A. No. 02-1294-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEPPER HAMILTON LLP, et al., ) <br>     Defendants. ) | C.A. No. 04-1551-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> McGLADREY & PULLEN LLP, et al., ) <br>     Defendants. ) | C.A. No. 05-72-JJF |
| ROYAL INDEMNITY COMPANY, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEPPER HAMILTON LLP, et al., ) <br>     Defendants. ) | C.A. No. 05-165-JJF |

**ROYAL INDEMNITY COMPANY'S MOTION *IN LIMINE* NO. 1
TO EXCLUDE EVIDENCE REGARDING ROYAL'S DUE DILIGENCE**

Royal Indemnity Company ("Royal") respectfully submits this motion *in limine* to exclude from trial evidence regarding Royal's due diligence in connection with its issuance of insurance policies covering defaulted student loans originated or purchased by Student Finance Corporation ("SFC").

**PRELIMINARY STATEMENT**

Even though this case is limited to Royal's breach of contract counterclaim against Wells Fargo Bank, N.A. ("Wells"), Wells' pre-trial order and summary judgment brief make clear Wells' intent to hijack this trial and turn it into a referendum on whether Royal acted negligently in connection with the SFC transactions. As a matter of black-letter Pennsylvania law, which governs this question, Wells cannot do so; the Pennsylvania Supreme Court made expressly clear that "it is not the state of the law" in breach of contract actions that "somehow the innocence of each side should be weighed in a sort of doctrine of comparative negligence." *Coffin v. Fidelity-Philadelphia Trust Co.*, 97 A.2d 857, 863 (Pa. 1953).[1] Therefore, the hundreds of e-mails, memoranda and other documents, some 18 or more fact witnesses, and at least three expert witnesses that Wells seeks to parade before this Court at trial in an attempt to show that Royal's own lack of due diligence – rather than Wells' contractual breach – actually caused Royal's alleged damages, should all be precluded as an irrelevant sideshow.

**ARGUMENT**

**I.     Evidence Concerning Royal's Due Diligence In The SFC Transactions Is Irrelevant To This Breach of Contract Action.**

Wells justifies spending a substantial portion of its summary judgment motion on Royal's supposed due diligence failures (and it is apparent from its exhibit and witness lists and deposition designations that Wells will seek to devote a concomitant amount of trial time to the

---

[1] The relevant agreements provide that they "shall be construed in accordance with the laws of the State of Pennsylvania, and the obligations, rights, and remedies of the parties… shall be determined in accordance with such laws except that the powers, obligations, duties and rights of the Trustee shall be governed by the laws of the State of Minnesota and the federal law of the United States." (*See, e.g.*, Exhibit A, §11.4). As Wells notes in its memorandum of law in support of its motion for summary judgment, there is no substantive conflict between Minnesota and Pennsylvania law. (*See* Memo of Law, p. 17, n.9).

same topic) by contending that this Court must examine whether Royal's and others' conduct was a "substantial factor" in causing Royal's ultimate damage. However, Wells' "substantial factor" argument misses the point. While Wells is correct that SFC, SFC's accountants and attorneys, and others defrauded Royal, Wells was contractually obligated to safeguard Royal from precisely the conduct to which it ultimately fell victim. Wells cannot escape liability here simply by passing the buck onto those parties from whom Wells was paid to protect Royal. (*See* Memorandum of Law in Support of Royal's Motion *in Limine* No. 2).

Wells' effort to lay blame at Royal's feet is similarly unavailing. It is hornbook law that a plaintiff in a breach of contract action is entitled to recover "whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties as the time they made the contract, and (3) they can be proved with reasonable certainty. *Ferrer v. Trustees Of Univ. of Pa.*, 825 A.2d 591, 610 (Pa. 2002) (quoting *Taylor v. Kaufhold*, 84 A.2d 347, 351 (Pa. 1951)). Nowhere does a plaintiff's "contributory negligence" factor into this analysis.

"Generally, to constitute a good defense to an action based on contract, the matters relied upon must be germane to the cause of action pleaded and must present a legal reason why the plaintiff should not recover." *Laborers Combined Funds of W. Pa. v. Mattei*, 518 A.2d 1296, 1299 (Pa. Super. 1986). Accordingly, Pennsylvania courts have long held that evidence of a plaintiff's negligence is not relevant in breach of contract actions.[2] *Coffin v. Fidelity-*

---

[2] Pennsylvania's comparative negligence statute is not applicable to breach of contract actions. 42. Pa. Stat. Ann. § 7102 (2007) ("In all actions brought to recover damages for negligence resulting in death or injury to person or property…."); *see also Moran v. G. & W.H. Corson, Inc.*, 586 A.2d 416, 419 n.3 (Pa. Super. 1991) (holding that "[t]he Comparative Negligence Act… is, by its express terms, applicable only to actions sounding in negligence," and refusing to apply statute to party found liable under strict liability theory), *appeal denied*, 602 A.2d 860 (Pa.

*Philadelphia Trust Co.*, 97 A.2d 857, 863 (Pa. 1953) (holding that it "is not the state of the law" in a breach of contract action that "somehow the innocence of each side should be weighed in a sort of doctrine of comparative negligence"); *Wheeling-Pittsburg Steel Co. v. Alexander & Alexander, Inc.*, 36 Pa. D. & C.3d 605, 607 (Pa. Allegheny County Ct. 1984) ("[I]t is obvious that ordinary negligence is not relevant where the harm has been found to result from breach of contract."), *aff'd*, 496 A.2d 861 (Pa. Super. 1985); *Thornton v. Brown*, 84 Pa. D. & C. 530, 533 (Pa. Phila. County Ct. 1952) ("Contributory negligence is no defense to an action for breach of contract."). Minnesota law is no different. *Leamington Co. v. Nonprofits' Ins. Co.*, 661 N.W.2d 674, 678 (Minn. App. 2003) ("[W]e look to the rule that the comparative-fault statute does not apply to contract claims.").[3]

The Pennsylvania Supreme Court's decision in *Coffin* is instructive here. In *Coffin*, the plaintiff, a partnership, had been defrauded by one of its partners. The partner had drawn several

---

1992); *McMeekin v. Harry M. Stevens, Inc.*, 530 A.2d 462, 464 (Pa. Super. 1987), *appeal denied sub nom*, *Harry M. Stevens, Inc. v. Douglas Furniture Corp.*, 541 A.2d 746 (Pa. 1988).

[3] Indeed, it is the well-settled law in most jurisdictions that contributory negligence is not a defense to a contract claim. *See e.g., Outboard Marine Corp. v. Babcock Indus., Inc.*, 106 F.3d 182, 184 (7th Cir. 1997) ("[T]here is no contract doctrine of contributory or comparative negligence.") (applying Illinois law); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1337 (10th Cir. 1984) ("[C]ontributory negligence has no place in contract and fraud actions.") (applying New Mexico law); *Carter v. Haw. Transp. Co.*, 201 F. Supp. 301, 303 (D. Haw. 1961) ("Contributory negligence is not a defense to breach of contract."); *Rothman v. Hirsch*, 199 N.W.2d 53, 56 (Iowa 1972) ("[C]ontributory negligence would not be available as a defense to an action on contract."); *American Express Fin. Corp. v. Mercado*, 824 N.Y.S.2d 187, 187 (N.Y. App. Div. 2003) ("[D]efendant's related assertion that she can defend this action based upon the 'comparative negligence' of plaintiff is equally contrary to well-settled principles of law, which expressly preclude a plaintiff's culpable conduct from being asserted as a defense in a breach of contract action."); *Eurocredit Bank v. Citibank, N.A.*, No. 95-7713, 1996 WL 556990, at *3 (S.D.N.Y. Oct. 1, 1996) ("[A]ny negligence that could be ascribed to [the plaintiff] is not material to the contractual dispute. Comparative negligence is not a defense to a claim of breach of contract."); *Reibold v. Simon Aerials, Inc.*, 859 F. Supp. 193, 199 (E.D.Va. 1994) ("In Virginia, contributory negligence … is not a defense to a warranty claim because it is a claim based in contract."); *Trinity Univ. Ins. Co. v. Fuller*, 524 S.W.2d 335, 337 (Tex. Civ. App. 1974) ("Contributory negligence, however, is not a defense to a breach of contract.").

checks that were made payable to various clients of the partnership, but instead of delivering them to the clients, he forged the client's signature, added his own endorsement, and deposited the checks into his own account. 97 A.2d at 859-60. The partnership brought a breach of contract claim against its bank for debiting its account in the amounts of the forged checks.

At trial, the bank prevailed primarily on the argument that, for a number of reasons, the plaintiff "knew or should have known" that its partner was engaging in fraud, and that "if various steps had been taken [the partner's] misdoings *would* have been discovered." *Id.* at 863. (emphasis in original). In reversing the judgment and entering judgment in favor of the plaintiff, the Supreme Court held that since the bank's liability was based in contract, its liability could not be mitigated or excused by evidence of the plaintiff's negligent conduct:

> There is an initial attraction to the supposition that […] somehow the innocence of each side should be weighed in a sort of doctrine of comparative negligence. That is not the state of the law. [T]he liability of the bank is not founded upon negligence but upon breach of contract and its liability is absolute…. [A]s a matter of law, the defendant's offered defense of plaintiff's negligence in the conduct of their business affairs is insufficient; it has not been shown that plaintiff's negligence proximately induced the defendant bank's breach of its contract….

*Id*. Similarly, despite the volume of Wells' so-called evidence of Royal's inadequate due diligence, Wells cannot point to anything that demonstrates that Royal's own conduct had anything to do with Wells' failure to abide by its contractual obligations.

In *Wheeling*, the plaintiff brought a breach of contract and tort-based trespass action against two defendants. At trial, the jury found that both defendants had breached their contractual obligations to the plaintiff, and on the plaintiff's tort claim, the jury attributed fault 60% to one defendant, 30% to the other, and 10% to the plaintiff. 36 Pa. D. & C.3d at 608. In

rejecting the defendants' motion for judgment notwithstanding the verdict and/or a new trial, the court held:

> The answers to the interrogatories relating to the complaint in trespass would be of consequence only if the jury had not found a breach of contractual duty on the part of defendants, in which event the result would depend upon comparative negligence. ***However, it is obvious that ordinary negligence is not relevant where the harm has been found to result from breach of contract.***

*Id.* (emphasis added).

Thus even though Royal can demonstrate at trial that its due diligence in connection with the SFC transactions was thorough and could never have uncovered SFC's fraudulent scheme, such an exercise is wholly irrelevant to Royal's breach of contract claim.

## II. Evidence Of Royal's Due Diligence Will Take An Inordinate Number Of Trial Days To Present

Based on the volume of exhibits and witnesses that Wells has listed in its pre-trial order, the time involved in making and rebutting Wells' irrelevant "due diligence" theory is likely to take two or three times longer than the time it will take to try the simple breach of contract claim that remains unresolved.[4]  Wells intends to call more than a dozen Royal witnesses (who otherwise would not be asked to testify) and introduce the testimony of Richard Price and Seamus O'Neill – experts hired by Pepper Hamilton and McGladrey to defend the fraud and negligence claims against them – in an attempt to argue that the steps Royal took to investigate the SFC transactions were somehow inadequate or insufficient in light of prevailing custom and practice in the credit enhancement insurance industry.  To rebut this baseless assertion, Royal, in turn, will need to present several fact and expert witnesses to demonstrate the detailed and

---

[4] In addition to the 18 witnesses that Wells intends to call live at trial to testify regarding Royal's due diligence efforts, Wells has designated over 70 hours of deposition testimony from more than 20 witnesses, which, if played, would consume over two weeks of trial time alone.

comprehensive steps it took before issuing the policies. Royal will also be forced to show, through the testimony of several third-party fact witnesses, that other parties involved in the SFC transactions conducted extensive due diligence – some of which Royal relied upon – and reached conclusions similar to Royal.

For this reason alone, any evidence regarding Royal's due diligence should additionally be excluded under Fed. R. Evid. 403. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) ("[E]vidence may be excluded [under Rule 403] when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues.") (citing *U.S. v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)).

## CONCLUSION

For the foregoing reasons, Royal respectfully requests that this Court preclude Wells from offering any evidence or making any argument concerning Royal's due diligence in connection with the issuance of the SFC policies.

*Of Counsel:*

Michael H. Barr
Kenneth J. Pfaehler
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700

- and -

John Grossbart
Steve Merouse
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000

Dated: September 28, 2007

184589.1

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
Andrew D. Cordo (I.D. #4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com
acordo@ashby-geddes.com

*Attorneys for Defendant/Counterclaim Plaintiff Royal Indemnity Company*

- 8 -