IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>                        Debtor.<br><br>CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>                        Plaintiff,<br>    v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>                        Defendants. | CIVIL ACTION No. 04-1551 (JJF) |

**DECLARATION OF PAMELA BASHORE GAGNÉ IN SUPPORT OF
THE FAMILY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      I, Pamela Bashore Gagné, state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746.

      1.     I am an adult individual over the age of eighteen and have personal knowledge of the facts set forth in this Declaration.

      2.     I am one of the defendants in this lawsuit. My husband, W. Roderick Gagné, is also a defendant, as is my husband's uncle, Robert Bast ("Bast").

      3.     I purchased two subordinated debentures from Student Finance Corporation ("SFC"), one for $250,000 on December 31, 1995 and a second, also for $250,000, on August 1, 1997. Exhibit 9 in the Appendix to the Motion for Summary Judgment is a true and correct copy of the Subordinated Debenture and Loan Agreement for the debenture that I purchased on December 31, 1995. Interest payments on the debentures were to be made monthly, with the principal to be repaid at maturity.

4. SFC made monthly interest payments on the debentures through April 2002.

5. On September 25, 2001, I made a $375,000 bridge loan to SFC. The loan was funded from the custody account of W. Roderick Gagné that was created when the Elizabeth Brennan Trust f/b/o W. Roderick Gagné terminated. However, I was the one who agreed to make this loan to SFC, and the loan documentation for the loan is in my name. Exhibit 14 in the Appendix to the Motion for Summary Judgment is a true and correct copy of the Secured Note and Loan Agreement for this loan to SFC.

6. On March 5, 2002, I made a $400,000 bridge loan to SFC. The loan was initially funded from the custody account of W. Roderick Gagné. However, as with the September 25, 2001 loan, I was the one who agreed to make this loan to SFC, and the loan documentation for the loan is in my name. Exhibit 16 in the Appendix to the Motion for Summary Judgment is a true and correct copy of the Secured Note and Loan Agreement for this loan to SFC.

7. Under the loan agreement for the March 5, 2002 loan, SFC was to make monthly interest payments on this loan and to repay the principal at maturity. SFC made the March and April 2002 interest payments on this loan, but then made no further payments.

8. Andrew Yao ("Yao") executed a Conditional Guaranty in connection with each of the subordinated debentures that I purchased from SFC. Yao and Lore Yao executed a Guaranty in connection with the $400,000 bridge loan that I made to SFC on March 5, 2002.

9. It was always my understanding that this bridge loan and the other bridge loans that I made to SFC were to be used by SFC for the purpose of financing or purchasing student loans.

10. SFC failed to make the May 2002 interest payments due on my subordinated debentures and on the loan I made on March 5, 2002. SFC has never repaid any of the principal on the two subordinated debentures that I purchased or on the loan that I made to SFC on March 5, 2002.

11. After SFC defaulted on the payments that were due to me under the subordinated debentures and on the March 5, 2002 loan, I agreed to accept from Yao stock in companies that were general partners in limited partnerships, in which Mr. Bast and certain family trusts were limited partners. I agreed to this because I understood that Mr. Bast, who had also made loans to SFC that were in default, had also agreed to accept stock in these companies on account of Yao's guaranties. I had never been involved with these limited partnerships and did not consider the stock received from Yao to be of much value.

12. I never had a personal or social relationship with Yao or with his wife, Lore Yao. I have never been to their home.

13. From June 2001 through April 2002, the eleven payments of $5,136.98 made to me by SFC were monthly interest payments on the outstanding subordinated debentures.

14. The other payments made by SFC to me in April 2002 were the March and April interest payments on the loan I made to SFC on March 5, 2002. These interest payments were in the amounts of $3,600 and $4,000.

15. Interest payments by SFC to me on the outstanding subordinated debentures and loans had been regularly and consistently made since I made the first loan underlying a subordinated debenture in 1995. Although the payments were sometimes late, SFC never failed to make an interest payment on the outstanding debt to me until it failed to make interest payments in May 2002.

16. In 1999, I made two bridge loans to SFC. Each one had a commitment fee that ranged from 6% to 10%, depending on how long the loan was outstanding, and an interest rate of 12%. The agreements for these loans provided that the principal, together with the commitment fee and accrued interest, would be repaid on the earlier of a date certain or SFC's obtaining warehouse or other financing.

17. On September 25, 2001, I loaned SFC $400,000. In connection with this loans, SFC agreed to repay the entire unpaid principal amount, together with interest and other amounts payable under the agreement, on the maturity date, which was defined as the earlier of SFC receiving funds in a warehouse financing or August 20, 2002. The loan had an interest rate of 12%, and a commitment fee ranging from 6% to 10%, payable at maturity, depending on how long the loan was outstanding.

18. SFC repaid my September 25, 2001 loan on November 12, 2001. At that time, SFC also paid the 6% commitment fee and the accrued interest on the loan, which totaled $28,750 (fee of $22,500 and interest of $6,250).

19. I was never an officer or director of SFC. I was not involved in any way in the management or business operations of SFC, was not a part of the management structure of SFC, was never present at management meetings, was not involved in the financial decisions made at SFC and never participated in any discussions or decisions regarding the management or business operations of SFC or the disbursement of cash by SFC. My only involvement with SFC was with regard to the loans that I made to SFC, and with regard to my ownership of a small amount of the stock of SFC for a period of approximately a year, from February 2000 to January 2001.

I declare under penalty of perjury that the foregoing statements made by me are true.

Dated: 9/28/07

_____
Pamela Bashore Gagné

M0611475