IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>　　　　　　Debtor. | :<br>:<br>:<br>: |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>　　　　　　Plaintiff,<br>v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>　　　　　　Defendants. | CIVIL ACTION No. 04-1551 (JJF) |

**DECLARATION OF W. RODERICK GAGNÉ IN SUPPORT OF
THE FAMILY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, W. Roderick Gagné, state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an adult individual over the age of eighteen and have personal knowledge of the facts set forth in this Declaration.

2. I am one of the defendants in this lawsuit. Since December 1996, I have been an attorney at Pepper Hamilton LLP, which has also been named as a defendant in this lawsuit.

3. I am a co-trustee of the seven trusts that have been named as defendants in this lawsuit, namely, the Elizabeth Brennan Trust (now terminated), the Elizabeth Brennan Trust f/b/o Philip B. Gagné, the Elizabeth Brennan Trust f/b/o Elizabeth L. Gagné, the Elizabeth Brennan Trust f/b/o W. Roderick Gagné, the James Brennan Trust f/b/o Philip B. Gagné, the James Brennan Trust f/b/o Elizabeth L. Gagné and the James Brennan Trust f/b/o W. Roderick

Gagné. Elizabeth Brennan was my mother, and Philip B. Gagné and Elizabeth L. Gagné are my brother and sister. Robert Bast ("Bast"), my uncle, is also a co-trustee of each of the Brennan Trusts. Pamela Bashore Gagné ("Pamela Gagné"), who has also been named as a defendant in this lawsuit, is my wife.

4. Premier Education Group LP (formerly named CEC Partnership LP) ("Premier") was formed as a limited partnership in 1993. Exhibit 5 in the Appendix to the Motion for Summary Judgment is a true and correct copy of the Limited Partnership Agreement for CEC Partnership LP dated February 1, 1993.

5. As set forth in the Premier Limited Partnership Agreement, the Elizabeth Brennan Trust was one of the initial limited partners of Premier Education Group LP. Bast was the other limited partner.

6. The general partner of Premier Education Group LP was Premier Education Group GP, Inc. (formerly named CEC GP, Inc.). From the time the partnership was formed through June 14, 2002, all of the stock of Premier Education Group GP, Inc. was owned by Andrew Yao ("Yao").

7. Article VI of the Premier Limited Partnership Agreement contained a formula for distribution of cash from operations and dissolution. Under the formula, distribution to the general partner ranges from 5% to 40%. Increase of the percentage share in the distribution above 5% depended upon the limited partners receiving certain returns on their capital contributions as defined in the Agreement.

8. The limited partners of Premier never agreed with Yao to any change in this distribution formula. The limited partners and Yao did agree to give the CEO of Premier, Gary Camp, options to acquire some interest in the partnership, but this did not change the

distribution formula as between the limited partners and general partner inter se. During the time that Yao owned the stock of Premier Education Group GP, Inc. and operated as the general manager of the partnership, I was not involved at all in its day-to-day operations and did not review or have any input into any filings it made with state or federal agencies.

9. Premier's business, since its formation, has been the operation of vocational schools, primarily providing paralegal, medical assistant, health claims, culinary arts, HVAC and technology training. When Premier was formed, it owned one school, known as Branford Hall. By June 2002, it owned five schools located on ten campuses.

10. The Elizabeth Brennan Trust f/b/o Philip Gagné and the Elizabeth Brennan Trust f/b/o W. Roderick Gagné were limited partners of One Summit Place Partners LP when it was formed in 1994. Bast was the other limited partner. The general partner was One Summit Place Partners G.P., Inc., the stock of which was wholly owned by Yao.

11. The Elizabeth Brennan Trust f/b/o Philip Gagné and the Elizabeth Brennan Trust f/b/o W. Roderick Gagné and the Elizabeth Brennan Trust f/b/o Elizabeth Gagné were limited partners of Day Hill Partners LP when it was formed in 1996. Bast was the other limited partner. The general partner was DHP G.P., Inc., the stock of which was wholly owned by Yao.

12. One Summit and Day Hill own real estate on which some of Premier's operations are located.

13. From the time of the formation of Premier in 1993, the Elizabeth Brennan Trusts made a number of capital contributions to the partnership. Similarly, Bast made a number of capital contributions. The Elizabeth Brennan Trusts and Bast also made capital contributions

to One Summit and Day Hill. In total, capital contributions made by the Elizabeth Brennan Trusts and by Bast from 1993 through 2001 totaled over $4 million.

14. The Elizabeth Brennan Trusts and the James Brennan Trusts made a substantial number of loans to Premier, One Summit and Day Hill, as did Bast, and I personally guaranteed certain debts of the One Summit and Day Hill partnerships. By 2001, the outstanding balance on these loans (not including the loans that were personally guaranteed) totaled approximately $3.5 million.

15. From 1993 to 2002, other than interest payments on the outstanding loans, the Elizabeth Brennan Trusts received almost no return on its investments in Premier, One Summit and Day Hill. In 2000 through 2002, the Elizabeth Brennan Trust received three $36,000 annual distributions from Premier. As of 2002, the Elizabeth Brennan Trust had received no other distributions from these partnerships.

16. Interest payments by SFC to the Brennan Trusts on the outstanding subordinated debentures and bridge loans were regularly and consistently made since the Brennan Trusts made the first loan underlying a subordinated debenture in 1997. Although the payments were sometimes late, SFC never failed to make an interest payment on the outstanding debt to the Brennan Trusts until it failed to make the May 2002 interest payments.

17. The loan agreements for the March 5, 2002 loans contained a requirement that the student loans be provided to a custodian, to be held as collateral for the loans being made by the Brennan Trusts, Bast and Pamela Gagné (paragraph 3.1).

18. For several weeks after the March 5, 2002 loans were made, Yao told us that the collateral for the loans was forthcoming. Toward the end of April 2002, he informed us that SFC would not be providing the required collateral.

19. On May 5, 2002, Yao pledged his stock in Premier Education Group GP, Inc., One Summit Place GP, Inc. and DHP GP, Inc. (the "GP stock") to Bast, Pamela Gagné and certain of the Brennan Trusts pursuant to a Pledge Agreement. Because SFC was in default under the loan agreements, Yao pledged the GP stock as collateral to partially secure his obligations under the guaranties. Exhibit 22 in the Appendix to the Motion for Summary Judgment is a true and correct copy of the Pledge Agreement.

20. SFC failed to make the May 2002 interest payments on the subordinated debentures and outstanding bridge loans, which constituted an event of default under the loan agreements. As of June 14, 2002, these defaults remained uncured.

21. On June 14, 2002, Bast gave notice that the lenders were exercising their right under the loan agreements to accelerate the maturity date of the debt and to proceed against the guarantor. On that date, the lenders executed against the guaranties and Yao agreed to transfer his GP stock to Bast, the Brennan Trusts and Pamela Gagné.

22. In connection with the execution against the GP stock, the Brennan Trusts, Bast and Pamela Gagné entered Assignment and Acceptance Agreements with Yao, dated as of June 14, 2002. Under the Assignment and Acceptance Agreements, Yao transferred the GP stock to Bast, certain of the Brennan Trusts and Pamela Gagné, and the lenders assigned to Yao the SFC loan agreements and debt instruments that were in default. Taken together, 100% of the GP stock previously owned by Yao was transferred to Bast, the Brennan Trusts and Pamela Gagné under these Assignment and Acceptance Agreements.

23. At the time Yao pledged the GP stock on May 5, 2002, and on June 14, 2002 when Bast, the Brennan Trusts and Pamela Gagné executed on Yao's guaranties, I did not

believe that the GP stock was worth anywhere near the almost $7 million that was owed by SFC to Bast, the Brennan Trusts and Pamela Gagné in regard to the loans that were in default.

24. I represented SFC in various matters from approximately 1994 through April 2002. I also represented Yao and his wife, Lore Yao, with respect to certain estate matters and several other matters. However, other than on very rare occasions, I did not socialize with Yao or with Yao and his wife and have never been to their home.

25. I was never an officer or director of SFC. I was not involved in any way in the management or business operations of SFC, except to provide legal advice, was not a part of the management structure of SFC, was never present at management meetings or board meetings, was not involved in the financial decisions made at SFC, never participated in any decisions regarding the management or business operations of SFC and never had the authority to cause cash disbursements by SFC. I believe that I and my law firm (which, beginning in December 1996 was Pepper Hamilton) did more legal work for SFC than any other attorney or law firm, but we were not its only attorneys. As SFC's attorney, I provided legal advice to SFC's management, but did not make business, management, operational or financial decisions for the company.

I declare under penalty of perjury that the foregoing statements made by me are true.

_W. Roderick Gagné_

Dated: _September 28, 2007_

M0611397.DOC