EXHIBIT
GAGNÉ
1281-I
2-28-07
PENGAD 800-631-6989

80382.2

THE INTERESTS EVIDENCED BY THIS AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR CERTAIN STATE SECURITIES LAWS. INTERESTS ACQUIRED BY LIMITED PARTNERS MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE INTERESTS UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND SUCH STATE LAWS AS MAY BE APPLICABLE, OR DELIVERY TO THE PARTNERSHIP OF AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION IS NOT REQUIRED. INTERESTS ACQUIRED BY PENNSYLVANIA RESIDENTS MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN ACCORDANCE WITH SECTION 203(d) OF THE PENNSYLVANIA SECURITIES ACT OF 1972 AND THE REGULATIONS THEREUNDER. ADDITIONAL RESTRICTIONS ARE SET FORTH IN THE PARTNERSHIP AGREEMENT.

## LIMITED PARTNERSHIP AGREEMENT

## CEC PARTNERSHIP, L.P.

This Limited Partnership Agreement ("Agreement") is effective as of February 1, 1993, by and among CEC G.P., INC., a Pennsylvania corporation (the "General Partner"), and Robert L. Bast, an individual residing at 110 Spruce Lane, Ambler, Pennsylvania 19002 ("Bast") and the Elizabeth B. Brennan Trust, a trust formed under the laws of Pennsylvania pursuant to that deed of trust dated August 6, 1983 by and through its trustee(s) W. Roderick Gagné, Elizabeth B. Brennan and Robert L. Bast (the "Trust") (Bast and the Trust individually, each a "Limited Partner" and collectively, the "Limited Partners"). The General Partner and the Limited Partners are sometimes referred to herein individually as a "Partner" or collectively as the "Partners."

HALTERMAN 6732

80382.2

## Recitals:

The General Partner and the Limited Partners hereby form a Limited Partnership ("Partnership") to be governed by the Pennsylvania Revised Uniform Limited Partnership Act for the initial purpose of acquiring and holding in the name of the Partnership and managing, operating, disposing of substantially all of the operating assets of and the name to the Branford Hall School of Business and substantially all of the operating assets and name to Branford Hall Child Care Center both of which are located in Connecticut.

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE I

## ORGANIZATION

1. **Name and Principal Place of Business**

   1.01 **Name.**    The name of the Partnership is CEC PARTNERSHIP, L.P., or such other name as the General Partner shall hereafter designate in writing to the Limited Partners.

2

**HALTERMAN 6733**

800622

1.02 **Principal Place of Business.** The Partnership shall initially maintain its principal place of business 3508 Market Street, Philadelphia, Pennsylvania 19104, however, the Partnership may relocate such principal place of business to such other place or places as the General Partner may from time to time designate in writing to the Limited Partners.

1.03 **Term.** The term of the Partnership shall be until December 31, 2025, unless the Partnership is sooner dissolved in accordance with the provisions of this Agreement.

## ARTICLE II
### DEFINED TERMS

2.01 **Defined Terms**

The following defined terms used in this Agreement shall have the meanings specified below, in addition to any other defined terms used herein:

"Act" means the Revised Uniform Limited Partnership Act as adopted and enacted in the Commonwealth of Pennsylvania.

"Affiliate" means (i) any Person directly or indirectly controlling, controlled by or under common control with another

3

HALTERMAN 6734

80040.2

Person, (ii) any officer, director or partner of any such Person, and (iii) if such other Person is an officer, director or partner, any company for which such Person acts in any such capacity. For the purposes of this definition, the term "control" means the control or ownership of 10% or more of the beneficial interest in the Person to whom reference is made.

"Agreement" means this Limited Partnership Agreement as amended from time to time.

"Bankruptcy" means the filing of a voluntary case in bankruptcy under the Federal bankruptcy law and, in addition, any other status constituting bankruptcy within the meaning of the Act.

"Capital Account" means the individual capital account maintained for each Partner by the Partnership's certified public accountants, and shall be equal to (A) the Partner's capital contributions made as set forth in Article IV, (B) increased by the Partner's share of Profits under Article V, and (C) decreased by the Partner's share of Losses under Article V and by all distributions to the Partner under Article VI which constitute returns of capital under the Internal Revenue Code. The Capital Account of each Partner shall also be increased by his allocable share of the income of the Partnership exempt from Federal income tax and decreased by (1) his allocable share of any expenditures of

4

HALTERMAN 6735

80382.2

the Partnership not deductible in computing its taxable income for Federal income tax purposes and not properly added to the tax basis of any Partnership asset (the allocable share to be determined in the same manner as the Partner's share of profits and Losses are allocated under Paragraph 5.01) at the time the expenditure is paid or incurred. If a Partnership Interest is assigned or transferred under Article IX, the Capital Account of the transferee with respect to such Partnership Interest shall be the same as the Capital Account of the transferor, adjusted to reflect any Profits or Losses allocated to the transferee under Article V as a result of the transfer. Each Partner's Capital Account shall also reflect any adjustments described in Paragraph 6.02 and 10.02.

A Person who acquires a Partner's entire Partnership Interest in the Partnership shall have the same Capital Account as the transferor-Partner (determined before taking into account any adjustment required by the election described in Paragraph 11.02 of this Agreement). If a Partner transfers a portion of his Partnership Interest in the Partnership, the Capital Account of the transferor-Partner immediately before the transfer shall be divided between the transferor-Partner and the transferee-Partner (before taking into account any adjustment required by the election described in Paragraph 11.02 of this Agreement) immediately after the transfer, with the transferee-Partner's Capital Account after

5

HALTERMAN 6736

$0382.2

the transfer equal to portion of the Capital Account of the transferor-Partners attributable to the Partnership interest transferred immediately before the transfer.

In the case of a sale, exchange, or transfer a Partnership Interest with respect to which the election described in Paragraph 11.02 is in effect, the Capital Account of the transferee-Partner shall be further adjusted as provided therein. In the case of a distribution of property (other than cash), other than in liquidation of the Partnership, the Partners' Capital Accounts shall be adjusted to reflect any adjustments to the basis of Partnership property if an election described in Paragraph 11.02 of this Agreement is in effect.

Notwithstanding anything to the contrary contained herein, in all events Capital Accounts shall be determined and maintained, in general, in accordance with Treasury Regulation Section 1.704-1(b), and in particular, Section 1.704-1(b) (2) (iv).

"Cash from Dispositions" means the net cash proceeds realized by the Partnership from any Disposition, and any insurance proceeds received by the Partnership from any insurance policy insuring against physical damage of the Partnership's assets or a disruption of the Partnership's business, less (a) all expenses incurred in connection with any such Disposition, including

6

HALTERMAN 6737

BO3B2.2

brokerage commissions and payment of any underlying indebtedness related to the assets sold or disposed of, and (b) such amounts for repair or replacement of Partnership assets and reserves as the General Partner deems reasonably necessary for future Partnership operations, plus any cash released from such reserves.

"Cash from Financing" means the net cash proceeds realized by the Partnership from financing of any of the Partnership's assets (excluding the financing obtained by the Partnership in connection with the acquisition of any such assets) or the refinancing of any Partnership indebtedness, less (a) all expenses incurred in connection therewith and payments applied to pre-existing Partnership indebtedness, (b) amounts for repair or replacement of Partnership assets, and (c) reserves as the General Partner deems reasonably necessary for future Partnership operations, plus any cash released from such reserves.

"Cash from Operations" means all cash funds of the Partnership arising from its operations, including any and all distributions of working capital reserve or Partner capital, other than Cash from Dispositions or Cash from Financing, after deduction of all Operating Expenses.

HALTERMAN 6738

803022

"Closing Documents" means all instruments and documents to be executed in connection with the execution of this Agreement or the purchase of a Unit or Units.

"Disposition" means the sale, exchange or other disposition whether voluntary or involuntary of any or all of the Property of the Partnership.

"Fiscal Year" means the year ending December 31.

"General Partner" means CEC G.P., Inc., a Pennsylvania corporation and any additional or successor general partners appointed pursuant to the provisions of this Agreement, whose interest is set forth on Exhibit A adjusted as provided in this Agreement. The term "General Partner" for all purposes hereunder shall include the General Partner at any time and all successors and assigns, trustees, agents, representatives, heirs, executors or any other entities, Persons or agencies appointed to act on behalf of, or in a representative capacity of, a general partner. The General Partner, however, may, subject to the provisions of Paragraph 9.03 herein, appoint a replacement/successor General Partner upon consent of the Limited Partners holding a majority of the Interests.

8

HALTERMAN 6739

803822

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

"Limited Partner" means Bast and the Trust, and any Person, in his, her or its capacity, who owns a limited partnership interest in the Partnership (as set forth in Exhibit A and as adjusted as provided in this Agreement) and any other Person admitted to the Partnership as a Limited Partner or substituted Limited Partner.

"Liquidator" means the Person, selected by the General Partner or if there is not a General Partner at the time in question, by the Limited Partners, who shall be responsible for taking all action necessary or appropriate to wind up the affairs of the Partnership, and apply and distribute the assets of the Partnership upon its dissolution in accordance with Paragraphs 6.02 and 10.2. The Liquidator may receive compensation for his services in an amount determined by his appointers, which fee shall be treated as an expense of dissolution.

"Management Fee" means the management fee to be received by the General Partner for services rendered pursuant to Paragraph 5.07 of this Agreement.

9

HALTERMAN 6740

603822

"**Minimum Gain**" means the excess of the outstanding amount of any Non-Recourse Debt of the Partnership over the adjusted basis to the Partnership of any asset or assets securing such indebtedness.

"**Non-Recourse Debt**" means all Partnership debts secured by Partnership assets as to which no Partner is Personally liable and which are treated as non-recourse indebtedness for purposes of Sections 704(b) and 752 of the Internal Revenue Code and the Treasury regulations thereunder.

"**Operating Expenses**" means the operating expenditures (whether or not expensed for accounting or tax purposes) of the Partnership, including but not limited to the payment of all management, marketing or other fees payable to the General Partner, or any affiliate thereof; expenditures for acquisition of Partnership property and for capital improvements or replacements not financed through capital contributions, borrowings or reserves previously set aside for such purposes; and the payments of interest and principal on any Partnership debt, but shall not include cost recovery or depreciation deductions, amortization or any other non-cash charges. Operating Expenses shall also include reasonable reserves established by the General Partner in its sole discretion for future Partnership operations and the repair or

10

HALTERMAN 6741

903822

replacement of Partnership assets, but shall be reduced by any cash released from such reserves.

"Partner" means any General Partner or Limited Partner.

"Partnership Interest" means the undivided fractional interest of each Partner in the profits, losses, credits, distributions, capital and assets of the Partnership. Each Partner shall have the Partnership Interest indicated opposite his name in Exhibit A, adjusted as provided in this Agreement.

If a Partner transfers all or a part of his interest in the Partnership (whether with or without consideration), the transferor-Partner and the transferee-Partner shall each have such Partnership Interest as they may agree upon, provided that the sum of such Partnership Interests shall equal the percentage interest of the transferor immediately before the transfer.

If the Partnership acquires the interest of a Partner or issues additional Partnership Interests, the Partnership Interest of each remaining Partner shall be appropriately increased or decreased.

"Person" means any natural Person, corporation, partnership, trust or other entity.

11

HALTERMAN 6742

603422

"Power of Attorney" means the Power of Attorney set forth in Article XII of this Agreement.

"Preferred Return" means a compounded 9% cash return on each Limited Partner's original capital contribution to the Partnership. The Preferred Return is to be paid on a non-recourse basis. The obligation to pay the Preferred Return shall be satisfied, only, from the Partnership's assets or property. No General Partner or affiliate thereof shall personally assume any responsibility with regard to the payment of the Preferred Return.

"Profits" or "Losses" means, at all times during the existence of the Partnership, the net income or net loss of the Partnership for each Fiscal Year or portion thereof, as calculated in accordance with the methods for Federal income tax purposes determined by the Partnership's certified public accountants, including, where the context requires, each item of Partnership income, gain, loss or deduction.

"Property" means all of the assets of the businesses owned, operated or later acquired by the Partnership, which initially consists of the assets and certain liabilities of the two proprietary schools Branford Hall School of Business and the Branford Hall Child Care Center.

12

HALTERMAN 6743

803022

"Signature Page" means the Signature Page and Power of Attorney contained in this Agreement.

"Unit" means the interest of a Partner in the Partnership and represents capital contributions of such amounts per Partnership Interest purchased as are set forth in Exhibit A attached hereto.

"Unrecovered Capital Contribution" means the original capital contribution of each Partner, less any previous distributions of Cash from Operations, Cash from Dispositions or Cash from Financing, in the aggregate.

## ARTICLE III
### Business and Purpose

3.  **Purposes and Business of the Partnership**

3.01 **Purposes of the Partnership.**  The purpose of the Partnership is to acquire, own and operate proprietary schools, in particular, Branford Hall School of Business and Branford Hall Child Care Center, and to finance such activities on the terms and conditions hereinafter set forth and such other businesses as the Partnership may determine, provided the same shall not be prohibited by law (the "Business").

13

HALTERMAN 6744

603622

Incident to such purposes, and as a part of its business, the Partnership is authorized to purchase, mortgage, sell, lease, manage, operate and improve, alter, transfer, sell and exchange or otherwise convey and encumber any Partnership's assets or Property, to borrow funds and to do all other things necessary or appropriate to carry out the foregoing purposes, related purposes or incidental purposes thereto.

ARTICLE IV

Capitalization

4.    Partners' Capital Contributions

4.01 General Partner. The General Partner shall make capital contributions to the Partnership as set forth in Exhibit A.

4.02 Limited Partners.

The Limited Partners shall contribute or have contributed to the capital of the Partnership such amount as set forth in Exhibit A respectively. To the extent any such capital contributions are not paid within the time frame set forth in Exhibit A, the unpaid balance shall bear deferred payment charges at the rate of ten percent (10%) per annum.

14

HALTERMAN 6745

800822

4.03  **Interest; Return of Capital Contributions**.  No interest shall be paid on any capital contributions to the Partnership. Except as specifically provided in this Agreement, no Partner shall be entitled to a return of his capital contributions.

4.04  **Additional Capital Contributions**.

(a) If in the judgement of the General Partner additional funds are required to pay the cost of operating the Partnership or for any other purpose consistent with the purpose of the Partnership, the General Partner shall notify the Partners in writing specifying the need and amount of funds required. The Partners shall be required to contribute such additional funds in proportion to their respective Partnership Interests.

(b) No Limited Partner shall be required to make any capital contributions or other advances to the Partnership except as specifically set forth in this Article IV. Notwithstanding the foregoing, if a Limited Partner receives a return of his capital contribution when the assets of the Partnership are inadequate or subsequently prove inadequate to meet the Partnership's obligations to creditors, the Partnership and the creditors may recover the amount of capital, plus interest, withdrawn by such Limited Partners. The General Partner does not expect to make any such demand for the return of capital, but if it should make any improper distribution of funds, the Limited Partners might be

15

HALTERMAN 6746

803022

deemed to be holding such distributions in trust for creditors who could recover them together with interest from the Limited Partners. No Limited Partner shall be liable for any amount in excess of his initial capital contribution at any time.

4.05 <u>Capital Deficits</u>. No Limited Partner shall be obligated to repay to the Partnership or any other Partner any deficit or negative balance in his Capital Account arising at any time during the term of the Partnership or upon dissolution and liquidation of the Partnership. Except as provided at subparagraph 6.02(b) and 10.02 hereafter, the General Partner shall not be liable for the return of the Capital Accounts of the Limited Partners, it being expressly understood that any such return shall be made solely from the Partnership assets.

4.06 <u>Payments by Limited Partners</u>.

(a) In the event any contributions to the Partnership are made in part by transfer of a Note by any Partner, the General Partner may, in its absolute discretion and in addition to any other remedies available to the General Partner including the commencement of suit to collect any such amount, either (i) allow the Limited Partner who has defaulted under such Note (the "Defaulting Limited Partner") to continue as a Limited Partner of the Partnership and credit the Partnership distribution to which the Defaulting Limited Partner is then, or may thereafter become,

HALTERMAN 6747

600X2.2

entitled against the Defaulting Limited Partner's obligation to the Partnership, or (ii) expel the Defaulting Limited Partner from the Partnership effective on the day following the end of the Partnership's fiscal year, in which case the expelled Defaulting Limited Partner shall not thereafter be entitled to receive any distributions, or have any rights against or obligations to the Partnership, except to sell his Partnership Interest as provided herein.  If the General Partner elects to expel the Defaulting Limited Partner from the Partnership as provided in this Section 4.06, the interest of the Defaulting Limited Partner shall be sold as provided hereinafter for (1) an amount equal to amount of the Defaulting Limited Partner's unpaid capital contributions evidencing by the Note, or (2) the agreement of the transferee-Limited Partner(s) to assume all of the obligations of the Defaulting Limited Partner to the Partnership.

(b)  If the General Partner elects to expel the Defaulting Limited Partner from the Partnership as provided in Section 4.06(a), it shall give notice of such election to the Non-Defaulting Limited Partners and each such Non-Defaulting Limited Partner shall have 30 days from the date said notice is given to elect to purchase all or any percentage of the interest of the Defaulting Limited Partner in the Partnership.  Any Limited Partner who does not elect in writing to purchase a share of the Defaulting Limited Partner's interest in the Partnership within such 30 day

HALTERMAN 6748

8003422.

period shall have no further rights to purchase any portion of the Defaulting Limited Partner's interest in the Partnership. If the Non-Defaulting Limited Partners elect to purchase in the aggregate more than 100% of the Defaulting Limited Partner's interest, the General Partner shall allocate such interest among all Purchasers as follows:

(i)  Each purchaser's percentage of the Defaulting Limited Partner's interest shall be equal to a fraction the numerator of which is the contributed capital of such purchaser and the denominator of which is the sum of the contributed capital of all purchasers.

(ii) Each purchaser whose requested percentage interest of the Defaulting Limited Partner's is equal to or less than the amount received shall be allocated his or her respective amount received percentage requested in the Defaulting Limited Partner's Partnership interest.

(iii)   Each purchaser whose percentage requested exceed the amount received shall be allocated a percentage of the balance of the Defaulting Limited Partner's Partnership interest to 100 multiplied by a fraction of the numerator of which is such purchaser's contributed capital and the denominator of which is the sum of the contributed capital of all of such purchasers.

HALTERMAN 6749

800822

(c)  Any portion of the Defaulting Limited Partner's Partnership interest which is not purchased by the Non-Defaulting Limited Partners as provided in Section 4.06 (b) may, in the discretion of the General Partner, be acquired by the General Partner or may be sold to persons who are not then partners of the Partnership.  The powers of attorney granted to the General Partner shall be deemed to include the power to take all actions necessary to transfer the Partnership interest of a Defaulting Limited Partner as provided in this Section 4.06.

(d)  Except for capital contributions made in accordance with the foregoing provisions of this Article IV, if any Partner shall advance funds to the Partnership, unless otherwise agreed, the amount of any such advance shall not be an increase in such Partner's capital contribution or entitle him to an increase in his share of the income of the Partnership or subject him to any greater portion of any losses which the Partnership may sustain, but the amount of such advance shall be a debt due from the Partnership to such Partner and, unless otherwise provided and agreed by such Partner and the Partnership at the time of such advance, shall be repaid to such Partner, without interest, solely as provided for hereunder.

(e)  Notwithstanding any other provision of this Agreement, no Limited Partner shall in any event be required to

19

HALTERMAN 6750

60382.2

make any capital contribution beyond his share of the amounts
provided in this Article IV nor shall any Limited Partner be liable
for any Partnership liabilities, obligations, expenses or losses,
or to pay any Partnership obligations whatsoever, except to the
extent of his capital contributions, made under Article IV, or as
otherwise may be provided under the Revised Uniform Limited
Partnership Act as in effect in the Commonwealth of Pennsylvania.

## ARTICLE V

### Allocation

5.    Allocations of Profits and Losses

5.01 <u>Allocations of Profits and Losses from Operations</u>.

The Profits and Losses of the Partnership resulting
from the Partnership's operation of the Business (including each
item of income, gain, loss and deduction entering into the
computation thereof) shall be allocated among the Partners in the
following amount and order of priority:

(a)    <u>With respect to Profits</u>:

(i) first, an amount of Profits up to the total
of the Partners' Capital Account deficits shall be allocated to
each Partner having a Capital Account deficit in the same

20                        HALTERMAN 6751

603422

proportion that such Partner's Capital Account deficit bears to the
total of the Partners' Capital Account deficits until all such
Partner's Capital Account deficit is eliminated; and

(ii) then, to the extent of any remaining
Profits if there is no deficit in the Capital Accounts, Profits
shall be allocated among the Partners in the same proportion and to
the same extent that cash from Operations are distributed (as set
forth in Section 6.01), among the Partners for such years.

It is the intent of this Agreement to allocate
profits in accordance with distributions of cash and property made
under Section 6, had such distribution been made, to the extent
possible, unless Profits are required under the Internal Revenue
Code or other provisions of this Agreement to be allocated
otherwise.

(b)  Losses of the Partnership will be allocated to
the Partners in proportion to the number of Units owned by each
Partner to the total number of Units in the Partnership then
outstanding, except as otherwise provided in this Article V.

21

HALTERMAN 6752

903A2.2

### 5.02 Allocation of Profits and Losses from the Liquidation of Dissolution of the Partnership.

(a)  Profits arising from other than operations as a result of Cash from Dispositions or Cash from Financings of the Business or any assets thereof shall be allocated in the same proportion, in the same manner and to the same extent provided in Paragraph 5.01(a) above regarding allocation of Profits from operations.

(b)  Profits arising from other than operations as a result of the liquidation of the Partnership shall be distributed in the same proportions and to the same extent as provided in Paragraph 6.02 (iv), (v), and (vi) below.

(c)  Losses arising not from operations shall be allocated to the Partners with positive Capital Account balances in such amounts as will result in the pro-rata elimination of such positive Capital Accounts balances and thereafter to the Partners in the same proportion that the number of Units owned by each Partner has to the total number of Units in the Partnership then outstanding, except as otherwise provided in this Article V.

### 5.03 Minimum Gain.  Notwithstanding Subparagraphs 5.01 and 5.02, if an item of loss or deduction attributable to any Non-

22

HALTERMAN 6753

BODR22

Recourse Debt of the Partnership allocable to any Partner under the provisions of this Article V would cause the sum of the deficit Capital Account balances of the Partners to exceed the Minimum Gain, determined as of the end of the Partnership taxable year during which the allocation would be made, the item shall instead be allocated, if possible, in such a manner that the deficit Capital Account balances will not exceed the Minimum Gain and, otherwise, to each Partner in proportion to such Partner's Restated Capital Account (as hereinafter defined). For purposes of the preceding sentence, the "Restated Capital Account" of a Partner shall mean, with respect to a particular taxable year of the Partnership, the sum of the Capital Account balance of the Partner as of the last day of the preceding taxable year plus the total amount of depreciation and other non-cash deductions allocated to the interest held by the Partner for all previous years of the Partnership.

Notwithstanding any other provision of this Agreement, if the sum of the deficit Capital Account balances of the Partners (after making the distributions provided for at Article VI) exceeds the Minimum Gain determined as of the end of the year in which a distribution is made, then, to the extent possible, the amount of profits or losses which would otherwise be allocated to any Partner without such a deficit shall be reduced and allocated instead to Partners with such a deficit until the amount thus allocated

23

HALTERMAN 6754

800822

reduces the sum of deficit Capital Account balances to an amount no greater than the Minimum Gain.

Any allocation made pursuant to this Subparagraph 5.03 shall be made no later than the time at which the Minimum Gain is reduced below the sum of the deficit Capital Account balances of the Partners.

5.04 **Special Allocations.**    Anything herein to the contrary notwithstanding, the General Partner shall be allocated at least 1% of each item of Partnership income, gain, loss, deduction or credit allocated pursuant to this Article V at all times during the existence of the Partnership.

5.05 **Allocation in the Event of Assignment or Transfer.** Upon the assignment or transfer of a Partnership Interest pursuant to Article IX hereof, there shall be allocated to each Partner who held the Partnership Interest during the Fiscal Year, that portion of the Profits and Losses (other than Profits and Losses from Dispositions) allocable to such Partnership Interest for such Fiscal Year which the number of days such Partner held the Partnership Interest during such Fiscal Year bears to the total number of days in such Fiscal Year.    Profits and Losses from Dispositions shall be allocated to the Persons who were Partners at the time the Profits and Losses were recognized by the Partnership.

24                    HALTERMAN 6755

80X822

Such allocation shall be made without regard to the results of Partnership operations during the period in which each Partner owned such Partnership Interest and without regard to the date, amount, or recipient of any distributions which may have been made with respect to such Partnership Interest.

5.06 **Qualified Income Offset.**

(a) **Limitations on Allocations.** A Partner shall not be allocated Losses (or items of loss or deduction) which cause or increase a deficit balance in such Partner's Capital Account (excluding the portion(s) of such deficit balance which represents the Partner's share of the Minimum Gain), determined as of the end of the Partnership Fiscal Year to which the allocations relate and after the reduction of such Partner's Capital Account by:

(i) Any adjustments described in Treasury Regulation Section 1.704-1(b) (2) (ii) (d) (4) that, as of the end of such Fiscal Year, reasonably are expected to be made to such Partner's Capital Account pursuant to Treasury Regulation Section 1.704-1(b) (2) (iv) (k) for depletion allowances with respect to oil and gas properties (if any) of the Partnership;

(ii) Any allocations of loss and deduction described in Treasury Regulation Section 1.704-1(b) (2) (ii) (d)

25

HALTERMAN 6756

403d2.2

(5) that, as of the end of such Fiscal Year, reasonably are expected to be made to such Partner pursuant to Code Section 704(e)(2), Code Section 706(d) or Treasury Regulation Section 1.751-1(b)(2)(ii); and

(iii) Any distributions described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(6) that, as of the end of such Fiscal Year, reasonably are expected to be made to such Partner to the extent that they exceed offsetting increases to such Partner's Capital Account that reasonably are expected to occur during (or prior to) the Partnership fiscal years in which such distributions reasonably are expected to be made, applying the rule set out in Treasury Regulation Section 1.704-1(b)(2)(iii)(c) concerning the presumption that the fair market value of Partnership assets at any given time will be equal to its adjusted tax basis (or its book value if different from its adjusted tax basis) in determining expected distributions and expected increases to such Partner's Capital Account.

(b) <u>Overriding Allocations</u>. If any Partner receives:

(i) An allocation described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(5) of loss or deduction

26

HALTERMAN 6757

903022

pursuant to Code Section 704(e) (2), Code Section 706(d) or Treasury Regulation Section 1.751-1 (b) (2) (ii); or

(ii) A distribution described in Treasury Regulation Section 1.704-1(b) (2) (ii) (d) (6) in excess of offsetting increases to such Partner's Capital Account occurring during (or prior to) the Partnership Fiscal Year in which such distribution is made, and such adjustment, allocation or excess distribution had previously not been reasonably expected to be made and thus was not previously taken into account;

then such Partner shall be allocated items of Partnership income and gain in an amount and manner sufficient to eliminate as quickly as possible any deficit balance in such Partner's Capital Account (after taking into account the exclusions, limitations and reductions thereto set forth in Subparagraph 5.06(a)) to the extent caused or increased by such an unexpected adjustment, allocation or excess distribution.

(c) <u>Future Adjustments with Respect to Any Limitations on Allocations or Any Overriding Allocations</u>. Any limitations on allocations of Losses (or items of loss or deduction) pursuant to Subparagraph 5.06(a) and any overriding allocations of items of income or gain pursuant to Subparagraph 5.06(b) shall be taken into account in computing subsequent

27

HALTERMAN 6758

803822

allocations of Profits and Losses pursuant to this Article V, so that the net amount of any such items so allocated and the Profits, Losses and items thereof allocated to each Partner pursuant to this Article V shall, to the extent possible, be equal to the net amount that would have been allocated to each such Partner pursuant to the provisions of this Article V if such limitations described in Subparagraph 5.06(a) had not occurred and if such unexpected adjustments, allocations or excess distributions described in Subparagraph 5.06(b) had not occurred.

5.07 **Substantial Economic Effect.**

(a)  It is the intent of the Partners that each Partner's distributive share of income, gain, loss, deduction, or credit shall be determined in accordance with the provisions of this Article V to the fullest extent permitted by Section 704(b) of the Internal Revenue Code.  To preserve the determinations and allocations provided for hereunder, the General Partner shall be, and is hereby, authorized and directed to allocate income, gain, loss, deduction, or credit arising in any year in a manner different than that provided in this Article V if, and to the extent as necessary to comply with the requirements of Section 704(b) of the Code and any Treasury Regulations thereunder.  Any allocation made pursuant to this Paragraph 5.07 shall be deemed to be a complete substitute for any allocation otherwise provided for

28

HALTERMAN 6759

003822

in this Article V, and no amendment of this Agreement or approval of any Partner, except as otherwise provided, shall be required.

(b) In making any allocation (the "New Allocation") under Subparagraph 5.07(a), the General Partner is authorized to act only after having been advised in writing, both by counsel to the Partnership and by the Partnership's regularly retained certified public accountants that in their opinion, after examining section 704(b) of the Internal Revenue Code and any current or future proposed or final Treasury Regulations thereunder, (i) the New Allocation is necessary, and (ii) the New Allocation is the minimum modification of the allocations otherwise provided for in Article V necessary to assure that, either in the then current year or in any preceding year, each Partner's distributive share of income, gain, loss, deduction, or credit is determined and allocated in accordance with this Article V to the fullest extent permissible under Section 704(b) of the Internal Revenue Code and the Treasury Regulations thereunder.

(c) New Allocations made by the General Partner in reliance upon the written advice of the attorneys and accountants described above shall be deemed to be made pursuant to the fiduciary obligation of the General Partner to the Partnership and the Limited Partners, and no New Allocation shall give rise to any

HALTERMAN 6760

claim or cause of action by any Limited Partner against the General Partner.

(d) If the General Partner is required by Subparagraph 5.07(a) to make any New Allocations in a manner less favorable to any Partners than is otherwise provided for in this Article V, the General Partner shall be, and is hereby, nonetheless authorized and directed insofar as it is permitted to do so by Section 704(b) of the Internal Revenue Code, to allocate income, gain, loss, deduction, or credit to that Partner as nearly as possible as contemplated by Article V.

5.08 <u>Tax Allocation to Partners for Gains Related to Contributions of Appreciated Property</u>. In accordance with Code Section 704(c) and the regulations thereunder, income, gain, loss and deductions with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take into account any variations between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial fair market value at the time of the contribution as determined by the contributing Partner and the Partnership (hereinafter the "Gross Asset Value"). The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partner, upon the liquidation

HALTERMAN 6761

600362.2

of the Partnership within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g). In the event the Gross Asset Value of any Partnership asset is adjusted pursuant to this Paragraph 5.08, subsequent allocations of income, gain loss and deductions with respect to such assets shall account for any variations between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as is prescribed under Code Section 7.04(c) and the regulations thereunder. Any elections or other decisions relating to such allocation shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement. Allocations pursuant to this Section 5.08 are solely for purposes of allocating income for federal, state and local tax purposes and shall not effect or in any way be taken into account in computing any Partner's Capital Account or distributions pursuant to any other provision of this Agreement. This Section 5.08 shall take precedence in the allocation of profits over any other paragraph hereunder should the provisions of Code Section 7.04(c) apply.

### ARTICLE VI

### Distributions

6.   **Cash Distributions**

6.01 **Cash Distributions From Operations, Dispositions and Financings.** Cash from Operations, Cash from Dispositions and Cash

31

HALTERMAN 6762

800822.2

from Financings shall be distributed in the following order of priority:

     (a)   first, 95% to the Limited Partners (as a class) and 5% to the General Partner until all of the Limited Partners have recovered their Unrecovered Capital Contributions;

     (b)  then, 95% to the Limited Partners (as a class) and 5% to the General Partner until all of the Limited Partners receive an amount equal to their Preferred Return; and

     (c)  then, 90% to the Limited Partners (as a class) and 10% to the General Partner until the earlier of (A) the Limited Partners (as a class) receive a 45% compounded return on their investment or (B) the fourth anniversary of the date hereof.  If on the fourth anniversary of the date hereof, the Limited Partners (as a class) shall not have received a 45% compounded return on their respective investment, then profits and losses from dispositions shall be allocated 80% to the Limited Partners (as a class) and 20% to the General Partner until the Limited Partners (as a class) shall receive a 45% compounded return on their respective investment; and

     (d)   then, 60% to the Limited Partners (as a class) and 40% to the General Partner.

HALTERMAN 6763

803822

**6.02** <u>Cash Distributions upon Liquidation or Dissolution</u>.

(a)    Upon liquidation or dissolution of the Partnership, or its sooner termination, the Partnership shall be dissolved and its assets shall be liquidated and the proceeds therefrom distributed in the following order of priority, no distribution being made in any category set forth below unless and until each preceding category has been satisfied in full.

(i)  Payment of debts and liabilities of the Partnership and any expenses of liquidation; provided that the Liquidator shall first pay to the extent permitted by law, liabilities with respect to which any Partner is or may be Personally liable;

(ii) Establishment    of    reserves    deemed reasonably necessary to cover contingent or unforeseen liabilities or obligations of the Partnership or of the Partners arising out of, or in connection with, the Partnership;

(iii)  Payment to the Limited Partners of the amounts set forth in Paragraph 6.01 (a) & (b) above;

(iv)    Payment to the General Partners of accrued and current Management Fees;

33

HALTERMAN 6764

800082.2

(v)  Payment to the Partners of the amounts set forth in Paragraph 6.01 (c) & (d) above; and

(vi)   Payment to the Partners in accordance with the positive Capital Account balances of the Partners, as determined after taking into account all Capital Account adjustments for the Fiscal Year of the Partnership during which the liquidation of the Partnership or an interest in the Partnership (within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g)) occurs, and such distributions shall be made no later than the end of the Fiscal Year of the Partnership in which such liquidation occurs (determined without regard to Section 706(c)(2)(A) of the Code), or, if later, within ninety (90) days after the date of such liquidation.

(b)   If, after all distributions, if any, pursuant to this Subparagraph 6.02, any General Partner has a deficit balance in his or its Capital Account, as determined after taking into account all Capital Account adjustments for the Fiscal Year during which the Partnership (within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii))(g) occurs (other than those made pursuant to this Subparagraph 6.02(b), then each such General Partner shall make an additional cash capital contribution to the Partnership, by the end of the Fiscal Year in which such liquidation occurs (determined without regard to Section

34

HALTERMAN 6765

603922

706(c)(2)(A) of the Code) or, if later, within ninety (90) days
after the date of such liquidation, in an amount equal to the
lesser of such Partner's deficit Capital Account balance or 1.01%
of the total capital contributions to the Partnership.  All such
additional capital contributions shall be applied first to the
payment of the debts of the Partnership (including debts owed to a
Partner), if any, and the excess of such additional capital
contributions, if any, shall be distributed to the Partners with
positive Capital Account balances, if any, in proportion to such
positive Capital Account balances.

    (c)  For the purposes of determining the Capital
Accounts of the Partners under Subparagraphs 6.02 (a) and (b)
above, if any of the assets of the Partnership are to be
distributed in kind, the fair market value of such assets shall be
determined as of the time of such distribution (or at such other
date reasonably close to the date of such distribution as the
General Partner shall determine).  There shall be allocated to the
Partners, in accordance with Paragraph 5.02, the amount of Profit
or Loss, if any, which would have been realized by the Partnership
if such assets had been sold by the Partnership for prices equal to
their respective fair market values as so determined.  The fair
market value of such assets shall be determined by an independent
appraiser to be selected by the Partnership's accountant.

HALTERMAN 6766

AX012

6.03    Distribution Among Limited Partners.    All distributions of Cash from Operations, Cash from Dispositions and Cash from Financings to the Limited Partners (as a class) shall be allocated among the Limited Partners in accordance with their relative Partnership Interests on the date of the distribution.

6.04 Determination of Time and Amount of Distributions. The time and amount of all distributions, if any, made pursuant to this Article VI shall be determined by the General Partner in its sole discretion (except for distributions of cash upon liquidation or dissolution of the Partner as set forth in Subparagraph 6.02(a)(i) (ii) and (iii)), but shall be made within a reasonable period of time after the receipt by the Partnership of Cash from Operations, Cash from Dispositions or Cash from Financings, as the case may be; provided, however, that an amount equal to the Preferred Return shall be distributed from Cash from Operations, if any, at least once annually, within seventy-five (75) days after the end of the Partnership's year.

36

HALTERMAN 6767

903822

# ARTICLE VII

## Management

7.    **Management Powers, Duties, and Restrictions and Management Fee**

7.01 **Management Authority of the General Partner; Limitation on the General Partner's Obligations.**

(a)  The Partnership shall be managed by the General Partner and the conduct of the Partnership's business shall be controlled and conducted solely by the General Partner in accordance with this Agreement.  Except as otherwise specifically provided in this Agreement, the General Partner shall have full, complete, and exclusive discretion to take any and all action of whatever type that the Partnership is authorized to take and make all decisions with respect thereto and to have and exercise on behalf of the Partnership all powers and rights necessary, proper, convenient, or advisable to effectuate and carry out the purposes and business of the Partnership.  If there is more than one General Partner, all decisions and actions of the General Partner shall be made and taken pursuant to a majority vote of the General Partners, including, but not limited to, appointing or removing the General Partner.  In the event of a deadlock, the General Partners shall appoint a mutually agreeable independent third party to break the

37

HALTERMAN 6768

803A2.2

deadlock.    If they cannot agree upon such Person, each shall
appoint one and the two so appointed shall appoint a third to break
any impasse.

(b)   The General Partner shall devote such portions
of its time as it deems necessary to the affairs of the Partnership
without salary or compensation other than as expressly provided for
in this Agreement.

(c)   Except as otherwise specifically provided in
this Agreement, the General Partner shall have no obligation to the
Partnership, the Partners, or any other Person to make any capital
contributions or advances to the Partnership; to fund, finance,
refinance, or obtain financing for the Partnership; or otherwise to
supply or make available any funds to the Partnership, even if the
failure to do so could result in a default in any of the
Partnership's obligations, permit a foreclosure on all or any
portion of the Partnership's Properties or a termination of its
business or result in any other adverse consequence to the
Partnership or the Partners.

7.02 <u>Appointment of Employees and Agents</u>.  The General
Partner may appoint, employ, or contract or otherwise deal with any
Persons (who may be affiliates of the General Partner) for the
transaction of the business of the Partnership, which Persons may,

HALTERMAN 6769

00062.2

under supervision of the General Partner, perform any acts or services for the Partnership as the General Partner may approve.

7.03   <u>Other Activities - Anticipated Conflicts of Interest</u>.

(a)   Any of the Partners, including the General Partner and its affiliates, may engage in other business ventures of every nature and description, independently or with others, even if such ventures are competitive with the Partnership's business. Neither the Partnership nor any Partner (by virtue of their interest in the Partnership) shall have any rights in and to such ventures or the income or profits derived from them, provided, however, that no actions by the Partner may violate or abrogate such Partner's fiduciary duty to the Partnership.

(b)   It is likely that the General Partners and their affiliates may in the future become involved as general partners, promoters, agents and/or managers of various other limited partnerships, certain or all of which may be formed to invest in other propriety schools. The General Partners and their affiliates need not present the Partnership with any particular investment opportunity, even if that opportunity might be suitable for the Partnership.

39

HALTERMAN 6770