60362.2

## 7.04 <u>Liability for Acts or Omissions; Indemnification</u>.

(a)    The General Partner shall have no liability to the Partnership or to any Limited Partner for any loss suffered by the Partnership which arises out of any action or inaction of the General Partner if the General Partner in good faith determined that such action or inaction was in the best interests of the Partnership; and provided such course of conduct did not constitute negligence or wonton misconduct of the General Partner.  The General Partner shall be indemnified by the Partnership against any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by, or in connection with, the Partnership, provided that the same were not the result of negligence or wonton misconduct on the part of the General Partner.

(b)    Notwithstanding the above, the General Partner and any Affiliate shall not be indemnified for any losses, liabilities or expenses arising from or out of an alleged violation of Federal or state securities laws unless (i) there has been a successful adjudication on the merits of each count involving alleged securities law violations as to the particular parties seeking indemnification; (ii) such claims have been dismissed with prejudice on the merits by a court of competent jurisdiction as to the particular parties seeking indemnification; or (iii) a court of

40

HALTERMAN 6771

803822

competent jurisdiction approves a settlement of the claims against a particular party seeking indemnification.

(c) The Partnership may provide advances from Partnership funds to a General Partner for legal expenses and other costs incurred as a result of any legal action initiated against the General Partner for which the General Partner would be indemnified hereunder.

(d) The Partnership shall not incur the cost of that portion of any insurance, other than public liability insurance, which insures any party against any liability the indemnification of which is herein prohibited.

(e) The provision of advances from Partnership funds to a General Partner for legal expenses and other costs incurred as a result of any legal action initiated against the General Partner by a Limited Partner of the Partnership is prohibited. The provision of advances from Partnership funds to the General Partner for legal expenses and other costs incurred as a result of a legal action is permissible if the following three conditions are satisfied: (i) the legal action relates to the performance of duties or services by the General Partner on behalf of the Partnership; (ii) the legal action is initiated by a third party who is not a Limited Partner; and (iii) the General Partner

41

HALTERMAN 6772

800422

undertakes to repay the advanced funds to the Partnership in cases in which it would not be entitled to indemnification.

7.05 <u>Authority of the General Partner</u>. Except as otherwise set forth in Section 7.06 to carry out its purposes, and not in limitation thereof, the General Partner is empowered and authorized to do any and all acts and things necessary, appropriate, proper, advisable, incidental to, or convenient for the furtherance and accomplishment of its purposes, including, but not limited to those acts necessary to accomplish the objectives set forth within this Agreement, including, but not limited to the following:

(a) engage in any kind of activity, and perform and carry out contracts of any kind necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the Partnership;

(b) acquire, operate, maintain, improve, own, sell, convey, assign, mortgage, refinance, rent, or lease property of the Partnership;

(c) borrow money on behalf of the Partnership, from time-to-time, up to a maximum amount of $100,000 in any twelve month period as may be deemed reasonably necessary in the sole

42

HALTERMAN 6773

900822

discretion of the General Partner to provide for liabilities of the Partnership or the Partnership's assets or property or to finance the operations of the Partnership.  In connection with any such borrowings, the General Partner may pledge, encumber or grant security interests in the Partnership's assets and income;

(d)  maintain and operate the Partnership's business and assets;

(e)  negotiate for and conclude agreements for the sale, exchange, or other disposition of less than all or substantially all of the business or assets of the Partnership with a value of $100,000 or less;

(f)  hire, dismiss, and compensate employees, agents, brokers, independent contractors, attorneys, and accountants;

(g)  bring and defend actions in law or in equity;

(h)  enter into and carry out contracts and agreements and execute any or all documents or instruments and do and perform all such other things as may be in the furtherance of the Partnership business or necessary or appropriate to the conduct of Partnership business;

43

HALTERMAN 6774

80082.2

(i)  enter one or more confessions of judgment against or on behalf of the Partnership.

7.06 <u>Limitation on Management Rights</u>.  Notwithstanding the generality of the foregoing, the General Partner shall not be empowered without the consent of a majority of the Limited Partners to:

(a)  do any act in contravention of this Agreement;

(b)  possess Partnership property or assign any rights in specific Partnership property for other than a Partnership purpose;

(c)  admit a Person or Persons as a substituted General Partner or additional Limited Partners, except as otherwise permitted in this Agreement;

(d)  change or reorganize the Partnership into any other legal form; or

(e)  enter into any contracts between the Partnership and a General Partner, or any affiliates thereof except for goods and/or services provided which are reasonably necessary or appropriate for the Partnership's operations and provided further that the price charged to the Partnership therefor is no

44

HALTERMAN 6775

803082.2

higher than the price which would be charged to the Partnership by an unaffiliated supplier for comparable goods or services;

(f)  conclude agreements for the sale, exchange or other disposition of all, or substantially all of the assets or business of the Partnership;

(g)  engage in transactions or conclude agreements material to the business of the Partnership with a value in excess of $100,000; or

(h)  incur debt or liabilities on behalf of the Partnership in an amount in excess of $100,000.

7.07 Management Fee.  In compensation for services rendered in his capacity as General Partner of the Partnership, the General Partner shall receive during the period the General Partner serves a monthly management fee (the "Management Fee") as follows:  (i) $7,500 payable without condition on the 15th day of each month and, (ii) $5,000, payable only after cash distributions pursuant to Paragraph 6.01 above in an amount equal to, or in excess of, $12,500 have been made to the Limited Partners (as a class) during the month in which such Management Fee, or portion thereof, is payable.  The General Partner shall not receive any other fees or costs for rent, stationary, expenses in connection with

45

HALTERMAN 6776

903022

dissemination of information to the Limited Partners except for the preparation of the Partnership's tax returns and out-of-pocket expenses that are not unreasonable.

### ARTICLE VIII
### Status of Partners

8.   Status of Limited Partners

8.01 **Limitation on Partners.**  No Limited Partner, in his status as such, shall take part in the management or control of the business of the Partnership nor transact any business in the name of the Partnership.  The Limited Partners shall, however, have the powers and be entitled to exercise the rights given to the Limited Partners by the terms of this Agreement, which rights are deemed to be rights affecting the basic structure of the Partnership and not the control of its business.

8.02 **Limitation on Liability and Rights of Limited Partners.**  The liability of each Limited Partner shall be limited in the manner specified in the Act.  The Partners' Partnership Interests shall be non-assessable.  A Limited Partner shall not have the right to demand payment of the balance in his Capital Account at any time.  No Limited Partner shall have priority over any other Limited Partner either as to the return of capital or as

46

HALTERMAN 6777

800822

to Profits, Losses, income tax credits or distributions. Except as otherwise provided in this Agreement, no Limited Partner shall have the right to bring an action for partition against the Partnership.

8.03 <u>Certain Rights of Limited Partners</u>. The Limited Partners shall have the following rights, powers, privileges, duties, and liabilities:

(a)  The Limited Partners shall have the right to have full and true information of all things affecting the Partnership and shall be entitled to such reports as are set forth in Article XI hereof.

(b)  The Limited Partners shall receive from the Partnership the share of the distributions in the manner and at the times provided for in this Agreement.

(c)  Each Limited Partner shall have the right to a complete list of names and addresses and interests of all Limited Partners as set forth in the records of the Partnership.

8.04 <u>Removal of General Partner</u>. The Limited Partners have the right to remove the General Partner in accordance with the following:

47

HALTERMAN 6778

603012.2

(a)    Upon the affirmative vote of those Limited Partners owning at least fifty-one (51%) percent of the then outstanding Partnership Interests, the General Partner may be removed for "cause".  For the purposes hereof, the term "cause" shall be defined as: gross negligence resulting in a material loss of Partnership assets, intentional misconduct, material failure to comply with the terms of this Agreement, conviction of a felony or moral turpitude, or mismanagement of the Partnership.

(b)    Upon the affirmative vote of those Limited Partners owning at least ninety-six (96%) percent of the then outstanding Partnership Interests, the General Partner may be removed without "cause".

(c)    Any action taken pursuant to subsection (a) or (b) above, must be undertaken at a duly called meeting of the Partnership, which meeting may be called by the Limited Partners pursuant to Article XV hereof.  The General Partner and all General Partners must be provided no less than fifteen (15) days notice of the meeting, which notice must set forth the purpose of the meeting (and in the case of subsection (a) above, the "cause").

(d)    In the event the General Partner is removed not for "cause", the General Partner will be released from any and all obligations to the Partnership under this Agreement and his general

48

HALTERMAN 6779

803822

Partnership Interest will be converted to a Limited Partnership interest but in all other respects, (except those that are inconsistent with that of a Limited Partner) such interest shall remain the same including rights to distributions.

## ARTICLE IX

### Transfer

9.    Transfer of Partnership Interests

9.01 **Prohibited Transfers.**  The Partners may not sell, assign, transfer or otherwise dispose of, or pledge, hypothecate or in any manner encumber, her, his or its Partnership Interest or any part thereof except as permitted in this Article IX, and any act in violation of this Paragraph 9.01 shall not be binding upon, or recognized by, the Partnership regardless of whether the General Partner shall have knowledge thereof.

9.02  **Permitted Transfers of the General Partner.**

(a)   The General Partner may only appoint a replacement/successor General Partner or otherwise sell, transfer or assign its Partnership interest upon notice to, and consent of the Limited Partners holding a majority of the Partnership Interests. In order to appoint such a replacement/successor General Partner or

49

HALTERMAN 6780

803822

sell, assign or assign its Partnership interest, the present General Partner must also obtain an opinion of counsel to the effect that: (i) the appointment of such replacement/successor General Partner will not result in a termination of the Partnership for purposes of Section 708 of the Internal Revenue Code; and (ii) that the appointment of such replacement/successor General Partner will not result in the Partnership being taxed as a corporation under Section 7701 of the Internal Revenue Code.

(b)  No General Partner shall withdraw, retire or resign, sell or transfer his or its interest unless the General Partner does so in compliance with subparagraph 9.02(a) above, or otherwise obtains the consent of the Limited Partners holding a majority of the Partnership Interests.  Although such withdrawal, retirement or resignation in breach of this subparagraph 9.02(b) may not be enjoined, such General Partner shall be liable for actual damages incurred by the Partnership as a result of such breach.

(c)  To the extent the General Partner appoints a replacement/successor General Partner without notice to, or consent of the Limited Partners pursuant to the provisions of subparagraph 9.02(a) above, unless otherwise agreed to by those Limited Partners holding a majority of the Partnership Interests:

50

HALTERMAN 6781

80382.2

      (i)    The Partnership shall be under no obligation to grant to such replacement/successor General Partner any interest in the Partnership;

      (ii)    Any interest in the Partnership to be obtained by such replacement/successor General Partner shall be obtained from the withdrawing General Partner; and

      (iii)  The interest of the withdrawing General Partner (to the extent not transferred to the replacement/successor General Partner) shall after such withdrawal be converted to that of a Limited Partner entitled, however, only to allocations and distributions to the extent he was entitled to the same as a General Partner (except to the extent such withdrawing General Partner transferred any of his Partnership Interests to the replacement/successor General Partner).

      (d)  To the extent a replacement/successor General Partner is appointed upon the vote of those Limited Partners holding a majority of the Partnership interests, the Limited Partners upon such vote, may grant to such replacement/successor General Partner any interest in the Partnership they deem fit, such interests to first be derived from the existing interests of the withdrawing General Partner.  To the extent the withdrawing General

51

HALTERMAN 6782

00062.2

Partner has a remaining interest in the Partnership thereafter, such interest shall be converted to that of a Limited Partner.

9.03 Admission of Limited Partners and Permitted Transfers.

(a) The General Partner may admit Limited Partners at such times as Partnership Interests are sold to additional Limited Partners pursuant to the terms of this Agreement. In the event, however, the Partnership seeks to sell additional limited partnership interests, it must first offer these interests to the existing Limited Partners. The General Partner may admit as a substituted Limited Partner any successor in interest to a Limited Partner either deceased or under legal disability subject to such Person's compliance with the provisions of this Paragraph 9.03. For purposes of this Agreement, a substituted Limited Partner is a Person admitted to all the rights of a Limited Partner. The General Partner may admit as substituted Limited Partners assignees of Limited Partners based on the terms of this Paragraph 9.03 and further based upon such Person's compliance with the provisions of this Paragraph 9.03. For purposes of this Agreement, an assignee is a Person to whom a Limited Partner has assigned his Unit in the Partnership but who has not become a substituted Limited Partner. An assignee shall have no right to require any information or account of the Partnership's transactions or to inspect the

52

HALTERMAN 6783

BOM22

Partnership's books but shall only be entitled to receive the share of the Profits, Losses, income tax deductions and credits, and distributions, or the return of the capital contribution, to which his assignor would otherwise be entitled as set forth in Articles V and VI.

(b)  No assignee of the whole or any portion of a Limited Partner's Partnership Interest shall have the right to become a substituted Limited Partner in place of his assignor or have any other rights of a Limited Partner hereunder unless all of the following conditions are satisfied:

(i) The written consent of the General Partner to such substitution shall be obtained, the granting or denial of which shall be within the sole and absolute discretion of the General Partner;

(ii) A duly executed and acknowledged written instrument of assignment has been filed with the Partnership which sets forth the intention of the assignor that the assignee become a substituted Limited Partner in his place;

(iii) The assignor and assignee execute and acknowledge such other instruments as the General Partner may deem necessary or desirable to effect such admission; including, without

53

HALTERMAN 6784

803422

limitation:  (A) an opinion of counsel, acceptable to the General Partner, to the effect that the assignment of the Partnership Interests will not violate the applicable provisions of the Securities Act of 1933 and any applicable state securities laws; (B) the written acceptance and adoption by the assignee of the provisions of this Agreement; and (C) his execution, acknowledgement, and delivery to the General Partner of a Power of Attorney, the form and content of which are more fully described in Article VII hereof; and

(iv) A transfer fee not to exceed $1,500.00 per transaction has been paid to the Partnership, which fee may be determined and waived in the sole discretion of the General Partner.

(c)  Any Person admitted to the Partnership as a substituted Limited Partner shall be subject to all of the provisions of this Agreement as if originally a party to it.

(d)  Subject to the provisions of subparagraphs 9.03(j) and 9.03(k) hereof, compliance with the suitability standards imposed by the Partnership, applicable "blue sky" laws, if any, and the rules of any other applicable governmental authority and subject to the written consent of the General Partner (except that assignments to heirs and Personal representatives may

54

HALTERMAN 6785

903622

be made without consent upon the death of a Limited Partner), a Limited Partner shall have the right to assign one or more Units owned by him (but may not assign a fractional interest in a Unit unless such Limited Partner owns such a fractional interest, in which event such Limited Partner shall not be permitted to further divide such fractional interest) by a written assignment, the terms of which are not in contravention of any of the provisions of this Agreement, which assignment has been duly executed by the assignor and received by the Partnership and recorded on the books thereof. Any assignment in contravention of any of the provisions of this subparagraph 9.03(d) shall be of no force and effect and shall not be binding upon or recognized by the Partnership.

(i)   Except as provided in subparagraphs 9.03(i), 9.03(j) and 9.03(k), an assignee of a Partnership Interest shall be entitled to receive distributions of cash or other property from the Partnership attributable to the Partnership Interest acquired by reason of such assignment from and after the effective date of the assignment of a Partnership Interest to him. The "effective date" of an assignment of a Partnership Interest as used in this Article shall be either the first day or the fifteenth day of the calendar month in which the written instrument of assignment, in form and substance satisfactory to the General Partner, is received and approved by the General Partner, whichever date is more proximate.

55

HALTERMAN 6786

80302.2

    (ii) The Profits and Losses attributable to a Unit assigned during any Fiscal Year shall be allocated between the assignor and assignee in accordance with the provisions of Paragraph 5.05 hereof.

    (iii) Anything contained herein to the contrary notwithstanding, both the Partnership and the General Partner shall be entitled to treat the assignor of a Partnership Interest as the absolute owner thereof in all respects, and shall incur no liability for distributions of cash or other property made in good faith to him until such time as the written assignment has been received by, and recorded on the books of, the Partnership, in accordance with the provisions of subparagraph 9.03(d)(i).

    (e) The General Partner may elect to treat an assignee who has not become a substituted Limited Partner as a substituted Limited Partner in the place of his assignor should it deem, in its sole and absolute discretion, that such treatment be in the best interest of the Partnership for any of its purposes or for any of the purposes of this Agreement.

    (f) No consent of any of the Limited Partners is required to effect the substitution of a Limited Partner, except that a Limited Partner who assigns his Interest in the Partnership shall, in order for the assignee to be admitted as a substituted

HALTERMAN 6787

803622

Limited Partner, pursuant to subparagraph 9.03(b) evidence its intention that the assignee be admitted as a substituted Limited Partner in his place and must execute such instruments as the General Partner shall, in his sole and absolute discretion, determine to be necessary or desirable in connection therewith.

(g) Unless otherwise required by the Act, the General Partner shall be required to amend the Certificate of Limited Partnership only quarterly but may, in its sole and absolute discretion, within a reasonable time after the date of its written consent to the substitution of an assignee as a substituted Limited Partner, amend the Certificate of Limited Partnership to reflect the addition of said assignee as a Limited Partner. Neither copies of the Certificate of Limited Partnership nor any amendment thereto need be delivered to any of the Limited Partners and such requirement in any statute is hereby waived. However, upon request the General Partner will promptly thereafter furnish the requesting Limited Partner with a copy of the Certificate of Limited Partnership and any amendments thereto as of the date of request.

(h) Upon the death or legal incompetency of an individual Limited Partner, his Personal representative shall have all of the rights of a Limited Partner for the purpose of settling or managing his estate, and such power as the decedent or

57

HALTERMAN 6788

00382.2

incompetent possessed to constitute a successor as an assignee of his interest in the Partnership and to join with such assignee in making application to substitute such assignee as a Limited Partner. However, such Personal representative shall not have the right to become a substituted Limited Partner in the place of his predecessor in interest unless the conditions of subparagraph 9.03(b) are first satisfied (except with respect to the requirement that the assignor execute and acknowledge instruments).

(i) Upon the Bankruptcy, dissolution or other cessation to exist as a legal entity of a General or Limited Partner, not an individual, the authorized representative of such entity shall have all of the rights of a Limited Partner for the purpose of effecting the orderly winding up and disposition of the business of such entity and such power as such entity possessed to constitute a successor as an assignee of its interest in the Partnership and to join with such assignee in making application to substitute such assignee as a Limited Partner. However, such Personal representative shall not have the right to become a substituted Limited Partner in the place of his predecessor in interest unless the conditions of subparagraph 9.03(b) are first satisfied (except with respect to the requirement that the assignor execute and acknowledge instruments).

HALTERMAN 6789

803822

    (j)  No assignment or transfer of an interest in the Partnership may be made which would result in a termination of the Partnership under Section 708 of the Code.

    (k)  Anything else to the contrary contained herein notwithstanding:

        (i) Except with the prior written consent of the General Partner, in a particular twelve (12) consecutive month period no assignment or transfer of an interest in the Partnership may be made which would result in increasing the aggregate total of capital and profits interests in the Partnership previously assigned and/or transferred in said periods of more than forty-nine percent (49%) of the outstanding interests in the Partnership. This limitation is hereinafter referred to as the "fifty percent (50%) limitation."

        (ii) A Limited Partner may assign his Limited Partnership Interest to: (A) his spouse (unless legally separated), child, or ancestor, or (B) a corporation, partnership, trust, or other entity, fifty-one percent (51%) of the equity interest of which is owned by such Limited Partner, and/or any of the Persons specified in clause (A) so related to such Limited Partner, provided, however, such assignments are fully subject to the fifty percent (50%) limitation.

59

HALTERMAN 6790

90082.2

(iii) Clause (i) hereof shall not apply to a transfer by gift, bequest, or inheritance, or a transfer to the Partnership, and, for purposes of the fifty percent (50%) limitation, any such transfer shall not be treated as such.

(iv) No sale, transfer, or other assignment of any Unit by a Partner, except upon death of a Limited Partner or a transfer to the Partnership, may be made unless the Partnership has received an opinion of counsel acceptable to it (both as to the issuer of the opinion and the substance thereof) to the effect that such sale, transfer or assignment (a) may be effected without registration of the Unit under the Securities Act of 1933; and (b) does not cause a violation of any state securities laws (including any investment suitability standard) applicable to the Partnership.

## ARTICLE X

### Termination

10.  **Termination of the Partnership**

10.01    **Dissolution.**  The Partnership shall dissolve upon, but not before, the first to occur of the following:

(a)  The sale or other disposition of all of the Partnership's assets;

60

HALTERMAN 6791

803822

(b)    The withdrawal, retirement, resignation, death, insanity, removal, dissolution or Bankruptcy of a General Partner, unless a replacement or successor General Partner is selected in accordance with Paragraph 10.01(c), or the remaining General Partners, if any, agree within thirty (30) days after such event to continue the Partnership and its business in which event the former General Partner's Partnership Unit shall be treated in the manner provided in subparagraph 9.02(a);

(c)    The withdrawal, retirement, resignation, death, insanity, removal, dissolution or Bankruptcy of the last remaining General Partner, and the failure of such General Partner to appoint a successor willing to continue the business of the Partnership, unless the majority-in-interest of the Limited Partners (as a Class) elect a new General Partner within 90 days after such event, in which event the former General Partner's Partnership Interest shall be converted to that of a Limited Partner, and the Partnership and its business will continue with the newly elected General Partner as the General Partner of the Partnership; or

(d)    The occurrence of any other event which, under the provisions of the Act, would cause a dissolution of the Partnership; provided, however, that upon such a dissolution, the Partners at the time of such occurrence and any assigns thereof

61

HALTERMAN 6792

003822

admitted to the Partnership as a General Partner or a substituted Limited Partner shall automatically and without the need of any action be deemed to have formed a successor partnership which shall be governed by all of the provisions of this Agreement and the business of the Partnership shall be continued by such successor partnership, which shall, for the purposes of this Agreement, be deemed to be the "Partnership." No Partner shall, on account of any dissolution pursuant to this subparagraph 10.01 (d), have the right to have the Partnership's assets applied to discharge its liabilities or to have the value of his Partnership Interest ascertained or paid for.

10.02     **Winding Up and Distributions.**

(a)  In the event of a dissolution of the Partnership pursuant to Paragraph 10.01 (except pursuant to subparagraph 10.01(d)), the assets of the Partnership shall be liquidated by the Liquidator and, after payment of, or other provision for Partnership obligations to third parties, the repayment of any loans made by the Partners or their Affiliates, if any, the satisfaction of any liabilities owed to the Partners or their Affiliates, if any, and the establishment of a reasonable reserve, at the discretion of the General Partner, the net proceeds of such liquidation shall be distributed to the Partners in accordance with the provisions of Paragraph 6.02.

62

HALTERMAN 6793

003A2.2

(b)  In  connection  with  the  sale  by  the Partnership  of  its  Properties,  although  the  Partnership  has  no obligation to offer to sell any assets to the Partners, any Partner may bid on and purchase any assets.

(c)  Notwithstanding  the  foregoing,  if  the Liquidator shall determine that an immediate sale of part or all of the Partnership assets would cause undue loss to the Partners, the Liquidator may defer liquidation of and withhold from distribution for a reasonable time any assets of the Partnership (except those necessary  to  satisfy  the  Partnership's  current  obligations)  or distribute the Partnership assets in kind.

(d)  If any assets of the Partnership are to be distributed in kind, such assets shall be distributed in accordance with  the  provisions  of  Paragraph  6.02  on  the  basis  of  the  fair market  value  thereof  and  any  Partner  entitled  to  any  interest  in such assets shall receive such interest therein as tenant-in-common with all other Partners so entitled.  The fair market value of such assets shall be determined by an independent appraiser selected by the General Partner.  Any non-cash asset shall be distributed after computation  of  the  "Preliquidation  Adjustment"  (as  hereinafter defined).  The "Preliquidation Adjustment" with respect to assets distributed in kind shall be the amount of income, gain, or loss which the Partnership would have recognized if such assets were

63

HALTERMAN 6794

803A2.2

sold, using, for this purpose, as the amount realized the fair market value of the assets distributed less the normal costs that would be associated with such a sale. The Preliquidation Adjustment shall be allocated to the Partners and reflected in their capital accounts as provided in ARTICLE V.

(e)  In connection with the termination of the Partnership, the Partnerships' certified public accountants shall prepare and furnish to each Partner a statement setting forth the assets and liabilities of the Partnership as of the date of complete liquidation.  After distribution of all of the assets of the Partnership, the Limited Partners shall cease to be such, and the General Partner shall cause to be executed, acknowledged, and filed all documents necessary to cancel the Partnership's Certificate of Limited Partnership and to terminate the Partnership.

## ARTICLE XI
### Information

11.  Books, Records and Tax Elections

11.01 Books and Records.  The General Partner shall cause to be kept full and accurate books of the Partnership.  All books and records of the Partnership shall be kept at the Partnership's

64

HALTERMAN 6795

principal place of business and shall be available at reasonable times for inspection and copying by the Limited Partners or their duly constituted designees. The books of the Partnership shall be kept on the accounting and income tax basis selected by the General Partner upon the advice of the Partnership's certified public accountants, and the fiscal period of the Partnership shall be the Fiscal Year. Capital Accounts for each General Partner and each Limited Partner shall be maintained as part of the books of the Partnership and the amount of Profits or Losses of the Partnership, as well as capital contributions to the Partnership and distributions from the Partnership, shall be credited or charged, as the case may be, to the Capital Account of each General and Limited Partner. No Partner shall be required to eliminate any deficit balance in his Capital Account, provided that this provision shall not negate or impair any obligations of any Partner specifically set forth in this Agreement.

11.02 **Tax Elections.** The General Partner, in its sole and absolute discretion, may cause the Partnership to make, refrain from making, or once having made, to revoke, the election referred to in Section 754 of the Internal Revenue Code, and any similar tax related or other election provided by state or local law, or any similar provision enacted in lieu thereof, or any other election that the General Partner deems appropriate.

65

HALTERMAN 6796

003622

11.03     Annual Reports; Tax Information.

(a)  The General Partner and each Limited Partner shall, upon request, be furnished by the Partnership with an unaudited annual report containing (i) a balance sheet as of the end of its Fiscal Year and statements of income for the year then ended, all of which shall be prepared in accordance with generally accepted accounting principles and on the accounting and income tax basis selected by the General Partner upon the advice of the Partnership's certified public accountants, and (ii) a report of the activities of the Partnership during the period covered by the report.  Such report shall also set forth unaudited distributions to Partnership Interest holders for the period covered thereby and shall separately identify distributions from (i) Cash from Operations during the period, (ii) proceeds from Cash from Dispositions or Cash from Financing or upon dissolution, and (iii) from any other source.  The General Partner shall make every reasonable effort to cause the Partnership to furnish such information within ninety (90) days after the end of each Fiscal Year, if so requested.

(b)  The General Partner shall maintain for a period of at least four (4) years a record of the information obtained to indicate that a Limited Partner meets the applicable suitability standards.

66

HALTERMAN 6797

003422

(c)  The General Partner will use its best efforts to deliver appropriate tax information to each Partner within 90 days after the end of each Fiscal Year.  In addition, concurrently with the delivery of such information, the General Partner shall deliver to each Partner adequate information relating to the Partnership to enable each Partner to complete and file his or her Federal income tax return.

11.04  **Designation of Tax Matters Partner.**  The General Partner hereby is designated as the Tax Matters Partner of the Partnership, and shall engage in such undertakings as are required of the Tax Matters Partner of the Partnership, as provided in regulations pursuant to Section 6231 of the Code.  Each Partner, by the execution of this Agreement consents to such designation of the Tax Matters Partner and agrees to execute, certify, acknowledge, deliver, swear to, file and record at the appropriate public offices such documents as may be necessary or appropriate to evidence such consent.

11.05  **Authority of the Tax Matters Partner.**  The Tax Matters Partner is hereby authorized, but not required:

(a)  to enter into any settlement with the Internal Revenue Service or the Secretary of the Treasury with respect to any tax audit or judicial review, in which agreement the Tax

67

HALTERMAN 6798

BOO822

Matters Partner may expressly state that such agreement shall bind the other Partners, except that such settlement agreement shall not bind any Partner who (within the time prescribed pursuant to the Code and regulations thereunder) files a statement with the Secretary providing that the Tax Matters Partner shall not have the authority to enter into a settlement agreement on the behalf of such Partner;

(b)  in the event that a notice of a final administrative adjustment at the Partnership level of any item required to be taken into account by a Partner for tax purposes (a "Final Adjustment") is mailed to the Tax Matters Partner, to seek judicial review of such final adjustment, including the filing of a petition for readjustment with the Tax Court, the District Court of the United States for the district in which the Partnership's principal place of business is located, or the United States Claims Court;

(c)  to intervene in any action brought by any other Partner for judicial review of a Final Adjustment;

(d)  to file a request for an administrative adjustment with the Secretary of the Treasury at any time and, if any part of such request is not allowed by the Secretary of the Treasury, to file a petition for judicial review with respect to such request;

68                  HALTERMAN 6799

803822

      (e)  to enter into an agreement with the Internal Revenue Service to extend the period for assessing any tax which is attributable to any item required to be taken into account by a Partner for tax purposes, or an item affected by such item; and

      (f)  to take any other action on behalf of the Partners or the Partnership in connection with any administrative or judicial tax proceeding to the extent permitted by applicable law or regulations.

      11.06  **Expenses of Tax Matters Partner**.  The Partnership shall indemnify and reimburse the Tax Matters Partner for all expenses, including legal and accounting fees, claims, liabilities, losses and damages incurred in connection with any administrative or judicial proceeding with respect to the tax liability of the Partners.  The payment of all such expenses shall be made before any distributions are made from Cash Flow or any discretionary reserves are set aside by the General Partner.  The taking of any action and the incurring of any expense by the Tax Matters Partner in connection with any such proceeding, except to the extent required by law, is a matter in the sole discretion of the Tax Matters Partner and the provisions on limitations of liability of the General Partners and indemnification set forth in subparagraph 7.04 of this Agreement shall be fully applicable to the Tax Matters Partner in its capacity as such.

69               HALTERMAN 6800

803627

## ARTICLE XII

### Power of Attorney

**12.  Appointment of General Partner as Attorney-In-Fact**

**12.01 Power of Attorney.**  Each Limited Partner hereby irrevocably constitutes and appoints the General Partner and each successor or additional General Partner, his true and lawful attorney-in-fact, with full power of substitution, and with each General Partner having full power and authority in his name, place, and stead to execute, acknowledge, deliver, swear to, file, and record at the appropriate public offices such documents as may be necessary or appropriate to carry out the provisions of this Agreement, including, but not limited to:

(a) all certificates and other instruments (including, without limitation, counterparts of this Agreement and amendments to the Partnership's Certificate of Limited Partnership), and any amendment thereof, which the General Partner deems appropriate to qualify or continue the Partnership as a limited partnership in any jurisdiction in which the Partnership may conduct business;

70                    HALTERMAN 6801

800822

(b)  all certificates and other instruments which the General Partner deems appropriate in order to continue the operation of the business of Partnership;

(c)  any and all documents necessary to carry out the terms of this Agreement;

(d)  all instruments which the General Partner deems appropriate to reflect a change or modification of the Partnership in accordance with the terms of this Agreement; and

(e)  all conveyances and other instruments which the General Partner deems appropriate to reflect the dissolution and termination of the Partnership.

12.02 <u>Survival of Power of Attorney</u>.  The appointment by all Limited Partners of the General Partner and each successor or additional General Partner as attorneys-in-fact shall be deemed to be a power coupled with an interest, in recognition of the fact that each of the Partners under this Agreement will be relying upon the power of the General Partner to act as contemplated by this Agreement in any filing and other action by the General Partner on behalf of the Partnership and shall to the fullest extent permitted by applicable law, survive the Bankruptcy, death, or incompetence

71                        HALTERMAN 6802

803822

of any Partner hereby giving such power and the transfer or assignment of all or any part of the Interest of such Partner.

## ARTICLE XIII
### Admission of Partners

13.  **Admission of Partners**

13.01 The Partners shall be admitted upon the execution of this Agreement.

## ARTICLE XIV
### Miscellaneous

14.  **General Provisions**

14.01    **Amendments.**

(a) Except as otherwise provided in this Agreement, no amendments of this Agreement shall be binding unless such amendment is proposed in writing by the General Partner, and the written consent of Limited Partners holding more than 50% of the Partnership Interests is obtained with respect thereto; provided, however, that (i) no such amendment may enlarge the obligations or diminish the rights of any Limited Partner under

72

HALTERMAN 6803

800822

this Agreement, modify the distributions of cash or allocations of Partnership Profits, Losses and income tax credits, or modify the method of determining distributions of cash or allocations of Profits, Losses and income tax credits without the written agreement of all Limited Partners adversely affected thereby; and (ii) no such amendment may modify the purposes of the Partnership without the written agreement of all Partners.

(b) Any provision to the contrary contained herein notwithstanding, the General Partner may, without the consent of the Limited Partners, make such amendments to this Agreement which are necessary (i) to add to the representations, duties or obligations of the General Partners, and (ii) to cure any ambiguity, to correct or supplement any provision herein which may be inconsistent with any other provisions herein, or to make any other provisions with respect to matters or questions arising under this Agreement which will not be inconsistent with the provisions of this Agreement; provided, however, that no amendment shall be adopted pursuant to this subparagraph 14.01(b) unless the adoption thereof (i) is for the benefit of, or not adverse to, the interests of the Limited Partners, (ii) is consistent with subparagraph 7.01(a) (iii) does not affect the distribution of cash to or the allocation of Profits, Losses and income tax deductions among the Limited Partners (as a class), or between the Limited Partners (as a class) and the General Partner (as a class) (except as provided

73                                HALTERMAN 6804

803822

at Paragraph 5.07), and (iv) does not affect the limited liability of the Limited Partners or the status of the Partnership as a partnership for Federal income tax purposes.

14.02    **Indulgences, Etc.** Neither the failure nor any delay on the part of any party hereto to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude any other or further exercise of the same or of any other right, remedy, power, or privilege, nor shall any waiver of any right, remedy, power, or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power, or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

14.03    **Controlling Law.** This Agreement shall be governed by, and construed in accordance with, the substantive laws of the Commonwealth of Pennsylvania notwithstanding any conflict-of-law doctrines of such state or other jurisdiction to the contrary.

74

HALTERMAN 6805

803822

14.04    <u>Notices</u>.

(a)  All notices given hereunder shall be in writing and shall be deemed given when hand delivered against receipt or upon the third day after the deposit of such notice in the United States mail, registered or certified, return receipt requested, addressed to the party for whom intended at the address shown for such party on the Partnership's books.

(b)  Any party may alter his address on the Partnership's books by giving notice thereof to the General Partner, but such change shall not be effective unless and until such notice is actually received by the General Partner.

14.05    <u>Binding Nature of Agreement</u>.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, Personal representatives, successors, and assigns, except that no party may assign or transfer its rights or obligations under this Agreement in any manner other than as provided in this Agreement.

14.06    <u>Execution in Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and

75

HALTERMAN 6806

800822

the same instrument.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

14.07    **Provisions Separable.**  The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

14.08    **Entire Agreement.**  This Agreement contains the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained.   The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.  This Agreement may not be modified or amended other than by an agreement in writing.

14.09    **Paragraph Headings.**  The paragraph headings in this Agreement are for convenience of reference only; they form no part of this Agreement and shall not affect its interpretation.

76

HALTERMAN 6807

803822

14.10    **Gender, Etc.** Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.

14.11    **Number of Days.** In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays, and holidays; provided, however, that if the final day of any time period falls on a Saturday, Sunday, or federal holiday, then the final day shall be deemed to be the next day which is not a Saturday, Sunday, or federal holiday.

14.12    **Interpretation.** No provision of this Agreement is to be interpreted for or against any party because that party or that party's legal representative drafted such provision.

14.13    **Corporate Authority.** Any corporation signing this Agreement represents and warrants that the execution, delivery and performance of this Agreement by such corporation has been duly authorized by all necessary corporate action.

14.14    **Third Party Beneficiaries.** Notwithstanding anything to the contrary contained herein, no provision of this Agreement is intended to benefit any party other than the Partners

77

HALTERMAN 6808

800122

hereto and their permitted successors and assigns and the Partnership and shall not be enforceable by any other party.

14.15    **Waiver of Partition.** Each party does hereby waive any right to partition or the right to take any other action which might otherwise be available to such party outside of the provisions of this Agreement for the purpose of severing his relationship with the Partnership or such party's interest in the properties held by the Partnership from the interests of the other Partners until the end of the term of both this Partnership and any successor partnership formed pursuant to the terms hereof.

14.16.    **Securities Laws.** The Partnership Interests evidenced by this Agreement have not been registered under the Securities Act of 1933, as amended, or state securities laws. The Partnership Interests may not be sold or offered for sale in the absence of an effective registration statement for the Partnership Interests under the Securities Act of 1933, as amended, and such state laws as may be applicable, or delivery to the Partnership of an opinion of counsel satisfactory to the Partnership that such registration is not required. Partnership Interests acquired by Pennsylvania residents may not be sold or transferred except in accordance with Section 203(d) of the Pennsylvania Securities Act of 1972 and the regulations thereunder. Additional restrictions are set forth in this Agreement.

78

HALTERMAN 6809

## ARTICLE XV
### Meetings

15.  **Meetings.**

15.1  **General Partner.**  Meetings of the Partners may be called by the General Partner or by Limited Partners holding more than fifty (50%) percent of the Units owned by all Limited Partners for action on any matter on which the Limited Partners are entitled to vote under this Agreement.  A list of the names and addresses of all Limited Partners shall be maintained as a part of the books and records of the Partnership and shall be made available on request to any Limited Partner or his representative at his cost.  Within ten (10) days of receipt by the General Partner of notice from the requisite percentage of Limited Partners calling for a meeting and stating the purposes of the meeting, the General Partner shall give notice to all Partners of the meeting and its purpose.  Such meeting shall be held on a date not less than fifteen (15) days after receipt of such request, at a time and place determined by the General Partner.  No notice of the time, place or purpose of any such meeting need be given to any Limited Partner who attends such meeting in Person or is represented by proxy or to any Limited Partner who waives such notice.

79

HALTERMAN 6810

60382.2

15.2  **Limited Partners**.  For the purpose of determining the Limited Partners entitled to vote at any meeting of the Partnership or any adjournment thereof, the General Partner or the Limited Partners requesting such meeting may fix, in advance, a date as the record date as of which such determination shall be made.  Such date shall not be more than fifty (50) days nor less than ten (10) days before any such meeting.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first above written.

CEC G.P., Inc.
General Partner

Attest:

BY:_____
   Name:
   Title:

_____

BY:_____
   Robert L. Bast,
Witness _____   Limited Partner

Elizabeth B. Brennan Trust,
Limited Partner

BY:_____
   W. Roderick Gagné
Witness _____   Solely  in  his  capacity  as
trustee  of  the  Elizabeth  B.
Brennan Trust

80

HALTERMAN 6811

803822

_____    BY: _____
Witness                          Robert L. Bast
                             Solely in his capacity as
                             trustee of the Elizabeth B.
                             Brennan Trust


_____    BY: _____
Witness                          Elizabeth B. Brennan
                             Solely in her capacity as
                             trustee of the Elizabeth B.
                             Brennan Trust

81

HALTERMAN 6812

80082.2

15.2  **Limited Partners.** For the purpose of determining the Limited Partners entitled to vote at any meeting of the Partnership or any adjournment thereof, the General Partner or the Limited Partners requesting such meeting may fix, in advance, a date as the record date as of which such determination shall be made.  Such date shall not be more than fifty (50) days nor less than ten (10) days before any such meeting.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first above written.

CEC G.P., Inc.
General Partner

Attest:

*Linda McLoughlin*

BY: *Andrew Yao*
    Name: Andrew N. Yao
    Title: President of CEC G.P., Inc.

_____
Witness

BY: *Robert Bast*
    Robert L. Bast,
    Limited Partner

Elizabeth B. Brennan Trust,
Limited Partner

*Samantha Holmes*
Witness

BY: _____
    W. Roderick Gagné
    Solely in his capacity as trustee of the Elizabeth B. Brennan Trust

80

HALTERMAN 6813

803822

_____
Witness

BY: _____
    Robert L. Bast
**Solely in his capacity as
trustee of the Elizabeth B.
Brennan Trust**

_____
Witness

BY: _____
    Elizabeth B. Brennan
**Solely in her capacity as
trustee of the Elizabeth B.
Brennan Trust**

81

HALTERMAN 6814

40382.2

EXHIBIT A

LIST OF PARTNERS, THEIR RESPECTIVE INTEREST AND INITIAL CAPITAL CONTRIBUTIONS.

|     |                                                                                                                              | Percentage Interest | Initial Capital Contribution |
| --- | ---------------------------------------------------------------------------------------------------------------------------- | ------------------- | ---------------------------- |
| 1.  | General Partner<br><br>CEC GP, Inc.<br>Andrew N. Yao, President<br>3508 Market Street<br>Suite 202<br>Philadelphia, PA 19104-3379 |                     | $50,000                    |
| 2.  | Limited Partners *                                                                                                            |                     |                              |
|     | Robert L. Bast, Esquire<br>Reed, Smith, Shaw & McClay<br>2500 One Liberty Place2<br>Philadelphia, PA 19103                    | 47.5%               | * 475,000                    |
|     | Elizabeth B. Brennan Trust<br>T/U/D 8/6/83<br>c/o W. Roderick Gagné, Esquire<br>Clark, Ladner, Fortenbaugh & Young<br>One Commerce Square - 22nd Floor<br>2005 Market Street<br>Philadelphia, PA 19103 | 47.5%               | * 475,000                    |

\* Consist of $250,000 in cash and a demand note for $225,000.

HALTERMAN 6815