16**030.1**



## LIMITED PARTNERSHIP AGREEMENT

## ONE SUMMIT PLACE PARTNERS, L.P.

This Limited Partnership Agreement (this "Agreement") dated June 1, 1994, by and among ONE SUMMIT PLACE G.P., INC., a Delaware corporation (the "General Partner"), ROBERT L. BAST, a Pennsylvania resident, W. RODERICK GAGNE, ROBERT L. BAST and PHILIP B. GAGNE, as Trustees under the Item 3.4 of the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o Philip B. Gagné, and W. RODERICK GAGNE and ROBERT L. BAST, as Trustees under Item 3.4 of the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o W. Roderick Gagné (the "Limited Partners"), and any persons who by executing the Signature Pages hereto may become parties to this Agreement as Limited Partners.

### Recitals:

WHEREAS, the General Partner and the Limited Partners hereby form a Limited Partnership to be governed by the Delaware Revised Uniform Limited Partnership Act; and

WHEREAS, this Partnership is being formed to acquire and hold title to that certain parcel of real estate and the improvements thereon known as One Summit Place located in Branford, Connecticut.

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE I

I. **NAME AND PRINCIPAL PLACE OF BUSINESS**

1.01 <u>Formation.</u> The Parties hereby form a limited partnership pursuant to the Limited Partnership Act of the State of Delaware.

1.02 <u>Name.</u> The name of the Partnership is ONE SUMMIT PLACE PARTNERS, L.P., or such other name as the General Partner shall hereafter designate in writing to the Limited Partners.

1.03 <u>Principal Place of Business.</u> The Partnership shall initially maintain its principal place of business at 3508 Market Street, Suite 202, Philadelphia, Pennsylvania 19104. The Partnership may relocate such principal place of business to such other place or places as the General Partner may from time to time designate in writing to the Limited Partners.

1.04 <u>Term.</u> The term of the Partnership shall continue until January 1, 2025 unless the Partnership is sooner dissolved in accordance with the provisions of this Agreement or by law.

1.05 <u>Business and Purpose.</u> The business and purpose of the Partnership shall be to engage in any lawful act or activity in which a partnership may engage in, including, without limitation, to engage generally in real estate investment, development and leasing.

## ARTICLE II

2. **DEFINED TERMS**

The following defined terms used in this Agreement shall have the meanings specified below, in addition to any other defined terms used herein:

2.01 "<u>Act</u>" means the Revised Uniform Limited Partnership Act as adopted and enacted in the State of Delaware.

2.02 "<u>Affiliate</u>" means (1) any person directly or indirectly controlling, controlled by or under common control with another person, (2) any officer, director or partner of any such person, and (3) if such other person is an officer, director or partner, any company or partnership for which such person acts in any such capacity. For the purposes of this definition, the term "control" means the control or ownership of 10% or more of the beneficial interest in the person to whom reference is made.

2.03 "<u>Agreement</u>" means this Agreement of Limited Partnership as amended from time to time.

2.04 "<u>Bankruptcy</u>" means the filing of a voluntary case in bankruptcy under the federal bankruptcy law and, in addition, any other status constituting bankruptcy within the meaning of the Act.

2.05 "<u>Capital Account</u>" means the individual capital account maintained for each Partner by the Partnership's certified public accountants, and shall be equal to (1) the Partner's capital contributions made as set forth in Article IV, (2) increased by the Partner's share of Profits under Article V, and (3) decreased by the Partner's share of Losses under Article V and by all distributions to the Partner under Article VI. The Capital Account of each Partner shall also be increased by his, her or its allocable share of the income of the Partnership exempt from federal income tax and decreased by his, her or its allocable share of any expenditures of the Partnership not deductible in computing his, her or its taxable income for federal income tax purposes and not properly added to the tax basis of any Partnership asset (the

2

189039.1

allocable share to be determined in the same manner as the Partner's share of Profits and Losses allocated under Paragraph 5.01 at the time the expenditure is paid or incurred).

If a Partnership Interest is assigned or transferred under Article IX, the Capital Account of the transferee with respect to such Partnership Interest shall be the same as the Capital Account of the transferor, adjusted to reflect any Profits or Losses allocated to the transferee under Article V as a result of the transfer.

A person who acquires a Partner's entire interest in the Partnership shall have the same Capital Account as the transferor-Partner (determined before taking into account any adjustment required by the election described in Paragraph 11.02 of this Agreement). If a Partner transfers a portion of his, her or its Interest in the Partnership, the Capital Account of the transferor immediately before the transfer shall be divided between the transferor and the transferee (before taking into account any adjustment required by the election described in Paragraph 11.02 of this Agreement) in proportion to the Interest transferred such that the Capital Account of the transferee immediately after the transfer shall be equal to the Capital Account of the transferor attributable to the Interest transferred immediately before the transfer.

In the case of a sale, exchange, or transfer by death of an Interest in the Partnership with respect to which the election described in paragraph 11.02 is in effect, the capital account of the transferee-Partner shall be further adjusted as provided therein. In the case of a distribution of property (other than cash), other than in liquidation of the Partnership, the Partners' Capital Accounts shall be adjusted to reflect any adjustments to the basis of Partnership property if an election described in Paragraph 11.02 of this Agreement is in effect.

Each Partner's Capital Account shall also reflect any adjustment described in Paragraph 10.02.

Notwithstanding anything to the contrary contained herein, in all events, Capital Accounts shall be determined and maintained, in general, in accordance with Treasury Regulation Section 1.704-1(b), and in particular, Section 1.704-1(b)(2)(iv).

2.06 "Cash from Dispositions" means the net cash proceeds realized by the Partnership from Dispositions, and any insurance proceeds received by the Partnership directly from any insurance policy insuring against physical damage of Partnership assets, after deduction of all expenses incurred in connection therewith, including brokerage commissions and payment of any underlying

3

GBT004246

indebtedness related to the assets sold or disposed of, and less such amounts for repair or replacement of Partnership assets, and reserves, as are deemed reasonably necessary by the General Partner, for future operations of the Partnership.

2.07 "Cash from Operations" means all cash funds derived by the Partnership generated directly or arising from its operations, including any and all distributions of working capital reserve or partner capital, other than Cash from Dispositions or after deduction of all Operating Expenses.

2.08 "Closing Documents" mean all instruments and documents to be executed in connection with the purchase of a Unit or Units.

2.09 "Code" means the Internal Revenue Code of 1986, as amended.

2.10 "Disposition" means the sale, exchange or other disposition, whether voluntary or involuntary, of any or substantially all of the assets of the Partnership in a manner that is outside of the scope of the day-to-day affairs of the Partnership and any proceeds from a financing or refinancing of the Property or the Partnership's assets received which is outside of the scope of the day-to-day affairs of the Partnership.

2.11 "Fiscal Year" means the year ending December 31.

2.12 "General Partner" means One Summit Place G.P., Inc., a Delaware corporation formed on June 23, 1994. The General Partner, however, may, subject to the provisions of Paragraph 9.02 hereof appoint a replacement/successor General Partner with notice and the written consent of the Limited Partners. In order to appoint such a replacement/successor General Partner, the present General Partner must first obtain an opinion of counsel to the effect that: (i) the appointment of such replacement/successor General Partner will not result in a termination of the Partnership for the purposes of Section 708 of the Code and (ii) that the appointment of such replacement/successor General Partner will not result in the Partnership being taxed as a corporation under Section 7701 of the Code. Furthermore, the term "General Partner" for all purposes hereunder shall include all successors and assigns, trustees, agents, representatives, heirs, executors or any other entities, persons or agencies appointed to act on behalf of, or in a representative capacity of the General Partner.

2.13 "Limited Partner" means Robert L. Bast, W. Roderick Gagné, Robert L. Bast and Philip B. Gagné, as Trustees under Item 3.4 of the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o Philip B. Gagné, and W. Roderick Gagné and Robert L. Bast, as Trustees under Item 3.4 of

4

GBT004247

180039.1

the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o W. Roderick Gagné, in their capacity as Limited Partners of the Partnership and any other person admitted to the Partnership as a Limited Partner or substituted Limited Partner.

2.14 "Liquidator" means the General Partner or, if there is none at the time of Liquidation of the Partnership, such other Person who may be appointed in accordance with applicable law and who shall be responsible for taking all action necessary or appropriate to wind up the affairs of, and distribute the assets of the Partnership upon its dissolution.

2.15 "Minimum Gain" means the excess of the outstanding amount of any Non-Recourse Debt of the Partnership over the adjusted basis to the Partnership of the asset or assets securing such indebtedness. Notwithstanding anything to the contrary contained in this Agreement, the term "Minimum Gain" shall have that meaning ascribed to it in Section 1.704-2(d) of the applicable Treasury Regulations.

2.16 "Non-Recourse Debt" means all debts of the Partnership secured by assets or Property of the Partnership as to which no partner thereof is personally liable and which are treated as non-recourse indebtedness for purposes of Sections 704(b) and 752 of the Code and the Treasury Regulations thereunder.

2.17 "Operating Expenses" means the operating expenditures (whether or not expended for accounting or tax purposes) of the Partnership including the payments of interest and principal on any Partnership debt but shall not include cost recovery or depreciation deductions, amortization or any other non-cash charges. Operating Expenses shall also include reasonable reserves established by the General Partner, in its discretion, for future Partnership operations and the repair or replacement of Partnership assets, but shall be reduced by any cash released from such reserves.

2.18 "Partner" means any General Partner or Limited Partner.

2.19 "Partnership Interest" or "Interest" means the undivided fractional interest of each Partner in the profits, losses, credits, distributions, capital and assets of the Partnership. Each Partner shall have the Partnership Interest indicated opposite his, her or its name in Exhibit A, adjusted as provided in this Agreement.

If a Partner transfers all or a part of his Interest in the Partnership (whether with or without consideration), the transferor-Partner and the transferee-Partner shall each have such

5

GBT004248

160039.1

Partnership Interest as they may agree upon, provided that the sum of such Partnership Interests shall equal the percentage Interest of the transferor-Partner immediately before the transfer. All such transfers, however, must be undertaken in conformity with the provisions of this Agreement.

If the Partnership acquires the Interest of a Partner, the Partnership Interest of each remaining Partner shall be appropriately increased.

2.20 "Person" means any natural person, corporation, partnership, trust or other entity.

2.21 "Profits" or "Losses" means, at all times during the existence of the Partnership, the net income or net loss of the Partnership for each Fiscal Year or portion thereof, whether directly from its operations, if any, as calculated in accordance with the methods for federal income tax purposes determined by the Partnership's certified public accountants, including, where the context requires, each item of Partnership income, gain, loss or deduction.

2.22 "Property" means any real property owned or later acquired by the Partnership, which initially shall consists of the real estate more fully described in Exhibit B attached hereto.

2.23 "Term" means the term of the Partnership as set forth in Paragraph 1.04.

## ARTICLE III

3. PURPOSES AND BUSINESS OF THE PARTNERSHIP

3.01 Purposes of the Partnership. The principal business of the Partnership is to engage in real estate investment, development and leasing, as well as any lawful act or activity in which a partnership may engage, including, but without limitation, to engage generally in any and all phases of the business of owning, holding, managing, controlling, acquiring, purchasing, disposing of or otherwise dealing in or with any interests or rights in any real or personal property, directly or through one or more other partnerships or other entities or arrangements.

The business objectives of the Partnership are as follows:

(1) to preserve and protect the Partnership's capital, to the best extent possible;

6

GBT004249

168038.1

8.03 **Certain Rights of Limited Partners.** The Limited Partners shall have the following rights, powers, privileges, duties, and liabilities:

(1) The Limited Partners shall have the right to have full and true information of all things affecting the Partnership and shall be entitled to such reports as are set forth in Article XI hereof.

(2) The Limited Partners shall receive from the Partnership their shares of the allocable tax credits or distributions in the manner and at the times provided for in this Agreement.

(3) The Limited Partners shall not have the right to demand payment of the balance in their Capital Accounts at any time. No Limited Partner shall have priority over any other Limited Partner either as to the return of their Capital Accounts or as to Profits or Losses, income tax deductions or distributions. No Limited Partner shall have the right to bring an action for partition against the Partnership.

(4) The Limited Partners shall have the right to a complete list of names and addresses and interests of all Limited Partners as set forth in the records of the Partnership.

ARTICLE IX

9. TRANSFER OF PARTNERSHIP INTERESTS

9.01 **Prohibited Transfers.** The Partners may not sell, assign, transfer or otherwise dispose of, or pledge, hypothecate or in any manner encumber, his, her or its Partnership Interest or any part thereof except as permitted in this Article IX, and any act in violation of this Paragraph 9.01 shall not be binding upon, or recognized by, the Partnership regardless of whether the General Partner shall have knowledge thereof.

9.02 **General Partner.**

(1) The General Partner may appoint a replacement/successor General Partner by providing the Limited Partners with thirty (30) days advance written notice and receiving the written consent of a majority of the Interests of the Limited Partners, which consent shall not be unreasonably withheld. In order to appoint such a replacement/successor General Partner, the present General Partner must obtain an opinion of counsel to the effect that: (a) the appointment of such replacement/successor General Partner will not result in a termination of the Partnership

21

186039.1

186039.1

for purposes of Section 708 of the Code; and (b) that the appointment of such replacement/successor General Partner will not result in the Partnership being taxed as a corporation under Section 7701 of the Code. Furthermore, no General Partner may voluntarily withdraw without the consent of those Limited Partners holding a majority of the Partnership Interests, unless said withdrawing General Partner locates a suitable successor General Partner: (i) whose net worth (as determined by the General Partner) is sufficient to operate the Partnership, taking into account the operational expenses of the Partnership, as well as cash deficits contemplated by the Partnership within a two (2) year period, however, in no event whose net worth is less than the net worth required under the Code, Treasury Regulations promulgated under Section 7701 of the Code or other applicable authoritative guidance in order for the Partnership to be characterized as a Partnership, rather than an association taxable as a corporation; and (ii) who executes a certificate addressed to the Limited Partners evidencing its intention to assume all of those liabilities and responsibilities of a General Partner as contained within this Partnership Agreement, unless otherwise modified and such modification is accepted by those Limited Partners holding a majority of the Partnership Interests. Although such withdrawal, retirement or resignation in breach of this Subparagraph 9.02(1) may not be enjoined, such General Partner shall be liable for actual damages incurred by the Partnership as a result of such breach.

(2) The General Partner shall be removed and replaced by a successor selected by those Limited Partners holding a majority of the Limited Partnership Interests within one hundred and fifty (150) days of its: (a) material (and after notification, continuing) breach of any of the terms of this Agreement; (b) insanity or other incapacity (if an individual); (c) death (if an individual); (d) dissolution; or (e) Bankruptcy.

(3) To the extent a replacement/successor General Partner is appointed upon the vote of those Limited Partners holding a majority of the Partnership Interests, the Limited Partners upon such vote, may grant to such replacement/successor General Partner any interest in the Partnership they deem fit, such Interests to first be derived from the existing Interests of the withdrawing General Partner. To the extent the withdrawing General Partner has a remaining interest in the Partnership thereafter, such Interest shall be converted to that of a substitute Limited Partner.

9.03 **Limited Partners.**

(1) The General Partner may (i) pursuant to this Article IX, admit as a substitute Limited Partner any successor in

22

GBT004265

168039.1

13.11   **Number of Days.**  In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays, and federal holidays; provided, however, that if the final day of any time period falls on a Saturday, Sunday, or federal holiday, then the final day shall be deemed to be the next day which is not a Saturday, Sunday, or federal holiday.

13.12   **Interpretation.**  No provision of this Agreement is to be interpreted for or against any party because that party or that party's legal representative drafted such provision.

13.13   **Corporate Authority.**  Any corporation signing this Agreement represents and warrants that the execution, delivery and performance of this Agreement by such corporation has been duly authorized by all necessary corporate action.

13.14   **Third Party Beneficiaries.**  Notwithstanding anything to the contrary contained herein, no provision of this Agreement is intended to benefit any party other than the Partners hereto and their permitted successors and assigns and the Partnership and shall not be enforceable by any other party.

13.15   **Waiver of Partition.**  Each party does hereby waive any right to partition or the right to take any other action which might otherwise be available to such party outside of the provisions of this Agreement for the purpose of severing his, her or its relationship with the Partnership or such party's interest in the Property held by the Partnership from the interests of the other Partners until the end of the Term of both this Partnership and any successor Partnership formed pursuant to the terms hereof.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first above written.

GENERAL PARTNER:            ONE SUMMIT PLACE G.P., INC.

ATTEST:

_____     BY: _____
Secretary                        Andrew Yao, President

[CORPORATE SEAL]            [SIGNATURES CONTINUED ON FOLLOWING PAGE]

36

GBT004279

180030.1

LIMITED PARTNERS:

_____     _____(Seal)
Witness                     Robert L. Bast

_____
Witness

_____     _____(Seal)
                            W. Roderick Gagné, Co-Trustee
                            under Item 3.4 of the
                            Elizabeth B. Brennan Trust dated
                            8/6/83 (as amended and restated
                            in its entirety on 1/12/94) f/b/o
                            Philip B. Gagné

_____     _____
Witness                     Robert L. Bast, Co-Trustee

_____
Witness

_____     _____(Seal)
                            W. Roderick Gagné, Co-Trustee
                            under Item 3.4 of the
                            Elizabeth B. Brennan Trust dated
                            8/6/83 (as amended and restated
                            in its entirety on 1/12/94) f/b/o
                            W. Roderick Gagné

_____     _____
Witness                     Robert L. Bast, Co-Trustee

37

GBT004280

180008.1

EXHIBIT A

**General Partner:**

| | | |
|---|---|---|
| One Summit Place G.P., Inc. | 33% | $ 20,000 |

**Limited Partners:**

| | | |
|---|---|---|
| Robert L. Bast | 33% | $ 20,000 |
| Philip B. Gagné, Robert L. Bast and W. Roderick Gagné, Co-Trustees under Item 3.4 of the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o Philip B. Gagné | 17% | $ 10,000 |
| Robert L. Bast and W. Roderick Gagné, Co-Trustees under Item 3.4 of the Elizabeth B. Brennan Trust dated 8/6/83 (as amended and restated in its entirety on 1/12/94) f/b/o W. Roderick Gagné | 17% | $ 10,000 |

38

GBT004281