# LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (the "Agreement"), made as of the 5th day of March, 2002, is between STUDENT FINANCE CORPORATION, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania (hereinafter "Borrower"), and Robert L. Bast, who is a resident of Pennsylvania (hereinafter called "Lender").

1.    **AMOUNT AND TERMS OF LOAN AND NOTE.**

    1.1    <u>Term and Amount of Loan</u>.  Subject to the terms and conditions hereof, Lender agrees to lend to Borrower the aggregate principal amount of Two Million Dollars ($2,000,000) at the interest rate and upon the terms specified in Section 1.5 hereof (the "Loan") for a period ending on the Maturity Date.

    1.2    <u>Debt Instrument</u>.  Borrower's obligation to Lender to pay the Loan will be evidenced by the Borrower's Secured Note in the principal amount of the Loan, which shall be delivered substantially in the form of Exhibit A, or in such form and content acceptable to Lender (which, with all amendments, renewals, extensions and substitutions thereof is herein referred to as the "Debt Instrument"). The principal amount of the Loan, including accrued interest thereon, shall be paid in accordance with the Debt Instrument.

    1.3    <u>Method Delivery of Loan Proceeds</u>.  Lender shall deliver by wire transfer or check the proceeds of the Loan made pursuant to this Agreement to such account as designated by Borrower to Lender and Borrower shall provide Lender with wire instructions.

    1.4    <u>Statement of Payments</u>.  Borrower shall render to Lender upon request from time to time statements of all principal, interest, expenses and costs owing by Borrower to Lender in connection with the Loan.

    1.5    <u>Commitment Fees, Interest Rates and Payment Dates</u>.  Interest only as determined herein shall be payable on the 20th of each month. The entire unpaid principal amount of the Loan, together with any and all interest and other amounts payable hereunder, shall be due and payable on the Maturity Date.

    (a)    The Loan shall bear interest from the date hereof to the Maturity Date on the unpaid principal amount thereof at a rate per annum equal to twelve percent (12%).

    (b)    The Loan shall bear interest after any event of default until payment in full thereof (as well as after judgment as before judgment) at a rate per annum equal to five percent (5%) above the rate which would otherwise have applied to the Loan, as specified in section 1.5 (a).

    (c)    Interest payable under Section 1.5(b) shall be payable on demand.

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056802

(d)    Together with each prepayment pursuant to Section 1.8, and upon repayment of the Loan, the Borrower shall pay to the Lender a Commitment Fee equal to (i) Six Percent (6%) of the principal amount so paid if such amount is paid within sixty (60) days; (ii) eight percent (8%) of the amount so paid if such amount is paid after sixty (60) days but before ninety-one (91) days; and ten percent (10%) of the amount so paid if such amount is paid after ninety-one (91) days.

1.6    <u>Use of Proceeds</u>.  The Loan shall be used solely to finance the business and operating needs of Borrower in the ordinary course of Borrower's business.

1.7    <u>Late Charge</u>.  Lender may collect a "late charge" equal to five percent (5%) of any installment of principal or interest which is not paid on or before the date ten (10) days following the due date thereof, as compensation for the additional expense involved in processing delinquent payments.  The collection of any such "late charge" shall not be deemed a waiver by Lender of any of its rights, powers or remedies herein or in any of the Loan Documents.

1.8    <u>Optional Prepayments</u>.  Borrower may from time to time prepay the Loan, in whole or in part, upon at least one Business Day notice to Lender, specifying the date and amount of prepayment in multiples of Ten Thousand Dollars ($10,000.00); each such prepayment shall be accompanied by payment of unpaid interest thereon and any accrued Commitment Fee payable under Section 1.5.

1.9    <u>Payments</u>.  All payments (including prepayments) to be made by or on behalf of Borrower on account of principal, interest and fees shall be made without set off or counterclaim to Lender, in lawful money of the United States of America and in immediately available funds.  If any payment hereunder becomes due and payable on a Saturday, Sunday or day on which commercial banks in the City of Philadelphia are authorized or required to be closed, such payment shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest thereon shall be payable at the then applicable rate during such extension.

2.    **CONDITIONS PRECEDENT TO THE LOAN.**

2.1    <u>Conditions to the Loan</u>.  The obligation of Lender to make the Loan hereunder is subject to the satisfaction of the following conditions precedent:

(a)    <u>Debt Instrument</u>.  Lender shall have received the Debt Instrument and all required Security Documents, each conforming to the requirements hereof and duly executed by an officer of Borrower (or other appropriate signatory).

(b)    <u>Corporate Proceedings</u>.  Lender shall have received a copy of the resolutions of the Board of Directors of Borrower authorizing the execution, delivery and

-2-

PEPPER 056803

performance of this Agreement and each of the Loan Documents to which it is a party and the borrowings provided for herein, certified by the secretary or an assistant secretary of Borrower, as of the date hereof, which certificate shall state that the resolutions thereby certified have not been amended, modified, revoked or rescinded as of such date.

    (c) <u>Incumbency Certificates</u>.  Lender shall have received a certificate of the secretary or an assistant secretary of Borrower, dated the date hereof, as to the incumbency and signature of each of the officer or officers signing each of the Loan Documents to which Borrower is a party and any other certificates or other document to be delivered pursuant thereto, together with evidence of the incumbency of such secretary or assistant secretary.

    (d) <u>Financial Information</u>.  Lender shall have received a copy of each of such financial statements, forecasts and projections as Lender may have requested.

    (e) <u>Recording and Filings</u>.  Any documents (including, without limitation, financing statements) required to be filed, registered or recorded under any of the Loan Documents in order to maintain, in favor of Lender a perfected security interest in the Collateral with respect to which a security interest may be perfected by a filing under the Uniform Commercial Code or any other applicable law shall have been delivered to Lender, as the case may be, for filing, registration and recording in each office in each jurisdiction required in order to maintain in favor of Lender a perfected lien on the respective Collateral described therein.

    (f) <u>Custody and Servicing Agreements</u>.  Lender and Borrower shall have entered into the Custody Agreement and the Servicing Agreement along with the other signators thereto substantially in the forms of Exhibit B and Exhibit C attached or in such other forms as is acceptable to Lender and Lender's counsel.

    (g) <u>Good Standing Certificates</u>.  Lender shall have received a Good Standing Certificate from the State of Pennsylvania from Borrower.

    (h) <u>Consent of Borrower's Current Lenders</u>.  Lender shall have received the consent of Borrower's current lenders to this Loan and the Lender's receipt of the security interest in the Student Loans.

    (i) <u>Guaranty</u>.  Lender shall have received a Guaranty substantially in the form of Exhibit D or in such other form as is acceptable to Lender and Lender's counsel, which Guaranty has been duly executed by Andrew N. Yao and Lore N. Yao (the "Guaranty").

PHLEGAL: #1226379-v1 (Q@@3011.WPD)

PEPPER 056804

3.    **COLLATERAL.**

3.1    <u>Security Interest</u>.  Borrower hereby grants to Lender, in *pari passu* with the lenders set forth on Schedule 4.3 in proportion to the total debt set forth thereon, a first priority lien and security interest in and to all assets of Borrower including any a first priority lien on and security interest in and to the Student Loans listed in Exhibit E which shall be delivered to Custodian (as defined in the Custody Agreement) on the date hereof and the proceeds thereof, all as provided herein and as set forth in the Custody Agreement and any other Security Document and/or other agreement, if any, issued in connection with this Agreement as security for the prompt payment as and when due of all amounts owing under the Loan Documents including any renewals, extensions and/or modifications thereof, together with all other existing and future liabilities and obligations of Borrower to Lender (including without limitation any debt, liability or obligation owing from Borrower to others which Lender may obtain by assignment or otherwise) and out of whatever transactions arising, as well as Lender's costs of collection and costs of curing any Event of Default as may be advanced by Lender at Lender's sole discretion, including Lender's court costs and attorneys' fees (all of the foregoing are hereinafter collectively called the "Obligations").  All of the property in which Lender is granted a lien and security interest in Section 3.1 is referred to herein as the "Collateral".

3.2    <u>Collateral and Further Assurances</u>.  Borrower agrees to execute such security agreements, mortgages, assignments, collateral agreements, financing statements, powers, and any other agreements, instruments, statements and documents that Lender may deem necessary or desirable to perfect and maintain perfected liens and security interests in the Collateral, all as Lender may request from time to time and at any time.

3.3    <u>Term of Lien</u>.  The Lien and security interests of Lender in and to the Collateral shall continue in full force and effect until all of the Obligations are satisfied in full and the period during which any payment by Borrower is or may be subject to recision, avoidance or refund under the United States Bankruptcy Code (or any similar state or foreign laws) shall have expired, and shall, unless otherwise agreed to by Lender in writing, constitute first liens and security interests.

4.    **BORROWER'S REPRESENTATIONS, COVENANTS AND WARRANTIES.**

To induce Lender to make the Loan, Borrower represents, covenants and warrants and, until all of the Obligations have been satisfactorily performed and/or paid in full, continues to represent, covenant and warrant:

4.1    Borrower's business operations (the "Business") consist of lending, purchasing and financing Student Loans and tuition installment agreement or educational payment plans.

-4-

PEPPER 056805

4.2    The Business will be continued and the proceeds of the Loan will be used solely in connection with the Business for the purpose of financing loans to students/customers of Borrower or enable Borrower to sell the Student Loans in a securitization transaction.

4.3    Except as set forth on Schedule 4.3 or as permitted under Section 5.1(a), Borrower has no Indebtedness and the Indebtedness set forth on Schedule 4.3 is not in default and no event has occurred that with or without the lapse of time, would cause a default.

4.4    Borrower:

(a)    has heretofore furnished to Lender its most recent Audited Financial Statement and quarterly internal financial statement and will furnish to Lender all annual audited financial statements thereafter as and when released by Borrower's accountants and Quarterly internal Financial Statements all in form satisfactory to Lender, within 120 days of the end of each calendar quarter of Borrower. All financial statements shall be audited in accordance with general accepted accounting principles ("GAAP") unless otherwise agreed to in advance by Lender in writing. The annual financial statements shall be prepared by a certified public accountant selected by Borrower and acceptable to Lender and shall be certified as fairly presenting the financial position and results of operations of the Borrower in accordance with GAAP, consistently applied;

(b)    shall keep accurate and current books and records of the Business and its operations in accordance with GAAP, consistently applied;

(c)    shall promptly provide such financial or other information as Lender may from time to time request to keep itself informed of Borrower's financial condition and affairs;

(d)    shall permit Lender and/or its representatives, to have access, during regular business hours, to Borrower's books and records including correspondence, memoranda and tapes, discs, papers and other documents or transcribed information of any type, of or concerning Borrower, in whatever form and wherever expressed in ordinary or machine language and wherever they may be located, whether on the premises or data processing systems of Borrower or any third party for purposes of examination, reproduction and/or the audit thereof. Lender and/or its representatives may copy and/or reproduce any of Borrower's books and records as hereinabove described;

(e)    shall provide prompt notice to Lender of:

(i)    any default under any obligation of Borrower to any third party and all claims, actions or legal proceedings instituted against Borrower which may have a material adverse effect on Borrower's Business, financial condition or prospects;

-5-

PEPPER 056806

(ii)     the occurrence of any Event of Default or any event which, with notice and/or lapse of time, would constitute an Event of Default;

(iii)     any material change in the Business, properties, financial condition or prospects of Borrower.

Each such notice shall be accompanied by a statement of the chief executive officer of Borrower setting forth the details of and Borrower's plans with respect to the event described on such notice.

4.5     Borrower will cause each guarantor for any of the Obligations to submit to Lender financial statements at such times as Lender may request.

4.6     All financial statements, applications and the like, heretofore, now or hereafter submitted to Lender by or on behalf of the Borrower are true, complete and correct, what they purport to be, and do not and will not contain any material omissions or misstatements, or false or fraudulent information or signatures.

4.7     In the operation of the Business and while any Obligations remain unpaid, Borrower will not, without the prior written consent of Lender, (a) create, incur, assume or in any other manner become liable for or suffer to exist another indebtedness for borrowed money nor make or permit such indebtedness to be outstanding by loan or advance which loan or advance will in any way encumber the Collateral; (b) mortgage, assign, hypothecate, pledge or encumber any of the Collateral; (c) sell, transfer or assign any assets except in the ordinary course of the Business ; (d) become absolutely or conditionally obligated as a sole or joint surety, guarantor or endorser for the obligations of others not a party to this Agreement (other than for collection of deposit in the ordinary course of business); (e) change its name, state of incorporation or articles of incorporation; and (f) enter into any merger, consolidation, liquidation or dissolution or pay or declare any dividends (except as provided in Section 5.4) or distribution on any of its capital stock.

4.8     Borrower will take out, pay for and maintain and keep in effect, adequate fire, public liability, flood (if applicable) and extended coverage, and such other insurance as Lender may from time to time require with such insurers as may be satisfactory to Lender, and will deliver to Lender, at Lender's direction, either insurance policies or certificates of insurance then in force. Borrower hereby irrevocably appoints Lender as its agent to sign and endorse any and all checks, drafts or other instruments, payable to Borrower representing insurance proceeds, and to satisfy any and all claims in connection therewith.

4.9     Borrower will comply with all of the terms and conditions of this Agreement, the Debt Instrument and all other Loan Documents.

4.10     Borrower is duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania, has the power and authority to make and perform its

-6-

PHLEGAL: #1226379 v1 (Q@@3011.WPD)

PEPPER 056807

obligations under this Agreement, the Debt Instrument and the Loan Documents, to conduct its Business as presently conducted and as contemplated to be conducted in the future and to make borrowings hereunder and pledge to and grant Lender liens on and security interests in its assets, and is duly qualified and in good standing in all jurisdictions in which qualification is required. The execution, delivery and performance of Borrower's obligations under the Loan Documents have been duly authorized by all requisite action, corporate or otherwise, and will not violate any provisions of law or regulations, or the Articles of Incorporation or Bylaws of Borrower, or any agreement, indenture, judgment or decree, or instrument to which Borrower is a party or by which it, or its property, is bound, nor cause a default, nor constitute an event which with the giving of notice or passage of time, or both, would constitute a default under any of the foregoing, nor result in the creation of any mortgage, lien, charge, security interest or encumbrance upon any property of Borrower. The Loan Documents, have been duly executed and delivered by Borrower, and are the valid, legal and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms.

4.11    No Event of Default has occurred and no event has occurred, or is about to occur, which with the passage of time or the giving of notice, or both, could be an Event of Default.

4.12    There are no suits at law or in equity, actions, proceedings or investigations now pending or, to the knowledge of Borrower, threatened against Borrower, the adverse result of which would, in any material respect, affect the Business, property, finances or operations of Borrower or in which equitable or injunctive relief has been requested. Borrower will promptly notify Lender in the event that any such suit, proceeding or investigation is instituted or threatened against Borrower.

4.13    Borrower is in compliance with all requirements of applicable law and regulations of any federal, state or local authority having jurisdiction over it, the conduct of its Business, the use of its assets and all premises occupied by it, and Borrower has, and shall maintain, all required licenses, permits, certificates and authorizations necessary for the conduct of the Business.

4.14    Borrower has filed and will file all federal income tax returns and all other tax returns, domestic and foreign, which are required to be filed and has paid or will pay all taxes and other indebtedness when due and will not suffer nor permit any lien or security interest to encumber any of borrower's property, real or personal, now owned or hereafter acquired, except liens: (i) for taxes not delinquent, or being contested in good faith and by appropriate proceedings and for which adequate reserves have been provided, (ii) in favor of Lender; or (iii) of mechanics, artisans or materialmen with respect to obligations not overdue, or being contested in good faith and for which adequate reserves have been provided.

-7-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056808

4.15　No consent, approval or authorization of any person or authority is required in connection with the execution and delivery of the Loan Documents or the transactions herein and therein contemplated, other than has been obtained and delivered to Lender.

4.16　Borrower has received all permits and licenses, and filed all notifications, necessary to carry on its Businesses and operations under and in compliance with all federal, state, or local laws and regulations, including but not limited to those governing the control, removal, spill, release, or discharge of hazardous or toxic wastes, substances and petroleum products (including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), the Resource Conservation and Recovery Act of 1976 ("RCRA"), any and all Pennsylvania State Environmental Laws (the "Environmental Laws").

4.17　Borrower has no knowledge of, and has not given any written or oral notice to the Environmental Protection Agency or any state or local agency regarding any actual or imminently threatened removal, spill, release or discharge of hazardous or toxic wastes, substances or petroleum products on or about properties owned and/or leased by Borrower in connection with the conduct of its businesses and operations.

4.18　Borrower has no knowledge of, and has not received notice that Borrower is potentially responsible for costs of clean-up of, any actual or imminently threatened spill, release or discharge of hazardous or toxic wastes or substances or petroleum products.

4.19　Borrower shall comply with all federal, state or local laws and regulations governing the control, removal, spill, release or discharge of hazardous or toxic wastes, substances and petroleum products (including but not limited to, CERCLA, RCRA and the Federal Water Pollution Control Act Amendment of 1972) (the "Environmental Laws") and shall immediately notify Lender of any actual or alleged failure to comply with or perform, breach, violation or default under any such laws or regulations.

4.20　Borrower is not the subject of any threatened investigation or inquiry by any governmental authority, federal or state, or to any remedial obligations under any federal or state laws pertaining to health or the environment.

4.21　Borrower has taken all steps necessary to determine and has determined that no hazardous substances or solid wastes have been disposed of or otherwise released or discharged in connection with the operation of its businesses in any manner that would violate any applicable environmental laws.

4.22　Borrower will not cause or permit its business to be operated in any manner which would cause a violation of, or do anything or permit anything to be done which will subject Borrower to, any remedial obligations under any applicable environmental laws, and will promptly notify Lender, in writing, of any existing, pending or, to the best of Borrower's knowledge,

-8-

PEPPER 056809

threatened investigation or inquiry by any governmental authority in connection with any applicable environmental laws.

4.23    Upon Lender's reasonable request, at any time and from time to time during the term of this Agreement, Borrower shall provide, at Borrower's sole expense, an inspection or audit of its businesses and operations from an engineering or consulting firm approved by Lender, indicating the presence or absence of Hazardous Substances. If Borrower fails to provide same after (10) days notice, Lender may order same, and Borrower grants to Lender and Lender's employees and agents such access to its operations and a license to undertake the testing. The costs of such tests shall be added to the indebtedness evidenced by the Debt Instrument.

4.24    There has been no material adverse change in the Business, operations, assets, prospects or financial condition of Borrower from that reflected on the financial statements of the Borrower as of December 31, 2000 and December 31, 2001 delivered to Lender pursuant to Section 4.4 hereof.

4.25    No consent or authorization of, or filing with or other act by or in respect of, any Person (including, without limitation, any governmental authority) which has not been heretofore obtained or waived is required in connection with the borrowings hereunder or with the execution, delivery, performance, validity or enforceability of any of the Loan Documents or the consummation of the transactions contemplated hereby or thereby.

4.26    No part of the proceeds of the Loan hereunder will be used for any purpose which violates, or which would be inconsistent with, the provisions of Regulation G, T, U or X of the Board of Governors of the Federal Reserve System as now and from time to time hereafter in effect. Borrower is not engaged nor will it engage, principally, or as one of its important activities, in the business of extending credit for the purpose of "purchasing" or "carrying" any "margin stock" within the respective meanings of each of the quoted terms under said Regulation U or Regulation G.

4.27    No Reportable Event, with respect to Borrower has occurred during the most recent five-year period with respect to any Single Employer Plan which if terminated would result in any liability to Borrower, and each Plan is in compliance in all material respects with the applicable provisions of ERISA and the Code. The present value of all benefits vested under each Single Employer Plan maintained by Borrower (based on those assumptions used to fund such plan) did not, as of the last annual valuation date, exceed the value of the assets of each such Plan. Borrower is not a party to or subject to any Multiemployer Plan.

4.28    Borrower is not an "investment company," or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended. Borrower is not subject to any federal or state statute or regulation which limits its ability to incur indebtedness.

-9-

PEPPER 056810

4.29    Neither the financial statements nor any of the Loan Documents nor any other certificate or document furnished or to be furnished to Lender from time to time in connection with this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein not misleading at the time made.

4.30

(a)    Borrower has good and marketable title to the Collateral which title is absolute and is not subject to any liens, except the security interest of Lender and of Borrower's other lenders, all of which shall be in *pari passu* with the lenders set forth on Schedule 4.3 attached hereto in the proportion that each Lender's debt bears to the total debt set forth on Schedule 4.3 all as more fully described in the Custody Agreement;

(b)    Any Student Loans which are part of the Collateral are not subject to any claim of reduction, counterclaim, set off, recoupment or any claim for credits, allowances or adjustments, or any other defense made by the obligor because of unsatisfactory services, or for any reason whether arising out of the transactions represented by the Student Loans or independently thereof;

(c)    No payment required by any of the Student Loans comprising the Collateral is more than thirty (30) days past due under the terms thereof;

(d)    Until all of the Obligations are paid in full, the Collateral shall consist of Student Loans with an outstanding principal amount in the aggregate equal to one and three-tenths (1.3) times the principal amount of this Loan plus one and three-tenths (1.3) times the principal amount of all other loans set forth in Schedule 4.3 B and Borrower agrees and covenants to deliver such additional Student Loans to the Custodian as Collateral as shall be necessary to maintain the accuracy of the foregoing representation;

(e)    The Student Loans arise out of bonafide extensions of credit, are valid and enforceable against the obligors thereunder in accordance with their terms (excepting any bankruptcy or insolvency laws or regulations), are denominated in the lawful currency of the United States of America, and the obligors thereunder maintain a principal place of business within the United States of America, are more than 30 days old, all payments to the schools for the amounts borrowed by the obligors under the Student Loans and are not subject to withdrawal since the student has completed the curriculum;

(f)    The Student Loans have been underwritten in accordance with Borrower's current policy manual.

-10-

PEPPER 056811

(g)    The Collateral is subject to a security interest in favor of Lender and Lender has possession thereof, either directly or by virtue of possession by an appropriate bailee (it being agreed that the Wells Fargo Bank Minnesota is acceptable to both parties); and

(h)    The Student Loans comply with all requirements of all laws and regulations, whether federal, state or local, including but not limited to consumer finance laws and usury laws.

4.31    Promptly, upon the reasonable request of Lender, at Borrower's expense, the Borrower shall execute, acknowledge and deliver, or cause the execution, acknowledgment and delivery of, and thereafter register, file or record, or cause to be registered, filed or recorded, in an appropriate governmental office, any document or instrument supplemental to or confirmatory of this Agreement or otherwise deemed by Lender necessary or reasonably desirable for the continued validity, perfection and priority of the liens on the Collateral covered thereby.

4.32    Borrower has not engaged any brokers in connection with the Loan.

4.33    Borrower shall use its best efforts to obtain Warehouse Financing and shall use the proceeds received therefrom to pay the Obligations in full, to the extent possible.

## 5.    NEGATIVE COVENANTS.

5.1    <u>Limitation on Borrowing and Encumbrance of Assets</u>.  Borrower hereby agrees that, so long as the Loan remains in effect, the Debt Instrument is outstanding and unpaid or any other amount is owing hereunder to Lender, Borrower shall not, directly or indirectly, without the prior written consent of Lender:

(a)    Create, incur, assume or suffer to exist any Indebtedness, except:

(i)    Indebtedness arising under this Agreement, with the lenders set forth on Schedule 4.3 ; and

(ii)    any other Indebtedness of Borrower that does not encumber the Collateral (except, in the case of subclause (2) of this clause (ii)only, pursuant to the Custody Agreement) and which (1) is under $500,000 in the aggregate for operating expenses, or (2) unlimited in amount if all of the proceeds therefore are used for additional funding of Student Loans, repayment of the educational institutions.

(b)    Create, incur, assume or suffer to exist any Lien upon any of the cash, cash equivalents or Student Loans, assets or revenues, whether now owned or hereafter acquired, except:

-11-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056812

(i)     Liens created in favor of Lender securing the Obligations hereunder or any other obligations owed to Lender under the Loan Documents;

(ii)     Liens for taxes, assessments, governmental charges or levies not yet due or which are being contested in good faith and by appropriate proceedings if adequate reserves with respect thereto that are maintained on the books of the appropriate Borrower in accordance with GAAP;

(iii)     statutory Liens of landlords and carrier's, vendor's, warehousemen's mechanic's, materialmen's, repairmen's, or other like Liens arising in the ordinary course of business which are not overdue for a period of more than 30 days or which are being contested in good faith and by appropriate proceedings in a manner which will not jeopardize or diminish the interest of Lender in any of the Collateral subject to the Loan Documents;

(iv)     pledges or deposits and Liens under bonds required in connection with worker's compensation, unemployment insurance and other social security legislation and utility deposits;

(v)     Liens set forth on Schedule 4.3; and

(vi)     Liens securing any Indebtedness permitted by Section 5.1, provided that such Liens do not encumber the Collateral.

5.2     <u>Limitation on Fundamental Changes</u>.  Borrower shall not enter into any transaction or acquisition or merger or consolidation or amalgamation, or liquidate, wind up or dissolve itself (or suffer any liquidation or dissolution), change its name, articles of incorporation or state of incorporation or address, or acquire by purchase or otherwise all or substantially all the business or assets of, or stock or other evidences of beneficial ownership of any Person, or make any material change in its present method of conducting the Business.

5.3     <u>Limitation on Sale of Assets</u>.  Borrower shall not convey, sell, lease, assign, transfer or otherwise dispose of, any substantial assets (including, without limitation, receivables and leasehold interests), whether now owned or hereafter acquired, in one transaction or a series of transactions, except obsolete or worn-out property, other than in the ordinary course of business or with the consent of Lender.

5.4     <u>Limitation on Dividends</u>.  Borrower shall not declare any dividends on, or make any payment on account of, or set apart assets for a sinking fund or other analogous fund for the purchase, redemption, defeasance, retirement or other acquisition of, any shares of any class of Capital Stock of Borrower, whether now or hereafter outstanding, or make any other distribution in respect thereof, either directly or indirectly, whether in cash or property or in obligations of Borrower, provided that, so long as Borrower is an S corporation, Borrower may make distributions

-12-

PHLEGAL: #1226379 v1 (Q@@3011.WPD)

to the holders of its common stock in amounts calculated so as to be sufficient to pay all income taxes payable by such shareholders by virtue of holding such common stock.

6. **EVENTS OF DEFAULT**. Borrower shall be in default hereunder upon the occurrence of any one or more of the following "Events of Default".

6.1    The failure of any Obligor at any time to observe or perform any of Obligor's agreements, representations, covenants and warranties contained in this Agreement, the Debt Instrument, the Guaranty, the Loan Documents or any other security agreement, mortgage, instrument, statement or document related hereto or arising herefrom, or if any signature, statement, certificate or other document executed or delivered pursuant to or in connection with this Agreement, or the Loan Documents or any other obligation of any Obligor to Lender was or is materially incorrect, incomplete, false or misleading. (The term "Obligor", as used herein, shall include Borrower and all other persons liable, either absolutely or contingently, on this Agreement, the Debt Instrument, and the Loan Documents, including endorsers, sureties, guarantors of this Agreement and of the Collateral).

6.2    (i) The nonpayment when due of any principal payment due under this Agreement, the nonpayment, within ten (10) days of the date when due, of any amount payable under this Agreement other than principal or of any amount when due under or on any of the Obligations, or the failure of any Obligor to observe or perform any agreement of any nature whatsoever with Lender within ten (10) days after written notice thereof; (ii) if any Obligor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Obligor under any provision of any state or federal law or statute alleging that such Obligor is insolvent or unable to pay debts as they mature or under any provision of the United States Bankruptcy Code; (iii) the entry of any judgment in excess of $50,000 against any Obligor which remains unsatisfied for fifteen (15) days; (iv) the issuing of any attachment, levy or garnishment against any property of any Obligor which remains unsatisfied or is not stayed or released within thirty (30) days; (v) the occurrence of any substantial change in the financial condition of any Obligor which, in the sole, reasonable judgment of Lender is materially adverse; (vi) the dissolution, merger, consolidation or reorganization of any Obligor which is a corporation or partnership, without the express prior written consent of Lender which consent may not be unreasonably withheld; (vii) the death, incarceration or adjudication of legal incompetence of any Obligor who is a natural person; (viii) the revocation of a guaranty by any Obligor; (ix) if any information or signature furnished to Lender by any Obligor at any time in connection with any of the Liabilities, or in connection with any guaranty or surety agreement applicable to any of the Liabilities, is false or incorrect; (x) the failure of any Obligor to timely furnish to Lender such financial and other information as Lender may reasonably request or require, within thirty (30) days; (xi) the non-payment of any tax when due by Borrower unless liability therefor is contested in good faith and by appropriate proceedings by Borrower; or (xii) any Obligor fails to pay principal or interest on any obligation and such failure continues beyond any applicable grace period.

-13-

PHLEGAL: #1226379 v1 (Q@@3011.WPD)

PEPPER 056814

6.3    Any Obligor shall make or cause to be made any transfer of, or conceal, remove, or accede to the concealment of any part of such Obligor's property with the effect of hindering, delaying, or defrauding any of such Obligor's creditors.

6.4    (i) Any Person shall engage in any non-exempt "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) involving any Single Employer Plan, (ii) any "accumulated funding deficiency" (as defined in Section 302 of ERISA), whether or not waived, shall exist with respect to any Plan, (iii) a Reportable Event shall occur with respect to, or proceedings shall commence to have a trustee appointed, or a trustee shall be appointed, to administer or to terminate, any Plan, which Reportable Event or commencement of proceeding or appointment of a trustee is, in the good faith opinion of Lender, likely to result in the termination of such Plan for purposes of Title IV of ERISA, (iv) any Plan shall terminate for purposes of Title IV of ERISA, (v) Borrower shall, or is, in the good faith opinion of Lender, likely to, incur any liability in connection with a withdrawal from, or the Insolvency or Plan Reorganization of, a Multiemployer Plan or (vi) any other event or condition shall occur or exist with respect to a Plan.

6.5    At any time, a Change of Control shall occur; a "Change in Control" shall mean that Andrew N. Yao shall cease to own beneficially and of record in the aggregate both (i) at least a majority (more than 50%) of the voting capital stock of Borrower and (ii) a majority (more than 50%) of the economic interest of the outstanding capital stock of Borrower.

6.6    Any party other than the Lender shall fail to perform or shall in any way breach any of its obligations, representations or warranties under any of the Loan Documents.

7.    **LENDER'S RIGHTS UPON DEFAULT.**  Upon the occurrence of any Event of Default (subject to the applicable grace and cure period therefor), and without the necessity of giving written notice to any Obligor, Lender may do any or all of the following:

(i)    accelerate the maturity of the Debt Instrument and demand immediate payment of the outstanding principal, all accrued interest and all other amounts owing thereunder;

(ii)    exercise its right of set-off and all of the rights, privileges and remedies of a secured party under the Pennsylvania Uniform Commercial Code and all of its rights and remedies under this Agreement, or any security agreement, pledge agreement, mortgage, power, the Debt Instrument or any other note, or other agreement, instrument or document issued in connection with or arising out of any of the Obligations, all of which remedies shall be cumulative and not alternative. The net proceeds of any Collateral held by Lender as security for any of the Obligations shall be applied first to the expenses of Lender in preparing the Collateral for sale, including, without limitation, attorneys' fees and expenses incurred by Lender (including fees and expenses of any litigation incident to any of the foregoing), and second, in such order as Lender may elect, in its sole discretion, to the complete satisfaction of all of the Obligations together with all interest thereon. Borrower waives and releases any right to require Lender to collect any of the Obligations from any other

-14-

PEPPER 056815

Collateral under any theory of marshaling of assets or otherwise, and specifically authorizes Lender to apply any Collateral proceeds in which Borrower has any right, title or interest against any of Borrower's Obligations to Lender in any manner that Lender may determine;

(iii)    commence any other legal action upon the Debt Instrument and/or any of the Loan Documents;

(iv)    begin accruing interest, in addition to any interest provided for above, at the Default Rate on the unpaid principal balance; provided, however, that no interest shall accrue hereunder in excess of the maximum amount of interest then allowed by law.  Borrower agrees to pay such accrued interest and the Default Rate of interest upon demand.  The Default Rate set forth herein is strictly a measure of liquidated damages to Lender based upon Lender's excess costs involved in the redeployment of funds and is not meant to be construed as a penalty; or

**(v)    Upon the occurrence of any Event of Default, Borrower irrevocably authorizes and empowers any Prothonotary, attorney or clerk of any Court of Record in the Commonwealth of Pennsylvania or elsewhere to appear for Borrower in any and all actions and (1) to enter judgment against Borrower for the principal sum hereof and/or (2) to sign for Borrower an agreement for entering in any competent court an amicable action or actions to confess judgment against Borrower for all or any part of the Obligations; and in either case for interest and costs together with a ten percent (10%) collection fee or $5,000, whichever is greater.  Such confession of judgment or amicable actions shall be, with release of errors, waiver of appeals, without stay of execution, and Borrower waives all relief from any and all appraisement or exemption laws not in force or hereafter enacted.  If a copy of the Debt Instrument verified by affidavit of Lender shall be filed in any proceeding or action wherein judgment is to be confessed, it shall not be necessary to file the original hereof, and such verified copy shall be sufficient warrant for any Prothonotary, attorney or clerk of any Court of Record in the Commonwealth of Pennsylvania or elsewhere to appear for and confess judgment against Borrower as provided herein. Judgment may be confessed from time to time under the aforesaid powers, which shall not be exhausted by one exercise thereof, until such time as Lender shall have received payment in full of all sums due hereunder, together with interest, costs and fees.**

8.    **INDEMNIFICATION.**  Borrower shall protect, indemnify, reimburse, and upon request defend, and save harmless, Lender and Lender's respective heirs, successors, assigns, shareholders, directors, officers, employees, subsidiaries, affiliates, attorneys and agents, and their respective personal representatives, from and against (i) any and all liability, loss, damage, cost and expense (including without limitation attorney's fees and expenses of litigation), and (ii) any and all claims, demands, liabilities, costs, or judgments (including without limitation for negligence or gross negligence) asserted against Lender, in any way arising from or relating to this Agreement, the Loan or any of the transactions contemplated hereby including, but not limited to, the transport, release, treatment, processing, manufacture, deposit, storage, disposal, burial, dumping, injecting, spilling,

-15-

PHLEGAL: #1226379 v1 (Q@@3011.WPD)

PEPPER 056816

leaking or placement at any time heretofore or hereafter, by any person or entity, of any hazardous substance, hazardous material, or any toxic or otherwise dangerous substance, or any substance or material now or hereafter referred to in or subject to regulation by any present or future law, regulation, order, proclamation, ordinance, decree, or the like governing the environment, occupational or safety and health promulgated by any of the United States, foreign, state or local governmental authority (such materials and substances are referred to herein as "Hazardous Substances"), from, at, in or on any properties owned and/or leased by the Borrower and/or in connection with the conduct of any of its businesses and operations. Without limiting the generality of the foregoing, this indemnification shall include:

(a)    Costs (or liability for costs) of removal or remedial action or response costs incurred by Lender or any governmental authority, or any other person or entity, or damages from injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss;

(b)    Payment of (or liability for) clean-up costs, fines, damages or penalties under any Laws;

(c)    Payment of (or liability for) costs and expenses of abatement, correction or clean-up, fines, damages, response costs or penalties which arise from the provisions of any Laws; and

(d)    Incurrence of (or liability for) personal injury or property damage arising under any Laws or under any statutory or common-law tort theory, including without limitation damages assessed for the maintenance of the public or private nuisance, response costs or for the carrying on of an abnormally dangerous activity.

The provisions of this paragraph 8 shall survive the termination of this Agreement and shall continue thereafter in full force and effect for so long as any such liability or claim may exist.

## 9.    DEFINITIONS.

9.1    <u>Defined Terms</u>.  As used in this Agreement, the following terms have the following meanings:

"**Agreement**": this Loan Agreement between Borrower and Lender dated even date herewith, as the same may be amended, supplemented or otherwise modified from time to time as provided herein.

"**Business Day**":  Any day other than a Saturday, Sunday or day on which commercial banks in the City of Philadelphia are authorized or required to be closed.

-16-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056817

"**Code**":  the Internal Revenue Code of 1986, as amended from time to time.

"**Collateral**": the property of Borrower subject to Liens as set forth in Section 3 hereof and any and all proceeds thereof now owned or hereafter acquired by Borrower.

"Commitment Fee" shall mean the fees payable under Section 1.5 (d) of the Agreement.

"**Default**":  any of the events specified in Section 6, whether or not any requirement set forth therein for the giving of notice, the lapse of time, or both, has been satisfied.

"**Default Rate**": means the rate set forth in Section 1.5 (b).

"**ERISA**":  the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**Event of Default**":  any of the events specified in Section 6.

"**GAAP**":  generally accepted accounting principles in the United States of America as in effect from time to time.

"**Hazardous Materials**": any solid wastes, toxic or hazardous substances, wastes or contaminants, polychlorinated biphenyls, asbestos, petroleum products, paint containing lead, urea formaldehyde foam insulation and discharges of sewage or effluent, as any of such terms is defined from time to time in or for the purposes of any Relevant Environmental Laws, other than retail quantities of cleaning and office supplies and reasonable amounts of heating oil properly stored and, in each such case, wastes generated therefrom which are properly disposed of.

"**Indebtedness**":  of a Person, at a particular date, shall mean (without duplication), (i) any liability of such Person (1) for borrowed money, the deferred purchase price of property or under any reimbursement obligation related to a letter of credit or bid or performance bond facility, or (2) evidenced by a bond, note, debenture or other evidence of indebtedness (including a purchase money obligation) representing extensions of credit or given in connection with the acquisition of any business property, service or asset of any kind (other than a trade payable or other current liability arising in the ordinary course of business) or (3) for obligations with respect to a lease of real or personal property that is or would be classified and accounted for as a capital lease in accordance with GAAP; (ii) any liability of others for any lease, dividend, letter credit or for any obligation described in the preceding clause (i) that (1) such Person has guaranteed, (2) is otherwise such Person's legal liability (whether contingent or otherwise or direct or indirect) or (3) is secured by any lien (other than Liens permitted under Section 5) on any property or asset owned or held by such Person, regardless of whether the Indebtedness secured thereby shall have been

-17-

PEPPER 056818

assumed by or is a primary liability of such Person, but excluding trade and other accounts payable in the ordinary course of business in accordance with customary trade terms, and (iii) any amendment, supplement, modification, deferral, renewal, extension or refunding of any liability of the types referred to in clauses (i) and (ii), above.

"**Insolvency**" or "**Insolvent**":  at any particular time, shall have the same meaning as if a multiemployer plan is insolvent within the meaning of such term as used in Section 4245 of ERISA.

"**Lien**":  any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or otherwise), preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, any capital lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction in respect of any of the foregoing).

"**Loan Documents**":  the collective reference to this Agreement, the Debt Instrument, the Servicing Agreement, the Custody Agreement the Guaranty and any Security Documents, including all renewals, extensions and/or modifications thereof, if any.

"**Maturity Date**":  The earlier of Borrower completing, obtaining or otherwise receiving funds in a Warehouse Financing or August 20, 2002.

"**Multiemployer Plan**":  a Plan which is a multiemployer plan as defined in Section 4001(a)(3) of ERISA.

"**Obligations**":  the unpaid principal amount of, and interest on, the Debt Instrument and all other obligations and liabilities of Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with this Agreement or the other Loan Documents and any other document executed and delivered in connection therewith or herewith, whether on account of principal, interest, fees, indemnities, costs, expenses (including, without limitation, all reasonable fees and disbursements of counsel) or otherwise.

"**Obligor**":  has the meaning ascribed to it in Section 6.1.

"**PBGC**": the Pension Benefit Guaranty Corporation established pursuant to Subtitle A of Title IV of ERISA.

-18-

PEPPER 056819

"**Person**": an individual, partnership, corporation, business trust, joint stock company, trust unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"**Plan**": at any particular time, any employee benefit plan (a) which is covered by ERISA and in respect of which Borrower is an "employer" as defined in Section 3(5) of ERISA or (b) with respect to which Borrower incurs liability under Section 4069 of ERISA.

"**Reportable Event**": any of the events set forth in Section 4043(b) of ERISA or the regulations thereunder, other than those events as to which the thirty-day notice period is waived under subsection .13, .14, .16, .18, .19, .20 or .23 of PBGC Reg. 2615.

"**Security Documents**":  any Security Agreement dated now or hereafter between Borrower and Lender which Lender requests be executed.

"**Single Employer Plans**": any Plan which is covered by Title IV of ERISA, but which is not a Multiemployer Plan.

"**Student Loans**":  loans evidenced by promissory notes requiring monthly payments commencing within 31 days after the date of each such promissory note executed by customers of Borrower in consideration of the extension of loans by Borrower to such customers for the purpose of attending an educational institution, and any tuition installment payment agreements purchased by Borrower.

"**Warehouse Financing**": a line of credit, private equity or commercial loan or other financing or equity investment of not less than $10,000,000 or a sale of any Student Loans in a securitization transaction after the date of this Agreement.

9.2    Other Definitional Provisions.

(a)    Unless otherwise specified herein, all terms defined in this Agreement shall have the defined meanings when used in the other Loan Documents or any certificate or other document made or delivered pursuant hereto.

(b)    As used herein and in the other Loan Documents or any certificate or document made or delivered pursuant hereto, accounting terms not defined in Section 9.1 or elsewhere in this Agreement, and accounting terms partly defined to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)    The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement, any other Loan Document or any other certificate or document made or delivered pursuant hereto shall refer to this Agreement, such other Loan Document, or such

-19-

PEPPER 056820

other certificate or document, as the case may be, as a whole or not to any particular provisions hereof or thereof. Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.

(d)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms. The use of any pronoun shall refer to and include the gender of the applicable Person, regardless of the gender of the pronoun used.

10.    **Registration of Note**

10.1    Borrower hereby acknowledges and makes this Note a registered obligation for United States withholding tax purposes. Borrower shall be the registrar for this Note (the "**Registrar**") with full power of substitution. In the event the Registrar becomes unable or unwilling to act as registrar under this Note, Borrower shall reasonably designate a successor Registrar. Each holder of this Note who is a foreign person, by its acceptance of this Note, hereby agrees to provide Borrower with a completed Internal Revenue Service Form W-8 (Certificate of Foreign Status) or a substantially similar form for such holder, participants or other affiliates who are holders of beneficial interests in this Note. Notwithstanding any contrary provision contained in this Note or any of the other Loan Documents, neither this Note nor any interests herein may be sold, transferred, hypothecated, participated or assigned to any Person except upon satisfaction of the conditions specified in this Section 10(a). Each holder, by its acceptance of this Note, agrees to be bound by the provisions of this Section 10(a).

10.2    The Registrar shall keep at its principal executive office (or an office or agency designated by it by notice to the last registered holder of this Note) a ledger, in which, subject to such reasonable regulations as it may prescribe, but at its expense (except as specified below), it shall provide for the registration and transfer of this Note (the "**Register**"). No sale, transfer, hypothecation, participation or assignment of this Note or any interest herein shall be effective for any purpose until it shall be entered on the Register. Prior to the registration of assignment or sale of this Note, the Registrar shall treat the Person in whose name this Note is registered as the owner thereof for the purpose of receiving all payments thereon and for all other purposes, notwithstanding notice to the contrary. In the event of a sale, transfer, hypothecation, participation or assignment of this Note or any interest herein, the holder of this Note prior to such sale, transfer, hypothecation, participation or assignment of this Note or any interest herein shall provide Lender with notice of such transaction at the time of such transaction. The Registrar shall record the transfer of this Note on the Register maintained for this purpose upon receipt by the Registrar at the office or agency designated by the Registrar of (i) a written assignment of this Note being assigned (or the applicable interest herein), (ii) funds sufficient to pay any transfer taxes payable upon the making of such transfer as well as the cost of reviewing the documents presented to the Registrar and (iii) such evidence of due execution as the Registrar shall reasonably require. The Registrar shall record the transfer of this Note on the books maintained for such purpose at the cost and expense of the assignee.

-20-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056821

10.3    In the event that any holder sells participations in this Note, such holder shall maintain a register on which it enters the names of all participants in this Note held by it (the "**Participant Register**"). This Note may be participated in whole or in part only by registration of such participation on the Participant Register, and any participation of this Note or transfer of such participation may be effected only by the registration of such participation on the Participant Register.

## 11.    MISCELLANEOUS:

11.1    Governing Law; Submission to Jurisdiction.    This Agreement has been delivered to and accepted by Lender in Pennsylvania and shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, except as Federal Law may otherwise apply.  Borrower acknowledges the jurisdiction of the state and federal courts located in Pennsylvania.

11.2    Scope and Assignment.    The rights and privileges of Lender under this Agreement are in addition to any rights and privileges contained in any of the Loan Documents, or of any other guaranty, pledge, surety or security agreement, debt instrument or other evidence of liability, all of which shall be construed as complimentary to each other, and shall inure to the benefit of its endorsers, successors and assigns forever.  Lender may assign this Agreement, the Debt Instrument, and/or Loan Documents at any time.  Borrower may not assign its rights or liabilities hereunder or thereunder without the prior written consent of Lender.

11.3    Survival of Representations.    All representations, warranties and covenants of Borrower contained in this Agreement, the Debt Instrument and Loan Documents shall bind Borrower, and Borrower's personal representatives, heirs, successors and assigns and shall survive the making of the Loan as provided in this Agreement.

11.4    Severability.    Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

11.5    Notices.  All notices, requests and demands hereunder and relating to the Loan Documents shall be in writing and shall be deemed to have been duly given on the date delivered, if hand delivered, or when deposited in the United States Mail, first class, postage prepaid, or by any form of express mail, facsimile transmission, or nationally recognized overnight delivery service, and addressed as follows:

-21-

PEPPER 056822

If to Lender:

Robert L. Bast
110 Spruce Lane
Ambler, PA 19002

If to Borrower:

Andrew N. Yao, President
Student Finance Corporation
170 Lukens Drive
New Castle, DE 19720

The names and addresses of the persons to whom communications are to be given may be changed upon notice given in the manner set forth in this paragraph.

11.6   Further Assurances. From time to time, Borrower will execute and deliver to Lender such additional documents and will provide such additional information as Lender may reasonably request or require to carry out the terms of this Agreement and be informed of Borrower's status and affairs.

11.7   No Waiver; Cumulative Remedies. Lender shall have the right at all times to enforce the provisions of this Agreement and the Loan Documents in strict accordance with the terms hereof and thereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights strictly in accordance with the terms of the Loan Documents shall not be construed as having created in any way a custom or manner contrary to any specific provisions of the Loan Documents or as having in any way or manner modified or waived any provision thereof. The rights and remedies of Lender are cumulative and concurrent and the exercise of one right or remedy shall not be deemed a waiver or release of any other right or remedy. Borrower waives protest of all commercial paper at any time held by Lender on which Borrower is in any way liable and notice and opportunity to be heard, after acceleration in the manner herein provided before exercise by Lender of the remedies of self-help, setoff, or of other summary procedures permitted by any applicable law.

11.8   Waiver of Jury Trial.  BORROWER HEREBY KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT, THE DEBT INSTRUMENT, OR ANY OF THE LOAN DOCUMENTS, OR ANY PROCEEDING IN ANY WAY ARISING OUT OF OR RELATED TO ANY OF THE FOREGOING, AND BORROWER AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY, UNLESS THE LENDER SHALL ELECT OTHERWISE.

-22-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056823

11.9    <u>Amendments</u>. Neither this Agreement or any of the Loan Documents to which Borrower is a party nor any terms hereof or thereof may be amended, supplemented or modified except by a writing executed by Lender and Borrower.

11.10    <u>Waivers</u>. No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided or provided in the other Loan Documents are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law. No waiver shall be effective unless set forth in writing and executed by Lender.

11.11    <u>Successors and Assigns; Participation</u>. This Agreement and the other Loan Documents shall be binding upon and inure to the benefit of Borrower, Lender, all future holders of the Debt Instrument and their respective successors and assigns, except that Borrower may not assign or transfer any of its rights or obligations under any Loan Documents without the prior written consent of Lender.

11.12    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

11.13    <u>Integration; No Third Party Rights</u>. This Agreement and the other Loan Documents represent the entire agreement of Borrower and Lender with respect to the subject matter hereof, and there are no promises or representations by Lender relative to subject matter hereof not reflected therein.

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056824

**IN WITNESS WHEREOF,** the parties hereto, intending to be legally bound, have caused this Agreement to be executed and delivered by their proper and duly authorized representatives the day and year first above written.  This instrument is intended to constitute a document under seal.

ATTEST                                    STUDENT FINANCE CORPORATION


By:_____             By: _____
Gary N. Hawthorne, Secretary             Andrew N. Yao, Chief Executive Officer

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056825

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have caused this Agreement to be executed and delivered by their proper and duly authorized representatives the day and year first above written.  This instrument is intended to constitute a document under seal.

ATTEST                                                    STUDENT FINANCE CORPORATION

By: _____          By: _____

Gary J. Hawthorne, Secretary                       Andrew N. Yao, Chief Executive Officer

PHLEGAL: #1226379 v1 (Q@@3011.WPD)

PEPPER 056826

**Schedule 4.3**

**Schedule of Existing Indebtedness of Borrower
and After funding on March 5, 2002**

**A.     Subordinated Debentures**

|  | Lender and Date of Loan Agreement | Amount |
|---|---|---|
| 1. | Pamela B. Gagné dated December 31,1995 | $ 250,000 |
| 2. | Robert L. Bast dated December 31, 1995 | $ 750,000 |
| 3. | Pamela B. Gagné dated August 1, 1997 | $ 250,000 |
| 4. | Robert L. Bast dated August 1, 1997 | $ 600,000 |
| 5. | Elizabeth B. Brennan Trust dated August 1, 1997 | $ 150,000 |
| 6. | Elizabeth B. Brennan Trust dated August 7, 1998 | $ 500,000 |
| 7. | Robert L. Bast dated August 7, 1998 | $  500,000 |
|  | Total Subordinated Debentures | $3,000,000 |

**B.     Term Notes**

|  | Lender and Date of Loan Agreement |  |
|---|---|---|
| 1. | Robert L. Bast; Date of Loan- March 5, 2002 | $ 2,000,000 |
| 2. | Elizabeth B. Brennan Family Trust #2<br>FBO Elizabeth L. Gagne; Date of Loan- March 5, 2002 | $   400,000 |
| 3. | James T. Brennan Trust FBO W. Roderick Gagné;<br>Date of Loan- March 5, 2002 | $   200,000 |
| 4. | James T. Brennan Trust FBO Philip B. Gagné:<br>Date of Loan- March 5, 2002 | $   100,000 |

-25-

PEPPER 056827

| | | | |
|---|---|---|---|
| 5. | James T. Brennan Trust FBO Elizabeth B. Gagné; Date of Loan- March 5, 2002 | $ | 200.000 |
| 6. | Robert L. Bast; Date of Loan- March 22, 1999 | $ | 650,000 |
| 7. | Pamela B. Gagne; Date of Loan- March 5, 2002 | $ | 400,000 |
| | Total Term Notes | $3,950,000 | |

-26-

PHLEGAL: #1226379 v1 (Q@@301!.WPD)

PEPPER 056828

# SECURED NOTE

$ 2,000,000.00                                                                          March 5, 2002

FOR VALUE RECEIVED, STUDENT FINANCE CORPORATION, a Pennsylvania corporation (**"Borrower"**) promises to pay to the order of Robert L. Bast (**"Lender"**), at 110 Spruce Lane, Ambler, PA 19002 the principal sum of Two Million Dollars ($2,000,000.00), or so much thereof as has been advanced, together with interest thereon (the **"Loan"**), to be paid as follows: Interest at the rate of Twelve Percent (12%) per annum payable on the 20th day of each month on the outstanding principal balance, the Commitment Fee as provided for in Section 1.5 of the Loan Agreement between Borrower and Lender of even date herewith (the **"Loan Agreement"**) and principal in the sum of Two Million Dollars ($2,000,000.00) shall be due and payable on or before the earlier of August 1, 2002 and Borrower entering into a Warehouse Facility (as defined in the Loan Agreement). Any default rates provided for herein or in the Loan Agreement shall be added to the interest rate of Twelve percent (12%) per annum, <u>provided</u>, that at no time shall the rate of interest payable hereunder exceed the maximum rate permitted by applicable law. This Secured Note is referred to hereinafter as this **"Note"**. All capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Loan Agreement.

**DISBURSEMENT OF PROCEEDS** - Borrower hereby represents and warrants to Lender that the principal of this Note will be used solely for the purposes set forth in the Loan Agreement.

**PREPAYMENTS** - The Borrower shall have the right at any time and from time to time to prepay this Note, in whole or in part, as provided in Section 1.8 of the Loan Agreement; provided, however, the same sum due on August 1, 2002 shall still be due, less the prepayment.

**RIGHT TO COMPLETE NOTE** - Lender may at any time and from time to time without notice to any Obligor: (1) date this Note as of the date when the Loan evidenced hereby was made; (2) complete any blank spaces according to the terms upon which Lender has granted such Loan; and (3) cause the signature of one or more persons to be added as additional Borrowers without in any way affecting or limiting the liability of the existing Obligors to Lender.

**APPLICATION OF FUNDS** - Payments received after 3:00 p.m. shall be deemed received on the next banking day. Credit for payment shall be given only when immediate funds are available to Lender and received on a banking day. All payments received hereunder may be applied first to the payment of any expenses or charges hereunder, including late charges, then to accrued interest, and the balance to principal. Each Obligor waives and releases any right to require Lender to pay down any particular Liabilities from proceeds of any particular collateral under any theory of marshaling of assets or otherwise. Lender may apply the proceeds of any Collateral against any of the Liabilities in any manner or order that Lender determines.

**CONFESSION OF JUDGMENT** - Upon the occurrence of any Event of Default, Borrower irrevocably authorizes and empowers any Prothonotary, attorney or clerk of any Court of Record in the Commonwealth of Pennsylvania or elsewhere to appear for Borrower in any

PHLEGAL: #1228505 v1 (QBX501!.WPD)

PEPPER 056833

and all actions and (1) to enter judgment against Borrower for the principal sum hereof and/or (2) to sign for Borrower an agreement for entering in any competent court an amicable action or actions to confess judgment against Borrower for all or any part of the Liabilities; and in either case for interest and costs together with a ten percent (10%) collection fee or $5,000, whichever is greater. Such confession of judgment or amicable actions shall be, with release of errors, waiver of appeals, without stay of execution, and Borrower waives all relief from any and all appraisement or exemption laws not in force or hereafter enacted. If a copy of this Note verified by affidavit of Lender shall be filed in any proceeding or action wherein judgment is to be confessed, it shall not be necessary to file the original hereof, and such verified copy shall be sufficient warrant for any Prothonotary, attorney or clerk of any Court of Record in the Commonwealth of Pennsylvania or elsewhere to appear for and confess judgment against Borrower as provided herein. Judgment may be confessed from time to time under the aforesaid powers, which shall not be exhausted by one exercise thereof, until such time as Lender shall have received payment in full of all sums due hereunder, together with interest, costs and fees.

**LOAN AGREEMENT AND GUARANTY AGREEMENT-** This Note is given pursuant to the Loan Agreement and all terms of the Loan Agreement are incorporated herein by reference. Reference is made to the Loan Agreement for Events of Default hereunder, the effects thereof and Lender's remedies. Furthermore, any collateral in which Lender is granted a security interest under the Loan Agreement shall be deemed to be Collateral hereunder, whether specified above or not. Moreover, this Note is giving for and in consideration of and in reliance upon the personal Guaranty of Andrew N. Yao and Lore N. Yao.

**MISCELLANEOUS - This Note has been delivered to and accepted by Lender in and shall be governed by the laws of the Commonwealth of Pennsylvania. This Note may not be amended orally or by any course of dealing. The parties agree to the jurisdiction of the federal and state courts located in Pennsylvania in connection with any matter arising hereunder, including the collection and enforcement of this Note. Borrower hereby irrevocably and unconditionally waives, and Lender, by its acceptance of this Note and the Loan Agreement securing the loan, irrevocably and unconditionally waives any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Note, the Loan Agreement, the Loan Documents or any other document or instrument now or hereafter executed and delivered in connection therewith or the Loan. To the extent permitted by law, Borrower hereby waives and releases all errors, defects and imperfections in any proceedings instituted by Lender under this Note.**

**PAYMENT OF COSTS, LATE FEES AND OTHER ADDITIONAL FEES -** Borrower shall be liable, and shall reimburse Lender on demand, for all attorneys' fees and expenses incurred by Lender in the event that Lender engages attorneys to represent Lender in connection with (1) any alleged default by any Obligor under any Loan Document issued in connection with or arising out of any Obligation, (2) the enforcement of any of Lender's rights and remedies under any Loan

-2-

PEPPER 056834

Document, (3) any potential and/or actual bankruptcy or other insolvency proceedings commenced by or against any Obligor and/or (4) any potential and/or actual litigation arising out of or related to any of the foregoing, the Loan Documents or any Obligation. Borrower shall also be liable and shall reimburse Lender on demand for all other costs and expenses incurred by Lender in connection with the collection, preservation and/or liquidation of Collateral for any Obligation and/or in the enforcement of any Obligor's performance under any Loan Document.

IN WITNESS WHEREOF, Borrower has duly executed this Note, by and through its legally authorized representative, intending to be legally bound hereby, the day and year first above written, and has hereunto set Borrower's hand and seal.

ATTEST:                                              STUDENT FINANCE CORPORATION


_____         By:_____
Gary J. Hawthorne, Secretary                        Andrew N. Yao, Chief Executive Officer

[No Seal]


**YOU HAVE THE RIGHT TO CANCEL YOUR FUNDING OF THIS SECURED NOTE UPON WRITTEN NOTICE TO THE BORROWER GIVEN WITHIN TWO BUSINESS DAYS FOLLOWING THE DATE OF RECEIPT BY THE BORROWER OF YOUR FUNDS. UPON SUCH CANCELLATION OR WITHDRAWAL YOU WILL HAVE NO OBLIGATION OR DUTY UNDER THIS SECURED NOTE AND WILL BE ENTITLED TO THE FULL RETURN OF ANY AMOUNT FUNDED BY YOU. YOU FURTHER ACKNOWLEDGE THAT YOU UNDERSTAND THAT ANY NOTICE OF CANCELLATION OR WITHDRAWAL SHOULD BE MADE BY TELEGRAPH OR CERTIFIED OR REGISTERED MAIL AND WILL BE EFFECTIVE UPON DELIVERY TO WESTERN UNION OR DEPOSIT IN THE UNITED. STATES MAILS, POSTAGE OR OTHER TRANSMITTAL FEES PAID. EXCEPT FOR THE RIGHT OF CANCELLATION DESCRIBED HEREIN, YOU MAY NOT SELL THIS SECURED NOTE FOR TWELVE MONTHS FROM THE DATE OF ISSUANCE AS SUCH A SALE WOULD VIOLATE SECTION 203(D) OF THE PENNSYLVANIA SECURITIES ACT OF 1972 AND THE REGULATIONS PROMULGATED THEREUNDER.**

-3-

PHLEGAL: #1228505 v1 (QBX501!.WPD)

PEPPER 056835

Document, (3) any potential and/or actual bankruptcy or other insolvency proceedings commenced by or against any Obligor and/or (4) any potential and/or actual litigation arising out of or related to any of the foregoing, the Loan Documents or any Obligation.  Borrower shall also be liable and shall reimburse Lender on demand for all other costs and expenses incurred by Lender in connection with the collection, preservation and/or liquidation of Collateral for any Obligation and/or in the enforcement of any Obligor's performance under any Loan Document.

IN WITNESS WHEREOF, Borrower has duly executed this Note, by and through its legally authorized representative, intending to be legally bound hereby, the day and year first above written, and has hereunto set Borrower's hand and seal.

ATTEST:                                             STUDENT FINANCE CORPORATION

_____                 By: _____
Gary J. Hawthorne, Secretary              Andrew  N. Yao, Chief Executive Officer

[No Seal]

**YOU HAVE THE RIGHT TO CANCEL YOUR FUNDING OF THIS SECURED NOTE UPON WRITTEN NOTICE TO THE BORROWER GIVEN WITHIN TWO BUSINESS DAYS FOLLOWING THE DATE OF RECEIPT BY THE BORROWER OF YOUR FUNDS.  UPON SUCH CANCELLATION OR WITHDRAWAL YOU WILL HAVE NO OBLIGATION OR DUTY UNDER THIS SECURED NOTE AND WILL BE ENTITLED TO THE FULL RETURN OF ANY AMOUNT FUNDED BY YOU.  YOU FURTHER ACKNOWLEDGE THAT YOU UNDERSTAND THAT ANY NOTICE OF CANCELLATION OR WITHDRAWAL SHOULD BE MADE BY TELEGRAPH OR CERTIFIED OR REGISTERED MAIL AND WILL BE EFFECTIVE UPON DELIVERY TO WESTERN UNION OR DEPOSIT IN THE UNITED.  STATES  MAILS, POSTAGE OR OTHER TRANSMITTAL FEES PAID.  EXCEPT FOR THE RIGHT OF CANCELLATION DESCRIBED HEREIN, YOU MAY NOT SELL THIS SECURED NOTE FOR TWELVE MONTHS FROM THE DATE OF ISSUANCE AS SUCH A SALE WOULD VIOLATE SECTION 203(D) OF THE PENNSYLVANIA SECURITIES ACT OF 1972 AND THE REGULATIONS PROMULGATED THEREUNDER.**

-3-

PHLEGAL: #1228505 v1 (QBX5011.WPD)

PEPPER 056836