

## PLEDGE AGREEMENT

PLEDGE AGREEMENT (the "Pledge Agreement"), made as of this 5th day of May 2002, by Andrew N. Yao, an individual who resides in Bryn Mawr, Pennsylvania ("Pledgor") in favor of Robert L. Bast, an individual who resides in Ambler, Pennsylvania., (the "Pledgee"), as agent under that certain Intercreditor Agreement dated March 5, 2002 (the "Intercreditor Agreement") on behalf of the lenders set forth in the Intercreditor Agreement and listed on Schedule A attached hereto and made a part hereof (the "Lenders"), to secure the Obligations (as defined in the Loan Agreements) under the Loan Agreements (defined below) by and among each Lender and Student Finance Corporation, a Pennsylvania corporation ("Borrower") and Pledgor, as Guarantor (as defined in the Loan Agreement) thereof.

### BACKGROUND

The Borrower has executed those certain Loan Agreements all as more specifically identified on Schedule A attached hereto and made a part hereof (as may be amended, restated or otherwise modified from time to time, collectively, the "Loan Agreements" and individually, the "Loan Agreement"), with each of the Lenders and the Pledgee, as agent for the Lenders under the Intercreditor Agreement.

The Loan Agreements provide for the guarantee of the Obligations by the Pledgor. Pledgor in connection with the Loan Agreements entered into Guarantee Agreements with each Lender and the Pledgor's spouse, all dated as of the Loan Agreements (collectively, the "Guarantees" and individually, a "Guarantee"). The Loan Agreements are currently in default and the Pledgor has agreed to the pledge of the Collateral defined herein to partially secure the Obligations guaranteed under the Guarantees.

In consideration of the foregoing premises and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Pledgor hereby agrees as follows:

1. **Definitions.** Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreements.

2. **Pledge of Stock.** Pledgor hereby assigns, pledges and grant to Pledgee a security interest in the shares of capital stock of certain companies owned by Pledgor and any proceeds, conversion or other securities received in a merger or consolidation now owned or hereafter acquired by Pledgor or in which a Pledgor at any time has a legal or beneficial interest (hereinafter referred to as the "Securities," which Securities together with all additions thereto, substitutions or exchanges therefor, proceeds thereof and distributions thereon shall be referred to collectively herein as the "Collateral"), all of which Securities are described on Schedule B attached hereto and made a part hereof (as the same may from time to time be amended in writing by the parties hereto), as collateral security for the payment and performance of all indebtedness, liabilities and obligations of Borrower, which obligations have been guaranteed by Pledgor and are now due and payable, and any additional obligors (including without limitation the Pledgor) to Pledgee, for principal, interest, fees, expenses, costs or otherwise, now existing or hereafter created or arising under the Loan Agreements, under the Debt Instruments, the

PHLEGAL: #1254352 v1 (QVV401LDOC)

PEPPER 056756

Guaranty, and the other Loan Documents and any other documents, agreements and instruments now or hereafter executed thereunder or in connection therewith, including without limitation this Pledge Agreement (each as may be amended, restated or otherwise modified from time to time, herein referred to collectively as the "Obligations," with such agreements, documents and instruments evidencing and documenting the Obligations being herein referred to collectively as the "Documents").

3. Representations and Warranties. Pledgor represents and warrants that:

a. Pledgor has good title to the Securities free and clear of all liens and encumbrances except the security interest created hereby;

b. Such Securities constitute the percentage of the issued and outstanding shares of capital stock of any other Pledge owned by such Pledgor as set forth on Schedule B hereto;

c. Such Securities are validly issued, fully paid and nonassessable and are not subject to any charter, bylaw, statutory, contractual or other restrictions governing their issuance, transfer, ownership or control;

d. Pledgor has delivered to Pledgee all stock certificates, promissory notes, bonds, debentures or other instruments or documents representing or evidencing the Securities, together with corresponding assignment or transfer powers duly executed in blank by Pledgor, and this Pledge Agreement and such powers have been duly and validly executed and are binding and enforceable against Pledgor in accordance with their terms;

e. The pledge of the Securities in accordance with the terms hereof creates a valid and perfected first priority security interest in the Securities securing payment of the Obligations; and

f. No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either (i) for the pledge by such Pledgor of the Securities pursuant to this Pledge Agreement or for the execution, delivery or performance of this Pledge Agreement by Pledgor or (ii) for the exercise by Pledgee of the voting or other rights provided for in this Pledge Agreement or the remedies in respect of the Collateral pursuant to this Pledge Agreement (except as may be required in connection with such disposition by laws affecting the offering and sale of securities generally).

g. Pledgor is solvent and after the pledge of the Collateral will remain solvent and has no actions filed against him or is in no other way impaired from making the pledge hereunder.

4. <u>Covenants</u>. Pledgor agrees:

a. not to sell or otherwise dispose of, or grant any option with respect to, any of the Collateral;

b. not to create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Collateral, except the security interest under this Pledge Agreement; and

c. to pledge hereunder, immediately upon acquisition (directly or indirectly) thereof, any and all additional shares of stock or other securities of any company whose stock is pledged hereunder.

5. <u>Additional Collateral</u>. Prior to the full payment and performance of the Obligations, Pledgee shall be entitled to receive, as additional Collateral any and all additional shares of stock or any other property of any kind distributable on or by reason of the Securities pledged hereunder, whether in the form of or by way of stock dividends, warrants, partial liquidation, conversion, prepayments or redemptions (in whole or in part), liquidation, or otherwise with the sole exception of normal, regularly declared cash dividends or cash interest payments as the case may be, to the extent permitted herein. If any such property, other than such permitted cash dividends or interest, shall come into the possession or control of Pledgor, Pledgor shall hold or control and forthwith transfer and deliver the same to Pledgee subject to the provisions hereof.

6. <u>No Default</u>. So long as no monetary default has occurred under any of the Obligations or the Loan Documents and Pledgor is in full compliance with the terms hereof:

a. Pledgor shall be entitled to receive and retain any normal, regularly declared cash dividends or interest payments (as the case may be) paid on the Securities pledged hereunder.

b. Pledgor may exercise all voting rights, if any, pertaining to the Securities for any purpose not inconsistent with the terms hereof;

c. In the event the Securities have been transferred into the name of Pledgee or a nominee or nominees of Pledgee prior to default, Pledgee or its nominee will execute and deliver upon request of Pledgor an appropriate proxy in order to permit Pledgor to vote, if applicable, the same.

7. <u>Additional Deliveries</u>. Pledgor shall take all actions (and execute and deliver from time to time all instruments and documents), and authorizes Pledgee to take all actions on Pledgor's behalf (including without limitation the filing of financing statements and continuation statements), necessary or appropriate or requested by Pledgee, to continue the validity, enforceability and perfected status of the pledge of Securities hereunder.

8. <u>No Liability</u>. Pledgee shall be under no obligation to take any actions and shall have no liability (except for gross negligence or willful misconduct) with respect to the preservation or protection of the pledged Securities or any underlying interests represented

-3-

PEPPER 056758

thereby as against any prior or other parties. In the event Pledgor requests that Pledgee take or omit to take action(s) with respect to the Collateral, Pledgee may refuse so to do with impunity if Pledgor does not, upon request of Pledgee, post sufficient, creditworthy indemnities with Pledgee which, in Pledgee's sole discretion, are sufficient to hold it harmless from any possible liability of any kind in connection therewith.

9. <u>Modification of the Obligations</u>. Pledgor agrees that Pledgee, at any time and without affecting Pledgee's rights in the pledged Securities and without notice to Pledgor, may grant any extensions, releases or other modifications of any kind respecting the Loan Documents, Obligations and any collateral security therefor and Pledgor, except as otherwise provided herein or in the Loan Documents, waives all notices of any kind in connection with the Obligations, the Loan Documents and any changes therein or defaults or enforcement proceedings thereunder, whether against Pledgor or any other party. Pledgor hereby waives any rights it has at equity or in law to require Pledgee to apply any rights of marshaling or other equitable doctrines in the circumstances.

10. <u>Pledgee's Rights Upon Default</u>. Upon the occurrence of a default under any of the Obligations or the Loan Documents or if any representation, warranty or agreement of Pledgor hereunder is breached or proves to be false:

    a. Pledgee may transfer or cause to be transferred any of the pledged Securities into its own or a nominee's or nominees' names;

    b. Pledgee shall be entitled to receive and apply in payment of the Obligations any cash dividends, interest or other payment on the pledged Securities;

    c. Pledgee shall be entitled to exercise in Pledgee's discretion all voting rights, if any, pertaining thereto and in connection therewith and at the written request of Pledgee, and each Pledgor shall execute any appropriate dividend, payment or brokerage orders or proxies;

    d. Pledgor shall take any action necessary or required or requested by Pledgee, in order to allow Pledgee fully to enforce the pledge of the Securities hereunder and realize thereon to the fullest possible extent, including but not limited to the filing of any claims with any court, liquidator or trustee, custodian, receiver or other like person or party;

    e. Pledgee shall have all the rights and remedies granted or available to it hereunder, under the Uniform Commercial Code as in effect from time to time in Pennsylvania, under any other statute or the common law, or under any of the Documents, including the right to sell the pledged Securities or any portion thereof at one or more public or private sales upon ten (10) days' written notice and to bid thereat or purchase any part or all thereof in its own or a nominee's or nominees' names, free and clear of any equity of redemption; and to apply the net proceeds of the sale, after deduction for any expenses of sale, including the payment of all Pledgee's reasonable attorneys' fees in connection with the Obligations and the sale, to the payment of the Obligations in any manner or order which Pledgee in its sole discretion may elect, without further notice to or consent of Pledgor and without regard to any equitable principles of marshaling or other like equitable doctrines; and

PEPPER 056759

    f. Pledgee may increase, in its sole discretion, but shall not be required to do so, the Obligations by making additional advances or incurring expenses for the account of Pledgor deemed appropriate or desirable by Pledgee in order to protect, enhance, preserve or otherwise further the sale or disposition of the Collateral or any other property it holds as security for the Obligations.

  11. <u>Sale or Other Disposition of the Collateral</u>. Pledgor recognizes that Pledgee may be unable to effect a sale to the public of all or part of the Securities by reason of certain prohibitions or restrictions in the federal or state securities laws and regulations (herein collectively called the "<u>Securities Laws</u>"), or the provisions of other federal and state laws, regulations or rulings, but may be compelled to resort to one or more sales to a restricted group of purchasers who will be required to agree to acquire the Securities for their own account, for investment and not with a view to the further distribution or resale thereof without restriction. Pledgor agrees that any sale(s) so made may be at prices and on other terms less favorable to Pledgor than if the Securities were sold to the public, and that Pledgee has no obligation to delay sale of the Securities for period(s) of time necessary to permit the issuer thereof to register the Securities for sale to the public under any of the Securities Laws. Pledgor agrees that negotiated sales whether for cash or credit made under the foregoing circumstances shall not be deemed for that reason not to have been made in a commercially reasonable manner. Pledgor shall cooperate with Pledgee and shall satisfy any requirements under the Securities Laws applicable to the sale or transfer of the Securities by Pledgee.

  In connection with any sale or disposition of the Collateral, Pledgee is authorized to comply with any limitation or restriction as it may be advised by its counsel is necessary or desirable in order to avoid any violation of applicable law or to obtain any required approval of the purchaser(s) by any governmental regulatory body or officer and it is agreed that such compliance shall not result in such sale being considered not to have been made in a commercially reasonable manner nor shall Pledgee be liable or accountable by reason of the fact that the proceeds obtained at such sale(s) are less than might otherwise have been obtained.

  Pledgee may elect to obtain the advice of any independent nationally-known investment banking firm with respect to the method and manner of sale or other disposition of any of the Collateral, the best price reasonably obtainable therefor, the consideration of cash and/or credit terms, or any other details concerning such sale or disposition. Pledgee, in its sole discretion, may elect to sell on such credit terms which it deems reasonable.

  12. <u>Costs and Expenses</u>. Pledgor will pay Pledgee the amount of any reasonable expenses (including without limitation counsel fees and expenses) incurred by Pledgee in connection with (i) the drafting, creation, and administration of this Pledge Agreement, (ii) the custody, preservation, sale or collection or realization of the Collateral, (iii) the exercise or enforcement of Pledgee's rights hereunder, or (iv) the failure of Pledgor to perform hereunder.

  13. <u>No Waiver of Rights</u>. Nothing herein shall be construed as a waiver of any rights that Lenders may have under an of the Loan Agreements or any of the Guarantees and in no way shall impair nay Lender from exercising all of its rights against Borrower or Pledgor

PHLEGAL: #1254352 v1 (QVV401!.DOC)

PEPPER 056760

under the Loan Documents or this Pledge Agreement, until all of the Obligations under the Loan Agreements are paid in full.

14. **Successors and Assigns.** This Pledge Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

15. **Governing Law.** This Pledge Agreement shall be construed according to the laws of the 0Commonwealth of Pennsylvania, without reference to the conflicts of laws principles thereof. Any terms used herein which are defined in the Uniform Commercial Code as enacted in Pennsylvania shall have the meanings therein set forth.

16. **No Waiver.** If Pledgee shall waive any rights or remedies arising hereunder or under any applicable law, such waiver shall not be deemed to be a waiver upon the later occurrence or recurrence of any of said events. No delay by Pledgee in the exercise of any right or remedy shall under any circumstances constitute or be deemed to be a waiver, express or implied, of the same and no course of dealing between the parties hereto shall constitute a waiver of Pledgee's rights or remedies.

17. **Attorney-in-Fact.** Pledgor hereby irrevocably appoints Pledgee as its attorney-in-fact to execute, deliver and record, if appropriate, from time to time any instruments or documents in connection with the Collateral, in Pledgor's or Pledgee's names.

18. **Notices.** Any notices or communications permitted or required by this Agreement shall be made in accordance with Section 11 of the Guaranty.

19. **Entire Agreement.** This Pledge Agreement represents the entire understanding of the parties with respect to the subject matter and no modification or change herein shall be effective unless contained in a writing signed by the parties hereto.

20. **Headings.** The headings preceding the text of the paragraphs of this Pledge Agreement are inserted solely for convenience and shall not constitute a part of this Pledge Agreement, not shall they affect its meaning, construction or effect.

IN WITNESS WHEREOF, the Pledgor has executed this Pledge Agreement on the day and year first written above.

_____
Andrew N. Yao, Pledgor

PHLEGAL: #1254352 v1 (QVV401!.DOC)

PEPPER 056761

## SCHEDULE A

### LIST OF LOAN AGREEMENTS AND LENDERS

| | Lender and Date of Loan Agreement | Amount |
|---|---|---|
| 1. | Pamela B. Gagné dated December 31, 1995 | $ 250,000 |
| 2. | Robert L. Bast dated December 31, 1995 | $ 750,000 |
| 3. | Pamela B. Gagné dated August 1, 1997 | $ 250,000 |
| 4. | Robert L. Bast dated August 1, 1997 | $ 600,000 |
| 5. | Elizabeth B. Brennan Trust dated August 1, 1997 | $ 150,000 |
| 6. | Elizabeth B. Brennan Trust dated August 7, 1998 | $ 500,000 |
| 7. | Robert L. Bast dated August 7, 1998 | $ 500,000 |
| 8. | Robert L. Bast dated March 5, 2002 | $ 2,000,000 |
| 9. | Elizabeth B. Brennan Family Trust #2 FBO Elizabeth L. Gagne dated March 5, 2002 | $ 400,000 |
| 10. | James T. Brennan Trust FBO W. Roderick Gagné dated March 5, 2002 | $ 200,000 |
| 11. | James T. Brennan Trust FBO Philip B. Gagné dated March 5, 2002 | $ 100,000 |
| 12. | James T. Brennan Trust FBO Elizabeth B. Gagné dated March 5, 2002 | $ 200,000 |
| 13. | Robert L. Bast dated March 22, 1999 | $ 650,000 |
| 14. | Pamela B. Gagne dated March 5, 2002 | $ 400,000 |
| | Total | $6,950,000 |

PEPPER 056762

## SCHEDULE B

### PLEDGED SECURITIES

| PLEDGOR | SECURITIES PLEDGED | PERCENTAGE OUTSTANDING OF SECURITIES |
|---|---|---|
| Andrew N. Yao | 100 shares of Premier Education Group G.P., Inc. | 100% |
| Andrew N. Yao | 100 shares of One Summit Place Partners G.P., Inc. | 100% |
| Andrew N. Yao | 100 shares of Day Hill Partners G.P., In.c. | 100% |

PEPPER 056763