IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION<br><br>                                           Debtor | :<br>:<br>:<br>:    Civil Action No. 04-1551 (JJF)<br>: |
| CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION<br>                                         Plaintiff<br><br>                          v.<br><br>PEPPER HAMILTON LLP, et al<br>                                      Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**SUPPLEMENTAL OBJECTIONS AND RESPONSES OF TRUSTEE, CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION, TO THE FAMILY'S FIRST SET OF INTERROGATORIES**

Charles A. Stanziale, Jr., Chapter 7 Trustee for Student Finance Corporation, (the "Trustee"), pursuant to Federal Rule of Civil Procedure 33, as made applicable by Bankruptcy Rule 7033, by and through his undersigned attorneys, hereby supplements his responses and objections to Defendants, W. Roderick Gagné, Robert L. Bast, Pamela Bashore Gagné and the Trusts' (the "Family") First Set of Interrogatories.

Each of the responses is subject to and incorporates the General Statement and General Objections as set forth hereinafter. These answers are based upon information known or believed to be true to at the time of responding to this First Set of Interrogatories. Trustee has not completed his discovery, investigation, or preparation for trial, nor has he concluded his analysis of information gathered to date. Future discovery and independent investigation may supply additional facts or information, add meaning to known facts, and may establish entirely

1

## III. TRUSTEE'S RESPONSES TO INTERROGATORIES

1. Separately for Bast, Pamela Gagné and the Trusts, describe in detail all actions, if any, taken by Bast, Pamela Gagné or the Trusts to exercise control or authority over SFC.

**RESPONSE:**

Trustee objects because contention interrogatories are premature at this stage of the litigation. Document discovery is not yet complete and depositions have not yet begun. The Trustee further objects to this Interrogatory as overly broad, unduly burdensome and vague. The Trustee further objects to the Family's use of the phrase "control or authority" which is undefined, and is vague and ambiguous as set forth in these Interrogatories. This Interrogatory is further objectionable to the extent it calls for a legal conclusion.

Subject to this objection and the General Objections and without waiving these objections, the Family's ability to exercise authority and control over SFC primarily arises out of Pepper and Roderick Gagné's functioning as general counsel for SFC. As such, Gagné had the opportunity to know what was going on at SFC and to direct and structure investment opportunities for the Family's benefit. In representing SFC, Yao and the Family, Gagné was in a position to obtain knowledge and assert influence and control over many of the dealings among them.

Gagné was also active in networking on behalf of SFC in the financial community and providing business advice to SFC. Also, the Family provided sizable loans to SFC between 1996 and 2002. Gagné prepared loan transaction documents for all of the transactions between SFC and his own family members and family trusts (including but not limited to at least one trust of which Gagné personally was the beneficiary), for which he served as trustee on terms very favorable to the Family.

4

In 2000, the Family loaned $6 million to SFC, which was converted to common stock via a Buy –Sell Agreement (the "Agreement"), where, upon execution of the Agreement the Trusts, Bast and Gagné would acquire 180 shares of stock of SFC for a capital contribution of $5,000,000.00 by Bast and the conversion of $1,000,000.00 of debt to equity while earning an interest rate of 14% with a 7% payoff premium to be paid when shares were redeemed. Schedules of debts as between SFC and the Family evidence that certain shares were still outstanding as of December 31, 2000, thereby indicating shareholder status of the Family for approximately one year.

Furthermore, Gagné routinely advised SFC concerning payments due to the Family under the various loan transactions. Yao also testified, "[The Family] had always continued to express interest, and by they I mean the Bast family as communicated to me through Rod Gagné, expresses interest in continuing to be involved at an investor level. . . . Rod knew the company intimately, so to the extent there were any investment opportunities for bridge financing or equity participation on any basis, he would know about it and we would talk about whether his family would be interested." *See* transcript of Yao August 27, 2004 deposition at 332.

The Family's involvement with and influence over SFC and SFC's finances were further heightened by the Family's business relationships with limited partnerships such as Day Hill Partners, LP, One Summit Place, LP and CEC Partnership, LP (later renamed Premier Education Group, LP). Gagné, Bast and some of the Family Trusts of which Gagné was trustee were limited partners of Premier Education Group, and Yao was the director and sole shareholder of Premier Education Group, GP, Inc., the general partner of Premier Education Group. On or about May 5, 2002, pursuant to his personal guarantee to the Family, Yao pledged his interests in Day Hill Partners, LP, One Summit Place, LP and Premier Education Group, to the Family. Gagné documented the transaction. In an e-mail, dated April 23, 2002, Yao wrote to Gagné, "[p]lease be assured, in return, that I will protect your family's investment in SFC, notwithstanding any

5

adverse outcome that may result, should Royal make an uneconomic decision with respect to our recovery and repurchase proposal."

See also the answer to Interrogatory number 2. Trustee is still investigating and reserves the right to amend and/or supplement this Interrogatory as necessary.

2.  Separately for Bast, Pamela Gagné and the Trusts, identify every fact that Bast, Pamela Gagné or the Trusts knew or should have known regarding SFC's use of Forbearance Payments, and for each fact, state when and how such person or entity knew or should have known of the fact.

**RESPONSE**:

Trustee objects to this Interrogatory as overly broad, unduly burdensome and vague. This Interrogatory is also objectionable to the extent it seeks information that is not within the Trustee's possession or control. The Trustee further objects to this Interrogatory to the extent that any information responsive to this request is in the Defendants' equal possession and control.

Subject to these objections and the General Objections and without waiving these objections, Bast, Pamela Gagné and the Trusts knew or should have known about SFC's use of Forbearance Payments because of Gagné's knowledge of SFC's use of Forbearance Payments. Moreover, Gagné's knowledge of SFC's use of forbearance payments must be imputed to the Trusts for which he served as Trustee, as well as to his wife Pamela Gagné and uncle Robert Bast. The Trustee incorporates his response to Pepper Interrogatory No. 8.

Gagné acted as general counsel to SFC, as well as its related entities. Andrew Yao testified at his August 27, 2004 deposition that Gagné was counsel on all transactions relating to SFC and was "intimately familiar" with the company and would have reviewed all relevant

6

documents pertaining to SFC's use of Forbearance Payments in his capacity as counsel to the company and as an investor.

As reflected in invoices to SFC and related entities, Gagné through Pepper billed SFC for services rendered relating to the forbearance program used by SFC. For example, see the time entries on March 2, 2000, "Review materials on consumer loans and for forbearance projects; review with Andrew Yao use of school reserves regarding monthly payments on forbearance loans and discuss implications . . ."; May 19, 2000, for ". . . review[ing] forbearance structure and begin research of same."

In December 2001, Gagné through Pepper represented SFC with respect to the resignation of Kirk Monteverde, SFC's Managing Director of Risk Management, who worked for SFC between November 19 and December 3, 2001, which raised issues relating to the propriety of using so-called forbearance payments to pay student loans. In addition, Gagné, through Pepper, represented SFC in litigation brought by Nielsen Electronics Institute, in which similar issues and claims that Yao was operating a fraudulent scheme were raised.

The Trustee is still investigating and reserves the right to amend and/or supplement this Interrogatory as necessary.

3.      Separately for Bast, Pamela Gagné and the Trusts, identify every fact that Bast, Pamela Gagné or the Trusts knew or should have known regarding SFC's insolvency or financial difficulty, and for each fact, state when and how such person or entity knew or should have known the fact.

to which this Interrogatory relates, has been dismissed by Judge Farnan's Court Order dated December 22, 2005. Without waiver of his objection the Trustee incorporates his answer to Interrogatory Nos. 1 and 10 herein.

10. Provide a calculation of any category of damages you claim in this matter, specifying as to each element of damages the parties against whom you claim such damages are recoverable.

**RESPONSE:**

The Trustee seeks a return of all money and items of value obtained by the Family Defendants directly or indirectly from SFC, including those obtained from Yao. This includes but is not limited to $4,293,179.40 million in payments within one year of the filing date, together with the value of other transfers that are identified in discovery, interest, costs, and attorneys' fees.

Michael S. Waters
Lois H. Goodman
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
3 Gateway Center - 100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711

Daniel K. Astin
Ashley B. Stitzer
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000
Special Counsel to Charles A. Stanziale Jr. Chapter 7 Trustee Student Finance Corporation

Dated: June 7, 2006