# Report on Related Party Loans & Valuation of Andrew Yao's Interest in One Summit Place Partners, LP and Day Hill Partners, LP

May 7, 2007

Prepared by:

William Hecht, CPA
Weiser LLP

Table of Contents

| SECTION | |
|---|---|
| 1.0) | INTRODUCTION AND OPINION |
| 2.0) | ANALYSIS OF 55 RELATED PARTY LOANS |
| 3.0) | $ 6 MILLION IN CAPITAL RAISED IN FEBRUARY 2000 AND REDEEMED OVER 12 MONTHS |
| 4.0) | STUDY OF PRICING FOR COMPARABLE LOANS |
| 5.0) | CONCLUSION – RELATED PARTY LOAN COMMITMENT FEES IN EXCESS OF MARKET RATES |
| 6.0) | VALUATION OF ANDREW YAO'S INTEREST IN DAY HILL PARTNERS, LP AND ONE SUMMIT PLACE PARTNERS, LP |



Student Finance Corporation Ch 7
Report of William Hecht and Weiser LLP – May 7, 2007
Page 2 of 8

1.0)   INTRODUCTION AND OPINION

At the request of McElroy, Deutsch, Mulvaney & Carpenter, LLP, Weiser LLP and William Hecht, have been asked to:

- **Evaluate** the reasonableness of the interest rates and commitment fees charged on a series of 55 loans made from related parties to Student Finance Corporation (hereafter referred to as "Related Parties") between December 1995 and March 2002 from:

    - Pamela Gagne,
    - Robert Bast,
    - Elizabeth Brennan Trust,
    - James Brennan Trust FBO W.Roderick Gagne,
    - James Brennan Trust FBO Phillip Gagne, and
    - James Brennan Trust FBO Elizabeth Gagne.

- **And value** the general partnership interests of Andrew Yao in Day Hill Partners, LP and One Summit Place Partners, LP based upon appraised values for the properties owned by those entities.

This report and its appendices provide explanation and background supporting the expert opinion of William Hecht and Weiser LLP that the commitment fees charged on 33 of these loans were above the market rates charged on similar loans during the same time period.

Incorporated in 1993, Student Finance Corporation ("SFC" or the "Company") was in the business of originating student tuition loans directly from students or purchasing student tuition loans from various vocational schools (primarily commercial truck driving schools). On June 5, 2002, certain creditors of SFC filed an involuntary bankruptcy petition against SFC. Thereafter, Charles A. Stanziale, Jr. Esq. was appointed Chapter 7 Trustee of SFC. See the report of Harry Steinmetz of Weiser LLP for additional background information.

The opinions presented in this report are based on the consideration of the documents set forth as exhibits to this report and my over 40 years of experience as an accountant and business advisor to middle-market companies in many different industries including but not limited to real estate and leasing concerns as well as my experience in forensic accounting and providing testimony in such matters. My experience, along with a list of the other cases in which I have testified as an expert in the preceding four years, either at trial or at deposition, is included in an exhibit to this report. In connection with this assignment, I have been assisted by and consulted by others at Weiser LLP, all of whom have worked under my direction and supervision. Our fee is not dependent on the outcome of the litigation and our time will be charged at hourly rates; my hourly rate is $425.



Student Finance Corporation Ch 7
Report of William Hecht and Weiser LLP -- May 7, 2007
Page 3 of 8

As additional information is provided in depositions and as additional documents or facts become known during the course of this matter, I may be asked to perform additional analyses. In addition, I may rely upon, or respond to, the opinions of other experts in this matter. Accordingly, the opinions expressed herein (and the bases therefore) may be modified or supplemented based upon further analysis.

The procedures we performed to arrive at our conclusions are as follows:

1. We read the various documents produced in this matter that are identified in the attached Exhibit B, including, but not limited to: financial statements, financial records of Student Finance Corporation, tax returns, appraisals and related loan documents.
2. We compared the interest rates and commitment fees charged on these loans to other loans of similar size made to companies in the same industry as SFC.
3. We discussed interest rates and commitment fees with a former bank executive familiar with higher risk commercial loans.

OPINION

Based upon our analysis and the facts and circumstances surrounding SFC and these loans, it is the opinion of William Hecht and Weiser LLP that the commitment fees charged on 33 loans were above the comparable commitment fees charged on similar loans during the same time period (See Exhibit A pages 5 through 8).

The general partnership interests of Andrew Yao in Day Hill Partners, LP and One Summit Place Partners, LP through his ownership of the corporate general partner in each partnership as of June 2002 was approximately $679,470.

Sincerely,

*William Hecht*
William Hecht, CPA

Partner
Weiser LLP

May 7, 2007



Student Finance Corporation Ch 7
Report of William Hecht and Weiser LLP – May 7, 2007
Page 6 of 8

4.0)    STUDY OF PRICING FOR COMPARABLE LOANS

We obtained a database of over 170 loans made during the same time period to companies of similar size and in the same industry as SFC. This loan information was obtained from Reuters Loan Pricing Corporation (http://www.loanpricing.com) who maintains and sells information obtained from loan syndicators, lenders, institutional investors and other market participants.

The <u>maximum</u> commitment fee for loan transactions in Reuters' loan database was 2%; the loan maturity dates on such loans was greater than 6 months.

5.0)    LOAN COMMITMENT FEES IN EXCESS OF MARKET RATES

Our review of the 33 SFC loans where commitment fees were paid indicated that fees ranged from 6% to 14.5% on loan maturities from 1 month to 18 months. We noted that some loan maturity dates preceded the date of the loan agreement (See Exhibit Col (J) – where note (a) is listed). Additionally we also noted that a commitment fee of $377,000 (14.5%) was paid on loan referenced as #27 in Exhibit A on page 6 of 8 where the loan agreement indicated a maximum fee of $260,000 (10%).

An unusual feature of many of these loan commitment fees was that the fee was to be paid at the back-end of the loan instead of at inception. This suggests that these fees were some type of deferred interest charge. Other commitment fees were based on an escalating fee scale where the fee was 6% of principal amount if the loan was repaid within 60 days; 8% if repaid after 60 days but before 91 days; 10% if repaid after 91 days. This fee structure offered a financial motivation to repay the debt faster.

As a benchmark for the overall reasonableness of these fees, we calculated the effective annual interest rate combining the interest and commitment fees on a $3.5 million loan from Pamela Gagne revealing a 77% effective interest rate (June 18, 1999 – due November 1999 and repaid August 2, 1999, six weeks after its inception. The commitment fee paid was $210,000.) In selecting another two loans with principal amounts of $500,000 and $1,500,000, we computed effective annual interest rates of approximately 46% on each loan.

Also, to gain additional information on loan pricing during this time period, I spoke with a former bank executive familiar with such transactions for smaller companies. He



Student Finance Corporation Ch 7
Report of William Hecht and Weiser LLP – May 7, 2007
Page 7 of 8

conveyed that 1% to 2% commitment fees were customary and that there were also transactions on higher-risk deals with 4% commitment fees.

Taken together, all these factors combined with my experience in advising privately-held middle-market companies for over 40 years, indicates to me that the commitment fees paid in these loan transactions were above market rates and that a 4% rate (at most) would have been appropriate. Accordingly, we have computed the difference between the fees paid and a 4% charge to calculate the portion of the fee that was above market rates. (See Exhibit A pages 5 through 8, columns T through V).



Student Finance Corporation Ch 7
Report of William Hecht and Weiser LLP – May 7, 2007
Page 8 of 8

### 6.0) VALUATION OF ANDREW YAO'S INTEREST IN DAY HILL PARTNERS, LP AND ONE SUMMIT PLACE PARTNERS, LP

I have reviewed the appraisals prepared by John Houck of Weiser Realty for the properties owned by these partnerships, as well as the Federal tax returns filed for the year 1999, 2000 and 2001.

In the table, I have computed the value of Andrew Yao's 33% interest through his ownership of the corporate general partner in each partnership as of June 2002.

**I. Valuation of Andrew Yao's Interest in Day Hill Partners, LP**

| | |
|---|---|
| Real estate appraisal of 995 Day Hill Road, Windsor, CT (6/1/2002) | $2,600,000 |
| Less: mortgage on 995 Day Hill Road property (12/31/01 tax return) | ($1,724,000) |
| Plus: book value of other assets, net of liabilities, on Day Hill Partners, LP tax return | $329,000 |
| Value of Day Hill Partners, LP 100% partnership interests | $1,205,000 |
| Multiplied by 33% A.Yao interest Day Hill Partners GP, Inc. | X 33% |
| Value of A.Yao's interest in Day Hill Partners GP, Inc. | $397,650 |

**II. Valuation of Andrew Yao's Interest in One Summit Place Partners, LP**

| | |
|---|---|
| Real estate appraisal of One Summit Place, Branford, CT (6/1/2002) | $1,700,000 |
| Less: mortgage on One Summit Place (12/31/01 tax return) | ($1,088,000) |
| Plus: book value of other assets, net of liabilities, on One Summit Place Partners, LP tax return | $242,000 |
| Value of One Summit Place Partners, LP 100% partnership interests | $854,000 |
| Multiplied by 33% A.Yao interest One Summit Place GP, Inc. | X 33% |
| Value of A.Yao's interest in One Summit Place GP, Inc. | $281,820 |

**III. Total Value of Andrew Yao's Interest in Day Hill Partners LP and One Summit Place Partners, LP**   $679,470

