```
                                                                    Page 1
 1     IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF DELAWARE
 2
       MBIA INSURANCE CORPORATION    :
 3     and WELLS FARGO BANK,          :
       N.A. (f/k/a WELLS FARGO        :
 4     BANK MINNESOTA N.A.) as        :
       TRUSTEE OF SFC GRANTOR         :
 5     TRUST, SERIES 2000-1, SFC      :
       GRANTOR TRUST, SERIES          :
 6     2000-2, SFC GRANTOR TRUST,     : C.A. NO.
       SERIES 2000-3, SFC GRANTOR     : 02-1294-JJF
 7     TRUST, SERIES 2000-4, SFC      :
       GRANTOR TRUST, SERIES 2001-1,  :
 8     SFC GRANTOR TRUST, SERIES      :
       2001-2, SFC OWNER TRUST        :
 9     2001-I, AND SFC GRANTOR        :
       TRUST, SERIES 2001-3,          :
10        Plaintiffs/Counterclaim     :
              Defendants,             : WITNESS:
11                                    : PAMELA B. GAGNE'
            v.                        : TRACK I
12     ROYAL INDEMNITY COMPANY,       :
          Defendant/Counterclaim      : DATE:
13             Plaintiff.             : MARCH 16, 2007

14     ROYAL INDEMNITY COMPANY,
           Third-Party Plaintiff,
15
       vs.
16
       ANDREW N. YAO, STUDENT LOAN
17     SERVICING LLC, STUDENT LOAN
       ACCEPTANCE II LLC, STUDENT LOAN
18     ACCEPTANCE III LLC, STUDENT LOAN
       ACCEPTANCE III LLC, STUDENT LOAN
19     ACCEPTANCE V LLC, STUDENT LOAN
       ACCEPTANCE VIII LLC, STUDENT LOAN
20     ACCEPTANCE IX LLC, SFC FINANCIAL LLC
       I, SFC FINANCIAL LLC II, SFC
21     FINANCIAL LLC VI, SFC FINANCIAL LLC
       VII,
22        Third-Party Defendants.

23     ROYAL INDEMNITY COMPANY,
           Counter-Claimant,
24     vs.
       MBIA BANK and WELLS FARGO BANK
       MINNESOTA, N.A.,
25        Counter-Defendants.
```

1   please swear in the witness?

2           - - -

3           PAMELA B. GAGNE, after

4   having been first duly sworn, was

5   examined and testified as follows:

6           - - -

7           EXAMINATION

8           - - -

9   BY MS. GOODMAN:

10  Q.  Good morning, Mrs. Gagne'. My      09:38:50

11  name is Lois Goodman.

12  A.  Good morning.

13  Q.  We met earlier. I am one of the

14  attorneys for Charles Stanziale, who

15  is the trustee in bankruptcy for

16  Student Finance Corporation. We are

17  here this morning to take your

18  deposition.

19          Have you ever had a

20  deposition taken before?                09:39:04

21  A.  No, I have not.

22  Q.  And you are represented this

23  morning, are you not?

24  A.  Yes, I am.

25  Q.  By Mr. Epstein and Ms. Press?       09:39:10

Page 136

1              - - -
2              (Whereupon a lunch break
3    was taken at this time.)
4              - - -
5              THE VIDEO TAPE OPERATOR:    13:22:54
6    Back on the record.  The time is
7    13:24.
8    BY MS. GOODMAN:
9    Q.  Good afternoon, Mrs. Gagne'.
10   Let's just continue.  We were         13:23:08
11   talking about the last of the loans
12   that you were involved with on
13   Exhibit 1433, Track I, and we were
14   on Page 31.
15             Are you still at that       13:23:20
16   page?
17   A.  Yes, I am.
18   Q.  I apologize if I asked this
19   before, but they are sort of
20   slipping together on me.              13:23:30
21             In Subsection A of Item
22   34, there is a description of the
23   source of funds for the $400,000
24   secured note and loan, dated March
25   5, 2002.                              13:23:48

Page 137

```
 1            Do you see that?
 2   A.  Yes, I do.
 3   Q.  And it says the source of funds
 4   for the loan to SFC was a
 5   collateralized loan to the custody      13:23:58
 6   account of W. Roderick Gagne'.
 7            If I asked you, I
 8   apologize, but can you tell me what
 9   the collateral was for that loan?
10   A.  Well, it was my loan.  I           13:24:10
11   believe, at the time we did it,
12   Brent was very ill, so I borrowed
13   the money initially from Rod, but
14   I'm not entirely certain.  I had
15   thought I had done a line of credit,   13:24:26
16   but I guess I may not have with
17   Brent being that ill that the time.
18   Q.  And referring back to Item 34-A
19   on the prior exhibit, 1432, Track I,
20   on Page 29?                            13:25:08
21   A.  Yes, that was what I had
22   thought, and I guess that had been
23   my intent, and then when Brent got
24   ill, I borrowed the money to make
25   the loan instead against Rod's         13:25:28
```

Page 138

1   account, because it was just faster,
2   simpler.
3   Q.  And do you recall -- when it
4   says a collateralized loan, do you
5   recall what the collateral was?          13:25:46
6   A.  I don't recall what the
7   collateral was.
8   Q.  Going down to Subparagraph E,
9   under Number 34 --
10              MR. EPSTEIN:  Can we go     13:26:02
11  off the record?
12              THE VIDEO TAPE OPERATOR:
13  Off the record.  The time is 13:27.
14              THE VIDEO TAPE OPERATOR:
15  Back on the record.  The time is        13:29:48
16  13:31.
17  BY MS. GOODMAN:
18  Q.  You spoke earlier about a
19  guarantee that you received for the
20  March 5, 2002 loan, and I believe        13:30:04
21  that's referenced in Subparagraph
22  E.  If you would read the first two
23  sentences of that paragraph into the
24  record, please?
25  A.  Sure. "Yao and Lore Yao              13:30:12