IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>STUDENT FINANCE CORPORATION,<br>                    Debtor.<br><br>CHARLES A. STANZIALE, JR.,<br>CHAPTER 7 TRUSTEE OF STUDENT<br>FINANCE CORPORATION,<br><br>                    Plaintiff,<br>    v.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>                  Defendants. | CIVIL ACTION No. 04-1551 (JJF) |

**PROPOSED JURY INSTRUCTIONS**
**SUBMITTED BY THE FAMILY DEFENDANTS**

Dated: October 3, 2007

KAREN LEE TURNER (No. 4332)
BRYA M. KEILSON (No. 4643)
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Fax:        (302) 425-0431
E-mail:    kturner@eckertseamans.com

Neil G. Epstein
Carol L. Press
Charles F. Forer
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone: (215) 851-8400
Fax:    (215) 851-8383

Attorneys for Defendants Robert L. Bast, Pamela Bashore Gagné, the Brennan Trusts and W. Roderick Gagné, as Trustee of the Brennan Trusts

Robert L. Bast, Pamela Bashore Gagné, seven trusts created by Elizabeth B. Brennan and James T. Brennan, and W. Roderick Gagné as a trustee of the Brennan Trusts (collectively "Family defendants") by and through their undersigned counsel, submit the following proposed instructions to the jury in the above-captioned case. The Family Defendants respectfully reserve their right to supplement these proposed jury instructions based on evidence actually admitted at trial and rulings of the Court before or during trial.

**Avoidance of Preferential Transfer (General Instruction)**

The Plaintiff is seeking the avoidance of transfers made by the Student Finance Corporation (which I will refer to as "SFC") to the Family defendants as a preferential transfer under Section 547 of the United States Bankruptcy Code. Specifically, the Plaintiff is seeking the return of interest, fees and principal repayments paid by SFC in connection with loans owed to the Family defendants by SFC. I will refer to the payments of the interest, fees and principal repayments as the "Loan Payments". In order to prevail on this claim, the Plaintiff must prove each and every one of the following six elements by a preponderance of the evidence:

1. each of the Loan Payments was of an interest of SFC in property;

2. each of the Loan Payments were made to or for the benefit of a creditor of SFC;

3. each of the Loan Payments were made in payment of an antecedent debt which is a debt that was owed by SFC before such transfer was made;

4. each of the Loan Payments were was made while the SFC was insolvent; (For purposes of this element, the term "insolvent" means that, just prior to the transfer, the sum of the debtor's debts are greater than all of the SFC's property.)

5. each of the Loan Payments was made within 90 days before the bankruptcy petition was filed on June 5, 2002. In other words, to prove this element, the Plaintiff must establish that the transfer was made between March 7, 2002 and June 5, 2002. This 90-day period is known as the "Preference Period"; and

6. each of the Loan Payments enabled the Family defendants to receive more than they would have received if--

    (A) the case were a case under chapter 7 of the Bankruptcy Code; and

    (B) the Loan Payments had not been made; and

    (C) the Family defendants received payment of such debt to the extent provided by the Bankruptcy Code.[1]

---

[1] Derived from 11 USC § 547(b).

**Preferential Transfer Insider Status**

(To be given if the Court is unable to conclude that the Family defendant's are not "insiders" pursuant to 11 USC § 101)

In connection with Plaintiff's claim for the return of the Loan Payments consisting of interest, fees and principal repayments paid by SFC to the Family defendants, you should consider whether each of the Family defendants was an insider of SFC at the time of each of the Loan Payments. If you determine that the Family defendants are "insiders", then the Preference Period that I mentioned earlier is extended from 90 days to one year before the filing of the bankruptcy petition on June 5, 2002. So, if you determine that any of the Family defendants was an insider, then the Plaintiff may seek to recover the Loan Payments made to that Family defendant between June 6, 2001 and June 5, 2002 provided that the Plaintiff proves each and every one of the six elements mentioned earlier by a preponderance of the evidence.[2]

The emphasis for your consideration of the insider status is on the nature of the relationship between SFC and any of the Family defendants, especially on whether the relationship gave any of the Family defendants the power or influence to have SFC make the Loan Payments to the Family defendants. If any of the Family defendants did not have a relationship with SFC which allowed that Family defendant to exert control over SFC, then they cannot be considered an insider of SFC.

Thus, when deciding if each of the Family defendants was an insider of SFC, you should consider if there was a closeness in the relationship between each of the Family defendants and SFC and decide whether any closeness prevented an arm's-length nature of the relationship in connection with the Loan Payments, or whether any closeness provided a level of control that each of the Family defendants had over the SFC. A mere debtor-creditor relationship, by itself, is insufficient to determine that the Family defendants are insiders of SFC. A creditor in a business relationship with a debtor may be considered an insider only when that creditor had the ability to assert control, make management decisions for the debtor, direct work performance, and directed payment of the debtor's expenses. For insider status to arise in this context, there must be day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a direct stake.[3]

---

[2] Derived from 11 U.S.C. § 547(b)

[3] *In re Spitko*, 2007 WL 1720242 (Bankr. E.D. Pa. June 11, 2007) (Judge Fox).

3

**Preferential Transfer – Ordinary Course of Business Defense**

A creditor may defend against a preference claim on the basis that the payments it received were in the ordinary course of business

If the plaintiff proves each of the six elements mentioned earlier, the transfer is not recoverable by the plaintiff to the extent that the Family defendants prove that the transfer was made in the ordinary course of business. To establish the ordinary course of business, the Family defendants must prove the following elements by a preponderance of the evidence:

    (A)    the transfer was made in payment of a debt incurred by SFC in the ordinary course of business or financial affairs of SFC and the Family defendants;

    (B)    the transfer was made in the ordinary course of business or financial affairs of SFC and the Family defendants; and

    (C)    the transfer was made according to ordinary business terms.[4]

"Ordinary business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and only dealings so unusual as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of the ordinary course of business defense[5]

---

[4] Derived from 11 USC § 547(c)(2) prior to amendment on October 17, 2005.

[5] *In Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 224 (3d Cir. 1994).

4

**Preferential Transfer – Additional Ordinary Course of Business Instructions**

The purpose of the ordinary course of business defense is to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or its creditors during the debtor's slide into bankruptcy.[6] In other words, Congress did not intend normal financing relations to be disturbed so it created the ordinary course of business defense.

The determination of whether the Family defendants have met their burden under the ordinary course of business defense is a subjective test involving the consistency of transactions between the debtor and the Family Defendants before and during the 90 day preference period.[7] In other words, the ordinary course of business defense does not apply where the changes in credit arrangements were extreme, and therefore out of character with the long historical relationship between the parties.[8]

---

[6] *Safety-Kleen Creditor Trust v. Eimco Process Equip. Co. (In re Safety-Kleen Corp.)*, 331 B.R. 591, 596 (Bankr. D. Del. 2005).

[7] *See, e.g., HL1 Creditor Trust v. Metal Techs. Woodstock Corp. (In re Hayes Lemmerz Int'l, Inc.)*, 339 B.R. 97, 106 (Bankr. D. Del. 2006); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Del., Inc.)*, 320 B.R. 541, 548 (Bankr. D. Del. 2004).

[8] *Hechinger Inv. Co. v. Universal Forest Prods., Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, 489 F.3d 568 (3d Cir. 2007).

**Preferential Transfer-New Value Defense**

Section 547(c)(4) also permits a creditor to defend against relinquishing a transfer for which the creditor subsequently provided new value for the benefit of the bankruptcy estate.

In addition to the ordinary course of business defense, there is another defense known as the "New Value" defense which you should consider. Specifically, assuming that you find that the plaintiff proved each of the six elements mentioned earlier, the transfer is not recoverable by the plaintiff to the extent that a Family defendant gave SFC "new value" after the transfer.

For purposes of this defense and this case, "new value" means the amount of new credit or loans made by a Family defendant to SFC after the date of the allegedly preferential transfer.[9]

Such creditors do not have preference liability as they have conferred a benefit on SFC by providing goods or services to SFC after SFC made the transfer.

---

[9] Derived from 11 U.S.C. § 547(a)(2) and 11 U.S.C. § 547(c)(4).

**Fraudulent Transfer (General Instruction)**

The Plaintiff is seeking to recover from the Family defendants based upon his claim that Andrew Yao made a "fraudulent" transfer of his stock in One Summit Place, GP, Inc., DHP, GP, Inc. and Premier Education Group GP, Inc. to the Family defendants. In order to prevail on his claim based upon Yao's alleged fraudulent transfers, the plaintiff must prove that Yao made the transfer with actual intent to hinder, delay or defraud any of his creditors.[10]

The Plaintiff bears the burden to prove actual fraudulent intent by clear and convincing evidence.[11] To satisfy the burden of proof in this case with respect to actual fraud, the plaintiff must prove every element of actual fraud by clear and convincing evidence. For evidence to be clear and convincing, the witnesses must be found credible; the facts to which they testify must be distinctly remembered, and the testimony must be so clear, direct, weighty, and convincing that you can reach a clear conviction, without hesitancy, of the truth of the precise facts in issue. Although this is a significant burden of proof, it is not necessary that the evidence be uncontradicted, as long as the evidence leads you to a clear conviction of its truth.[12]

In determining whether actual intent to commit fraud exists, you may give consideration to the following factors:

    a. whether the transfer was made to an insider of the debtor;

    b. whether the debtor retained possession or control of the property transferred after the transfer;

    c. whether the transfer or obligation was disclosed or concealed;

    d. whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    e. whether the transfer was of substantially all the debtor's assets;

    d. whether the debtor absconded;

    e. whether the debtor removed or concealed assets;

    f. whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[10] 12 Pa. C.S. § 5104.

[11] *See, e.g., Protocomm Corp. v. Novell Advanced Servs., Inc*, 171 F. Supp. 2d 459, 468 (E.D. Pa. 2001).

[12] Derived from Pennsylvania Standard Civil Jury Instruction No. 5.50(a) (2005).

      g.     whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

      h.     the transfer occurred shortly before or shortly after a substantial debt was incurred; and

      i.     whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[13]

To prevail on a fraudulent transfer claim using these factors, the Plaintiff must establish a goodly number of them.[14]

Favoring one creditor over another is not fraudulent. In order to prove a fraudulent transfer, the Plaintiff must prove actual fraudulent intent, not just that one creditor was preferred to another.[15]

---

[13] *See* 12 Pa. C.S. § 5104(b).

[14] *See, e.g., Provident Life & Accident Ins. Co. v. Gen. Syndicators of Am. (In re Laramie Assoc.)*, No. 97-3135, 1997 U.S. Dist. LEXIS 14170, at *15 (E.D. Pa. Sept. 8, 1997); *Pinto Trucking*, 93 B.R. at 386.

[15] *See, e.g., Lichtenstein v. MBNA Am. Bank (In re Computer Personalities Sys. Inc.)*, 284 B.R. 415, 420 n.9 (Bankr. E.D. Pa. 2002); *Beard v. DeVito (In re DeVito)*, 111 B.R. 529, 530-31 (Bankr. W.D. Pa. 1990); *Commonwealth Nat'l Bank v. Miller*, 437 A.2d 1012, 1014 (Pa. Super. 1981).

**Fraudulent Transfer (Good Faith Defense)**

If you determine that the Family defendants received the transfers in good faith and for a reasonably equivalent value, you are to find in favor of the Family defendants.[16]

You should find that the Family defendants acted in good faith if they acted without any actual fraudulent intent and did not participate with Yao in a fraudulent scheme with regard to the transfer.[17]

In determining whether Yao received reasonably equivalent value in exchange for the transfers, you are to look at the totality of the circumstances, considering a variety of factors, such as the fair market value of the transfers compared to the price paid, the arms-length nature of the transaction, and the good faith of the Family defendants. The inquiry is two-fold: first, you must determine whether Yao received any value at all in exchange for the transfer, and, second, if it is determined that "value" was in fact conferred on Yao as a result of the transaction, you must then determine whether that value was reasonably equivalent to the asset transferred by Yao.[18]

M0611777.DOC

---

[16] *See* 12 Pa. C.S. § 5108.

[17] See 12 Pa. C.S. § 5108, comment (6).

[18] *In re Burry,* 309 B.R. 130 (Bankr. E.D. Pa. 2004).