# EXHIBIT 3

## EXHIBIT 3

### The Trustee's Statement of Intended Proofs

In this action, the Trustee will show that the Family Defendants were insiders of SFC, and payments made to them in the one-year period prior to the bankruptcy should be avoided as preferences. In addition, several transfers of assets were fraudulent conveyances and should also be avoided.

The Trustee intends to show that Gagné was an insider of SFC under the Bankruptcy Code. Because the Family Defendants' opportunities were all derivative of Gagné's close relationship with SFC, Gagné acted on behalf of the Family Defendants in dealing with SFC, and the Family realized benefits and perquisites that were not available to others without the benefit of that relationship, transfers to the Family in the year prior to the filing of bankruptcy should be avoided as preferences.

Gagné functioned as SFC's outside General Counsel. The paralegal that worked for him was the Assistant Secretary of SFC for years. As such, she had authority to sign corporate documents. In addition, Gagné gave non-legal business advice to SFC, and he and his family traveled on the SFC private jet.

The facts will show that Gagné knew about SFC's operations. SFC took the student loans that it originated or acquired and bundled them for sale as asset backed securities. Gagné and his law firm, Pepper Hamilton, represented SFC in the preparation of the securitization documents and the preparation of school contracts. One of the reasons SFC was able to find investors for the securitizations was the high performance of the student loans. The Trustee further intends to show that the high performance of the student loans was in large part due to the fact that SFC was taking money from recent

securitizations or from loans to make payments on the earlier student loans, and masking the fact that it was SFC making the payments rather than the students. SFC called those payments "forbearance payments." The Family Defendants' investments facilitated this scheme. Without those payments, the loans would have gone into default and the scheme would have collapsed.

The Trustee will show that Gagné had good reason to know of the fraud at SFC. He was the partner at Pepper Hamilton in charge of the representation and billed the work the firm did for SFC and related entities, as well as for Yao personally. Pepper was paid millions of dollars for the services provided to SFC, its related entities, and Yao, with all of those fees accruing to the benefit of Gagné as the originating and billing partner. When SFC was sued by Nielsen Electronics Institute, a trucking school that alleged that SFC was engaged in a massive Ponzi scheme, Gagné and his partner Duncan Grant had in Pepper files documents supporting Nielsen's claims that SFC was making payments into securitizations on behalf of students. Gagné and Grant did not act on this information with SFC.

Gagné represented not only SFC but also Yao personally. He set up separate companies, which he also represented. He was aware of Yao's diverting assets of SFC through those separate companies.

At the same time that Gagné was representing SFC, Gagné and his family invested in SFC, for which Gagné prepared the documents. The Trustee will show that the multiple representations, and his own interests, gave rise to conflicts of interest which were never effectively waived.

2

As a shareholder, Gagné expressly ratified the actions of Yao and the other directors of SFC. Gagné did all of this, while protecting his own interests, as well as the interests of his family, to the detriment of SFC itself and its other creditors.

When SFC was unable to complete another securitization, Andrew Yao turned to Gagné and the Family Defendants, who advanced funds that Yao used to pay the next round of forbearance payments, again furthering the fraudulent scheme. As the company was unraveling in the spring of 2002, it was Gagné who, in response to an urgent request from Yao, put together the Family funds for SFC. Over that weekend in March, Gagné and the other Family Defendants, including Bast, who immediately flew back from Florida, came up with $3 million, which Yao used to fund the February forbearance payments that were made in early March.

Gagné and the other Family Defendants were involved with Yao in other investments, including Premier Education Group. When the fraud became known in the spring of 2002, and SFC could no longer continue acquiring loans or making forbearance payments, and bankruptcy was imminent, Gagné prepared documents that allowed Yao to transfer his valuable stock in Premier to the Family.

It was through their family relationship with Gagné that the Family Defendants, as a group, were able to take advantage of the excessive fees and preferred payments they received. Accordingly, they were insiders of SFC, and the more than $4 million that the Family received in payments during the twelve months prior to the filing of SFC's bankruptcy, when SFC was insolvent and operated as a fraudulent endeavor, are preferences under the Bankruptcy Code.

The Family Defendants bear the burden of proving the affirmative defenses they have asserted. The Trustee believes that they cannot meet that burden and the payments made to them in the year prior to bankruptcy cannot be shielded as payments in the ordinary course or as payments followed by new value.

The loans made by the Family Defendants to SFC in March 2002 do not constitute new value. In fact, they were part of a scheme devised by Yao to continue making the forbearance payments while he searched for new sources of funding. Yao needed the money and the Family came up with it but they did not do so at their own risk, as is required for the new value defense. Instead, they received security. Andrew Yao gave them his personal guaranty, secured by the assets of SFC. Yao later gave them a pledge of Premier stock – a security which took away any risk on the part of the Family. They were secure that they would be re-paid. The pledge of Premier stock and the Family Defendants' subsequent execution on it were done with the intent to shield that asset from other creditors of Yao, including SFC.

Similarly, the Family Defendants will fail in showing that payments they received in the year prior to filing of the bankruptcy were made in the ordinary course. First, payments made in furtherance of a fraud cannot be in the ordinary course. In addition, the conduct of the parties was not in the ordinary course, in that SFC gave the Family fees and rates that were well in excess of what the market would bear at the time and were not arms length, and transactions based on such excessive fees were not in the ordinary course.

The Trustee also intends to show that the Family Defendants received millions of dollars in fees on loans, pledges of stock, and redemption of stock in the years preceding

SFC's bankruptcy. These payments constitute a fraudulent conveyance under the Pennsylvania Fraudulent Transfer Act ("PUFTA").

The Trustee intends to show that the redemption of SFC stock, made while the company was deeply insolvent, was a fraud on SFC's other creditors. In 2000, the Family Defendants became shareholders of SFC. Structuring the transaction as an equity investment, rather than as a loan, was part of a scheme devised by Yao to make SFC appear more creditworthy, and the Family Defendants participated. Within a year, their stock was redeemed and they were paid $6.7 million. At that time, the stock was in fact worthless because of SFC's insolvency. Under PUFTA, those monies should be returned to the estate.

The payment by SFC of over $1 million in commitment fees was also a fraudulent conveyance. SFC was insolvent at the time and was paying fees well in excess of the market rate, such that there was no reasonably equivalent value received by the company for those fees.

The Trustee will also prove that Andrew Yao's pre-SFC bankruptcy transfer of stock in Premier to the Family Defendants was intended to defraud the creditors of Yao, including SFC, by diverting a valuable asset away from the reach of the bankruptcy estate. At the time of the pledge, bankruptcy of SFC was imminent and, as a result, the exposure of Yao to substantial claims also was imminent. Yao made the pledge, and then later transferred the stock into the hands of the Family Defendants. After the bankruptcy, the Trustee brought claims against Yao arising out of, inter alia, his diversion of assets from the estate. Because of the criminal proceedings against Yao, the civil action has not

proceeded to judgment yet, but the claim remains pending, and SFC is a creditor of Yao, as that is defined under the PUFTA.

The Trustee's damages claims include the following:

Claims Against Family Defendants:

A. Fraudulent conveyance to the Family Defendants of Andrew Yao's stock in Premier Education Group G.P., Inc., DHP G.P., Inc., and One Summit Place G.P., Inc.

B. Overpayment of commitment fees to the Family Defendants in the amount of $1,018,500.

C. Fraudulent conveyance to the Family Defendants by redemption of SFC stock in the amount of $6,932,000.

D. Recovery of principal and interest payments to the Family Defendants within one year of filing petition for SFC's bankruptcy as follows:

| | |
|---|---|
| Pamela Gagné | $92,856.78 |
| Robert Bast | $2,486,596.94 |
| Elizabeth Brennan Trust | $81,369.86 |
| Elizabeth Brennan Trust FBO Gagné | $375,000.00 |
| Elizabeth Brennan Trust FBO Phillip Gagné | $268,583.00 |
| Elizabeth Brennan Trust FBO Elizabeth Gagné | $403,750.00 |
| James Brennan Trust FBO Gagné | $192,217.00 |
| James Brennan Trust FBO Phillip Gagné | $136,483.00 |
| James Brennan Trust FBO Elizabeth Gagné | $192,217.00 |
| Total: | $4,229,073.40 |