IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WELLS FARGO BANK N.A. f/k/a WELLS FARGO BANK MINNESOTA, N.A. as TRUSTEE OF SFC GRANTOR TRUST, SERIES 2000-1, SFC GRANTOR TRUST, SERIES 2000-2, SFC GRANTOR TRUST, SERIES 2000-3, SFC GRANTOR TRUST, SERIES 2000-4, SFC GRANTOR TRUST, SERIES 2001-1, SFC GRANTOR TRUST, SERIES 2001-2, SFC OWNER TRUST 2001-I, AND SFC GRANTOR TRUST, SERIES 2001-3,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>ROYAL INDEMNITY COMPANY,<br><br>Defendant/Counterclaim Plaintiff. | C.A. No. 02-1294-JJF |
| ROYAL INDEMNITY COMPANY,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>STUDENT LOAN SERVICING, LLC, et al.,<br><br>Third-Party Defendants. | C.A. No. 02-1294-JJF |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee of Student Finance Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>Defendants. | C.A. No. 04-1551-JJF |

**TRUSTEE CHARLES A. STANZIALE, JR. PROPOSED REQUESTS TO CHARGE**

Dated: October 2, 2007

Charlene D. Davis, Esquire (No. 2336)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
Fax: (302) 658-6395
cdavis@bayardfirm.com

Michael S. Waters, Esquire
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711
(973) 622-5314

Attorneys for Plaintiff, Charles A. Stanziale, Jr.,
Chapter 7 Trustee for Student Finance Corporation

## TABLE OF CONTENTS

1. Preference – General.................................................................................... 4

2. Preference – Insolvency............................................................................... 4

3. Preference – Insider..................................................................................... 5

4. Preference – Ordinary Course of Business Defense.................................... 7

5. Fraudulent Conveyance – General............................................................... 8

6. Fraudulent Conveyance – Transfer of Stock in Partnerships....................... 9

7. Fraudulent Conveyance – Redemption of SFC Stock.................................. 10

8. Fraudulent Conveyance – Overpayment of Commitment Fees on Loans.... 11

1.  **<u>Preference – General:</u>**

The bankruptcy law provides for the equality of distribution of the debtor's assets among all creditors who have similar legal status. In order to promote that goal, the law also provides that the transfers or payments made by the debtor to a creditor within 90 days, or one year if the creditor is an "insider", before the filing of the bankruptcy case can be "avoided", or set aside, since under the law such transfer or payment may be a "preference" to that particular creditor. In other words, such transfer or payment is a special treatment for that creditor that unfairly disadvantages the other creditors. Because of this the law provides that if a transfer is a preference it must be paid back by the recipient so that those monies can be equally distributed among all creditors.

In this case, the Trustee claims that the transfers in the form of repayments by SFC to the family defendants on loans made to SFC by the family defendants were "preferences" that should be paid back. The Trustee further claims that since defendant Roderick Gagne was an "insider" of SFC, all of the repayments on these loans made to him and to the other family defendants within one year of June 5, 2002 should be paid back. I will instruct you later what makes someone an insider of SFC.

2.  **<u>Preference – Insolvency:</u>**

The amounts and dates of the repayments by SFC on these loans have been stipulated and there is nothing for you decide on that issue. However, an element which is for you to decide is whether the loan repayments by SFC to the family defendants were made while SFC was insolvent, which means that SFC's debts exceeded the value of SFC's property at the time of these payments. The Trustee must prove by a preponderance of the evidence that SFC was

2

insolvent at the time of these repayments or within a reasonable time of these repayments. Briden v. Foley, 776 F2d 379, 382 (1st Cir. 1985). Concerning this element of insolvency, I tell you that the law presumes that the debtor, in this case, SFC, was insolvent during all of the 90 days immediately before the date that the bankruptcy case was commenced, which was June 5, 2002. 11 U.S.C. § 547.

3. **Preference – Insider**:

Since some of the loan repayments were made during the period between 90 days before the bankruptcy and one year before the bankruptcy, for these repayments to be considered preferences the Trustee must prove that the defendant Roderick Gagne was an "insider" of SFC.

An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor. Thus, you should examine the evidence concerning Roderick Gagne's activities and relationship with SFC and his activities and relationship with Andrew Yao, SFC'S sole owner, (except for the period when the family defendants were co-owners with him of SFC). In re Henderson, 96 B.R 820, 824-25 (Bnkr. E.D. Tenn. 1989); In re Acme-Dunham, Inc., 50 B.R. 734, 739 (D. Me. 1985); Walsh v. Dutil (In re Demko), 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001); In re Student Finance Corp., 335 B.R. 539, 547 (D. Del. 2005). Some of the evidence with which the Trustee points to with respect to Roderick Gagne's close relationship with SFC includes:

- He functioned as SFC's outside general counsel and was recognized as such by Yao and SFC's accountants. Through his role as outside general counsel he became aware of the various investment opportunities of which he and his family were then able to take advantage;
- He served as Yao's personal counsel;

3

- He was sufficiently involved in SFC to give business advice to Andrew Yao and the company;
- Through trusts in which he was a trustee and in some cases a beneficiary, along with his wife and his uncle, he entered into non-arms length business transactions with SFC, including loans as to which the Trustee contends that the commitement fees aggregated more than $1 million above market and that the interest and fees combined provided an effective annual interest rate as high as 77%;
- He and his family members were shareholders in SFC for a year, at the end of which SFC redeemed their stock in the company for almost $7 million, at a time when the company was already deeply insolvent. The stated purpose of the investment, protected at all times by Yao's personal guarantees, was to present to the outside world an appearance of financial health to SFC. As SFC's attorney, Gagné had a duty not to prefer the shareholders (his own family) over the creditors of an insolvent company. Gagné, as a partner at Pepper Hamilton, documented and completed the transaction for the redemption of stock for himself and his family;
- A Pepper employee was an officer, assistant secretary of SFC for several years;
- He aided Andrew Yao in manipulating SFC's assets among various inter-related companies, which was in part designed to mask distributions to Yao;
- Over a weekend in March 2002, in response to an emergency request from Yao, Gagné and the other Family Defendants, including Bast, who urgently flew back from Florida, came up with $3 million which Yao used to fund the February forbearance payments that were made in early March.

4

Having examined all of the evidence presented by both sides as to the activities of Roderick Gagne in relation to SFC and Andrew Yao, you must determine whether the Trustee has proved by a preponderance of the evidence that Roderick Gagne was an insider of SFC.

Since the other family defendants are relatives of Roderick Gagne, and through this family relationship they were likewise able to take advantage of excessive fees and preferred payments, if you find that Roderick Gagne was an insider of SFC, this would make the other family defendants likewise insiders of SFC. See 11 U.S.C. § 101 (31) (B)(vi). Cf. In re A. Taricone, 286 B.R. 256 (Bankr. S.D.N.Y. 2002).

4.   **Preference - Ordinary Course of Business Defense**:

Under the law, there is a defense, sometimes called the ordinary course of business defense, to the Trustee's preference claim. In order to establish this defense, the family defendants must prove the following elements by a preponderance of the evidence:

**First**: That monies that the family defendants received from SFC were in payment of a debt incurred by SFC in the ordinary course of business or financial affairs of SFC and of the family defendants;

**Second**: That the payments were made in the ordinary course of business or financial affairs of SFC and the family defendants; and

**Third**: That the payments were made according to ordinary business terms.

If the family defendants have proved each of these three elements by a preponderance of the evidence then for any such payment your verdict should be for the family defendants and against the Trustee on the Trustee preference claim for that particular payment. 11 U.S.C. § 547(c)(2).

In assessing these elements, you should consider the following:

1. Whether the loans were in furtherance of a fraud, Ponzi scheme or an unorthodox business being operated by SFC. If so, they cannot be considered to be in the ordinary course. In re C.F. Foods L.P., 280 B.R. 103 (Bankr. E.D. Pa. 2002);

2. Whether the loan repayments were regular or whether they were erratic in both time and amount. If erratic, they cannot be considered to be the ordinary course;

3. Whether the loans and in particular the commitment fee part of the loans were established in an arm's length transaction or whether they were in an unreasonable amount and above the marketplace rate. If non arm's length and above the marketplace rate, they cannot be considered to be in the ordinary course. In re Molded Acoustical Products, Inc., 18 F. 3d 217 (3d Cir. 1994).

4. Whether it was the ordinary course of business or financial affairs of the family defendants to be a lender of money. If not, the loans cannot be considered to be in the ordinary course.

5. **Fraudulent Conveyance - General**:

The Trustee claims in this lawsuit that the family defendants received transfers of Andrew Yao's stock in Premier Education Group, G.P., Inc.; Andrew Yao's stock in DHP G.P., Inc., Andrew Yao's stock in One Summit Place, G.P., Inc.; $6,932,000 through redemption of SFC stock; and overpayment of commitment fees in the amount of $1,018,500 by SFC on loans made to the family defendants. The Trustee claims that these sums and property rightfully belong back in the possession of the Trustee to be redistributed to all of SFCs creditors. These claims are called fraudulent conveyance claims.

6. **Fraudulent Conveyance – Transfer of Stock in Partnerships**:

Let me first address Andrew Yao's transfer of the stock in the three companies. The Trustee claims that Andrew Yao made this transfer with actual intent to hinder, delay or defraud his creditors, most notably SFC, by diverting available assets away from the reach of the bankruptcy estate. Fraudulent intent should be determined from all the facts and circumstances of the case. 12 Pa. C.S. § 5104(a)(1). A fraudulent intent can be inferred from the existence of a general fraudulent scheme or participation in a Ponzi type scheme. In re C.F. Foods L.P., 280 B.R. 103 (Bankr E.D. Pa. 2002). In particular, the general chronology of the events and transactions under which the stock was transferred should be examined, as well as family, friendship or close associate relationship between the parties. In re Verma, 2007 Bankr. LEXIS 3159 (F.D.N.Y. Sept. 14, 2007), citing In re Kaiser, 722 F 2d. 1574, 1582-83 (2d Cir. 1983). Some indicators of fraudulent intent, although not exclusive, may be used to infer the actual intent to defraud. These indicators are:

1. the transfer or obligation was to an insider;
2. the debtor retained possession or control of the property transferred after the transfer;
3. the transfer or obligation was disclosed or concealed;
4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. the transfer was of substantially all the debtor's assets;
6. the debtor absconded;
7. the debtor removed or concealed assets;
8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the

7

   obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 12 Pa. C.S. § 5104 (b).

If you find that Trustee has proved by a preponderance of the evidence that Andrew Yao transferred his stock in the three companies with actual intent to hinder, delay or defraud creditors, then your verdict should be in favor of the Trustee with respect to this stock.

7. **Fraudulent Conveyance – Redemption of SFC Stock**:

Let me next address the claim that SFC redeemed the shares of its stock held by the family defendants by paying the family defendants $6,932,000.

Another type of fraudulent conveyance is:

A transfer or obligation in which the debtor received less than a reasonably equivalent value in the exchange. In other words, the value of what the debtor received was less than what the debtor transferred away; and

The debtor was insolvent on the date that such transfer was made or obligation incurred, or became insolvent as a result of such transfer. Insolvent means that the fair value of the debtor's assets is less than the debtor's liabilities. 12 Pa. C.S. § 5104 (a)(2).

Thus, if you find that the Trustee has proved by the preponderance of the evidence that the family defendants received $6,932,000 in exchange for worthless stock of SFC and that SFC was insolvent at the time of the transfer or became insolvent as a

result of the transfer, then your verdict should for the return of that $6,932,000 from the family defendants to the Trustee for the benefit of all the creditors of SFC.

8. **Fraudulent Conveyance – Overpayment of Commitment Fees on Loans**:

Let me next address the claim that SFC overpaid $1,018,500 in commitment fees on loans received from the family defendants. Again, the type of fraudulent conveyance claimed here is the same type claimed with respect to the stock redemption, that is:

A transfer or obligation in which the debtor received less than a reasonably equivalent value in the exchange. In other words, the value of what the debtor received was less than what the debtor transferred away; and

The debtor was insolvent on the date that such transfer was made or obligation incurred, or became insolvent as a result of such transfer. Insolvent means that the fair value of the debtor's assets is less than the debtor's liabilities. 12 Pa. C.S. § 5104 (a)(2)

Here the Trustee claims that by SFC paying over $1,000,000 in excess commitment fees to borrow money from the family defendants received less than the reasonably equivalent value it got for the loan. The Trustee claims that these fees paid by SFC were well in excess of any market rate.

Thus, if you find that SFC paid excessive commitment fees to the family defendants on loans made by the family defendants to SFC as a result of which the family defendants received fees without value to SFC, then your verdict should be for the return from the family defendants to the Trustee for the benefit of all the creditors of SFC of the amount you determine to be the excessive commitment fees.