# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee of Student Finance Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PEPPER HAMILTON LLP, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 04-1551-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OF TRUSTEE IN OPPOSITION TO FAMILY DEFENDANTS' MOTIONS IN LIMINE TO STRIKE CERTAIN WITNESSES AND EVIDENCE (IN LIMINE NO. 1) AND TO BAR EVIDENCE RELATING TO SFC'S OPERATION OF A PONZI SCHEME (IN LIMINE NO. 2)

The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 429-4260

and

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711
*Attorneys for Plaintiff Charles A. Stanziale Jr., Trustee*

672340-1

I.  **INTRODUCTION**

The Trustee submits this brief in opposition to the Family Defendants' motion in limine to exclude (1) evidence that SFC was operated as a fraudulent Ponzi scheme, (2) the testimony of witnesses from Pepper Hamilton, LLP regarding Gagné's conduct in support of SFC's operations and the fraud, (3) the testimony of Konrad Smith, a principal of the Nielsen Electronics Institute, a school involved with SFC that uncovered the Ponzi scheme and raised the issue in a lawsuit defended by Pepper Hamilton while Gagné and the Family Defendants were continuing to invest in the scheme, (4) the testimony of a forensic investigator, William J. Spears, who investigated the fraudulent scheme, and (5) the testimony of a legal ethics expert, Bruce Green, that Gagné's concurrent representations of Yao and SFC and participation in the many transactions raised conflicts.[1] In each respect, this evidence is relevant to material issues raised by both the Trustee's claims and by the affirmative defenses asserted by the Family Defendants. Specifically, this evidence is relevant to the issues of fraudulent intent, the fraudulent nature of SFC's operations, and the insider status of Gagné and the other Family Defendants. Therefore, the Trustee is entitled to present the evidence relevant to these issues, and each of the in limine motions must be denied.

II. **ARGUMENT**

    A.  **The Family Defendants Have Not Met the Standard for Barring Evidence In Limine**

A motion in limine to exclude evidence at trial should be granted only when it demonstrates that the evidence is "clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Technologies,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993); *Auenson v. Lewis,*

---

[1] The Trustee is withdrawing his identification of three other witnesses addressed by the Family Defendants' motion -- Myron Glucksman, Steve Haenchun, and David Pauker. This opposition, therefore, does not further address that part of the motion.

672340-1

1

1996 U.S. Dist. LEXIS 11834, *1-2 (E.D. La 1996); *Kraemer v. Franklin & Marshall College*, 1995 U.S. Dist. LEXIS 17081, (E.D. Pa. 1995). Absent a clear and unmistakable showing of inadmissibility, the motion should be denied and, if necessary, any issue addressed with the benefit of the context provided at trial. As one court summarized the standard:

> This court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.

*Hawthorne Partners v. AT&T Technologies, supra*. The Family Defendants' motion does not meet this burden.

### B. The Motion to Exclude Evidence of the Ponzi Scheme Must Be Denied

The operation of SFC as a fraudulent Ponzi scheme is material to the parties' claims and defenses in several respects.

#### 1. The Ponzi Scheme Is Material to the Trustee's Fraudulent Transfer Claim

The Ponzi scheme is directly material to the element of actual intent to hinder, delay or defraud creditors under the Trustee's fraudulent transfer claim under the Pennsylvania Uniform Fraudulent Transfers Act, 12 Pa. C.S. §5104(a). "[A]ctual intent to hinder, delay or defraud creditors may be inferred from the Debtor's participation in a Ponzi scheme." *Liebersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, 280 B.R. 103, 110 (E.D. Pa. 2002); *Quilling v. Stark*, 2006 WL 1683442 at *6 (N.D. Tex. 2006*); In re Bayou Group, LLC*, 363 B.R. 674 (S.D.N.Y. 2007); *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (M.D. Fla. 2002). This inference extends to any transfers made under or in furtherance of the Ponzi scheme, which would include the repayments of the loans provided by the Family Members to SFC and

the redemption of their stock in SFC, all of which were based on transactions that furthered the Ponzi scheme by, for example, funding forbearance payments to hide default rates that would have alerted investors to the scheme and by supporting SFC's misrepresentation to investors that it had the ability to raise equity capital. *See In re C.F. Foods, L.P., supra* (the debtor's contributions to the defendant charity furthered the debtor's Ponzi scheme by contributing to its appearance as a legitimate business); *In re World Vision Entertainment, Inc., supra* ("any acts taken in furtherance of the Ponzi scheme, such as paying brokers' commissions, are also fraudulent.")

The Family Defendants' argument that the Ponzi scheme is immaterial because this claim challenges a transfer by Yao as debtor rather than SFC misses the point. Yao was himself a participant in the Ponzi scheme (indeed, he was the primary operator of the scheme through SFC). Further, at the time of the transfer, SFC had the basis for claims against Yao based on the fraudulent scheme and, therefore, was a creditor of Yao. As a result, the transfer of Yao's property to the Family Members hindered, delayed and defrauded SFC with respect to its claims against Yao, and the evidence of the Ponzi scheme in which Yao participated is evidence of his actual intent to hinder, delay, and defraud creditors.

### 2. The Ponzi Scheme Is Material to the Family Defendants' Affirmative Defenses to the Preference Claim

On the Trustee's preference claim, the Ponzi scheme is placed in issue by the Family Defendants' own affirmative defenses. Specifically, the Family Defendants invoke the "ordinary course of business" exception, 11 U.S.C. §547(c)(2), and the "new value" exception, 11 U.S.C. §547(c)(4). These exceptions are affirmative defenses on which the Family Defendants bear the burden of proof. *In re Hechinger Inv. Co. of Del.*, 320 B.R. 541, 547 (D. Del. Bankr. 2004).

Because neither exception applies to transactions related to a Ponzi scheme, these defenses place the Ponzi scheme in issue.

The ordinary course of business defense puts the Ponzi scheme in issue in two ways. First, "Ponzi-type schemes are not legitimate business enterprises and therefore transactions connected with such schemes are not entitled to §547(c)(2) protection." *In the Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 819 F.2d 214, 218 (9th Cir. 1987*); accord In re Bullion Reserve of North America*, 836 F.2d 1214, 1219 (9th Cir. 1988); *In re Western World Funding, Inc.*, 54 B.R. 470, 481 (D. Nev. Bankr. 1985); *In re Baker & Getty Financial Services, Inc.,* 88 B.R. 792, 799 (N.D. Ohio Bankr. 1988*); In re Montgomery*, 123 B.R 801, 814 (M.D. Tenn. Bankr. 1991). These holdings are consistent with the purpose of the ordinary course of business exception recognized by the Third Circuit: to facilitate normal transactions *that might enable a debtor to avoid bankruptcy* and, thereby, potentially benefit all current and future creditors. *See In re Molded Acoustical Products, Inc.,* 18 F.3d 217, 219, 225 (3d Cir. 1994). This potential benefit of the ordinary course of business exception does not apply to transactions in furtherance of a Ponzi scheme because, by definition, the continuation of a debtor's Ponzi scheme cannot lift the debtor out of insolvency and enable it to avoid bankruptcy. Thus, the Family Defendants' ordinary course of business defense requires adjudication of the issue of whether the allegedly "ordinary" transactions were in furtherance of a Ponzi scheme.

Second, the nature and extent of the *pre-insolvency* transactions are relevant to whether the challenged transfers were in the ordinary course of business. *In re Molded Acoustical Products, Inc.*, 18 F.3d at 225. Most of the transactions that the Family Defendants allege to establish the ordinary course occurred in 1998 to 2002. The Trustee's expert, Harry Steinmetz, will testify that SFC was insolvent by 1998. The testimony of Mr. Spears will show the scope of

the forbearance payments made by SFC. Minimally, whether SFC was operated as a Ponzi scheme is relevant to the issue of when it was insolvent and thereby, the issue of the nature and extent of the Family Defendants' transactions with SFC pre-insolvency.

The Family Defendants' new value defense also puts the Ponzi scheme in issue. Just as with the ordinary course of business exception, applying the new value exception to a transfer relating to a Ponzi scheme would subvert the purpose of the statute. It would reward conduct that, because of the nature of a Ponzi scheme, could not assist the debtor to avoid bankruptcy and, instead, by delaying the exposure of the scheme could only further harm creditors. *See New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc).*, 880 F.2d 679, 680-81 (3d Cir. 1989) (the purpose of the 547(c)(4) exception is to encourage the extension of credit to debtors in financial difficulty because that potentially assists such a debtor to avoid bankruptcy); *In re American International Airways, Inc.,* 68 B.R. 326, 337 (Bankr.E.D.Pa.1986) (§547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services"). Thus, it is highly relevant and material that the March 2002 transfer of $3.3 million that is the subject of the new value defense made by the Family Members to SFC was used by SFC to fund forbearance payments that were made to mask the true rate of student loan defaults and, thereby, forestall the discovery of the Ponzi scheme defrauding SFC's creditors.

For all of these reasons, the Ponzi scheme is material to the claims and defenses asserted by the parties. The Family Members' motion to exclude evidence of this scheme, therefore, must be denied.

672340-1

5

### B.     The Motion to Exclude the Testimony of Witnesses Must Be Denied

#### 1.     The Pepper Witnesses

The Trustee intends to call three attorneys (Duncan Grant, Andrea Unterberger, and Alfred Wilcox) and two paralegals (Darcy Lee Malcolm and Maria DeCarlo) from Pepper Hamilton LLP as witnesses at trial. These witnesses are material to the issues of Gagné's actions in furtherance of the fraudulent scheme, and of Gagné's insider status.

Pepper represented SFC in 2001 in matters that provided notice *to Gagné* of the fraudulent scheme and reflect his conduct that served to assist that fraud. For example, at Gagné's instruction, Pepper attorneys Mr. Grant and Ms. Unterberger represented SFC in 2001 in a lawsuit by one of the schools involved with SFC, Nielsen Electronics Institute. Information exchanged in that lawsuit and that was in Pepper's file showed that SFC was involved in a fraudulent scheme. The testimony by Mr. Grant and Ms. Unterberger will address the issues and information brought to light within Pepper during that lawsuit, and conveyance of that information to Gagné. They also will address Gagné's oversight of and involvement in the matter, such that he was both actually and presumptively aware of the fraudulent nature of SFC's operations revealed in the *Nielsen* matter.

In addition, Gagné, along with Pepper paralegal Ms. Malcolm, worked on revised school contracts for SFC in 2001 that were revised specifically to address the accounts that were used to mask the student loan default rates and, thereby, enable the Ponzi scheme to continue. Ms. Malcolm was also involved in providing information to regulatory authorities. Gagné has denied working on the revisions of these contracts. In an April 2002 memorandum to Pepper's Executive Committee, written as the Ponzi scheme was collapsing, Gagné suggested to Pepper

that he had only just became aware of the revisions of the contract. Mr. Wilcox was involved in this exchange. Ms. Malcolm's testimony and particularly the documents exchanged will show Gagné's involvement in the revisions and knowledge of what was being presented to regulatory authorities as SFC's contracts.

Because this evidence addresses Gagné's actions that facilitated the Ponzi scheme, it is relevant to an issue that is material both on the Trustee's fraudulent transfer claim and the Family Defendants' affirmative defenses to the preference claim. (*See* Point II.B, *supra*).

Further, the testimony of the Pepper witnesses is relevant to the "insider" issue. It is undisputed that an element of the Trustee's preference claim is whether Gagné, and thereby the other Family Defendants, were insiders of SFC at the time of the millions of dollars in preferential transfers they received in the year prior to the bankruptcy filing. 11 U.S.C. §547(b)(4)(B). Insider status is determined under a flexible standard based on the defendant's relationship with the debtor. *Stanziale v. Peppe, Hamilton LLP (In re Student Finance Corp.)*, 335 B.R. 539, 547 (D.Del. 2005). In addition to control, insider status may be based on control, influence, access to information, or a non-arms length relationship. *Id.*; *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 565 (S.D.N.Y. Bankr. 2002); *Hirsch v. Va. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 263-4 (S.D.N.Y. Bankr. 2002). The standard entails a fact-intensive inquiry regarding the parties' relationship and the surrounding circumstances. *Stanziale v. Pepper, Hamilton LLP (In re Student Finance Corp.)*, 335 B.R. 539, 547 (D.Del. 2005).

The testimony of Ms. DeCarlo, who was Gagné's paralegal at Pepper, is relevant to the insider issue because, while she was Gagné's paralegal, she also was the Assistant Secretary of SFC. Her role in that position is evidence of Gagné's influence at SFC and the close relationship

between Gagné and SFC's principal at the time, Yao, and, thereby, the closeness of his relationship with SFC. Further, the testimony of the Pepper witnesses regarding Gagné's and Pepper's multiple representations of SFC and certain of the Family Defendants in the transactions between them provides evidence that those transactions were not arms-length.

Therefore, the testimony of the Pepper witnesses also is relevant to the material issue of insider status. For this reason also, the Family Defendants' in limine motion must be denied.

### 2.   Konrad Smith

The Family Defendants' motion to exclude the testimony of Konrad Smith also must be denied because of the materiality of the Ponzi scheme to the claims and defenses to be tried. Mr. Smith was a principal of the Nielsen Electronics Institute, which was a school for which SFC provided student loans. In 2001, Nielsen sued SFC over SFC's failure to credit Nielsen with payments by students which actually proved to be the forbearance payments used to hide the Ponzi scheme. As discussed above, Pepper represented SFC in that litigation.

Mr. Smith will testify at trial to the facts uncovered by Nielsen indicating the existence of a Ponzi scheme, and the disclosure of those facts to Pepper in the litigation. As discussed above, this evidence is relevant not only to the existence and operation of the Ponzi scheme, but to Gagné's awareness of it.

### 3.   William Spears

As argued at length in Section B1 above, the fact that SFC was operated as a Ponzi scheme is directly material to the Trustee's fraudulent conveyance claim. Spears did an analysis of SFC's operations, including the forbearance payments. He is expected to testify about the extent of forbearance payments at SFC. This testimony is material to the existence of actual intent to defraud the creditors of SFC as well as those of Andrew Yao. It is also material to the

Family Defendants' affirmative defense that payments they received were in the ordinary course of business, when in fact they were part of a fraudulent scheme conducted by SFC.

### 4. Professor Bruce Green

Professor Green has offered an opinion that the many facets of Gagné's representation, including SFC and related entities, Andrew Yao personally, as well as Gagné and his family's investments in SFC, created a conflict of interest. Gagné attempted to have the parties waive that conflict but according to Professor Green, that waiver was ineffective. Indeed, Gagné himself did not even recognize that certain aspects of his activity gave rise to a conflict. This is directly material to the Trustee's claim that Gagné's relationship with SFC was not arms-length, and that Gagné was in fact an insider of the company. It is also relevant to the Trustee's rebuttal of the Family Defendants' argument that payments made to them were in the ordinary course of business, since they were actually part of a violation of Gagné's own ethical duty and could not have been in the ordinary course.

III. **CONCLUSION**

For the foregoing reasons, the motions in limine filed by the Family Defendants to strike certain witnesses from the Trustee's witness list and preclude testimony, and to bar evidence relating to a Ponzi scheme, should be denied.

Dated: October 4, 2007

Respectfully submitted,

THE BAYARD FIRM

/s/ *illegible signature*

Charlene D. Davis (I.D. #2336)
Mary E. Augustine (I.D. #4477)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 429-4260

and

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Michael S. Waters, Esq.
Stephen F. Payerle, Esq.
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711
*Attorneys for Plaintiff Charles A. Stanziale Jr., Trustee*