# EXHIBIT 6

*[handwritten margin notes: "MC 3/12/01 / All pages / tw 4/01"]*

# Pepper Hamilton LLP
### Attorneys at Law

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Fax 215.981.4750

March 1, 2001

*[handwritten margin notes: "This letter will need to be updated from this date to the date of our opinion (last day of fieldwork) / Mark Carrajula spoke w/ Rod Gagne of Pepper Hamilton at 3:30 1/7/01. We have taken that no events have taken place since the date of this letter that would cause him to change his response. tw 4/27/01"]*

McGladrey & Pullen, LLP
Two Penn Center Plaza
Suite 1420
Philadelphia, PA 19102

      Re:    <u>Student Finance Corporation</u>

To Whom it May Concern:

      By letter dated January 10, 2001 (the "Inquiry Letter"), Diane D. Messick, Corporate Controller of Student Finance Corporation (the "Company"), has requested that we furnish you with certain information in connection with your examination of the Company's financial statements as of December 31, 2000 and for the year then ended. As further limited below, the information in this response relates exclusively to matters of which we are aware that existed at December 31, 2000 and during the period from that date to the date of this response.

      Unless otherwise stated herein, this response is limited by and in accordance with the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (approved December 5, 1975) and the accompanying "Commentary" thereto (the "Statement of Policy") and, to the extent not inconsistent with the Statement of Policy, the Inquiry Letter (including specifically but without limitation any materiality standards defined in the Inquiry Letter). The limitations set forth in the Statement of Policy with respect to the scope of this response (paragraph 2) are specifically incorporated herein by reference, and any statement herein with regard to loss contingencies is qualified in its entirety by paragraph 5 of the Statement of Policy and the accompanying "Commentary" thereto. Notwithstanding anything to the contrary in the Inquiry Letter, this letter does not respond to any requests with respect to gain contingencies.

      Our engagement by the Company has been limited to specific matters as to which we were consulted by the Company, and it should therefore be noted that there may be matters as to which we have not been consulted. The information in this response is limited to those matters as to which we have been specifically engaged and to which we have devoted substantive attention in our professional capacity, in the form of legal consultation or representation, on behalf of the Company.

*[handwritten: "Note: This attorney Rod Gagne is the main counsel for Student Finance Corporation and its related entities"]*

Philadelphia    Washington, D.C.    Detroit    New York    Pittsburgh
Berwyn    Cherry Hill    Harrisburg    Princeton    Tysons Corner    Wilmington
www.pepperlaw.com

CONFIDENTIAL    EXHIBIT 22 (I) 8/30/06    ACCT006629

**Pepper Hamilton LLP**
Attorneys at Law

Page 2
March 1, 2001

With respect to the request in the Inquiry Letter concerning litigation (other than unasserted possible claims or assessments) upon which our comment has been requested, we hereby confirm that, subject to the limitations set forth in this response, we have the following to report:

### Nielsen Electronics Institute v. Student Finance Corp.

We described the status of this litigation in our prior letter dated July 21, 2000 which we incorporate by reference. As of the time of that letter, the Court still had not ruled on our motion to dismiss the RICO and fraud portions of the amended complaint. Also, as of July 21, 2000, the Court had referred the case to the federal magistrate judge for the purpose of holding a mediation conference; the conference had been scheduled for September 9, 2000. That conference was not held as scheduled, but was rescheduled for January 17, 2001, and then rescheduled again for May 24, 2001 at the request of the plaintiff. In the event that the case has not been resolved through dismissal or settlement, the pretrial conference will be held on July 19, 2001. The trial date will be determined at the pretrial conference.

Since we sent you our July 21, 2000 letter, the parties concluded discovery.* Thereafter, on September 29, 2000, the Court issued an order (the "Order") granting our motion to dismiss the RICO and fraud claims of NEI's amended complaint. Surprisingly, on January 16, 2001, the Court issued an opinion in which it vacated that portion of its September 29, 2000 Order, and reinstated the RICO and fraud claims. As a result of that opinion, all four counts of NEI's amended complaint remain.

On November 3, 2000, the Company moved for summary judgment on NEI's contract claim, as well as on the Company's counterclaim for damages in the amount of approximately $950,000, plus pre-judgment interest. The Court has not yet ruled on the Company's motion. We plan to move for summary judgment on some, if not all, of NEI's RICO and fraud claims.

On the basis of the discovery record which was established in the case, the Company remains confident that NEI's claims against the Company are without merit. The Company also believes that NEI owes the Company approximately $950,000, plus pre-judgment interest. That amount is less than the amount that we stated we thought was owed to the Company in our previous letter. The reduction is due to the need in a motion for summary judgement to accept as true all of the Plaintiff's facts. The Plaintiff's expert witness' calculation of damages was approximately $950,000 which the Company would accept if the Court found in its favor on the motion for summary judgement. If the motion for summary judgement is denied, the Company will seek the higher damage claims as established by its expert witnesses at trial.

* = No specific disclosure was made for FYE 12/31/99. Since the status of this case has not significantly changed and there is no discussion regarding the likely outcome, we will not make a specific reference to this item in the footnotes for FYE 12/31/00.   ]-E

**Pepper Hamilton LLP**

Page 3
March 1, 2001

Because the Company's motion for summary judgment on the contract claim has not yet been decided, and because of the inherent risks of the litigation process, it is not possible to state whether an outcome adverse to the Company is probable or remote within the meaning of the Statement of Policy, nor is it possible to estimate, in the event of an adverse outcome, the range of any judgment or loss. ⚹

### Federal Deposit Insurance Corporation v. Student Finance Corporation

As described in our January 5, 2000 letter, the Company has been sued by the Federal Deposit Insurance Corporation, as receiver for BestBank Colorado, in the United States District Court for the District of Colorado. We are not representing the Company in that litigation and you should direct any inquiries about that litigation to Terrence Gill, Esquire at the law firm of Sherman & Howard, LLC, Suite 3000, 633 17th Street, Denver, Colorado 80202, (303) 299-8066.

We note that the Company is making a representation to you with respect to the absence of unasserted possible claims or assessments. We are, in accordance with the Statement of Policy, not commenting on unasserted possible claims or assessments unless they are specifically identified in the Company's Inquiry Letter, the Company in its Inquiry Letter has specifically requested our comment on such unasserted possible claims or assessments and the other conditions set forth in the Statement of Policy respecting such requests have been satisfied. Therefore we are not replying to such request for confirmation.

Consistent with the last sentence of paragraph 6 of the Statement of Policy and pursuant to the Company's request, we hereby confirm as correct the Company's understanding that, whenever in the course of performing legal services for the Company with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, we have formed a professional conclusion that the Company must disclose or consider disclosure concerning such possible claim or assessment, we, as a matter of professional responsibility to the Company, will so advise the Company and will consult with the Company concerning the question of such disclosure and the applicable requirements of Statement of Financial Accounting Standards No. 5.

CC-1 ¾ 197,567.04 / As of December 31, 2000, the Company was indebted to this firm for $196,590.16 in accounts receivable, $96,658.00 in unbilled time, and $9,582.88 in unbilled disbursements.

⚹ = SEE NOTE ON PREVIOUS PAGE

106,240.88
CC-2¾ 126,018.48 Accounts
19,777.40 Excess Accounts
TSTA

**Pepper Hamilton LLP**
Attorneys at Law

Page 4
March 1, 2001

       This letter is solely for your information in connection with your audit of the Company's financial statements and is not to be quoted or referred to in whole or in part in any financial statements of the Company, nor is it to be filed with, or submitted to, any governmental agency or other person without the prior written consent of this firm, except as specifically permitted by paragraph 7 of the Statement of Policy.

                                          Very truly yours,

                                          PEPPER HAMILTON LLP

                                          By_____
                                          W. Roderick Gagné, A Partner

cc:    Diane D. Messick
        Corporate Controller

CONFIDENTIAL

ACCT006632