IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
In re:                           :
STUDENT FINANCE CORPORATION,     :
         Debtor.                 :
                                 :
---------------------------------
                                 :
CHARLES A. STANZIALE, JR.,       :
Chapter 7 Trustee Of Student     :
Finance Corporation,             :
                                 :
         Plaintiff,              :
                                 : Civil Action No. 04-1551 JJF
     v.                          :
                                 :
PEPPER HAMILTON LLP, et al.      :
                                 :
         Defendants.             :
```

Michael S. Waters, Esquire and Lois H. Goodman, Esquire of McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Newark, New Jersey.
Charlene D. Davis, Esquire and Mary E. Augustine, Esquire of THE BAYARD FIRM, Wilmington, Delaware.

Attorneys for Plaintiff.

Neil G. Epstein, Esquire; Carol L. Press, Esquire and Charles F. Forer, Esquire of ECKERT SEAMANS CHERIN & MELLOT, LLC, Philadelphia, PA.
Karen Lee Turner, Esquire of ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE

Attorneys for Defendants.

**MEMORANDUM OPINION**

October 5, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is a Motion to Strike the Trustee's Improper Damage Claims (D.I. 317) filed by Defendants Pamela Bashore Gagne, Robert L. Bast, the Brennan Family Trusts, and W. Roderick Gagne as trustee of the Brennan Family Trusts (collectively, the "Family Defendants"). Specifically, the Family Defendants requests that the Court preclude Charles A. Stanziale, Jr., Chapter 7 Trustee (the "Trustee") of Student Finance Corporation ("SFC") from asserting at trial two damages claims raised in the Trustee's Rule 26(a)(1)(C) Disclosure Statement. The damages claims at issue allegedly arise out of (1) asserted overpayment of loan commitment fees paid by SFC to the Family Defendants during the period from 1999 through 2001, and (2) stock redemption payments in the total amount of approximately $7 million made by SFC to the Family Defendants during the period from February 2000 through January 2001. For the reasons discussed below, the Court will grant the Family Defendants' Motion.

## BACKGROUND

Two causes of action remain pending from the Trustee's First Amended Complaint against the Family Defendants: (1) Count VII, a fraudulent conveyance claim; and (2) Count XI, a preference claim. All other claims raised by the Trustee were dismissed on December 22, 2005 (D.I. 70). Whether the remaining causes of

1

action encompass the loan commitment fees and stock redemption payments discussed in the Trustee's Rule 26(a)(1)(C) Disclosure Statement is the crux of the parties' present dispute.

## DISCUSSION

Rule 8(a) of the Federal Rules of Civil Procedure requires that "[a] pleading which sets forth a claim for relief ... contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." This statement of the claim must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957), rev'd on other grounds Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

### I. First Amended Complaint

The Trustee contends that the Family Defendants were given ample and unequivocal notice of the transactions at issue, the excessive loan commitment fees and the fraudulent stock redemption, from the inception of the lawsuit.

Count VII of the Trustee's First Amended Complaint (the "Complaint") (D.I. 76), entitled "Fraudulent Conveyance Claim Against the Family," specifically discusses a transfer of interest in multiple entities by Andrew Yao ("Yao") to the Family Defendants. Regarding this transaction, the Complaint states "The transaction may be avoided and recovered from the Family pursuant to 11 U.S.C. §§ 544(b) and 550, and 12 Pa. C.S.A. §§

5101-5119" (¶ 278). Count VII also "incorporates by reference" all of the Complaint's preceding paragraphs.

Count XI of the Complaint, entitled "Preference Claim Against the Family Defendants," discusses in detail all of the payments made by SFC to the Family Defendants within one year of SFC's bankruptcy filing date, June 5, 2002. It also "incorporates by reference" all of the Complaint's preceding paragraphs.

The Complaint, in the factual background paragraphs preceding Counts VII and XI, describes in detail the series of loans the Family Defendants made to SFC between 1996 and 2002. It also discusses, in a factual background section entitled "Pepper, Gagne, and Gagne's Family's Involvement in SFC," the redemption of SFC stock by Family Defendants.

> In 2000, the Family loaned $6 million to SFC, which was converted to common stock. When these shares were redeemed, the Family was repaid principal plus interest and was paid a 7% "Payoff Premium."

(D.I. 76, ¶ 77).

While the Complaint unquestionably includes discussion of the transactions at issue, it would be empty formalism to allow the Trustee, by an incorporation clause, to insert every transaction discussed in the Complaint into the fraudulent conveyance and preference claims. Of the Complaint's eleven original counts, only two remain. Not all of the transactions discussed in the factual background section pertain to each

3

individual Count. The explicit discussion of the Family Defendant's loan conversion and stock redemption in paragraph seventy-seven, for example, is in the context of factual support for a conflict of interest argument, not a fraudulent conveyance claim. See D.I. 76, ¶¶ 75-76. The Trustee's misquote of its own complaint, in its Memorandum in Opposition to Family Defendant's Motion to Strike (D.I. 333, p.5), and inclusion of "transactions" in the plural is telling. Count VII of the Complaint discusses "transaction" in the singular, which accords with the plain understanding of Count VII as discussing, at length, only the Yao transfer of interest. Count VII discusses one transaction, by one transferor. Similarly, Count XI explicitly lists numerous payments made by SFC to Family Defendants in the year prior to SFC's filing for bankruptcy (June 2001 through June 2002). A plain reading of Count XI does not reveal an intention to include the loan commitment and interest fees paid from 1999 onward or the stock redemption payments in the preference cause of action. The Court thus concludes that Counts VII and XI of the Complaint do not give the Family Defendants fair notice of the claims at issue or the grounds on which they rest.

    The Trustee next contends that the Family Defendant's Answer and Affirmative Defenses are "stated broadly enough to cover the claims at issue" (D.I. 333, p.5). The Rule 8(a)(2) burden, of course, is on a plaintiff to notify a defendant of the claims

plaintiff is making. A defendant's answer and defenses might evince a subjective awareness that a cause of action encompasses a particular transaction, but in the instant case, the Court finds that the Family Defendant's "broad" defenses do not do so.

The Court has reviewed <u>In re Harry Levin, Inc.</u>, 175 B.R. 560 (Bkrtcy. E.D. Pa. 1994), which the Trustee cites to support his argument that fraudulent conveyance or preference claims need not specify individual transactions. While <u>Harry Levin</u> does discuss the specificity required in fraudulent conveyance and preference claims, it does not replace or modify the basic Rule 8 mandate that a pleading set forth "fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley</u>, 355 U.S. at 47. Unlike the trustee in <u>Harry Levin</u>, with respect to the claims at issue, the Trustee did not specifically plead the identity of the transferor or what property was transferred. The <u>Harry Levin</u> court held that the trustee's factual allegations "provide enough detail to enable the defendant to respond." 175 B.R. at 569. The Court concludes that because the Trustee's pleadings were not adequate to enable the Family Defendants to respond, the factual leniency discussed in <u>Harry Levin</u> is inapplicable.

## II. Interrogatories & Expert Reports

The Trustee also contends that his responses to the Family Defendants' First and Third Sets of Interrogatories, along with

5

the expert reports he served, provide ample notice of the claims at issue.

In response to interrogatory no. 1 (First Set), which asked for a description of all actions taken by the Family Defendants to exercise control or authority over SFC, the Trustee's June 7, 2006 answer discussed the conversion of a $6 million loan by Family Defendants to SFC into common stock, redemption of the stock, and the Family's residual shareholder status. In response to interrogatory no. 10, which asked for a calculation of any category of damages being claimed, the Trustee answered:

> The Trustee seeks a return of all money and items of value obtained by the Family defendants directly or indirectly from SFC, including those obtained by Yao. This includes but is not limited to $4,293,179.40 million [sic] in payments within one year of the filing date, together with the value of other transfers that are identified in discovery, interest, costs and attorneys' fees.

(D.I. 333, At. 1, Exh. A)

The parties agreed to update their answers to contention interrogatories on May 7, 2007. On that date, in response to interrogatory no. 26 (Third Set), which asked for information on payments made between June 2001 and June 2002 (relating to Count XI, the preference claim), the Trustee responded:

> In 2000 and 2001, the Family Defendants sold SFC stock in SFC, for which they were paid $6,931,636. As SFC was insolvent at the time, the stock was worthless and the payment was a fraudulent conveyance.

(Id.)

6

On May 7, 2007, the Trustee also served the expert reports of William Hecht and Harry Steinmetz. Mr. Hecht evaluated the interest rates and commitment fees charged on the loans from Family Defendants to SFC and determined that SFC had paid the Family Defendants excess fees in the amount of $1,018,500 (D.I. 333, At. 1, Exh. G). Mr. Steinmetz evaluated the profitability of SFC and determined that it was insolvent by at least mid-1998.

The Trustee's interrogatory answers must be considered in the context of the First Amended Complaint and the interrogatory questions to which they respond. While the June 7, 2006 response to interrogatory no. 1 discussed the $6 million loan, it does so in response to a inquiry about control, and does not indicate that the loan, its conversion to stock, or its repayment was fraudulent. Viewed in light of the Complaint, the second pertinent June 7, 2006 interrogatory response, which states that the Trustee seeks the return of "all money and items of value" transferred from SFC to the Family Defendants, also does not give sufficient notice to alert the Family Defendants to the claims at issue. Damage claims need not be stated with particularity, especially before discovery has been conducted, but a generalized damage claim cannot serve to put a defendant on notice of a claim that has not been adequately pled. The Court concludes that the Trustee's June 7, 2006 interrogatory responses are inadequate to put the Family Defendants on notice of the claims at issue.

7

The Trustee's expert reports and answers to Third Set Interrogatories were served on May 7, 2007. Fact discovery closed in this lawsuit on April 30, 2007. An agreement between the parties to update contention interrogatories after fact discovery is closed does not permit a party to raise new claims at that late date. The Trustee contends that his response to interrogatory no. 26 and his expert reports give the Family Defendants further notice of the claims at issue. The Court is unpersuaded. Though the Trustee's answer to interrogatory no. 26 unquestionably asserts that the Family Defendant's stock redemptions between February 2000 and January 2001 were fraudulent, it was given in response to a query about preference payments made between June 2001 and June 2002 and does not raise a new claim. Even if the Trustee's answer did attempt to raise a new claim, an interrogatory response provided after fact discovery has closed is not the proper place to do so. Similarly, though the expert reports discuss the claims at issue, they are not a proper substitute for pleading. "A <u>pleading</u>" shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2)(emphasis added). Accordingly, the Court concludes that the Trustee's interrogatory responses and expert reports do not sufficiently allege the claims at issue to give the Family Defendants fair notice.

## IV. Unfair Prejudice

The Family Defendants contend that allowing the Trustee to assert the damage claims at issue will cause the Family Defendants extreme and unfair prejudice. Allowing the claims at issue to go forward, the Family Defendants contend, would require both fact and expert discovery to be reopened. The Family Defendants contend that they had no reason to seek discovery on the state of SFC's finances prior to May 2001, since the First Amended Complaint alleged that SFC was insolvent as of that date, and that the claims at issue would require testimony on SFC's solvency before that period. Further, in order to adequately defend against the new fraudulent conveyance claims, the Family Defendants contend that they would be required to conduct discovery on SFC's intent with respect to transfers before June 2001 and the value of SFC stock at the time of its redemption.

In response, the Trustee contends that the Family Defendants have access to the only individuals directly involved in the transactions at issue, Roderick Gagne and Robert Bast. Along with Yao, who is unavailable because of pending criminal charges, Gagne and Bast are the only individuals with direct knowledge of the intent with which the transaction at issue were made.

Generally, the elements of a cause of action for fraudulent conveyance under the Bankruptcy Code and Pennsylvania law fall into either one of two categories: a transfer made with the

9

intention of defrauding creditors, or a transfer made by an insolvent party for grossly inadequate consideration. See 11 U.S.C.A. § 548; 1 Pa. C.S.A. § 5104. Even if the Trustee were to limit its claim to the first category, that involving an intent to defraud creditors, evidence of SFC's finances at the time would be material to determining which creditors were being defrauded. The Trustee in effect acknowledges the relevance of SFC's pre-2001 finances through submitting the expert report of Steinmetz, who opined that SFC was insolvent by at least mid-1998.

The Court finds that allowing the Trustee to assert the claims at issue, at the pretrial stage of the proceeding, would require the Family Defendants to reopen fact and expert discovery on numerous issues, including the state of SFC's finances pre-May 2001. To require the Family Defendants to defend against these claims now, with discovery closed, would cause unfair prejudice.

## CONCLUSION

For the reasons discussed, the Court concludes that the Family Defendants have established that the claims at issue were not pled in a manner sufficient to give the Family Defendants fair notice and that requiring them to defend against those claims now would cause unfair prejudice. Accordingly, the Court will grant the Family's Defendants' Motion.

An appropriate order will be entered.

10